IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CAPTAIN BARBARA CONLEY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| COLONEL L. AARON CHAFFINCH, ) | C.A. No. 04-1394-GMS |
| individually and in his official capacity as the ) | |
| Superintendent, Delaware State Police; ) | |
| LIEUTENANT COLONEL THOMAS F. ) | |
| MACLEISH, individually and in his official ) | |
| capacity as the Deputy Superintendent, Delaware ) | |
| State Police; DAVID B. MITCHELL, individually ) | |
| and in his official capacity as Secretary of the ) | |
| Department of Safety and Homeland Security, ) | |
| State of Delaware; and DIVISION OF STATE ) | |
| POLICE, DEPARTMENT OF SAFETY AND ) | |
| HOMELAND SECURITY, STATE OF ) | |
| DELAWARE, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**I.    INTRODUCTION**

On October 27, 2004, Captain Barbara Conley ("Conley") filed this lawsuit, alleging gender discrimination by Colonel L. Aaron Chaffinch ("Chaffinch"), David B. Mitchell ("Mitchell"), and Division of State Police, Department of Safety and Homeland Security, State of Delaware ("Delaware State Police") (collectively, the "defendants"), in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.[1]

---

[1] On December 6, 2004, Conley filed a first amended complaint, adding Lieutenant Colonel Thomas F. Macleish ("Macleish") as a defendant to the case.

Presently before the court is the defendants' motion for an order limiting pretrial publicity. For the following reasons, the court concludes that the order the defendants seek is not constitutionally permissible because they have failed to demonstrate a substantial likelihood that statements from counsel and the parties would materially prejudice the case. Additionally, the proposed order is neither narrowly tailored nor the least restrictive corrective measure available to ensure a fair trial.[2]

## II.    DISCUSSION

The defendants seek an order that would require counsel and the parties to "cease any and all extrajudicial communications" concerning this lawsuit – that is, a gag order. (D.I. 9, at 8.) A gag order is a prior restraint on speech that "raises rights under the First Amendment of the United States Constitution." *United States v. Scarfo*, 263 F.3d 80, 92 (3d Cir. 2001). A gag order also carries with it "a heavy presumption against its constitutional validity." *Bailey v. Sys. Innovation, Inc.*, 852 F.2d 93, 98 (3d Cir. 1988) (quoting *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971)). As such, the party moving for the gag order must present evidence that demonstrates the need for the prior restraint on both the lawyer and the litigants. *Nebraska Press Assoc. v. Stuart*, 427 U.S. 539, 562 (1976); *Bailey*, 852 F.2d at 99.[3] The moving party must also demonstrate that the order is

---

[2] On February 18, 2005, the court heard oral argument on the defendants' motion and issued an oral opinion denying the motion. This is the court's written opinion on the motion.

[3] As a general rule, "the speech of lawyers representing clients in pending cases may be regulated under a less demanding standard than that established for regulation of the press" because "lawyers have special access to information through discovery and client communications [and] their extrajudicial statements [, therefore,] pose a threat to the fairness of a pending proceeding." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1074 (1990). The court, however, cannot impose the ethical rules governing a lawyer's pretrial comments on litigants unless: (1) the litigants' pretrial comments are likely to interfere with the moving party's right to a fair trial; (2) other measures would not likely mitigate the effects of unrestrained pretrial

narrowly tailored and that other measures short of prior restraint cannot effectively address the perceived danger. *See Nebraska Press*, 427 U.S. at 564-65. "If any method other than a prior restraint can effectively be employed to further the governmental or private interest threatened . . . then the order is invalid." *Bailey*, 852 F.2d at 99.

Intense publicity surrounding a proceeding poses significant and well-known dangers to a fair trial. *United States v. Brown*, 218 F.3d 415, 423 (5th Cir. 2000). These dangers include the potential that pretrial publicity may prejudice the jury pool, as well as the actual outcome of a trial by, for example, disseminating to the press inadmissible evidence. *See, e.g.*, *Gentile*, 501 U.S. 1030, 1075 (1990); *Scarfo*, 263 F.3d at 94; *Brown*, 218 F.3d at 423 (quoting *Sheppard v. Maxwell*, 384 U.S. 333 (1966)).[4] Under Third Circuit case law, the court must examine the record to determine whether a gag order would prevent a "substantial likelihood of material prejudice" to the judicial proceeding. *See Scarfo*, 263 F.3d at 93-94 (applying the "substantial likelihood of material prejudice" standard that the Supreme Court held constitutionally permissible to balance an attorney's interest in free speech against the state's interest in fair judicial determinations in *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1990)).[5] If the court determines that an order limiting extrajudicial communication is proper, the "limitation [that the court imposes] on the . . . speech must be narrow and necessary, carefully aimed at comments likely to influence the trial or judicial determination." *Scarfo*, 263 F.3d at 93.

---

publicity; and (3) the prior restraint would effectively prevent the perceived danger. *Bailey*, 852 F.2d at 99-100.

[4] Indeed, "fairness in a jury trial, whether criminal or civil in nature, is a vital constitutional right." *Bailey*, 852 F.2d at 98.

[5] This standard is incorporated into the ABA Model Rules of Professional Conduct Rule 3.6 and the Delaware Lawyer's Rules of Professional Conduct Rule 3.6. *See infra* note 6.

The defendants maintain that Conley's lawyers, the Neuberger Firm (the "Firm"), have "promoted this lawsuit through public statements, the release of correspondence to the press, and media interviews." (D.I. 9 ¶ 4.) The defendants then list various statements that the Firm released to *The News Journal* and the *Delaware State News*, newspapers of general circulation in Delaware, and contend that these statements lacked civility and reflected verbal intemperance, scorn, and superiority. (*Id.*) Additionally, the defendants claim that the statements are "a calculated effort to influence the outcome of [the] plaintiff's lawsuit through manipulation of the media accounts of the litigation." (*Id.*)

After reviewing the articles and statements, the court concludes that they do not rise to the level of creating a substantial likelihood of material prejudice, or of any harm sufficient to support a gag order. The statements at issue can be characterized as follows: (1) statements made to protect the plaintiff from substantial undue prejudicial effect of recent publicity not initiated by her counsel; (2) statements criticizing the Delaware State Police and the Delaware government for alleged misconduct; (3) statements involving the plaintiff's claims and offense; (4) information contained in the public record; (5) statements that were made by a reporter, not the Firm; and (6) benign statements. These types of statements either fall within the "safe harbors" of the ABA Model Rules of Professional Conduct Rule 3.6 and the Delaware Lawyer's Rules of Professional Conduct Rule

3.6, or are protected under the First Amendment.[6] For example, the defendants cite a *News Journal* article, dated November 6, 2004, in which the Firm made the following comments:

> "The law is the law. I don't care what they said, they violated it. Now they have to be held accountable."

D.I. 9 ¶ 5; Ex. D, at 4. These statements do not pose a threat of prejudice to the jury. To the contrary, the statements were made to protect the plaintiff from the substantial undue prejudicial effect of recent publicity initiated when someone allegedly released an email containing her confidential Internal Affairs file to a Delaware newspaper, thereby violating the confidentiality

---

[6] The ABA Model Rules of Professional Conduct Rule 3.6, adopted by Local Rule 83.6 for the District of Delaware, states, in pertinent part:

(a) A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding.

(b) A statement referred to in paragraph (a) ordinarily is likely to have such an effect when it refers to a civil matter triable to a jury . . . and the statement relates to: (1) the character, credibility, reputation or criminal record of a party suspect in a criminal investigation or witness, or the identity of a witness, or the expected testimony of a party or witness; . . . (5) information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudicing an impartial trial . . .

(c) Notwithstanding paragraphs (a) and (b) a lawyer involved in the investigation or litigation of a matter may state without elaboration: (1) the general nature of the claim or defense; (2) information contained in the public record . . . (4) the scheduling or result of any step in the litigation; . . .

The Delaware Lawyer's Rules of Profession Conduct Rule 3.6(c) further states:

(c) Notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client. A statement made pursuant to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse publicity.

provisions of Del. Code Ann. tit. 11§ 9200(c)(12).[7] Thus, the statements fall under the "safe haven" of the Delaware Lawyer's Rules of Professional Conduct Rule 3.6.

Likewise, statements including the alleged Internal Affairs coverups of the defendants, specifically Chaffinch and MacLeish, arise out of independent matters concerning alleged misconduct and abuse of office within the Delaware State Police and the Delaware government.[8] These statements are protected by the First Amendment because they are criticisms of alleged governmental corruption, an issue of great public concern that lies at the core of the First Amendment. *See Gentile*, 501 U.S. at 1034-35 ("There is no question that speech critical of the exercise of the State's power lies at the very center of the First Amendment. . . . [A]lleged governmental misconduct . . . [is] 'speech which has traditionally been recognized as lying at the core of the First Amendment.'"); *Baldassare v. New Jersey*, 250 F.3d 188, 196 (3d Cir. 2001) ("Disclosing corruption, fraud and illegality in a government agency is a matter of significant public concern.") Indeed, "vehement, caustic, and sometimes unpleasantly sharp attacks on government

---

[7] Del. Code Ann. tit. 11 § 9200(c)(12) provides:

(c) Whenever a law-enforcement officer is under investigation or is subjected to questioning for any reason which could lead to disciplinary action, demotion or dismissal, the investigation or questioning shall be conducted under the following conditions: . . . (12) All records compiled as a result of any investigation subject to the provisions of this chapter and/or a contractual disciplinary grievance procedure shall be and remain confidential and shall not be released to the public.

[8] These statements include:

[t]his is the way it is with certain good old boys who happen to be in charge of our Delaware State Police. . . . [The Governor] condones and coddles a serial constitutional violator like the colonel. . . . This is ridiculous. . . . This is a travesty. This must be the Delaware way. . . . I will not be party to another coverup of misdeeds in the DSP.

6

and public officials" are public issues protected by the First Amendment. *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

Other statements that the defendants list refer to the plaintiff's claims or matters previously published. One of the statements, in addition to being a matter of public record, was not made by the Firm, but by a reporter for the *Delaware State News*.[9] In addition, some of the criticized statements are benign, including: "[t]here's some stuff that we wouldn't even put in the complaint because we were concerned with the decorum of the court. It's so offensive we won't put it in court papers." (D.I. 9 ¶ 5.) The statements at issue in the present case are innocuous when compared, for example, to extrajudicial statements in *Mu'Min v. Virginia*, a capital murder case in which the Supreme Court did not issue a gag order. The Court held that even though the community had been subjected to a barrage of publicity prior to the trial, including news articles containing details of the crime and prejudicial information inadmissible at trial, and eight of the twelve jurors admitted some exposure to pretrial publicity, the publicity did not rise even to a level requiring questioning of individual jurors. 500 U.S. 415 (1991).

In addition, the defendants do not explain any specific or general prejudice they would suffer if the court did not impose a gag order. They list statements and characterize them as prejudicial.

---

[9] The *Delaware State News* article, dated November 16, 2004, states that the Firm "called for an open investigation of Col. Chaffinch and released the names of more than a dozen current or retired troopers who allegedly witnessed improper behavior on the part of the colonel." (D.I. 9 ¶ 5.) In addition to the fact that the statement was made by the news reporter, the Firm's release of witnesses relates to the Internal Affairs investigation of Colonel Chaffinch, not the present case. Under Delaware law, the investigation into Colonel Chaffinch is not confidential. *See* Del. Code Ann. tit. 11 § 9200(b) ("this chapter shall not apply to the Superintendent or Deputy Superintendent of the Delaware State Police, or to any officer above the rank of Captain in the Delaware State Police").

However, they have presented no evidence, and the court cannot find any support in the record, as to why the statements are a "calculated effort to influence the outcome of [the] plaintiff's lawsuit through manipulation of the media accounts of the litigation," as the defendants contend. Thus, the defendants have not demonstrated a substantial likelihood that extrajudicial statements by the Firm or the parties would materially prejudice the case.

Moreover, even assuming that the record demonstrates a substantial likelihood of material prejudice, the court finds that the defendants' proposed gag order is not "narrow [and] carefully aimed at comments likely to influence the trial or judicial determination." *Scarfo*, 263 F.3d at 91. As previously stated, the proposed order would require counsel and the parties to "cease any and all extrajudicial communications" concerning this lawsuit. The defendants would have the court impose a "no comment" rule without leaving open avenues of expression, including statements that are protected under the "safe harbor" provisions of the ABA Model Rules of Professional Conduct and the Delaware Lawyers' Rules of Professional Conduct, as well as protected criticisms of alleged government misconduct and corruption. Accordingly, the defendants' proposed order is not narrow and would therefore, if implemented, be unconstitutional. *Compare Brown*, 218 F.3d at 419 (upholding the constitutionality of a gag order and because "[t]he order expressly does not prevent the parties from discussing . . . (1) the general nature of any allegations or defenses; (2) information contained in the public record; (3) scheduling information; (4) any decisions or order by the court that is a matter of public record; and (5) 'the contents or substance' of any motion filed in the case, to the extent the motion is a matter of public record"). Nor is the proposed gag order the least restrictive means available to prevent the "evils" against which a gag order may appropriately apply. After reviewing the record and case law, the court concludes at the present time that alternative

measures to prior restraint, including a careful *voir dire* of prospective jurors and/or emphatic jury instructions from the court would blunt the impact of any pretrial publicity and alleviate the defendants' concerns about a fair trial. *See Bailey*, 852 F.2d at 100.[10] Accordingly, the court will deny the defendants' motion.

**III.    CONCLUSION**

For the aforementioned reasons, IT IS HEREBY ORDERED that:

1. The defendants' Motion for an Order Limiting Prejudicial Pretrial Publicity (D.I. 9) is DENIED without prejudice.

Dated: March 2, 2005                                    _____/s/_____
                                                         UNITED STATES DISTRICT JUDGE

---

[10] This is especially true in light of the fact that the court has not yet determined a trial date for this case. *See Gentile*, 501 U.S. at 1044 ("A statement which reaches the attention of the venire on the eve of *voir dire* might require a continuance or cause difficulties in securing a impartial jury," . . . while "exposure to the same statement six months prior to trial would not result in prejudice, the content fading from memory long before the trial date.")