FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE    2004 DEC -6 AM 11: 03

| | | |
|---|---|---|
| CAPTAIN BARBARA L. CONLEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COLONEL L. AARON CHAFFINCH, | : | C.A.No.04-1394-GMS |
| individually and in his official | : | |
| capacity as the Superintendent, | : | |
| Delaware State Police; LIEUTENANT | : | |
| COLONEL THOMAS F. MACLEISH, | : | |
| individually and in his official | : | |
| capacity as the Deputy | : | |
| Superintendent, Delaware State | : | Trial by Jury Demanded |
| Police; DAVID B. MITCHELL, | : | |
| individually and in his official | : | |
| capacity as Secretary of the | : | |
| Department of Safety and Homeland | : | |
| Security, State of Delaware; and | : | |
| DIVISION OF STATE POLICE, | : | |
| DEPARTMENT OF SAFETY AND HOMELAND | : | |
| SECURITY, STATE OF DELAWARE, | : | |
| | : | |
| Defendants. | : | |

## FIRST AMENDED COMPLAINT[1]

1. This is a civil action to remedy intentional and purposeful gender discrimination by the Delaware State Police which proximately lead to the failure to promote plaintiff to the

---

[1] No Answer having been filed, pursuant to Fed.R.Civ.P. 15(a) plaintiff amends her Complaint as of right. The caption has been amended and paragraphs 106 - 164 have been added. Defendant Mitchell has been added as a defendant in his individual capacity. Lt. Col. Thomas MacLeish has been added as a defendant in both his individual and official capacities.

-1-

rank of Major. Plaintiff seeks detailed judicial inquiry under intermediate or strict scrutiny analysis to insure that her personal right to equal protection of the laws is upheld, that discrimination odious to our nation's principles of equality is halted and an award of compensatory and punitive damages and injunctive relief because of invidious gender discrimination against her. Defendant Chaffinch has denied plaintiff's right to be free of gender discrimination in violation of the Fourteenth Amendment of the U.S. Constitution. Plaintiff twice has been passed over for promotion to the rank of Major in the Delaware State Police because she is a woman and that promotion was given instead to less qualified males. Plaintiff has direct and circumstantial evidence that animosity towards women was the reason defendant Chaffinch twice refused to promote her.

## I. **JURISDICTION**

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), 28 U.S.C. §§ 2201 and 2202, and the Fourteenth Amendment to the U.S. Constitution. The cause of action arises under 42 U.S.C. § 1983. The claim arose in this judicial district.

## II. **THE PARTIES**

3. Plaintiff is a citizen of the United States and a resident of Kent County Delaware.

4. Defendant Colonel L. Aaron Chaffinch is currently the

-2-

Superintendent of the Delaware State Police and its highest ranking officer. He is sued individually and in his official capacity.

5. Defendant David B. Mitchell is currently Secretary of the Department of Safety and Homeland Security, State of Delaware. He is sued in his official capacity.

6. Defendant Division of State Police, Department of Safety and Homeland Security, State of Delaware ("State Police") is an agency of the State of Delaware, which is only joined in this action for purposes of collecting attorneys' fees and costs.

### III.  FACTS GIVING RISE TO THE ACTION

### A.  PLAINTIFF'S QUALIFICATIONS

7. Plaintiff is a 22 and one-half year veteran of the State Police. She currently holds the rank of Captain and is its Director of the Traffic Control Section.

8. Plaintiff is a 1979 graduate of Caesar Rodney Senior High School in Camden, Delaware. She holds two Associates Degrees in Correctional Science and in Police Science from Delaware Technical and Community College, Terry Campus, where she was on the Dean's List with a GPA of 3.67 and upon graduation was selected the outstanding criminal justice student by former Delaware State Police Superintendent James L. Ford, Jr. She holds a Bachelor of Science in General Studies Degree from Wilmington College where she was on the Dean's List with a GPA of

-3-

A003

3.87.

9.   Plaintiff is also a 1999 graduate of Northwestern University's School of Police Staff and Command where she was the 130th Class Officer Recording Secretary and had a GPA of 3.89.

10.   Plaintiff has held the following positions with the State Police:

- Captain, Director of Traffic Control Section, 2001 to the present.
- Assistant Director of Traffic Control Section, 2000-2001.
- Traffic Lieutenant, Troop 5, Bridgeville, 1999-2000, which included responsibilities for about 35 troopers, and substituting for the Troop Commander, when necessary.
- Traffic Lieutenant, Troop 3, Camden, 1997-1999, which included responsibilities for about 50 troopers.
- Sergeant, Patrol Shift Supervisor, Troops 3 and 5, Camden and Bridgeville, 1993-1997.
- Patrol Trooper, Troop 5, Bridgeville, 1982-1993.

## B.   THE MANAGERIAL DUTIES OF MAJORS

11.   The State Police is a paramilitary organization.  It is headed by a superintendent with the rank of Colonel and a deputy superintendent with the rank of Lieutenant Colonel, both of whom are appointed by the Governor and the Secretary of Safety and

-4-

A004

Homeland Security, State of Delaware.

12.   Organizationally the State Police is one division of the Cabinet level Department of Safety and Homeland Security, which at all times relevant hereto was headed by Cabinet Secretary defendant Mitchell or his predecessor James L. Ford, Jr.

13.   There are five uniformed officers with the rank of Major in the State Police.

14.   All the Majors are managers and they are not policy makers.

15.   The Majors do not report organizationally to the Colonel or perform advisory functions for him.

16.   The Majors are two levels organizationally below the Colonel.

17.   They report to the Deputy Superintendent who is also the Lt. Colonel of the State Police.

18.   The Majors are non-policymaking, nonconfidential government employees.

19.   The duties of the Majors are described below.  Their duties are well defined and they are not of broad scope.

20.   Organizationally the Colonel oversees the State Police. But only three units report directly to him: Planning, Inspections/Accreditation and Victim Services.  Office of Primary Responsibility regulation (hereinafter "O.P.R.") § 11.1.1.3.

-5-

21.  The Majors do not perform any of these three advisory functions for the Colonel.

22.  It is the Lieutenant Colonel who serves as the operations officer for the State Police.  O.P.R. § 11.1.1.3.B.

23.  The five Majors report only to him.

24.  The areas directed by the Majors are Administrative-Budget, Administrative-Technical Support, Field Operations in New Castle County, Field Operations in Kent and Sussex Counties, and Special Operations. O.P.R. § 11.1.1.3.B.

25.  The Administrative-Budget Major "oversees administrative services and certain support services including, purchasing, and supply, fiscal control, the fiscal/policy analyst, graphics and the transportation section." O.P.R. § 11.1.1.3.C.

26.  The Field Operations Major for Kent and Sussex Counties is responsible for the various troops within those counties (Troops 3, 4, 5 and 7), and the Executive Protection Unit which protects the Governor. O.P.R. § 11.1.1.3.F.

27.  The gender of the Majors does not interfere with the discharge of their public managerial duties.

28.  Majors do not have meaningful input into decision making concerning the nature and scope of major State Police programs.  Rather, the Colonel and the Secretary of the Department of Safety and Homeland Security make all meaningful decisions as to the nature and scope of all major State Police

-6-

programs.

29.  The position of Major can be effectively performed by someone who is a female.

**C.  CHAFFINCH HAS VICTORIAN NOTIONS ABOUT WOMEN IN THE WORKPLACE.**

**(a).  HE IS A MEMBER OF AN ORGANIZATION WHICH EXCLUDES WOMEN.**

30.  Defendant Chaffinch does not believe that women should be in the modern workplace or that they should be Majors in the State Police.  He does not believe that the position of Major can be effectively performed by someone who is a female.  He believes that the female gender of a Major would interfere with the discharge of her public managerial duties.

31.  Chaffinch publically boasts that he belongs to a private organization, Freemasonry, which discriminates against African-Americans and women and which historically in all its Lodges has always denied African-Americans and women membership.

32.  He is a member of the Delaware Shield and Square Lodge of Freemasonry.  That and any other Masonic organization to which he has ever belonged have never had an African-American or female member.

33.  He holds the highest of three ranks in Freemasonry, that of Master Mason, and he also holds the highest degree in Freemasonry, that of a 33rd Degree Mason.

34.  Only white males may join the Masonic organizations to which Chaffinch has ever belonged.

-7-

35.  Freemasonry has always denied membership to women in any of its Regular Masonic Lodges.

**(b).  CHAFFINCH HAS PUBLICALLY STATED THAT WOMEN ARE LESSER PERSONS THAN MEN AND HE HAS DEMEANED WOMEN.**

36.  Chaffinch repeatedly has stated to plaintiff and others that the trouble with mankind can be traced to the Garden of Eden discussed in the Book of Genesis in the Holy Bible.  He believes that the problems of society are the fault of women, symbolized by Eve, and it is men, symbolized by Adam, who have to bear the penalty for women's mistakes. This remark reflects sexist stereotypes about women.

37. Chaffinch has told plaintiff that he refused to assign two women to her Traffic Control Section because two women cannot get along and work together.  This remark reflects sexist stereotypes about women.

38.  Chaffinch when he was a Lieutenant was disciplined for participating in an incident where a female beared her breast for money at a party.

39.  Chaffinch when he was a Major was counseled for openly telling a sexually explicit joke during a coed inservice training class.

**(c).  CHAFFINCH MAKES SEXUALLY OFFENSIVE REMARKS ABOUT WOMEN.**

40.  Chaffinch constantly, in the presence of plaintiff, other women and men, recounts a wide variety of more than five

-8-

sexually charged limericks and jokes which are offensive to women. They include the following three (two are so offensive that they are being omitted here) –

> The nipples of Sara Sarong
> When excited were twelve inches long
> Her tender young lover was soon to discover
> She expected no less of his d---

> There once was a man from Trent
> Whose d--k was so long that it bent
> To save himself trouble, he stuck it in double
> And instead of coming he went

> There once was a man from Nantucket
> Whose d--k was so long he could suck it
> As he said with a grin, wiping c-m from his chin
> If my ear were a c--t, I would f--k it.

41. Chaffinch tells plaintiff, other women and men, that he has "something extra," meaning that he is not circumcised. He then refers to his penis publically by a nickname.

42. Chaffinch has publically stated in the presence of women that he wanted to watch others engage in sexual relations.

43. Chaffinch has allowed other troopers to disrespect plaintiff and call her "Puss."

44. Chaffinch has allowed other troopers to disrespect plaintiff and other women with offensive comments, rumors and wolf whistling. He also eggs it on and condones this behavior.

45. Chaffinch has demanded to know private details of plaintiff's sex life. Plaintiff has been happily married to a retired Trooper for 17 years.

46.    Chaffinch tells plaintiff, other women, and men, that he considers a particular female to be "----- the Dish," by which he means to imply that he wishes to have sexual relations with her.  He also publically has stated to her "you're so sweet, you don't need any sugar."

47.    Chaffinch refers to several of the women who work in the headquarters building with him as "tearing him up" or that he "would love to do her," by which he means to imply that he wishes to have sexual relations with them and use them for his sexual gratification.

48.    Chaffinch publically refers to one secretary as "lemon Ti--ies," which is a reference to her breast size.

49.    Chaffinch tells plaintiff, other women, and men, a story about the enormous size of a male Trooper's penis.

**D. CHAFFINCH WILL NOT PLACE WOMEN IN COMMAND IN THE STATE POLICE.**

50.    Chaffinch assumed operational command of the State Police on October 1, 2001.  Since that time he has not placed a female in a command position as the head of a Troop and he has precipitously removed from Troop 6 the only woman who previously held a command position.

51.    The first woman ever promoted to the rank of Captain in the State Police was Mary Ann Papili who was promoted by former Col. Gerald R. Pepper, Jr. in June of 2001.  She then was assigned to be the Troop Commander of Troop 6 in Prices Corner.

-10-

Troop commanders normally serve three or more years in their posts. Captain Papili was an excellent Troop Commander who was well respected by those under her command.

52. In September of 2003 Chaffinch removed Col. Pepper's appointee Captain Papili from command and transferred her to an administrative position as the OIC of Information Technology. She prematurely lost her command under Chaffinch.

53. Plaintiff was the second woman ever promoted to Captain in the State Police. Col. Pepper promoted plaintiff in August of 2001 and assigned her to her present position as Director of the Traffic Section which is only an operational and support position. But since Chaffinch assumed command he has diminished the operational authority of plaintiff and lessened her position within the State Police and her Section. He also ignores her at monthly commanders meetings and has drastically decreased her role in such meetings.

54. In July 2003 Chaffinch was forced by former Secretary James L. Ford Jr. to promote Elizabeth Shamany to the rank of Captain. But he did not place her in a command position. Instead she was assigned to an administrative position in the State Bureau of Investigation.

55. No woman currently serves under Chaffinch in a command position.

**F. CHAFFINCH PROMOTED TWO LESS QUALIFIED MALES TO MAJOR**

-11-

A011

56.  In August 2001 plaintiff was promoted to the rank of Captain by now retired Colonel Pepper.

57.  On September 30, 2001 Colonel Pepper retired. Chaffinch was named acting superintendent until February 8, 2002 when Governor Ruth Ann Minner appointed him as the permanent superintendent of the State Police.

58.  In March 2003 Major Joseph Swiski, the Administrative-Budget Major, retired and Captain Paul Eckrich, a person less qualified than plaintiff, was promoted to Major Swiski's position.

59.  Plaintiff was denied this promotion because of her gender and Chaffinch's bias against women.

60.  Lieutenant Colonel Thomas Marcin then retired.  Major Thomas MacLeish was selected for the position of Lieutenant Colonel.  This created a second promotion opportunity to the rank of Major for the Field Operations position in Kent and Sussex Counties where plaintiff had served her entire career.

61.  But a lesser qualified male, Captain Randall Hughes, then was promoted to that position.

62.  Plaintiff was denied this promotion because of her gender and Chaffinch's bias against women.

### G. DAMAGES

63.  As a direct and proximate result of the actions of the defendants as detailed herein, plaintiff will suffer lost wages,

-12-

A012

earnings and benefits, she will suffer diminished earning capacity and receive less pension and other benefits now and upon her retirement, decreased employment and earnings opportunities, and other pecuniary losses, emotional pain, suffering, disappointment, anger, inconvenience, mental anguish, loss of enjoyment of life, mental and physical pain, anguish, humiliation, embarrassment, injury to reputation, and other non-pecuniary losses and injury.

### IV.    ALLEGATIONS REGARDING THE DEFENDANTS' CONDUCT

64.    The individual defendant's actions violated clearly established federal constitutional rights of which any official would have known, including decades of Third Circuit case law prohibiting gender discrimination against public employees.

65.    At all times material hereto the individual defendant participated in, authorized, and sanctioned the federal constitutional deprivations described above.

66.    At all times material hereto the individual defendant and his agents were acting under color of law.  The federal constitutional deprivations described herein are fairly attributable to the State.

67.    The actions of the defendants and their agents or employees were deliberately, intentionally, willfully, purposefully, and knowingly done in violation of federal constitutional rights and because of the exercise of those

-13-

rights.

68.   The defendants either knew or showed a negligent or reckless disregard for the matter of whether their conduct violated federal constitutional rights.

69.   Their actions were outrageous and taken with evil motive, in bad faith, out of personal animus and without any reasonable grounds to support them.

70.   Their actions were wanton and malicious or taken with reckless indifference to federal constitutional rights.

71.   The exercise of rights under the U.S. Constitution made a difference in all actions adverse to plaintiff.

72.   The exercise of these rights was a motivating, substantial or determinative factor in all actions adverse to plaintiff.

73.   The defendants did not reasonably believe that the actions they took were necessary to accomplish any legitimate governmental purpose.

74.   The defendants' actions were motivated by bias, bad faith, and improper motive.

75.   The defendants' actions constitute an abuse of governmental power.

76.   The defendants' actions do not further any narrowly drawn important, substantial or compelling governmental interest.

77.   The defendants' actions are not so reasonable as to

-14-

A014

further any governmental interest asserted and do not closely fit the goal of serving those governmental interests.

### COUNT I (PROMOTIONS)

78.  Plaintiff repeats and realleges paragraphs 1 - 77 set out above.

### A.  DIRECT EVIDENCE ANALYSIS

79. Plaintiff has provided direct evidence of gender discrimination against her.  These statements or other evidence reflect a discriminatory bias against female employees. They provide direct evidence that the decisionmaker placed substantial negative reliance on an illegitimate criterion in reaching the challenged decision.

80.  Alternatively, impermissible gender based factors, as well as permissible factors, were considered in the decision making process.

81.  Plaintiff is within a protected gender group, that is, she is female.

82.  She was not promoted on two occasions.

83.  Her gender was the motivating, determinative or even the sole reason why she was not promoted.

84.   The defendants cannot prove by a preponderance of the evidence that if they had not used gender based or suspect classifications they still would not have promoted plaintiff.

### B.  PRETEXT ANALYSIS

-15-

A015

85.  Plaintiff was qualified for promotion to Major.

86.  At all times material hereto she was a diligent, honest, and loyal employee who always performed her job in an exemplary manner.

87.  Plaintiff sought promotion to Major.

88.  Two vacancies for promotion to Major existed.

89.  Plaintiff is female.

90.  The promotions went to two less qualified males.

91.  Any legitimate non-discriminatory reason offered by the defendants for their actions is a pretext for intentional and purposeful discrimination based on gender.  Any reason offered by the defendants is unworthy of credence since plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the proffered legitimate reasons that a reasonable fact finder can rationally find them unworthy of credence and hence infer that the defendants did not act for the asserted non-discriminatory reason.

92.  Alternatively, plaintiff can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment actions was the gender of the plaintiff.

**(a).  CIRCUMSTANTIAL EVIDENCE OF INTENT**

93.  The circumstantial and direct evidence of intent proves

-16-

invidious discriminatory purpose.  Examples include the following.

94.  Historically no woman has ever been promoted to the rank of Major, Lieutenant Colonel or Colonel of the State Police. Chaffinch has continued this historic pattern with the two less qualified males who he has promoted to Major.

95.  Approximately 90% of the State Police are males (544 men) and only 10% are females (64 women). Report by Lisa Blunt-Bradley, dated December 1, 2001, at 8, 11.

96.  In the Professionals EEO-4 Category which includes Lieutenants, Captains and Majors, female representation decreased from 5.9% on October 1, 1999 to 5.3% on October 1, 2001.  Bradley Report at 12.

97.  Using a workforce analysis, the State Police has been and continues to be under represented in all EEO-4 Categories for women.  Bradley Report at 13.  For example, in the Professionals category, which includes Majors, the labor market is 55% and the State Police percentage is only 5%.  Id.

98.  Chaffinch has blocked the recommendation of the Bradley Report that a Roundtable of Women in Policing be convened to address issues unique to women in law enforcement in the State Police and strategies to address those issues.  Former Lt. Col. Thomas Marcin tried to implement this recommendation but since his retirement Chaffinch has ignored the recommendation.  Bradley

-17-

A017

Report at 47.

99.  To insure accountability in the area of the utilization of uniformed women officers in the State Police the Bradley Report recommended that the State Police create a Diversity Committee.  Chaffinch has blocked the implementation of this recommendation.

100.  Aside from the examples given earlier, Chaffinch singles out women officers for disrespect and unequal treatment. For example, he demeans and disrespects Captain Mary Ann Papili, by calling her "Norman," after a most wanted criminal fugitive with that first name.  But he calls no male Captain by the first name of any criminal fugitive.

101. The specific sequence of events leading up to the two challenged promotions evidences discriminatory intent.

102. In the handling of these two promotions there were departures which occurred from the normal procedural sequence.

103.  Given the totality of the circumstances, a reasonable fact-finder could conclude that the defendants intentionally and purposefully treated plaintiff less favorably than others because of her gender.

104.  Plaintiff has been illegally denied two promotions because of her gender.

105.  Plaintiff's constitutional right to the equal protection of the law and to be free of gender discrimination has

-18-

been denied under the Fourteenth Amendment to the U.S.
Constitution and 42 U.S.C. § 1983.

### COUNT II (FREE SPEECH CLAUSE RETALIATION)

106.   Plaintiff repeats and realleges paragraphs 1 - 105 set
forth above.

107.   In addition to the defendants listed above, the added
defendants for the purposes of Counts II and III of this
Complaint are: defendant Secretary Mitchell, in his individual
capacity; and defendant Lt. Col. Thomas F. MacLeish, who is the
Deputy Superintendent of the State Police.  He is sued in his
individual and official capacity.

### A.   Plaintiff's Protected Activity.

108.   Plaintiff filed her Complaint in this court on October
27, 2004.

109.   Defendants Mitchell, Chaffinch and MacLeish each were
aware personally that plaintiff had filed this lawsuit and each
of them were antagonized by it.

110.   As a direct and proximate result, defendants Mitchell,
Chaffinch and MacLeish set upon a course of conduct designed to
retaliate against plaintiff for daring to file a lawsuit
challenging illegal practices in the State Police.

### B.   Defendants' First Act of Illegal Retaliation in Violation of State Law.

111.   Mere hours after the filing of this lawsuit and their
learning of it, that same day defendants and their agents leaked

-19-

A019

confidential internal affairs material about plaintiff to the
news media, specifically, to a Delaware State News reporter.

112. The material defendants released dealt with matters
made confidential by the Law Enforcement Officer's Bill of
Rights, 11 Del.C. § 9200 et. seq., the protections of which apply
to plaintiff. See 11 Del.C. § 9200(a).

113. Defendants' release of this confidential internal
affairs information was in violation of this state law.

114. Defendants' actions also constitute the crime of
official misconduct under 11 Del.C. § 1211.

### C.  Defendants' Second Act of Illegal Retaliation in Violation of State Law.

115. The Delaware State News could not run a story on this
leaked document until it obtained a confirmation of the
information contained therein.

116. That same day, a reporter from the Delaware State News
contacted DSP public affairs officer Lieutenant Joseph Aviola and
questioned him about the confidential internal affairs material
that had been leaked to him.

117. Aviola indicated that he would have to consult with
his superiors about how to respond to this inquiry. Aviola knew
that the request dealt with information made confidential by
state law and he would not respond unless he obtained approval
from the top of his chain of command.

118. Upon information and belief, Aviola then consulted

-20-

A020

with defendants Mitchell and MacLeish, each of whom are in his direct chain of command.

119. Mitchell and MacLeish then ordered, authorized, or otherwise directed their subordinate to violate and ignore the Law Enforcement Officer's Bill of Rights and to commit the crime of official misconduct by discussing this confidential information with the news media.

120. They hoped that their actions would stifle legitimate dissent and intimidate other employees from exercising their First Amendment right to petition government by filing lawsuits.

121. Defendant Chaffinch ratified, sanctioned, authorized, approved, acquiesced or participated in this decision.

122. The next day, October 28th, Aviola contacted the Delaware State News and confirmed the nature of and discussed the information contained in this confidential document. At all times, Aviola was acting as the agent of defendants and pursuant to their express directions.

123. By publically confirming the existence of and discussing the confidential material contained in that document, defendants violated the confidentiality guarantees enacted in the Law Enforcement Officer's Bill of Rights.

124. In so doing, defendants also committed the crime of official misconduct in violation of 11 Del.C. § 1211.

125. As a result of defendants' illegal actions, numerous

-21-

A021

stories have run in both the Delaware State News and the News
Journal, discussing the confidential internal affairs material
relating to plaintiff.

126.   Plaintiff has been irreparably harmed as a result of
defendants' illegality and retaliatory misconduct.  Her right to
confidential proceedings under state law has been lost forever
thus directly and proximately injuring her reputation.

### D.  Defendants' Actions Also Violate DSP Policy.

127.   Defendants' retaliatory animus is revealed by the
double standard they applied earlier this year in dealing with
repeated media inquiries made as to defendants Chaffinch and
MacLeish - who themselves have been the subject of several recent
internal affairs investigations.

128.   11 Del.C. § 9200(a) dictates that the confidentiality
provisions of the Law Enforcement Officer's Bill of Rights apply
to plaintiff.  Conversely, the statute also explicitly states
that its privacy protections "shall not apply to the
Superintendent or the Deputy Superintendent of the Delaware State
Police." Id.

129.   In violation of this law, as discussed above,
defendants publically released and discussed confidential
internal affairs information about plaintiff.  Yet when repeated
media inquiries were made as to internal affairs investigations
into defendants Chaffinch and MacLeish, defendants refused to

-22-

discuss those matters.

130.   For example, as set forth in the April 15th, 2004 edition of the Delaware State News, DSP spokesman Aviola refused to comment on those matters.  In his own words:

> "They are internal.  **As a policy, we don't comment on internal matters.**"

> "[W]e won't be disclosing the nature of the charges because they are internal."

131.  Similarly, as set forth in the April 23rd, 2004 edition of the News Journal, in response to a request for a confidential internal affairs document, the article states:

> "Aviola said it was an internal document and would not be dispersed . . .."

132.   In the same way, as set forth in the April 30th editions of the Delaware State News and the News Journal, defendant Mitchell's predecessor Secretary James L. Ford, when questioned about the investigations into defendants Chaffinch and MacLeish stated:

> "To protect the integrity of the process, I will not comment further on these matters."

133.   In the same Delaware State News article, Aviola stated:

> "We won't have any comment.  It's still classified as an internal affairs matter."

134.   Likewise, as set forth in the March 27th edition of the Delaware State News, in response to inquiries into a separate internal affairs investigation into defendant MacLeish's actions,

-23-

A023

Aviola stated:

"It's a personnel matter.  I can't comment on that."

135.  Regarding the same matter, the March 25th edition of the News Journal stated:

"Lt. Joseph P. Aviola Jr., a state police spokesman, declined to disclose steps taken, saying it was a personnel matter."

### E.    The DSP and Attorney General's Office Refuse to Investigate Breaches of State Law and their Own Internal Policies.

136.  On October 29th, plaintiff's counsel filed a written complaint with Captain James Paige of DSP internal affairs.

137.  This written complaint charged that defendants had violated the Law Enforcement Officer's Bill of Rights as well as the Delaware criminal law in their treatment of plaintiff.  It requested that internal affairs launch an immediate investigation into the matters discussed above.  It also requested that immediate steps be taken to inform the DSP of their obligations under these state laws.

138.  By information and belief, Paige then consulted with his superiors in his chain of command, including defendants Mitchell and MacLeish.  They ordered that Paige stonewall and refuse to investigate these violations of state law.

139.  In a letter dated November 1, 2004, Paige refused to investigate defendants' actions in any way shape or form.

140.  Accordingly, on November 5th, plaintiff's counsel

-24-

filed a written complaint with Deputy Attorney General Michael Tupman – one of the attorneys for the DSP. This complaint detailed defendants' violations of both the civil and criminal laws as discussed above.

141. The complaint to Tupman specifically discussed defendants' retaliation against plaintiff for filing her lawsuit and Paige's refusal to investigate this illegality. The complaint stated that "I would like to give your office the opportunity to address these issues before we must do so in federal court."

142. In response, on defendants' orders, there has been a deafening silence from the Attorney General's office. It has refused to respond to these complaints about criminal and civil wrongdoing committed by law enforcement officers.

143. In a subsequent article in the Delaware State News, Lori Sitler the spokeswoman for the Attorney General's office, incredibly stated that the Attorney General's Office had not seen the complaints but nonetheless had already made the determination not to investigate the charges.

### F. General Allegations.

144. In filing her Complaint in the above captioned lawsuit, plaintiff invoked the protections of and was engaging in protected speech and petitioning of the government for redress of grievances under the First Amendment to the U.S. Constitution.

-25-

145. Defendants Mitchell, Chaffinch and MacLeish were aware that plaintiff had engaged in protected speech and petitioning activity by filing her lawsuit. Defendants were aware of this, for example, by way of innumerable telephone calls and other inquiries they received from interested members of the public, the media and co-workers who made them immediately aware of this suit shortly after its filing.

146. At all times plaintiff spoke out on issues of public concern and petitioned the government for redress of grievances under the First Amendment and sought to bring to light actual or potential wrongdoing or breach of the public trust by high public officials and also sought to bring to light defendant Chaffinch's illegal actions which violated the U.S. Constitution.

147. By its content, form and context, at all times plaintiff spoke out about matters of public concern.

148. All of plaintiff's speech and petitioning was non-disruptive of any legitimate interest of her employer and was on matters of public concern to the DSP, as well as the General Assembly, the Governor of Delaware, the news media, voters and the public at large. Her speech and petitioning related to matters of political, social and other concern to the community.

149. Plaintiff was acting in good faith and with honest motive at all times when she exercised her First Amendment rights to freedom of speech and to petition the government. At all

-26-

times, plaintiff believed that her speech was true and her speech
was in fact true.

150.  Plaintiff was not being disloyal by speaking out and
petitioning the government.  Rather, she has a duty as a sworn
police officer to uphold the U.S. Constitution.  In accord with
her duties, she sought to bring to light blatant violations of
the highest law in the land by the highest ranking police officer
in the State of Delaware.

151.  The public concern in and value to the community at
large of being free to hear plaintiff's speech and petition
outweighs any asserted government interest in the effective and
efficient provision of services.

152.  Nothing plaintiff said interfered with the regular
operations of the DSP.  Instead, DSP policy requires officers to
oppose sex discrimination in the workplace.  Plaintiff's speech
did not interfere with the DSP's interests in: crime fighting;
fostering trust and confidence among officers; protecting the
safety of officers or other members of the community.

153.  Plaintiff's speech did not threaten the authority of
defendants to run the DSP.

154.  Plaintiff's speech did not have a detrimental impact
on any close working relationship for which personal loyalty,
trust and confidence are necessary.  Plaintiff is not the alter
ego of defendants.  Organizationally, plaintiff is several ranks

-27-

below defendants Mitchell, Chaffinch and MacLeish in the chain of command.

155.   Any disruption that was caused in the DSP was not caused by plaintiff's speech but was instead caused by the very problems that plaintiff's speech was in fact intended to address – defendant Chaffinch's illegal conduct.

156.   In her position as a Captain in the DSP, plaintiff did not make or formulate DSP policy.  Rather, formulation of DSP policy is left up to the Superintendent and Deputy Superintendent of the DSP.

157.   As discussed above, defendants Mitchell, Chaffinch and MacLeish were aware that plaintiff had engaged in protected activity and were antagonized by it.

158.   The totality of the retaliatory adverse action taken by defendants against plaintiff is sufficient to deter a person of ordinary firmness from exercising their First Amendment right to freedom of speech.

159.   A reasonable person of ordinary firmness would be deterred from exercising their First Amendment right to freedom of speech when threatened with the release of highly confidential internal affairs material which state law guarantees will remain private.

160.   Plaintiff's constitutional right to freedom of speech has been denied under the First and Fourteenth Amendments to the

-28-

U.S. Constitution and 42 U.S.C. § 1983.

## COUNT III (PETITION CLAUSE RETALIATION)

161.   Plaintiff repeats and realleges paragraphs 1 - 160 set forth above.

162.   The totality of the retaliatory adverse action taken by defendants against plaintiff is sufficient to deter a person of ordinary firmness from exercising their First Amendment right to petition the government for redress of grievances.

163.   A reasonable person of ordinary firmness would be deterred from exercising their First Amendment right to petition the government for redress of grievances when threatened with the release of highly confidential internal affairs material which state law guarantees will remain private.

164.   Plaintiff's constitutional right to petition the government for redress of grievances has been denied under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

**Wherefore,** plaintiff prays that the Court:

I.    Enter judgment against the defendants.

II.   Enter a declaratory judgment declaring the acts of the defendants to be a violation of plaintiff's constitutional rights.

III.  Enter a judgment against the individual defendants for compensatory damages, including lost wages,

-29-

back pay, pension and other benefits, for future or front pay, loss of earning capacity, emotional distress, humiliation, embarrassment, and injury to reputation.

IV.    Enter a judgment against the individual defendants for punitive damages.

V.    Issue a mandatory injunction directing defendant Chaffinch, or his successor, to promote plaintiff immediately to the rank of major in the Delaware State Police.

VI.    Award front pay until plaintiff can be promoted.

VII.    Issue a reparative injunction directing that upon retirement plaintiff's pension and other benefits be calculated as if she had been promoted to the rank of major as of March 1, 2003.

VIII.    Issue a reparative injunction directing that the individual defendants place a signed document in plaintiff's personnel file indicating that she was qualified to be promoted to the rank of major, effective March 1, 2003, and that but for illegal conduct by the defendants she would have been promoted to that rank on that date, and apologizing to plaintiff for violating her constitutional rights.

-30-

A030

IX.   Enjoin the defendants from retaliating against
      plaintiff.

X.    Award plaintiff attorney's fees, costs and pre and
      post judgment interest for this action.

XI.   Require such other and further relief as the Court
      deems just and proper under the circumstances.


**THE NEUBERGER FIRM, P.A.**


*Thomas E. Neuberger*

**THOMAS S. NEUBERGER, ESQUIRE (#243)**
**STEPHEN J. NEUBERGER, ESQUIRE (#4440)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com


Attorneys for Plaintiff


Dated: December 6, 2004


-31-

## CERTIFICATE OF SERVICE

The undersigned, being a member of the bar of this Court, do hereby certify that on December 6, 2004, I caused two (2) copies of this **Amended Complaint** to be served on the counsel named below by the means indicated:

        Ralph K. Durstein III
        Dept. Of Justice
        102 West Water Street
        Dover, DE 19904-6750
        (U.S. Mail First Class Postage Prepaid)


                    STEPHEN J. NEUBERGER, ESQUIRE

Conley / Pleadings / First Amended Complaint.final


-32-

A032

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

BARBARA CONLEY                )
                         )
    Plaintiff,        )
                         )
    v.                )    C. A. No. 04-1394-GMS
                         )
STATE OF DELAWARE,           )
DIVISION OF STATE POLICE,    )
et al.,                      )
                         )
    Defendants.       )

## ANSWER OF DEFENDANTS
## TO FIRST AMENDED COMPLAINT

The defendants respond as follows to the First Amended Complaint. The numbered paragraphs in this Answer correspond to the numbered paragraphs in the First Amended Complaint. Unless expressly admitted or qualified, all of the allegations in the First Amended Complaint are generally denied.

1.    Denied, as to each and every particular.

2.    The jurisdiction of the Court is admitted, and venue in this District is proper.

3.    Admitted.

4.    Admitted.

5.    Admitted.

6.    Admitted.



7.    Denied as alleged.  The plaintiff is assigned to the Traffic Section.  The balance of the averment is admitted.

8.    Admitted.

9.    Admitted.

10.    Admitted.

11.    Denied as alleged.  The Division of State Police is a law enforcement organization.  The Secretary of Safety and Homeland Security appoints the Superintendent of the State Police with the written approval of the Governor.

12.    Admitted.

13.    Admitted.

14.    Denied.

15.    Denied as alleged.  Admitted only that Majors do not report directly to the Superintendent.  The balance of the averment is denied.

16.    Admitted.

17.    Admitted.

18.    Denied.

19.    Admitted only that the duties of Majors are well-defined.  The balance of the averment is denied as alleged.

20.    Admitted.

21.    Admitted.

22.    Admitted.

23.    Admitted.

24.    Admitted.

25.    Admitted.

26.   Denied as alleged.  The Field Operations Major for Kent and Sussex Counties also bears responsibility for Fatal Accident Investigation and Reconstruction units at Troop #3 and Troop #7, as well as Criminal Investigation Units at Troop #3 and Troop #4, as well as the Domestic Violence Unit.  The balance of the averment is admitted.

27.   Admitted.

28.   Denied.

29.   Admitted.

30.   Denied.

31.   Denied.

32.   Admitted.

33.   Admitted.

34.   Denied.

35.   Admitted.

36.   Denied.

37.   Denied.

38.   Admitted.

39.   Admitted.

40.   Denied.

41.   Denied.

42.   Denied.

43.   Denied.

44.   Denied.

45.   Denied.  Answering defendants are without sufficient knowledge or information to respond as to plaintiff's marriage.

46.   The allegation set forth in the first sentence is denied.  The balance of the averment is admitted.

47. Denied.

48. Denied.

49. Denied.

50. Denied as alleged. Colonel Chaffinch assumed command as alleged, and has not replaced a troop commander with a woman.

51. Admitted, except that the tenure of a troop commander may vary, depending upon a number of factors.

52. Denied as alleged. Admitted only that Captain Papili was transferred from her position as troop commander to a position as Officer in Charge of Information Technology.

53. Admitted only that the plaintiff was the second female Captain within the Delaware State Police when she was assigned to her position in the traffic Section in August of 2001. The balance of the averment is denied.

54. Denied as alleged. Admitted only that Captain Shamany was promoted in July of 2003, and was assigned as the ranking officer in the Administration of the State Bureau of Investigation. The balance of the averment is denied.

55. Denied.

56. Admitted.

57. Admitted.

58. Denied as alleged. Admitted only that Major Swiski retired in March of 2003, and Captain Eckrich was appointed to replace him. The balance of the averment is denied.

59. Denied.

60. Admitted.

61.    Denied as alleged.  Admitted only that Captain Hughes was appointed to the position.  The balance of the averment is denied.

62.    Denied.

63.    Denied.

64.    Denied.

65.    Denied.

66.    Denied.

67.    Denied.

68.    Denied.

69.    Denied.

70.    Denied.

71.    Denied.

72.    Denied.

73.    Denied.

74.    Denied.

75.    Denied.

76.    Denied.

77.    Denied.

78.    Answering defendants restate and incorporate herein by reference thereto the responses set forth in paragraphs 1 through 77 above.

79.    Denied.

80.    Denied.

81.    The averment calls for a legal conclusion, and is therefore denied.

82.    Denied.

83.    Denied.

84.    Denied.

85.    Denied.

86.    Denied.

87.    Denied.

88.    Denied.

89.    Admitted.

90.    Denied.

91.    Denied.

92.    Denied.

93.    Denied.

94.    The first sentence is admitted.  The second sentence is denied.

95.    Denied as alleged.  Approximately 11% of Delaware State Police officers are women.

96.    Denied as alleged.  6.67% of Majors, Captains, and Lieutenants are female.

97.    Denied.

98.    Denied.

99.    The first sentence is admitted, by information and belief.  The second sentence is denied.

100.    Denied.

101.    Denied.

102.    Denied.

103.    Denied.

104.    Denied.

105.    Denied.

106.    Answering defendants restate and incorporate herein by reference thereto the responses set forth in paragraphs 1 through 105 above.

107.    Admitted.

108. Admitted.

109. Denied as alleged. The defendants only became aware of the lawsuit through media publicity, and were not personally served until December. The balance of the averment is denied.

110. Denied.

111. Denied.

112. To the extent that the averment calls for a legal conclusion, it is denied. Denied that any confidential information was disclosed by the defendants.

113. Denied.

114. Denied.

115. The answering defendants are without sufficient information or knowledge to respond, and the averment is therefore denied.

116. Denied as alleged. Admitted only that a reporter contacted Lt. Aviola concerning information the reporter had learned from another source.

117. Denied as alleged. Admitted only that Lt. Aviola delayed responding to the inquiry until he could seek advice on the scope of any response.

118. Denied.

119. Denied.

120. Denied.

121. Denied.

122. Denied as alleged. Admitted only that Aviola confirmed only the non-confidential information the reporter had already learned from another source. The balance of the averment is denied.

123. Denied that any confidential material was discussed, or that any law was violated.

124.  Denied.

125.  Denied.

126.  Denied.

127.  Denied.

128.  The averment calls for a purely legal conclusion, and is therefore denied.

129.  The first sentence is denied.  The second sentence is admitted.

130.  Admitted.

131.  Admitted.

132.  Admitted.

133.  Admitted.

134.  Admitted.

135.  Admitted.

136.  Admitted.

137.  Admitted.

138.  Denied.

139.  Denied as alleged.  The letter speaks for itself.

140.  Admitted.

141.  Admitted.

142.  Denied.

143.  Denied.

144.  Denied.

145.  Denied.

146.  Denied.

147.  Denied.

148.  Denied.

149.  Denied.