Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CAPTAIN BARBARA L. CONLEY,             )
                                       )
            Plaintiff,                 )
                                       )    Civil Action
v.                                     )    No. 04-1394-GMS
                                       )
COLONEL L. AARON CHAFFINCH,            )
individually and in his official       )
capacity as the Superintendent,        )
Delaware State Police; LIEUTENANT      )
COLONEL THOMAS F. MACLEISH,            )
individually and in his official       )
capacity as the Deputy Superintendent,)
Delaware State Police; DAVID B.        )
MICHELL, individually and in his       )
official capacity as Secretary of the  )
Department of Safety and Homeland      )
Security, State of Delaware; and       )
DIVISION OF STATE POLICE, DEPARTMENT   )
OF SAFETY AND HOMELAND SECURITY,       )
State of Delaware,                     )
                                       )
            Defendants.                )

          Deposition of CORPORAL THOMAS F. MacLEISH
taken pursuant to notice at the law offices of The
Neuberger Firm, P.A., 2 East 7th Street, Suite 302,
Wilmington, Delaware, beginning at 9:40 a.m. on Thursday,
June 9, 2005, before Kathleen White Palmer, Registered
Merit Reporter and Notary Public.
APPEARANCES:
          STEPHEN J. NEUBERGER, ESQUIRE
          THE NEUBERGER FIRM, P.A.
            2 East 7th Street - Suite 302
            Wilmington, Delaware  19801
            for the Plaintiff
-----------------------------------------------------------
                     WILCOX & FETZER
      1330 King Street - Wilmington, Delaware 19801
                     (302) 655-0477

Wilcox & Fetzer, Ltd.          Professional Court Reporters          (302)655-0477

| Conley | v. | Chaffinch, et al. |
|---|---|---|
| Corporal Thomas F. MacLeish | C.A. # 04-1394-GMS | June 9, 2005 |

Page 2

```
1   APPEARANCES (Continued):
2
        RALPH K. DURSTEIN, ESQUIRE
3       STEPHANI J. BALLARD, ESQUIRE
        DEPARTMENT OF JUSTICE
4       820 North French Street
        Carvel State Office Building
5       Wilmington, Delaware  19801
        for Defendants Lieutenant Colonel Thomas F.
6       MacLeish, David B. Mitchell, and Division
        of State Police
7
    ALSO PRESENT:
8
        CAPTAIN BARBARA L. CONLEY
9       JASON ULRICH, Law Clerk
10          - - - - -
11      CORPORAL THOMAS F. MACLEISH,
12      the witness herein, having first been
13      duly sworn on oath, was examined and
14      testified as follows:
15  BY MR. NEUBERGER:
16      Q.  Colonel MacLeish, my name is Steve Neuberger and
17  I represent Captain Barbara Conley.  Okay?
18          Are you aware that a lawsuit has been filed
19  in this case?
20      A.  Yes, I am.
21      Q.  Are you aware Captain Conley is the plaintiff in
22  this lawsuit?
23      A.  Yes, I am.
24      Q.  Are you aware that now-retired Colonel Chaffinch
```

Page 3

```
1   is a defendant in the lawsuit?
2       A.  Yes, I am.
3       Q.  Are you aware you are also a defendant in this
4   lawsuit?
5       A.  Yes, I am.
6       Q.  As well as Secretary Mitchell?
7       A.  Yes, I am.
8       Q.  And the Division of State Police?
9       A.  Yes, I am.
10      Q.  Have you ever testified in court before?
11      A.  Yes, I have.
12      Q.  Approximately how many times?
13      A.  An actual number?
14      Q.  Ballpark.
15      A.  Hundreds.
16      Q.  Have you ever had your deposition taken before?
17      A.  Yes.
18      Q.  Approximately how many times?
19      A.  Twenty to 30.
20      Q.  My office has taken your deposition before,
21  hasn't it?
22      A.  Yes, it has.
23      Q.  In the Foraker case?
24      A.  Yes, it was.
```

Page 4

```
1       Q.  I'm going to ask you some questions and the
2   court reporter here is going to type up your answers to
3   those questions.  Okay?
4       A.  Yes, sir.
5       Q.  We have to take turns talking.  If we talk at
6   the same time, the court reporter, although she is very
7   good, can't get everything down, so we have to take
8   turns.  Do you understand that?
9       A.  Yes, I do.
10      Q.  Also, you have to verbalize your answers.  For
11  example, instead of nodding your head, you have to say
12  yes, or instead of shaking your head, you have to say no.
13          Do you understand that?
14      A.  Yes, I do.
15      Q.  After we are done here today, you'll have an
16  opportunity to review the transcript of this deposition
17  to make any corrections for typographical errors.
18          Do you understand that?
19      A.  Yes, I do.
20      Q.  If I ask you a question and you don't
21  understand, just ask me to rephrase it.  I do not want
22  you to guess.  Do you understand that?
23      A.  Yes, I do.
24      Q.  If you don't know the answer to a question, just
```

Page 5

```
1   say no.  Again, I don't want you to guess.
2           Do you understand that?
3       A.  Yes, I do.
4       Q.  Now, are you taking any medications or is there
5   anything else going on in your life that would prevent
6   you from testifying truthfully or remembering accurately
7   today?
8       A.  No.
9       Q.  If you need any breaks, if you need to stretch
10  out your back or something like that, just let me know.
11  Okay?
12      A.  Yes.
13      Q.  Now, you've taken an oath to tell the truth
14  today; correct?
15      A.  Yes, I have.
16      Q.  Do you understand the significance of that oath?
17      A.  Yes, I do.
18      Q.  There's a State Police rule and regulation which
19  is generally known as the dishonesty rule; isn't that
20  right?
21      A.  Could you be more specific?
22      Q.  Can state police officers be punished for
23  testifying falsely under oath?
24      A.  Yes, they can.
```

2 (Pages 2 to 5)

| Conley | v. | Chaffinch, et al. |
|---|---|---|
| Corporal Thomas F. MacLeish | C.A. # 04-1394-GMS | June 9, 2005 |

Page 6

1  Q. Is testifying truthfully under oath a big deal
2  in the State Police?
3  A. Yes.
4  Q. Okay. Thank you.
5      Now, what's your full name?
6  A. Thomas Frederick MacLeish.
7  Q. What is your current rank?
8  A. Colonel.
9  Q. When were you born?
10 A. August 24th, 1954.
11 Q. Where were you raised?
12 A. Kind of a little bit all over, but for the most
13 part, Kent County, Delaware.
14 Q. Could you walk me through your education from
15 high school to today?
16 A. Graduated Dover High School in 1972. Went to
17 the US Air Force. Got out of the Air Force in 1976.
18     Began -- I took some courses at the latter
19 part of my military career, college preparatory courses
20 on base at Langley Air Force Base, then began at DelTech,
21 Terry Campus, in the criminal justice technology field.
22 Got my associate from there.
23     After one year full-time work there, I
24 went -- I was hired by the State Police. I returned to

Page 7

1  college to finish my associate's degree in, I believe it
2  was, '79 and finished up in '81.
3      I took about a two-year break and went to
4  Wilmington College and graduated from Wilmington College,
5  I believe it was 1986, may have been '87, with a
6  bachelor's degree.
7  Q. Do you have a master's degree?
8  A. No, I do not.
9  Q. Do you have a Ph.D.?
10 A. No, I don't.
11 Q. What was your first year in the State Police?
12 When did you start?
13 A. I began in October 1977.
14 Q. So how many years have you been on the force,
15 then?
16 A. I've been on a full 27. I'm in my 28th year.
17 Q. Could you walk me through your promotional
18 history and assignments since you were a recruit trooper?
19 A. Sure.
20 Q. Along with the years when, to the best of your
21 recollection, when you were stationed wherever?
22 A. Sure.
23     I began 1977, went into the State
24 Police academy. I graduated from there in March. Was

Page 8

1  assigned to Troop 4 in Georgetown as a patrol trooper. I
2  spent until November of 1979 assigned to Troop 4 in a
3  patrol function. Was transferred to Troop 3 in Camden,
4  or Woodside. And I spent till May of '82 assigned as a
5  patrol trooper at Troop 3.
6      Then I went to undercover work and I worked
7  out of Troop 9 and I worked the entire state at that
8  point. I was in state undercover until -- I believe it
9  was February of '84. And I was reassigned back to patrol
10 duty at Troop 3. '84 -- '84-85 -- I was pretty much
11 assigned to the patrol function. I had a short stint in
12 there where I was assigned to the fatal accident team.
13 That was before the establishment of the statewide fatal
14 accident investigation team. They only had it in
15 New Castle County.
16     We put one together at Troop 3 and in
17 Sussex County, but just speaking of Troop 3, I was
18 temporary assigned down there.
19     I tested for sergeant. Made sergeant.
20 Took my first shift at Troop 3, I believe it was June --
21 either '85 or '86. I think it was '85. In June of '85 I
22 was promoted to sergeant. And then I spent a year as a
23 shift commander.
24     The following year I went down to take over

Page 9

1  the fatal accident investigation team there at Troop 3
2  for Kent County. Spent a year in that assignment.
3      Was then promoted to lieutenant. And
4  remember, these promotions, they were six months lag.
5  You would get the position and they'd test drive you and
6  then after six months, you would get your promotion,
7  but...
8      So I went to headquarters as the deputy
9  director of traffic, and I was there from 1987 to 1989.
10     In '89 I went to the National Academy.
11 Shortly after -- I went to the National Academy from
12 October 1989 through June of 1989. In August, on August
13 the 1st I was transferred to Troop 3 as the traffic
14 lieutenant. And I was there for 14 months and 20 days.
15 October -- it was about October 20th, '90 -- no. In '90
16 I was transferred back to headquarters as a lieutenant to
17 take over the traffic section. I ran the traffic section
18 from October 20th, 1990, to the beginning of October '91.
19     In October '91 I was promoted to captain.
20 Stayed there from October of '91 through March of '92.
21 In March '92 I was transferred to Troop 3 as a troop
22 commander. And I stayed there until December 31st of
23 '93. And then January the 1st, '94, I became the troop
24 commander at Troop 5. And I stayed there until July 31st

| Conley | v. | Chaffinch, et al. |
|---|---|---|
| Corporal Thomas F. MacLeish | C.A. # 04-1394-GMS | June 9, 2005 |

**Page 10**

1  of 1994.
2        Then in July '94, July 30th -- and these --
3  July of '94, I'm pretty sure it was the 31st I finished
4  as troop commander at Troop 5. Went to headquarters and
5  ran planning for a year. I ran it from August the 1st
6  through July 31st, '95. July 31st, '95, I was
7  transferred to headquarters, another assignment. I ran
8  the community services section.
9        From there, from August the 1st, '95, till
10  March -- approximately March of '98 I was the community
11  services director. In March of '98 I was transferred to
12  the video lottery enforcement unit and I ran that unit
13  until June of 2001.
14        In June of 2001 I was promoted to major and
15  took on the responsibilities of the operations also for
16  Kent and Sussex County on executive staff. I was in that
17  position until July of '03.
18        And in July of '03 I assumed the
19  responsibility of the deputy superintendent of the
20  division. And in November of that year I was promoted to
21  lieutenant colonel. So that's November of '03.
22        I held that position up until five weeks
23  ago tomorrow when I was fortunate enough to be selected
24  as the superintendent of the division.

**Page 11**

1   Q.  Would it be fair to say that that is a great
2  honor?
3   A.  It's a tremendous honor.
4   Q.  Now, if we needed to serve you any kinds of
5  papers in this case, would it be best for us to do that
6  at headquarters or would you prefer we do that at your
7  home?
8   A.  No. I prefer that at headquarters.
9   Q.  So that's --
10   A.  My kids tend to think that I spend more time
11  there than I do at home, anyway.
12   Q.  It's like a home away from home?
13   A.  Yes, it is.
14   Q.  Fair enough.
15        You've been a police officer for more than
16  27 years; is that right?
17   A.  Yes, sir.
18   Q.  Do you know under our form of government the
19  highest law in the land is something called the
20  United States Constitution?
21   A.  Yes, I am.
22   Q.  Is the US Constitution something that is
23  important in the Delaware State Police?
24   A.  Yes, it is, very important.

**Page 12**

1   Q.  Is it something that is personally important to
2  you?
3   A.  Yes, it is.
4   Q.  Are you aware that there's something called a
5  Bill of Rights?
6   A.  Yes, I am.
7   Q.  Is that important in the Delaware State Police?
8   A.  Yes, it is.
9   Q.  Is it important to you, personally?
10   A.  Yes, it is.
11   Q.  Are you aware that there have been amendments to
12  the United States Constitution?
13   A.  Yes, I am.
14   Q.  Are those amendments important to the Delaware
15  State Police?
16   A.  Yes, they are.
17   Q.  Are they important to you, personally?
18   A.  Yes, they are.
19   Q.  As a police officer you've been trained to obey
20  the United States Constitution and its amendments;
21  correct?
22   A.  That's correct.
23   Q.  For example, you've been trained in laws of
24  search and seizure and things of that nature under the

**Page 13**

1  Fourth Amendment?
2   A.  That's correct.
3   Q.  You've been trained in laws governing other
4  certain Constitutional rights?
5   A.  Yes, I have.
6   Q.  Do you know that under the United States
7  Constitution you can't discriminate against an officer in
8  transfers or in promotions because of their race;
9  correct?
10   A.  That's correct.
11   Q.  Do you know that you can't discriminate against
12  an officer in promotions or transfers because of their
13  sex or gender; correct?
14   A.  That's correct.
15   Q.  That's because the 14th Amendment of the
16  United States Constitution forbids that; correct?
17   A.  Yes.
18   Q.  You know that you can't transfer or punish an
19  officer because of where he goes to church; correct?
20   A.  That's correct.
21   Q.  Or because of how he votes?
22   A.  That's correct. He or she.
23   Q.  He or she.
24        You know you can't punish an officer who