IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **CAPTAIN BARBARA L. CONLEY,** | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| **COLONEL L. AARON CHAFFINCH,** | : C.A.No.04-1394-GMS |
| individually and in his official capacity as the | : |
| Superintendent, Delaware State Police; | : |
| **LIEUTENANT COLONEL THOMAS F.** | : |
| **MACLEISH,** individually and in his official | : |
| capacity as the Deputy Superintendent, | : |
| Delaware State Police; **DAVID B. MITCHELL,** | : |
| individually and in his official capacity as | : |
| Secretary of the Department of Safety and | : |
| Homeland Security, State of Delaware; and | : |
| **DIVISION OF STATE POLICE,** | : |
| **DEPARTMENT OF SAFETY AND** | : |
| **HOMELAND SECURITY, STATE OF** | : |
| **DELAWARE,** | : |
| | : |
| Defendants. | : |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HER MOTION TO BIFURCATE THE TRIAL OF COUNT ONE FROM COUNTS TWO AND THREE OR IN THE ALTERNATIVE TO SEVER COUNT ONE FROM COUNTS TWO AND THREE**

THE NEUBERGER FIRM, P.A.
THOMAS S. NEUBERGER, ESQ. (#243)
STEPHEN J. NEUBERGER, ESQ. (#4440)
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: October 7, 2005         Attorneys for Plaintiffs

**TABLE OF CONTENTS**

ARGUMENT..................................................................................................................................1

    I.      DEFENDANTS MISSTATE THE RECORD AND MISUNDERSTAND THE BASIC FEDERAL RULES OF EVIDENCE AND CIVIL PROCEDURE WHICH GOVERN THIS CASE.......................................................1

          A.      Col. Pepper's Testimony................................................................................1

          B.      Captain Dixon's Testimony..........................................................................1

          C.      Captain Conley's Sworn Answers to Interrogatories....................................2

          D.      Col. MacLeish and Major Swiski's Testimony............................................2

          E.      Chaffinch's Violation of the Bradley Report................................................3

          F.      The Challenged Retaliatory Acts..................................................................4

          G.      Reason for the Inclusion of the Factual Record............................................4

    II.     THE COURT SHOULD EXERCISE ITS SOUND DISCRETION AND BIFURCATE THE TRIAL OR, IN THE ALTERNATIVE, SEVER THE COUNTS...........................................................................................................5

CONCLUSION...............................................................................................................................7

## TABLE OF AUTHORITIES

**Cases**     **Page**

<u>Breitigan v. New Castle County</u>, 350 F.Supp.2d 571 (D.Del. 2004)..............................................2

**Rules**

Fed.R.Civ.P. 21..........................................................................................................................7

Fed.R.Civ.P. 33..........................................................................................................................2

Fed.R.Civ.P. 42(b).....................................................................................................................7

Fed.R.Civ.P. 56(c).....................................................................................................................2

Fed.R.Evid. 801(c).....................................................................................................................2

Fed.R.Evid. 801(d)(2).............................................................................................................2-3

## ARGUMENT

I.  **DEFENDANTS MISSTATE THE RECORD AND MISUNDERSTAND THE BASIC FEDERAL RULES OF EVIDENCE AND CIVIL PROCEDURE WHICH GOVERN THIS CASE.**

Defendants' brief reflects a basic misunderstanding of the record, the rules of evidence, the rules of civil procedure and many fundamentals of civil practice.

**A. Col. Pepper's Testimony.** Defendants assert that plaintiff has misrepresented the factual record. For example, defendants repeatedly claim that retired Col. Pepper's testimony stands for the opposite proposition for which it was cited. (AB at 7-8). But contrary to defendants' assertions, plaintiff did not cite Col. Pepper's testimony for the proposition that he heard defendant Chaffinch call plaintiff the sexually offensive term "bitch." (AB at 7). Instead, as plaintiff's Opening Brief very clearly indicates, it was Major Baylor - of Chaffinch's own Executive Staff - who testified to that fact. (OB at 5 - Baylor 31; A172). A "see" cite is then given to Col. Pepper's testimony where he testified that calling a female subordinate police officer a "bitch" is inappropriate conduct for the Superintendent of the DSP. (OB at 5 - Pepper 29; A52).

Similarly, defendants falsely claim that plaintiff inaccurately cited Col. Pepper's testimony as supportive of the fact that Chaffinch repeatedly demeans female commanders by publically nicknaming them after most wanted fugitives. (AB at 7-8). Instead, plaintiff's brief clearly indicates that Captain Dixon and plaintiff herself testified to that fact. (OB at 5 - Dixon 55-56; Conley 35-36; A146,435-36). Again, a "see" cite is then given to Col. Pepper's testimony that this is inappropriate workplace conduct for a Colonel of the DSP. (OB at 5 - Pepper 32-33; A53).

**B. Captain Dixon's Testimony.** Defendants also attack Capt. Dixon's testimony

1

regarding Chaffinch's sexist limericks, statements and other offensive remarks as being "hearsay testimony" (AB at 7), and thus inadmissible evidence. This is a remarkable assertion about party admissions.

Defendant Chaffinch is a party to this case. Capt. Dixon's sworn deposition testimony about the never-ending barrage of sexually offensive statements made by Chaffinch that Capt. Dixon heard with his own two ears are, by definition, not hearsay. See Fed.R.Evid. 801(c) (definition of hearsay); 801(d)(2) (definition of an admission). Indeed, even a law student who has taken Evidence would know that such a statement is not hearsay, but a party admission. Cf. Breitigan v. New Castle County, 350 F.Supp.2d 571, 580 n.7 (D.Del. 2004) (observing that lawyers practicing before this Court are held, at a bare minimum, to the knowledge that a first year law student would have).

**C. Captain Conley's Sworn Answers to Interrogatories.** Defendants also appear to claim that Capt. Conley's sworn interrogatory responses have no evidentiary value. (AB at 7 n.3).

Earlier in this case, defendants propounded interrogatories to plaintiff under Fed.R.Civ.P. 33. (See D.I. 68). Plaintiff then responded with her sworn answers to defendants' interrogatories. (See D.I. 72). In the Federal Rules, sworn answers to interrogatories are the equivalent of sworn testimony. For example, answers to interrogatories themselves may prevent summary judgment. See Fed.R.Civ.P. 56(c). One would think that this point to be so fundamental as to be beyond dispute.

**D. Col. MacLeish and Major Swiski's Testimony.** Defendants also complain that plaintiff included sworn deposition testimony from other cases as part of the record. (AB at 1). This complaint also is meritless.

2

First, Col. MacLeish was identified as a witness in plaintiff's Rule 26 disclosures (see D.I. 55), and is an individual defendant in this retaliation case (and several others). All of his sworn testimony is an admission of a party-opponent under Fed.R.Evid. 801(d)(2). The fact he recently testified that he is "joined at the hip" to Chaffinch, and further testified as to how much he admires him and "feel[s] very strongly" that he is an "honorable man" who was "a good leader for the DSP," certainly gives him a motive to retaliate against plaintiff who by her lawsuit exposed his friend's vile conduct to the light of day. (MacLeish 9-12; A296-297). The citation of this testimony is entirely appropriate.

Similarly, retired Major Swiski was identified by plaintiff as a witness in her Rule 26 disclosures (see D.I. 55), and his testimony also is proper. Major Swiski - who served on Chaffinch's Executive Staff - testified that Chaffinch "has a reputation for not being very truthful." (Swiski 57; A498). Plaintiff does not need to call him again to ask him the same question for the second time. The citation to the testimony of this witness is entirely appropriate.[1]

**E. Chaffinch's Violation of the Bradley Report.** Defendants also distort the record and claim that the Bradley report was not something that the DSP was supposed to follow. (AB at 5-6). First, defendants ignore the testimony of their own client on this issue. Chaffinch himself testified that as a result of the Bradley Report, the State Personnel Office "was supposed to get involved with the personnel function at the State Police." (Chaffinch 172; A124). Secondly, defendants also ignore the plain meaning of the testimony of retired Lt. Col. Marcin - Chaffinch's second in command at the time.

---

[1] Both of these depositions arise from cases also involving defendants. See Foraker v. Chaffinch, et al., C.A.No. 04-1207-GMS (D.Del.), Price, et al. v. Chaffinch, et al., C.A.No. 04-956-GMS (D.Del.), Dillman v. Chaffinch, et al., C.A.No. 02-509-KAJ (D.Del.).

3

(See Marcin 29-44; A73-77). For example, defendants ignore the very portions of Marcin's testimony that they quote and block cite in their own brief. (AB at 6). On those pages, Marcin testified at length that the State Personnel Office "should have been consulted" and brought into the loop as part of the promotions process to ensure fairness. (Marcin 42: A77) (AB at 6). That was the "intent" of the Bradley report. (Marcin 41-42; A76-77) (AB at 6). But as both Marcin and Chaffinch testified, Chaffinch refused to do so. (Marcin 38; Chaffinch 172-173; A76,124).

**F. The Challenged Retaliatory Acts.** The defense assertion that plaintiff is challenging the "routine notice" of a pending hearing is a red herring. (AB at 20). Instead, as discussed in plaintiff's Opening Brief, the retaliatory acts are: (1) the leaking of this statutorily protected internal DSP document to the Delaware media; (2) refusing to conduct an investigation into this release; and (3) discussing plaintiff's confidential internal affairs matters with the Delaware media in violation of Delaware law, as well as numerous DSP policies, practices and procedures. (See OB at 10-12, 16-20).

**G. Reason for the Inclusion of the Factual Record.** Defendants also complain that plaintiff included the factual record in her brief for inappropriate reasons. (AB at 3). This claim, like all of the others, is wrong.

The factual record was included by plaintiff to demonstrate the bona fides of her charges of discrimination and retaliation in light of the discovery that has thus far taken place.[2] In light of the extensive record evidence thus far revealed, this evidence

---

[2] The state of discovery has changed since plaintiff's Opening Brief was submitted. Despite only ever identifying four witnesses in their Rule 26 disclosures in April 2005 (see D.I. 56), at this late date, the non-Chaffinch defendants have recently identified approximately 25 more witnesses who now may need to be deposed. (See D.I. 82).

4

demonstrated to the Court that the issue of bifurcation or severance is ripe for adjudication and will not be mooted by any frivolous defense motion for summary judgment. As even a quick read of plaintiff's Opening Brief reveals, summary judgment for defendants is not a realistic possibility. Plaintiff's brief demonstrates that on the law and the facts to date there is no conclusion that can be drawn other than that, at the least, material disputes of fact exist under all of plaintiff's legal theories. Long established law will allow plaintiff's claims to go to the jury since the Rule 56 standard has been surmounted. The facts contained in the depositions, answers to interrogatories and the documents will allow a reasonable jury to return a verdict on all of plaintiff's claims. Accordingly, plaintiff's pending bifurcation motion will not be mooted and it should be timely addressed.[3]

## II.   THE COURT SHOULD EXERCISE ITS SOUND DISCRETION AND BIFURCATE THE TRIAL OR, IN THE ALTERNATIVE, SEVER THE COUNTS.

Defendants appear to present four distinct arguments in opposition to plaintiff's motion. First, they claim that "the same evidence ... [will] be presented as to each claim" and offer a paragraph of text in support of this claim. (AB at 20). Plaintiff respectfully submits that the text of this paragraph is nonsensical. Specifically, it is a *non sequitur* - the conclusion does not follow from the premise. The filing of this lawsuit (in 2004) and the release of plaintiff's internal affairs information (also in 2004) has no bearing upon plaintiff's qualifications for two promotions that were made in 2003. On this issue, plaintiff further relies upon the well-reasoned argument contained in her Opening Brief.

---

[3] In light of the recent defense motion to stay this issue until summary judgment is decided (D.I. 86), plaintiff will address this issue in greater detail in her Answering Brief in opposition to the defense motion.

(OB at 26-28).

Second, defendants claim that the presentation plaintiff's discrimination case to the jury will not be prejudiced by the facts underlying the retaliation count. (AB at 21). This claim is without merit and plaintiff relies upon the well-reasoned analysis contained in her Opening Brief. (OB at 30, 2-3, 28-29).

Third, defendants claim that trial will cause delay and that two separate trials simply cannot be conducted in the ten days allotted. (AB at 20, 21, 18 n.10). This argument also is meritless. Attorneys who regularly practice before the District of Delaware in general, and this Court in particular, have no problem trying cases within such time parameters. For example, in the recent past, counsel tried another Fourteenth Amendment discrimination action against defendant Chaffinch in five days and had no problems doing so. See Bullen, et al. v. Chaffinch, et al., C.A.No.02-1315-JJF (D.Del.) (January 12th - 16th, 2004). In the same way, counsel also recently tried a First Amendment speech and petition clause retaliation case against a non-Chaffinch defendant in four days and there were no problems to be found. See Springer v. Henry, C.A.No.00-885-GMS (D.Del.) (March 29th - April 1, 2004). Thus, plaintiff's request to bifurcate the 10 days already allotted for trial into two smaller trials of 6 and 4 days each is not "wildly optimistic" as defendants baselessly allege. (AB at 21). Instead, it is quite reasonable and is based upon past practice and the basic ability of an attorney to tailor the presentation of his case to fit within the time allotted by the Court. If the Court orders six and four day trials, plaintiff will present her case accordingly.

Lastly, defendants claim that plaintiff's case may not be bifurcated because plaintiff is bound by her decision to amend her Complaint to include defendants' illegal

6

retaliation against her, rather then file a separate retaliation lawsuit. (AB at 19, 24, 17). Like the laundry list of empty claims listed above, this one also is without merit.

Had plaintiff filed a separate retaliation lawsuit against defendants Chaffinch, MacLeish and Mitchell, no doubt defendants would be taking the same position in this case that they have already taken in the <u>Foraker v. Chaffinch, et al.</u> and <u>Price, et al. v. Chaffinch, et al.</u> cases referenced in footnote one above - that the cases should be combined for the purposes of discovery and merged for trial.

But more importantly, defendants have cited no legal authority to support their position that a plaintiff who is forced to amend her lawsuit because of retaliation against her by a defendant may not invoke the protections of Rules 42(b) and 21 of the Federal Rules of Civil Procedure. The plain text of Rules 42(b) and 21 themselves contain no such limitation on their use. There are no qualifiers in the case law interpreting these Rules that supports such a claim. Instead, several factors have developed throughout the case law. And it is consideration of these factors, in conjunction with the text of the Rules and the exercise of the Court's informed discretion which determines whether bifurcation or severance is appropriate. An *ipse dixit* claim is plainly insufficient without any precedent. As discussed in plaintiff's Opening Brief, the law and the equities of our situation weigh in favor of bifurcation or severance. (OB at 25-33).

## **CONCLUSION**

For the above stated reasons, and those contained in plaintiff's Opening Brief, the Court in the sound exercise of its discretion should either bifurcate the trials of count one from counts two and three, or alternatively sever counts one from counts two and three.

        Respectfully Submitted,

        **THE NEUBERGER FIRM, P.A.**

        /s/ Stephen J. Neuberger
        **THOMAS S. NEUBERGER, ESQ. (#243)**
        **STEPHEN J. NEUBERGER, ESQ. (#4440)**
        Two East Seventh Street, Suite 302
        Wilmington, Delaware 19801
        (302) 655-0582
        TSN@NeubergerLaw.com
        SJN@NeubergerLaw.com

Dated: October 7, 2005        Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on October 7, 2005, I electronically filed this **Brief** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

>Ralph K. Durstein III, Esquire
>Department of Justice
>Carvel State Office Building
>820 N. French Street
>Wilmington, DE 19801
>
>James E. Liguori, Esquire
>Liguori, Morris & Yiengst
>46 The Green
>Dover, DE 19901

>/s/ Stephen J. Neuberger
>**STEPHEN J. NEUBERGER, ESQ.**

Conley/ Briefs / Conley - Sever RB.final