IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BARBARA CONLEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 04-1394-GMS |
| | ) | |
| STATE OF DELAWARE, | ) | |
| DIVISION OF STATE POLICE, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RESPONSE OF DEFENDANTS DELAWARE STATE POLICE, MACLEISH, AND MITCHELL IN OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL**

The defendants Division of State Police, MacLeish, and Mitchell oppose the Motion filed on behalf of the Plaintiff, seeking to disqualify Mr. Ligouri as counsel for the defendant Chaffinch. These defendants would be severely prejudiced if this matter were disrupted by the substitution of new counsel at this late stage. Plaintiff's Motion is barred by the equitable doctrines of laches and estoppel. She effectively waived any right to object to counsel by failing to raise the conflict issue in the year since Mr. Ligouri's first involvement in the case, the nine months since his formal entry of appearance, and the six months since her lawyer informally discussed it with Mr. Ligouri. She and her lawyers have remained curiously silent, despite her detailed recollections of the prior representation, seventeen years ago. She has failed to offer any credible explanation for her failure to act. Contrary to her claims, her job performance, including past discipline, has always been an issue in this case. The Court should not permit her to raise the issue now for purely tactical reasons, when she could and should have brought it to the Court's attention a year ago.

A. Facts

Defense counsel identified a potential conflict of interest in representation to Colonel Chaffinch, and subsequently to the Court and plaintiff's lawyers, in December of 2004. Counsel indicated that Mr. Ligouri had been retained to represent Colonel Chaffinch in a related disciplinary matter, and would be entering an appearance in this lawsuit on his behalf. The Court urged counsel to expedite the entry of Mr. Ligouri, in order that discovery could proceed. An Entry of Appearance was filed by Mr. Ligouri, on behalf of the defendant Chaffinch, on March 23, 2005 [Docket Entry #52].

The Plaintiff has acknowledged in her "Unsworn Declaration" at ¶4, recalling that Mr. Ligouri had briefly represented her in 1988 in a police disciplinary matter. She was thus admittedly aware of this potential issue, and able to address it with her lawyers, in December of 2004. However, Plaintiff took no action of record to raise an issue of conflict of interest on the part of Mr. Ligouri until December 15, 2005, a year later.

The plaintiff has a long history of censures and discipline, including a total of fifteen different charges from 1984 to 2004. Among these are the matters seventeen years ago, as to which she consulted with Mr. Ligouri. These matters appear on documents found in her "Troop File", which she recently provided to the defendants through her attorneys. At her deposition, the plaintiff was questioned on these and other documents reflecting poor performance, reprimands, Internal Affairs investigations, and other disciplinary actions.

Mr. Ligouri has never revealed any information concerning his past contact with the plaintiff to either of the undersigned defense counsel.[1] His only comment has been that he "does not recall anything about it". He has not provided any documents or insights or information of any kind, let alone any confidential information, to counsel. Undersigned counsel were unaware of the nature of his past contact with the plaintiff, until recently reviewing copies of disciplinary documents contained in the "Troop File" which included a reference to him. At that point, Mr. Ligouri advised that plaintiff's counsel had privately raised the issue with him at Colonel Chaffinch's deposition in June of 2005, and had advised that it would not be a problem.

---

[1] Counsel will supplement the record with Affidavits to this effect.

Contrary to plaintiff's claims, it is not the defendants who placed her employment history, her performance deficiencies, her conduct, or her disciplinary record at issue in this case. Rather, she placed her entire State Police record before the Court, by claiming in her lawsuit that she was better qualified for promotion than any of the twenty-one Delaware State Police officers holding the rank of Captain in 2003. In so doing, she has placed her qualifications, including her conduct, job performance, and disciplinary record, squarely at issue in this case. For example, in paragraph 7 of her Amended Complaint, she refers to her twenty-two and a half years of service. In ¶8, she reaches back to 1979 in reciting her academic record, as bearing on her suitability for promotion. In ¶10, she relies on her experience in patrol at Troop #5 from 1982 to 1993 (including the time frame of the disciplinary matters on which she consulted with Mr. Ligouri). In her allegations about the conduct of Colonel Chaffinch, the plaintiff reaches back at least as far as 1987 in relating behavior on social occasions. It was therefore not simply foreseeable, but rather inevitable, that the plaintiff would be confronted with her disciplinary history in the course of this litigation. If she had any concerns about Mr. Ligouri, she and her lawyers had an obligation to raise them in December 2004, not in December 2005.

Nor did the plaintiff's long disciplinary history only become an issue in the case "recently", as her lawyers would have the Court believe. She has had full knowledge of the discipline reflected in her "Troop File", which has been in her possession.[2] The defendants have produced the entire contents of her employment and medical files, which she in any event could have reviewed as an employee at any time. The files of Major Eckrich and Major Hughes [the two officers whose promotions to Major the plaintiff attacks], and of Colonel Chaffinch have also been produced. Each of these officers has undergone extensive deposition questioning by the plaintiff lawyers (the same lawyers who now claim to be surprised by references to the plaintiff's disciplinary history) concerning their entire Delaware State Police careers, including any disciplinary matters in their files. Neither the plaintiff nor her attorneys can credibly assert that they were surprised by questions during her deposition concerning her disciplinary problems.

---

[2] By information and belief, after a Delaware Police Officer attains the rank of Captain, he or she is given custody of the "Troop File", which prior to that event would have been maintained, as the name implies, at the troop or unit to which he or she was assigned.

B. <u>Argument</u>

    1. <u>Standard for Disqualification</u>

A court should only reluctantly order disqualification, because of the immediate adverse effect on the client of separating him from counsel of his choosing. *Nemours Foundation v. Gilbane,* 632 F.Supp. 418, 427 (D.Del. 1986). Such motions for disqualification are often made for tactical reasons, and even when made in the best of faith, inevitably cause delay. *Id.* Disqualification is a harsh measure, and therefore motions to disqualify opposing counsel are generally not favored. *Commonwealth Insurance Co. v. Graphix Hot Line, Inc.,* 808 F.Supp. 1200, 1203 (E.D.Pa. 1992). The Third Circuit has stated that a court should disqualify an attorney only where necessary to enforce a disciplinary rule, as balanced against countervailing policies, such as permitting a litigant to retain the counsel of her choice, and enabling attorneys to practice without excessive restrictions. *United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir. 1980). A party's choice of counsel is entitled to substantial deference. *Hamilton v. Merrill Lynch,* 645 F.Supp. 60, 61 (E.D.Pa. 1986). Moreover, the court must prevent litigants from using motions to disqualify for tactical purposes. *Id.*

The moving party bears the burden of showing a "substantial relationship" between the prior representation and the present proceeding. *INA Underwriters Ins. Co. v. Nalibotsky,* 594 F.Supp. 1199, 1206 (E.D.Pa. 1984); *Commonwealth Insurance Co., supra,* at 1204.

    2. <u>Laches</u>

Delay in the filing of a motion to disqualify counsel may be relevant to the resolution of such a motion, under the equitable doctrine of laches. *Nalibotsky, supra,* at 1203. In particular, delay may bar the presentation of a motion to disqualify, if that delay reflects an attempt by the moving party to use the disqualification issue merely to gain a tactical advantage. *See Redd v. Shell Oil Co.,* 518 F.2d 311, 315 (10th Cir. 1975); *U.S. v. Newman,* 534 F.Supp. 1113, 1127 (S.D.N.Y. 1982). Protestations of ethical outrage are often intended to disguise the tactical motives prompting an effort to disqualify opposing counsel. *Id.* When a substantial amount of time and effort have already been expended

by the lawyer who would be disqualified, and where disqualification would impose a concomitant burden on the current client, it is particularly important for the court to sift carefully through the facts and law surrounding the motion. *Nalibotsky, supra, at 1204.* This process requires a careful balancing of the goals and objectives of professional conduct. *Gilbane, supra,* at 423.

　　3. <u>Waiver</u>

　　Waiver is a valid basis for the denial of a motion to disqualify. *Nalibotsky, supra*, at 1204. It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest, but who knowingly refrains from asserting such conflict, is deemed to have waived that right. *Employers Ins. of Wausau v. Albert D. Seeno Construction Co.,* 692 F.Supp. 1150, 1165 (N.D.Cal. 1988) (hereinafter "*Wausau*"); *Trust Corp. of Montana v. Piper Aircraft Corp.,* 710 F.2d 85, 87 (9th Cir. 1983)(Delay of two and a half years before objecting or filing a motion to disqualify constitutes a *de facto* consent to representation of adverse party by former attorney and a waiver of the right to object); *Redd v. Shell Oil Co.,* 518 F.2d 311, 316 (10th Cir. 1975)("Lawyer conflict of interest problems ought to be brought up long before the date of trial in an atmosphere which does not cast a shadow over the trial itself.").

　　A waiver may be found by express consent to the representation, or by conduct that implies assent. *Zimmerman v. Duggan,* 81 B.R. 296, 300 (E.D.Pa. 1987)(conscious delay of nearly three years constitutes waiver of opportunity to object to purported conflict of interest in representation of debtor's shareholders).   Such a finding is justified when (as here) a former client was concededly aware of the former attorney's representation of an adversary, but failed to raise an objection promptly when she had the opportunity.  In that circumstance, the person whose confidences and secrets are potentially at risk of disclosure or misuse is held to have waived her right to protection from that risk. *Nalibotsky, supra.*

　　In addition to [1] the length of the delay, the factors to be considered in making the equitable determination concerning waiver include:  [2] when the movant learned of the conflict; [3] whether the movant was represented by counsel during the delay; [4] why the delay occurred; [5] in particular, whether the motion was delayed for tactical

reasons; and [6] whether disqualification would result in prejudice to the nonmoving party. *Wausau, supra.*

The plaintiff here was represented by counsel when Mr. Ligouri's representation of Colonel Chaffinch was first discussed with the Court, more than a year ago, and has of course been continuously represented since that time. Her only explanation for ignoring the prior representation by Mr. Ligouri is the lame excuse that her disciplinary history was not an issue in this failure-to-promote case. As noted below, the disqualification of counsel would result in extreme prejudice to the defendants, who have endured personal attacks from the plaintiff and her lawyers, and who anxiously seek the opportunity to vindicate themselves at trial. In this case, for the same reason cited in the *Wausau* decision, the Court has ample basis to find that Conley has waived her right to dispute Mr. Ligouri's continued representation of Colonel Chaffinch, and her motion should be denied based on that equitable principle.

4. Unfair Prejudice to the Defendants

Potential prejudice to the party whose counsel is the target of a motion may be considered in the disqualification analysis. *Arkansas v. Dean Foods Products Co.,* 605 F.2d 380 (8th Cir. 1979); *Kramer v. Scientific Control Corp.,* 534 F.2d 1085 (3rd Cir. 1976). Disruption and delay of proceedings on the merits are unhappily foreseeable byproducts of the injudicious use of disqualification motions. *Koller v. Richardon-Merrll, Inc.,* 737 F.2d 1038, 1064 (D.C.Cir. 1984), *vacated, Richardson-Merrell, Inc. v Koller,* 472 U.S. 424 (1985)(procedural grounds). To be sure, an order granting disqualification itself leads to delay. *Richardson-Merrell, Inc. v Koller, supra,* 472 U.S. at 434. A change in counsel in the midst of litigation would cause severe prejudice and substantially delay the trial. *Nalibotsky, supra.* Substitution would impose a significant burden in counsel fees, as new counsel would have to devote considerable time to becoming familiar with matters that current counsel had long since mastered. *Id.* Such a change would also require a suspension of pretrial activities until such time as new counsel could competently represent the client's interests. *Id.*

In practical terms, the disqualification of Mr. Ligouri is this case would necessitate the substitution of new counsel unfamiliar with the work reflected in the 131

docket entries in this case to date. It would be impossible for the case to go to trial in May of this year as scheduled. Neither discovery nor briefing of motions could proceed. In order to avoid prejudice to Colonel Chaffinch, much ground would have to be re-covered. In the meantime, it would not be possible to discuss resolution of the case until substituted counsel was "up to speed" on the many issues in the case.

    5. <u>Improper Litigation Tactic</u>

Substantial delay may cast doubt on the party's good faith in filing a motion to disqualify counsel. *Nalibotsky, supra,* at 1203. In *Commonwealth Ins. Co., supra,* at 1209, a motion to disqualify counsel was filed just three weeks prior to trial, and more than two years after the action commenced. The Court found that the primary reason for filing the motion to disqualify was to obtain a tactical advantage. "This is precisely the type of conduct that courts must be vigilant in preventing." *Id. See also, Delaware Lawyers' Rules of Professional Conduct, Rule 1.7 Comment.*[3]

Here, the plaintiff and her lawyers have been aware of Mr. Ligouri's representation of Colonel Chaffinch for over a year. The plaintiff has acknowledged her recollection of the 1988 consultation with Mr. Ligouri on a disciplinary matter relating directly to her performance as a Delaware State Police officer, one of the critical issues in this failure-to-promote case. Yet, no steps were taken at the time, or in the intervening year, to bring this potential conflict of interest to the Court's attention. It is only now, a year later, more than nine months after Mr. Ligouri formally entered his appearance on behalf of Colonel Chaffinch, over six months since plaintiff's counsel informally raised the matter with Mr. Ligouri, after discovery in the case has substantially been completed, with five months remaining until trial, that the plaintiff lawyers have chosen to raise the issue for the first time. It could not be more obvious that the pending Motion is the product of a tactical decision to use the now-stale issue where it could do the most harm to the defense. This is precisely the kind of conduct criticized in the *Commonwealth Ins. Co.* opinion as that which courts must be vigilant in preventing.

---

[3] "Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. **Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment**" [emphasis added].

C.    Conclusion

Plaintiff's motion is barred by the equitable doctrines of laches, waiver, and estoppel, in that she and her lawyers have failed until now to raise an issue that was ripe for decision a year ago. Her belated motion is now nothing more than a litigation tactic, held in abeyance for more than a year, that, if granted, would prejudice each of the defendants and the fair administration of justice by delaying trial indefinitely. Under the circumstances presented by this delay, the Court should look past the "protestations of ethical outrage" that are intended to "disguise the tactical motives prompting [this] effort to disqualify", and deny the motion as untimely and unsupported.

    /s/ Ralph K. Durstein, III
Ralph K. Durstein, III (ID# 912)
Stephani J. Ballard (ID#3481)
Deputy Attorneys General
Department of Justice
State of Delaware
820 N. French Street
Wilmington, DE 19801
(302)577-8510

Dated:  December 30, 2005

**CERTIFICATE OF MAILING AND/OR DELIVERY**

The undersigned certifies that on December 30, 2005, he caused the attached Response of Defendants Delaware State Police, MacLeish, and Mitchell in Opposition to Plaintiff's Motion to Disqualify Counsel to be electronically filed with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

| | |
|---|---|
| Thomas S. Neuberger, Esq.<br>Stephen J. Neuberger, Esq.<br>Two East Seventh Street, Suite 302<br>Wilmington, DE 19801 | James E. Ligouri, Esq.<br>Ligouri, Morris & Yiengst<br>46 The Green<br>Dover, DE 19901 |

/s/ Ralph K. Durstein III
Ralph K. Durstein III, I.D. #912
Stephani J. Ballard, I.D. #3481
Deputy Attorneys General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302)577-8510
Attorneys for Defendants MacLeish, Mitchell, and Division of State Police