# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CAPTAIN BARBARA L. CONLEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COLONEL L. AARON CHAFFINCH, | : | C.A.No.04-1394-GMS |
| individually and in his official capacity as the | : | |
| Superintendent, Delaware State Police; | : | |
| LIEUTENANT COLONEL THOMAS F. | : | |
| MACLEISH, individually and in his official | : | |
| capacity as the Deputy Superintendent, | : | |
| Delaware State Police; DAVID B. MITCHELL, | : | |
| individually and in his official capacity as | : | |
| Secretary of the Department of Safety and | : | |
| Homeland Security, State of Delaware; and | : | |
| DIVISION OF STATE POLICE, | : | |
| DEPARTMENT OF SAFETY AND | : | |
| HOMELAND SECURITY, STATE OF | : | |
| DELAWARE, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF HER MOTION FOR SANCTIONS AND OTHER RELIEF DUE TO DEFENDANTS' INTENTIONAL DESTRUCTION OF RELEVANT EVIDENCE**

THE NEUBERGER FIRM, P.A.
THOMAS S. NEUBERGER, ESQ. (#243)
STEPHEN J. NEUBERGER, ESQ. (#4440)
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: January 17, 2006          Attorneys for Plaintiff

**TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDING.................................................................................1

SUMMARY OF THE ARGUMENT.............................................................................................1

STATEMENT OF FACTS.........................................................................................................1

    A.    Chaffinch Has Been a Defendant in a Steady Stream of Lawsuits Since April 2002.........1

    B.    The Three Active Lawsuits Against Chaffinch as of October 2004..................................2

    C.    The Discovery Requests At Issue..................................................................................2

    D.    The Documents These Discovery Requests Sought to Discover.......................................3

    E.    Defendants Destroy Chaffinch's Hard Drive Despite the Pendency of Three Cases.........4

        1.    The Sworn Affidavit Attesting to the Destruction....................................................5

        2.    Defense Counsel In This Case Represent That the Hard Drive Has Been Destroyed.................................................................................................................5

        3.    Defense Counsel in the Foraker and Price Cases Also Represent That the Hard Drive Has Been Destroyed.............................................................................5

ARGUMENT.........................................................................................................................6

    I.    DEFENDANTS INTENTIONALLY DESTROYED EVIDENCE RELEVANT TO THIS LITIGATION AND A DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST THEM AS A SANCTION TO PUNISH AND DETER THEIR ILLEGAL CONDUCT.............................................................................6

        A.    The Basics..............................................................................................................6

        B.    Sources of the General Duty to Preserve Evidence.................................................6

            1.    Duty Under the Common Law.............................................................................6

            2.    Duty Under the Ethical Rules..............................................................................8

            3.    Duty Under 18 U.S.C. § 1512...........................................................................8

            4.    Duty Under 11 Del.C. § 1269............................................................................8

            5.    Duty as a Police Officer.....................................................................................8

            6.    Penalty for Breaching the Common Law Duty to Preserve Evidence.................................................................................................................9

C.      The Zubulake Electronic Discovery Spoliation Test..............................................9

     1.     Defendants Had an Obligation to Preserve the Hard Drive...................10

          a.     Defense Counsel's Obligation to Suspend Document Destruction Policies and Impose a "Litigation Hold."..............11

          b.     Defense Counsel's Continuing Obligation to Locate and Preserve Potentially Relevant Information...............................11

          c.     Defense Counsel's Duty to Obtain Copies of all Electronic Documents.......................................................................12

          d.     Division of Liabilities Between Defendants and Defense Counsel.......................................................................12

     2.     Defendants Intentionally Destroyed the Hard Drive...............................13

     3.     The Intentional Destruction of the Hard Drive Establishes that Its Contents Were Relevant to Plaintiff's Claims.........................................13

     4.     Summary....................................................................................14

D.      The Third Circuit Spoliation Test.......................................................14

     1.     Defendants and Defense Counsel Have a Heavy Degree of Fault and Personal Responsibility........................................................14

     2.     Plaintiff Has Been Gravely Prejudiced by Defendants' Destruction of the Hard Drive and Its Relevant Contents.........................................16

          a.     The Basics.................................................................16

          b.     Plaintiff Has Made the Required Showing.................................16

          c.     Plaintiff Has Been Forever Deprived of the Opportunity to Examine this Relevant Evidence..................................17

          d.     The Integrity and Thoroughness of Defendants' Prior Discovery Responses Has Been Undermined...........................17

     3.     Availability of an Appropriate Sanction.................................................18

          a.     In General................................................................18

          b.     Sanctions in the Destruction of Evidence Context....................19

     4.     The Appropriate Sanction.......................................................19

CONCLUSION............................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326 (3d Cir. 1994)......................................6

Chambers v. NASCO, Inc., 501 U.S. 32 (1991)......................................................18

Danis v. USN Comm., Inc., 2000 WL 1694325 (N.D.Ill. Oct. 23, 2000).......................................7

Erickson v. Newmar Corp., 87 F.3d 298 (9th Cir. 1996)......................................................18

In re Triton Energy Ltd Securities Litig., 2002 WL 32114464 (E.D.Tex. March 7, 2002)......................7

In re Wechsler, 121 F.Supp.2d 404 (D.Del. Nov. 14, 2000)......................................6-7, 9, 14, 16, 17, 19

Kronisch v. U.S., 150 F.3d 112 (2d Cir. 1998)......................................................7, 16, 19

Lucas v. Christiana Skating Ctr. Ltd, 722 A.2d 1247 (Del. Super. 1998)......................................8

McQueeney v. Wilmington Trust Co., 779 F.2d 916 (3d Cir. 1985)......................................................6

Paramount Pictures Corp. v. Davis, 2005 WL 3303861 (E.D.Pa. Dec. 2, 2005)................................15, 19

Positran Manufacturing, Inc. v. Diebold, Inc., 2003 WL 21104954 (D.Del. May 15, 2003)..................7, 9

Rogal v. American Broadcasting Co., Inc., 74 F.3d 40 (3d Cir. 1996)......................................................18

Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76 (3d Cir. 1994)......................................6, 14, 16

Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061 (3d Cir. 1996)......................................6

Zubulake v. UBS Warburg LLC, 217 F.R.D. 309 (S.D.N.Y. 2003)......................................................9

Zubulake v. UBS Warburg LLC, 2003 WL 21087136, 230 F.R.D. 290 (S.D.N.Y. May 13, 2003).............9

Zubulake v. UBS Warburg LLC, 216 F.R.D. 280 (S.D.N.Y. 2003)......................................................9

Zubulake v. UBS Warburg LLC, 220 F.R.D. 212 (S.D.N.Y. 2003)......................................................10, 11

Zubulake v. UBS Warburg LLC, 229 F.R.D. 422 (S.D.N.Y. 2004)......................................7, 10, 11-13

**Statutes and Rules**

18 U.S.C. § 1512......................................................8

18 U.S.C. § 1512(b)(2)(A)......................................................8

18 U.S.C. § 1512(b)(2)(B)......................................................8

18 U.S.C. § 1512(c)(1)......................................................8

11 Del.C. § 1269.................................................................................................................................8

11 Del.C. § 1269(2)............................................................................................................................8

11 Del.C. § 8404(a)............................................................................................................................8

Fed.R.Civ.P. 34..................................................................................................................................3

Fed.R.Evid. 1001................................................................................................................................3

Model Rule of Professional Conduct 3.4(a) ....................................................................................8

Model Rule of Professional Conduct 3.4(a), cmt. 2........................................................................8

## NATURE AND STAGE OF THE PROCEEDING

This is a civil action to remedy intentional gender discrimination by defendant Chaffinch when he twice denied to plaintiff promotion to administrative budget Major and operations Major for Kent and Sussex County. This also is a public employee free speech and petition clause case arising from defendants' unprecedented actions of releasing and then discussing plaintiff's confidential internal affairs charges with the Delaware media, all within hours of the filing of her lawsuit.

This is plaintiff's opening brief and appendix in support of her motion for sanctions against defendants for intentionally destroying defendant Chaffinch's computer hard drive.

## SUMMARY OF THE ARGUMENT

In derogation of their common law and other duties to preserve potentially relevant evidence, in May 2005 defendants instead admittedly destroyed Col. Chaffinch's computer hard drive. By destroying the hard drive, defendants have forever deprived plaintiff of key and relevant evidence, the loss of which has prejudiced plaintiff's ability to prosecute this lawsuit. Because defendants (1) had a clear duty to preserve the drive, (2) but instead intentionally destroyed it and (3) deprived plaintiff of the relevant evidence it contained, defendants should be sanctioned and a default judgment entered against them.

## STATEMENT OF FACTS

**A. Chaffinch Has Been a Defendant in a Steady Stream of Lawsuits Since April 2002.** Defendant Chaffinch and the Delaware State Police have been defendants in a steady stream of lawsuits since April 2002. Those suits are listed below.

- Foraker v. Chaffinch, et al., C.A. No.02-302-JJF (D.Del.) (First Amendment free speech retaliation - filed April 2002; settled November 2003),

- Dillman v. Chaffinch, et al., C.A. No. 02-509-KAJ (D.Del.) (First Amendment free speech retaliation and Fourteenth Amendment due process - filed June 2002; settled May 2004),

- Bullen and Giles v. Chaffinch, et al., C.A. No. 02-1315-JJF (D.Del.) (Fourteenth

Amendment race discrimination - filed July 2002; settled October 2004)

- <u>Warren v. Minner, Chaffinch, et al.</u>, C.A. No.03-908-SLR (D.Del.) (First Amendment retaliation - filed September 2003; settled July 2004),

- <u>Davis v. Chaffinch, et al.</u>, C.A. No. 04-106-JJF (D.Del.) (Fourteenth Amendment race discrimination - filed February 2004; settled August 2004),

- <u>Price, et al. v. Chaffinch, et al.</u>, C.A. No.04-0956-GMS (D.Del.) (First Amendment free speech and petition clause retaliation - filed August 2004; presently ongoing),

- <u>Foraker v. Chaffinch, et al.</u>, C.A. No.04-1207-GMS (D.Del.) (First Amendment free speech and petition clause retaliation - filed August 2004; presently ongoing),

- <u>Conley v. Chaffinch et al.</u>, C.A. No. 04-1394-GMS (D.Del.) (Fourteenth Amendment gender discrimination and First Amendment free speech and petition clause retaliation - filed October 2004; presently ongoing),

- <u>Moss v. Chaffinch, et al.</u>, C.A. No. 05-708-GMS (D.Del.) (Fourteenth Amendment race and gender discrimination - filed September 2005; presently ongoing).

As this recitation makes clear, Chaffinch has been an individual defendant in a host of lawsuits challenging his actions while he held the position of Superintendent of the DSP. After these nine suits, it is reasonable to expect that defendants would be extra careful when it comes to the destruction of potentially relevant evidence.

**B. The Three Active Lawsuits Against Chaffinch as of October 2004.** As just discussed, the present <u>Conley</u> action, as well as the <u>Foraker</u> and <u>Price</u> actions were pending before this Court as of October 2004. All three of these actions deal with issues of First Amendment retaliation for speaking out and petitioning the government for redress of grievances. Additionally, the <u>Conley</u> action also addresses gender discrimination in promotions.[1]

**C. The Discovery Requests At Issue.** Plaintiff's Fourth Request for Production of Documents was filed and served on October 27, 2005. (<u>See</u> D.I. 100). Plaintiff's Fifth Request

---

[1] Like <u>Conley</u>, the <u>Moss</u> case also addresses gender discrimination in promotions by Chaffinch. Thus, the destruction of evidence issues addressed in this brief also squarely bear upon the <u>Moss</u> action.

for Production of Documents was filed and served on November 30, 2005. (See D.I. 112).  Both the Fourth and the Fifth Requests are in the record. (A013; A060).  The definition of the word "document" is identical in both requests.  It includes anything within the scope of Fed.R.Civ.P. 34, Fed.R.Evid. 1001 and innumerable examples are given.  It also includes all electronic documents stored on hard-drives or elsewhere. (A014-17; A061-64).

     In the present Conley action, plaintiff's fourth request for production specifically included a request for Chaffinch's work hard drive, backup tapes, and related electronic media. (#18; A021).  Requested documents included those relating to: the promotions of Majors Eckrich and Hughes, the two comparators in this case (#21 at a-b, h-i; A022, 023); Chaffinch's feelings towards Capt. Conley, female troopers and women in general (#21 at c-e; A022); Chaffinch's feelings towards Capt. Conley, her lawsuit and lawsuits in general (#21 at k-n; A023); communications or meetings with certain specified persons (#21 at o-p; A023-24).  Numerous additional documents related to the defense and prosecution of this case also were requested. (#1-5; A017-18).  Plaintiff's fifth request for production included a request for promotional ranking data and other similar materials.  (#1; A017).

     **D.  The Documents These Discovery Requests Sought to Discover.**  Among the documents that plaintiff expected to recover with these electronic document requests were the following, all of which would reasonably be located on Chaffinch's hard drive.

     Messages composed by Chaffinch using the Arch Text Messaging Wireless and Blackberry Service/System which is regularly used by the DSP Executive Staff.  The text messages using this system are not sent over a central server and are instead only stored/archived/located on the primary work station where the message was originally typed - which would be on Chaffinch's work computer's hard drive.

     Other documents expected to be recovered are final or draft memos, letters, e-mails and other documents relating to the 2003 promotions of Eckrich and Hughes to Major, as well as

Chaffinch's October 2004 reaction to the filing of plaintiff's lawsuit and his resultant and unprecedented suspension by the defendant Secretary.  Importantly, preserved drafts would not have been transferred off of the primary machine used to create them.  Plaintiff also believes that many final documents, such as file memos and similar documents would never have been transferred off of the primary machine used to create them.

Documents relating to the process used and the decisions to promote Eckrich and Hughes to Major have obvious relevance in this failure to promote case.  Additionally, Chaffinch's immediate reaction to the filing of plaintiff's lawsuit also is <u>key</u> in this case, as the free speech and petition clause retaliation counts of Plaintiff's amended complaint arise from the retaliatory actions of defendant Chaffinch and his friends and fellow defendants in immediate reaction to the filing of plaintiff's lawsuit, including the unprecedented leak of her statutorily protected internal affairs information to the Delaware media.  Plaintiff fully expected to find incriminating evidence related to Chaffinch's involvement in this leak on the Arch system messages which are stored only on Chaffinch's hard drive.  Given that plaintiff Capt. Conley had just filed suit against, exposed, humiliated and caused him to be indefinitely suspended, Chaffinch had a strong motive to leak her confidential information to the Delaware media.  Production of this system would have shed some light on this or at the least, would explain his involvement in the process.  Additionally, plaintiff expected Chaffinch's Arch system messages to reveal his true reaction to the filing of plaintiff's suit - as he messaged his close friends and associates, both on the Executive Staff and elsewhere, and expressed his outrage over the filing of the suit and how he intended to get his payback and revenge.

**E.  Defendants Destroy Chaffinch's Hard Drive Despite the Pendency of Three Cases.**  Defendants and their attorneys have submitted a sworn affidavit and also otherwise attested to the fact that they destroyed Col. Chaffinch's work hard drive despite the pendency of this and other litigation.

**1. The Sworn Affidavit Attesting to the Destruction.** On November 28, 2005, as part of their response to plaintiff's fourth request for production, defendants submitted a sworn affidavit from Lt. Robert Moses of the DSP High Tech Crimes Unit. (Moses Aff. ¶ 1; A072). Lt. Moses swore that "the computer formerly assigned to Colonel Chaffinch was cleaned of all data, and the hard drive erased, upon his departure, according to standard Delaware State Police Practice." (Moses Aff. ¶ 13; A075). Lt. Moses swore that Chaffinch's computer was destroyed pursuant to the DSP's standard document destruction policy as soon as Chaffinch retired. (Id.; A075).[2]

**2. Defense Counsel In This Case Represent That the Hard Drive Has Been Destroyed.** Defense counsel, in their answers to plaintiff's fourth request for production, also attested that Chaffinch's hard drive had been destroyed. "The work computer assigned to Aaron Chaffinch was 'wiped' of all data following his resignation as Superintendent, per DSP security policy." (Non-Chaffinch Defendants Answer to #18; A042; Chaffinch Answer to # 18; A067).

**3. Defense Counsel in the _Foraker_ and _Price_ Cases Also Represent That the Hard Drive Has Been Destroyed.** Lastly, defense counsel for these same defendants in the _Foraker_ and _Price_ cases also represented in an e-mail that "the hard drive of the DSP computer previously used by Col. Chaffinch has been wiped clean of information and reassigned to an unknown user. ... [I]t was cleaned of all data" and no longer "contain[s] any information that could possibly contribute to Plaintiffs' claims ... We cannot and, therefore, will not produce it." (Mr. Fitzgerald 12/27/05 e-mail to Mr. Haverly; A077).

---

[2] Chaffinch's last day with the DSP was May 5, 2005. (Chaffinch 5; A002). So despite the pendency of the _Conley_, _Foraker_ and _Price_ cases, on or soon after May 5, 2005, the DSP destroyed Chaffinch's hard drive anyway.

<u>ARGUMENT</u>

I.     **DEFENDANTS INTENTIONALLY DESTROYED EVIDENCE RELEVANT TO THIS LITIGATION AND A DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST THEM AS A SANCTION TO PUNISH AND DETER THEIR ILLEGAL CONDUCT.**

A.     **The Basics.**  "Since the early 17th century, courts have admitted evidence tending to show that a party destroyed evidence relevant to the dispute being litigated." <u>Schmid v. Milwaukee Elec. Tool Corp.</u>, 13 F.3d 76, 78 (3d Cir. 1994).

> The general principles concerning the inferences to be drawn from the loss or destruction of documents are well established.   When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him.

<u>Brewer v. Quaker State Oil Refining Corp.</u>, 72 F.3d 326, 334 (3d Cir. 1995).  "Such evidence permitted an inference, the 'spoliation inference,' that the destroyed evidence would have been unfavorable to the position of the offending party." <u>Schmid</u>, 13 F.3d at 78.

> The evidentiary rationale [for the spoliation inference] is nothing more than the common sense observation that a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy [evidence] is more likely to have been threatened by [that evidence] than is a party in the same position who does not destroy the document.

<u>Id.</u>  As the Third Circuit en banc has explained -

> It has always been understood--the inference indeed is one of the simplest in human experience--that a party's falsehood or other fraud in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, is receivable against him as an indication of his consciousness that his case is a weak or unfounded one;  and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit.

<u>Sheridan v. E.I. DuPont de Nemours and Co.</u>, 100 F.3d 1061, 1069 (3d Cir. 1996) (en banc)(citing <u>McQueeney v. Wilmington Trust Co.</u>, 779 F.2d 916, 921-22 (3d Cir. 1985)).

B.     **Sources of the General Duty to Preserve Evidence.**

1.     **Duty Under the Common Law.**  As this Court has explained on numerous occasions, "[a] party who has reason to anticipate litigation has an affirmative duty to preserve evidence which might be relevant to the issues in the lawsuit." <u>In re Wechsler</u>, 121 F.Supp.2d

-6-

404, 415 (D.Del. 2000); accord id. at 417 ("when a party has reason to believe that a lawsuit may

be filed, that party has an obligation to preserve relevant evidence."); id. at 429 ("[a] potential

litigant has a duty to preserve evidence which might prove relevant to a future lawsuit.");

Positran Manufacturing, Inc. v. Diebold, Inc., 2003 WL 21104954, *2 (D.Del. May 15, 2003)

("[a] party who has reason to anticipate litigation has a duty to preserve evidence which might be

relevant to the issues in the lawsuit."); Kronisch v. U.S., 150 F.3d 112, 126 (2d Cir. 1998)

(noting the duty to preserve "arises when the party has notice that the evidence is relevant to

litigation - most commonly when suit has already been filed."); Danis v. USN Comm., Inc., 2000

WL 1694325, *12 (N.D.Ill. Oct. 23, 2000) (noting the "common law duty not to spoil documents

that might be discoverable in the litigation."); In re Triton Energy Ltd Securities Litig., 2002 WL

32114464, *5 (E.D.Tex. March 7, 2002) (noting the "common law duty not to spoil documents

(in hard or electronic form) that might be discoverable" in the litigation); Zubulake v. UBS

Warburg LLC, 229 F.R.D. 422, 434 (S.D.N.Y. 2004) ("Zubulake V") (noting the common law

duty to preserve).

  Here, there has been a flood of lawsuits against Chaffinch since April 2002.  Defendants

have reasonably been on notice since April 2002 that all electronic and other documents should

be treated carefully and preserved and that all document destruction policies should be placed on

hold while litigation against Chaffinch was pending.  Indeed, as discussed above, many of those

lawsuits involved similar retaliation and discrimination scenarios that are issues in our present

case.  Even more specifically, as of October 2004, there were three lawsuits pending against

defendant Chaffinch in federal court - the present Conley action (discrimination and retaliation),

as well as the Foraker and its companion Price action (both retaliation).  Defendants should have

been reasonably on notice since October 2004 that these cases required that a litigation hold be

imposed on potentially relevant documents - such as defendant Chaffinch's entire hard drive -

which would hold a wealth of potentially relevant information spanning numerous programs,

topics and subjects.[3]

       **2.  Duty Under the Ethical Rules.**  Model Rule of Professional Conduct 3.4(a) states that a lawyer shall not "unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value.  A lawyer shall not counsel or assist another person to do any such act."  See id. at cmt. 2. Plaintiff respectfully submits that an attorneys' refusal to take reasonable steps to protect potentially relevant evidence and abide by his common law duties to preserve is the equivalent of unlawful obstruction.

       **3.  Duty Under 18 U.S.C. § 1512.**  The intentional destruction of evidence also violates federal criminal law under 18 U.S.C. § 1512.  Numerous sections of this criminal statute forbid the intentional destruction of evidence.  See id. at (b)(2)(A); id. at (b)(2)(B); id. at (c)(1).

       **4. Duty Under 11 Del.C. § 1269.**  11 Del.C. § 1269 also makes it a class G felony to tamper with physical evidence.[4]  "Believing that certain physical evidence is about to be produced or used in an official proceeding ... and intending to prevent its production or use, the person suppresses it by any act of ... destruction."  11 Del.C. § 1269(2).

       **5.  Duty as a Police Officer.**  As the former Director of Training for the Delaware State Police and the former administrator of the Council on Police Training for the State of Delaware explained,[5] police officers and troopers "receive extensive training related to

---

   [3]  Additionally, the Foraker and Price actions have been pending since August 2004.  Given that the Conley action is similar to those two actions in that each involves retaliation for protected speech and petition clause activity, much of the same evidence relates to both - such as feelings towards members of the protected class who speak out and file lawsuits - and should reasonably have been preserved as of that date.

   [4]  The existence of this criminal statute has made it unnecessary for the State of Delaware courts to recognize an independent tort for spoliation of evidence. Lucas v. Christiana Skating Ctr. Ltd,  722 A.2d 1247, 1250 (Del. Super. 1998).

   [5]  "The Council's many duties include establishing educational and training standards for police officers throughout the state of Delaware.  See 11 Del.C. § 8404(a)." (Warren Decl. ¶ 3; A081).

issues of collection, preservation and destruction of evidence." (Warren Decl. ¶ 10; A082).

"The basic principle underlying every" police officer's "training and approach towards evidence

issues is to protect and preserve." (<u>Id.</u> at ¶ 11; A082). Police officers "are trained to never

destroy evidence that may be relevant to criminal or civil cases." (<u>Id.</u> at ¶¶ 12,15; A082-83).

"This is a rule of common sense." (<u>Id.</u> at ¶ 13; A083). As police officers, "we are held to a

higher standard. And it is essential that we set, meet and exceed that standard - that we protect

and preserve and never destroy evidence." (<u>Id.</u> at ¶ 13; A083). Police officers "are trained to err

on the side of caution" when it comes to destroying evidence. (<u>Id.</u> at ¶14; A083). Every police

officer knows that even when their department "has a document destruction policy, the policy

should not be applied and the evidence should not be destroyed when there are pending court

cases which might need access to evidentiary information." (<u>Id.</u> at ¶ 16; A083). "Things of this

nature are self-evident propositions to any Delaware State Trooper or other police officer - you

do not destroy evidence." (<u>Id.</u> at ¶ 17; A083).

      **6. Penalty for Breaching the Common Law Duty to Preserve Evidence.** "A

party who breaches this duty by destroying relevant evidence or by allowing relevant evidence to

be destroyed may be sanctioned by the court." <u>Wechsler</u>, 121 F.Supp.2d at 415; <u>Positran</u>, 2003

WL 21104954, *2. "When this destruction is willful or in bad faith and intended to prevent the

other side from examining the evidence, the court may impose the most severe sanction of them

all - ... the entry of a default judgment." <u>Wechsler</u>, 121 F.Supp.2d at 415; <u>Positran</u>, 2003 WL

21104954, *2.

      **C. The <u>Zubulake</u> Electronic Discovery Spoliation Test.** In a series of recent opinions,

the Southern District of New York has had the opportunity to exhaustively address the issue of

destruction of electronic and computerized documents in great detail.[6] Even though there is a

---

    [6] <u>See</u> Zubulake v. UBS Warburg LLC, 217 F.R.D. 309 (S.D.N.Y. 2003) ("<u>Zubulake I</u>");
Zubulake v. UBS Warburg LLC, 2003 WL 21087136, 230 F.R.D. 290 (S.D.N.Y. May 13, 2003)
("<u>Zubulake II</u>"); Zubulake v. UBS Warburg LLC, 216 F.R.D. 280 (S.D.N.Y. 2003) ("<u>Zubulake III</u>");

Third Circuit test on the general subject of spoliation (and that test is discussed below), plaintiff notes that analysis under the specialized <u>Zubulake</u> test also may be helpful to the Court in organizing the issues and resolving the present motion.

Under the <u>Zubulake</u> test, a party seeking a spoliation sanction must establish the following three elements.

1) That the party having control over the evidence had an obligation to preserve it at the time it was destroyed.

2) That the records were destroyed with a culpable state of mind, and

3) That the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

<u>Zubulake V</u>, 229 F.R.D. at 430; <u>Zubulake IV</u>, 220 F.R.D. at 220.

**1. Defendants Had an Obligation to Preserve the Hard Drive.** As discussed above, there is both a common law and ethical duty to preserve documents from destruction. As the <u>Zubulake</u> opinions discuss, "[t]he duty to preserve attached at the time that litigation was reasonably anticipated." <u>Zubulake IV</u>, 220 F.R.D. at 217. "[A]nyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." <u>Id.</u> Here, the litigation commenced on October 27, 2004 (<u>see</u> D.I. 1), and at the latest, defendants were on notice as of this date that documents should forthwith be preserved. Yet despite this notice, defendants completely destroyed Chaffinch's hard drive 7 months later anyway.

While a litigant is under no duty to keep or retain every document in its possession ... it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence and/or is the subject of a pending discovery request.

<u>Id.</u> Here, defendants were reasonably on notice that the contents of Chaffinch's hard drive would

---

<u>Zubulake v. UBS Warburg LLC</u>, 220 F.R.D. 212 (S.D.N.Y. 2003) ("<u>Zubulake IV</u>"); <u>Zubulake v. UBS Warburg LLC</u>, 229 F.R.D. 422 (S.D.N.Y. 2004) ("<u>Zubulake V</u>"). It is <u>Zubulake IV</u> and <u>Zubulake V</u> that have bearing on our present motion.

reasonably contain relevant evidence such as the Arch messaging system and the other evidence discussed in the Facts at section **D** above. Accordingly, defendants had a duty to preserve the contents of Chaffinch's hard drive, rather than completely erase and destroy it.

**a. Defense Counsel's Obligation to Suspend Document Destruction Policies and Impose a "Litigation Hold."** "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." Id. at 218; Zubulake V, 229 F.R.D. at 431, 433. Importantly, the "litigation hold should be periodically reissued so that new employees are aware of it, and so that it is fresh in the minds of all employees." Zubulake V, 229 F.R.D. at 433. Here, the defense affidavit states that Chaffinch's hard drive was destroyed pursuant to the DSP's document destruction policy despite its clear relevance to the litigation. Thus, it is clear that either defense counsel failed in their duties to ensure that document destruction policies were suspended and that a litigation hold be imposed, or the DSP at its own peril and chose to ignore defense counsel's orders, as well as ignore their own extensive training on protection and preservation of evidence.

**b. Defense Counsel's Continuing Obligation to Locate and Preserve Potentially Relevant Information.** Importantly, the existence of a litigation hold is only the first step. "Counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents." Id. at 432.

"Once a 'litigation hold' is in place, a party and her counsel must make certain that all sources of potentially relevant information are identified and placed 'on hold.'" Id. Counsel must "become fully familiar with her client's data retention architecture." Id. This includes speaking directly with IT personnel who must inform counsel of the ins and outs of how the systems work, and also communicating with the key players in the litigation (such as the individual defendants and key witnesses) to learn how and where they store information,

including electronic information.  Id.  The importance of speaking to the IT personnel is underscored by the recognition that "[o]ne of the primary reasons that electronic data is lost is ineffective communication with" these personnel.  Id. at 434.  It is apparent in our present case that defense counsel failed to speak to the IT personnel as the IT personnel admittedly destroyed Chaffinch's hard drive despite the pendency of this litigation as well as several other court cases.

"In short, it is not sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information.  Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched."  Id. at 432 (emphasis in original).  And as with the litigation hold, "the key players should be periodically reminded that the preservation duty is still in place."  Id. at 434.  The defense affidavit makes clear that defense counsel completely and utterly failed in their duty in this regard.

### c. Defense Counsel's Duty to Obtain Copies of all Electronic

**Documents.**  Lastly, "counsel should instruct all employees to produce electronic copies of their relevant active files."  Id.  By taking possession of these copies, counsel ensures that documents will not be inadvertently destroyed.  Id.  It also is apparent that defense counsel failed to obtain copies of this information as both they and the IT department have represented that this information was destroyed.  No mention has ever been made of the required copies or backups.

### d. Division of Liabilities Between Defendants and Defense Counsel.

As the above recitation makes clear, "counsel is responsible for coordinating her client's discovery efforts."  Id. at 435.  However, "[a]t the end of the day ... the duty to preserve and produce documents rests on the party."  Id. at 436.  Once counsel fulfils their obligations and makes clear the duty to preserve, "that party is on notice of its obligations and acts at its own peril."  Id.  Here, it appears that defense counsel failed in their duties to put in place and enforce the required litigation hold and comply with their other preservation obligations.  But even

-12-

assuming *arguendo* that defense counsel did initially comply with their obligations, the DSP

defied the order and intentionally destroyed the evidence anyway.  Thus, responsibility for the

destruction lies squarely at one of two places.  Defense counsel, or their clients.

     **2.  Defendants Intentionally Destroyed the Hard Drive.**  "When evidence is

destroyed in bad faith (i.e. intentionally or willfully), that fact alone is sufficient to demonstrate

relevance." Id. at 431.  "[O]nly in the case of willful spoliation does the degree of culpability

give rise to a presumption of the relevance of the documents destroyed." Id.  But when

"destruction is negligent, relevance must be proven by the party seeking the sanctions." Id.  In

the present case, it is clear that defendants intentionally and willfully destroyed Chaffinch's hard

drive.  Defense counsel both in this case and in the Foraker and Price actions have represented

that the hard drive was destroyed by the DSP. The sworn affidavit from Lt. Moses - the DSP's

own expert and head of the DSP high tech crimes unit has sworn that the hard drive was

destroyed pursuant to the DSP's document destruction policy - a policy which, as discussed

above, both defendants and defense counsel failed to suspend or place a litigation hold on.  No

claim is made that its destruction was a mistake or an accident.  (See Moses Aff. ¶ 13; A075).

     **3.  The Intentional Destruction of the Hard Drive Establishes that Its**

**Contents Were Relevant to Plaintiff's Claims.**  As just discussed, "[w]hen evidence is

destroyed in bad faith (i.e. intentionally or willfully), that fact alone is sufficient to demonstrate

relevance." Zubulake V, 229 F.R.D. at 431.  And as just demonstrated, Chaffinch's hard drive

was destroyed intentionally and willfully pursuant to the document destruction policy, which

defendants failed in their duty to suspend.  Accordingly, Zubulake V dictates that this intent and

willfulness clearly establishes relevance.

     Out of an abundance of caution, plaintiff notes that a negligence standard is plainly

inapplicable to the destruction of Chaffinch's hard drive.  Defendants did not accidentally spill a

pot of coffee on it which then shorted it out and destroyed the drive.  Defendants did not

accidentally bump it out a 10th story window. No, instead defendants proudly submit that they wiped the hard drive pursuant to the DSP's document destruction policy. This is certainly an intentional act - all the more so in light of the extensive training that police officers receive when it comes to preservation and protection of evidence. (Warren Decl. ¶¶ 10-17; A082-83). Defendants intended to wipe the drive and followed through and did so. Any *post-hoc* rationalizations are nothing but a pretext for intentional destruction of relevant evidence and failure to abide by required duties. Additionally, even if a negligence standard is found to apply, plaintiff has clearly demonstrated the relevance of the destroyed evidence - including messages from the Arch system, draft letters, memos and the like. (See Facts at section **D** above).

   **4. Summary.** Accordingly, under <u>Zubulake V</u>, plaintiff has established the appropriateness of a sanction for destruction of evidence. The specific sanction that should be imposed is discussed in the context of the Third Circuit spoliation test, in the section immediately below.

   **D. The Third Circuit Spoliation Test.** Under the existing Third Circuit test, when determining whether to impose sanctions for spoliation of evidence, the Court must consider three factors.

   1) the degree of fault and personal responsibility of the party who destroyed the evidence,

   2) the degree of prejudice suffered by the other party, and

   3) the availability of lesser sanctions which would avoid any unfairness to the innocent party while, at the same time, serving as a sufficient penalty to deter the same type of conduct in the future.

<u>Wechsler</u>, 121 F.Supp.2d at 415; <u>Schmid</u>, 13 F.3d at 79.

   **1. Defendants and Defense Counsel Have a Heavy Degree of Fault and Personal Responsibility.** As discussed above, defendants and defense counsel had a clear and long established duty to preserve Chaffinch's hard drive due to the fact that it contained numerous types of potentially relevant evidence. But defendants and defense counsel ignored

their clear duties and failed to take any reasonable steps such as, for example, imposing a

litigation hold, suspending document destruction policies or taking possession of the hard drive.

Thus, it is clear that defendants and defense counsel bear a heavy degree of fault and personal

responsibility for the destruction of a hard drive that they had a clear duty to preserve.

Plaintiff notes the extent and sheer magnitude of the data destroyed by defendants.

Defendants did not simply destroy a file, a folder, a memo or an e-mail on a drive.  They

completely wiped out and destroyed everything the drive contained.  They obliterated it, despite

their obligation to preserve it and its contents.  Such widespread intentional destruction has

parallels in the recent case of Paramount Pictures Corp. v. Davis, 2005 WL 3303861 (E.D.Pa.

Dec. 2, 2005).  There a party completely wiped his hard drive clean in preparation for selling his

computer, despite knowing for 16 days prior that the content of the computer was at issue in

pending litigation.  Id. at *9.  The court there rejected the claim that the wiping of the drive was

reasonable because the party had planned to sell it, noting that such an argument does not

"obviate his duty to preserve" the computer's hard drive.  Id. at *10.

Similarly, the anticipated defense claim that their wrongdoing should be excused because

of purported public safety considerations require periodic document destruction and the like

should be rejected as a red herring since such an argument simply does not obviate defendants'

duty to preserve the computer's hard drive under the long recognized law discussed above.

Defendants knew for at least 7 months that the drive should be preserved, and yet destroyed it

nonetheless.  Indeed, as police officers charged with the even handed enforcement of the law,

Troopers such as defendants and their IT personnel are held to an even higher standard of

conduct.  (Warren Decl. ¶ 13; A083).  Even defendant MacLeish testified that it is important that

Troopers hold themselves to a higher standard of conduct than citizens and other members of the

general public.  (MacLeish 21-22; A011-12).  These are police officers and they are supposed to

be a cut above.  And highly trained police officers are well aware of their duties not to destroy

evidence that might be relevant in a civil or criminal proceeding.  (Warren Decl. ¶¶10-17; A082-83).

### 2.  Plaintiff Has Been Gravely Prejudiced by Defendants' Destruction of the Hard Drive and Its Relevant Contents.

**a.  The Basics.**  Under governing Third Circuit precedent, "a party need only 'come forward with plausible, concrete suggestions as to what the lost evidence might have been.'"  Wechsler, 121 F.Supp.2d at 423 (quoting Schmid, 13 F.3d at 80).  "[A] party need not conclusively establish that the evidence would have established liability on the part of the spoliator."  Id.  This is because -

> it is impossible to know what the destroyed evidence would have shown. ... It would seem to be pure guesswork, even if the destroyed evidence went against the spoliator, to calculate what it would have contributed to the plaintiff's success on the merits in the underlying lawsuit.

Id.  And it is to avoid problems like this that evidence is supposed to be preserved and not destroyed.  As the Second Circuit has observed, "[t]he task is unavoidably imperfect, inasmuch as, in the absence of the destroyed evidence, we can only venture guesses with varying degrees of confidence as to what that missing evidence may have revealed."  Kronisch, 150 F.3d at 127.  "Indeed, holding the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence would subvert the prophylactic and punitive purposes of the adverse inference, and would allow parties who have intentionally destroyed evidence to profit from that destruction."  Id. at 128.

**b.  Plaintiff Has Made the Required Showing.**  As discussed in section **D** of the Facts above, plaintiff has done her best and met and surpassed Third Circuit requirements and, at the very least, has come forth with numerous more than "plausible" and "concrete suggestions" as to what evidence would reasonably have been on Chaffinch's hard drive, such as messages from the Arch messaging system as well as other documents.  Accordingly, plaintiff has met her burden in this regard.

-16-

**c. Plaintiff Has Been Forever Deprived of the Opportunity to Examine this Relevant Evidence.**  Moreover, "when considering the degree of prejudice suffered by the party that did not destroy the evidence, the court should take into account whether that party had a meaningful opportunity to examine the evidence in question before it was destroyed." Wechsler, 121 F.Supp.2d at 416.  And as this Court has noted, "when a party is denied any opportunity to examine the evidence, this test would automatically be satisfied." Id. at 421. In our present case, it is clear that this test also is satisfied.  Plaintiff never had any opportunity, much less a meaningful one, to examine the hard drive before it was destroyed.  In fact, given the haste with which the DSP destroyed the hard drive, it is apparent that truly damaging evidence must have been present thereon.  Thus, plaintiff has been forever deprived of access to the wealth of information contained in the primary wrongdoer's very own computer hard drive.  This is significant and weighty prejudice which will adversely affect plaintiff's ability to prosecute her case, establish liability, cross-examine defendants and their agents at trial, among many other prejudices.

**d. The Integrity and Thoroughness of Defendants' Prior Discovery Responses Has Been Undermined.**  Additionally, the late discovery of defendants' hard drive destruction calls into question the integrity and thoroughness of many of defendants' responses to plaintiff's earlier requests for production.  For example, plaintiff's second request, which was issued on June 8, 2005 (see D.I. 63), built on deposition testimony taken from the DSP Public Information Officer Lt. Aviola on June 7th.  Aviola testified that in response to media inquiries into the specifics of the numerous prior internal affairs investigations into Chaffinch and MacLeish actions, that he communicated with Chaffinch and MacLeish about how to respond.

This document request then sought to obtain all documents, including computerized and electronic ones, relating to the DSP policy and practice of no commenting in response to the media inquiries. (#3; A006).  As the contemporaneously filed summary judgment brief reveals,

-17-

plaintiff claims that defendants revealed her confidential internal affairs information when they had previously refused to reveal their own. One of the key ways to prove causation is evidence of disparate treatment as well as selective enforcement of a policy. Yet despite the widespread use of electronic communications by the DSP, defendants never searched Chaffinch's hard drive for communications, documents or other evidence in this regard. What would a search of Chaffinch's hard drive have turned up? An internal memo memorializing the widespread policy and practice of no commenting that Lt. Aviola testified to, yet which defendants will fervently deny at trial? Perhaps numerous Arch messages relating to the topic? The problem is that now plaintiff will never know and the integrity of the discovery process has been undermined, as has the ultimate trial of this case.

Although this is just one example, it is an illustrative one. How many more of defendants' discovery responses come up lacking? How else has plaintiff's case been undermined? How much of the defense case is built on the sand that the production of Chaffinch's hard drive would have washed away? Defendants' actions have injured the integrity of the truth-seeking process and gravely prejudiced the prosecution of plaintiff's case.

### 3. Availability of an Appropriate Sanction.

**a. In General.** Federal courts have inherent powers to manage their proceedings and to control the conduct of those who practice before them. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). "District judges have an arsenal of sanctions they can impose for unethical behavior." Erickson v. Newmar Corp., 87 F.3d 298, 303 (9th Cir. 1996). In Chambers, the Supreme Court discussed the broad scope of a court's "ability to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers, 501 U.S. at 44-45. Sanctions may be imposed for abuse of the judicial process when a party has "*acted in bad faith*, vexatiously, wantonly, or for oppressive reasons." Id. at 45-46 (emphasis added); accord Rogal v. American Broadcasting Co., Inc., 74 F.3d 40, 46 (3d Cir. 1996).

-18-

   **b. Sanctions in the Destruction of Evidence Context.**  "This court has the inherent power to impose sanctions against a party that has destroyed evidence which is relevant to a legal proceeding." <u>Wechsler</u>, 121 F.Supp.2d at 427.  "In its discretion, the court may impose a wide range of sanctions for the spoliation of evidence depending upon the severity of the circumstances." <u>Id.</u>  The court can:

   (1) impose attorneys fees against defendants,

   (2) impose fines against defendants,

   (3) suppress key evidence of the defendants' in order to level the playing field due to the destruction of the plaintiff's evidence,

   (4) issue an injunction and give a jury instruction at trial, permitting the fact finder to draw an adverse inference against the defendants arising from their destruction of the evidence,

   (5) shift the burden of proof to defendants to affirmatively prove that they did not discriminate and retaliate against plaintiff, and

   (6) enter judgment against defendants on liability.

<u>See</u> <u>Wechsler</u>, 121 F.Supp.2d at 427; <u>Paramount</u>, 2005 WL 3303861, *8.

   "When considering which sanction to impose, the court should take into account the twin aims of punishing the culpable while, at the same time, deterring others from engaging in similar conduct in the future." <u>Wechsler</u>, 121 F.Supp.2d at 427; <u>cf.</u> <u>Paramount</u>, 2005 WL 3303861, *8 n.3 (observing that spoliation sanctions serve three functions "remedial," "punitive" and "deterrent"); <u>Kronisch</u>, 150 F.3d at 126 (noting that "evidentiary, prophylactic, punitive and remedial rationales" are served).  The most extreme sanction - entering judgment - should only be imposed as a last resort to punish a party who has "acted callously or in bad faith and, as a result, has severely prejudiced the other side," as defendants have done in our present case. <u>Wechsler</u>, 121 F.Supp.2d at 427.

   **4. The Appropriate Sanction.**  In our present case, plaintiff respectfully submits that an entry of judgment against defendants on both the discrimination and retaliation

-19-

theories is an appropriate remedy. Defendants' conduct in this regard has been especially egregious. This is not the first lawsuit that defendants have been involved in over the last four years. By now, they should be well-versed in the ins and outs of document preservation and litigation holds. Yet despite this, they flagrantly destroyed Chaffinch's hard drive immediately upon his retirement. Notably, this gross disregard for their preservation duties and obligations is compounded by the fact that their conduct not only prejudices and adversely affects plaintiff's present action, but it also causes prejudice across the board, in the <u>Foraker</u>, <u>Price</u> and <u>Moss</u> actions as well. Defendants are high public officials and an important public agency. As defendant MacLeish has testified, their actions should be a cut above the rest. Yet instead, they have lowered themselves, violated their duties to uphold the law and disregarded their training and the very oaths they once took.

Attorneys fees and costs associated with this motion also would be an appropriate corollary remedy, in addition to a hefty fine to ensure that defendants take their legal obligations much more seriously in the future.

Alternatively, if the Court believes that entering judgment against defendants is too drastic a sanction, plaintiff also is open to the remedy of shifting the burden of proof to defendants, to prove that they did not discriminate and retaliate against plaintiff. Lastly, an adverse inference jury instruction also would be appropriate in conjunction with this latter remedy, along with attorneys fees and costs.

## <u>CONCLUSION</u>

For the above stated reasons, plaintiff respectfully requests that the Court sanction defendants for their actions in intentionally destroying key evidence relevant to this lawsuit and enter a default judgment against them on Count I (discrimination) and Counts II and III (retaliation). Alternatively, plaintiff respectfully requests that the burden of proof be shifted to defendants on each and every element of the respective discrimination and retaliation paradigms,

-20-

and that the jury also receive an adverse inference instruction.

Lastly, attorneys fees and costs also should be awarded, in addition to a fine intended to remind defendants of the severity of their wrongdoing.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: January 17, 2006          Attorneys for Plaintiff

-21-

## CERTIFICATE OF SERVICE

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on

January 17, 2006, I electronically filed this **Brief** with the Clerk of the Court using CM/ECF

which will send notification of such filing to the following:

> Ralph K. Durstein III, Esquire
> Department of Justice
> Carvel State Office Building
> 820 N. French Street
> Wilmington, DE 19801
>
> James E. Liguori, Esquire
> Liguori, Morris & Yiengst
> 46 The Green
> Dover, DE 19901

> /s/ Stephen J. Neuberger
> **STEPHEN J. NEUBERGER, ESQ.**

Conley/ Briefs / Conley - Spoilation Sanctions OB.final