Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 641737 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**

Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Michael S. PINKERT and Eleanor A. Pinkert,
Plaintiffs,
v.
John J. OLIVIERI, P.A., Brosnahan Builders, Inc.,
Kevin Brosnahan and Linda Brosnahan, Defendants
and Third-Party Plaintiffs,
v.
REEF INDUSTRIES, INC., Facilities Restoration
Supply, Inc. and Preservation & Protection Systems,
Inc., Third-Party Defendants,
v.
Ocean DESIGNS, Ocean Designs LLC and Paul
Rouchard D/B/A Ocean Designs, Inc.; C. Joseph
Couchman Tile Inc.; Doug Griffith Drywall; W.M.
Plumbing & Heating, Inc. A/K/A and/or D/B/A Wm
Plumbing & Heating, Inc.; and Advance Fiberglass
Technologies, LLC., Additional Third-Party
Defendants.
**No. CIV. A. 99-380-SLR.**

May 24, 2001.

Daniel B. Rath, Esquire of Klett, Rooney, Lieber &
Schorling, P.C. , Wilmington, Delaware. Counsel for
Plaintiffs. Of Counsel: Michael A. Gatje, Esquire of
Wickwire Gavin, P.C., Vienna, Virginia.

Adam Balick, Esquire of Balick & Balick, Wilmington,
Delaware. Counsel for Defendant and Third-Party
Plaintiff John J. Olivieri, P.A.

Neal C. Belgam, Esquire of Blank, Rome, Comisky &
McCauley, Wilmington, Delaware. Benjamin C.
Wetzel, III, Esquire and Natalie M. Ippolito, Esquire of
Bailey & Wetzel, P.A., Wilmington, Delaware.
Counsel for Defendants and Third-Party Plaintiffs
Brosnahan Builders, Inc., Kevin Brosnahan and Linda
Brosnahan.

Loreto P. Rufo, Esquire of The Bayard Firm,
Wilmington, Delaware. Counsel for Third-Party
Defendants Reef Industries, Inc., Facilities Restoration

Supply, Inc. and Preservation & Protection Systems,
Inc.

Richard W. Pell, Esquire and Jennifer L. Gioia, Esquire
of Tybout, Redfearn & Pell, Wilmington, Delaware.
Counsel for Additional Third-Party Defendants Ocean
Designs, Ocean Designs LLC and Paul Rouchard
D/B/A Ocean Designs, Inc.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 Plaintiffs Michael and Eleanor Pinkert filed this
action on June 16, 1999 claiming damages arising out
of the construction of their home in Bethany Beach,
Delaware. Plaintiffs' complaint alleges breach of
contract and various counts of fraud against defendants
Brosnahan Builders, Inc., Kevin Brosnahan and Linda
Brosnahan ("the Brosnahan defendants"), as well as
breach of contract, professional negligence and
negligent misrepresentation against defendant John J.
Olivieri, P.A. ("Olivieri"). (D.I.1) On July 23, 1999,
Olivieri filed a third-party complaint for
indemnification and contribution against Reef
Industries, Inc. ("Reef Industries") and Facilities
Restoration Supply, Inc. ("Facilities Restoration"),
which the court dismissed on September 29, 2000.
(D.I.115) On August 21, 2000, the court granted the
Brosnahan defendants leave to file a third-party
complaint against Ocean Designs, Ocean Designs LLC
and Paul Rouchard ("Ocean Designs"), W.M.
Plumbing & Heating, Inc., and Advance Fiberglass
Technologies, LLC, alleging breach of contract and
negligence, and seeking indemnity and contribution.
(D.I.101) On October 10, 2000, Ocean Designs filed a
third-party complaint against Taco Metal, Inc. ("Taco
Metal") for indemnification and contribution. (D.I.123)
On November 20, 2000, the Brosnahan defendants
filed a third-party complaint against Reef Industries,
Facilities Restoration, and Preservation & Protection
Systems, Inc. ("Preservation Systems"), alleging claims
of negligence, breach of the implied warranty of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2001 WL 641737 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

fitness, and indemnification and contribution. (D.I.157) The court has jurisdiction pursuant to 28 U.S.C. § 1332.

Currently before the court are the Brosnahan defendants' motion for summary judgment on all claims against them (D.I.124), the Brosnahan defendants' motion for partial summary judgment that plaintiffs are not entitled to recover attorney's fees (D.I.221), the Brosnahan defendants' motion for protective order respecting pre-judgment discovery in aid of execution (D.I.218), Reef Industries' motion for summary judgment on all claims against it (D.I.225), Preservation Systems' motion for summary judgment on all claims against it (D.I.228), Facilities Restoration's motion for summary judgment on all claims against it (D.I.230), and Ocean Designs' motion for summary judgment on all claims against it. (D.I.233) For the following reasons, the court shall grant in part and deny in part the Brosnahan defendants' motion for summary judgment on claims against them; grant the Brosnahan defendants' motions for summary judgment that plaintiffs are not entitled to attorney's fees under paragraph 16(b) of the Construction Contract and for a protective order limiting discovery; grant in part and deny in part Reef Industries' motion for summary judgment on claims against it; grant Facilities Restoration's and Preservation Systems' motions for summary judgment on claims against them; and deny Ocean Designs' motion for summary judgment on claims against it.

## II. BACKGROUND

### A. Relevant Parties

**\*2** Plaintiffs are husband and wife who reside in McLean, Virginia. Defendant Brosnahan Builders, Inc. ("Brosnahan Builders") is a corporation organized under the laws of Delaware, with its principal place of business in Frankford, Delaware. Brosnahan Builders is primarily engaged in the business of constructing single family homes. Defendant Kevin Brosnahan is the president of Brosnahan Builders, and his wife,

defendant Linda Brosnahan, is an employee of Brosnahan Builders. Kevin and Linda Brosnahan are Delaware residents and are sued in their individual capacities. Olivieri is a professional association organized under the laws of New Jersey, with its principal place of business in New Jersey. Olivieri is primarily engaged in the business of providing architectural services. (D.I.1) Reef Industries is a Texas corporation that manufactures vapor barriers used as siding in buildings. Facilities Restoration and Preservation Systems, Pennsylvania corporations, are distributors of Reef Industries' products. (D.I.157) Ocean Designs, a Maryland limited liability company, is a supplier and installer of aluminum railings. (D.I.240, Ex. A) Taco Metal is a Florida corporation that manufactures aluminum used in railings. (D.I.123)

### B. Facts

In 1995, plaintiffs purchased a beachfront property (the "Property") in Bethany Beach, Delaware to construct a three-story home (the "Residence"). On October 30, 1995, plaintiffs entered into an "Architecture Contract" with Olivieri that required Olivieri to create designs and plans, review shop drawings, provide specifications to the contractor and subcontractors, and meet with contractors on-site. (D.I.126, Ex. A)

On September 30, 1997, plaintiffs and Brosnahan Builders entered into a "Construction Contract" for the construction of the Residence for a price of approximately $1.5 million. (D.I.126, Ex. B) The Construction Contract provides, in pertinent part:
3. *Plans and Specifications.* (a) The Home shall be constructed and completed substantially in accordance with those certain plans and specifications more particularly identified by Exhibit "A" attached hereto and incorporated herein by reference ... [FN1]

> [FN1]. The parties have not submitted "Exhibit 'A' " to the court, but the Brosnahan defendants allege that Olivieri's "Project Manual" is incorporated into the referenced

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 641737 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

"Plans and Specifications." (D.I.154, Ex. 2) The Project Manual in turn incorporates the "General Conditions of the Contract for Construction" published by the American Institute of Architects ("AIA"), which describes the AIA standard forms for progress payments (the G703 Continuation Sheet and G702 Application for Certification and Payment). (D.I.154, Ex. 3)

10. Changes in Plans and Specifications....

(b) Owner may, at any time and from time to time prior to the Completion Date without invalidating this Agreement, require changes to the Work. Such changes may consist of additions, deletions, or modifications to the Plans and Specifications, with the Contract Sum and completion Date being adjusted accordingly. Such changes in the Work shall be authorized by written Change Order signed by Owner, Contractor and Architect, or by written Construction Change Directive signed by Owner and Architect. The Contract Sum and the Completion Date shall be changed only by Change Order....

(c) Contractor shall be under no obligation to implement any change nor shall Owner [be] under any obligation to pay for the same unless and until the same is documented by such a change order. Likewise, no change in the Work shall be authorized absent a change order for same signed by Owner and no change order shall be [in] effect unless the same is signed by Owner.
*3 ...

12. *Payment.* (a)(i) Payments to the Contractor shall be paid in accordance with Exhibit B. [FN2]

> FN2. "Exhibit B" is the AIA standard G703 Continuation Sheet ("Continuation Sheet"), a list of the work that Brosnahan Builders was contracted to perform with a scheduled price for each item. Each Continuation Sheet references the AIA standard G702 Application and Certification for Payment ("Application and Certification for Payment"). (D.I.154, Ex. 4)

(ii) Progress invoices shall be accompanied by such documentation as Owner and/or Architect may reasonably require to verify the propriety of such request for payment. Following review of each such invoice (and its supporting documentation) by Owner, Architect and Owner's lender, and acceptance of the same, Owner shall, in exchange for appropriate mechanics' lien releases, satisfy such invoice.
...

16. *Indemnification.* (a) Owner agrees to defend, indemnify and hold Contractor harmless from and against any and all loss, cost, expense, liability, actions, and claims for injury suffered by Owner or others, including reasonable attorneys fees, or for harm caused to the Lot or the Home, due solely to inspections of the Home by Owner or Owner's invitees prior to Settlement.

(b) Contractor agrees to defend, indemnify and hold Owner harmless from and against any and all loss, cost, expense, liability, actions, and claims whatsoever (including, without limitation, reasonable attorneys fees and court costs) incurred by Owner incident to any malfeasance or nonfeasance by Contractor with respect to Contractor's responsibilities under the terms of this Agreement.
...

19. *Governing Law.* This Agreement shall be governed, construed and enforced in accordance with Delaware law.

(D.I.126, Ex. B)

Brosnahan Builders began construction of the Residence in September 1997 and completed the project in April 1999. (D.I.1) Brosnahan Builders subcontracted with Ocean Designs to deliver and install the exterior aluminum railings on the Residence, and with Reef Industries to deliver the vapor barrier used in the exterior siding. [FN3] On fifteen occasions during construction, Brosnahan Builders submitted to Olivieri an AIA standard Application and Certification for Payment. [FN4] Each was signed by Linda Brosnahan and provided:

> FN3. Olivieri's Plans and Specifications

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 641737 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

required the "VAPORguard wrap," which Brosnahan Builders ordered from Reef Industries. Reef Industries instead delivered the "T-65G wrap," which Brosnahan Builders installed onto the Residence. Reef Industries fully admits the delivery error, but claims that because of their similarity, there was no damage caused to the Residence by the T-65G wrap that would not have been caused by the VAPORguard wrap. (D.I.226)

FN4. A Continuation Sheet with a list of services performed was appended to each Application and Certification for Payment. (D.I.144, Ex. 4)

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.
(D.I.144, Ex. 4) Olivieri made several visits to the construction site and approved each Application and Certification for Payment, which also provided:
In accordance with the Contract Documents, based on on-site observations and the data comprising the application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

(D.I.144, Ex. 4) (emphasis in original)

**\*4** In November 1998, with construction substantially completed, plaintiffs and their family moved into the Residence. After a rainstorm in January, plaintiffs noticed water leaks around windows, doors and ceiling fixtures. Plaintiffs retained an independent moisture consultant, who concluded that the wrong building wrap had been installed, there was no aluminum

flashing around doors and windows, and there were no roof vents as provided by the Plans and Specifications. (D.I.1) Plaintiffs have since discovered other deficiencies, including corrosion of exterior railings, cracks in the marble tile floor, flaws in the drywall installation and finishing, leaking showers, defectively installed shower panes, and improperly installed fiberglass roofing. (D.I. 126, Ex. 1; D.I. 240, Ex. A) As of October 2000, plaintiffs have spent over $650,000 in remedial architectural and construction costs. (D.I.144, Ex. 3) Plaintiffs allege that when they confronted Kevin Brosnahan with the construction defects, he responded by asserting that he did not have the "manpower" or the "money" to remedy the problems, and that if pursued, he would "go bankrupt." (D.I.1)

### C. Plaintiffs' Complaint

Count I of plaintiffs' complaint alleges breach of contract by Brosnahan Builders for failing to perform work in accordance with general industry standards and the Plans and Specifications provided by Olivieri. Count V alleges that Brosnahan Builders committed fraud by requesting payment for work that plaintiffs claim was not properly performed.

Count VI asserts that Kevin Brosnahan committed fraud in his individual capacity by requesting payments on behalf of Brosnahan Builders for work that plaintiffs claim was not performed in accordance with the Plans and Specifications and general industry standards. Counts VII and VIII allege that Linda Brosnahan committed fraud and equitable fraud in her individual capacity by signing payment requests on behalf of Brosnahan Builders for the work performed.

Counts IX, X, and XI assert that the Brosnahan defendants violated Delaware's Consumer Fraud Act, 6 Del. C. § 2513, by submitting payment requests on behalf of the Brosnahan Builders for work plaintiffs claim was not performed in accordance with the Plans and Specifications and general industry standards. [FN5]

FN5. The Consumer Fraud Act provides, in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 641737 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 5

pertinent part:

The act, use or employment by any person of
any deception, fraud, false pretense, false
promise, misrepresentation, or the
concealment, suppression, or omission of any
material fact with intent that others rely upon
such concealment, suppression or omission, in
connection with the sale, lease or
advertisement of any merchandise, whether or
not any person has in fact been misled,
deceived or damaged thereby, is an unlawful
practice.
6 Del. C. § 2513(a).

Counts II, III and IV allege breach of contract,
professional negligence and negligent
misrepresentation by Olivieri for failure to adequately
inspect and monitor the construction work, and for
approving payment requests by the Brosnahan
defendants for defective work.

### III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any,
show that there is no genuine issue as to any material
fact and that the moving party is entitled to judgment as
a matter of law." Fed.R.Civ.P. 56(c). The moving party
bears the burden of proving that no genuine issue of
material fact exists. *See Matsushita Elec. Indus. Co. v.
Zenith Radio Corp., 475 U.S. 574, 586 n. 10 (1986).*
"Facts that could alter the outcome are 'material,' and
disputes are 'genuine' if evidence exists from which a
rational person could conclude that the position of the
person with the burden of proof on the disputed issue
is correct." *Horowitz v. Fed. Kemper Life Assurance
Co., 57 F.3d 300, 302 n. 1 (3d Cir.1995)* (internal
citations omitted). If the moving party has
demonstrated an absence of material fact, the
nonmoving party then "must come forward with
'specific facts showing that there is a genuine issue for
trial.' " *Matsushita, 475 U.S. at 587* (quoting
Fed.R.Civ.P. 56(e)). The court will "view the
underlying facts and all reasonable inferences

therefrom in the light most favorable to the party
opposing the motion." *Pa. Coal Ass'n v. Babbitt, 63
F.3d 231, 236 (3d Cir.1995).* The mere existence of
some evidence in support of the nonmoving party,
however, will not be sufficient for denial of a motion
for summary judgment; there must be enough evidence
to enable a jury reasonably to find for the nonmoving
party on that issue. *See Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 249 (1986).* If the nonmoving party
fails to make a sufficient showing on an essential
element of its case with respect to which it has the
burden of proof, the moving party is entitled to
judgment as a matter of law. *See Celotex Corp. v.
Catrett, 477 U.S. 317, 322 (1986).*

### IV. DISCUSSION

#### A. Plaintiffs' Fraud Claims Against the Brosnahan
Defendants

**\*5** As a general rule under Delaware law, where an
action is based entirely on a breach of the terms of a
contract between the parties, and not on a violation of
an independent duty imposed by law, a plaintiff must
sue in contract and not in tort. *See Garber v. Whittaker,
174 A. 34, 36 (Del.Super.1934).* "[A breach of contract
claim] cannot be 'bootstrapped' into a fraud claim
merely by adding the words 'fraudulently induced' or
alleging that the contracting parties never intended to
perform." *Iotex Communications, Inc. v. Defries, 1998
WL 914265, at \*5 (Del. Ch. Dec. 21, 1998).* See also
*Dann v. Chrysler Corp., 174 A.2d 696, 700 (Del.
Ch.1961)* ("Using the word 'fraud' or its equivalent in
any form is just not a substitute for the statement of
sufficient facts to make the basis of the charge
reasonably apparent.").

Plaintiffs allege that the Brosnahan defendants: (1)
contracted to perform construction services; (2) failed
to perform the services in the manner called for by the
Construction Contract; and (3) submitted payment
applications indicating the services had been performed
according to the Construction Contract. The gravamen
of plaintiffs' common law fraud, equitable fraud, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 6
Not Reported in F.Supp.2d, 2001 WL 641737 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Consumer Fraud Act claims is that the Brosnahan defendants knowingly misrepresented the nature of their work each time they submitted an Application and Certification for Payment. These alleged misrepresentations were not collateral to the Construction Contract, but rather memorialized as some of the Brosnahan defendants' principal obligations under their agreement with plaintiffs. The duty to submit periodic payment applications existed solely by reason of the Construction Contract. Neither Brosnahan Builders, Kevin Brosnahan nor Linda Brosnahan violated any common law duty independent of the Construction Contract between Brosnahan Builders and plaintiffs. *See, e.g., Feinberg v. Saunders Karp & Megrue, L.P.,* No. 97-297-SLR, 1998 WL 863284, at *17 (D.Del. Nov. 13, 1998) (dismissing fraud action under New York law where breached promise was incorporated into written agreement); *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.,* 507 S.E.2d 344, 348 (Va.1998) (dismissing fraud claims based on contractor's alleged misrepresentations in submissions of applications for payment because no independent duty existed apart from construction contract).

Plaintiffs have also failed to present evidence that they were fraudulently induced into the Construction Contract. Such evidence may, in certain cases, give rise to an action in fraud. *See, e.g., Tam v. Spitzer,* No. 12538, 1995 WL 510043, at *6 (Del. Ch. Aug. 17, 1995). Here, plaintiffs' allegations arise solely from the Brosnahan defendants' performance of their contractual duties and are, therefore, insufficient to support a fraud claim. Thus, the court dismisses all of the fraud claims against the Brosnahan defendants (Counts V through XI) in plaintiffs' complaint. [FN6]

> FN6. The Brosnahan defendants also argue that plaintiffs' fraud claims are barred by the economic loss doctrine. *See Danforth v. Acorn Structures, Inc.,* 608 A.2d 1194, 1195 (Del.1992) ("The economic loss doctrine is a judicially created doctrine that prohibits recovery in tort where a product has damaged only itself (i.e., has not caused personal injury or damage to other property) and, the only

losses suffered are economic in nature.") (emphasis in original). The 1996 Delaware Home Owner's Protection Act, however, has banned the application of the economic loss doctrine to certain residential construction cases:

> No action based in tort to recover damages resulting from negligence in the construction or manner of construction of an improvement to residential real property and/or in the designing, planning, supervision and/or observation of any such construction or manner of construction shall be barred solely on the ground that the only losses suffered are economic in nature.

> 6 Del. C. § 3652. Based on the record presented, the court finds that if plaintiffs had alleged fraud claims based on duties apart from the Construction Contract, those claims would not be barred by the economic loss doctrine.

### B. Plaintiffs' Breach of Contract Claim Against the Brosnahan Defendants

**\*6** The Brosnahan defendants also argue that they are not liable for breach of the Construction Contract because they were acting under the direction of Olivieri. *See Ridley Inv. Co. v. Croll,* 192 A.2d 925, 927 (Del.1963) ("[A] contractor is not liable for any damage occasioned by a defect in plans and specifications furnished by the owner if he performs his work without neglect and in a workmanlike manner."). The Brosnahan defendants claim that any deviations from the Plans and Specifications were approved by Olivieri and, therefore, they are not liable for damage that resulted from those changes.

Based on the record presented, the court finds genuine issues of material fact as to whether the deviations from the Plans and Specifications that resulted in damage to plaintiffs' Residence were approved by Olivieri, as well as whether the Brosnahan defendants' work was performed "without neglect and in a workmanlike manner." Thus, summary judgment that the Brosnahan defendants are not liable to plaintiffs because they were

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 641737 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

acting as agents of Olivieri is denied.

## C. Attorney's Fees Pursuant to Paragraph 16(b) of the Construction Contract

Plaintiffs allege that they are entitled to recover their attorney's fees from the Brosnahan defendants pursuant to paragraph 16(b) of the Construction Contract. The Construction Contract is governed by Delaware law, which states that "apart from statute or contract a litigant must pay his [own] counsel fees." *Maurer v. Int'l Re-Insurance Corp.,* 95 A.2d 827, 830 (Del.1953). The Delaware Code, which allows recovery of attorney's fees when a lawsuit is based on a written instrument, states that "counsel fees shall not be entered as part of such judgment unless the note, bond, mortgage, invoice or other instrument of writing sued upon, by the terms thereof, expressly provides for the payment and allowance thereof ..." 10 Del. C. § 3912.

The court must determine, therefore, whether paragraph 16(b) of the Construction Contract expressly provides for the recovery of plaintiffs' attorney's fees. Paragraph 16(b) provides:
Contractor agrees to defend, indemnify and hold Owner harmless from and against any and all loss, cost, expense, liability, actions, and claims whatsoever (including, without limitation, reasonable attorneys fees and court costs) incurred by Owner incident to any malfeasance or nonfeasance by Contractor with respect to Contractor's responsibilities under the terms of this Agreement.

(Emphasis added) The language "defend, indemnify and hold Owner harmless" clearly renders Paragraph 16(b) an indemnification provision which acts to protect plaintiffs from liability if they are sued by a third party for damage caused by "malfeasance or nonfeasance" by the Brosnahan defendants. Plaintiffs' belief that they are entitled to attorney's fees based on this indemnification provision is irreconcilable with the terms of the provision. The Brosnahan defendants cannot agree to "defend, indemnify and hold [plaintiffs] harmless" from a lawsuit filed against the Brosnahan defendants by plaintiffs themselves. Other

Delaware courts have held that similar indemnification provisions are not applicable to claims between contracting parties; they are intended to protect one contracting party against liability from third party claims when the other contracting party is at fault. *See, e.g., DRR, L.L.C. v. Sears, Roebuck and Co.,* 949 F.Supp. 1132, 1142 (D.Del.1996); *Cannon and Son v. Dorr-Oliver,* 394 A.2d 1160, 1165 (Del.1978). Therefore, the Brosnahan defendants' motion that plaintiffs are not entitled to attorney's fees pursuant to Paragraph 16(b) of the Construction Contract is granted.

## D. Pre-Judgment Discovery of the Brosnahan Defendants' Assets

*7 The Brosnahan defendants have requested a protective order preventing pre-judgment discovery of their assets. The Federal Rules of Civil Procedure do not permit pre-trial discovery of a defendant's finances. *See Gangemi v. Moor,* 268 F.Supp. 19, 21-22 (D.Del.1967); *McCurdy v. Wedgewood Capital Mgmt. Co.,* No. 97-4304, 1998 WL 964185, at *10 (E.D.Pa. Nov. 16, 1998) ("Rule 26 will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence."). Two exceptions to this general rule have been recognized by Delaware courts, namely, if there is a "factual basis rising to the level of a triable issue for punitive damages," or if a plaintiff "can prove by a preponderance of the evidence that a defendant made a negligent misrepresentation of a material fact with the intent that a consumer rely upon it" under the Delaware Consumer Fraud Act. *State ex rel. Brady, State of Delaware v. Wellington Homes,* No. 99C-09-168-JTV, 2001 WL 238125, at *1 (Del.Super.Jan. 23, 2001).

The court is dismissing plaintiffs' fraud claims against the Brosnahan defendants, thereby rendering punitive damages unrecoverable from them. *See E.I. DuPont de Nemours and Co. v. Pressman,* 679 A.2d 436, 445 (Del.1996) ( "[P]unitive damages are not recoverable for breach of contract unless the conduct also amounts independently to a tort."). Thus, the court finds no basis

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 8
Not Reported in F.Supp.2d, 2001 WL 641737 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

to deviate from the general rule prohibiting pre-trial discovery of the Brosnahan defendants' assets. The Brosnahan defendants' request for a protective order is granted.

### E. The Brosnahan Defendants' Claims Against Reef Industries

The Brosnahan defendants filed a third-party complaint against Reef Industries, alleging negligence, breach of the implied warranty of fitness for a particular purpose, and indemnification and contribution. The Brosnahan defendants do not oppose Reef Industries' motion for summary judgment as to the implied warranty claim, which is therefore dismissed.

Regarding the remaining negligence claim and indemnification and contribution claim, the court concludes that there exist genuine issues of material fact as to Reef Industries' liability. Reef Industries admits that it delivered the T-65G wrap instead of the VAPORguard wrap requested by Brosnahan Builders, and the parties appear to agree that all cited experts acknowledge that either wrap would have caused damage to the Residence. However, the record is unclear as to the difference in extent of damage caused by one type over the other type. Therefore, the court finds there are triable issues of fact on this issue, and declines to grant summary judgment on the remaining claims against Reef Industries.

### F. The Brosnahan Defendants' Claims Against Facilities Restoration and Preservation Systems

The Brosnahan defendants do not oppose motions for summary judgment by Facilities Restoration and Preservation Systems on all claims against them. Therefore, the court grants their motions for summary judgment and dismisses them from the case.

### G. The Brosnahan Defendants' Claims Against Ocean Designs

*8 Ocean Designs argues for summary judgment that it is not liable for the corrosion of plaintiffs' aluminum railings because if the corrosion was in fact due to a defect in the railings and not poor maintenance by plaintiffs, that defect was caused by Taco Metal, Ocean Designs' aluminum supplier. The court finds that there exists a genuine issue of material fact as to whether Ocean Designs is responsible for the defective aluminum railings. Although Ocean Designs may ultimately be found not to be at fault, Ocean Designs contracted with Brosnahan Builders to supply and install quality aluminum railings. To the extent that Taco Metal is responsible for the corroded aluminum, Ocean Designs is seeking indemnification and contribution from it. Based on the record presented, therefore, Ocean Designs' motion for summary judgment is denied.

### V. CONCLUSION

For the reasons stated, the court shall grant in part and deny in part the Brosnahan defendants' motion for summary judgment on claims against them; grant the Brosnahan defendants' motions for summary judgment that plaintiffs are not entitled to attorney's fees under paragraph 16(b) of the Construction Contract and for a protective order limiting discovery; grant in part and deny in part Reef Industries' motion for summary judgment on claims against it; grant Facilities Restoration's and Preservation Systems' motions for summary judgment on claims against them; and deny Ocean Designs' motion for summary judgment on claims against it. An appropriate order shall issue.

### ORDER

At Wilmington, this 24th day of May, 2001;

IT IS ORDERED that:

1. The Brosnahan defendants' motion for summary judgment on the claims (D.I.124) is granted in part and denied in part.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 641737 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

2. The Brosnahan defendants' motion for partial summary judgment that plaintiffs are not entitled to attorney's fees pursuant to paragraph 16(b) of the Construction Contract (D.I.221) is granted.

3. The Brosnahan defendants' motion for a protective order respecting pre-judgment discovery in aid of execution (D.I.218) is granted.

4. Reef Industries' motion for summary judgment (D.I.225) is granted in part and denied in part.

5. Preservation Systems's motion for summary judgment (D.I.228) and Facilities Restoration's motion for summary judgment (D.I.230) are granted.

6. Ocean Designs' motion for summary judgment (D.I.233) is denied.

D.Del.,2001.
Pinkert v. John J. Olivieri, P.A.
Not Reported in F.Supp.2d, 2001 WL 641737 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2005 WL 984197 (E.D.Pa.)
(Cite as: Slip Copy)

Page 1

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
    United States District Court,E.D. Pennsylvania.
    William SCHLICHTER and Barbara Schlichter
                        v.
LIMERICK TOWNSHIP, W. Douglas Weaver,
Officer Adam Moore, Walter Zaremba, Township
Manager, Ken Sperring, Township Supervisor,
Joseph Greco, Township Supervisor, Thomas
Debello, Township Supervisor, Frank Grant,
Township Supervisor, Frederick Fidler, Township
              Supervisor, and John Doe
              **No. Civ.A.04-CV-4229.**


                   April 26, 2005.


Samuel Merovitz, Philadelphia, PA, for William
Schlichter and Barbara Schlichter.
Andrew J. Bellwoar, Chester Springs, PA, for Limerick
Township, W. Douglas Weaver, Officer Adam Moore,
Walter Zaremba, Township Manager, Ken Sperring,
Township Supervisor, Joseph Greco, Township
Supervisor, Thomas Debello, Township Supervisor,
Frank Grant, Township Supervisor, Frederick Fidler,
Township Supervisor, and John Doe.


            MEMORANDUM AND ORDER

JOYNER, J.
*1 Defendants have filed a motion to dismiss the
plaintiffs' complaint in its entirety pursuant to
Fed.R.Civ.P. 12(b)(6) for failure to state any claim
upon which relief may be granted. For the reasons
which follow, the motion shall be granted in part and
denied in part.


                 *Factual Background*

According to the allegations set forth in the complaint,
"Plaintiff, William Schlichter ... is a former police

officer" who "[a]t all times relevant hereto ... was
employed ... at the rank of Sergeant for the Township
of Limerick." (Complaint, ¶ s 2, 11). "Plaintiff, Barbara
Schlichter, is the wife of William Schlichter."
(Complaint, ¶ 5). During his employment with
Limerick Township, Sgt. Schlichter alleges that he
"was active in union activity;" "became aware of a
hostile work environment of a female co-employee,
Robin Scalsii;" "complained to Walter Zaremba that
Robin Scalisi was subject to a hostile work
environment," and that he "complained of the
disciplinary procedures utilized by [Police Chief
Douglas] Weaver because various police officers got
disparate disciplinary treatment." (Complaint, ¶ s
25-28).

Purportedly "[a]s a result of Plaintiff's speaking out on
matters of public concern," Defendants began a series
of allegedly retaliatory actions against Plaintiffs
consisting of:
1.... [O]n February 14, 2003, [Officer Adam] Moore, in
concert with Weaver, caused to be published in the
Pottstown Mercury Newspaper, a Valentine's Day
message which stated:
"Dear Sgt., Spring is right around the corner, just like
me. Look outside, see a Robin by the tree. Love
Azalea.
2. On May 17, 2003, Weaver, in concert with Moore,
had a hotel room key and package of condoms placed
on Plaintiff's Ford 150 truck which was found by
Plaintiffs and their daughter.
3. On May 19, 2003, ... a bumper sticker was placed by
Moore, in concert with Weaver, on the right bumper of
Plaintiff's truck which showed the rear end of a woman
in a thong bikini with the words, "Ass, Gas, or Grass,
Nobody Rides for Free."
4. On or about July 30, 2003, Moore mailed an
envelope to Wife [Barbara Schlichter], which contained
a photograph he had taken of Plaintiff's police vehicle
parked outside Ms. Scalisi's home on Azalea Court.
The photograph also contains words superimposed
upon it which states:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                      Page 2
Slip Copy, 2005 WL 984197 (E.D.Pa.)
**(Cite as: Slip Copy)**

| | |
|---|---|
| Limerick Township Police Cruiser | $26,000; |
| Sergeant Salary (without overtime) | $60,000; |
| House on Azalea Court | $160,000; |
| Bill lying to Barb about why he's parked in front of his girlfriend's house while on duty | PRICELESS |

5. This photograph with superimposed language was also posted at the Limerick Township Police Department Building and viewed by numerous employees of Limerick Township.
(Complaint, ¶s29, 33, 35, 39, 40).

Plaintiffs allege that after each of these incidents, which they found humiliating and embarrassing, Sgt. Schlichter complained to Township Manager Zaremba, who promised to investigate, but did nothing. Thereafter, "Defendant Weaver only spoke to Plaintiff out of necessity and let it be known throughout the work place that he was displeased with Plaintiff for speaking out about various matters of public concern." (Complaint, ¶ 48). Plaintiff contends that as a result of these occurrences, his authority as a commanding officer of subordinate police officers was undermined, he was subjected to verbal tirades by Weaver and embarrassed within the police department which caused him "new medical problems including high blood pressure and stress," and "to be constructively discharged from the Township." (Complaint, ¶ 50).

*2 After receiving a dismissal and right to sue notice from the Equal Employment Opportunity Commission on July 8, 2004, Plaintiffs instituted this lawsuit on September 7, 2004 alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq., violations of his First and Fourteenth Amendment rights pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988 and his rights under the Pennsylvania Constitution and under the common law theories of civil conspiracy, intentional infliction of emotional distress, and false light/invasion of privacy. As noted, Defendants now move to dismiss all of the claims raised in the complaint.

*Standards Governing Rule 12(b)(6) Motions to Dismiss*

It has long been the rule that in considering motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the district courts must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Allah v. Seiverling,* 229 F.3d 220, 223 (3d Cir.2000) (internal quotations omitted). *See Also: Ford v. Schering-Plough Corp.,* 145 F.3d 601, 604 (3d Cir.1998). A motion to dismiss may only be granted where the allegations fail to state any claim upon which relief may be granted. *See, Morse v. Lower Merion School District,* 132 F.3d 902, 906 (3d Cir.1997). The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims. *In re Rockefeller Center Properties, Inc.,* 311 F.3d 198, 215 (3d Cir.2002). Dismissal is warranted only "if it is certain that no relief can be granted under any set of facts which could be proved." *Klein v. General Nutrition Companies, Inc.,* 186 F.3d 338, 342 (3d Cir.1999)(internal quotations omitted). It should be noted that courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint and legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *In re Rockefeller,* 311 F.3d at 216. A court may, however, look beyond the complaint to extrinsic documents when the plaintiff's claims are based on those documents. *GSC Partners, CDO Fund v. Washington,* 368 F.3d 228, 236 (3d Cir.2004); *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1426. *See Also, Angstadt v. Midd-West School District,* 377 F.3d 338, 342 (3d Cir.2004).

*Discussion*

A. First and Fourteenth Amendment Claims Pursuant to
42 U.S.C. § 1983

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 984197 (E.D.Pa.)
**(Cite as: Slip Copy)**

Page 3

In Counts I, II, VII and XII of their Complaint, the plaintiffs invoke 42 U.S.C. § 1983, which provides in relevant part that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable ...

**\*3** The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 1830, 118 L.Ed.2d 504 (1992). Section 1983 is thus not itself a source of substantive rights but rather provides a cause of action for the vindication of federal rights. *Rinker v. Sipler*, 264 F.Supp.2d 181, 186 (M.D.Pa.2003), citing *Graham v. Connor*, 490 U.S. 386, 393-394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

To make out a claim under Section 1983, a plaintiff must demonstrate that the conduct of which he is complaining has been committed under color of state or territorial law and that it operated to deny him a right or rights secured by the Constitution or laws of the United States. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir.1998); *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir.1993). Local governing bodies may be sued directly under § 1983 for monetary, declaratory or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, decision, or custom whether officially adopted or informally approved through the government body's offices and/or official decision-making channels. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-2036, 56 L.Ed.2d

611 (1978). A municipality, therefore, can not be held liable solely on the basis of its employees' or agent's actions under the doctrine of *respondeat superior*. *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997); *Must v. West Hills Police Department*, No. 03-4491, 2005 U.S.App. LEXIS 4504 at \*15 (3d Cir. March 16, 2005). Rather, the plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. *Bryan County*, 520 U.S. at 404, 117 S.Ct. At 1388. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal link between the municipal action and the deprivation of federal rights. *Id.* In other words, to recover against a municipality, a plaintiff must demonstrate that municipal policymakers, acting with deliberate indifference or reckless indifference, established or maintained a policy or well-settled custom [FN1] which caused a municipal employee to violate plaintiffs' constitutional rights and that such policy or custom was the moving force behind the constitutional tort. *Padilla v. Township of Cherry Hill*, No. 03-3133, 110 Fed. Appx. 272, 278 (3d Cir. Oct.5, 2004).

> FN1. "Policy" is said to be made when a decisionmaker possessing final authority to establish municipal policy with respect to an action issues an official proclamation, policy or edict. "Customs" are practices of state officials so permanent and well-settled as to virtually constitute law. *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir.2000), quoting *Pembaur v. City of Cincinnati*, 475 U.S. 468, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), *Monell*, 436 U.S. at 691, 98 S.Ct. 2018, 56 L.Ed.2d 611; *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir.1996).

In Counts I, VII and XII of their Complaint, plaintiffs assert that the defendants violated his right to hold employment without infringement of his First Amendment rights to freedom of speech, assembly and association, that Defendants engaged in a pattern of harassment creating a hostile work environment designed to deny Plaintiff his First Amendment rights to freedom of speech, assembly and association, and that the defendants' actions "were designed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 4
Slip Copy, 2005 WL 984197 (E.D.Pa.)
**(Cite as: Slip Copy)**

to penalize and retaliate against Plaintiff for his exercise of fundamental First Amendment rights and to prevent Plaintiff from opposing and reporting practices of sexual discrimination and retaliation policies and practices within the Township, which are a matter of public concern to the citizens of the Township and to the citizens of the Commonwealth of Pennsylvania."

**\*4** It has long been held that a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression. *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983), citing, *inter alia, Branti v. Finkel,* 445 U.S. 507, 515-16, 100 S.Ct. 1287, 1293, 63 L.Ed.2d 574 (1980), *Perry v. Sinderman,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972) and *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). To be protected by the First Amendment, speech by a government employee must be on a matter of public concern and the employee's interest in expressing himself on a given matter must not be outweighed by any injury the speech could cause to the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees. *Waters v. Churchill,* 511 U.S. 661, 668, 114 S.Ct. 1878, 1884, 128 L.Ed.2d 686 (1994), quoting *Connick,* 461 U.S. at 142 and *Pickering,* 391 U.S. at 568.

Thus, a balance must be struck between the interests of the employee as a citizen in commenting upon matters of public concern and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees. *Connick, supra.,* quoting *Pickering,* 391 U.S. at 568, 88 S.Ct. At 1734. In performing this balancing, the manner, time, place and entire context of the expression are relevant. *Swartzwelder v. McNeilly,* 297 F.3d 228, 235 (3d Cir.2002), citing *Connick* and *Waters,* both *supra.* Other pertinent considerations include "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Id.,* quoting *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). In order to show a First Amendment violation, the burden is on the

public employee to show that his conduct was constitutionally protected and that this conduct was a substantial or motivating factor in the employer's adverse employment decision. *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 573, 50 L.Ed.2d 471 (1977). If the employee carries that burden, the employer must show by a preponderance of the evidence that it would have reached the same decision as to the employee even in the absence of the protected conduct. *Crawford-El v. Britton,* 523 U.S. 574, 592, 118 S.Ct. 1584, 1594, 140 L.Ed.2d 759 (1998); *Mt. Healthy, supra.* Where, however, a public employee speaks not as a citizen upon matters of public concern but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a government employer's personnel decision. *Swartzwelder,* 297 F.3d at 235.

**\*5** Likewise, a public employee has a constitutional right to speak on matters of public concern without fear of retaliation. *Baldassare v. State of New Jersey,* 250 F.3d 188, 194 (3d Cir.2001). A public employee's retaliation claim for engaging in protected activity must also be evaluated under a three-step process. *Green v. Philadelphia Housing Authority,* 105 F.3d 882, 885 (3d Cir.1997). First, the employee must demonstrate that the speech involves a matter of public concern and the employee's interest in the speech outweighs the government employer's countervailing interest in providing efficient and effective services to the public. *Curinga v. City of Clairton,* 357 F.3d 305, 310 (3d Cir.2004) citing *Pro v. Donatucci,* 81 F.3d 1283, 1288 (3d Cir.1996). *See Also, Ambrose v. Township of Robinson,* 303 F.3d 488, 493 (3d Cir.2002). Next, the speech must have been a substantial or motivating factor in the alleged retaliatory action. *Id.,* citing *Baldassare,* 250 F.3d at 194-195. Finally, the employer can show that it would have taken the adverse action even if the employee had not engaged in the protected conduct. *Id. See Also, Ober v. Evanko,* No. 02-3725, 80 Fed. Appx. 196, 199-200, 2003 U.S.App. LEXIS 23040 (3d Cir. Oct. 31, 2003); *Bounds v. Taylor,* No. 02-2644, 77 Fed. Appx. 99, 102, 2003 U.S.App. LEXIS 20631 (3d Cir. Sept. 18, 2003). The second and third factors are questions of fact, while the first factor is a question of law. *Curinga,* 357 F.3d at 310, citing *Pro,* 81 F.3d at 1288.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 5
Slip Copy, 2005 WL 984197 (E.D.Pa.)
**(Cite as: Slip Copy)**

In this case, Plaintiffs premise their First Amendment claims upon the complaints which husband-plaintiff made to the defendant township manager and to Defendant Sperring, a township supervisor, about the hostile work environment surrounding both himself and another township employee, Robin Scalisi, and upon the complaints which Mr. Schlichter made concerning the disparate disciplinary treatment which various township police officers received under the disciplinary procedures utilized by Police Chief Weaver. "A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community," such as if it attempts to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials." *Baldassare,* 250 F.3d at 195. Speech by public employees is not considered to be on a matter of public concern when it is "upon matters only of personal interest." *Costenbader-Jacobson v. Pennsylvania Department of Revenue,* 227 F.Supp.2d 304, 311 (M.D.Pa.2002), quoting *Czurlanis v. Albanese,* 721 F.2d 98, 103 (3d Cir.1983). Generally, "speech disclosing public officials' misfeasance is protected while speech intended to air personal grievances is not." *Id.,* quoting *Swineford v. Snyder County,* 15 F.3d 1258, 1271 (3d Cir.1994). As the Third Circuit has found that complaints of racial and/or sexual discrimination and harassment may constitute speech on a matter of public concern as a matter of law, where the content of the complaints, if made public, "would be relevant to the electorate's evaluation of the performance of the office of an elected official," we find that the plaintiffs here have pled sufficient facts to satisfy the "public interest" requirement for pleading a claim under the First Amendment. *See, Azzaro v. County of Allegheny,* 110 F.3d 968, 978 (3d Cir.1997); *Bianchi v. City of Philadelphia,* 183 F.Supp.2d 726, 745 (E.D.Pa.2002).

*6 Defendants' argument in favor of dismissal is as to the second step of Plaintiffs' First Amendment claim. [FN2] In this regard, while they recognize that an adverse employment action short of actual termination is potentially actionable by a public employee, Defendants contend that the actions which they allegedly undertook against the plaintiffs here were so trivial as to not be adverse or actionable.

FN2. This step actually contains two separable inquiries: "Did the defendants take an action adverse to the public employee and, if so, was the motivation for the action to retaliate against the employee for the protected activity." *Muti v. Schmidt,* No. 03-1206, 96 Fed. Appx. 69, 74, 2004 U.S.App. LEXIS 7933, *12 (3d Cir. April 21, 2004), quoting *Merkle v. Upper Dublin School District,* 211 F.3d 782, 800, n. 3 (3d Cir.2000).

Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator and the nature of the retaliatory acts. *Brennan v. Norton,* 350 F.3d 399, 419 (3d Cir.2003), quoting *Suarez Corp. v. Industries v. McGraw,* 202 F.3d 676, 686 (4th Cir.2000). Consequently, to properly balance these interests, courts have required that the nature of the retaliatory acts committed by a public employer be more than *de minimus* or trivial. *Id.* The critical question is whether the retaliatory act would be likely to "deter a person of ordinary firmness" from exercising his or her First Amendment rights. *Schneck v. Saucon Valley School District,* 340 F.Supp.2d 558, 569 (E.D.Pa.2004), quoting *Suppan v. Dadonna,* 203 F.3d 228, 235 (3d Cir.2000). Thus, a public employer may be said to have adversely affected an employee's First Amendment rights when it refuses to rehire an employee because of the exercise of those rights or when it makes decisions which relate to promotion, transfer, recall and hiring, based on the exercise of an employee's First Amendment rights. *Brennan, supra.,* quoting *Suarez,* also *supra.* On the other hand, courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands. *Id. See Also, McKee v. Hart,* Civ. A. No. 3:CV-02-1910, 2004 U.S. Dist. LEXIS 11685 at *24 (M.D.Pa. Feb.12, 2004); *Young v. Bensalem Township,* Civ. A. No. 04-1292, 2004 U.S. Dist. LEXIS 15412 (E.D.Pa. July 23, 2004).

In application of the preceding principles to the case at hand, we would agree with the defendants that the publication of the message in the newspaper, the placement of the condoms, note and bumper sticker upon Plaintiffs'

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 984197 (E.D.Pa.)
**(Cite as: Slip Copy)**

Page 6

truck and the posting of the photograph in the township building, are little more than trivial annoyances not severe enough to cause "reasonably hardy individuals to refrain from protected activity." *Muti,* 96 Fed. Appx. at 74. However, Plaintiffs also aver that the defendants undermined Sgt. Schlichter's authority as a commanding officer and that Chief Weaver engaged in "verbal tirades" against him. Although we would agree with the defendants that these allegations lack much detail and are very broad and sweeping in nature, given that this matter is only at the initial pleading stage, we believe they are sufficient to withstand a Rule 12(b)(6) motion. We therefore shall deny the defendants' motion to dismiss Counts I, VII and XII with leave to re-assert these arguments via motion for summary judgment.

**\*7** Defendants also assert that the plaintiffs' claim in Count II of their complaint that they were deprived of a liberty interest protected by the Fourteenth Amendment is factually unsupported and therefore subject to dismissal.

The Fourteenth Amendment forbids state actors from depriving persons of life, liberty or property without due process of law. *Gardner v. McGroarty,* No. 02-1984, 68 Fed. Appx. 307, 310, 2003 U.S.App. LEXIS 11452 (3d Cir. June 9, 2003). Ordinarily when a plaintiff alleges that state actors have failed to provide procedural due process, we must determine "whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of life, liberty or property," and "if protected interests are implicated, we then must decide what procedures constitute due process of law." *Id.,* quoting *Robb v,. City of Philadelphia,* 733 F.2d 286, 292 (3d Cir.1984). *See Also, Gikas v. Washington School District,* 328 F.3d 731, 737 (3d Cir.2003). The procedural protections required by the Due Process Clause are thus determined with reference to the particular rights and interests at stake in a case. *Graham v. City of Philadelphia,* No. 03-3372, 2005 U.S.App. LEXIS 4853 (3d Cir. March 25, 2005) at \*15, citing *Washington v. Harper,* 494 U.S. 210, 229, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) and *Reynolds v. Wagner,* 128 F.3d 166, 179 (3d Cir.1997).

To have a property interest in a job, a person must have more than a unilateral expectation of continued employment; rather, he must have a legitimate entitlement to such continued employment. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Property interests are not generally created by the Constitution but rather are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law -rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. *Id.*

In Pennsylvania, a public employee generally serves at the pleasure of his employer and thus has no legitimate entitlement to continued employment. *Elmore v. Cleary,* 399 F.3d 279, 282 (3d Cir.2005). This is because a local government in Pennsylvania such as a township cannot provide its employees with tenure status unless there exists express legislative authority for doing so; thus, given the absence of explicit enabling legislation from the Pennsylvania General Assembly, a township such as Limerick cannot employ its workers on anything other than an at-will basis. *Elmore,* 399 F.3d at 282-283.

In this case, the complaint avers that Sgt. Schlichter was a police officer employed by Limerick Township until he was "caused" to be "constructively discharged from the Township" by virtue of the defendants' alleged harassment and retaliatory actions. (Complaint, ¶ 50). In light of the Third Circuit's holding in *Elmore* and given the absence of any other averments suggesting that Sgt. Schlichter had a legitimate entitlement to continued employment as a police officer, we find that he has failed to state a claim for deprivation of a property interest without due process of law.

**\*8** Of course, Plaintiff also alleges that the defendants' actions deprived him of his liberty interest in his reputation and employment position in that "[t]he forced resignation ... imposed upon him a stigma which foreclosed his freedom to take advantage of future law enforcement employment opportunities and which seriously damaged his standing in the community of his peers in his profession ." (Complaint, ¶ 70). Injury to reputation by itself is not a "liberty" interest protected under the Fourteenth Amendment. *Siegert v. Gilley,* 500 U.S. 226, 233, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991), citing *Paul v. Davis,* 424 U.S. 693, 708-709, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Where, however, stigma to reputation is accompanied by a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 984197 (E.D.Pa.)
**(Cite as: Slip Copy)**

deprivation of present or future employment, a plaintiff may have a cognizable liberty interest. *See, Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977); *Robb,* 733 F.2d at 294. That interest, however, is not accorded substantive due process protection; rather, the right accorded is that of procedural due process or more specifically the right to an opportunity to refute the charges and clear one's name. *Pulchaski v. School District of Springfield,* 161 F.Supp.2d 395, 406 (E.D.Pa.2001), citing, *inter alia, Codd,* 429 U.S. at 627; *Paul,* 424 U.S. at 710 and *Roth,* 408 U.S. at 573. Thus, a federal constitutional claim arises not from the defamatory or stigmatization conduct *per se* but from the denial of a name-clearing hearing. *Id.* It follows that to sustain a § 1983 stigmatization claim, an aggrieved employee must plead and prove that he timely requested a name-clearing hearing and that the request was denied. *Id.; O'Connell v. County of Northampton,* 79 F.Supp.2d 529, 536 (E.D.Pa.1999), citing *Freeman v. McKellar,* 795 F.Supp. 733, 739 (E.D.Pa.1992)("Even a discharged employee must allege that he timely requested a hearing to clear his name and that the request was denied.")

Nowhere in the plaintiffs' complaint do they allege that they requested a name-clearing hearing for Sgt. Schlichter or that such request was denied. Consequently, we conclude that they have likewise failed to state a claim for deprivation of a protected liberty interest under the Fourteenth Amendment. Count II is therefore dismissed in its entirety with prejudice.

## B. Plaintiffs' Claim Under Title VII (Count III)

Defendants next move to dismiss Count III of the plaintiffs' complaint, which alleges that the defendant township created a hostile work environment for and otherwise discriminated against Sgt. Schlichter because of and in retaliation for his opposing and attempting to remedy the hostile work environment of his co-worker Robin Scalisi.

Under Title VII of the Civil Rights Act of 1964, as amended, 42 U .S.C. § 2000e-3(a),
It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter,

or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

**\*9** In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the U.S. Supreme Court first set forth the basic allocations of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Burdine,* 450 U.S. at 252-253, 101 S.Ct. at 1093, quoting *McDonnell Douglas,* 411 U.S. at 802, 804. To establish a prima facie case, a plaintiff must show that he belongs to a protected class, that he was qualified for but was rejected for a job for which the employer was seeking applicants, and that non-members of the protected class were treated more favorably. *McDonnell Douglas,* 411 U.S. at 802; *Burdine,* 450 U.S. at 252-253.

In slight contrast, to establish a prima facie case of hostile work environment, a plaintiff must show that (1) he suffered intentional discrimination because of his membership in a protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position; and (5) the existence of respondeat superior liability. *Verdin v. Weeks Marine, Inc.,* No. 03-4571, 2005 U.S.App. LEXIS 2649 at \*7-8 (3d Cir. Feb. 16, 2005); *Kunin v. Sears Roebuck & Co.,* 175 F.3d 289, 293 (3d Cir.1999). Factors which may indicate a hostile work environment include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Sherrod v. Philadelphia Gas Works,* No.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 984197 (E.D.Pa.)
**(Cite as: Slip Copy)**

Page 8

02-2153, 57 Fed. Appx. 68, 75, 2003 U.S.App. LEXIS 1428 at *18-19 (3d Cir. Jan. 29, 2003), quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To establish a hostile work environment, a plaintiff must show harassing behavior "sufficiently severe or pervasive to alter the conditions of employment." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 92 L.Ed.2d 49 (1986).

To make out a prima facie claim for retaliation under Title VII, a plaintiff must demonstrate that (1) he engaged in protected activity; (2) the defendant took an adverse employment action against him, and (3) that a causal link exists between the protected activity and the adverse action. *Kidd v. MBNA America Bank, N.A.,* No. 02-4011, 93 Fed. Appx. 399, 401, 2004 U.S. Dist. LEXIS 5694 at *6 (3d Cir. March 25, 2004), citing *Kachmar v. Sungard Data Systems, Inc.,* 109 F.3d 173 (3d Cir.1999); *Sherrod* 57 Fed. Appx. at 77.

\*10 It should also be noted that under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. *Pennsylvania State Police v. Suders,* 542 U.S. 129, 124 S.Ct. 2342, 2351, 159 L.Ed.2d 204 (2004). The inquiry is objective: did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign? *Id.*

In application of the foregoing, again it appears that the plaintiffs base their retaliation and hostile work environment claim on the publication of a Valentine's Day message in the local newspaper, the placement of a bumper sticker, hotel key and a condom on the plaintiffs' truck, and on the mailing and posting of the superimposed photograph over a six-month period of time. While these incidents are clearly rude and inappropriate, we do not find them to be sufficiently severe or pervasive to alter the terms of the plaintiff's employment or to render his working conditions so intolerable that a reasonable person in his position would have felt compelled to resign. Accordingly, and in as much as the complaint also fails to allege that these actions were taken as the result of the plaintiff being a member of a protected class, we find that Count III fails to state a claim for an actionable hostile work environment or for retaliation

under Title VII.

C. Plaintiffs' Claims Under 42 U.S.C. §§ 1985 and 1986

Defendants next move to dismiss Counts IV and V of the complaint, which endeavor to plead claims for relief under Sections 1985 and 1986 of the Civil Rights Act. As Plaintiffs agree that their complaint fails to plead viable causes of action under these Sections, Counts IV and V of the Complaint are dismissed with prejudice.

D. Plaintiffs' Claim under 42 U.S.C. § 1988

Defendants contend that Count VI of the Complaint should also be dismissed as Section 1988 does not give rise to an independent cause of action. The law is clear and Plaintiffs agree that Section 1988 does not create an independent federal cause of action; it is merely intended to complement the various acts which do create federal causes of action for the violation of civil rights. *Moor v. County of Alameda,* 411 U.S. 693, 702, 93 S.Ct. 1785, 1791-1792, 36 L.Ed.2d 596 (1973); *Turnstall v. Office of Judicial Support,* 820 F.2d 631, 633 (3d Cir.1987); *Petaccio v. Davis,* Civ. A. No. 02-2098, 2002 U.S. Dist. LEXIS 20289 at *9 (E.D.Pa. Oct. 9, 2002). Accordingly, and since the plaintiffs have included demands for reasonable costs and attorney's fees in all of the other counts of their complaint, we find Count VI duplicative of relief previously sought. Count VI is therefore also dismissed with prejudice.

E. Plaintiffs' State Law Claim for Civil Conspiracy

Defendants next seek dismissal of Plaintiffs' claim under Pennsylvania common law for civil conspiracy.

In Pennsylvania, to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. *General Refractories Company v. Fireman's Fund Insurance Company,* 337 F.3d 297, 313 (3d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 984197 (E.D.Pa.)
**(Cite as: Slip Copy)**

Page 9

Cir.2003). A claim of civil conspiracy cannot be pled without also alleging an underlying tort. _Boyanowski v. Capital Area Intermediate Unit,_ 215 F.3d 396, 405 (3d Cir.2000), citing, _inter alia, In re Orthopedic Bone Screw Products Liability Litigation,_ 193 F.3d 781, 789, n. 1 (3d Cir.1999) and _Nix v. Temple University,_ 408 Pa.Super. 369, 569 A.2d 1132, 1137 (1991).

\*11 In Count VIII, the plaintiffs allege that:
113. The aforesaid Defendants in this count of this complaint entered into a conspiracy to deprive members of this community of their civil rights for the malicious purpose and bias motives of co-Defendants.
114. There (sic) aforesaid Defendants shared in a general motive to conceal the misconduct of co-Defendants and to deprive members of the community of their constitutional rights.
115. One or more of the Defendants participating in this conspiracy did in fact deprive members of the community of their civil rights, including deprivation of Plaintiff's Civil rights by Defendants as alleged in this Complaint, in furtherance of the conspiracy between these Defendants.

It is well established that a private actor and a public actor working in concert can form a civil conspiracy to violate an individual's civil rights under section 1983 but in order to do so, the plaintiffs must plead the circumstances of the alleged wrong with particularity so as to place the defendants on notice of the precise misconduct with which they are charged. _Hennessy v. Santiago,_ 708 A.2d 1269, 1277 (Pa.Super.1998), citing _Adickes v. Kress & Co.,_ 398 U.S. 144, 150-152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), _Rose v. Bartle,_ 871 F.2d 331, 366 (3d Cir.1987) and _Labalokie v. Capitol Area Intermediate Unit,_ 926 F.Supp. 503, 508-509 (M.D.Pa.1996). Only allegations of conspiracy which are particularized, such as those addressing (1) the period of the conspiracy, (2) the object of the conspiracy, and (3) certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient. _Id._

In application of the foregoing, we find that the Plaintiffs' pleading in this matter clearly fails to aver the requisite elements to state a claim upon which relief may be granted for civil conspiracy. Furthermore, under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541,

"[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." [FN3] As noted, there are exceptions to this general grant of immunity. Under 42 Pa.C.S. § 8542(a), a party seeking to recover against a local agency or its employee(s) acting within the scope of his or her office or duties, must plead and prove that he has a common law or statutory cause of action in _negligence_ against the local agency _and_ that the local agency's alleged act of negligence which caused the injury complained of falls within one the following categories enumerated in Section 8542(b): (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) care, custody or control of animals. Given that the tort of civil conspiracy does not fall within any of the statutorily-prescribed categories and is not a cause of action sounding in negligence, Count VIII is also properly dismissed against the township and all of the other defendants in their official capacities.

> FN3. A "local agency" is defined under the Act as "[a] government unit other than the Commonwealth government. The term includes an intermediate unit." Limerick Township is thus a local agency within the meaning of the Tort Claims Act and is generally immune from suit, together with its employees. _See Also,_ 42 Pa.C.S. § 8545.

F. Plaintiffs' Claim Under the Pennsylvania Constitution

\*12 In Count XIII, Plaintiffs endeavor to state a cause of action on the grounds that the defendants "individually and in concert have violated Plaintiffs' rights under the Pennsylvania Constitution, and particularly the Declaration of Rights which explicitly stated that 'all power being originally inherent in, and consequently derived from, the people; therefore all officers of the government, whether legislative or executive, are their trustee and servants, and at all times accountable to them ..." (Complaint, ¶ 148).

The Supreme Court of Pennsylvania has not ruled on the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 984197 (E.D.Pa.)
**(Cite as: Slip Copy)**

issue of whether there is a private cause of action for damages under the state Constitution and the majority of the federal courts in this Circuit that have considered the issue have concluded that there is no such right under the Pennsylvania Constitution. *See, e.g., Ryan v. General Machine Products,* 277 F.Supp.2d 585, 595 (E.D.Pa.2003) and *Douris v. Schweiker,* 229 F.Supp.2d 391, 405 (E.D.Pa.2002) and the cases cited therein. We shall therefore grant the defendants' motion to dismiss Count XIII of the complaint as well.

G. Plaintiffs' Claims for Invasion of Privacy

In Counts IX and XI, Plaintiffs assert that Defendants Weaver, Moore and John Doe invaded their privacy by intruding upon their solitude and seclusion and published information which placed them in a false light.

The right of privacy is a qualified right to be let alone, and to be actionable the invasion of that right must be unlawful or unjustifiable. *Primus v. Burnosky,* Civ. A. No. 02-713, 2003 U.S. Dist. LEXIS 6713 at \*40 (E.D.Pa. April 17, 2003), citing *Lynch v. Johnston,* 76 Pa.Cmwlth. 8, 463 A.2d 87 (1983). There are four types of invasion of privacy in Pennsylvania: (1) publicity given to private life; (2) intrusion upon seclusion; (3) appropriation of name or likeness; and (4) publicity placing a person in a false light. *Tucker v. Merck & Co.,* No. 03-2616, 102 Fed. Appx. 247, 256, 2004 U.S.App. LEXIS 13347 at \*21 (3d Cir. June 29, 2004), citing *Vogel v. W.T. Grant Co.,* 458 Pa. 124, 327 A.2d 133, 136 (1974). The Supreme Court of Pennsylvania has adopted the Restatement's definition of invasion of privacy and thus adheres to the Restatement's definition of the sub-tort of invasion of privacy, false light:
One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if
(a) the false light in which the other was placed would be highly offensive to a reasonable person, and
(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other was placed.

*Fanelle v. Lojack Corporation,* Civ. A. No. 99-4292, 2000 U.S. Dist. LEXIS 17767 at \*30 (E.D.Pa. Dec. 7, 2000),

citing *Restatement (Second) of Torts,* § 652E (1977) and *Vogel,* 458 Pa. at 129, n. 9, 327 A.2d 133. Stated otherwise, the tort of false light/invasion of privacy involves "publicity that unreasonably places the other in a false light before the public." *Rush v. Philadelphia Newspapers, Inc.,* 732 A.2d 648, 654 (Pa.Super.1999), quoting *Strickland v. University of Scranton,* 700 A.2d 979, 987 (Pa.Super.1997) and *Curran v. Children's Services Center of Wyoming County, Inc.,* 396 Pa.Super. 29, 578 A.2d 8, 12 (1990). A cause of action for invasion of privacy will be found where a major misrepresentation of a person's character, history, activities or beliefs is made that could reasonably be expected to cause a reasonable man to take serious offense. *Id.* The elements to be proven are publicity, given to private facts, which would be highly offensive to a reasonable person and which are not of legitimate concern to the public. *Id.*

\*13 Pennsylvania has also adopted the definition for intrusion upon seclusion invasion of privacy set forth by the *Restatement (Second) of Torts,* § 652B:
One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy if the intrusion would be highly offensive to a reasonable person.

*Larsen v. Philadelphia Newspapers, Inc.,* 375 Pa.Super. 66, 543 A.2d 1181 (1988), citing *Marks v. Bell Telephone Co. of Pennsylvania,* 460 Pa. 73, 331 A.2d 424 (1975). To maintain a claim for intrusion upon seclusion, a plaintiff must plead and prove that (1) there was an intentional intrusion, (2) upon the solitude or seclusion of the plaintiff, or his private affairs or concerns, and (3) that the intrusion was substantial and (4) highly offensive. *Tucker,* 102 Fed. Appx. at \*21.

In this case, the plaintiffs allege that Defendants Weaver and Moore published a Valentine's Day message in the local newspaper and posted a photograph with superimposed language over it essentially accusing Sgt. Schlichter of having an extra-marital affair with Robin Scalisi. Assuming the falsity of this accusation, we find these allegations to be sufficient to plead claims for false light and intrusion upon seclusion invasion of privacy against Defendants Weaver and Moore only. [FN4]

FN4. Count XI charges false light invasion of privacy against all of the defendants. Given that this tort does not fall within any of the exceptions to governmental immunity set forth in 42 Pa.C.S. § 8542(b), we find that the complaint fails to plead a viable claim against Limerick Township or any of the other township defendants save for Moore and Weaver, the individual alleged actors.

### H. Plaintiffs' Claims for Intentional Infliction of Emotional Distress

Finally, Plaintiffs also contend that in publishing the photograph and newspaper message, placing the bumper sticker, key and condoms on Plaintiffs' truck and in undermining Plaintiffs' authority as a police supervisor, Defendants Weaver and Moore acted intentionally and for the purpose of causing Plaintiffs emotional distress.

Although the tort of intentional infliction of emotional distress has been acknowledged but never formally adopted by the Pennsylvania Supreme Court, the Pennsylvania Supreme Court *has* held that *if* the tort were adopted, it would require that "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *See, Hoy v. Angelone,* 554 Pa. 134, 151, 720 A.2d 745, 754 (1998), quoting with approval, *Buczek v. First National Bank of Mifflintown,* 366 Pa.Super. 551, 558, 531 A.2d 1122, 1125 (1987); *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 184, 527 A.2d 988, 989 (1987). *See Also, Taylor v. Albert Einstein Medical Center,* 562 Pa. 176, 181, 754 A.2d 650, 652 (2000). Moreover, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *EEOC v. Federal Express Corp.,* Civ. A. No. 1:02-CV-1194, 2005 U.S. Dist. LEXIS 5835 at *24-25 (M.D.Pa. Jan. 13, 2005), quoting *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988).

**\*14** In evaluating the conduct complained of here in the context of the preceding principles, we find that while it is undeniably inappropriate, unprofessional and in poor taste, we cannot find that it is so extreme and outrageous in character as to meet the threshold for an intentional infliction of emotional distress claim. We shall therefore grant the motion to dismiss Count X as well.

For all of the preceding reasons, the defendants' motion to dismiss is partially granted pursuant to the annexed order.

### ORDER

AND NOW, this day of April, 2005, upon consideration of Defendants' Motion to Dismiss Plaintiffs' Complaint and Plaintiffs' Response thereto, it is hereby ORDERED that the Motion is GRANTED IN PART and DENIED IN PART and Counts II, III, IV, V, VI, VIII, X and XIII are DISMISSED in their entirety and Counts IX and XI are DISMISSED as against Defendants Limerick Township, Walter Zaremba, Ken Sperring, Joseph Greco, Thomas DeBello, Frank Grant and Frederick Fidler only. In all other respects, the Motion is DENIED.

E.D.Pa.,2005.
Schlichter v. Limerick Tp.
Slip Copy, 2005 WL 984197 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:04cv04229 (Docket) (Sep. 07, 2004)
• 2004 WL 2250179 (Trial Pleading) Civil Action Complaint (Jan. 01, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Date of Printing: JAN 17,2006

## KEYCITE

▷**San Filippo v. Bongiovanni**, 30 F.3d 424, 63 USLW 2074, 93 Ed. Law Rep. 88 (3rd Cir.(N.J.), Jul 21, 1994)
**(NO. 93-5658)**

### History
### Direct History

=>    <u>1</u>  **San Filippo v. Bongiovanni**, 30 F.3d 424, 63 USLW 2074, 93 Ed. Law Rep. 88  (3rd Cir.(N.J.) Jul
21, 1994) (NO. 93-5658), rehearing and rehearing in banc denied (Aug 18, 1994)
*Certiorari Denied by*

**H**    <u>2</u>  Bongiovanni v. Filippo, 513 U.S. 1082, 115 S.Ct. 735, 130 L.Ed.2d 638, 63 USLW 3511, 63
USLW 3515  (U.S. Jan 09, 1995) (NO. 94-872)

### Negative Citing References (U.S.A.)

*Disagreed With by*

▷    <u>3</u>  Rendish v. City of Tacoma, 123 F.3d 1216, 13 IER Cases 268, 97 Cal. Daily Op. Serv. 6622, 97
Daily Journal D.A.R. 10,793  (9th Cir.(Wash.) Aug 20, 1997) (NO. 96-36150) ★ ★ ★ **HN: 8
(F.3d)**

**C**    <u>4</u>  Martin v. City of Del City, 179 F.3d 882, 138 Lab.Cas. P 58,660, 16 IER Cases 412, 1999 CJ
C.A.R. 3293  (10th Cir.(Okla.) Jun 03, 1999) (NO. 97-6336) ★ ★ ★ ★ **HN: 5,7,8 (F.3d)**

▷    <u>5</u>  Smith v. Bates Technical College, 139 Wash.2d 793, 991 P.2d 1135, 163 L.R.R.M. (BNA) 2358,
15 IER Cases 1665  (Wash. Jan 27, 2000) (NO. 67374-8) ★ ★ **HN: 8 (F3d)**

*Declined to Follow by*

**H**    <u>6</u>  Orick v. Banziger, 945 F.Supp. 1084  (S.D.Ohio Nov 08, 1996) (NO. C-1-95-246) ★ ★ **HN: 5
(F.3d)**

▷    <u>7</u>  Sussman v. New York City Health and Hospitals Corp., 1997 WL 334964, 10 NDLR P 132
(S.D.N.Y. Jun 16, 1997) (NO. 94 CIV. 8461 (DBS)) ★ ★ ★ **HN: 5,7,8 (F.3d)**

**H**    <u>8</u>  Grigley v. City of Atlanta, 136 F.3d 752, 13 IER Cases 1396, 11 Fla. L. Weekly Fed. C 1106  (11th
Cir.(Ga.) Mar 04, 1998) (NO. 97-8268) ★ ★ ★ **HN: 5,8 (F.3d)**

**H**    <u>9</u>  Wood v. Cohen, 1999 WL 83945  (E.D.Pa. Feb 17, 1999) (NO. CIV. A. 96-3707, CIV. A.
97-1548) ★ ★ **HN: 3 (F.3d)**

**H**    <u>10</u>  Local 621, S.E.I.U., AFL-CIO v. City of New York, 2002 WL 31151355  (S.D.N.Y. Sep 26, 2002)
(NO. 99 CIV.9025) ★ ★

▷    <u>11</u>  Toomer v. Garrett, 155 N.C.App. 462, 574 S.E.2d 76  (N.C.App. Dec 31, 2002) (NO.
COA01-1385) ★ ★ **HN: 8 (F.3d)**

**C**    <u>12</u>  Lott v. Andrews Center, 259 F.Supp.2d 564  (E.D.Tex. May 02, 2003) (NO. 6:03-CV-34) ★ ★
**HN: 8 (F.3d)**

▷    <u>13</u>  Walker v. Board of Regents of University of Wisconsin System, 300 F.Supp.2d 836, 93 Fair
Empl.Prac.Cas. (BNA) 328, 185 Ed. Law Rep. 538  (W.D.Wis. Jan 07, 2004) (NO. 03-C-66-C)
★ ★ **HN: 3 (F.3d)**

**H**    <u>14</u>  Van Deelen v. Shawnee Mission Unified School Dist. #£512, 316 F.Supp.2d 1052, 188 Ed. Law
Rep. 367  (D.Kan. Feb 18, 2004) (NO. CIV.A.03-2018-CM) ★ ★ ★ **HN: 7 (F.3d)**

© Copyright 2006 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058
914 668, or their Licensors. All rights reserved.

►     <u>15</u> Kirby v. City of Elizabeth City, North Carolina, 380 F.3d 777, 150 Lab.Cas. P 59,892, 21 IER Cases 1295 (4th Cir.(N.C.) Aug 23, 2004) (NO. 03-2035) ★ ★ **HN: 8 (F.3d)**

**H**     <u>16</u> Kirby v. City Of Elizabeth City, North Carolina, 388 F.3d 440, 21 IER Cases 1826 (4th Cir.(N.C.) Nov 03, 2004) (NO. 03-2035) ★ ★ **HN: 8 (F.3d)**

*Criticized in*

▷     <u>17</u> Valot v. Southeast Local School Dist. Bd. of Educ., 107 F.3d 1220, Unempl.Ins.Rep. (CCH) P 22,174, 1997 Fed.App. 0087P (6th Cir.(Ohio) Mar 06, 1997) (NO. 95-3390), rehearing and suggestion for rehearing en banc denied (Apr 18, 1997) ★ ★ ★ **HN: 5,8 (F.3d)**

*Disagreement Recognized by*

**H**     <u>18</u> Peele v. New York City Dept. of Social Services/Human Resources Admin., 1995 WL 728478 (S.D.N.Y. Dec 08, 1995) (NO. 92 CIV. 3765 (SWK)) ★ ★ **HN: 5,7 (F.3d)**

▷     <u>19</u> Bowers v. National Collegiate Athletic Ass'n, 9 F.Supp.2d 460, 1998-2 Trade Cases P 72,271, 128 Ed. Law Rep. 670, 12 NDLR P 270 (D.N.J. Jun 08, 1998) (NO. CIV. A.97-2600) ★ ★ **HN: 1 (F.3d)**

**C**     <u>20</u> Vickowski v. Hukowicz, 201 F.Supp.2d 195 (D.Mass. Mar 13, 2002) (NO. CIV.A.97-30252-MAP) ★ ★ ★ **HN: 5,8 (F.3d)**

*Declined to Extend by*

▷     <u>21</u> Khair v. Campbell Soup Co., 893 F.Supp. 316, 75 Fair Empl.Prac.Cas. (BNA) 995 (D.N.J. Jun 12, 1995) (NO. CIV. A. 93-1626 (JEI), on reconsideration in part (Jul 03, 1995) ★ ★ **HN: 9 (F.3d)**

*Distinguished by*

**H**     <u>22</u> We, Inc. v. City of Philadelphia, 174 F.3d 322, 134 Ed. Law Rep. 757 (3rd Cir.(Pa.) Apr 01, 1999) (NO. 97-1958) ★ ★ ★ **HN: 5,7,8 (F.3d)**

       <u>23</u> Berbas v. Board of Educ. of City of Chicago, 2000 WL 875728 (N.D.Ill. Jun 28, 2000) (NO. 00-C-2734) ★ ★ **HN: 8 (F.3d)**

**C**     <u>24</u> Cooper v. Cape May County Bd. of Social Services, 175 F.Supp.2d 732, 146 Lab.Cas. P 59,590 (D.N.J. Nov 27, 2001) (NO. CIV. 00-CV-0050 (SSB) ★ ★ ★ **HN: 5,7,8 (F.3d)**

**H**     <u>25</u> East Mississippi State Hosp. v. Callens, 892 So.2d 800, 21 IER Cases 1162 (Miss. Apr 15, 2004) (NO. 2000-CT-00258-SCT), rehearing denied (Feb 17, 2005) ★ ★ ★ **HN: 10 (F.3d)**

*Followed with Reservations by*

**C**     <u>26</u> Pollock v. City of Ocean City, 968 F.Supp. 187 (D.N.J. Jun 13, 1997) (NO. CIV. A. 96-5847(JEI)) ★ ★ ★ **HN: 5 (F.3d)**

### Related References (U.S.A.)

►     <u>27</u> San Filippo v. Bongiovanni, 743 F.Supp. 327, 59 USLW 2096, 62 Ed. Law Rep. 605 (D.N.J. Jul 25, 1990) (NO. CIV.A. 88-2575)

*Reversed by*

**H**     <u>28</u> San Filippo v. Bongiovanni, 961 F.2d 1125, 74 Ed. Law Rep. 459 (3rd Cir.(N.J.) Apr 22, 1992) (NO. 90-6052)

*Certiorari Denied by*

**H**     <u>29</u> San Filippo v. Bongiovanni, 506 U.S. 908, 113 S.Ct. 305, 121 L.Ed.2d 228, 61 USLW 3061, 61 USLW 3248, 61 USLW 3264 (U.S.N.J. Oct 05, 1992) (NO. 92-135)

### Court Documents
### Appellate Court Documents (U.S.A.)

**U.S. Appellate Petitions, Motions and Filings**

© Copyright 2006 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.