IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BARBARA CONLEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 04-1394-GMS |
| | ) | |
| STATE OF DELAWARE, | ) | |
| DIVISION OF STATE POLICE, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

### RESPONSE OF DEFENDANTS IN OPPOSITION TO PLAINTIFF'S "MOTION FOR SANCTIONS"

**I.   Statement of Facts**

    **A.   Preservation of Electronic Evidence**

        **1.   The Internal Affairs Investigation.**

Immediately upon learning that a *Delaware State News* reporter had knowledge of a departmental message concerning Captain Conley's disciplinary hearing, the first concern of Colonel Thomas MacLeish, as Acting Superintendent of the Delaware State Police (hereinafter "DSP"), was to determine how the reporter received the message. (Exhibit A; Paige Affidavit ¶9)  He directed Captain James Paige, the officer in charge of the Internal Affairs Unit, to investigate.[1]  Once it was confirmed that the reporter had received a "hard copy" of the electronic message, the focus was on whether the message had been forwarded by a DSP user (i.e., from a computer on the DSP network).  The Internal Affairs Unit, at the direction of the Acting Superintendent, conducted an electronic search to determine whether any DSP computer user had forwarded the

---

[1] The internal investigation was undertaken **before** counsel for plaintiff sent a letter complaining about the "leak" and making various allegations and demands.  Counsel's letter had **no** effect on the investigation.  However, counsel was advised of the findings and conclusions of the investigation.

departmental e-mail regarding Captain Conley's trial board to the *Delaware State News*. This search covered all computers in the DSP network, including that of Colonel Chaffinch. The search, conducted by officers assigned to the High Tech Crimes Unit, determined conclusively that no DSP user had forwarded the e-mail from a DSP computer. (Paige Affidavit ¶10) More specifically, the message was not forwarded by Colonel Chaffinch from the computer assigned to him. Apparently, the reporter obtained the copy of the message by hand, or through a fax of the document.[2] In the absence of any further information, or "suspects" in providing the message to the reporter, the investigation was closed.

### 2. **Evidence Retention.**

As set forth in the affidavit of Lt. Robert Moses, all electronic messages sent and received by departmental computer users are routed through network servers controlled by the State Department of Technology and Information ("DTI"). (Exhibit B; Affidavit of Robert C. Moses dated November 22, 2005; hereinafter "Moses I" ¶4) Messages sent through a "Blackberry" personal digital assistant are likewise captured by DTI. (Exhibit C; Affidavit of Robert C. Moses dated January 30, 2006; hereinafter "Moses II" ¶10) The DTI servers backup and preserve this information for a period of approximately two years. (Moses I ¶4) To the extent that the plaintiff lawyers seek to access the electronic communications of any DSP user, those records would be accessible through DTI from the network server, which handles all such messages. (Moses I ¶5) The format and content of the data preserved by DTI is identical to that of the original messages, as sent and received by the individual DSP user from his or her workstation. (Moses II ¶8) There is nothing on the individual computer hard drives regarding these messages that would not appear on the network server. (Moses II ¶4) Thus, the information concerning e-mail traffic, sought in the Plaintiff's Fourth Request for Production, is available through these DTI data records. When a specific request for such records was served by the plaintiff, late in October of 2005, DSP promptly transmitted a request to DTI to secure all such records for purposes of this lawsuit. (Moses I ¶15) As set forth in the defendants' discovery response, the next step in the process is to formulate search queries that will

---

[2] The *Delaware State News* article dated October 29, 2004 indicates that "…a copy of an internal state police e-mail was faxed anonymously to the newspaper." (Exhibit D)

isolate any messages relevant to this lawsuit, while excluding the volume of other unrelated messages, many of which would be confidential, privileged, and implicate the privacy rights of third persons. (Moses I ¶9) That search is already underway.

### 3. DSP "Recycling" of Computers.

As set forth in the attached affidavit of Lt. Moses ("Moses II"; Exhibit C), it was the practice of the Delaware State Police to re-image computer hard drives when a user retired or was reassigned, or was assigned a new computer. (Moses II ¶6) This process involves overwriting data from the hard drive, including the operating system and software programs installed on the computer. (Moses II ¶6) The purpose of this process is to return the computer to active service with a new user as soon as possible, with the new "image" reloaded onto that computer. Privacy and security concerns would dictate that any data stored on the hard drive be overwritten, before the computer was reassigned to a new user.

The individual computer within the DSP system serves primarily as a workstation for the user to interface with the network and other DSP users (and indeed, other State of Delaware users). (Moses I ¶5) All documents would normally be stored on the network drive, and all messages would be routed through the network server. The individual computer hard drives would contain the operating system and the software necessary to run programs and to interface with the network. (Moses II ¶4) The re-imaging of a computer would not affect data stored on the network drives. (Moses II ¶8)

The computer formerly used by Colonel Chaffinch was re-imaged in the normal course of business, according to this standard practice, shortly after his retirement in May of 2005. (Moses I ¶13; Moses II ¶7) Once the computer had been reconfigured, it was randomly assigned to a new user. (Moses II ¶5) Given the DTI backup procedure set forth above, none of the data regarding electronic messages sought by the plaintiff was lost.

### 4. Plaintiff's Lack of Diligence.

The plaintiff's focus on the Chaffinch computer is of quite recent vintage. Her lawsuit was filed on **October 27, 2004**. It was not until a year later, on **October 27,**

3

**2005**, that she first served a discovery request directed at production of electronic data.[3] Plaintiff lawyers, who now argue that defendants should have anticipated that request, curiously did not raise any such issue prior to making it. At the Court's initial Scheduling Conference in this case, on March 17, 2005, an ideal forum for discovery concerns[4], the plaintiff failed to make any mention of what she now claims was her urgent need for discovery of electronic messages. This omission was not out of ignorance. Plaintiff was well aware of the issue relating to the "leak" of the e-mail to the *Delaware State News* in October of 2004, having amended her complaint to include "retaliation" allegations, and having contacted DSP to demand an investigation of the leak (albeit after the investigation was already underway). Plaintiff was made aware of the results of the investigation in December of 2004, yet made no overture concerning the Chaffinch computer and took no action to obtain any electronic data as a result.

Formal discovery effectively commenced at that point, and during the ensuing seven months, the parties engaged in extensive exchanges of information, including a number of depositions. The plaintiff took the deposition of Colonel Chaffinch on June 6, 2005, but, in the course of a full day of questioning covering 191 transcript pages, asked no questions about his computer, its hard drive, or messages that he had sent through e-mail, "Blackberry", or the Arch pager service. This lack of interest is striking, given that Colonel Chaffinch testified as to his (well-publicized) retirement, effective a month before. Clearly, if the plaintiff had any interest in Colonel Chaffinch's use of his computer, the disposition of his computer upon his retirement, or the retention of records of messages, this was the time to ask those questions, and to take any further action to pursue such information. Plaintiff took no action whatsoever.

There were numerous other opportunities for the plaintiff lawyers to raise concerns over electronic data. For example, the Court will recall a contentious conference on November 17, 2005 regarding the defense disclosure of numerous

---

[3] Defendants immediately acted to preserve data on the DTI server responsive to the request (Moses I ¶15), despite the fact that the request was overly broad and poorly focused. (Moses I ¶¶6-12) Defendants prepared a timely response that included a thorough affidavit ("Moses I") explaining the State's data retention policies and search capabilities.

[4] *See* Fed.R.Civ.Pr. 16(c)(3),(6),(7),(12). It is also noteworthy that amendments to the Rules of Civil Procedure proposed by the Civil Rules Advisory Committee would encourage early attention to issues relating to electronic discovery by requiring discussion of issues involving electronic discovery during the discovery planning conference. A memorandum on the proposed changes can be found at www.uscourts.gov/rules/comment2005/CVAug04.

witnesses critical of the plaintiff's job performance and conduct on the job. Despite a general discussion of discovery yet to be completed, the plaintiff lawyers failed to raise any concerns over electronic messages. Again on December 8, 2005, the Court held a teleconference regarding the deposition of Captain Glenn Dixon. The defendants' discovery response, containing the Moses affidavit on electronic data recovery ("Moses I"), had been served on November 28, 2005. Yet the plaintiff lawyers failed to take advantage of this opportunity to raise any concerns they had about the response.

Contrary to the plaintiff's Rule 7.1.1 certification to the Court, there was no attempt to raise this issue in a constructive manner with defense counsel at any time prior to the filing of the motion. The only contact was a last-minute confrontational message demanding a default judgment, which did not even mention the filing of a motion. Despite the allegations of prejudice in the discovery process, and her charges that evidence was deliberately withheld, the plaintiff failed to pursue either informal or formal remedies for the perceived problem, for a period of over seven weeks from the service of the defendants' discovery responses.

### 5.  **Defendants' discovery response was timely and complete.**

The Defendants filed a timely response to the plaintiff's request for production, including an affidavit from Lt. Moses ("Moses I"), the defense computer expert, explaining in detail how computer records had been preserved and imaged, and how such records could be searched for purposes of locating electronic correspondence of the type sought by plaintiff. The affidavit reflected that counsel had met extensively with Lt. Moses, in order to understand how data could be obtained from the network server, secured, and searched for communications relevant to the lawsuit.

### 6.  **Defendants took additional precautions to preserve evidence.**

Given that former Colonel Chaffinch made limited use of his assigned computer, and instead relied on his primary secretary for most communications and documents, the hard drive of that secretary's computer has been imaged by the defendants, at the initiative of defense counsel, as a precaution, despite the lack of any request therefor by the plaintiff lawyers. As in the case of DSP network users, documents created by the

5

secretary were stored on the network drive, and communications were routed through the network server, where such data was backed up by DTI. Thus, as in the case of Colonel Chaffinch, any data of potential relevance to this lawsuit would be found on the network server, and not on the hard drive of the secretary's computer. DSP is in the process of securing any such data stored on the network drives for analysis to identify any files pertinent to the plaintiff's discovery requests.

       7.     **<u>No discoverable evidence has been withheld or suppressed.</u>**

All electronic correspondence generated or received by the defendants, including attached documents and any messages sent or received on an assigned "Blackberry" portable device, has been obtained by Lt. Moses from their electronic mail accounts on the DTI servers. (Moses II ¶8) That data is being maintained in a secure location, pending analysis. Despite the delay on the part of plaintiff in requesting such data, the essential records and messages have been retained pursuant to the DTI data retention procedures. Thanks to the redundancy of the network system, the information available through the server is identical to the information generated by the Chaffinch computer workstation. (Moses I ¶4) The same would be true for data generated by computers assigned to the other defendants, and to other DSP personnel, all of which would be recoverable through the network server.

## II.    Argument

      **A.    PLAINTIFF'S "MOTION FOR SANCTIONS" IS A DISCOVERY MOTION THAT SHOULD BE REJECTED BY THE COURT AS AN IMPROPER FILING IN VIOLATION OF THE RULES**

        1.     **<u>Failure to satisfy the requirements of Local Rule 7.1.1</u>**

Local Rule 7.1.1 requires that a party filing a non-dispositive motion attach "a statement showing that the attorney making the motion has made a reasonable effort to reach agreement with the opposing attorneys on the matters set forth in the motion." *Compare* Fed.R.Civ.P. 37(a)(2)(A) (certification of good faith effort to avoid court action required on any motion to compel discovery). The obvious policy behind this requirement is to encourage the lawyers to confer in a meaningful way and attempt to

6

resolve the problems raised in the contemplated motion. The "letter" of Rule 7.1.1 requires that the statement be attached. The "spirit" and substance of the Rule require that a reasonable effort be undertaken to reach agreement. In other words, the statement should accurately reflect a good-faith effort to at least explore an amicable resolution. Plaintiff's Motion was accompanied by a statement reading as follows:

> Counsel certifies that he contacted defense counsel to determine their position on this motion. Defense counsel indicated that no sanctions were necessary because no evidence had been destroyed.

While the second sentence accurately reflects the defense position, the first sentence is pure form over substance. Plaintiff's lawyers intended to satisfy only the letter, and not the spirit or intent, of the Rule. The negotiations contemplated by the Rule did not take place here. The plaintiff attorneys sent a single e-mail message imposing a deadline that did not allow sufficient time for consultation. In that sense, counsel's representation in the first sentence of his certificate to the Court is misleading, and plaintiff has filed a motion that fails to conform to Rule 7.1.1.

On Friday the 13th of January, at 2:15 p.m., plaintiff's lawyer sent the following message to defense counsel:

> Please let me know by 10am Monday morning whether you consent to a default judgment being entered against your clients as a sanction for the unprecedented destruction of Col. Chaffinch's hard drive by the DSP despite the pendency of this litigation.
>
> This is the first time I have ever seen destruction of evidence of this scale and magnitude. If you have any creative ideas that you think would adequately sanction your clients, deter similar illegal acts and help remedy the grave prejudice plaintiff has suffered, I am open to suggestions.

Monday January 16, 2006 was a national holiday, a fact presumably overlooked by the plaintiff. The deadline for case-dispositive motions in this case was Tuesday, January 17, 2006, the next business day. F.R.Civ.Pr. 6(a). The message makes no mention of the plaintiff's intent to file a discovery motion, nor was a draft copy of the motion attached to the message.[5] This cryptic message was the first time, in fourteen months of litigation,

---

[5] While Rule 7.1.1 does not by its terms require that a copy of the proposed motion be appended to the communication intended to satisfy the Rule, that is a standard and sensible practice employed by many attorneys. It is well-nigh impossible to "reach agreement on the matters set forth in the motion" where, as here, no copy of the motion is provided, and the nature of the motion is not even mentioned.

that the plaintiff lawyers raised an issue of missing or "destroyed" evidence. Despite numerous opportunities in the course of depositions[6] and conferences[7], the plaintiff lawyers never once attempted to raise the issue. Rather than deal with the problem in a lawyerly way, or in *any* way, these lawyers waited until a Friday afternoon to send a self-serving message loaded with bellicose language such as "unprecedented destruction", "illegal acts", and "grave prejudice", and then imposing a deadline falling on a national holiday. The sardonic request for "creative ideas" was meaningless. This approach is nothing more than a transparent litigation tactic, rather than a legitimate discovery issue. It wasn't that the problem defied ready resolution, or that the defendants were unreceptive to discussion, but that the attorneys preferred confrontation and accusation to discussion and common sense.

       This Court should not stand for such tactics, particularly where none of the outrageous charges have any justification. An eleventh-hour demand for a "default judgment" is not a reasonable effort to reach an accommodation with opposing counsel on a discovery issue. It is an unprovoked attack on the defendants and opposing counsel, and not, unfortunately, for the first time in this case. The plaintiff lawyers have failed to heed this Court's admonition, at the November 17, 2005 conference, to work together on discovery problems, rather than unnecessarily burdening the Court with discovery motions. They have failed to engage in any type of meaningful dialogue with the defendants regarding their perception that data was lost.

       The appropriate sanction for counsel's non-compliance with Rule 7.1.1, under these circumstances, is for the Court to reject their "Motion for Sanctions" as a non-conforming paper. Such a penalty would not be a case of form over substance. If the plaintiff lawyers had bothered to communicate their concerns in a timely and constructive

---

[6] Including, notably, the deposition of Colonel Chaffinch, taken by the plaintiff on June 6, 2005. Not a single question about e-mail messages or data storage was even asked by the plaintiff lawyers, unless one counts the inquiry as to whether Chaffinch referred to a Blackberry as a "dingleberry" (which he denied).

[7] The plaintiff lawyers received the defendants' response to the plaintiff's electronic discovery request (which included the Moses affidavit regarding data retention) some **ten days** prior to the teleconference with the Court on December 8, 2005 (regarding the Dixon deposition and other discovery issues), yet the plaintiff lawyers made no mention of the "unprecedented destruction" or "illegal acts", and made no effort to pursue the purported withholding of evidence with the Court or counsel, either informally or formally.

8

manner, rather than in a belated and confrontational way, they would have learned that no evidence was lost, and that the communication records they seek have been preserved, subject to appropriate search criteria for retrieval. In point of fact, the plaintiff lawyers were made aware of the State's data storage capacity through the affidavit of Lt. Moses (Moses I; Exhibit B), attached to the defendants' discovery response. There really is no excuse for filing a motion without first following up on the defendants' disclosure and pursuing retrieval of the messages plaintiff seeks.[8] The Motion should be rejected as a non-conforming paper. In the alternative, it should be denied on the merits.

### 2. **Failure to follow the procedure set forth in the Case Scheduling Order.**

Paragraph 3(b) of the Scheduling Order entered by the Court in this case on March 28, 2005 (Docket #48) mandates a procedure to be followed where counsel find they are unable in good faith to resolve a discovery dispute. The party seeking relief, which in this instance would be the plaintiff, must contact chambers to schedule a telephone conference. The plaintiff would then file a "letter agenda not to exceed two (2) pages outlining the issues in dispute" filed no later than 48 hours prior to the teleconference. The Court then has the option of requesting further briefing in the form of a TWO PAGE LETTER [caps in original Order] from the party seeking relief, as well as an answer and reply, each of no more than TWO PAGES [caps in original Order].

The plaintiff lawyers have simply ignored this mandate, and have produced a motion, a 22-page Brief, and an appendix, all in direct contravention of the Scheduling Order. Arguing for the extreme sanction of entry of judgment does not convert a discovery problem into a case-dispositive motion. As the cases make clear, an alleged loss of evidence is fundamentally a discovery/evidentiary issue. A motion making such allegations is addressed to the Court's role as arbiter of discovery matters, at least where counsel cannot resolve disputes without judicial intervention. Plaintiff's concern over the possible loss of data from the hard drive could easily have been set forth in two pages, and the defendants' response would have been even more succinct (attaching the Moses

---

[8] Paradoxically, plaintiff's lawyers did provide search terms to defense counsel, for the purpose of identifying e-mail messages relevant to this case. Defense technicians have been running searches to isolate such messages sent by the defendants, which will then be reviewed by defense counsel and, if pertinent to plaintiff's discovery requests, produced. Yet plaintiff, knowing that this good-faith effort was proceeding, suddenly and without warning filed her motion. "No good deed goes unpunished."

9

affidavits on data retention policies). The Court would have been in a position to readily determine that no "spoliation" had occurred, and to encourage the parties to proceed with search criteria to isolate the communications relevant to the claims asserted by the plaintiff.

### 3. <u>Failure to confine the Motion to the record in this case.</u>

The plaintiff improperly attempts to support her application by referring to other lawsuits, defended by other lawyers, filed against the Delaware State Police, which have nothing to do with the present discovery dispute in <u>this</u> case. On pages 7 and 8 of her brief, the plaintiff goes outside the record in this case and refers to "a flood of lawsuits"[9] against Colonel Chaffinch. This appears to be nothing more than an effort to tarnish the defendants in the eyes of the Court. The cases cited involved other plaintiffs, other claims, other facts, and are defended by other lawyers. They are not cited as precedents or authority. To the extent that the Court in such cases may have dealt with discovery issues, no such rulings are mentioned. No opinions, orders, or rulings from such cases are attached to plaintiff's brief or appear in her appendix. As set forth in greater detail in the defendants' Motion to Strike, filed on January 30, 2006, which is incorporated herein by reference, such references outside the record of this case are improper, and they should be disregarded and stricken. In no way can the plaintiff claim support for her discovery motion by relying on an anecdotal account of other lawsuits.

### 4. <u>Failure to seek an appropriate remedy.</u>

The plaintiff attempts to bypass the requirements of Rule 37 with regard to a motion to compel discovery. That Rule, by its terms, imposes an obligation on a party seeking discovery to place the adverse party on notice that some deficiency or failure to respond is claimed, in order that the opponent might remedy that problem. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action. F.R.Civ.Pr. 37(a)(2)(A). No such effort was made in this case.

---

[9] This "flood" was hardly of biblical proportions. Only two other lawsuits are mentioned by name.

There was no conference, and no good-faith attempt to confer on the part of the plaintiff. As set forth above, the plaintiff, rather than take advantage of the defendants' readiness to cooperate to facilitate electronic discovery, has chosen to pay mere lip-service to the requirement of consultation. Rather than pursue a motion to compel disclosure or discovery under Rule 37, and face the dilemma posed by the required certificate, the plaintiff has filed a nonconforming, self-styled motion that cites no procedural authority for the relief sought.

### B. NO DISCOVERABLE EVIDENCE HAS BEEN WITHHELD

The fatal flaw in plaintiff's argument is the erroneous allegation that critical computer data was lost when the Chaffinch computer was re-imaged after Colonel Chaffinch's retirement in May of 2005. The allegation is false for two reasons. First, as set forth in the Statement of Facts, the Internal Affairs Unit investigated the possible forwarding of the trial board e-mail in October of 2004, and conclusively determined that the e-mail was not forwarded from any DSP computer, including the computer assigned to Colonel Chaffinch. Second, despite the lack of any request for computer communications data for an entire year after this lawsuit was filed, DSP retained records through the DTI server of messages[10] sent and received by Colonel Chaffinch. DTI likewise retained on its server such data for the other defendants, and all DSP users. When the plaintiff discovery request was received, steps were taken to obtain and preserve the files from the server, for analysis consistent with the scope of discovery, the privacy rights of the correspondents, and security considerations. As set forth in considerable detail in the affidavits of Lt. Moses, DSP has the capability through DTI to search the data records for the messages sought by the plaintiff in her discovery request. This is the same process recognized by the Court in *Zubulake v. UBS Warburg,* 217 F.R.D. 309,312 (S.D.N.Y. 2003), wherein the Court found that cost-shifting may be appropriate, due to the significant burden of responding. Defendants here do not ask the

---

[10] According to Lt. Moses, communications, if any, by Colonel Chaffinch using his "Blackberry" portable device would also have been routed through the network server, and those messages would have been backed up in the same fashion as the e-mail messages generated by the Chaffinch computer workstation. (Moses II ¶11) The "Arch" pager issued to Colonel Chaffinch had only very limited capability to transmit alphanumeric data, such as a phone number. (Moses II ¶9)

Court to allocate the cost of responding, only to allow discovery of the electronic data belatedly sought by the plaintiff to proceed, following the criteria and process suggested by Lt. Moses.

The plaintiff lawyers seemingly failed to read or understand the detailed affidavit of Lt. Moses ("Moses I"), served with defendants' discovery response, which fully addresses the issues raised in their motion. As Lt. Moses makes clear in his second affidavit, in the context of modern networked computers, the individual workstation is merely a portal for connection with the network server, which is used both for storage of documents and routing of communications. (Moses II ¶4) DSP users interface with large servers maintained by the Department of Technology and Information, which store huge quantities of information and channel millions of messages. (Moses I ¶4) DTI routinely backs up these server files, thus preserving the records of traffic to and from the DSP computers, including documents. (Moses II ¶8) This redundant system assures that no information is lost, and that messages can be traced and recovered through an appropriate search of the records. Even though the plaintiff unaccountably failed to even make a request for any computer records for a year after she filed suit, the pertinent records were stored and retained. Plaintiff has failed to show that any such evidence was lost or withheld by defendants.

The computer used by former Colonel Chaffinch was re-imaged according to established DSP practice, shortly after he retired in May of 2005. (Moses II ¶7) Lt. Moses estimated that the Information Systems Support unit of DSP re-images some seventy-five desktop and laptop computers each month. (Moses II ¶7) This means that the hard drive was overwritten, and the machine with its "re-imaged" hardware and software intact was made available to another DSP user. (Moses II ¶5) It is worthy of remark that the plaintiff lawyers, who attack the defendants and their counsel for "destroying" this computer, and claim that defendants should have known to retain it as evidence, took Col.Chaffinch's deposition in June of 2005, yet failed unaccountably to ask him even one question about his computer, or his use of e-mail, the "Arch" pager, or a "Blackberry" personal digital assistant assigned to him. Plaintiff advocates a double standard in terms of evidence retention, where she and her lawyers can utterly ignore the discovery of computer media for a year, while demanding that defendants anticipate her

12

needs by placing a so-called "litigation hold" on even merely duplicative or redundant sources of information. No case cited by the plaintiff would impose such an unreasonable burden, particularly where the essential data was retained – even in the absence of any request – through existing practices. She should not be permitted to shift the blame for her inaction to the defendants.

The Court, respectfully, may well ask the plaintiff: "If this evidence was so critical to your case, why did you wait a year to even ask for it?" Or: "If electronic discovery was of such great concern to you and your client, and so crucial to her claims of retaliation, how could you sit through discovery conferences with the Court and counsel and not even mention your concern?" And: "How can you claim that the defendants, in the absence of any prompting, should have foreseen your need for this evidence, when you apparently failed to see it yourselves?" In terms of the plaintiff's perplexing failure to act, one of two things must be true. Either the plaintiff lawyers simply overlooked this possible avenue of discovery for a year, and then scrambled belatedly to seek it; or they were aware of it, but chose to do nothing whatsoever to pursue their claim, in the vain hope that some of the evidence would be lost, to their potential tactical advantage. Either way, they lose the "sanctions" argument. Their failure to seek the data in a timely fashion completely undermines their claim that their critical need for it should have been obvious to the defendants – or to the Court. Their delay, if calculated "sandbagging", accomplishes nothing, as the defendants had taken steps to preserve the evidence, and no data relevant to plaintiff's claims was lost, merely because a computer was reassigned. In either case their argument has no merit.

Fortunately enough for the plaintiff, while her lawyers took no steps to pursue discovery of computer data, the defendants in fact had policies in place to retain and store data through network backup of files and retention of records of message traffic. So, despite the lack of a timely request, data arguably relevant to her claims, and subject to discovery, was preserved and remains available. Rather than waste the Court's time with frivolous and mean-spirited motions, plaintiff counsel could better spend their time cooperating in the effort to derive search queries to identify pertinent data from State records, while preserving the privacy of communications irrelevant to this case.

**C.    SPOLIATION AUTHORITY IS INAPPLICABLE HERE**

In *Sears, Roebuck and Co. v. Midcap,* 2006WL 58278, No. 263, 2004 (January 9, 2006)(copy attached as Exhibit E), the Delaware Supreme Court had occasion to articulate the prevailing standard, applied in both state and federal courts, for alleged "spoliation" of evidence. It is noteworthy that the Court did so in the context of reversing a substantial jury verdict, based on a "missing evidence adverse inference" instruction to the jury that it found to be unjustified, and thus reversible error, under the circumstances. *Id.* at 3. The Court held that a jury should not be permitted to speculate on the nature of records purged under a routine document destruction policy. *Id.* at 8. No adverse inference arises where the evidence is lost or accidentally destroyed, or where the failure to produce it is otherwise properly explained. *Citing Gumbs v. Int'l. Harvester, Inc.,* 718 F.2d 88 (3rd Cir. 1983). The party seeking an "adverse inference' jury instruction must show that there has been an actual suppression or withholding of evidence. *Id.* at 96.

The record here does not support plaintiff's claims that discoverable evidence was withheld or suppressed by the defendants or their lawyers. Rather, the record reflects that the defense has gone to great lengths to retrieve data, despite the lack of diligence on the plaintiff's part in requesting it. The "re-imaging" of the Chaffinch computer has been fully explained, to dispel the notion that it was done with the intent or motive or object of "destroying" discoverable evidence. The record here, as distinguished from plaintiff's speculation, would not support an "adverse inference" or a jury instruction to that effect, nor is this Court called upon, by the filing of a nonconforming motion, to intervene in the discovery process in any fashion. The plaintiff here, who asks for judgment and sanctions, falls far short of even the threshold established for a jury instruction. She has failed to show that any discoverable evidence has been suppressed or withheld. The defendants have shown in painstaking and technical detail just how evidence has been preserved intact on the network server.[11]

Cases cited by the plaintiff involving deliberate acts resulting in the loss of evidence have no application here.[12] Given the redundancy of the DSP network, and the

---

[11] The plaintiff has not identified an expert who would contest the findings and conclusions of Lt. Moses.
[12] It should be noted that courts have refrained from extreme measures, even in cases where pertinent evidence was lost. *Allen Pen Co. v. Springfield Photo Mount Co.,* 635 F.3d 17 (1st Cir. 1984) (refusal to grant adverse inference instruction, even where electronic evidence was destroyed after being identified in

14

existing protocol for backup of evidence from the network server, the re-imaging of an individual computer is of no great significance. The computer assigned to Colonel Chaffinch was turned over to a new user in the usual course of business. This routine procedure did not result in the loss of any communications regarding the alleged "retaliation" at issue in this case. Thus, the various tests and criteria set forth in cases involving suppression or withholding of data cannot be applied here. The plaintiff's entire argument is based on a false premise.

What is unconscionable is the plaintiff's advocacy of a double standard governing retention of evidence for purposes of discovery. On the one hand, the defense is expected to foresee all possible demands by the plaintiff for electronic discovery, from the moment the lawsuit is filed. The plaintiff, on the other hand, has no burden to say or do anything in that regard, and in fact may remain silent for a year after the filing of her Complaint before taking any action whatsoever. Incredibly, this is so even where the plaintiff has been aware, from the very outset of the litigation, of a critical issue involving an e-mail message, and has chosen to amend her original complaint to allege retaliation, based on this message. Moreover, the plaintiff would have the Court find that she can fail to ask the target of her suspicions even one question concerning his use of the computer in the course of a day-long deposition, yet then expect the defendants to see that as an indispensable element of her case.

Stripped of their rhetoric, plaintiff's claims in Counts II and III of "retaliation" for filing her lawsuit boil down to a charge that the defendants forwarded, or authorized the forwarding, of the e-mail regarding Captain Conley's trial board to a reporter. As established in the defendants' Motion for Partial Summary Judgment, there is no evidence of record to support such claims. Before such an allegation was even made, Colonel MacLeish, acting on his own, directed that the Internal Affairs Unit attempt to determine how the information got to the reporter. Acting on this order, Captain Paige obtained a computer "search" for the message, and determined that no DSP user had forwarded the message to Mr. Eldred. That search conclusively ruled out what the plaintiff alleges, that Colonel Chaffinch or anyone else at DSP forwarded the message.

---

interrogatory responses); *Williams v. Saint-Gobain Corp.,* 53 Fed. R. Serv. 3d 360 (W.D.N.Y. 2002) (Court refused to issue sanctions where defendant produced e-mails only five days before trial).

And that search was performed more than six months before Colonel Chaffinch retired, and his computer workstation was re-imaged. If necessary, that search could be duplicated today, using the data stored on the DTI servers. Of course, the result would be the same, and the plaintiff would still be left with no evidence to support her claims of "retaliation".

Lacking any evidence of record to support the claims advanced in Counts II and III of her Amended Complaint, the plaintiff asks the Court to speculate that evidence helpful to her "retaliation" claims has been lost. The Court should decline the invitation to engage in such speculation. There is no evidence that Colonel Chaffinch forwarded the trial board e-mail to the *Delaware State News*. That possibility was foreclosed by the Internal Affairs investigation in October of 2004. The investigators were able to access the DTI network server to look for any new message from *any* DSP user forwarding the trial board e-mail, and found none. Since all forwarded messages would be routed through the server, a computer hard drive would not yield any further information. The plaintiff cannot look to computer data to resuscitate her "retaliation" claims.

In summary, the defendants have not suppressed or withheld evidence from discovery. Rather, defendants have secured the retained network files pertinent to the plaintiff's tardy discovery request. There is no evidence of spoliation of evidence. Nor is there any evidence of culpable conduct on the part of the defense. The Court need not reach the issue of adverse inferences (which in any event would be a question for jury prayers, and not a discovery matter), let alone sanctions. The plaintiff's motion fails to satisfy the procedural conditions precedent to presentation, and is substantively without merit. The Court should, respectfully, reject it out of hand, with instructions to counsel to proceed with the formulation of search queries to facilitate access to discoverable electronic evidence, in order that electronic discovery might proceed in this case, and so that the case remains on track for trial.

Once again in this case, the plaintiff has couched an application to the Court on a discovery matter in a vehement personal attack on the defendants and defense counsel, while all along lacking viable grounds for any intervention by the Court.  The defendants further ask that the Court address with plaintiff's lawyers their obligations as to civility, candor to the tribunal, and cooperation, rather than confrontation, in the discovery process.

/s/ Ralph K. Durstein, III
Ralph K. Durstein, III (ID# 912)
Stephani J. Ballard (ID#3481)
Deputy Attorneys General
Department of Justice
State of Delaware
820 N. French Street
Wilmington, DE 19801
(302)577-8510

Dated:  January 31, 2006

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BARBARA L. CONLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 04-1394-GMS |
| | ) |
| STATE OF DELAWARE, | ) |
| DIVISION OF STATE POLICE, | ) |
| et al. | ) |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF MAILING AND/OR DELIVERY

The undersigned certifies that on January 31, 2006 he caused the attached *Response of Defendants' in Opposition to Plaintiff's Motion for Sanctions*, to be electronically filed with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Thomas S. Neuberger, Esq.  
Stephen J. Neuberger, Esq.  
Two East Seventh Street, Suite 302  
Wilmington, DE 19801

James E. Ligouri, Esq.  
Ligouri, Morris & Yiengst  
46 The Green  
Dover, DE 19901

/s/ Ralph K. Durstein, III  
RALPH K. DURSTEIN III, I.D.# 912  
Deputy Attorney General  
Carvel State Office Building  
820 N. French Street, 6th Floor  
Wilmington, DE 19801  
(302)577-8400  
Attorney for Defendants MacLeish,  
Mitchell, and Division of State Police