**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

**CAPTAIN BARBARA L. CONLEY,**

**Plaintiff,**

**v.**

**COLONEL L. AARON CHAFFINCH, individually and in his official capacity as the Superintendent, Delaware State Police; LIEUTENANT COLONEL THOMAS F. MACLEISH, individually and in his official capacity as the Deputy Superintendent, Delaware State Police; DAVID B. MITCHELL, individually and in his official capacity as Secretary of the Department of Safety and Homeland Security, State of Delaware; and DIVISION OF STATE POLICE, DEPARTMENT OF SAFETY AND HOMELAND SECURITY, STATE OF DELAWARE,**

**Defendants.**

**C.A.No.04-1394-GMS**

# PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HER MOTION FOR SANCTIONS AND OTHER RELIEF DUE TO DEFENDANTS' INTENTIONAL DESTRUCTION OF RELEVANT EVIDENCE

**THE NEUBERGER FIRM, P.A.**
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: February 7, 2006

Attorneys for Plaintiff

**TABLE OF CONTENTS**

ARGUMENT....................1

I. DEFENDANTS INTENTIONALLY DESTROYED EVIDENCE RELEVANT TO THIS LITIGATION AND A DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST THEM AS A SANCTION TO PUNISH AND DETER THEIR ILLEGAL CONDUCT....................1

A. Defendants Claim That No Evidence Was Destroyed....................1

B. Yet the Defense Expert States that the Specific Data Plaintiff Seeks Was Destroyed.......1

1. The Defense Expert Admitted and Confirmed that Chaffinch's Arch System Messages Were Destroyed and Are Lost Forever....................1

a. The Arch System is Used for "Informal Communications"....................2

b. Plaintiff Has Met Her Burden....................3

c. Summary....................4

2. The Defense Expert Also Admitted and Confirmed That Not All Electronic Documents Are Stored on the Server....................4

C. Defendants Do Not Contest the Duty to Preserve....................5

1. The Defense Laches Argument is Meritless....................6

D. Procedural Issues....................8

1. Local Rule 7.1.1 Has Been Fulfilled....................8

2. Fed.R.Civ.P. 37 Does Not Apply....................9

3. This is a Sanctions Motion....................9

CONCLUSION....................10

**TABLE OF AUTHORITIES**

**Cases** **Page**

Danis v. USN Comm., Inc., 2000 WL 1694325 (N.D.Ill. Oct. 23, 2000)..............6

Darchia v. Ashcroft, 101 Fed.Appx. 373 (3d Cir. 2004)..............5

In re Triton Energy Ltd Securities Litig., 2002 WL 32114464 (E.D.Tex. March 7, 2002)..............6

In re Wechsler, 121 F.Supp.2d 404 (D.Del. 2000)..............3,6

Kronisch v. U.S., 150 F.3d 112 (2d Cir. 1998)..............6

Positran Manufacturing, Inc. v. Diebold, Inc., 2003 WL 21104954 (D.Del. May 15, 2003)..............6

Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76 (3d Cir. 1994)..............3

Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061 (3d Cir. 1996) (en banc)..............4

Zubulake v. UBS Warburg LLC, 229 F.R.D. 422 (S.D.N.Y. 2004)..............4,6

**Statutes and Rules**

Fed.R.Civ.P. 30(a)(2)(B)..............9

Fed.R.Civ.P. 37..............9

D.Del.L.R. 7.1.1..............8

## ARGUMENT

**I. DEFENDANTS INTENTIONALLY DESTROYED EVIDENCE RELEVANT TO THIS LITIGATION AND A DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST THEM AS A SANCTION TO PUNISH AND DETER THEIR ILLEGAL CONDUCT.**

**A. Defendants Claim That No Evidence Was Destroyed.** The defense answering brief ("AB") repeatedly states that no evidence was destroyed and that any evidence which was destroyed was backed up - so in effect, nothing has been lost.

> There is nothing on the individual computer hard drives ... that would not appear on the network server.

(AB at 2).

> Given the DTI backup procedure set forth above, none of the data regarding electronic messages sought by plaintiff was lost.

(AB at 3).

> Thanks to the redundancy of the network system, the information available to the server is identical to the information generated by the Chaffinch computer workstation.

(AB at 6, 12).

> This routine procedure did not result in the loss of any communications regarding the alleged "retaliation" at issue in this case.

(AB at 15). Defendants have clearly and unequivocally staked out their position.

**B. Yet the Defense Expert States that the Specific Data Plaintiff Seeks Was Destroyed.** Contradictorily however, the second defense affidavit from Lt. Moses of the DSP's own High Tech Crimes Unit explicitly admits that the very evidence plaintiff seeks was destroyed, was not backed up and instead was lost forever. Thus, it is clear that defendants' repeated denials are false and should not be believed and guilt can be inferred from their false denials.

**1. The Defense Expert Admitted and Confirmed that Chaffinch's Arch System Messages Were Destroyed and Are Lost Forever.** In plaintiff's opening brief, she expressly identified the documents that she was seeking and believed had been destroyed - the

Arch system messages contained on Chaffinch's computer. (See OB at 3, 9, 16, 19, 21, 23).

In Lt. Moses Affidavit (AB at Ex. C), he explains the DSP's text messaging and paging service with Arch Paging. (Id. at ¶ 9). He indicates how the system enables DSP users to send 200 character pages to Troopers possessing Arch pagers. (Id.). He continues and explains that -

> These messages are not stored by Arch. This information is not logged by DSP because it is only used for informal communications.

(Id.). But it is these messages from the Arch text paging system that plaintiff sought to discover and despite repeated defense protestations to the contrary, Lt. Moses has admitted that this information was not backed up and instead it was destroyed.

Arch Paging does not store the messages. The DSP does not store the messages. Instead the messages can only be found on Chaffinch's hard drive, the same hard drive that Lt. Moses admitted was destroyed and wiped clean of all data, despite the pendency of this litigation. (Id. at ¶ 7). The Arch system messages have been lost forever because defendants destroyed Chaffinch's hard drive.

**a. The Arch System is Used for "Informal Communications."** Lt. Moses swore that the Arch messages are not backed up or logged by the DSP because they only are used for "informal communications." (Id. at ¶ 9). But this is exactly why plaintiff sought access to the system - because it is used for informal communications to his DSP friends and close associates and contains information from Chaffinch which would not otherwise have a paper trail.

The only passing reference to the Arch system in the defense brief blows it off as a system with "only very limited capability to transmit alphanumeric data, such as a phone number." (AB at 11 n.10). However, Lt. Moses' affidavit is actually more revealing . The system can transmit messages of up to 200 characters. (AB at Exhibit C ¶ 9). On the issue of Chaffinch's immediate response to the filing of plaintiff's lawsuit and the leak of her IA information to the Delaware media, the following types of messages to Chaffinch's close

associates easily fit within this number of characters.

- RL - fax BC to TE. (12 characters).[1]
- Mac - fax BC to Eldred. (17 characters).[2]
- RL, send BC's e-mail to the State News. (31 characters).
- Mac & RL - I can't believe BC's BS. I want to get that b-tch, I hate her. If people f-ck with me, I'm going to f-ck back. Send her IA e-mail to Eldred at the DSN. (125 characters).[3]

This is a great deal more than just a ten digit telephone number. Destruction of the Arch messages are the equivalent of destroying e-mail messages. A lot of thoughts and information above and beyond mere telephone numbers can be conveyed in 200 characters. The foregoing are just examples.

**b. Plaintiff Has Met Her Burden.** As explained in her opening brief, plaintiff has easily met her burden. Under the general Third Circuit and District of Delaware test, plaintiff has come forth with "plausible, concrete suggestions as to what the lost evidence might have been." In re Wechsler, 121 F.Supp.2d 404, 423 (D.Del. 2000); Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 80 (3d Cir. 1994) (see OB at 16-18 for greater detail on the law). As discussed above, plaintiff has specifically identified what the lost evidence would have been as well as the specific system that was destroyed. According, its relevance has been established.

Moreover, even under the specialized Zubulake electronic discovery test (see OB at 13-

---

[1] "RL" is the nickname for Major R.L. Hughes, Chaffinch's good friend and one of the comparators in this discrimination action. "BC" represents plaintiff Captain Barbara Conley.

[2] "Mac" is a nickname for defendant MacLeish, who is admittedly "joined at the hip" to defendant Chaffinch. (MacLeish 9; A375). All appendix references are to plaintiff's appendix in support of her motion for summary judgment.

[3] Major Baylor has testified that Chaffinch calls Capt. Conley "a b-tch." (Baylor 31; A276). Capt. Dixon testified that Chaffinch regularly says "if people f-ck with Chaffinch, I'm going to f-ck back" about Troopers who file lawsuits against him. (Dixon 10,53-54; A665,675-76). "He goes after people ... if he feels that anyone has betrayed him. That's his makeup." (Dixon 44; A673). Lastly, defendant Mitchell testified that Chaffinch was "ang[ry]" and "pissed off" by the filing of plaintiff's suit so there is no doubt he had the motive to do this. (Mitchell 36; A255).

14), plaintiff has established that the hard drive was destroyed "intentionally or willfully ... [and] that fact alone is sufficient to demonstrate relevance." Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 431 (S.D.N.Y. 2004). Defendants admittedly destroyed the hard drive pursuant to their document destruction policies. As Lt. Moses admitted in his affidavit, the intentional application of their document destruction policies to Chaffinch's computer hard drive resulted in the loss of the Arch system messages which were not backed up, recorded or logged anywhere else. (AB at Ex. C ¶¶ 7,9). Accordingly, the relevance of the data has been established due to its intentional destruction under Zubulake.

**c. Summary.** In sum, despite the repeated defense denials in their brief that any data was destroyed, Lt. Moses explained in record evidence that the defense position is plainly false. And as the Third Circuit en banc has explained,

> a party's falsehood or other fraud in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit.

Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1069 (3d Cir. 1996) (en banc). Thus, it is clear on our record that defendants' self-serving denials of destruction of evidence are false and should not be believed. From their false denials, consciousness of guilt can be inferred.

**2. The Defense Expert Also Admitted and Confirmed That Not All Electronic Documents Are Stored on the Server.** Lt. Moses' affidavit also explains another fact that defendants have chosen to ignore. He explains that electronic documents created on a DSP computer are stored on the central server, "unless the user specifically designates another file path." (AB at Exhibit C ¶ 4). Thus, if a computer user changes the file path from the default, they can store documents on their own computer, documents that are not backed up and captured when the server is backed up.

In her opening brief, plaintiff explained that her discovery requests also sought numerous other electronic documents such as draft and final memos, letters and other documents that

Chaffinch stored on his computer that would not be caught as part of the server backup. (OB at 3-4). Defendants again have failed to rebut plaintiff's showing in this regard. Instead, they weakly claim that nothing was destroyed. But as discussed, that assertion is simply false as demonstrated by the affidavit of their own computer expert.

The closest defendants come to trying to factually rebut plaintiff's well-founded assertion is the weak claim that "Chaffinch made limited use of his assigned computer and instead relied on his primary secretary" to handle all of his communications. (AB at 5). Notably, defendants have cited to no record evidence whatsoever in this regard. All they offer is speculation and conjecture. Thus, they have failed to create a proper record. They offer no affidavits. No declarations. No evidence of any kind. This is plainly improper and their unfounded assertion must be ignored. See Darchia v. Ashcroft, 101 Fed.Appx. 373, 376 (3d Cir. 2004) (legal "determinations must be based on evidence in the record, rather than speculation or conjecture.").

So, for the same reasons discussed above relating to destruction of the Arch system messages, plaintiff also has met her burden regarding the destruction of memos, letters and other documents that would have otherwise also been on Chaffinch's computer hard drive. Defendants' guilt can be inferred.

**C. Defendants Do Not Contest the Duty to Preserve.** No where in the defense brief have defendants challenged or seriously contested that they (1) had a duty to preserve evidence that might be relevant to this litigation and they (2) had a duty to suspend their document destruction policies in light of pending litigation. They have not challenged any of the Third Circuit or District of Delaware cases or legal standards, nor have they challenged any of the Zubulake preservation standards which are exhaustively discussed in plaintiff's opening brief.

Although it is plain that defendants do not like the state of the law regarding their duty to preserve potentially relevant evidence and think that the law is unfair (see, e.g. AB at 15), they

do not cite any case law holding that their duty to preserve is not the law. Simply put, defendants have offered no legal argument, reasoned or otherwise, as to why they should be excused from their preservation obligations, obligations that have been recognized by this Court and numerous others that have addressed the issue.[4]

**1. The Defense Laches Argument is Meritless.** Plaintiff agrees that a portion of her retaliation case arises from the faxing of an internal DSP e-mail to the Delaware media. Defendants spend a great deal of time in their brief addressing how they conducted an internal inquiry which determined that the 'faxed' e-mail had not been 'e-mailed' to reporter Eldred from a DSP user e-mail account. But given that it was the Arch system messages that plaintiff alleged were destroyed, and not the contents of the e-mail servers, discussion of this issue is a red herring for defendants.[5]

Nevertheless, defendants claim plaintiff is now barred from raising the present issue. But they are mistaken. First, plaintiff issued valid discovery requests well within the discovery period. Plaintiff's discovery requests were issued within the terms of the Court's Rule 16 Scheduling Order. They were issued more than 30 days before the discovery cutoff so the defense responses could be received before discovery concluded, as the Court requires. That is the end of the matter. There are no rules or other obligations under the Federal Rules of Civil Procedure or this Court's local rules that require plaintiff to submit all of her discovery requests in the first several months of a long discovery period.[6]

---

[4] See, e.g. In re Wechsler, 121 F.Supp.2d 404, 415, 417, 429 (D.Del. 2000); Positran Manufacturing, Inc. v. Diebold, Inc., 2003 WL 21104954, *2 (D.Del. May 15, 2003); Kronisch v. U.S., 150 F.3d 112, 126 (2d Cir. 1998); Danis v. USN Comm., Inc., 2000 WL 1694325, *12 (N.D.Ill. Oct. 23, 2000); In re Triton Energy Ltd Securities Litig., 2002 WL 32114464, *5 (E.D.Tex. March 7, 2002); Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 434 (S.D.N.Y. 2004) (unreporteds attached to OB).

[5] Given that the news article itself explicitly states that the e-mail was "faxed" to the reporter (AB at Ex. D), perhaps good detective work required checking DSP fax machines and their outgoing number lists as a better place to start their internal inquiry rather than with e-mails.

[6] Notably, the record does demonstrate that plaintiff diligently proceeded with document discovery during the initial portion of the discovery period. Plaintiff issued her First Request for

Second, as a matter of logic, one of the key reasons why there is a duty to preserve potentially relevant evidence is because it takes time for a party to get a handle on and understand computer issues and systems that are not under that party's control.[7] It also takes time to determine which areas of the party's case need additional discovery. Plaintiff's counsel proceeded with due diligence in their investigation into the DSP computer systems and determining what information was needed and what information to request. For example, as review of the definitions and instructions sections of plaintiff's Fourth and Fifth requests for production of documents makes clear, in addition to requests for various hard drives and computers, plaintiff specifically identified: numerous mail servers by name; I.P. addresses of those mail servers; ARIN entries; contact information for specific systems administrators; and other detailed identifying electronic and computer information. (See A15-16,62-63). Technical information of this type takes time to compile, especially for small firm attorneys unversed in the highly technical aspects of the internet age. Nonetheless, despite the time it took, plaintiff diligently investigated and compiled this information and then duly issued her requests well within the discovery period.

Third, as to the defense claim that plaintiff should have questioned Chaffinch about these issues during his deposition in June 2005, the answer to this question is simple - plaintiff did now know about these computer issues until well after June 2005. For example, it was not until much later that plaintiff learned of: the Arch system; the Blackberry system; and the frequency with

---

Production on June 1, 2005. (See D.I. 62). Her second and third were issued on June 8th. (See D.I. 63-64). Given that a large volume of the discovery requested in these June 2005 discovery requests was not actually produced until about five months later, sometime in October 2005 (see D.I. 97 at Tab A p. 2,4-5), it is all the more reasonable that plaintiff did not issue additional discovery requests until many of the actual documents previously requested had been produced.

[7] It takes even more time when a defendant does not identify in its Rule 26 disclosures that it has any relevant electronic or computerized documents in its possession. Defendants did not identify any electronic or computerized documents in either their April 4, 2005 disclosures (D.I. 56) or their September 21, 2005 disclosures. (D.I. 82).

which defendants use these systems for their informal communications among themselves. Upon beginning to learn of and trying to discover as much information as possible about these systems through other methods, plaintiff filed the document requests at issue.

Fourth is the claim that plaintiff should have raised these issues during late November and early December conferences with the Court addressing other matters. As to the November conference, defendants had not yet even responded to the discovery requests at issue. As to the early December teleconference, plaintiff had not yet reviewed and analyzed defendants' responses and was instead focused on important depositions in the case - such as those of plaintiff and the two promotion comparators.

**D. Procedural Issues.**

**1. Local Rule 7.1.1 Has Been Fulfilled.** First, defendants contend plaintiff did not fulfill her obligations under D.Del.L.R. 7.1.1. Defendants misrepresent the record in this regard.

As defendants explain and quote from in their brief, plaintiff contacted defense counsel on Friday January 13th pursuant to her obligations under the rules. But as defendants neglect to mention, defense counsel responded less than an hour later, with an angry e-mail indicating, among other things, that no evidence whatsoever had been destroyed. (Tab A - Ms. Ballard e-mail to Mr. S. Neuberger). From the tone of the e-mail (and the defense answering brief), it is clear that further communications would have been a waste of time and effort as defendants still refuse to concede that the Arch messages, for example, have been destroyed. But more importantly for present purposes, defense counsel wrote that "You may file any motion you deem appropriate." (Id.). Plaintiff took defense counsel at her word, ended the dialogue and filed her motion.[8]

[8] As to the misleading defense claim that this e-mail was the first notice they had of plaintiff having destruction of evidence concerns, the record actually reveals that at the December 21, 2005 deposition of Deputy Attorney General Mike Tupman, plaintiff extensively questioned Tupman about the

**2. Fed.R.Civ.P. 37 Does Not Apply.** Defense reliance on Fed.R.Civ.P. 37 is misplaced. The rule applies when a party is trying to compel disclosure of discovery information. That is not the purpose of plaintiff's motion. In their discovery responses, defendants disclosed that the evidence was destroyed. That evidence cannot be 'compelled' to reappear following its destruction. Accordingly, plaintiff's sanctions motion was not a motion to compel. Instead, it was a motion for sanctions and for entry of a default judgment as a result of defendants' destruction of evidence.

**3. This is a Sanctions Motion.** Again, contrary to the defense claims, this is not a discovery motion, instead, it is a sanctions motion which affects and is integrally connected to the merits of the case, the issues briefed and under submission in plaintiff's unopposed motion for summary judgment and the upcoming trial of this case.[9]

Additionally, defendants complain that plaintiff did not invoke the Court's discovery procedure. But on December 8, 2005, on a clear discovery matter, plaintiff invoked the Court's procedure regarding the defense attempt to depose Captain Glenn Dixon a second time without complying with the requirements of Fed.R.Civ.P. 30(a)(2)(B). (See unmarked docket entry between D.I. 118 and D.I. 119). During that teleconference, defendants complained that plaintiff had invoked the discovery procedure instead of filing and relying upon a formal motion to which defendants could presumably respond. In our present situation, on a matter which is related to sanctions and the merits, plaintiff filed a motion but defendants have flip-flopped and now complain that the discovery procedure was not invoked. Defendants cannot have it both ways.

---

document preservation and destruction policies of the Attorney General's office and any training that DAG's receive in this regard.

[9] Additionally, because this is a dispositive merits motion which seeks the entry of a default judgment which would end the liability portion of this case, it is technically not even subject to the strictures of D.Del.L.R. 7.1.1.

**CONCLUSION**

For the above stated reasons, as well as those set forth in greater detail in plaintiff's opening brief, plaintiff respectfully requests that the Court sanction defendants for their actions in intentionally destroying key evidence relevant to this lawsuit and enter a default judgment against them on Count I (discrimination) and Counts II and III (retaliation). Alternatively, plaintiff respectfully requests that the burden of proof be shifted to defendants on each and every element of the respective discrimination and retaliation paradigms, and that the jury also receive an adverse inference instruction.

Lastly, attorneys' fees and costs also should be awarded, in addition to a fine intended to remind defendants of the severity of their wrongdoing.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: February 7, 2006

Attorneys for Plaintiff

# Tab A

## 1 - SJN@NeubergerLaw.com

**From:** "Ballard Stephani (DOJ)" <Stephani.Ballard@state.de.us>
**To:** "Stephen J. Neuberger" <SJN@NeubergerLaw.com>; "Durstein III Ralph (DOJ)" <Ralph.Durstein@state.de.us>; "Jim Liguori" <jel_lmy@msn.com>
**Cc:** "Thomas S. Neuberger" <TSN@NeubergerLaw.com>
**Sent:** Friday, January 13, 2006 2:56 PM
**Subject:** RE: Conley v. Chaffinch

Steve,

This email is baseless and ridiculous. There has been no "destruction of evidence," and your suggestion that I, my clients or anyone in the Attorney General's office would countenance such conduct is reprehensible, but unfortunately not surprising, given the tenor of your prior communications. The electronic issues were addressed in our discovery responses and in Lt. Moses' affidavit. DSP has taken steps, even beyond that requested by your discovery, to preserve all available electronic data for this litigation.

We will certainly not "consent to a default judgment." You may file any motion you deem appropriate. We will respond and will make Lt. Moses/HTCU (as we have offered to you previously) available to explain to the Court the accurate facts regarding the electronic data.

Stephani

-----Original Message-----
**From:** Stephen J. Neuberger [mailto:SJN@NeubergerLaw.com]
**Sent:** Friday, January 13, 2006 2:15 PM
**To:** Durstein III Ralph (DOJ); Ballard Stephani (DOJ); Jim Liguori
**Cc:** Thomas S. Neuberger
**Subject:** Conley v. Chaffinch

Counsel,

Please let me know by 10am Monday morning whether you consent to a default judgment being entered against your clients as a sanction for the unprecedented destruction of Col. Chaffinch's hard drive by the DSP despite the pendency of this litigation.

This is the first time I have ever seen destruction of evidence of this scale and magnitude. If you have any creative ideas that you think would adequately sanction your clients, deter similar illegal acts and help remedy the grave prejudice plaintiff has suffered, I am open to suggestions.

-Steve

***********************************

Stephen J. Neuberger, Esq.
The Neuberger Firm
Attorneys and Counsellors at Law
Two East Seventh Street, Suite 302
Wilmington, DE 19801-3707
Phone: 302-655-0582
Fax: 302-655-9329
E-Mail: SJN@NeubergerLaw.com

**CERTIFICATE OF SERVICE**

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on February 7, 2006, I electronically filed this **Brief** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Ralph K. Durstein III, Esquire
Department of Justice
Carvel State Office Building
820 N. French Street
Wilmington, DE 19801

James E. Liguori, Esquire
Liguori, Morris & Yiengst
46 The Green
Dover, DE 19901

/s/ Stephen J. Neuberger
**STEPHEN J. NEUBERGER, ESQ.**

Conley/ Briefs / Conley - Spoilation Sanctions RB.final