## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CAPTAIN BARBARA L. CONLEY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COLONEL L. AARON CHAFFINCH, individually** | : | **C.A.No.04-1394-GMS** |
| **and in his official capacity as the Superintendent,** | : | |
| **Delaware State Police; LIEUTENANT COLONEL** | : | |
| **THOMAS F. MACLEISH, individually and in his** | : | |
| **official capacity as the Deputy Superintendent,** | : | |
| **Delaware State Police; DAVID B. MITCHELL,** | : | |
| **individually and in his official capacity as Secretary** | : | |
| **of the Department of Safety and Homeland Security,** | : | |
| **State of Delaware; and DIVISION OF STATE** | : | |
| **POLICE, DEPARTMENT OF SAFETY AND** | : | |
| **HOMELAND SECURITY, STATE OF** | : | |
| **DELAWARE,** | : | |
| | : | |
| **Defendants.** | : | |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO
### DEFENDANTS' MOTION TO STRIKE

Defendants ground their motion to strike in several alleged deficiencies in plaintiff's opening

brief and appendix in support of her motion for summary judgment. Defendants claim that plaintiff's

summary judgment filings do not comply with Fed.R.Civ.P. 56 and that plaintiff is barred from using

defendants' own sworn testimony from other lawsuits. As discussed below, each defense claim is

without merit.

**A. Plaintiffs Filings Comply With All Applicable Rules.** Defendants' first argument claims

that plaintiff's filings do not comply with the text of Fed.R.Civ.P. 56(c). Rule 56(c) states that summary

judgment should be granted if -

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the
> affidavits ... show that there is no genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law.

The defense motion arises from the meaning of the words "on file."  Instead of interpreting the words "on file" to mean that the evidence must have been filed with and thus "on file" at the Clerk's office in the form of an appendix (as plaintiff has done), defendants twist the meaning of these two simple words and instead interpret them to require that the documents have been procured through discovery "in the case at bar."  (DOB at 2).  Yet defendants have cited no case law in support of their conclusory interpretation and manipulation of the plain text of Rule 56(c).  This alone is sufficient grounds to deny their motion.

Out of an abundance of caution however, plaintiff has scoured the case law and was fortunately able to find what appears to be the only case interpreting the meaning of the words "on file."  In Burbank v. Davis, 227 F.Supp.2d 176 (D.Me. 2002), the district court was faced with an analogous situation to our present case.  A plaintiff filed a summary judgment brief and appendix containing depositions from another case that bore on the issues in that current action.  In response to a defense motion to strike, the court held that "the filing of these materials with [plaintiff's] submission makes it part of the record in this case for purposes of [Fed.R.Civ.P.] 56."  Id. at 179.  Thus, they were "on file" within the meaning of Rule 56.

The reasoning of Burbank governs our present case.  This specific provision of Rule 56(c) ensures that all materials being relied upon by a party at summary judgment are on file with the Clerk's office, presumably so that all parties have access to them.  Plaintiff included the challenged materials in her summary judgment appendix, relied upon them in support of her summary judgment motion and filed them with the Clerk as required.  As the certificate of service for each of these documents indicates, each were served upon defendants.  As of yet, defendants have not claimed that their e-mail is again on the fritz and that they never received the challenged court pleadings.  Instead, the very nature of their motion makes clear that they did in fact receive service of the documents, but are simply unwilling to analyze them.  But this is not a concern that Rule 56 was designed to address.  Instead, plaintiff complied with

her obligations under the rules by filing the materials with the Clerk.  Thus, they are "on file" for Rule 56 purposes.

**B.  The Sworn Testimony From Other Actions Is Admissible in ths Present Case.**  At its core, the defense brief rests on the assumption that none of the challenged testimony or other evidence would be admissible at trial.  Therefore, if the evidence would be admissible at trial, then defendants have conceded that its use is proper.

**1.  The Evidence is Relevant.**  Defendants spend a great deal of time and effort making conclusory allegations that none of the challenged evidence is relevant or has any bearing upon the issues in this case.  Plaintiff begs to disagree.  Each challenged piece of evidence supports whatever proposition it is cited for in plaintiff's summary judgment opening brief.  Defendants however only specifically identify and discuss two pieces of evidence in their opening brief.  Plaintiff will discuss those in turn.[1]

**a.  Evidence of Defendants' Hostility Towards Troopers Who File Lawsuits.**
First, defendants attack the evidence of defendants' hostility towards Troopers who speak out and file lawsuits.  (DOB at 4).  Plaintiff notes that this evidence is clearly relevant and extremely probative in this case - which involves retaliation against plaintiff because she spoke out and filed a lawsuit.  In other words, this is evidence of defendants' hostility towards members of a protected class - the protected class being those Troopers who speak out and file lawsuits.

The case law discussing the admissibility of this type of evidence of defendants' retaliatory motive and illicit retaliatory intent is well established.  See Arlio v. Lively, 392 F.Supp.2d 317, 323-24 (D.Conn. 2005) (in the First Amendment retaliation context, admitting prior acts of retaliation to

---

[1]  Any defense efforts to add additional specifics in their reply brief will be met with a motion to strike for failure to comply with D. Del. LR 7.1.3(c)(2).  See id. ("[t]he party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." ); Rockwell Tech, LLC v. Spectra-Physics Lasers, Inc., 2002 WL 531555, * 3 (D.Del. March 26, 2002) (It is well established that inserting new arguments or evidence into a reply brief is a "tactic . . . [which] amounts to impermissible 'sandbagging'" and will not be countenanced or otherwise considered by the court).

establish that the defendants' denials of hostility towards those who filed lawsuits were a pretext for

animus towards those in the protected class - those who file lawsuits). More importantly however, Third

Circuit law also is clear in this regard. "[A]s a general rule, evidence of a defendant's prior

discriminatory treatment of a plaintiff or other employees is relevant and admissible under the Federal

Rules of Evidence to establish whether a defendant's employment action against an employee was

motivated by invidious discrimination." Becker v. ARCO Chemical Co., 207 F.3d 176, 194 n.8 (3d Cir.

2000). This type of evidence "leads not only to a ready logical inference of bias, but also to a rational

presumption that [defendants] acted on it when [they] made the challenged employment decision."

Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002).

> Circumstantial proof of discrimination typically includes unflattering testimony about the
> employer's history and work practices - evidence which in other kinds of cases may well unfairly
> prejudice the jury against the defendant. In discrimination cases, however, such background
> evidence may be critical for jury's assessment of whether a given employer was more likely than
> not to have acted from an unlawful motive.

Glass v. PECO, 34 F.3d 188, 195 (3d Cir. 1994) (emphasis added); see Hurley v. Atlantic City Police

Dept., 174 F.3d 95, 110 (3d Cir. 1999) (observing that in Glass, the Third Circuit held that "evidence of

past harassment and ... discrimination against others in the protected class is admissible"). "Evidence of

an employer's conduct towards other employees [also] has long been held relevant and admissible to

show that an employer's proffered justification is pretext." Ansell v. Green Acres Contracting Co., Inc.,

347 F.3d 515, 521 (3d Cir. 2003); see Arlio, 392 F.Supp.2d at 324 (because "an employer's past

discriminatory policy and practice may well illustrate that the employer' asserted reasons for disparate

treatment are a pretext for intentional discrimination, this evidence should normally be freely

admitted..."). Additionally, such evidence is admissible "for the proper purpose of establishing ...

discriminatory intent." Ansell, 347 F.3d at 521. Thus, this challenged evidence is both relevant and

admissible for several purposes and was properly included in plaintiff's summary judgment submissions.[2]

---

[2] As to the defense claim that plaintiff misrepresented MacLeish's testimony that he thinks three
Troopers who spoke out and filed lawsuits are a "real pain in the ass" (DOB at 4 n.3), plaintiff stands on

**b. Other Evidence of Defendants' Friendship.** Secondly, defendants also attack plaintiff's inclusion of the record of defendants' friendship with each other and the evidence that Chaffinch demands blind personal loyalty from all those under his command. (DOB at ex. 1).[3]

Plaintiff stands on this record. Its relevance is self evident from reading the defense exhibit. The fact that defendants MacLeish and Mitchell are admittedly friends with Chaffinch is evidence going to their motive to retaliate against an officer who, like plaintiff, files a lawsuit against their buddy. The record evidence that Chaffinch is very vindictive and demands blind personal loyalty from all those under his command also is telling evidence going to Chaffinch's motive to retaliate against an officer who, like plaintiff, sues him and is being 'disloyal' towards him. Again, as to the false defense claims that the record has been misrepresented, plaintiff also again stands on the record cited in her opening brief in support of her motion for summary judgment, not just the limited excerpt defendants have chosen to quote and discuss.

**2. By Definition, the Challenged Sworn Testimony is Not Hearsay.** Defendants spend a fair amount of time discussing how the challenged sworn testimony does not meet Fed.R.Evid. 804(b)(1)'s hearsay exception for times when the declarant is unavailable. (DOB at 6). Unfortunately for defendants, Fed.R.Evid. 801's definition of hearsay explicitly excludes the very evidence they challenge from its scope because: (1) they are admissions by a party opponent under Fed.R.Evid. 801(d)(2); or are (2) prior sworn statements given under penalty of perjury that are materially inconsistent with defendants' testimony in the present action under Fed.R.Evid. 801(d)(1). Either way, the Federal Rules of Evidence explicitly define such statements as not hearsay. See Fed.R.Evid. 801(d).

---

the record cited in her opening brief in support of her motion for summary judgment, not just the limited excerpt defendants have chosen to discuss.

[3] The defense claim that the record cites create an undue burden is a red herring. As review of defense exhibit one reveals, each challenged record cite (be it from a deposition or trial transcript) has a corresponding appendix cite that was painstakingly created and which takes the reader to the appropriate page of the appendix.

**a. Admissions by a Party Opponent.**

> **(1). Defendants Chaffinch and MacLeish.** The sworn testimony from Chaffinch and MacLeish are "the party's own statement," by definition are admissions of a party opponent, Fed.R.Evid. 801(d)(2)(A), and by definition are <u>not</u> hearsay. <u>See</u> Fed.R.Evid. 801(d).

> **(2). Majors Baylor and Swiski and Captain Dixon** The sworn testimony from Majors Baylor and Swiski and Captain Dixon are statements by defendants' own "agent[s] ... concerning a matter within the scope of the agency or employment," under Fed.R.Evid. 801(d)(2)(D), and by definition are <u>not</u> hearsay. <u>See</u> Fed.R.Evid. 801(d).

> **b. Prior Inconsistent Statement.** Fed.R.Evid. 801(d)(1) also defeats defendants' claims. Specifically, as discussed in plaintiff's summary judgment opening brief, at his deposition in our present case defendant Chaffinch denied that he had to follow the diversity requirements contained in the DSP report that was authored several years ago by State Director of Personnel Lisa Blunt-Bradley at the direction of Governor Minner. He denied that he had to follow it at all, and he denied that the Report required that he implement process and procedures to ensure that discrimination was not entering his thinking.

Unfortunately for defendants, Chaffinch's testimony regarding the Blunt-Bradley report's requirements is 180 degrees different from what he testified in a January 2004 race discrimination trial before Judge Farnan and also in earlier deposition testimony in that case.[4] This evidence is extremely probative and telling. It demonstrates that defendants are undermining the integrity of these court proceedings and committing perjury in the present action - in other words, it shows that defendant

---

[4] As counsel for the plaintiffs in the January 2004 <u>Bullen</u> trial, counsel are in a unique position to observe and point out Chaffinch's flip-flopping of his position on the Blunt-Bradley report. The mandated requirements of the report were a cornerstone of Chaffinch's defense in that action. But in the present action, Chaffinch claims that there were no requirements arising out of the report. Defendant Chaffinch cannot have it both ways.

Chaffinch is disregarding his oath and being rather untruthful in his sworn testimony in the present case.[5]

Thus, his testimony in the present action is "inconsistent with [his] testimony, [which] was given under

oath subject to the penalty of perjury at a trial ... or in a deposition," Fed.R.Evid. 801(d)(1)(A), and by

definition is not hearsay. See Fed.R.Evid. 801(d).

>      **3.  It is the Content, Not the Form, of the Challenged Evidence That Needs to Be**

**Independently Admissible at Trial.**  In the same way, defense reliance on Fed.R.Evid. 804's hearsay

exception and resultant claim that the text of the prior trial and deposition transcripts will not be

independently admissible at trial (DOB at 5-6), reveals that defendants have missed a very basic

procedural point.  The defense position

> represent[s] a misunderstanding of summary judgment procedures.  The material that is
> submitted in support of a summary judgment motion is not necessarily itself admissible at trial,
> but must set forth evidence that would be admissible if presented in appropriate form at trial.  In
> other words, "the evidence need not be admissible in form (for example, affidavits are not
> normally admissible at trial), but it must be admissible in content."

Sphere Drake Insur. Ltd. v. All Amer. Life Insur. Co., 300 F.Supp.2d 606, 614 (N.D.Ill. 2003) (quoting

Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002)).  This is a fine

distinction that defendants have completely missed.

In other words, in the same way that plaintiff will not be independently relying upon any of the

affidavits in the record at trial, and will instead independently elicit the relevant information from the

witness in testimonial form through direct or cross examination, so plaintiff also will not be submitting

into the trial record the actual prior deposition or trial transcripts of these witnesses.  Instead, plaintiff

will use that prior testimony, and present it in the appropriate form at trial via questioning on direct or

cross examination.  For example, plaintiff will ask many of the witnesses the exact same question they

---

[5]  In this regard, the sworn deposition testimony by Major Swiski (which defendants also are
trying very hard to exclude) is telling.  Major Swiski, who served on Chaffinch's Executive Staff,
testified that Chaffinch  "has a reputation for not being very truthful."  (Swiski 57; A60).  Taking Major
Swiski's deposition for this and several other points would be a waste of time, money and effort given
that plaintiff already has the sworn testimony that she needs for use at trial.

previously answered under oath. When that witness gives a differing answer, plaintiff will either refresh their recollection, impeach them, offer their prior testimony as a prior inconsistent statement, and/or offer it as an admission of a party opponent. It when the evidence is in its proper form, the evidence will be properly admissible at trial. In other words, the prior transcripts are admissible and relevant here at summary judgment because they demonstrate what these witnesses will testify to at trial in our present case.

      **4. The Evidence Also is Being Offered For Impeachment Purposes and to Attack Credibility.** As discussed, much of the evidence being challenged by defendants also is being offered for impeachment purposes and/or to attack the credibility of a witness. <u>See</u> Fed.R.Evid. 607 ("The credibility of a witness may be attacked by any party, including the party calling the witness"). Thus, it is properly admissible.

      **5. The Use of Prior Sworn Testimony is Permitted.** As discussed both above and below, any remaining prior sworn testimony contested by defendants may be used at summary judgment as permitted by the rules themselves and the case law.

      **a. Fed.R.Civ.P. 32 Allows The Use of Depositions.** Fed.R.Civ.P. 32 addresses the "Use of Depositions in Court Proceedings." It explains that

> (a) Use of Depositions. At the trial or <u>upon the hearing of a motion</u> ... any part of a deposition, <u>so far as admissible under the rules of evidence applied as though the witness were then present and testifying</u>, may be used against any party who was present or represented or who had reasonable notice thereof, in accordance with the following provisions:
>
> > (1) Any deposition may be used by any party for the purpose of <u>contradicting or impeaching</u> the testimony of a deponent as a witness, or for any other purpose permitted by the Federal Rules of Evidence.
>
> > (2) The deposition of a party ... may be used by an adverse party <u>for any purpose</u>.

<u>Id.</u> (emphasis added). Fed.R.Civ.P. 56(c) also contemplates the use of depositions at summary judgment. Thus, in addition to the Rules of Evidence discussed above, the Federal Rules of Civil Procedure explicitly contemplate the use of depositions as part of motions practice or at trial.

**b. The Use of Sworn Testimony from Other Actions Also is Permitted.** "It is well settled that testimony given at the trial of a different case may be considered on summary judgment." Sphere, 300 F.Supp.2d at 614 (citing cases); see Burbank, 227 F.Supp.2d at 179 (analyzing the issue and permitting the use of prior depositions at summary judgment).[6]

"As a general rule, depositions taken in a prior action are admissible in a subsequent action if there is substantial identity of issues and parties in the two actions." Rule v. International Assoc. of Bridge, Structural and Ornamental Ironworkers, 568 F.2d 558, 568 (8th Cir. 1977); accord Aamco Transmissions, Inc. v. Morgan Indus., Inc., 1991 WL 142652 (E.D.Pa. July 22, 1991); Fullerform Continuous Pipe Corp. v. Amer. Pipe and Construction Co., 44 F.R.D. 453, 455 (D.Ariz. 1968); see Hertz v. Graham, 23 F.R.D. 17, 22 (S.D.N.Y. 1958).

**(1). Substantial Identity of the Parties.** Here, it is defendants' own testimony and that of their own employees and witnesses that is now being offered against them. Some or all of the defendants are parties to the actions in which their previous testimony is now being offered against them. Chaffinch was a party and testified in Bullen, as well as in Foraker, Price and Dillman. MacLeish is a party and also has testified in Foraker and Price. Defendants Chaffinch and MacLeish were represented by a very large and expensive Philadelphia law firm in all four of those actions which defended and advocated their interests in all of those cases. Thus, the parties are substantially identical. It is defendants' own testimony being used against them. Defendants cannot now claim it is unfair for plaintiff to force them to eat their own words.[7]

**(2). Substantial Identity of the Issues.** The defense efforts to paint

---

[6] The Third Circuit's opinion in N.J. Turnpike Auth. v. PPG Indus., Inc., 197 F.3d 96 (3d Cir. 1999), is not to the contrary. There, the Third Circuit found that the deposition testimony cited from prior actions simply had no bearing on the present action.

[7] Of course, given that the evidence reveals that defendants are testifying to one thing in proceedings before this Court, and have testified to the opposite in proceedings before Judge Farnan and Judge Jordan, plaintiff can certainly understand why defendants so desperately want to keep all of this evidence out as it reflects very poorly on their credibility.

with too broad a brush and distinguish the issues involved in those cases are similarly unavailing. (DOB at 7). The only specific testimony being offered and cited from <u>Dillman</u> is Major Swiski's testimony that his boss - defendant Chaffinch - simply cannot find it in himself to tell the truth and instead "has a reputation for not being very truthful." (Swiski 57; A60). Defense counsel in <u>Dillman</u> certainly had the opportunity to defend Chaffinch's honor and character when that testimony became part of the record, but tellingly chose not to do so. The issue is whether Chaffinch tells the truth or is a dishonest person. The specific issue is not whether Dillman's due process rights were violated when Chaffinch fired him without a hearing.

The evidence offered from <u>Bullen</u> centers on whether Chaffinch was required to follow the Blunt-Bradley diversity report and institute procedures and process to take away subjectivity and ensure that opportunity for discrimination did not seep into DSP promotions. Chaffinch and now retired Cabinet Secretary Jim Ford made the requirements of the Bradley report a cornerstone of their defense in the <u>Bullen</u> action. Yet in the present <u>Conley</u> action, defendants have flip-flopped and now claim that the Bradley report does not mandate anything or impose any requirements on the DSP. The issue is the requirements of the Bradley report, not the overall context in which the specific issue arose.

The <u>Foraker</u> and <u>Price</u> actions are currently pending before this Court. The issues in those cases are not limited solely to retaliation for speaking out about workplace safety. <u>Foraker</u> involves retaliation by defendants Chaffinch and MacLeish against Sgt. Foraker because Foraker had filed an earlier lawsuit against defendants. Notably, retaliation by Chaffinch and MacLeish is one of the very issues in our present suit by Capt. Conley - that defendants retaliated against her because she filed a lawsuit. But even the <u>Price</u> suit is on point as both <u>Price</u> and <u>Conley</u> involve defendants' anger and hostility towards plaintiffs who exercise their First Amendment rights and speak out against defendants. As in our present action, the issue is defendants' treatment of members of the protected class - those who file lawsuits and otherwise speak out and exercise their First Amendment rights. Thus, it is clear that there is a substantial

10

identify of the specific issues arising from these cases.[8]

(3). **Conclusion.**  As another federal district court has explained in denying a defendants' motion to strike evidence taken from a prior lawsuit, "Prior testimony under oath, whether at a deposition, hearing or trial, that is based on personal knowledge may be considered on summary judgment because the person is likely to provide the same testimony if called to testify at trial." Sphere, 300 F.Supp.2d at 614.  So to the extent defendants challenge plaintiff's use of sworn testimony from witnesses she identified in her Rule 26 disclosures but did not depose in the present case or did not waste time and again ask them the same questions, plaintiff simply had no need to waste time, money and other judicial resources and ask the witness many of the same questions again when she already has their answers and sworn testimony on the specific issue.

**C. Defendants Have Waived Their Right to File an Answering Brief.**  As review of their motion to strike makes clear, defendants have waived their right to file an answering brief in opposition to plaintiff's motion for summary judgment.  In defendants' own words,

> As to the merits of the Motion for Summary Judgment for Counts II and III (the "retaliation counts"), Defendants stand on the record and brief submitted in support of their own Motion for Summary Judgment on these counts (D.I. 146-148).

(DOB at 1 n.1).  Similarly, in their conclusion, defendants again state that if the Court finds their Motion to Strike to be meritless, that defendants "respectfully request that this Court deny" plaintiff's motion for summary judgment "for the reasons set forth" in the defense motion.  (DOB at 8).  Thus, it is clear that defendants have waived their right to file an Answering Brief in opposition to plaintiff's motion for summary judgment and instead admittedly rely upon their previous submissions.

---

[8]  Again, plaintiff notes that she is not seeking to use the evidence from, for example, the Dillman case relating to Dillman's procedural due process claim or the evidence from the Price action relating to the faulty construction of the FTU.  The only testimony being cited to and used by plaintiff from the various suits is that which plaintiff just broadly identified above.  The only testimony being used relates to shared factual and/or legal issues between the cases.

## Conclusion

While perhaps it is easier to file a short, conclusory motion to strike than to actually spend the time necessary to craft a thoughtful and responsive answering brief, such dilatory tactics do nothing to further the "just, speedy and inexpensive determination" of this action.  Fed.R.Civ.P. 1.  As discussed at length above, defendants' motion to strike is without merit and should be denied in all respects.

Plaintiff waives an Answering Brief in opposition to the defense motion.


Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**


/s/ Stephen J. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated:  February 13, 2006          Attorneys for Plaintiff

12

# Unreported Opinions

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
AAMCO TRANSMISSIONS, INC.
v.
Michael A. MARINO, et al.
v
MORGAN INDUSTRIES, INC., et al.
**Civ. A. Nos. 88-5522, 88-6197.**

July 22, 1991.

Abraham C. Reich, Fox Rothschild O'Brien & Frankel, Philadelphia, Pa., Valli, F. Baldassano, Joel D. Rosen, Mary C. McMonagle, Vice-President-General Counsel, Bala Cynwyd, Pa., J. Charles Mokriski, Antonio B. Braz, Day Berry & Howard, Hartford, Conn., for AAMCO Transmission, Inc.
Dennis P. Lynch, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for Non-Party, National AAMCO Dealers Association.
James J. McCabe, Wayne A. Mack, Jr., Duane, Morris, & Heckscher, Philadelphia, Pa., for Robert A. Karwoski, Allan Steckenberg, Richard H. Singer, Michael A. Marino and John H. Lopes.
Jean B. Green, Norristown, Pa., for Kenneth L. Fontaine.
Bruce R. Genderson, Williams & Connolly, Karen Zacharia, Washington, D.C., for Abraham Bernstein.
Daniel Shepro, Goldman, Rosen, & Willinger, P.C., Bridgport, Conn., Wayne A. Mack, Jr, Philadelphia, Pa., for Steckenberg, Allan.
Ronald J. Shaffer, Fox, Rothschild, O'Brien & Frankel Philadelphia, Pa., for William Shnycer.

*MEMORANDUM*

WALDMAN, District Judge.
***1** Plaintiff is suing several of its franchisees to recover damages for alleged antitrust violations, breaches of contract, tortious interference with contractual relations and defamation. Defendants filed a counterclaim alleging RICO, Sherman Act, Connecticut Unfair Trade Practices Act and other state law violations. They also named several additional parties as third-party defendants. Presently before the court is third-party defendants' Motion to Preclude the Trial Testimony of Kenneth Fontaine and to Exclude from Evidence his Deposition.

Kenneth Fontaine, formerly AAMCO's chief investigator, was deposed several weeks before third-party defendants were joined. Fontaine was questioned by counsel for both AAMCO and counterclaimants. Third-party defendants do not question the thoroughness of AAMCO's cross-examination of the deponent.

Third-party defendants now wish to depose Fontaine themselves. They have made repeated unsuccessful attempts to locate Fontaine and serve him with a deposition subpoena pursuant to Fed.R.Civ.P. 45(a). Counsel for both counterclaimants and third-party defendants are unable to locate Fontaine.

Third-party defendants contend that they would be unfairly prejudiced if Fontaine were to testify at trial or if his deposition testimony were to be admitted. They maintain that their inability to depose him before trial would leave unexplored matters which might prove beneficial to their case, and could expose them to surprise testimony at trial.

Third-party defendants point to Fed.R.Civ.P. 32(a), which states that a deposition "may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof." Fed.R.CivP. 32(a). They argue that because they were not yet parties to the action and had no reason to believe that they would be, their lack of representation at the deposition is grounds for excluding the testimony elicited.

Depositions taken in a prior proceeding are admissible if there is a substantial identity of issues and parties.

Not Reported in F.Supp.                                                                                    Page 2
Not Reported in F.Supp., 1991 WL 142652 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

*Rule v. International Association of Bridge, Structural and Ornamental Workers,* 568 F.2d 558, 569 (8th Cir.1977); *Miwon, U.S.A., Inc. v. Crawford,* 629 F.Supp. 153, 154 n. 3 (S.D.N.Y.1985). Third-party defendants offer no reasons why this principle should not be applied to a deposition taken earlier in the same proceedings. *See also Lloyd v. American Export Lines, Inc.,* 580 F.2d 1179, 1186-87 (3d Cir.1978) (adopting practical community of interests test for purposes of Rule 804 in the interest of facilitating search for truth).

Counterclaimants pled claims against counterclaim defendant AAMCO and third-party defendants alleging RICO violations. They are all named together in each RICO count. Third-party defendants Morgan, Bernstein and Shnycer all were officers of AAMCO. While technically not "identical" to AAMCO, these individuals were responsible for the governance and decisions affecting the operations of AAMCO. Third-party defendants do not specifically identify any area where their interests would have warranted a departure from the questions put to deponent.

**\*2** Indeed, the passage that they excerpt from the deposition helps their case, in that Fontaine appears to deny receiving instructions from third-party defendants to perform an improper act. It also appears that AAMCO's attorney registered objections to a number of counterclaimants' questions. Third-party defendants fail to demonstrate that their interests were not adequately represented at the deposition.

AAMCO and third-party defendants share a common interest and have like motives to develop testimony concerning the facts at issue. Indeed, AAMCO would be liable for the torts allegedly committed by those third-party defendants who were officers at the relevant time. This was not the situation in *Taylor v. Rederi A/S Volo,* 249 F.Supp. 326 (E.D.Pa.1966), *reversed,* 374 F.2d 545 (3d Cir.1967), relied upon by third-party defendants.

Given the particular community of interests between AAMCO and third-party defendants at the time of the Fontiane deposition, his testimony or, if appropriate, his deposition will not be excluded.

An appropriate order will be entered without prejudice to third-party defendants to renew their motion should it appear that counterclaimants induced Mr. Fontaine to be unavailable or are in fact aware of his whereabouts, and without prejudice to move to redepose Mr. Fontaine prior to his testimony in court should he be located before trial.

*ORDER*

AND NOW, this 22nd day of July, 1991, upon consideration of third-party defendants' Motion to Preclude Kenneth Fontaine from Testifying at Trial and to Exclude From Evidence His January 11, 1990 Deposition and counterclaimants' response thereto, and consistent with the accompanying Memorandum, IT IS HEREBY ORDERED that said Motion is DENIED.

E.D.Pa.,1991.
Aamco Transmissions, Inc. v. Marino
Not Reported in F.Supp., 1991 WL 142652 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:88cv06197 (Docket) (Aug. 11, 1988)
• 2:88cv05522 (Docket) (Jul. 15, 1988)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Briefs and Other Related Documents

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.

ROCKWELL TECHNOLOGIES, LLC, Plaintiff,

v.

SPECTRA-PHYSICS LASERS, INC. and Opto
Power Corporation, Defendants.

**No. Civ.A.00-589 GMS.**

March 26, 2002.

*MEMORANDUM AND ORDER*

SLEET, J.

## I. INTRODUCTION

**\*1** The plaintiff, Rockwell Technologies, LLC ("Rockwell") filed the above-captioned action against Spectra-Physics Lasers, Inc. ("Spectra") and Opto Power Corporation ("Opto") on June 16, 2000. In its complaint, Rockwell alleges that Spectra and Opto are infringing U.S. Patent No. 4,368,098 ("the '098 patent").

Presently before the court is Rockwell's motion for partial summary judgment. In this motion, Rockwell asks the court to find that the '098 patent is not invalid due to alleged inequitable conduct that occurred in the prosecution of the patent application. For the reasons that follow, the court will grant this motion in part and deny it in part.

## II. STANDARD OF REVIEW

The court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

a matter of law." Fed.R.Civ.P. 56(c); *see also Boyle v. County of Allegheny, Pennsylvania,* 139 F.3d 386, 392 (3d Cir.1998). Thus, the court may grant summary judgment only if the moving party shows that there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *See Boyle,* 139 F.3d at 392. A fact is material if it might affect the outcome of the suit. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986)). An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party. *Id.; see also Assaf v. Fields,* 178 F.3d 170, 173-174 (3d Cir.1999).

With these standards in mind, the court will describe the facts and procedural history that led to the motion presently before the court.

## III. BACKGROUND

### A. Prosecution of the '098 Patent

The patent-in-suit relates to a process for forming "an epitaxial film of group III-V semiconductor disposed on a single crystal substrate." Dr. Harold Manasevit ("Manasevit") developed the process described in the '098 patent. On February 13, 1968, Rockwell filed a patent application with the United States Patent and Trademark Office ("PTO"). As the application contained both process and product claims, the PTO required that Rockwell choose one to proceed with first. Rockwell elected to give precedence to the product claims.

In 1978, Rockwell retained the law firm of Staas and Halsey to prosecute the Manasevit patent application with respect to the process claims. Jack Staas ("Staas") was the Staas and Halsey attorney primarily responsible for this prosecution. On April 7, 1978, Rockwell filed a divisional application seeking a patent for the process

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2002 WL 531555 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

claims. This application issued as the '098 patent on January 11, 1983. It expired on January 11, 2000.

### B. Alleged Prior Art

**\*2** In 1957, Thomas R. Scott obtained patents from Japan (the "Japanese Scott patent") and the United Kingdom (the "UK Scott patent"). Spectra and Opto allege that the UK Scott patent came to the attention of Rockwell's in-house patent attorneys while Rockwell was prosecuting the Manasevit process patent application in Great Britain. In response to that application, the UK Patent Office identified the UK Scott patent and five other prior art references. The UK Patent Office directed Rockwell's attention to those references.

Rockwell's UK patent counsel informed Rockwell's in-house patent counsel Robert Rogers ("Rogers") of the UK Scott patent and the five other references on September 29, 1972. In response to the UK patent counsel's request on how to respond to that information, Rockwell employee Martin E. Gerry prepared detailed instructions for amending Rockwell's claims to avoid the cited references. The UK patent counsel subsequently informed Rogers that it was removing from the application the original prior art cited in the application because the UK Scott patent and the other references constituted "the closest prior art."

Rockwell also applied for a Japanese patent on Manasevit's invention. On that application, Rockwell listed Frederick Hamann ("Hamann") as its representative. Hamann supervised Rockwell's in-house patent department from 1970 to 1995. As in the prosecution of the UK patent application, Scott's work was cited against the Japanese patent application.

On June 18, 1974, the Japanese patent office issued a rejection against the pending claims in Rockwell's Japanese patent application . FN1 Rockwell's Japanese patent counsel sent the rejection to Hamann on July 6, 1974, along with a discussion of the Japanese Scott patent. The Japanese counsel also sent Hamann a copy of this patent. Rockwell's in-house patent counsel G. Donald Weber ("Weber") responded by asking for an

English abstract of the Japanese Scott patent. The Japanese patent counsel complied on August 8, 1974. Weber subsequently sent them instructions on how to amend Rockwell's Japanese claims in light of the Scott patent.

> FN1. Spectra and Opto allege that the claims in Rockwell's Japanese patent application were substantively the same as the claims in the '098 patent.

### C. Procedural History

On August 30, 1993, Rockwell brought an action against the United States in the United States Court of Federal Claims. In May 1995, Rockwell initiated an action against Spectra in the Northern District of California. Spectra then intervened in the Court of Federal Claims action as a third-party defendant. The Northern District of California stayed its action pending a resolution of that action.

In 1998, the United States and Rockwell settled. This settlement deprived the Claims Court of jurisdiction over the dispute between Rockwell and Spectra. Thus, on January 13, 1999, the Northern District of California court lifted its stay and reopened the matter. On July 24, 2001, the court denied Rockwell's motion for partial summary judgment on the issue of inequitable conduct.

Rockwell brought the present infringement action on June 16, 2000.

### IV. DISCUSSION

**\*3** Spectra and Opto assert that the inventor, Dr. Harold M. Manasevit, and Rockwell's attorney Jack Staas were guilty of inequitable conduct by failing to disclose material references to the PTO. FN2

> FN2. Spectra and Opto deny basing their inequitable conduct claims on the Rule 132 Declaration that Manasevit filed with the PTO (the "Manasevit Declaration") Further, in their

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 3
Not Reported in F.Supp.2d, 2002 WL 531555 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

opposition papers, Spectra and Opto state that they do not oppose the portion of Rockwell's summary judgment motion directed to the Manasevit Declaration. Likewise, they deny alleging that Rockwell itself, as a corporate entity, could be liable for inequitable conduct. Accordingly, it is undisputed that only Manasevit's and counsel for Rockwell's conduct is at issue.

As an initial matter, Rockwell argues for the first time in its reply brief that Spectra and Opto failed to plead inequitable conduct with particularity in their answer to the complaint and have thus waived their right to assert this affirmative defense. However, Rockwell's tactic of reserving new arguments for its reply brief amounts to impermissible "sandbagging." *See Jordan v. Bellinger,* 2000 U.S. Dist. LEXIS 19233, *18 (D. Del. April 28, 2000) (declining to address new arguments reserved for the reply brief); *see also* D. Del. L.R. 7.1.3(c)(2) (1995). Accordingly, the court declines to address Rockwell's arguments on this issue and will turn instead to the substantive merits of the motion.

Patent applicants and their legal representatives have a duty to prosecute applications with candor, good faith, and honesty. *See Molins PLC v. Textrom, Inc.,* 48 F.3d 1172, 1178 (Fed.Cir.1995). Breach of this duty can lead to a finding that the applicant engaged in inequitable conduct before the PTO. *See Life Tech., Inc. v. Clontech Lab., Inc.,* 224 F.3d 1320, 1324 (Fed.Cir.2000). The effect of such inequitable conduct is to render the affected patent unenforceable. *See id.*

In order to prove inequitable conduct, the defendants bear the burden of providing clear and convincing evidence that: (1) omitted or false information was material; (2) the applicant had knowledge of the existence and material nature of the information; and (3) the applicant intended to deceive the PTO. *See Molins,* 48 F.3d at 1178. "Materiality and intent to deceive are distinct factual inquiries, and each must be shown by clear and convincing evidence." *Life Tech,* 224 F.3d at 1324. Information is considered material "when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application

to issue as a patent." *Molins,* 48 F.3d at 1179. The court may infer intent from the facts and circumstances surrounding the applicant's overall conduct. *See Merck & Co. v. Danbury Pharmacal, Inc.,* 873 F.2d 1418, 1422 (Fed.Cir.1989). However, in making its inferences, the court must be aware that "[a]lthough the intent element of fraud or inequitable conduct may be proven by a showing of acts the natural consequence of which were presumably intended by the actor, this requires the fact finders to evaluate all the facts and circumstances in each case. Such an evaluation is rarely enabled in summary proceedings." *KangaROOS U.S.A., Inc. v. Caldor, Inc.,* 778 F.2d 1571, 1577 (Fed.Cir.1985) (citation omitted).

In its moving papers, Rockwell declines to address the materiality of the Scott references. The Scott patents, however, were cited by foreign patent offices against Manasevit's process. This raises at least an inference that the references are material. *See Molins,* 48 F.3d at 1180. Further, Rockwell amended the claims in its foreign patents to overcome the Scott references. Accordingly the court finds that there is a triable issue of fact with regard to the materiality of the Scott patents.

**\*4** The court likewise concludes that granting summary judgment on the issue of intent would be improvident. Rockwell submits that Manasevit and Staas have each stated that they were unaware of the Scott patents. The Federal Circuit has stated, however, that "[f]ailure to cite to the PTO a material reference cited elsewhere in the world justifies a strong inference that the withholding was intentional." *Molins,* 48 F.3d at 1182. Moreover, the court expresses concern over Rockwell's argument that the named inventor of the '098 patent, who is also the named inventor of the British and Japanese patents that were amended in light of the Scott patents, was not aware of the Scott patents.

When faced with a similar motion for summary judgment based on inequitable conduct with regard to these parties, the District Court for the Northern District of California explicitly reserved judgment on whether the actions of Staas and his fellow Rockwell attorneys were inequitable. [FN3] *See Rockwell v. SDL, Inc.,* No. C-95-1729, at 12, n. 11 (N.D.Cal. July 24, 2000). That

Not Reported in F.Supp.2d                                                                                          Page 4
Not Reported in F.Supp.2d, 2002 WL 531555 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

court further expressed a concern identical to that which the court has in the present case arising from Manasevit's failure to disclose the Scott patents to the PTO.

> FN3. Based on the California court's denial of summary judgment on a similar issue, Spectra and Opto argue that Rockwell is now collaterally estopped from further litigating this issue. The court must disagree because a determination that there remain genuine issues of material fact is not a "final decision." *See Johnson v. Jones,* 515 U.S. 304, 313 (1995); *see also Whitford v. Boglino,* 63 F.3d 527, 530 (7th Cir.1995) (stating that the denial of summary judgment is not a final judgment, but rather an interlocutory order in the *res judicata* context.)

While mindful of the heavy burden the defendants bear, the court is persuaded that there remain substantial questions regarding Manasevit's and Staas's knowledge and intent that are better left to trial. *See Baker Oil Tools, Inc. v. Geo Vann, Inc.,* 828 F.2d 1558, 1566 (Fed.Cir.1988) (noting that, "[i]f the facts of materiality or intent are reasonably disputed the issue is not amenable to summary disposition.")

Finally, Rockwell requests leave to file a further motion for summary judgment on inequitable conduct. Rockwell contends that this is appropriate because it was waiting for Spectra's and Opto's expert reports assessing the materiality of additional prior art references that were allegedly not disclosed to the PTO. However, as Spectra and Opto argue, the references at issue are articles that Manasevit himself wrote. Manasevit's and Rockwell's own experts were surely capable of assessing the materiality of Manasevit's work. Accordingly, the court declines to grant Rockwell additional time to file a motion that could have been filed with the instant motion for summary judgment.

## V. CONCLUSION

The parties do not dispute that the corporate entity

Rockwell is not being accused of inequitable conduct. Nor do they dispute that the charges of inequitable conduct are not based on the Manasevit Declaration. Thus, the court will grant Rockwell's motion with regard to these issues. However, there remain genuine issues of material fact with regard to the remaining inequitable conduct allegations.

For these reasons, IT IS HEREBY ORDERED that:
1. Rockwell's motion for partial summary judgment (D.I.149) is GRANTED in part and DENIED in part.
2. Rockwell's request to file a further motion for summary judgment on inequitable conduct (D.I.149) is DENIED.

D.Del.,2002.
Rockwell Technologies, LLC. v. Spectra-Physics Lasers, Inc.
Not Reported in F.Supp.2d, 2002 WL 531555 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:00CV00589 (Docket) (Jun. 19, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## <u>CERTIFICATE OF SERVICE</u>

   I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on February 13, 2006, I electronically filed this **Response** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

       Ralph K. Durstein III, Esquire
       Department of Justice
       Carvel State Office Building
       820 N. French Street
       Wilmington, DE 19801

       James E. Liguori, Esquire
       Liguori, Morris & Yiengst
       46 The Green
       Dover, DE 19901

       /s/ Stephen J. Neuberger
       **STEPHEN J. NEUBERGER, ESQ.**

Conley/ Pleadings / Motion to Strike AB.final