Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 31887699 (D.Virgin Islands)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Only the Westlaw citation is currently available.
District Court of the Virgin Islands, Division of St.
Thomas and St. John.
Lincoln HINES, Plaintiff,
v.
CANEEL BAY, INC., Defendant.
**No. Civ.2001-74.**

Dec. 3, 2002.

Archie Jennings, St. Thomas, U.S.V.I., for the plaintiff.
David J. Comeaux, St. Thomas, U.S.V.I., for the defendant.

### MEMORANDUM

MOORE, J.
*1 Lincoln Hines ["Hines" or "plaintiff" was employed by Caneel Bay, Inc. ["Caneel Bay" or " defendant"], a resort in St. John, U.S. Virgin Islands, from September 8, 1998, until the date of his departure in 2000. Hines worked in Caneel Bay's Cinnamon Bay location as Food Service Manager. Plaintiff alleges that he was constructively discharged by Caneel Bay and asserts causes of action for race discrimination under Title VII, violation of 42 U.S.C. § 1981, breach of contract, and wrongful discharge.

Hines failed to submit the required disclosures and responses to discovery propounded by the defendant. Defendant moved for summary judgment and to prohibit plaintiff from submitting to the court any information in opposition to defendant's motion for summary judgment which should have been provided in discovery. Although Hines has attempted to supply such evidence in an affidavit attached to his Supplement to Opposition to Defendant's Motion for Summary Judgment, it is woefully inadequate to raise a disputed material fact, even if I were to consider it at this late date.

Accordingly, I will enter summary judgment against the plaintiff.

### II. JURISDICTION AND LEGAL STANDARDS

This Court has jurisdiction over the federal questions pursuant to section 22(a) of the Revised Organic Act of 1954 [FN1] and 28 U.S.C. § 1331. Supplemental jurisdiction over the territorial claims arises under 28 U.S.C. § 1367.

> FN1. 48 U.S.C. § 1612(a). The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995. & Supp.2001), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp.2001) (preceding V.I. CODE ANN. tit. 1).

The Court must grant Caneel Bay's motion for summary judgment on Hines's claims if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) ; *see also Sharpe v. West Indian Co.,* 118 F.Supp.2d 646, 648 (D.V.I.2000). The nonmoving party may not rest on mere allegations or denials, but must establish by specific facts that there is a genuine issue for trial from which a reasonable juror could find for the nonmovant. *See Saldana v. Kmart Corp.,* 42 V.I. 358, 360-61, 84 F.Supp.2d 629, 631-32 (D.V.I.1999), *aff'd in part and rev'd in part,* 260 F.3d 228 (3d Cir.2001). Only evidence admissible at trial shall be considered and the Court must draw all reasonable inferences therefrom in favor of the nonmovant. *See id.*

### III. TITLE VII AND 42 U.S.C. § 1981

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 2

Not Reported in F.Supp.2d, 2002 WL 31887699 (D.Virgin Islands)
(Cite as: Not Reported in F.Supp.2d)

The elements of a discrimination claim under Title VII and 42 U.S .C. are identical. *Lewis v. University of Pittsburgh*, 725 F.2d 910, 915 n. 5 (3d Cir.1983), *Brown v. Vitelcom, Inc.*, 47 F.Supp.2d 595, 603 (D.V.I.1999). I will therefore discuss these elements together.

### A. Prima Facie Case and Burden of Proof

As I recently discussed in *Rajbahadoorsingh v. Chase Manhattan Bank*, 168 F.Supp.2d 496 (D.V.I.2001) and *Hazell v. Executive Airlines*, 181 F.Supp.2d 444 (D.V.I.2002), the Supreme Court of the United States has established a three-prong test for the viability of a discrimination suit brought pursuant to Title VII (and section 1981). First, the plaintiff "must carry the initial burden under the statute establishing a prima facie case of [unlawful] discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To accomplish this, the plaintiff must show that: (1) he is part of a protected class; (2) he was qualified for his position; (3) despite these qualifications, he was terminated; and (4) he was replaced by a member of a non-protected class or "someone in a non-protected class, otherwise similarly situated, was treated more favorably." *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1983); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 n. 6 (1981); *McDonnell Douglas Corp .*, 411 U.S. at 802; *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994); *Hicks v. Arthur*, 878 F.Supp. 737, 738 (E.D.Pa.1995), *aff'd*, 72 F.3d 122 (3d Cir.1995) . Under this first prong, "[e]stablishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254.

*2 Once the plaintiff establishes this presumption, the burden of production shifts to the defendant to " articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp*, 411 U.S. at 802. Under this second prong, the employer has the burden of producing rebuttal evidence. *See Hicks*, 509 U.S. at 506-07; *see also Burdine*, 450 U.S. at 255, 255 n. 9 (noting that such evidence must be admissible). The employer can satisfy this burden "by introducing evidence which,

taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes*, 32 F.3d at 763 (citing *Hicks*, 509 U.S. at 507). This second prong does not require the employer to prove "that it was actually motivated by the proffered reasons. It is sufficient if the [employer's] evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254. Even though the burden of production shifts to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253.

Finally, once the defendant has offered a legitimate, nondiscriminatory reason for its actions, the burden of production under the third and final prong shifts back to the plaintiff to show, by a preponderance of the evidence, that the proffered reason is pretextual. *See id.* at 256. To satisfy this burden, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764 (citing *Hicks*, 509 U.S. at 511).

### B. Hines's Title VII and Section 1981 Claims

I will grant the defendant's motion for summary judgment because Hines's Title VII and section 1981 claims fail even to establish a prima facie claim of employment discrimination. In particular, Hines has offered no evidence to prove that he was qualified for the position, that any similarly situated white employees were treated more favorably, or that he was constructively discharged. Hines does offer an affidavit claiming that he is a member of a protected class. As I discussed above, the plaintiff did not offer this fact as part of the normal discovery process; he submitted the affidavit with an untimely opposition to the defendant's motion for summary judgment. Even if I ignore the violation of discovery rules and consider the evidence presented in the affidavit, the plaintiff's claims still do not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 3

Not Reported in F.Supp.2d, 2002 WL 31887699 (D.Virgin Islands)
**(Cite as: Not Reported in F.Supp.2d)**

survive defendant's summary judgment motion.

First of all, Hines's attempt to establish his prima facie case fails on account of his inability to prove that his cessation of employment amounted to a constructive discharge. Hines offers absolutely no evidence tending to prove a constructive discharge. Further, Hines offers no evidence sufficient "to find that the working conditions at Caneel Bay were 'so unpleasant or difficult that a reasonable person in the employee's shoes would resign." *See Harley v. Caneel Bay,* 193 F.Supp.2d 833, 836-37 (D.V.I.2002) (citing *Gray v. York Newspapers, Inc.* 957 F.2d 1070, 1079 (3d Cir.1992)).

*3 Even if Hines's cessation of employment did, in fact, constitute a constructive discharge, his prima facie case would still fail because he offers no evidence that any similarly situated employees were treated more favorably. Hines does state in his affidavit that he was treated unfairly and unequally compared with the treatment afforded "Tony Kemett, a white male, assistant manager, a position similar to the one held by [Plaintiff]." Plaintiff's Affidavit at ¶ 3. Although Hines asserts that he and Kemett were similarly situated, he offers no evidence that Kemett had the same or similar job performance history as Hines. *See Harley,* 193 F.Supp.2d at 837. Accordingly, plaintiff has not established the last requirement of the first prong of the *McDonnell-Burdine-Hicks* test, namely, that he was replaced by a member of a non-protected class or that "someone in a non-protected class, otherwise similarly situated, was treated more favorably."

Therefore, as Hines has failed to establish a prima facie case of discrimination under the *McDonnell-Burdine-Hicks* test, I will grant the defendant's motion for summary judgment on plaintiff's Title VII and section 1981 claims.

#### IV. BREACH OF CONTRACT AND WRONGFUL DISCHARGE CLAIMS

It seems that the plaintiff has abandoned his breach of contract and wrongful discharge claims. Caneel challenged Hines's ability to bring forward evidence in support of these claims. (Defendant's

Memorandum in Support of Motion for Summary Judgment and for Sanctions at 7-8.) Plaintiff does not refer to these claims in his Opposition or Supplement, nor does he provide any evidence in support of these claims. Accordingly, summary judgment in favor of the defendant on these claims is also appropriate.

It is also worth noting that plaintiff has provided no evidence of his damages, although he requests monetary relief. Plaintiff was required to submit evidence of damages in his initial disclosures. Fed.R.Civ.P. 26(a)(2)(B). This total failure to present evidence of damages similarly entitles the defendant to summary judgment.

An appropriate order follows.

#### ORDER

For the reasons set forth in the accompanying Memorandum of even date, it is hereby

ORDERED that the defendant's motion for summary judgment (Docket No. 11) is GRANTED; it is further

ORDERED that defendant's motion for sanctions (Docket No. 11) is DENIED as MOOT, and it is further

ORDERED that the complaint is DISMISSED. The Clerk shall close the file.

D.Virgin Islands,2002.
Hines v. Caneel Bay, Inc.
Not Reported in F.Supp.2d, 2002 WL 31887699 (D.Virgin Islands)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                Page 1

Not Reported in F.Supp., 1997 WL 158280 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Harold L. LEONARD, Plaintiff,
v.
The UNIVERSITY OF DELAWARE, a
corporation of the State of Delaware, Paul Mettler
and Mary Martin, Defendants.
**Civil Action No. 96-360 MMS.**

Argued Feb. 20, 1997.
Decided March 20, 1997.


Jeffrey K. Martin of Jeffrey K. Martin, P.A.,
Wilmington, DE, for plaintiff.
Kathleen Furey McDonough and Todd L. Goodman
, of Potter Anderson & Corroon, Wilmington, DE,
for defendants.


*OPINION*

MURRAY M. SCHWARTZ, Senior District Judge.

I. INTRODUCTION

*1 Plaintiff Harold L. Leonard ("Leonard") filed
this suit against the University of Delaware ("the
University"), Paul Mettler, and Mary Martin
(collectively, "the University defendants"), alleging
he was wrongfully terminated from the graduate
Physical Therapy program ("the P.T. Program") at
the University of Delaware. He also alleges the
University violated the terms of a 1993 Settlement
Agreement between Leonard and the University
defendants. FN1 Pending before the Court are:
(1) Leonard's motion to disqualify Kathleen F.
McDonough, Esquire, ("McDonough") as trial
counsel for the University defendants; and (2) the
University defendants' motion for attorneys' fees
pursuant to Rule 26(g)(3) of the Federal Rules of
Civil Procedure. For the reasons that follow: (1)
the motion to disqualify McDonough will be

denied; and (2) the motion for attorneys' fees will
be granted.


> FN1. Mary Martin, one of the University
> defendants in this case, was not a party to
> the 1993 Settlement Agreement. Docket
> Item ("D.I.") 29 at 8. The University, Paul
> Mettler, and Kenneth W. Seaman were the
> "University defendants" for purposes of
> the 1993 Settlement Agreement. *Id.*

I. FACTUAL BACKGROUND

Leonard was a student enrolled in the University's
graduate P.T. Program. Unfortunately, his stint at
the University was pockmarked with rancor and
tumult. In 1992, Leonard sued (in the Middle
District of Pennsylvania) the University, two
members of the P.T. Program faculty, and a clinical
instructor in connection with a clinical affiliation
course he had flunked. In July of 1993, the parties
executed a Settlement Agreement, stipulating to a
dismissal of the suit. Throughout the negotiation
and execution of the Settlement Agreement,
Leonard was represented by James F. Heinly,
Esquire ("Heinly"), a Pennsylvania attorney, and
the University defendants were represented by
McDonough. The Settlement Agreement permitted
Leonard an opportunity to complete the P.T.
program, subject to some conditions. Docket Item (
"D.I.") 29 at Exhibit ("Exh.") A-8-14.

But the discord did not end in 1993. In late
September or early October of 1994, Heinly
accompanied Leonard to a meeting with the
University to discuss Leonard's academic status.
D.I. 29 at Exh. C-2. McDonough was among those
present at that meeting. D.I. 38 at Exh. F-75-77.
In an affidavit, Heinly defined the "principal
purpose of this meeting" as "to get together and
discuss the Physical Therapy department's request
that Mr. Leonard undergo psychological or
psychiatric counseling in order to continue to be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 2

Not Reported in F.Supp., 1997 WL 158280 (D.Del.)
(Cite as: Not Reported in F.Supp.)

enrolled at the University of Delaware's Physical Therapy Program." D.I. 29 at Exh. C-2. McDonough did not recall discussing psychiatric counseling for Leonard at that meeting, however, D.I. 38 at Exh. F-77, and the University defendants deny ever holding a meeting to insist Leonard undergo psychological or psychiatric counseling.

On February 27, 1995, Leonard was terminated from the program for failure to maintain a minimum 3.0 grade point average. [FN2] Docket Item ("D.I.") 38 at Exhibit ("Exh.") B. After his termination, Leonard challenged several grades he had received in the P.T. Program through an elaborate four-step grievance procedure provided by the University. [FN3] Ms. McDonough, counsel for the University defendants in this matter, also provided legal advice to the University defendants concerning Leonard as he exhausted the University grievance procedures. D.I. 29 at Exh. B-1, 10, 15.

> FN2. The P.T. Program adheres to the University grading system, which is based on the familiar four-point scale-an A in a course is worth 4.0 points per credit, a B is worth 3.0 points, a C, 2.0 points, and a D, 1.0 point. A failure, or an F, is worth no points per credit, of course. D.I. 38 at Exhibit ("Exh.") A-29. There are also gradations within those five basic letter grades; for example, an *A-* is worth 3.67 points per credit, a grade of *B+* is worth 3.33 points per credit, and so on down to a *D-*, which is worth a mere 0.67 points per credit. *Id.* Classes which are graded on a *Pass/Fail* basis are not counted in the computation of a student's cumulative grade point average ("GPA"). To be eligible for a graduate degree, students at the University of Delaware must have a minimum cumulative GPA of 3.0, or a B average. D.I. 38 at Exh. A-14. At the time of his termination, it appears Leonard had a cumulative GPA of 2.906 and could take only Pass/Fail classes to fulfill the requirements of the PT curriculum. D.I. 38 at Exh. B.

> FN3. In Step 1 of the procedure, the faculty member who issued the grade at issue is obligated to meet with the complainant student. If Step 1 does not solve matters, the student is permitted to appeal to a chairperson in the faculty member's department in Step 2. If still dissatisfied, the student can obtain a hearing before a five-member panel in Step 3. The panel typically includes three faculty members, only one of whom hails from the department involved in Step 2, and two student members. The final step, step Committee of the University Faculty Senate. D.I. 38 at Exh. C-48-50.

*2 Several of the grievance hearings are of particular interest for purposes of these motions. In December of 1995, Leonard challenged a grade he had been given for a class with the course number PHYT-621. At this hearing ("the 621 hearing"), Leonard allegedly violated the University Code of Conduct by distributing patient records to the hearing panel without redacting the names of the patients from the records and without the consent of the patients. Apparently, he was successful in his effort to change his grade for PHYT-621. [FN4]

> FN4. As will be shown, Heinly alleges McDonough told him she had "advised the board against making a finding favorable to Dr. Leonard but ... the Board [sic] had obviously disregarded her advice." D.I. 29 at Exh. C-2.

Members of the 621 hearing panel later served on a May 1996 hearing panel assembled to review a grade Leonard received in a course entitled PHYT-619. D.I. 29 at Exh. D. This May 1996 panel ("the 619 panel") ruled against Leonard and refused to alter his grade. Further, members of the 621 panel later acted as witnesses at an ethics hearing ("the ethics hearing") in June of 1996; the ethics panel, after hearing the testimony of members of the 621 panel, ruled Leonard had violated the University Code of Conduct and recommended his dismissal from the University. [FN5]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3

Not Reported in F.Supp., 1997 WL 158280 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

FN5. This last ruling-that Leonard be dismissed-seems to have been academic; as of February of 1995, he had already been terminated from the University for his failure to achieve a 3.0 grade point average. D.I. 38 at Exh. B.

This is where the controversy surrounding the extent of McDonough's involvement reaches its highest pitch. Heinly, again, through affidavit, alleges he engaged in a telephone conversation with McDonough in April of 1996. D.I. 29 at Exh. C-1. According to Heinly, their discourse touched on the 621 hearing, at which Leonard had sought a change in his grade. *Id.* at Exh. C-1, 2. As Heinly tells it, McDonough confided to him in that conversation that "she advised the board against making a finding favorable to Dr. Leonard but that the Board [sic] had obviously disregarded her advice." *Id.* at Exh. C-2. McDonough has denied (1) ever making that statement to Heinly, and (2) advising the 621 panel how to rule. D.I. 38 at Exh. F-100-102. When informed of McDonough's categorical denial, Heinly retorted "[t]here is no question in my mind that Ms. McDonough did make [the statement quoted above] during the course of the telephone conversation in April 1996." D.I. 29 at Exh. C-2.

According to Leonard, McDonough failed in her attempt to thwart him in the 621 hearing. But Leonard implies that her darker purposes were ultimately served. The members of the 621 board to whom McDonough proffered her advice, Leonard notes, ruled against him in the 619 hearing in May of 1996 and later served as the key witnesses against Leonard in the ethics hearing in June of 1996. [FN6] This shows, according to Leonard, that McDonough was a "direct co-conspirator in an effort to terminate [him] from the Physical Therapy Program." D.I. 41 at 1.

FN6. At this point, a brief chronological recap might be useful:
09/94-10/94: Meeting among Leonard and University representatives, allegedly to discuss psychological counseling for Leonard.
02/95: Leonard terminated from

University for failure to maintain 3.0 GPA.
12/95: 621 hearing panel rules in favor of Leonard.
04/96: Alleged telephone conversation between Heinly and McDonough.
05/96: 619 hearing panel rules against Leonard.
06/96: Ethics hearing panel recommends Leonard's dismissal.

### III. DISCUSSION

#### A. Leonard's Motion to Disqualify McDonough as Trial Counsel

Leonard argues McDonough cannot serve as trial counsel for the University defendants because Rule 3.7 of the Model Rules of Professional Conduct of the American Bar Association ("Rule 3.7") forbids her from doing so. [FN7] Rule 3.7 provides, in general, "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness...." [FN8] Recognizing this prohibition, the University defendants have consistently disavowed any present intention of utilizing McDonough as a trial witness. Therefore, as movant, Leonard bears the burden of establishing disqualification is appropriate. *Kalmanovitz v. G. Heileman Brewing Co., Inc.,* 610 F.Supp. 1319, 1323 (D.Del.1985); *see also World Youth Day. Inc. v. Famous Artists Merchandising Exch.,* 866 F.Supp. 1297, 1299 (D.Colo.1994).

FN7. Leonard seeks to disqualify McDonough only as trial counsel; he " takes no position" as to McDonough's participation as counsel for the University defendants until trial. D.I. 28 at 3 n. 2.
Local rules for the District of Delaware incorporate the Model Rules of Professional Conduct of the American Bar Association as governing the conduct of attorneys appearing before this Court. D. DEL. R. Civ. P. 83.6(d)(2) (1995).

FN8. There are three exceptions to this general rule; none is relevant to this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1997 WL 158280 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 4

dispute.

*3 Nearly ten years ago, this Court had occasion to visit the standards for disqualification under then-nascent rule 3.7. In *Cannon Airways, Inc. v. Franklin Holdings Corp.*, this Court held that Rule 3.7 "requires the opposing party to bear a higher burden on a disqualification motion, permits the court to delay ruling until it can determine whether another witness can testify, and precludes disqualification if the lawyer's testimony would merely be cumulative." [FN9] 669 F.Supp. 96, 100 (D.Del.1987) (citations omitted); *see also United Food & Commercial Workers Health & Welfare Fund of Northeastern Pa. v. Darwin Lynch Adm'rs. Inc.*, 781 F.Supp. 1067, 1069-70 (M.D.Pa.1991) (quoting *Cannon* ). These standards still hold true. Other courts have elaborated, refraining from denominating trial counsel as "likely to be a necessary witness" unless shown three things: (1) the attorney will give evidence material to the determination of issues being litigated; (2) the evidence cannot be obtained elsewhere; and (3) the testimony is prejudicial or potentially prejudicial to the testifying attorney's client. [FN10] *Personalized Mass Media Corp. v. Weather Channel, Inc.*, 899 F.Supp. 239, 243 (E.D.Va.1995); *Cottonwood Estates. Inc. v. Paradise Builders. Inc.*, 128 Ariz. 99, 624 P.2d 296, 302 (Ariz.1981) (en banc); *LeaseAmerica Corp. v. Stewart*, 19 Kan.App.2d 740, 876 P.2d 184, 193 (Kan.Ct.App.1994); *Chappell v. Cosgrove*, 121 N.M. 636, 916 P.2d 836, 840 (N.M.1996); *Sargent County Bank v. Wentworth*, 500 N.W.2d 862, 871 (N.D.1993); *Public Util. Dist. No. 1 of Klickitat County v. International Ins. Co.*, 124 Wash.2d 789, 881 P.2d 1020, 1033 (Wash.1994) (en banc) *Smithson v. United States Fidelity & Guar. Co.*, 186 W.Va. 195, 411 S.E.2d 850, 856 (W.Va.1991) (all interpreting state rules patterned, like Delaware's, after Rule 3.7 of the ABA Model Rules of Professional Conduct). In short, Rule 3.7 ensures a litigant's choice of trial counsel will not be lightly disturbed.

> FN9. While *Cannon* interpreted Rule 3.7 of the Delaware Lawyers' Rules of Professional Conduct, its status as persuasive authority remains undiminished. The Delaware Rules of Professional Conduct are patterned after the ABA Model Rules of Professional Conduct, *In re Waters*, 647 A.2d 1091, 1095 (Del.1994), and Rule 3.7 of the Delaware Rules is identical to the current ABA progenitor.

> FN10. This third requirement merely reflects the common-sense realization that trial counsel would not ordinarily be called as a witness by an adverse party.

With the above principles in mind, the Court turns to the merits of Leonard's motion. Leonard's ultimate argument-that McDonough's disqualification as trial counsel is mandated because she will be a "necessary witness" at trial-is premised on the belief she engaged, along with the University defendants, in a "course of wrongdoing" to prevent Leonard from successfully completing the P.T. program. D.I. 28 at 8. Even accepting Leonard's view of McDonough's actions, however, McDonough's testimony regarding those actions would be either cumulative or beneficial, not antagonistic, to the defense. Accordingly, Leonard's motion to disqualify McDonough as trial counsel for the University defendants will be denied.

McDonough's involvement in this case can be distilled into three discrete areas. First, there is the 1993 Settlement Agreement allegedly breached by the University defendants. At the time, McDonough represented the University defendants. She admits negotiating and helping draft the Agreement. D.I. 38 at Exh. F, p. 22. In his briefing, Leonard does not contend McDonough should be disqualified because of her participation in the 1993 Settlement Agreement. [FN11]

> FN11. Nor should he. To date, Leonard has not pointed to a dispute over the terms of the Settlement Agreement, requiring inquiry into the intent of the drafters. Even if there were a dispute over the meaning of the terms of the Settlement Agreement, however, it is unlikely McDonough would be subject to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 5

Not Reported in F.Supp., 1997 WL 158280 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

disqualification under Rule 3.7. See *Cannon,* 669 F.Supp. at 101-02; *Studiengesellschaft Kohle. MBH v. Hercules.* Inc., No. 86-566, slip op. at 8 (D.Del. Sept. 12, 1988).

**\*4** Second, there is the late September/early October meeting, the purpose of which, according to Heinly, was to request Leonard to undergo " psychological or psychiatric counseling." McDonough recalls attending a meeting at around that time, but does not recall whether psychological or psychiatric counseling was discussed at the meeting. D.I. 38 at Exh. F, pp. 76-78. While Leonard does not explicitly argue McDonough should be disqualified because she is a "necessary witness" to this meeting, the episode could fall within the penumbra of Leonard's broader claim-that McDonough was a "direct co-conspirator " with the University defendants in a scheme to sack Leonard from the P.T. Program. D.I. 41 at 1.

The testimony of McDonough is not "necessary" with regard to this meeting, however. Since she does not recall the specifics of the meeting, *see* D.I. 38 at Exh. F, pp. 76-78, her testimony would be unhelpful. Further, and most important, there were other people at the meeting, including Heinly, whom Leonard could call as percipient witnesses. Therefore, any testimony by McDonough, useless as it may be, regarding the late September/early October meeting would be "merely cumulative." *Cannon,* 669 F.Supp. at 100 (citations omitted).

Third, there is Leonard's most serious allegation: that McDonough advised (to no avail) the 621 panel to rule against Leonard in his attempt to change his grade. [FN12] Members of the 621 panel served as witnesses before the ethics panel, of course, which ultimately recommended Leonard's dismissal. [FN13] Leonard's desire is to call McDonough as a witness at trial and ask her about the statement she allegedly made to Heinly, and the advice she allegedly gave to the hearing panel. While acknowledging attorney-client privilege will foreclose much of his questioning, Leonard maintains "the jury should be given an opportunity to draw a negative inference" from the very fact McDonough rendered advice to the '621 panel to

find against Leonard. D.I. 28 at 8. For these reasons, Leonard argues, McDonough must be disqualified as the University's trial counsel under Rule 3.7.

FN12. In the penultimate sentence of his reply brief, Leonard levels a grave charge: that McDonough violated Rule 3.5 of the Delaware Lawyers' Rules of Professional Conduct. D.I. 41 at 2. Rule 3.5 of the Delaware Lawyers' Rules of Professional Conduct provides, in its entirety:
A lawyer shall not:
(a) seek to influence a judge, juror, prospective juror or other official by means prohibited by law;
(b) communicate ex parte with such a person except as permitted by law; or
(c) engage in conduct intended to disrupt a tribunal or engage in undignified or discourteous conduct which is degrading to a tribunal.
Rule 3.5 of the ABA Model Rules, which applies to attorneys appearing in this district, is nearly identical to its Delaware progeny, reproduced above. Leonard's argument seems to be that because McDonough allegedly advised the 621 hearing panel to rule against Leonard, she either: (1) illegally influenced "a judge, juror, prospective juror or other official"; (2) illegally engaged in ex parte communications with a "judge, juror, prospective juror or other official"; or (3) disrupted "a tribunal", in violation of Rule 3.5.
Leonard has not pointed to any basis in authority or logic to consider a member of a University grade grievance hearing panel the equivalent of a "judge, juror, prospective juror or other official" within the meaning of Rule 3.5. Therefore, the Court discards this argument as meritless.

FN13. McDonough, although conceding she rendered legal advice to the University regarding Leonard as he pursued various grade grievances, denies advising any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                              Page 6

Not Reported in F.Supp., 1997 WL 158280 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

hearing panel, whether before, during or after a hearing, regarding action to take against a specific student. D.I. 38 at Exh. F, p. 36.

If each step of Leonard's argument is closely examined, however, it becomes apparent McDonough is not a "necessary witness" as contemplated by Rule 3.7. The University defendants have raised initial questions as to the admissibility of Heinly's affidavit, which alleges McDonough admitted to advising the 621 panel to rule against Leonard. [FN14]

> FN14. As the University defendants point out, Leonard may have trouble squeezing the Heinly affidavit into evidence at trial through the ordinarily porous hearsay exclusion rule.

But even if Heinly's testimony were admitted, or it is otherwise revealed that McDonough advised the 621 hearing panel to rule against Leonard in his quest to alter his grade, McDonough will not be transformed into a "necessary witness." As the University defendants point out, the 621 hearing panel was comprised of members of the University Faculty Senate. D.I. 38 at Exh. C. Leonard has conceded McDonough was retained to provide legal advice to the University on various matters; that would encompass dispensing counsel regarding decisions in grievance procedures, such as the 621 hearing. Accordingly, McDonough's testimony would be protected by attorney-client privilege. An attorney will not be disqualified as trial counsel merely because she provided legal advice to a client in the past. *See Optyl Eyewear Fashion Int'l Corp. v. Style Co., Ltd.,* 760 F.2d 1045, 1049-50 (9th Cir.1985) (affirming denial of disqualification because testimony concerning prior legal advice given by trial counsel to party-client would be privileged and movant made no showing trial counsel performed role for party-client other than legal advisor); *Studiengesellschaft Kohle, MBH v. Hercules, Inc.,* No. 86-566, slip op. at 10 (D.Del. Sept.12, 1988) (denying disqualification motion and recognizing trial counsel will be able to assert attorney-client privilege to matters regarding legal

advice given to party-client).

*\*5* Finally, even were Leonard able to hurdle these evidentiary and privilege obstacles, McDonough would not be a "necessary witness" regarding her alleged advice to the 621 panel. Leonard intends to call Heinly as a witness to McDonough's involvement. D.I. 28 at 4. In addition to Heiniy, there are the members of the 621 panel who also served as members of the 619 panel and the witnesses at the ethical hearing; Leonard identifies them as Kathleen Minkey, Reed Geiger, and John Cushman. D.I. 29 at Exh. D. Thus, at least four witnesses, other than McDonough herself, are available to testify to the University's alleged " course of wrongdoing." Any testimony by McDonough, since she denies making an inculpatory statement to Heinly and advising the 621 panel to rule against Leonard, would only serve to undermine Leonard's case. In short, if McDonough were to take the stand and admit she advised the 621 panel against Leonard, her testimony would be cumulative, and if she denied the allegations in Heinly's affidavit, her testimony would not be prejudicial to the University defendants. Under either scenario, McDonough is not a "necessary witness" and her disqualification is unwarranted under Rule 3.7.

The cases cited by Leonard in support of his disqualification motion are not persuasive. Two of the cases, *Mannhalt v. Reed,* 847 F.2d 576 (9th Cir.1988), and *United States v. Stout,* 723 F.Supp. 297 (E.D.Pa.1989), are criminal cases and scarcely worth mentioning here. Suffice to say that both involved attorneys, accused of wrongdoing, who allowed the accusations to interfere with their efforts to represent their clients adequately. As such both *Mannhalt* and *Stout* present factual scenarios different than in this case. *Mannhalt,* 847 F.2d at 581; *Stout,* 723 F.Supp. at 304-05, 308-10. Leonard also cites an unreported Eastern District of Pennsylvania case, *Second & Ashbourne Associates. v. Cheltenham Township, Inc.,* No. 88-6400, 1989 U.S. Dist. LEXIS 992 (E.D.Pa. Feb. 2, 1989). This case, while closer than *Mannhalt* and *Stout,* in that it is a civil case, does not support Leonard's motion for disqualification. In *Second & Ashbourne,* the court was confronted with various

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 7

Not Reported in F.Supp., 1997 WL 158280 (D.Del.)
(Cite as: Not Reported in F.Supp.)

civil rights claims arising from the review and consideration of land development plans. *Id.* at *2. The *Second & Ashbourne* court disqualified trial counsel because, as a partner of the plaintiff association, he had negotiated, drafted, and assigned a crucial document, as well as developed, presented, and discussed the land development plans at issue. *Id.* McDonough's involvement was much less pervasive; nor is she a part-owner of the University.

Leonard's motion to disqualify McDonough as trial counsel for the University defendants will be denied.

### B. University Defendants' Motion for Attorneys' Fees

On November 6, 1996, Leonard served the University defendants with 839 requests for admission. *See* University Defendants' Letter Memorandum of 11/21 at Exh. 1. Even this tally of 839 is artificially low, however; many of the requests were compound, containing several assertions and requiring more than one response to a single request. In addition, while many of the requests were simply incomprehensible, others could be interpreted as offensive to one or more of the University defendants. [FN15]

> FN15. For the incomprehensible, see University Defendants' Letter Memorandum of 11/21 at Exh. 1, p. 25 of requests directed to defendant Mary Martin ("The University stated at the level 4 hearing for PHYT-621 that it never assessed any areas to fail Leonard in but professional behavior and attitude, which it admitted were the only areas were it could intervene without allowing Leonard the option to improve and fail him.") and id. at p. 10 of requests directed to defendant University of Delaware ("The University (Stuart Binder-McCloud) indicated at the 611/620 hearing that had reviewed to lend its grading expertise Leonard's papers for those courses, at Paul Mettler's request, between the date of the two grievance

hearings.") (all errors in originals). For the offensive, see *id.* at p. 17 of requests directed to defendant Paul Mettler ("In Patient Management 1, the University instructed Leonard to cross paths with Lynn Synder-Mackler because she is a ' bitch'.").

*6 At a conference in chambers on November 22, 1996, counsel for Leonard admitted his client, Leonard, had drafted the requests, and that counsel had performed some revisions. D.I. 25 at Exh. F-Il. After counsel for Leonard promised to limit and restructure the requests for admission, the Court postponed a decision on the University defendants' request for attorneys' fees to give the parties a chance to resolve the issue amicably. *Id.* This opportunity went unrealized; the University filed a motion for attorneys' fees pursuant to Rule 26(g) of the Federal Rules of Civil Procedure.

Under the Federal Rules of Civil Procedure, an attorney must sign every discovery request made on behalf of his client. Rule 26(g)(2) provides this signature:
constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the request ... is:
(A) consistent with [the rules of discovery] and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;
(B) not interposed for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and
(C) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, and the importance of the issues at stake in the litigation.

If an attorney makes a certification of a discovery request in violation of Rule 26(g) "without substantial justification," the court "shall impose upon the person who made the certification, the party on whose behalf the ... request ... is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                        Page 8

Not Reported in F.Supp., 1997 WL 158280 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

reasonable attorney's fee." FED. R. CIV. P. 26(g)(3). [FN16] Rule 26(g) was amended to add a potent instrument of deterrence to the judicial arsenal; the advisory committee found "a need for more aggressive judicial control and supervision." FED. R. CIV. P. 26 advisory committee's note (citation omitted). As the advisory committee further noted: "Rule 26(g) makes explicit the authority judges now have to impose appropriate sanctions and *requires them to use it* .... The new rule *mandates* that sanctions be imposed on attorneys who fail to meet the standards established in the first portion of Rule 26(g)." *Id.* (internal citations omitted) (emphasis added).

> FN16. Pursuant to Rule 37(a)(4), a litigant who successfully moves for a protective order will be awarded attorneys' fees if the opposition to the motion was not substantially justified. At the chambers conference in November 1996, the Court indicated it would grant the University's motion for a protective order if one were brought. D.I. 25 at Exh. F-8.

While the Third Circuit Court of Appeals has not addressed the legal standard applicable to Rule 26(g) motions for sanctions, other courts have evaluated the attorney's conduct under the objective standard of reasonableness used in Rule 11 jurisprudence. *See In re Byrd, Inc.,* 927 F.2d 1135, 1137 (10th Cir.1991) ("When considering sanctions under Rule 11, and therefore Rule 26(g), the court must judge the attorney's conduct under an objective standard of reasonableness."); *Insurance Benefit Adm'rs, Inc. v. Martin,* 871 F.2d 1354, 1360 (7th Cir.1989); *Chapman & Cole and CCP. Ltd. v. Itel Container Int'l B.V.,* 865 F.2d 676, 685-86 (5th Cir.1989); *Apex Oil Co. v. Belcher Co. of New York. Inc.,* 855 F.2d 1009, 1015 (2d Cir.1988); *TRW Fin. Sys., Inc. v. Unisys Corp.,* No. 90-CV-71252-DT, 1995 WL 545023, at ---- 8-9 (E.D.Mich. Feb.6, 1995); *In re Weinberg,* 163 B.R. 681, 686 (E.D.N.Y.1994). Under the objective standard of reasonableness, inquiry into the subjective intent of a litigant or his counsel is unnecessary; sanctions can be imposed if the person who signed the pleading failed to conduct "a

reasonable inquiry into the facts and law supporting the pleading." *United Mo. Bank of Kansas City. N.A. v. Bank of N.Y.,* 723 F.Supp. 408, 415 (W.D.Mo.1989) (interpreting FED. R. CIV. P. 26(g) under Rule 11 standards). This comports with the intention of the advisory committee, which wrote: " The duty to make a 'reasonable inquiry' [under Rule 26(g)(2) ] is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard similar to the one imposed by Rule 11." FED. R. CIV. P. 26(g) advisory committee's note. Given the motivation behind the revisions of Rule 26(g), as evidenced in the advisory committee notes, the Court joins the growing swell of jurists adopting an objective standard, and applies it to the University's motion for attorneys' fees.

**\*7** After reviewing the over-800 requests to admission, the Court concludes they fall well short of this objective reasonableness standard. Counsel for Leonard emphasizes he viewed the 800-some requests as a good-faith effort to narrow issues for trial. He avows he was able to "document the record from the various grievance hearing transcripts to show the basis for each of the initial Requests for Admissions." D.I. 31 at 3. [FN17] He also notes, correctly, that in 1992 the Local Rules for the District of Delaware eliminated a ceiling for the number of requests a litigant could propound. Finally, he alleges the University defendants are also at fault for stonewalling discovery and engaging in various other abusive discovery tactics. [FN18]

> FN17. Counsel for Leonard did not submit this documentation to the Court.

> FN18. At oral argument, counsel for Leonard argued that imposing an award of attorneys' fees against either his client or him might result in the abandonment of Leonard's claim due to their respective financial constraints. While the Court sympathizes with such a plight if it exists, the Court was not provided any documentation upon which it could make a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 9

Not Reported in F.Supp., 1997 WL 158280 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

balanced assessment of the potential pecuniary limitations of either Leonard or his attorney. Because of this lack of supporting documentation and because lawyers or litigants are not conferred a right to flout the Federal Rules of Civil Procedure by virtue of their "financially challenged" status, Leonard's eleventh hour argument will not stay the chimes of midnight.

Without delving into the myriad other minor discovery skirmishes in this case, the Court finds the above arguments unavailing. Given the oppressive number of requests, and their often confusing and sometimes incoherent nature, [FN19] an objective attorney would be hard-pressed to quibble with the conclusion that a reasonable inquiry would reveal the requests are "unreasonable or unduly burdensome." Fed. R. Civ. P. 26(g)(2)(C) . Further, the Court recognizes the requests, drafted by Leonard, were likely designed "to harass or to cause unnecessary delay or needless increase in the cost of litigation" in violation of Rule 26(g)(2)(B); counsel for Leonard, had he undertaken a reasonable inquiry, should have realized the requests would at least have that inevitable effect.

> FN19. *See supra* note 15. Other courts have held requests for admission that run into the hundreds and even thousands are abusive, which, when considering the compound nature of the requests, is the case here. *See Misco, Inc. v. United States Steel Corp.*, 784 F.2d 198, 206 (6th Cir.1986); *Phillips Petroleum Co. v. Northern Petrochemical Co.*, No. 84 C2028, 1986 WL 9186 (N.D.Ill. Aug.19, 1996); *Wigler v. Electronic Data Sys. Corp.*, 108 F.R.D. 204 (D.Md.1985); *Krantz v. United States*, 56 F.R.D. 555 (W.D.Va.1972).

A court is empowered to sanction appropriately either client, counsel, or both, for discovery propounded in violation of Rule 26. *See* Fed. R. Civ. P. 26(g)(3). Both client and counsel are at fault here. The client, Leonard, drafted the

requests, which would explain the incomprehensibility and crudity of many of the requests. D.I. 25 at Exh. F-Il. Counsel reviewed the requests and signed them. Id. This signature was a certification the requests were reasonable. Fed R. Civ. P. 26(g)(2). As the Court has held, they were not. Accordingly, the Court will grant the University defendants' motion for attorneys' fees in the amount of $ 3,777.25. [FN20] Both Leonard and his counsel will be held jointly and severally liable for the amount ordered.

> FN20. In his brief, Leonard writes: "the time submitted by [counsel for the University defendants] is completely out of proportion with reality." D.I. 31 at 3. This is hyperbole, however; considering the number of requests and their complexity, the Court finds the time and fees spent by counsel for the University defendants reviewing the requests, *see* D.I. 25 at Exh. G, to be reasonable. The Court does not grant the University defendants' request for an additional $ 1,050.00 in fees incurred in the preparation and filing of their motion for attorneys' fees because those expenses were not adequately documented or itemized.

D.Del.,1997.
Leonard v. University of Delaware
Not Reported in F.Supp., 1997 WL 158280 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:96cv00360 (Docket) (Jul. 02, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.