IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CAPTAIN BARBARA L. CONLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04-1394-GMS |
| ) | |
| COLONEL L. AARON CHAFFINCH, ) | |
| Individually and in his official capacity as the ) | |
| Superintendent, Delaware State Police; et al. ) | |
| ) | |
| Defendants, ) | |

**DEFENDANTS' MOTION IN LIMINE FOR DETERMINATION OF ADMISSIBILITY OF PLAINTIFF'S "ON THE JOB" MISCONDUCT**

COMES NOW, the above-captioned Defendants, by and through their counsel, and hereby move this Honorable Court to enter an Order, *in limine*, determining that, subject to proper offers of proof through witnesses at trial, Defendants may introduce evidence of Plaintiff's "on the job" misconduct, including conduct of a sexual nature involving subordinates and co-workers, at trial. This evidence is relevant and admissible for the reasons set forth herein and in the accompanying Opening Brief in Support of Defendants' Motion *in limine* as to this issue.

1. Plaintiff claims that she was the most qualified among 20 Delaware State Police troopers holding the rank of Captain to be appointed to the rank of Major in 2003. Plaintiff specifically claims that she was more qualified than Majors R.L. Hughes and Paul Eckrich, who got the two promotions at issue. Promotion to Major is a discretionary decision on the part of the Colonel.

2. DSP has five Majors who serve the Colonel on the Executive Staff. Majors serve as commanders of the 700 member DSP force, functioning in various leadership roles. Defendants will present evidence that, as part of a high ranking trooper's work experience, personal qualifications such as leadership, respect, reputation within civilian and uniform staff, compatibility, work ethic and the ability to present a positive and

professional image as a DSP commander are critical to the position.

        3. During the course of discovery, Defendants interviewed more than thirty (30) current and former Delaware State Police troopers and employees who have worked with Plaintiff (as well as with Majors Hughes and Eckrich) throughout her career, who will provide testimony that Plaintiff's tenure has been marked by poor work habits and performance; abuse of State funds and time, including the use of subordinate officers and DSP property for personal business; unwillingness to come to the aid of fellow officers; harassing sexual comments and physical contact directed to male subordinates and civilians, inappropriate language and sexual gestures in uniform; disrespect to superiors, and verbalized insensitivity to victims of crime. (*See* Witness disclosures, attached as Exhibit hereto).

        4. Just a few examples of this type of evidence obtained by Defendants follow: Sgt. Charles Mullett testified that when he was a brand new road trooper in 1987 and met Plaintiff, his superior officer, for the first time, she propositioned another trooper and pinched the buttocks of still another trooper in his presence and in the presence of others. Mullett would also testify that Plaintiff did not answer her radio when she was being called to assist a fellow officer in an emergency at a dangerous location, and that Mullett himself reported to the scene, passing Plaintiff who was stopped at an intersection along the way. Mullett, as well as Lt. Joe Huttie would testify as to several incidents in the mid 1990's where Plaintiff used DSP ordered junior troopers to assist in a personal dispute she was having with her brother and attempted to use her influence as a DSP officer to get her brother arrested. Carole Warnock, a civilian employee who worked with Conley for many years, will testify that Conley would routinely "bump and grind" her body against male troopers in the workplace, and that Conley became vindictive if confronted. Captain Betsy Shamany would testify that she worked down the hall from Plaintiff in the Headquarters building for approximately 5 years in the late 1990's, and would frequently hear Plaintiff making loud, rude, inappropriate comments in the hall, including frequents references to her "titties". Several employees complained to Shamany about Plaintiff's conduct. Shamany also investigated the matter in which Plaintiff was disciplined for purchasing a Rolex watch with a State credit card. Sgt. Pete Fraley and others would testify that Plaintiff used the nickname "Puss" to refer to herself all the time; Plaintiff

has accused Col. Chaffinch of allowing this name to be used against her in a derogatory fashion. Lt. John Campanella would testify that within the past 5 years, when Conley was a Captain, she would, in the Headquarters building, publicly and loudly refer to the Executive Staff as "fucking assholes" and other derogatory names. Plaintiff referred to Captain Shamany as a "fucking dyke," who should not be promoted ahead of her. The examples go on and on, and are set forth in detail in the Exhibit.

5. Plaintiff preliminarily objected to Defendants' seeking and/or using this discovery. The Court allowed Defendants to proceed with discovery. Defendants repeatedly offered to make all witnesses available for deposition, but that offer was declined by Plaintiff's counsel.

6. This evidence is highly relevant to Plaintiff's claims that she was best qualified to hold the rank of Major and serve as a member of the Executive Staff and as leader of 700 troopers. It is therefore relevant and admissible under F.R.E. 401 and 402.

7. The evidence is not barred by F.R.E. 404(b) as it is not being offered to prove any propensity or "action in conformity" with Plaintiff's prior misconduct, but is being offered for the proper purpose of evaluating Plaintiff's claims of qualification to hold the rank of Major. Rule 412 also does not apply, as Plaintiff is not claiming to be a "victim" of sexual misconduct, and she has placed her own reputation at issue.

8. The evidence is admissible under F.R.E. 403 as its probative value on the key issue of qualifications is great and not substantially outweighed by "unfair" prejudice.

**WHEREFORE**, for the foregoing reasons and the reasons set forth in Defendants' Opening Brief in support of this Motion, the Court should find that Defendants' evidence as to Conley's on the job conduct is admissible.

                    **DEPARTMENT OF JUSTICE**
                    **STATE OF DELAWARE**


By:  /s/Stephani J. Ballard
     RALPH K. DURSTEIN, III (I.D. No. 912)
     STEPHANI J. BALLARD (I.D. No. 3481)
     Deputy Attorneys General
     Carvel State Office Building
     820 North French Street
     Wilmington, DE 19801
     (302) 577-8400
     Attorneys for Defendants, MacLeish
     Mitchell and Division of State Police

     **LIGOURI, MORRIS & YIENGST**


By:  /s/ James E. Ligouri
     JAMES E. LIGOURI
     46 The Green
     Dover, DE 19901
     (302) 678-9900
     Attorney for Defendant, L. Aaron Chaffinch


DATED: March 28, 2006

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CAPTAIN BARBARA L. CONLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 04-1394-GMS |
| | ) |
| COLONEL L. AARON CHAFFINCH, | ) |
| Individually and in his official capacity as the | ) |
| Superintendent, Delaware State Police; et al. | ) |
| | ) |
| Defendants, | ) |

**CERTIFICATE OF MAILING AND/OR DELIVERY**

The undersigned certifies that on March 28, 2006, she caused the attached, *Defendants' Motion in Limine for Determination of Admissibility of Plaintiff's "On The Job" Misconduct*, to be electronically filed with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Thomas S. Neuberger, Esq.
Stephen J. Neuberger, Esq.
Two East Seventh Street, Suite 302
Wilmington, DE 19801

/s/ Stephani J. Ballard
Stephani J. Ballard, I.D. #3481
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302)577-8400
Attorney for Defendants MacLeish,
Mitchell and State Police