# EXHIBIT

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **BARBARA CONLEY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C. A. No. 04-1394-GMS** |
| | ) | |
| **STATE OF DELAWARE,** | ) | |
| **DIVISION OF STATE POLICE,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants,** | ) | |

## DEFENDANTS' SUPPLEMENTATION OF INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(e)

Pursuant to Fed. R. Civ. P. 26(e), the Defendants State of Delaware, Division of State Police, Col. Thomas F. MacLeish, and Secretary David B. Mitchell make the following supplementary disclosures:

1. The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.

**RESPONSE**:

(a)    Cpl. Thad Boyce (Special Investigations – Troop 2)
834-2630

(b)    Lt. Curt Brown (Troop 5)
337-8251

(c)    Lt. John Campanella (OPR/Accreditation – Delaware State Police Headquarters)
739-5901

(d)     Frank Chandler
        P.O. Box 1008
        Clayton, DE 19938

(e)     Frank Cummings
        RD#5, Box 91 ½
        Laurel, DE 19956

(f)     Lt. Gregory W. Donaway (Troop 3)
        697-2104x301

(g)     Pete Fraley (Homicide - HQ)
        739-2600

(h)     Mark Givens
        18180 McColley's Chapel Road
        Georgetown, DE 19947

(i)     Sr. Cpl. Rebecca (McKnatt) Gulledge (Troop 3)
        697-4454

(j)     Capt. Robert Hawkins (Troop 3)
        697-4454x201

(k)     Tammy Hyland (Planning&Special Projects - HQ)
        739-5969

(l)     Cpl. Debbie Jester (Troop 5)
        337-1090

(m)     Lt. Bob Moses (HTCU - HQ)
        739-2467

(n)     Sgt. Chuck Mullett (Troop 3)
        697-2104x316

(o)     Louis O'Day
        5381 Cedar Neck Road
        Milford, DE 19963

(p)   Capt. James Paige (Troop 9)
      378-5749x211

(q)   Horace Pepper
      Rt. 2, Box 326D
      Laurel, DE 19956-9355

(r)   Lt. Mark Rust (Troop 5)
      337-8252

(s)   Sr. Cpl. Tim Shockley (Troop 5)
      337-1090

(t)   Ronald Thomas
      202 Robinson Street
      Georgetown, DE 19947

(u)   Vernon Thomas
      c/o Martha Claverie
      Office of the Public Defender
      14 The Circle, 2nd Floor
      Georgetown, DE 19947

(v)   Charlie Vickers
      711 Concord Road
      Seaford, DE 19973-4280

(w)   Robert Walls
      502 Masters Lane
      Magnolia, DE 19962

(x)   Carol Warnock (Troop 5 – Secretary)
      337-8253

(y)   Master Cpl. Rodney Workman (Troop 5)
      337-1090

The defendants reserve the right to supplement this list as discovery proceeds in this matter.

DEPARTMENT OF JUSTICE
STATE OF DELAWARE


/s/ Stephani J. Ballard
Stephani J. Ballard, ID #3481
Ralph K. Durstein III, ID #912
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302)577-8400

Dated:  September 21, 2005

I:\ralph.durstein\Litigation\Conley v DSP\Supplementary.Disclosures.doc

# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2005, I electronically filed Supplementary Disclosures pursuant to Rule 26(e) with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following:

Thomas S. Neuberger, Esquire
The Neuberger Firm, P.A.
2 East Seventh Street
Wilmington, DE 19801-3707
tsn@neubergerlaw.com

/s/ Stephani J. Ballard
Department of Justice
State of Delaware
820 N. French Street
Wilmington, DE 19801
(302) 577-8510
Stephani.Ballard@state.de.us

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **BARBARA CONLEY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **C. A. No. 04-1394-GMS** |
| | ) | |
| **STATE OF DELAWARE,** | ) | |
| **DIVISION OF STATE POLICE,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants,** | ) | |

### DEFENDANTS' SECOND SUPPLEMENTATION
### OF INITIAL DISCLOSURES
### PURSUANT TO FED. R. CIV. P. 26(e)

Pursuant to Fed. R. Civ. P. 26(e), the Defendants State of Delaware, Division of State Police, Col. Thomas F. MacLeish, and Secretary David B. Mitchell make the following supplementary disclosures:

1. The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.

**RESPONSE**:

The following responses are in addition to the Answers of Defendants to Plaintiff's First Set of Interrogatories, previously served on plaintiff, which are incorporated herein by reference.

**Captain Robert Hawkins** is Commander of Troop Four. He arrested Vernon Thomas several times in the 1980's. Thomas served as a confidential informant in drug cases, and provided reliable information used to investigate and prosecute drug dealers. Thomas described an incident in 1986 when two troopers, later identified as Barbara Miller [the plaintiff] and Larry Conley, were searching a residence, and Thomas was hiding from them in a bedroom. Thomas heard Miller and Conley on the bed, engaging in a sex act.

Hawkins knew Barbara Conley [then Barbara Miller] in college. They were in the same class at Delaware Technical and Community College – Terry Campus in Dover. They also went through the Delaware State Police Training Academy together in 1982.

He did not serve with her after that. He expressed interest in the vacant Kent/Sussex operations position filled by Major Hughes. Conley would not have been a serious candidate for that position. She had insufficient experience in criminal investigation, and had never held a troop command.

Hawkins suggested to Colonel Chaffinch that Paul Eckrich was the ideal person for the administrative/budget major position. Neither he [Hawkins] nor Conley had the background for that Major position.

**Sgt. Charles R. Mullett** entered the Delaware State Police in 1987 after eight years in the military. He encountered the plaintiff at Troop #5. His very first encounter with the plaintiff was memorable. In his presence, and with several other officers present as well, the plaintiff said to a trooper "I'll suck your dick so good, you'll never go back to your wife". The plaintiff then pinched another male trooper on the buttocks. Mullett was appalled at this behavior, which would never have been tolerated in a male trooper. He repeatedly observed and overheard the plaintiff engaging in such unprofessional behavior.

Mullett would testify that he was on his way home from work in 1989, when he heard a broadcast of a fight in progress a Coverdale Crossroads, a notoriously dangerous area for police officers. Another officer had been dispatched, and Mullett heard the dispatcher repeatedly trying to contact the plaintiff, who was working. The plaintiff finally responded, indicating she was in Bridgeville, and was directed to respond to Coverdale Crossroads immediately. Mullett, with his emergency equipment activated, then observed the plaintiff, without her emergency equipment activated, stopped at an intersection in Bridgeville. She then proceeded toward the scene at a leisurely pace, under the posted speed limit, such that Mullett was forced to pass her.

Mullett was assigned an assault case involving a broken jaw that had previously been handled by the plaintiff. He reviewed medical records that listed the plaintiff by name as the officer contacted by the emergency room personnel. However, a year later, he could find no report or record of arrest. He contacted the plaintiff at Troop #$3, and she had no recollection of the incident. He then investigated, obtained a confession, and made an arrest.

Mullett served briefly under L. Aaron Chaffinch, who was his shift commander. He found Chaffinch to be knowledgeable and professional. He can recall socializing with Chaffinch on one occasion, where he recited "Casey at the Bat" from memory. Chaffinch had a sense of humor, and a remarkable memory, but Mullett never saw him act with disrespect toward women or to anyone else.

Around 1995 or 1996 the plaintiff ordered several troopers, one of whom was then-Cpl. Mike Cosgrove, to witness the removal of furniture she had seized from the dwelling of her brother, Brad Miller. Mullett felt there was no legal basis for this use of Delaware State Police officers.

Another incident involved plaintiff's brother making an obscene gesture to her ("flipping the bird") from a car, after a court hearing involving the estate of their parents. The plaintiff pursed her brother's car in her police car and stopped him in Dover. She then contacted Dover Police and demanded that her brother be arrested. She claimed that his driver's license was suspended, but that could not be verified. The Dover Police officer declined to arrest Miller for allegedly making an obscene gesture. The plaintiff then called Troop #3 and demanded that a Delaware State Police officer be dispatched to arrest her brother. When Sgt. Joe Huttie refused, the plaintiff filed an internal complaint against him. After investigation, the complaint was determined to be unfounded.

Mullett bent a wheelcover on his police car on a curb, in the process of investigating a robbery and recovering a stolen bank bag from a dumpster. He reported the damage to then-Sgt. Homiak and to Sgt. Hitchens of the FAIR team, and was told to do a memo. When the plaintiff learned of the dented wheel cover, she claimed that Mullett should have filed a departmental accident report, and initiated a disciplinary action against him.

Mullett would testify that the plaintiff was not qualified to be promoted to Major.

**Captain Betsy Shamany** was in the recruit class of 1979, three years ahead of Conley. She recalls that she first learned of the plaintiff by reputation. The plaintiff was notorious for her sexual advances toward many male troopers, her unprofessional conduct, and her lackadaisical attitude toward work.

Shamany worked for Internal Affairs from 1994-1999 in the Headquarters building. At that time, the IA offices were just down the hall from the Traffic Section. The plaintiff could frequently be heard, down the hall, fooling around, telling jokes, making comments (including frequent references to her "titties"), and otherwise engaging in inappropriate behavior. Several of the employees complained about the plaintiff's conduct. Shamany thought that the plaintiff's conduct was unprofessional and embarrassing.

Shamany was assigned at Internal Affairs investigation by then-Major Swiski that involved the plaintiff. The plaintiff, while on a trip on behalf of the Delaware State Police, had used a State credit card to purchase a Rolex watch worth several thousand dollars. When she returned, she did not report the purchase. She was confronted with the bill received by the accounting department. She then had her husband issue a check for the amount involved, but the check "bounced". Internal Affairs brought charges against the plaintiff, who requested a hearing, where the charges were substantiated, and she was punished.

Shamany also recalled the Internal Affairs matter arising from the plaintiff's demand that her brother be prosecuted. She readily determined that Lt. Huttie was not at fault, and in fact had made the correct decision in declining to arrest Miller for making an obscene gesture. The complaint was unfounded or unsubstantiated. When Shamany took

the time to explain her conclusion to the plaintiff, Conley "blew up' at her, and she had to walk away.

Shamany had little contact with Colonel Chaffinch.  He did promote her to Captain, although others on her band were promoted first.  She does not believe that Chaffinch discriminated against women, or had any gender bias that affected promotional decisions.  The plaintiff was simply not qualified for promotion to Major.  In Shamany's view, Conley is an "embarrassment" and should not be wearing the uniform.

Shamany knows Major Eckrich.  Conley could not compare to him, in terms of qualifications for the administrative/budget major position.  She does not know Major Hughes as well.  She could not see Conley in the Kent/Sussex administrative position.  Conley lacks special units and troop command experience.  Hughes is more well-rounded in terms of experience, capable of leadership and sound decision-making.

**Lt. Gregory W. Donaway** is in his twenty-seventh year with the Delaware State Police.  He first encountered the plaintiff when he was a Sergeant at Troop #5 in 1991-1992, and the plaintiff was a corporal.  She was one of three women on her shift, doing patrol work.  He does not have any specific recollection of the plaintiff, during the short period they worked on the same shift. She did not stand out at all.

Donaway worked with L. Aaron Chaffinch at Troop #5 in the early 1980's.  They also knew each other from playing softball.  He would occasionally socialize with Chaffinch (due to softball, rather than work).  He recalls Chaffinch having a sense of humor and an amazing memory.  He can recall Chaffinch reciting Limericks on social occasions, but not in work situations.  Chaffinch's humor was not mean-spirited, nor was it directed at women.

Donaway has a long-term friendship with Major Eckrich, and regards him as a top-notch guy, who was extremely well-qualified by training and experience for the Administrative Major position.

Donaway knew R.L. Hughes as a shift commander at Troop #7 in the mid-Nineties.  He did a good job.  He was hard-driven, dedicated officer.

**Carole Warnock** has worked for DSP for 28 years, at Headquarters in Dover, and for 18-20 years at Troop #5.  She is the administrative secretary and "mother figure" at the Troop.  She was friendly with Conley for many years.

She first encountered Barbara Conley at Troop #5 in 1986 or 1987.  They became friends, and attended trooper funerals together.  Conley was very outspoken.  She would boast about her sexual abilities, and her sexual conquests, at work.  She would bump and grind against male troopers with her breasts and her genital area.  She would proposition male troopers.  If she were a male, Warnock believes, she would have been fired long ago for such conduct.  When confronted or disciplined, Conley could become vindictive, and

would retaliate. Many men were simply afraid to discipline her, and tolerated her misbehavior.

Conley was rough and tough as a trooper. She was never a "go-getter", but she knew how to handle herself. She would take an assignment and handle it. She was not ambitious, and she had performance issues and disciplinary problems. Conley was irate at not being promoted to sergeant sooner. She keeps volumes of documents from work in her garage, in boxes that are lined up on the garage floor.

Conley had a good relationship with Aaron Chaffinch. However, when Chaffinch was promoted to Superintendent, Conley said to Carole, "that was a mistake".   He and his wife were at Conley's house for parties. Carole recalls one such occasion when she, Aaron and his wife Karen, Roger Willey and his wife, Glenn Dixon and his wife Amy were present. Chaffinch was telling jokes, but none of a sexual or racial nature or off-color. No one was offended. Carole never heard or saw any improper conduct on Chaffinch's part, and never heard him say anything derogatory about women. He is not a sexist or a racist.

It is laughable that Conley would claim offense from joking or banter. She engaged in potentially offensive conduct herself, all the time.

There is no comparison between Conley and Major Hughes or Major Eckrich, in terms of ability on the job. Conley lacks "people skills". She is not as well educated or as well trained as them. She has poor judgment.

Shortly after Carole learned of Conley's lawsuit, in November of 2004, on Civilian Appreciation Day, she asked Barbara about it. Conley said "if those SOB's think they're gonna fuck me…" She then left the Troop, and got into a car with Glenn Dixon in the parking lot.

**Lt. Curt Brown** has been with DSP for 22 years, and is now a lieutenant at Troop #5. He likes Conley, with whom he worked until 1989, but feels that her lawsuit is "over the top". He recalls that her work ethic was bad. She was lazy and didn't want to handle complaints. She is good at reports. He would not consider her qualified to be a Major.

Conley says things you would be shocked at. Every conversation Conley has seems to involve sex. She has to top everybody in terms of smuttiness. She would take the lead in the sexually based conversations. He hasn't seen Conley grab or grope others but has seen her grab her own breasts. In 2003 Mark Rust, Brown and Barbara Conley went down to see now-Captain Glenn Dixon at the FBI Academy. It was a smutty conversation all the way down. They were talking about a female trooper, who is attractive, who had recently left the force. Whenever anyone would talk about another woman it was always a negative reaction from Barbara Conley. This trooper's name was Dawn Perry. Conley said "she isn't nothing. I'd rather eat Donna's or Tammy's pussy than hers." Donna and Tammy were the names of Brown and Rust's wives. Conley always has to talk about sex. Over the years she has told Brown "you could have had it"

"you had you chance" meaning sex with her. Her reputation is very bad. She is vindictive.

Brown has worked with Major Hughes at Troop 5 and with Major Eckrich at Troop 4. Hughes. is aggressive and a good trooper. He will get wound up and butt heads, but he doesn't hold grudges. As to the Kent/Sussex position, R. L. is definitely more qualified than Conley, as are many other Captains. Brown cannot say enough about Paul Eckrich. He fully expected him to have the administrative/budget Major job. Eckrich clearly has the qualifications for this job.

Lieutenant Brown is responsible for the "hooded merganser" nickname. Conley, Dixon, Rust, Rich Dennis and another officer went to an FBI lunch with Chaffinch. Barbara Conley was not even in the same car as Chaffinch and Rich Dennis when Brown came up with the hooded merganser remark. Brown has never heard Aaron Chaffinch himself say hooded merganser. Brown takes full responsibility for the nickname. Chaffinch has a sense of humor, but tells Limericks at parties, not at work. He has never heard Chaffinch make negative remarks about women or female troopers in any setting. Barbara Conley finds fault with all women. She always wants to be the center of male attention.

**Lt. Mark Rust** has been on the job since September of 1984. He went to high school [Sussex Central] with both Eckrich and Hughes. He worked at Troop #5 as a traffic sergeant with Conley as his lieutenant. He also worked as a K-9 officer with Conley's shift at Troop #7.

Eckrich and Hughes have very different personalities, but both very capable. Eckrich is well-respected, thoughtful, educated. He was groomed by Col. Ellingsworth to be a manager with financial and accounting expertise and to handle budget issues. He is an excellent worker and has experience with many different DSP operations. Hughes is a "workaholic" who "lives and breathes being a trooper". Rust worked for him at Troop #5 with no problem. Hughes is very well-respected.

Conley would not be the first choice among Captains for the Kent/Sussex operations Major position, based on resumes. She could probably do the job, but not as well as Hughes. Hughes was involved in many more operations, such as special units, and brings more to the table. As Major he must deal with criminal investigation units at Troop #3 and Troop#4, as well as SORT and drug unit. He has been there. She has not.

Conley as a sergeant had good instincts, and took care of her people. She was a good test-taker. She was ambitious as far as promotions, but not as to special assignments. Her niche seemed to be traffic and administrative work, not in the field. She was not a well-rounded trooper. She was never a "ball of fire" in the field. Her work habits were not good.

Conley was vulgar and could "hang with anybody' as far as language and not be offended. In 1999 or 2000, at Troop #5, Conley initiated a conversation about penis size. Debbie Jester later mentioned it to Rust, because she could see he was embarrassed.

Aaron Chaffinch is a jokester with a photographic memory. He would never intend to offend anybody with his humor. He would never have dreamed that Conley would be offended. He trusted her, and she has tried to sabotage his career. Rust has never heard Chaffinch make derogatory remarks about women. His attitudes probably adapted and changed over time, and the promotions he made reflect that.

**Rep. Pete Schwartzkopf** worked with Barbara Conley for many years at Troop 5 as her superior officer. She was never a worker. Not a good employee. Numerous times she wouldn't answer her radio. At one point when Schwartzkopf was her Sergeant she had not answered her radio and SussCom complained that she would ignore radio dispatches. After one of these incidents, he took Conley out to her car and had SussCom call and the radio worked fine. She then said she hadn't heard it. He took her in the back and chastised her, not in front of anyone else. He told her that he knew about her having affairs with other officers but that she had no such leverage over him, and she was to get her ass out there and do her work and answer her radio. The next day she went out and produced more than anyone else. This lasted about one week and then she got lazy again. He believes Barbara Conley should never have been promoted to Captain.

As to qualifications for Major, it is entirely discretionary on the part of the Colonel. This makes sense. The Superintendent ought to be able to pick his or her top people. Schwartzkopf thinks highly of Paul Eckrich and says he was the best one for this job. R. L. Hughes is in a different league than Barbara Conley. Traffic is a comparatively easy administrative job. In order to advance you should be in special units and having a Troop Command is a plus. It is not just your qualifications or what you have done, but in terms of making someone a Major, you have to choose someone whom people trust and respect.

He recalls another incident when he was Lieutenant and Conley was supposedly home sick. They went to pick up the police car assigned to Conley, and she was not home. When they brought the car back they found two-week-old stolen property in the car, evidence laying around in the car, initial reports that were never written or filed, and stolen knives lying on the seats (in a car used to transport suspects). Schwartzkopf initiated an IA investigation of this. As a result, Conley became extremely angry about troopers taking "her car" (a DSP car). Immediately afterwards Schwartzkopf got transferred to Troop 7.

There was an incident where Conley grabbed Schwartzkopf in the crotch at Troop 5. There was another incident at the State Fair when she ran her hand up his shorts.

Schwartzkopf has never heard Aaron Chaffinch make derogatory remarks about women in the work place. He did tell jokes. He was the "class clown" and always wants to be funny. Barbara Conley was one of the people who would ask him to tell the jokes.

**Pete Fraley** has been on the job since September of 1984. He worked the same shift as Conley in 1985. She would not answer radio calls. She was basically lazy, and avoided work. He recalls responding to a minor motor vehicle accident involving an elderly lady, and seeing Conley sitting in her car, just three-tenths of a mile away. This was typical.

Once she was called by SussCom to respond to a report of a man lying in a field. She refused, and told them to send somebody else. The guy had been beaten by three guys from New Jersey, and later died. The case was investigated by Mike Warrington as a homicide. This was a serious neglect of duty.

He finds it incredible that Conley, of all people, would complain about language or conduct. She was as graphic and vulgar as any of the men, and would initiate the teasing and humor. Once, early in 1985, in the old Troop #5, Conley was bragging about her ability to give blowjobs, and specifically mentioned "Randy", a dispatcher at SussCom who worked part-time with the Selbyville Police Department. Conley reached over and grabbed him in the crotch, twice. He recalls her rubbing the upper leg of Glenn Dixon in 2003, at Headquarters.

John Owings gave her the nickname "Puss in Boots". She laughed when he said it. She used the name herself. She enjoyed being the center of attention, and could not be offended.

Four years ago, at the State Fair, there was a report of a rape that had occurred back along the railroad tracks. Conley was with another woman [not a police officer] in the parking lot. Conley remarked "that bitch needed a good fucking". Fraley was stunned, and the other female was clearly offended and upset.

Aaron Chaffinch was in the drug unit when Fraley started at Troop #5. He did not socialize with him, and had little contact on the job.

R.L. Hughes worked on the same shift with Fraley at Troop #5. Hughes was a good worker who loved writing tickets, and was very competitive. He rose quickly through the ranks, and tested well. He can be abrasive, and was called "Little Hitler". He does not bear grudges. There is no comparison between Hughes and Conley in terms of qualifications for the Kent/Sussex Major position. Hughes was well-qualified. Others such as Tim Winstead, Bob Hawkins, and John Laird, were better qualified than Conley for that position.

Fraley has known Paul Eckrich since they both were involved in youth work at different troops. He worked for Eckrich when Paul was Troop Commander at Troop #5. It was great to work for him; a breath of fresh air. Paul was the most qualified person to assume the administrative/budget major position. It is critical that such a person have experience as a troop commander.

**Mark Givens** retired from DSP in 1987. He presently works at First State Chevrolet. He started on the job in 1973, and was assigned to Troop #5 in Bridgeville from 1974 to 1984. He recalls Conley as a rookie trooper. She cursed like a sailor, and coarse language was not offensive to her. She would tell jokes with sexual references in mixed company. She would boast of her sexual conquests. She had a particular fascination with blowjobs. This kind of behavior was consistent, not occasional. She was not a good cop. She did enough to get by. She was not a thinker. He would not give her a tough assignment.

**Ron Thomas** served with the State Police from October of 1977 to March of 2003. He was in Colonel MacLeish's class at the Academy. He likes Barbara Conley and Aaron Chaffinch. Conley started out okay, but after two or three years, did not work as hard or as steady. She earned a reputation for being lazy, and not ambitious. She was a good supervisor, and looked out for her people. But she did not "broaden her horizons' at any time. In order to qualify for promotion, a trooper needs road time, time in a special unit, then back to the road as a senior corporal or shift commander, sergeant, and then additional special unit experience.

R.L. Hughes and Paul Eckrich were both guys who busted their tails, worked extra hours. They were go-getters and hustlers. In contrast, Conley was simply not as well-rounded or as educated or as hard-working.

**Bob Walls** served with the Delaware State Police from 1971 to 1992. He was an instructor at the Academy when both Chaffinch and Eckrich came through. He worked with Conley while a Lieutenant and later as Captain and Troop Commander at Troop #5, but he did not have much contact with her.

He has a distinct memory of Chaffinch at the Academy. He was athletic, and clearly had potential. He also had a sense of humor.

**Alice Bailey** was promoted to Lieutenant by Aaron Chaffinch in August of 2003. She started at Troop #5, and has worked with both Chaffinch and Conley. Conley was nice and helpful when Bailey was new. Bailey had no sense – one way or the other – as to Chaffinch's attitudes toward women.

Bailey was an English/Journalism major in college, and has taught report-writing at the DSP Academy. She worked for a while at Headquarters, as an administrative aide to Colonel Pepper and then Colonel Chaffinch. Chaffinch said he would not recommend her for the traffic lieutenant job, working with Conley, in 2004. Bailey was not interested in this position. She preferred returning to the road and criminal work to traffic.

She knew that Major Hughes was intense, fast-paced, and particular about how things are done. She was surprised by the "Little Hitler" nickname, because it was not in character. She regarded him as businesslike and fair. Hughes was one of her Field Training Officers. He was impatient with her and wanted her to speed up. After her first hands-on experience, he was very reassuring.

She understood that Conley was not someone to emulate in a predominantly male profession. You need to keep your distance.

**Melissa Zebley** has been with the Delaware State Police for fourteen years. She spent six years in patrol, four years at the Academy, and then became a patrol sergeant at Troop #1. She is presently the Public Information Officer for New Castle County. In 2004 she had a temporary duty assignment with the Internal Affairs Unit, and worked on the investigation of Colonel Chaffinch.

She worked with Chaffinch when he was the Lieutenant Colonel. He was pleasant and down-to-earth; and did nothing inappropriate. They were on a first-name basis. He had a sense of humor, but did not say anything inappropriate. They had no negative interaction.

She has had little or no contact with Conley. She has heard stories about her. Conley's style and reputation would not be the path of choice for a female trooper. A better role model would be Captain Shamany or Captain Papili. She regards those officers as mentors. Promotion is a competitive process, and it can be difficult to be one of the few women.

She worked with R.L. Hughes at the DSP Academy. They had a professional friendship. He acted as a mentor, and treated her very fairly.

**Susan Jones** started with the Delaware State Police in September of 1988. She was promoted to Sergeant by Colonel Chaffinch in 2003. She is currently a detective assigned to Troop #2. She has worked in major crimes for seven years. She has had a great career; has been treated fairly; has no complaints. She had no contact with Chaffinch before her promotion. She was promoted off of the "C" Band in the second round of promotions. She thought that the process was fair.

**Mary Ann Papili** is a State Police Captain, and the former Troop Commander of Troop #6 in New Castle County. She was promoted to Captain by Colonel Alan Ellingsworth. She now works in Information Technology at Headquarters.

She did not have a high regard for Aaron Chaffinch as Colonel. She recalls that he was disciplined for telling an inappropriate rude joke an in-service training when he was a Major. Chaffinch took care of his friends, including Barbara Conley. Conley was close to Chaffinch for a long time, and they were partners at the SOAR retreat in 2003.

She was "mortified" by Conley's crude behavior and language at the Academy. Conley has very poor verbal communication skills. Conley attacks other women and is condescending, vindictive, and rude to female police officers. She does not deal with hard issues, but pushes them off to other people, a technique of "dump and blame". Conley told her that she will argue in her lawsuit that she is "a product of her environment".

Both Eckrich and Hughes were more qualified than Conley for promotion to Major. Eckrich had commanded a Troop, and had ample patrol and criminal experience. R.L. Hughes had lots of operations experience, and knew Sussex County and its politics well. Conley had no operations or command experience. She had basically stayed with traffic her entire career. Conley seemed to assume that Chaffinch would promote her to Major. It would be upsetting for Conley to be the first female Major.

**Rebecca McKnatt** could not be interviewed, as she is represented by counsel in a matter adverse to the Division of State Police that is not yet fully concluded.

**John Campanella** and **Tammy Hyland** would testify consistent with their sworn testimony at Conley's disciplinary hearing.

**Debbie Jester** and **Roger Willey** are to be interviewed next week. Each is expected to be familiar with the plaintiff's mediocre performance as a police officer.

**Horace Pepper** and **Frank Cummings** are retired officers who have not been located.

**William Dudley** was plaintiff's supervisor at Troop #5, and would testify as to his evaluations and disciplinary actions against plaintiff, as set forth in her Troop file, that were the subject of questions at her recent deposition. Likewise, **Mike Warrington** and **Joe Huttie** are potential witnesses who were identified for the first time as a result of the Troop File materials provided by plaintiff's counsel at the Hughes deposition on December 2, 2005. Defense counsel expect to interview these individuals next week. It is anticipated that they would confirm the statements made and actions taken, as reflected in the documents contained in plaintiff's Troop File.

The defendants reserve the right to supplement this list as discovery proceeds in this matter.

DEPARTMENT OF JUSTICE
STATE OF DELAWARE

/s/ Ralph K. Durstein III
Stephani J. Ballard, ID #3481
Ralph K. Durstein III, ID #912
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302)577-8400

Dated:  December 15, 2005

I:\ralph.durstein\Litigation\Conley v DSP\Supplementary.Disclosures.doc

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2005, I electronically filed Defendants' Second Supplementation of Initial Disclosures pursuant to Rule 26(e) with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following:

Thomas S. Neuberger, Esquire
The Neuberger Firm, P.A.
2 East Seventh Street
Wilmington, DE 19801-3707
tsn@neubergerlaw.com

/s/ Ralph K. Durstein III
Department of Justice
State of Delaware
820 N. French Street
Wilmington, DE 19801
(302) 577-8510
ralph.durstein@state.de.us

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

BARBARA CONLEY                )
                              )
        Plaintiff,            )
                              )
        v.                    )       C. A. No. 04-1394-GMS
                              )
STATE OF DELAWARE,            )
DIVISION OF STATE POLICE,     )
et al.,                       )
                              )
        Defendants,           )

## DEFENDANTS' THIRD SUPPLEMENTATION
## OF INITIAL DISCLOSURES
## PURSUANT TO FED. R. CIV. P. 26(e)

Pursuant to Fed. R. Civ. P. 26(e), the Defendants State of Delaware, Division of State Police, Col. Thomas F. MacLeish, and Secretary David B. Mitchell make the following supplementary disclosures:

1. The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.

### RESPONSE:

**Lt. Huttie** was interviewed by counsel on December 19, 2005 at Troop #3. He is a veteran of 23 years with the Delaware State Police. He is presently the Traffic Lieutenant at Troop #3. In his career, Lt. Huttie has worked as a detective, in the Criminal Investigative Unit, in Homicide, and also spent two years with Internal Affairs. He had contact with Captain Conley when she was assigned to Troop #3 as Traffic Lieutenant.

Lt. Huttie became involved in the incident arising from the plaintiff's insistence that the Dover Police stop her brother's car and charge him with a traffic or misdemeanor offense. There was no justification for any such charges, and it was improper for a police officer to attempt to use her position for family/personal purposes. Lt. Huttie intervened to prevent Conley from pressing charges through Court #7. He contacted the trooper on duty at the Court. He also spoke to Conley, and advised her that the criminal complaint she sought would not be entertained. He advised her, with respect, that this was an embarrassing situation, that should be addressed the following day. When Conley

became irate, Huttie then contacted Captain Warren, then the Commander of Troop #3. Larry Conley subsequently filed an Internal Affairs complaint against Huttie, which was determined to be unfounded.

Huttie also recalls that Conley had the furniture seized from her brother's house stored at Troop #3. As the furniture was not evidence or contraband, this was an improper use of the facilities.

Huttie's association with former Colonel Chaffinch was only at the professional level. They did not socialize. He never observed anything inappropriate in Chaffinch's behavior.

Huttie recognizes that diversity in assignments and experience would be desirable for a police officer seeking an executive staff position. This is true both in terms of accepting an undesirable transfer "for the good of the order", and in gaining experience working with special units under difficult conditions. This is something that Conley has failed to do. Her experience is mainly in the traffic area. She lacks the proper background for a Major position. Moreover, she has a poor reputation and does not carry herself well.

Huttie has not seen much of Conley since she took her job at Headquarters. There have been delays and problems in getting needed materials and support from the Traffic Section. She has missed quarterly DelDOT traffic management meetings, held among the various police agencies and firefighters. There have been problems in notification by the Traffic Section of the locations of DUI checkpoints.

**Lt. Michael Warrington** was interviewed at Troop #4 on Tuesday, December 20, 2005. He is in his twenty-ninth year with the Delaware State Police. He served at Troop #5 in the early 1980's, and had contact with Conley while there. He has been a detective, worked in the Homicide Unit, and as a criminal lieutenant at Troop #3 and Troop #4, the latter position since 1995.

He is a good friend of Aaron Chaffinch, and they socialized as shiftmates. He saw no evidence of any bias on Chaffinch's part toward women. Chaffinch was friendly toward Conley, and they seemed to get along well. Chaffinch would recite jokes from memory, but nothing malicious. Conley was as racy in her comments as any male trooper. She was never offended. She would "come on" to male troopers with lewd comments. She would initiate this activity. Sometimes the men were embarrassed by it. Huttie found it humorous that Conley would ever complain about vulgar humor, given her own conduct.

Conley was not a model trooper; not a "ball of fire". He would regard her as a marginal employee at Troop #5. She was not ambitious, and did not apply herself. She was not a good example for other female troopers. There was probably some hesitancy to discipline her, because she was a woman.

Paul Eckrich was well-liked and well-respected as Troop Commander. Huttie enjoyed working with him. Huttie did not always see eye-to-eye with R.L. Hughes. His nickname of "Little Hitler" was earned, deserved. But he worked harder than anyone else, and always had the good of the order in mind. Both Eckrich and Hughes were head and shoulders above Conley in terms of promotion to Major.

**Debbie Jester** has been on the job for eight and a half years. She started at Troop #7, and then worked as Field Training Officer at Troop #4 and Troop #5. She now is in uniform patrol at Troop #5. She recalls Conley as Traffic Lieutenant at Troop #5. Conley had a very vulgar mouth; worse than any male. Many of her vulgar comments were made with females present. She would initiate the sexual remarks, and others would have to just ignore her.

It can be tough being a female trooper in a man's world, but it is not necessary to behave in that fashion. Jester has not taken the approach that Conley has taken. She has always gotten along well with the other female officers at the Troop, but not with Conley. Conley would not be an appropriate role model for a female trooper. She has made women look bad. Her conduct was unprofessional. She has not been good for females in the State Police.

Aaron Chaffinch is a true Sussex Countian. Their families have been friendly for years. Jester was initially unhappy with Chaffinch, when she was not hired by DSP after her first interview, but harbors no resentment. Chaffinch likes to joke around, but she never saw any disrespect toward women in his humor. She did not take any of the joking as offensive. Chaffinch would stop by Troop #5 with his family. He was raised to respect his mother and all females.

Paul Eckrich was a Criminal Lieutenant at Troop #5. He is very down-to-earth, quiet, easygoing. He keeps a very low profile. R.L. Hughes could be "anal" about things. Jester has told him to "chill out". He eats, sleeps, police work 24/7 and would frequently respond from home to incidents he overheard on the police radio. He was always a "go-getter". He pursued his education, including a master's degree. Hughes and Eckrich would be better qualified for the Major positions than Conley. Conley was nonchalant about work.

The defendants reserve the right to supplement this list as discovery proceeds in this matter.

DEPARTMENT OF JUSTICE
STATE OF DELAWARE

/s/ Ralph K. Durstein III
Stephani J. Ballard, ID #3481
Ralph K. Durstein III, ID #912
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302)577-8400

Dated:  December 21, 2005

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **BARBARA CONLEY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C. A. No. 04-1394-GMS** |
| | ) | |
| **STATE OF DELAWARE,** | ) | |
| **DIVISION OF STATE POLICE,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants,** | ) | |

## DEFENDANTS' FOURTH SUPPLEMENTATION
## OF INITIAL DISCLOSURES
## PURSUANT TO FED. R. CIV. P. 26(e)

Pursuant to Fed. R. Civ. P. 26(e), the Defendants State of Delaware, Division of State Police, Col. Thomas F. MacLeish, and Secretary David B. Mitchell make the following supplementary disclosures:

1. The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.

**RESPONSE:**

**Louis O'Day** is a retired trooper with the Delaware State Police. He served for many years at Troop #5 and was Barbara Conley's supervisor at that Troop. He would testify as to her evaluations, discipline and counselings while she worked under him at Troop 5. He can also speak generally as to her work ethic, reputation and conduct while he worked with her. He can also speak to her own use of crude or explicit humor in the workplace, and that she was not and would not be offended by such conduct on the part of others. He would also speak to disciplinary and other incidents in which he was involved, as reflected in Plaintiff's "troop file." O'Day is also familiar with retired Colonel Chaffinch and would testify that has not observed behavior which is demeaning to women on Chaffinch's part.

**The following five witnesses were identified by Plaintiff in her initial disclosures, and have been interviewed by counsel for State Defendants:**

**Retired Lt. Col. William Waggamon** served 26 years with DSP. When he was a Major, Aaron Chaffinch was Director of Traffic at Headquarters. They had limited interactions, but Waggamon never personally observed any improper behavior on Chaffinch's part. Chaffinch was always reciting things from memory or telling stories or limericks. Waggamon was present when Chaffinch was counseled one time in early 2002 about telling an inappropriate joke at an in-service; he believes that Chaffinch was reprimanded but not formally disciplined. Barbara Conley had a reputation for crude humor and conduct, but he did not witness this first hand. Waggamon was in charge of IA for 3 years and may have worked on some of matters concerning Barbara Conley, but he does not recall specifics. Waggamon did not handle the matter concerning the Rolex watch, but he did speak with Conley about this matter and how her conduct was improper. Waggamon said that Conley was respectful at the meeting however, he heard that, following the meeting, she went down and complained to IA and to others in the office, calling Waggamon names. During his tenure at DSP, women were definitely treated on par with men, and there was an effort to retain and promote women troopers.

**Joseph Swiski** retired as a Major from DSP. He does not think that Conley would have been a good choice for promotion to a Major position, such as those filled by Eckrich and Hughes. He believes she lacks the ability to take over such a position, and she had a poor reputation with the Division. Swiski recalled the Rolex watch incident, which he regards as a very serious mistake. In particular, he cannot imagine how Conley managed to compound the error by bouncing the check repaying DSP after she was confronted about the purchase.

**Harry Downes** now serves as a Major with DSP, and would testify consistent with his deposition, previously taken in this case.

**Retired Col. Alan Ellingsworth** served 24 years with DSP, and served as Colonel from 1994–1999. He did not have a lot of contact with Aaron Chaffinch (the Troop 5 Commander when he was Colonel), but never observed any improper conduct. Ellingsworth did discipline Aaron Chaffinch for an incident during a retirement party when a female trooper removed her top. Ellingsworth disciplined the female trooper, another Sergeant, and Chaffinch, who was probably a Sergeant at the time. He does not recall receiving any other problems or complaints about Chaffinch. Ellingsworth had very few dealings with Barbara Conley but heard "the usual rumors" about her conduct. He does remember the incident with the Rolex watch. Ellingsworth worked very hard to make sure women were treated professionally and tried to promote qualified women. Ellingsworth believes that having a troop command is very important to advancement, and that if an officer turned down a troop command this would raise "red flags" as to future promotions.

**Nate McQueen** is a Captain with DSP; he was promoted to this rank by former Col. Chaffinch. He has not had much contact with Barbara Conley but believes she was part of the downstate "in crowd." He has heard rumors about her, including that she can be vindictive and "cliqueish." Chaffinch may have made some jokes at Commanders'

meetings, but nothing McQueen found personally offensive. McQueen never heard any specific complaints from female officers to him about Chaffinch. McQueen is not aware of any biased decisions by Chaffinch, but is of the personal opinion that Chaffinch made too many promotions overall. As to Hughes and Eckrich, McQueen never worked with them, but believes that because they held Troop Commands, and Barbara Conley never did, she would not be have been as qualified as they were for promotion to the rank of Major.

The defendants reserve the right to supplement this list as discovery proceeds in this matter.

DEPARTMENT OF JUSTICE
STATE OF DELAWARE

/s/ Stephani J. Ballard
Stephani J. Ballard, ID #3481
Ralph K. Durstein III, ID #912
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302)577-8400

Dated: December 27, 2005

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **BARBARA CONLEY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C. A. No. 04-1394-GMS** |
| | ) | |
| **STATE OF DELAWARE,** | ) | |
| **DIVISION OF STATE POLICE,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants,** | ) | |

## DEFENDANTS' FIFTH SUPPLEMENTATION OF INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(e) AND SUPPLEMENTATION TO PLAINTIFF'S 1st SET OF INTERROGATORIES TO DEFENDANTS

Pursuant to Fed. R. Civ. P. 26(e), the Defendants State of Delaware, Division of State Police, Col. Thomas F. MacLeish, and Secretary David B. Mitchell make the following supplementary disclosures:

1. The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.

**RESPONSE**:

The following individuals have been interviewed by counsel for Defendants, and would testify as follows:

**Tammy Hyland** is a civilian employee who has worked in the Planning Unit at Headquarters since 1990. Planning interacts quite a bit with the Traffic Division. She has always worked in the vicinity of Barbara Conley's office. Conley would make inappropriate comments on a daily basis. It seemed that every conversation would turn to sex. Hyland was and is uncomfortable with this behavior and has tried to limit her contact with Conley to e-mail. Ms. Hyland stated that Conley regularly reports to work late and misses deadlines. She does the minimum work required or passes the work off to someone else to complete.

Ms. Hyland was initially concerned about retaliation due to her testimony at the IA hearing. She stated that she has not experienced retaliation, however, Conley rarely speaks to her. Conley has done little things to undermine Hyland such as not telling her about a meeting she was supposed to attend.

Ms. Hyland worked with former Colonel Chaffinch at Headquarters for many years and does not recall hearing any derogatory comments about women or any other derogatory comments at all from him.

She has also worked with Paul Eckrich and R.L. Hughes. Hyland believes that Paul Eckrich is an excellent choice for Major, and a much better choice than Captain Conley. He is professional and is well respected while Conley is neither. Major Hughes is also very well respected both personally and professionally, and is better qualified to be a Major than Conley.

**Lt. John Campanella** has been employed with DSP for about 20 years. He has worked at Troop 6, in the undercover/drug units and the vice unit, as well as in the Traffic section with Captain Conley. During the IA investigation of Captain Conley he was transferred to Intelligence/Homeland Security. He currently works in Inspections.

Campanella arrived at Headquarters shortly after Captains Hughes and Eckrich were promoted to Major. Conley was very angry about the promotions and often publicly referred to them, as well as the rest of the executive staff, as "fucking assholes", "fucking dickheads," and "fucking jerk offs". When given an assignment by one of the executive staff, she would comment to her staff that "if they wanted me to do this they should have promoted me instead of those fucking assholes." He also heard he say, after Major Hughes' promotion, "if I don't get promoted to the next Major slot, they better watch out." She would make negative and/or profane comments about the executive staff almost daily. He heard Conley say that she "had dirt" on people, meaning that people shouldn't mess with her.

When Campanella worked with her, Conley created a hostile work environment. She would grope her breasts frequently and would "accidentally" brush her breasts against him in his office and the hallway. She would also suggest that they had just had sex when exiting her office by adjusting her clothes and make inappropriate comments.

Janet Vetter is a recently deceased civilian employee who worked in the Traffic Division for many years. Campanella visited Janet several times when she was in the hospital dying of cancer, as did Elisa Vassas. Janet told Campanella that she wanted him to know the truth about Barbara Conley and that "she could not die" with this on her mind. Janet told Campanella that Barbara Conley had it in for him from the beginning because she knew he wouldn't sleep with her. Janet Vetter also said that Barbara Conley would come into the office and talk about her sexual relations with various men in explicit detail. Conley would also say things to Janet such as that an outfit "makes your tits look really nice." This made Janet very upset and uncomfortable and she was actually afraid for her job. Janet said that Conley had managed to get Glenn Dixon and another trooper in the department to sleep with her and Janet could tell when it happened because of a sharp change in demeanor with both of them.

When Campanella worked with Conley, she would spend hours on the phone on personal phone calls, mostly with Glenn Dixon. The nature of her job did not require long hours on the phone. You could rarely get in to talk to her because her door would be shut for hours. Conley would routinely report to work late at 10:00 or 11:00 a.m.

**William Dudley** retired after 21 years with Delaware State Police and is currently serving as the Chief of the Dagsboro Police Department. He worked at Troop 5 with Barbara Conley and Aaron Chaffinch as both a Sergeant and a Lieutenant.

He stated that you had to keep an eye on Conley to make sure she got her work done. He remembers a meeting with her in 1988 during which she specifically told him that she would be

filing a law suit saying that she was being "discriminated against." She then told him not to worry about this, it had nothing to do with him, she stated that she just said this aloud because she knew he would document it and that people would see it. She actually never complained about any particular individual(s) "discriminating against" her. Dudley set up a meeting for her with John Dillman because of what she said.

Various troopers reported to Dudley that Conley would pull them into her breasts all the time, however Dudley never personally witnessed it.

Dudley remembers Aaron Chaffinch telling jokes, as did all the troopers, in the back room or the parking lot, but nobody was offended by anything he said. He recalls that the vast majority of Aaron's jokes were not sexual or racial in nature. Chaffinch and Conley were friends and got along great at the troop. Chaffinch was the Troop's "pick me up guy," because of his humor. He remembers nothing vulgar or derogatory from Chaffinch and nothing negative pertaining to women. In his entire tenure at DSP, he does not recall Chaffinch (or any other trooper) saying anything negative about women as troopers.

Dudley described being promoted to Major as "a whole new ballgame" from lower level promotions. It is strictly discretionary on the part of the Colonel. You serve at the will of the Colonel. Dudley strongly believes that being a Troop Commander is an asset to becoming a Major. It is imperative that you learn the whole system and have experience in a wide variety of units. For an Operations Major, such as Major Hughes' position, the candidate should have been a producer when he or she was a young officer. Because you are commanding others to get more done, your own reputation in that regard is very important. Your reputation stays with you. Women, during his tenure, have had the same opportunities as men and, in fact, State Police wanted the visible presence of women on the force.

Dudley worked with Paul Eckrich at Troops 7 and 4 and thinks he is a great person and trooper. Eckrich is a people person and "a human math machine." His qualifications speak for themselves. He is very fair and willing to help everyone.

R.L. Hughes is a "working fool." He is incredibly productive, very dedicated and, while he can rub some people the wrong way with his work attitude, he tries to treat everyone fairly. In the early years, whenever the troop productivity would be down in any particular area, they would just move R.L. to that area and get their numbers up. R.L. is more qualified to be Major "hands down" than Conley.

**Sgt. Rodney Workman** is currently working out of Troop 7. He has also worked at Troop 5, was on the FAIR team, special investigations, and on the Governor's Task Force out of Troop 4. He worked with Barbara Conley, including on her shift in the early 1990s. Conley was lazy and did the bare minimum to get by. Workman recalls that Conley would talk about sex all of the time. He recalls one incident when Conley was working the desk at Troop 5 in the early 90s. Workman walked in and she spun around in her chair and said "I've been told I give the best blow jobs in Sussex County." He just said "is that so" and left as quickly as he could. She was his superior officer at the time and this made him extremely uncomfortable.

Workman thinks having a wide variety of experience is important to being a Major. Having a troop command is a definite asset to being Major.

Workman has heard some limericks, but never anything offensive from Aaron Chaffinch. He has never heard Chaffinch say anything derogatory about women. He recalls Conley and Chaffinch as being friends at Troop 5.

Workman is friends with R.L. Hughes. Hughes is a "go getter" and Workman is not surprised that he has made Major. He believes Hughes got the job because of his work ethic. He is a very good trooper, very loyal, a big producer, however he can also be abrasive. Workman is familiar with Paul Eckrich's accounting background, which is a perfect fit for his position.

In recent years, Workman has been on the desk many times at Troop 5, and Barbara Conley calls Glenn Dixon's private line almost everyday. Conley would always work with Glenn Dixon at the State Fair, and would ride around in her golf cart with him all night, after hours.

**Lt. Roger Willey** has been a trooper with DSP since 1984. He has worked at Troop 5, as well as at Headquarters in the Traffic Division with Captain Conley. When he worked with Conley at Headquarters, Lieutenant Dixon was the Traffic Lieutenant, and Willey's supervisor. Conley and Dixon would be in her office every afternoon for hours behind closed doors. Conley is still very close to Dixon. They are always together at events.

Lt. Willey remembers Conley being upset about the promotions of Hughes and Eckrich. She felt she should have been picked instead. She said nothing about gender but he did hear her say she would sue if she didn't get the next promotion. She would say all of this out in the open. She acted like she felt entitled to the promotions.

Willey did not really have any negative interactions with Barbara Conley at Headquarters. As Director of Traffic she did some things well and some things poorly. Willey does remember that she would always come in late at 10:00 or 10:30 a.m. in the morning, which he thought was a bad example to the civilians who were always there by 7:30 or 8 a.m.

In the early years, Conley acted and was viewed as "one of the guys" in terms of her language and conduct while at Troop 5. She didn't carry her weight in terms of workload, was a marginal trooper and would not take any initiative. Conley was very vocal about sex. Willey wasn't offended but he was surprised at some of her rough language and conduct.

Lt. Willey worked for a period of time as an assistant to Aaron Chaffinch at Headquarters. He never saw any bad behavior by Chaffinch. He does remember Aaron telling jokes and some limericks from the early days at Troop 5, when guys would be sitting around the table. He never heard Aaron say anything detrimental about women troopers. Aaron treated everyone well.

Willey was with the group that stopped at the bar coming back from the FBI crabfeast, which included Conley and Chaffinch. Lt. Willey never heard Aaron use the term "hooded merganser" that day or ever. Aaron said nothing to the waitress at the bar and did not engage in any off color conduct.

Paul Eckrich has a great reputation; he is quiet, competent and well liked. He is well respected. By contrast, Conley is not respected at all because of her behavior and because of how she would openly bad mouth the executive staff at Headquarters.

**Retired Major Joseph Forrester** retired from DSP in 2000. He served at Troop 5 and Troop 7 (both as Commander). Forrester also served as the Kent/Sussex Operations Major.

Forrester worked with Barbara Conley for many years at Troops 5 and 7 in the late 1980's and early 1990's, but was many ranks above her. Barbara Conley didn't stand out as a Trooper. He describes Conley as an "administrator's challenge" but she was quite capable and smart. He did hear Conley, as well as other troopers, use profanity. He would stop any sexual jokes or innuendo if he heard them. Conley always attended parties or held parties for the Troop. He "could never imagine Barbara Conley being offended" at off-color jokes.

Forrester spent a lot of time in DSP with Aaron Chaffinch and "mentored" him in earlier years. Forrester is not happy with everything Chaffinch did at DSP, but never observed negative behavior or remarks towards women on the part of Chaffinch.

Forrester worked with and likes both Paul Eckrich and R.L. Hughes. Paul's background was perfect for the budget Major position. Paul did an excellent job in the interim position. Forrester predicted early on that Paul would be a Major one day. For an Operations Major position Hughes was the better candidate. Forrester believes Hughes is one of the hardest working road trooper ever in the Delaware State Police. R.L. realizes his weaknesses. He is driven, but he is a supervisor's dream. R.L. worked in Special Projects at Headquarters when Forrester was a Major. Eckrich had been a Troop Commander and this is very helpful in that he understands the finances and the troops' needs. He says that now both of them (Hughes and Eckrich) are "where they should be." In terms of work ethic and talent they are both so far ahead of Barbara Conley it's not even close.

Forrester believes that holding a troop command helps greatly in terms of becoming a Major. It is very important to be well rounded and to serve in multiple divisions. He feels very strongly that the Superintendent has the right to surround himself with the executive staff of his choice.

DEPARTMENT OF JUSTICE
STATE OF DELAWARE

/s/ Stephani J. Ballard
Stephani J. Ballard, ID #3481
Ralph K. Durstein III, ID #912
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302)577-8400

Dated: March 6, 2006