# EXHIBIT A

Conley v. Chaffinch, et al.
Corporal Thomas F. MacLeish    C.A. # 04-1394-GMS    June 9, 2005

Page 106

1  promotion to major?
2     A.  During the course of his career was he
3  disciplined prior -- yes.
4     Q.  That didn't stop him from being promoted to
5  major, did it?
6     A.  No, it did not.
7     Q.  After Colonel Chaffinch became colonel, was he
8  investigated numerous times by Internal Affairs?
9     A.  Upon being...
10    Q.  Would you like me to rephrase the question?
11    A.  Yes, please.
12    Q.  After he was promoted to the rank of colonel,
13 was Colonel Chaffinch subsequently investigated by
14 Internal Affairs or by an outside investigatory agency?
15    A.  Yes.
16    Q.  That happened on one occasion or on several
17 occasions?
18    A.  On two occasions that I'm aware of.
19    Q.  Some of those times the charges were
20 substantiated.  Isn't that true?
21        MS. BALLARD:  Object to the form.
22    Q.  To the best of your knowledge, on some of those
23 occasions, were the charges substantiated?
24    A.  Yes.

Page 107

1     Q.  Was Colonel Chaffinch fired?
2     A.  No.
3     Q.  An hour ago or an hour and a half ago I asked
4  you some questions about the United States Constitution,
5  didn't I?
6     A.  Yes, you did.
7     Q.  I went through a long series of questions with
8  you about the Constitution, the Bill of Rights, the
9  amendments to the Constitution, and various DSP rules and
10 regulations, didn't I?
11    A.  Yes, you did.
12    Q.  Didn't you testify that the Constitution and its
13 amendments are very important in the Delaware State
14 Police?
15    A.  Yes.
16    Q.  After Colonel Chaffinch became colonel, in June
17 of 2003, did a federal court and jury find Colonel
18 Chaffinch guilty of violating the First Amendment,
19 freedom of speech rights of a Sergeant Christopher D.
20 Foraker?
21        MS. BALLARD:  Object to the use of the term
22 "guilty."
23    Q.  You can answer.
24    A.  I know that -- I'm not going to dance around the

Page 108

1  question with you, your terminology, but he was found
2  guilty of violating his First Amendment rights.  I know
3  the jury -- what I personally know is the jury verdict
4  went against us.  What specifically went against us --
5     Q.  I can rephrase the question for you and I'll
6  even lay a little better foundation.
7         Do you know that in June of 2003 there was
8  a jury trial in which Colonel Chaffinch was the
9  defendant?
10    A.  Yes.
11    Q.  The plaintiff in that case was a Sergeant
12 Christopher D. Foraker?
13    A.  Yes.
14    Q.  You testified in that trial, didn't you?
15    A.  Yes, I did.
16    Q.  You were a major at the time?
17    A.  Yes, I was.
18    Q.  Do you know at some point the jury in that case
19 returned a verdict?
20    A.  Yes.
21    Q.  The jury found that Colonel Chaffinch had
22 violated the First Amendment free speech rights of
23 Sergeant Foraker?  Do you have any knowledge of that?
24    A.  Yes.

Page 109

1     Q.  Colonel Chaffinch wasn't fired for that, was he?
2     A.  No, he was not.
3     Q.  Did Colonel Chaffinch ever apologize to Sergeant
4  Foraker?
5     A.  I have no knowledge if he did or did not.
6     Q.  Did Colonel Chaffinch ever tell you that he had
7  apologized to Sergeant Foraker?
8     A.  He never said.
9     Q.  The Constitution is a big deal in the Delaware
10 State Police, is it not?
11    A.  The Constitution is very important.
12    Q.  I would like to direct your attention to
13 Plaintiff's Deposition Exhibit 16 which I placed in front
14 of you a little bit earlier.  Do you have that?
15    A.  I have it.
16    Q.  I would like to direct your attention to Rule
17 and Regulation Number 3.  Do you see that?
18    A.  Yes, I do.
19    Q.  Could you read that quietly to yourself?
20    A.  (The witness reviews the document.)  Okay.
21    Q.  Would it be a fair paraphrase of this paragraph
22 to say that it requires a member of the Division of State
23 Police to report to Internal Affairs if that officer has
24 knowledge that a fellow officer has violated federal law?

28 (Pages 106 to 109)

| Conley | v. | Chaffinch, et al. |
|---|---|---|
| Corporal Thomas F. MacLeish | C.A. # 04-1394-GMS | June 9, 2005 |

### Page 110

1  A. That's correct.
2  Q. You can put that down.
3      Did you ever report to Internal Affairs
4  that Colonel Chaffinch violated this rule when he was
5  found to have retaliated against Sergeant Foraker in
6  violation of the First Amendment?
7      MS. BALLARD: Object to the form.
8  Q. You can answer.
9  A. No, because it had already been done so.
10 Q. I'm sorry.
11 A. No, I did not report it to Internal Affairs
12 because it had already been done so.
13 Q. His violation had already been reported to
14 Internal Affairs?
15 A. Been reported to Internal Affairs, yes.
16 Q. Do you believe that was an appropriate action?
17 A. Personally, no, but it was reported to Internal
18 Affairs.
19 Q. Didn't you testify earlier about the importance
20 of the United States Constitution?
21 A. Yes, I did. Yes, I did.
22 Q. You testified about the importance of the First
23 Amendment?
24 A. Yes, I did.

### Page 111

1  Q. Do you consider those violations to be important
2  enough to be reported to Internal Affairs?
3  A. They were reported to Internal Affairs.
4  Q. You said personally you didn't consider they
5  should have been or you didn't think that they should
6  have been?
7  A. I said personally I didn't feel that that
8  finding -- your definition of the finding that he was
9  found to have violated his First Amendment rights, in
10 that setting, in that civil setting, that wasn't done and
11 it's me -- that was done in a civil court of law, not a
12 criminal court of law. If he violated his rights
13 criminally, he would have been found with a civil rights
14 violation and went to jail for it. The FBI would have
15 investigated him for doing it and so forth. Okay?
16     But it was -- your original question of did
17 I report it? It wasn't necessary to report because it
18 was already reported, so there's no need to keep
19 reporting the same thing that somebody else is reporting.
20 Q. Are you drawing a distinction that a Delaware
21 state trooper can violate civil laws and get away with it
22 but not violate criminal laws?
23 A. I'm not -- I didn't mean to do that.
24 Q. Sure.

### Page 112

1  A. Okay. No. Civil law is as important as
2  criminal law. In this case, from what I drew out of --
3  when it was reported, it was reviewed with better legal
4  minds than mine and it was determined that he did not
5  violate -- he was not in violation of this rule and
6  regulation. So, therefore, there was not an
7  investigation nor were there any criminal charges placed
8  against him.
9  Q. So just to make sure I understand what you're
10 testifying to, legal minds conferred at some point and
11 reached the conclusion that the jury finding that Colonel
12 Chaffinch had violated the First Amendment was really not
13 a jury finding that Colonel Chaffinch had violated the
14 First Amendment?
15     MS. BALLARD: Object to the form.
16 Q. You can answer.
17 A. One more time with your question, Mr. Neuberger.
18     MR. NEUBERGER: Could you repeat the
19 question, please?
20     (The reporter read from the record as
21 requested.)
22 A. What I stated was that upon -- when it was
23 reported that he had violated the First Amendment rights
24 of Corporal Foraker, just that it was looked at legally

### Page 113

1  to say, yes, did he or didn't he. It was determined that
2  he did not by legal counsel. Therefore, no investigation
3  moved forward.
4  BY MR. NEUBERGER:
5  Q. So it was determined by DSP legal counsel that
6  the law had not been violated?
7  A. By state legal counsel.
8  Q. Fair enough.
9  A. Yes.
10 Q. I'll move on past that.
11 A. Okay.
12 Q. Also while he was colonel in January of 2004,
13 did a federal court and jury find Colonel Chaffinch to
14 have violated the Fourteenth Amendment and discriminated
15 against now Sergeant William Bullen, B-u-l-l-e-n, because
16 of his race?
17 A. Is there a question in there?
18 Q. Did that occur, to the best of your knowledge?
19 A. (No response.)
20 Q. You are the colonel of the State Police. At the
21 time I think you were the lieutenant colonel.
22 A. And on January of '04, yes, I was.
23     And, yes, there was a finding against the
24 division, again.

| Conley | v. | Chaffinch, et al. |
|---|---|---|
| Corporal Thomas F. MacLeish | C.A. # 04-1394-GMS | June 9, 2005 |

Page 114

1  Q. It was found that Colonel Chaffinch and
2  Secretary Ford had violated the Fourteenth Amendment
3  right of Sergeant William Bullen to be free of race
4  discrimination?
5      MS. BALLARD: Objection to the form.
6  Q. You can answer.
7  A. Yes.
8  Q. Was Colonel Chaffinch fired for that?
9  A. No, he was not.
10 Q. Did he ever apologize to Sergeant Bullen?
11 A. Not that I'm aware of.
12 Q. Did you report Colonel Chaffinch to Internal
13 Affairs for this violation of DSP Rule and Regulation
14 Number 3?
15 A. Did I, personally? No, I did not.
16 Q. Did anyone?
17 A. Yes, he was reported again.
18 Q. When?
19 A. I don't know. Your dad is the one who reported
20 him.
21 Q. For the purposes of the record, my father is
22 Thomas S. Neuberger?
23 A. I'm sorry. I'm sorry.
24 Q. Do you know when that report occurred?

Page 115

1  A. I do not. I can't recall.
2  Q. Also in January of 2004 did that same federal
3  court and jury find the colonel to have violated the
4  Fourteenth Amendment right of now Sergeant Jeffrey Giles
5  to be free of race discrimination?
6  A. Yes, the jury found against us, against the
7  division.
8  Q. Was Colonel Chaffinch fired for that finding?
9  A. No, he was not.
10 Q. Did he ever apologize?
11 A. Not to my knowledge.
12 Q. Did you report that violation to Internal
13 Affairs?
14 A. No, I did not.
15 Q. Now, you were recently promoted to colonel --
16 A. Yes.
17 Q. -- from the rank of lieutenant colonel; correct?
18 A. Yes.
19 Q. You've had several run-ins with Internal Affairs
20 yourself over the last several years yourself, haven't
21 you?
22     MS. BALLARD: Object to the form.
23 A. I haven't had several. I've had a couple. I've
24 had a couple investigations, not run-ins with Internal

Page 116

1  Affairs.
2  Q. How many investigations have there been into
3  your conduct by either Internal Affairs or outside
4  investigatory agency?
5  A. Two.
6  Q. For example, in early 2004 you were investigated
7  for interfering in a criminal investigation on behalf of
8  a personal friend?
9  A. Yes.
10 Q. Then those charges were substantiated, weren't
11 they?
12 A. A charge was substantiated against me as a
13 result of that investigation, yes.
14 Q. You were punished for it, weren't you?
15 A. Yes, I was.
16 Q. Did that stop you from being promoted to the
17 rank of colonel?
18 A. No, it did not.
19 Q. There was another investigation in approximately
20 April of 2004, I believe?
21 A. Yes.
22 Q. Those charges were investigated by an outside
23 investigatory agency, weren't they?
24 A. That's correct.

Page 117

1  Q. Some of those charges were substantiated,
2  weren't they?
3  A. A charge was substantiated again me.
4  Q. You were punished for that, weren't you?
5  A. Yes, I was.
6  Q. Was that the using profanity charge?
7  A. Yes, it was.
8  Q. You took your punishment and you moved on,
9  didn't you?
10 A. Yes, I did.
11 Q. Did that stop you from being promoted to the
12 rank of colonel?
13 A. No, it did not.
14     (Discussion off the record.)
15     (A recess was taken at this time.)
16 BY MR. NEUBERGER:
17 Q. Colonel, I'd like to ask you some questions now
18 about some events surrounding the filing of this lawsuit.
19 A. Yes, sir.
20 Q. Are you aware that in October 2004 Captain
21 Conley filed a federal court lawsuit naming Colonel
22 Chaffinch and the Division of State Police as defendants?
23 A. Yes, I am.
24 Q. Do you recall that that lawsuit was filed on

| Conley | v. | Chaffinch, et al. |
|---|---|---|
| Corporal Thomas F. MacLeish | C.A. # 04-1394-GMS | June 9, 2005 |

Page 198

1  break.
2  (A recess was taken at this time.)
3  BY MR. NEUBERGER:
4  Q. I had a couple more random areas just to touch
5  on and we are almost done. Okay? It's been a long day.
6  A. For all of us.
7  Q. I believe you mentioned before that you believed
8  that Captain Warren's IA complaints were filed
9  approximately April of 2004?
10 A. Yes.
11 Q. One of those complaints dealt with the jury
12 verdict against Colonel Chaffinch in the Bullen and Giles
13 case?
14 A. Excuse me just a minute. I apologize. That
15 distracted me. Go. Would you start over again? I'm
16 sorry.
17 Q. I believe you testified earlier that Captain
18 Warren filed his Internal Affairs charges against Colonel
19 Chaffinch in April of 2004?
20 A. Yes.
21 Q. One of those charges dealt with the jury verdict
22 in the Bullen and Giles case which found that Colonel
23 Chaffinch had violated the Fourteenth Amendment?
24 A. I assume so. I know there were a series of

Page 199

1  charges against the colonel at that point. And do I
2  personally remember what each charge was, Mr. Neuberger?
3  I don't. But there were a series of charges there, so
4  I'd say yes, that was one of them.
5  Q. Do you remember that those charges were filed in
6  April 2004 by Captain Warren?
7  A. Yes. Yes, I do.
8  Q. You understand that the jury verdict was in
9  January of 2004?
10 A. The jury verdict that the charges were based on?
11 Q. Correct.
12 A. I don't mean to draw a fine line, but I don't
13 remember what the specific charges were because I didn't
14 see the colonel's -- I mean, I remember reading about
15 them in the paper.
16 Q. Right.
17 A. But I don't remember what the specific charges
18 or the minute detail of those charges were.
19 Q. Putting that to the side, do you recall that the
20 jury verdict came down in January 2004?
21 A. Yes.
22 Q. After January is the month of February; correct?
23 A. Yes.
24 Q. After February is the month of March?

Page 200

1  A. That's the way it works.
2  Q. And after March is the month of April?
3  A. Yes.
4  Q. So are there three months there between January
5  and April of 2004?
6  A. Actually, there's two months. If you count
7  January and February, you got February and March, so
8  there's two months between those two months.
9  Q. Fair enough.
10     At any time during those two or three
11 months did you file a charge with Internal Affairs
12 against Colonel Chaffinch for violating DSP Rule and
13 Regulation Number 3?
14 A. That violation of rule and reg. 3 is the one
15 dealing with the Constitution?
16 Q. Yes, it is.
17 A. No, I did not.
18 Q. Now, you were scheduled to have your firearms
19 training yesterday, weren't you?
20 A. Yes, I was.
21 Q. Actually, your firearms certification. Is that
22 accurate?
23 A. Recertification, yeah.
24 Q. Recertification?

Page 201

1  A. Yes.
2  Q. Did you show up at your firearms certification
3  yesterday?
4  A. No, I did not.
5  Q. Did you not attend your firearms recertification
6  because Captain Conley was going to be there?
7  A. No. Didn't know she was going to be.
8  Q. So you weren't trying to avoid her?
9  A. Not at all.
10 Q. Were you trying to avoid Sergeant Christopher
11 Foraker?
12 A. No.
13 Q. What did you do yesterday instead of going to
14 your firearms recertification?
15 A. There was an operational need that took me
16 elsewhere.
17     MS. BALLARD: He met with us in the
18 morning.
19 Q. So are you indicating that you met with your
20 attorneys in the morning?
21 A. I -- I'll tell you --
22 Q. Your counsel said it. I just need it to come
23 from your mouth.
24 A. Yes, I met with my attorneys, but that wasn't

51 (Pages 198 to 201)

Wilcox & Fetzer, Ltd.            Professional Court Reporters            (302)655-0477