# EXHIBIT B

Conley
Lisa Blunt-Bradley

v.

C.A. # 04-1394-GMS

Chaffinch, et al.
December 19, 2005

Page 14

1　minorities in the workplace?
2　**A. Correct. Reviewing the process.**
3　Q. Right. I mean, process is important?
4　**A. Yes.**
5　Q. Because of your long background in labor law,
6　the Delaware labor laws, as well as the state personnel
7　director, have you concluded that having a process in
8　place is something that's important to seeing that all
9　people are treated in a nondiscriminatory fashion?
10　　　MS. BALLARD: Objection to the form.
11　**A. Can you repeat the question?**
12　Q. Sure. I'll have her read it back to you.
13　　　(The reporter read from the record as
14　requested.)
15　**A. And -- this is funny. I feel like a drum**
16　**roll -- the answer is: Yes, it's important to have a**
17　**process.**
18　BY MR. NEUBERGER:
19　Q. Sure. Once again, we are into equal employment
20　opportunity. Okay?
21　　　Was it one of your purposes to require the
22　Delaware State Police to follow a process so that it
23　would avoid discrimination against minorities and women?
24　**A. Well, I think I might have shared with you in**

Page 15

1　**the past the role of the State Personnel Office in terms**
2　**of requiring that agency -- even in the report you will**
3　**notice part of our charge was to say that we would have**
4　**more of a role, as you mentioned, particularly as it**
5　**relates to monitoring.**
6　　　**So, again, we have individuals in the**
7　**office who were responsibility for, you know, ensuring**
8　**the laws were actually implemented, but you said**
9　**"require" them to do it.**
10　Q. Let me go back. I'll change my word.
11　**A. Yes.**
12　Q. Go ahead and finish.
13　**A. Go ahead.**
14　Q. Was it one of your goals to ensure that the
15　Delaware State Police was following a process so that --
16　**A. Yes.**
17　Q. -- it would avoid -- let me finish. We can't
18　step on each other's answers.
19　**A. Sorry.**
20　Q. Was it one of your goals to require the Delaware
21　State Police to follow a process so that it would avoid
22　discriminating against women and minorities?
23　**A. Yes.**
24　Q. Now, another one of the areas you looked into

Page 16

1　was recruitment and hiring. Do you see that on page 4 of
2　your Table of Contents --
3　**A. Yes.**
4　Q. -- concerning your evaluation of what they were
5　doing in the areas of recruitment and hiring, was it,
6　again, one of your goals to ensure that women and
7　minorities were not the victims of discrimination in
8　those areas?
9　**A. Well, in terms of -- you said was it the goal to**
10　**ensure there wasn't discrimination in terms of**
11　**recruitment and hiring?**
12　Q. Yes.
13　**A. And, I mean -- yes.**
14　Q. You looked into the recruitment process there?
15　**A. Correct.**
16　Q. You looked into the hiring process?
17　**A. Correct.**
18　Q. In fact, you may remember in the court case that
19　I took your testimony in, the Bullen and Giles court case
20　that -- you remember we had a trial before Judge Farnan?
21　**A. Yes.**
22　Q. Do you remember there was a big dispute in that
23　case about whether in 1998 and earlier there were
24　actually written quotas that the Delaware State Police

Page 17

1　was following for recruitment into their academy? Do you
2　remember we had a --
3　**A. No.**
4　Q. Do you remember talking about green people and
5　blue people and widgets and stuff like that at trial?
6　**A. Yes.**
7　　　MS. BALLARD: I want to place an objection
8　on the record to relevance to the prior trial.
9　　　MR. NEUBERGER: You don't have to object to
10　relevance, Counsel.
11　　　MS. BALLARD: I can place an objection on
12　the record.
13　　　MR. NEUBERGER: You don't have to object to
14　relevance. You retain all that. I'm just saying you are
15　interfering with the flow here.
16　　　MS. BALLARD: I want to --
17　　　MR. NEUBERGER: The rules don't require you
18　to object to relevance. That's all I'm saying, Counsel.
19　You don't have to do that under the rules. You retain
20　all your relevance objections for later.
21　　　MS. BALLARD: Fine. I just wanted to place
22　that particular one because we will object to the
23　introduction of any evidence of any prior matters
24　involving Delaware State Police.

5 (Pages 14 to 17)

Conley                                   v.                    Chaffinch, et al.
Lisa Blunt-Bradley              C.A. # 04-1394-GMS             December 19, 2005

Page 18

1  BY MR. NEUBERGER:
2     Q.  The point is, you remember that there were some
3  things that the Delaware State Police were doing that I
4  was challenging and said that they were violating the
5  laws against quotas.  Do you remember that?
6     A.  Yes.
7     Q.  I think you explained to us at an earlier time
8  that the law does not permit quotas.  Do you agree with
9  that?
10    A.  Right.
11    Q.  But there are a lot of things that are legal
12  that can be done to diversify a work force.  You remember
13  that?
14    A.  Yes.
15    Q.  In fact, Greg Chambers who worked under you --
16  you remember him, don't you?
17    A.  Yes.
18    Q.  Is it fair to say that Mr. Chambers is a very,
19  very experienced and qualified person in state government
20  as far as what is and is not allowed in the areas of
21  promoting diversity?
22    A.  Yes.
23    Q.  But my point is here:  You looked into the areas
24  of recruitment and hiring at the State Police during your

Page 19

1  investigation; right?
2     A.  Yes.
3     Q.  Was it one of your goals to ensure that women
4  and minorities were not being the victims of
5  discrimination in the areas of recruitment and hiring?
6     A.  Again, yes.
7     Q.  Was it one of your goals to see that the
8  Delaware State Police was using a process in the areas of
9  recruitment and hiring that wasn't discriminating against
10  women and minorities?
11    A.  Can I clarify?
12    Q.  Sure.  Go ahead.
13    A.  Again, we were looking at the situation to make
14  recommendations for improvement.  So, again, that was the
15  goal.
16    Q.  Sure.
17        If the Delaware State Police had a sign up
18  at its office that said "Blacks need not apply," you
19  would have pointed that out, wouldn't you?
20    A.  Correct.
21    Q.  If they had a sign up that says "Blacks can't
22  use the water cooler when they are filling out employment
23  applications," you would have noted that; right?
24    A.  I wouldn't have written it in the report

Page 20

1  necessarily, but I would have noted that, definitely.
2     Q.  The point is you were looking at things that
3  were in the process that would be illegal hindrances to
4  the employment of women and minorities?
5     A.  Correct.
6     Q.  If you found something, one of the things you
7  would have done would have been to point those out?
8     A.  Correct.
9     Q.  Right.  I understand.  You are telling me you
10  had no authority to order the Department of Homeland
11  Security to make changes in the State Police; right?  It
12  wasn't your department?
13    A.  That's true.
14    Q.  The governor had issued an Executive Order
15  No. 19; right?
16    A.  Correct.
17    Q.  That had given you some authority directly from
18  the governor; right?
19    A.  Correct.
20    Q.  But you didn't think it made you the colonel of
21  the State Police?
22    A.  That's correct.
23    Q.  So a lot of things in your report you're saying
24  were couched in terms of recommendations and improvements

Page 21

1  that should be made?
2     A.  Correct.
3     Q.  Just to finish up about recruitment and hiring,
4  to ask the same question I asked earlier about equal
5  employment opportunity, was it a goal to enable the State
6  Police to follow a process so that they weren't
7  discriminating against women and minorities?
8        MS. BALLARD:  Objection to the form.
9     A.  Yes.
10    Q.  Then you see you addressed promotions at the
11  State Police; right?
12    A.  Yes.
13    Q.  Is it true that one of your goals was to ensure
14  that women and minorities were not the victims of
15  discrimination in the promotion process at the State
16  Police?
17    A.  Yes.  We were trying to ensure fair process for
18  all.
19    Q.  In trying to ensure a fair process for all in
20  the areas of promotions, was it one of your goals to see
21  that the Delaware State Police wasn't using a promotion
22  process that did discriminate against women and
23  minorities?
24    A.  Correct.

6 (Pages 18 to 21)