Westlaw.

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1997 WL 777887 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Irma RIVERA, Plaintiff,
v.
BACCARAT, INC., Defendant.
**No. 95 CIV. 9478 MBM JCF.**

Dec. 15, 1997.

Joseph C. Maya, Esq., Maya & Associates, PC, Westport, CT.
Jeffrey H. Daichman, Esq., Kane & Kessler, P.C., New York, New York.

MEMORANDUM AND ORDER

FRANCIS, Magistrate J.
**\*1** The plaintiff, Irma Rivera, alleges that her former employer, Baccarat, Inc. ("Baccarat"), discriminated against her on the basis of her national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and on the basis of her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA"). The parties have consented to referral of this case to me for final disposition pursuant to 28 U.S.C. § 636(c).

Baccarat now moves *in limine* for an order declaring certain evidence inadmissible at trial. Specifically, Baccarat seeks to preclude: (1) evidence purportedly showing ethnic bias by a former Baccarat manager, J.D. Watts, (2) testimony about sexist comments or sexual harassment by Baccarat supervisors, (3) evidence of alleged discriminatory treatment of two other Baccarat employees, Andree Leopold and Loretta Brown, (4) evidence concerning the provision of severance benefits to the plaintiff, (5) evidence of the plaintiff's sales performance (6) evidence of lost wages for any period after the plaintiff was terminated by a subsequent employer, (7) admission of the charges filed by the plaintiff with the Equal Employment Opportunity Commission ("EEOC") and the Right to Sue Letter issued by that agency, (8) admission of depositions or affidavits by witnesses who could testify at trial, as well as subpoenas issued to these persons, and (9) evidence concerning any policy by Baccarat forbidding its employees from speaking languages other than English while on the job. For the reasons that follow, Baccarat's motion is granted in part and denied in part.

A. *J.D. Watts' Remarks*

Ms. Rivera alleges that one of her former supervisors at Baccarat, J.D. Watts, made a series of comments reflecting discriminatory animus. Baccarat contends that because Mr. Watts was not involved in the plaintiff's termination-indeed, he was himself terminated more than four months before Ms. Rivera-evidence of his remarks should not be admitted.

The defendant's argument has merit with respect to stray remarks reflecting only Mr. Watts' purported personal bias. For example, he allegedly referred to Ms. Rivera's "hot Latin temper" and suggested that her Hispanic customers made their purchases with proceeds from drug sales. Such references by a person not involved in the decision to terminate the plaintiff are inadmissible. *See* Boyle v. McCann-Erickson, Inc., 949 F.Supp. 1095, 1102 (S.D.N.Y.1997); Ellis v. Provident Life & Accident Insurance Co., 926 F.Supp. 417, 428 (S.D.N.Y.1996), *aff'd,* 107 F.3d 2 (2d Cir.1997).

By contrast, statements by Mr. Watts that reflect a pattern of discrimination by the decisionmakers who ultimately terminated the plaintiff would be probative. Thus, for example, testimony by Mr. Watts that Jean-Luc Negre, Baccarat's Chief Executive Officer, said he wanted a "young and sexy" sales staff would be admissible. Similarly, because Mr. Negre made the decision to terminate Ms. Rivera, testimony that he told Mr. Watts he did not like the plaintiff's accent would be allowed. Comments by Mr. Watts, then, will be admissible to the extent that it can be inferred that they relate to Baccarat policies or to the bias of persons, including Mr. Negre, who made the decision to fire Ms. Rivera.

B. *Sex Discrimination*

**\*2** The plaintiff apparently intends to introduce evidence of gender discrimination at Baccarat, including the use of sexist comments and acts of sexual harassment directed at other employees. Baccarat seeks to preclude such evidence on the

Not Reported in F.Supp.  
Not Reported in F.Supp., 1997 WL 777887 (S.D.N.Y.)  
**(Cite as: Not Reported in F.Supp.)**

Page 2

ground that this case does not involve claims by Ms. Rivera of sex discrimination.

The plaintiff argues that she should be permitted to demonstrate that a general attitude of discrimination pervaded Baccarat. This contention is without merit. Title VII does not create a blanket prohibition against discrimination; it identifies discrete categories of discrimination that are forbidden. Thus, "allegations of race discrimination are not relevant to a claim of national origin discrimination." *Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 949 F.Supp. 13, 19 (D.D.C.1996); *see also Kelly v. Boeing Petroleum Services, Inc.,* 61 F.3d 350, 357-58 (5th Cir.1995) (evidence of race and sex discrimination inadmissible in disability discrimination case). Similarly, evidence that other Baccarat employees may have been victims of gender bias or sexual harassment has no bearing on the plaintiff's claims of national origin and age discrimination in this case.

The decision relied on by the plaintiff, *EEOC v. Farmer Brothers Co.,* 31 F.3d 891, 898 (9th Cir.1994), is consistent with this conclusion. There, evidence of sexual harassment was admitted in a case of gender discrimination "[b]ecause hostility against women underlies decisions to discharge or to refuse to hire women[ .]" *Id.* No such nexus necessarily exists between hostility against women and acts of age or national origin discrimination. Accordingly, evidence of sex discrimination or harassment shall not be admitted.

C. *Treatment of Other Employees*

Next, the defendant seeks to exclude evidence of discrimination claims brought by two other Baccarat employees: a charge filed by Loretta Brown with the New York City Commission on Human Rights and a lawsuit filed by Andree Leopold. Baccarat argues that evidence of the treatment of these employees is irrelevant because they were not similarly situated to Ms. Rivera.

However, proof of bias by a decisionmaker against other employees is probative of discriminatory animus even if those employees are not similarly situated to the plaintiff. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58, 62, 65 (2d Cir.1995). The critical question is whether the same decisionmaker was involved in both the prior discriminatory acts and in the adverse employment action taken against the plaintiff. In the case of Ms. Leopold, it was not; she was apparently terminated by Francois de Montmorin before Mr. Negre had even joined Baccarat. Evidence concerning her termination is therefore inadmissible. No information has been provided concerning the nature of Ms. Brown's discrimination claim or the identity of her supervisors, and thus no determination can yet be made concerning the relevance of her charges of discrimination to this case.

D. *Plaintiff's Severance Benefits*

**\*3** The plaintiff contends that Mr. Negre initially declined to provide her with certain severance benefits unless she signed a release of all age and national origin discrimination claims and only relented after she filed her complaint with the EEOC. Baccarat contends that there is nothing improper about seeking a release of claims and that Ms. Rivera was treated no differently than any other employee.

However, there appears to be a dispute both about the circumstances regarding Mr. Negre's hesitation to provide the benefits and the inferences to be drawn from his conduct. Therefore, no determination concerning admissibility can be made until the facts have been more fully developed.

E. *Plaintiff's Sales Performance*

Baccarat further objects to admission at trial of evidence of Ms. Rivera's satisfactory sales performance. Such evidence is relevant, however, in at least two respects. First, the plaintiff must demonstrate that she was qualified for the position from which she was terminated. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.1985). Second, once the employer proffers a legitimate reason for the adverse employment action, the plaintiff must demonstrate that this was not the only reason and that discriminatory animus was at least one of the motivating factors. *See Cronin v. Aetna Life Insurance Co.,* 46 F.3d 196, 203 (2d Cir.1995). In this context, the plaintiff's past performance is surely relevant to demonstrating that the proffered basis for termination is pretextual. Such evidence shall therefore be admissible.

F. *Termination from Subsequent Employment*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1997 WL 777887 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Baccarat next asks that any back pay damages awarded to the plaintiff be cut off as of the date that she was terminated by her subsequent employer, Bernardaud. This request, too, is premature.

An obligation to mitigate damages is incorporated in Title VII, which provides in pertinent part that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e-5(g)(1); *see also* Ford Motor Co. v. EEOC, 458 U.S. 219, 231-32, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). Accordingly, a claimant fails to mitigate damages when she voluntarily quits comparable interim employment. *See* Brooks v. Fonda-Fultonville Central School District, 938 F.Supp. 1094, 1109 (N.D.N.Y.1996). Similarly, a plaintiff who is terminated for cause from a subsequent equivalent job has not met the mitigation requirement. *See* Strauss v. Microsoft Corp., No. 91 Civ. 5928, 1995 WL 326492, at *5-6 (S.D.N.Y. June 1, 1995).

However, the burden is on the defendant to prove the failure to mitigate. *See* Clarke v. Frank, 960 F.2d 1146, 1152 (2d Cir.1992). To do so, it must show that the plaintiff refused comparable employment. If it is the defendant's position that Ms. Rivera quit comparable employment when she left Bernardaud, then the defendant has the burden of demonstrating that Ms. Rivera's position at Bernardaud was substantially equivalent to that from which the defendant previously discharged her. *See* Shore v. Federal Express Corp., 42 F.3d 373, 378 (6th Cir.1994). The defendant here has not yet made such a showing. Furthermore, the defendant must demonstrate that the plaintiff's conduct that induced her discharge from Bernardaud was not motivated by unreasonable working conditions. *See* Strauss, 1995 WL 326492, at *5. Again, no proof has been presented on this issue. Therefore, no order cutting off the plaintiff's potential back pay award is appropriate at this time.

G. *EEOC Charges*

**\*4** In the pretrial order, the plaintiff indicated that she intended to introduce the administrative charge that she filed with the EEOC, her Request for Notice of Right to Sue, and her Notice of Right to Sue issued by the EEOC. A substantive determination by the EEOC, while not preclusive, may be admissible. *See* Philbrook v. Ansonia Board of Education, 757 F.2d 476, 481 (2d Cir.1985); *cf.* Astoria Federal Savings & Loan Ass'n v. Solimino, 501 U.S. 104, 113-14, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (findings of state human rights agency admissible but not preclusive). Of course, neither the charges themselves nor the Right to Sue letter constitute substantive findings. In the absence of some showing of relevance, then, these documents would not be admissible.

H. *Subpoenas, Affidavits, and Depositions*

The plaintiff has also listed as proposed exhibits certain affidavits, depositions, and subpoenas of witnesses. The parties now appear to agree that Rule 32(a)(3) of the Federal Rules of Civil Procedure governs the admissibility of such evidence. Depositions will be admitted where the witness is unavailable as provided for in that rule, and subpoenas may be probative of efforts to secure the attendance of witnesses. Affidavits will not be admissible as direct evidence, but only for purposes of impeachment.

I. *Evidence of an English-Only Policy*

Finally, Baccarat seeks to ban evidence that it had a policy of requiring employees to speak only English in the workplace unless they were conversing with a customer in the customer's language. The defendant argues that the rule is irrelevant. It further notes that although EEOC Guidelines provide that an employee can make out a prima facie claim in a disparate impact case merely by proving the existence of an English-only policy, 29 C.F.R. § 1606.7(a) & (b), these regulations have been rejected by some courts. *See* Garcia v. Spun Steak Co., 998 F.2d 1480, 1489-90 (9th Cir.1993).

However, even the *Spun Steak* decision recognized the potential relevance of English-only rules in proving a case of national origin discrimination:
[I]n some circumstances English-only rules can exacerbate existing tensions, or, when combined with other discriminatory behavior, contribute to an overall environment of discrimination. Likewise, we can envision a case in which such rules are enforced in such a draconian manner that the enforcement itself amounts to harassment. In evaluating such a claim, however, a court must look to the totality of the circumstances in the particular factual context in which the claim arises.

*Id.* at 1489. This approach is consistent with the EEOC's findings that English only rules may "create

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1997 WL 777887 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

an atmosphere of inferiority, isolation and intimidation based on national origin which could result in a discriminatory working environment." 29 C.F.R. § 1606.7(a). Therefore, even if an English-only rule may not by itself suffice to prove discrimination, such a policy may well be relevant to the issue of discriminatory animus. Thus, evidence of Baccarat's English language policy shall be admitted.

*Conclusion*

**\*5** For the reasons set forth above, Baccarat's motion *in limine* is granted to the extent that the plaintiff may not introduce at trial: (1) stray remarks by J.D. Watts unconnected either to Baccarat policies or to the bias of persons who terminated Ms. Rivera; (2) proof of sexist comments or sexual harassment; (3) claims of discrimination asserted by employees such as Andree Leopold who were not subjected to adverse employment actions by the persons responsible for firing Ms. Rivera; (4) her EEOC charges and Right to Sue letter, absent a showing of relevance; or (5) any deposition, affidavit, or subpoena, except as appropriate under Rule 32(a)(3) of the Federal Rules of Civil Procedure. In all other respects, the defendant's motion is denied.

SO ORDERED.

S.D.N.Y.,1997.
Rivera v. Baccarat, Inc.
Not Reported in F.Supp., 1997 WL 777887 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1999 WL 33933678 (Trial Motion, Memorandum and Affidavit) Affidavit in Opposition to Plaintiff'S Application for Attorney'S Fees and Disbursements (Mar. 19, 1999)
• 1999 WL 33937813 (Trial Motion, Memorandum and Affidavit) Affidavit (Feb. 24, 1999)
• 1999 WL 33937812 (Trial Motion, Memorandum and Affidavit) Affidavit (Feb. 18, 1999)
• 1:95cv09478 (Docket) (Nov. 07, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.