Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1133066 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.

United States District Court, D. New Jersey.
Randolph L. SIMONETTI, Plaintiff,
v.
Marvin T. RUNYON, et al., Defendants.
**No. Civ.A.98-2128.**

Aug. 7, 2000.

Edward G. O'Byrne, Totowa, NJ, for Plaintiff.
Peter G. O'Malley, Office of the U.S. Attorney, Newark, NJ, for Defendants.

*OPINION*

WOLIN, J.
***1** This matter is opened before the Court upon defendant's motion for summary judgment. The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the motion will be granted in part and denied in part.

*BACKGROUND*

Procedural History

Plaintiff filed an Amended Complaint with this Court on May 14, 1998, alleging that defendant violated plaintiff's rights under Section 501 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 791 and § 794, on three counts: 1) defendant "[engaged] in a pattern of discrimination against the [p]laintiff," 2) defendant created a hostile work environment through discriminatory conduct towards plaintiff and others, and 3) defendant engaged in "unlawful retaliation against [p]laintiff for complaining about violations of the Rehabilitation Act" ("the Act").

In January 1999, defendant moved to dismiss for failure to state a claim and alternatively for summary judgment. The defendant argued that plaintiff failed to establish a prima facie case of disability discrimination because plaintiff's condition did not constitute a disability under the Act. [FN1] This Court denied both motions finding the record contains sufficient medical evidence for a jury to conclude that plaintiff "was substantially limited in the major life activity of lifting" and could therefore qualify as disabled under the Act. *Simonetti v. Runyon,* No. CIV.A. 98-2128, 1999 WL 47144, at *5 (D.N.J. Jan. 29, 1999).

FN1. Disability is defined in the Act as "a physical ... impairment which substantially limits one or more of such person's major life activities." 29 C.F.R. § 1614.203(a)(i).

A final pre-trial order was entered in September 1999, and defendant now moves for summary judgment on the grounds that plaintiff has failed to present evidence of a genuine issue of material fact.

Statement of Facts

Plaintiff began working as a letter carrier for the United States Postal Service ("USPS") on October 20, 1973. After suffering an on-the-job injury, plaintiff was referred to the USPS Rehabilitation Program for a medical assessment in July 1992. The examining physician placed the following restrictions on plaintiff's work ability: 1) no reaching for more than two hours, 2) no lifting of more than ten pounds, 3) no "casing" for more than four hours, and 4) no bending, stooping, or twisting for more than one to two hours.

Plaintiff's medical records indicate he suffers from "severe C5-6 discopathy with a combined C6, C7, C9, myeloradiculopathy of the left arm. He has also evidenced weakness of the left upper extremity muscles in spite of rehabilitation and a persistent limitation of motion of the neck and arm." (Def. Exhibit B at 13). Plaintiff's physician further stated that he "is permanently impaired as to lifting and should never lift more than 5 lbs. on a repetitive or one time basis." (*Id.*).

As a result of the injury, plaintiff was reassigned to the marketing department in Patterson and upon its elimination in May 1993, plaintiff was transferred to the Hawthorne branch. At the Hawthorne office, plaintiff acted as a Modified Carrier under Joseph Ott ("Ott"), Branch Manager, and Richard DeRosa ("DeRosa"), Immediate Supervisor. As a Modified

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1133066 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

Carrier, plaintiff was responsible for performing all "carrier and/or clerk functions" within prescribed medical restrictions, (Final Pre-Trial Order at 2), which included no weight bearing on the left shoulder and no reaching above shoulder level with the left arm. (Def. Exhibit C at 3).

***2** Commencing in June 1995, plaintiff was allegedly the subject of continuous harassment by co-workers who accused him of "trying to avoid work in order to seek disability," and who called him names such as "faker" and "malingerer". (Pl. Br. at 4-5). Plaintiff allegedly informed Supervisors Ott and DeRosa of the ongoing harassment of which he suffered, and they responded by telling him to ignore such behavior. (*Id.*)

In January 1996, Ott met with plaintiff to discuss several complaints by co-workers regarding plaintiff's negative attitude and aggressive behavior that caused them to feel threatened while in his presence. (Def. Exhibit D at 6). Plaintiff admits that following this meeting, he began to close off from co-workers and merely performed his job without interacting with others. (*Id.*).

On March 25, 1996, plaintiff alleges that a fellow employee, Mike Binski ("Binski"), threatened him by stating he would "take care of [plaintiff] and kick [his] ass." (Pl. Affid. at 7-8). On March 27, 1996, plaintiff was leaving work for the day when Binski allegedly made a derogatory comment regarding plaintiff's disability status. Plaintiff charged at Binski, making it necessary for Supervisor DeRosa and two other employees to physically restrain him. In doing so, DeRosa broke his eye glasses and suffered from a black eye and sprained thumb, which required medical attention. (Def. Exhibit G at 1).

The following day, March 28, 1996, plaintiff was notified he was being placed on emergency off-duty status for violating the USPS Code of Conduct which prohibits violence on the work-room floor. (Def. Exhibit F at 1). Specifically, after getting into a verbal altercation with Binski, plaintiff failed to leave the facility after Supervisor DeRosa directly ordered him to do so on three occasions, and for charging Binski, requiring physical restraint and resulting in injury to plaintiff's supervisor. (*Id.*).

The Postal Inspection Service conducted an investigation of the incident and immediately notified plaintiff of his removal effective April 22, 1996. The notice was sent pursuant to company policy in which "incidents involving physical assaults and verbal threats of violence will be promptly investigated and appropriate administrative measures will be taken including immediate placement in an off-duty status and appropriate discipline ... up to and including discharge." (Def. Exhibit G at 2).

Plaintiff pursued his grievance remedies of which an arbitrator sustained in part. (Def. Exhibit D at 1). The arbitrator granted plaintiff the option of returning to work on a last-chance basis or resigning effective March 27, 1996. (*Id.*). Plaintiff chose to resign, under alleged duress, for having to return to the same "harassing atmosphere" which incited the grievance. (Pl. Br. at 2).

Plaintiff subsequently filed a complaint with the EEOC on August 15, 1996, alleging that his placement on off-duty status and subsequent removal was an act of discrimination on the basis of his disability. (Pl. Br. at 9-10). The EEOC denied plaintiff's complaint for failure to show (1) he was a qualified individual with a disability under the Act, and (2) that a non-disabled employee charged with assault was treated more favorably than he. (Exhibit E at 7-9).

*DISCUSSION*

***3** This Court has jurisdiction pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701 and 28 U.S.C. § 1331.

I. Standard of Review for Summary Judgment

Summary judgment is not a "disfavored procedural shortcut," but rather an essential component in eliminating unfounded claims without a costly, time-consuming trial. *See* *Illingworth v. Nestle U.S.A., Inc.,* 926 F.Supp. 482, 487 (D.N.J.1996); *see also* *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). Summary judgment shall be granted if the pleadings, depositions, interrogatory answers, and affidavits demonstrate there is no genuine issue of material fact. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-48 (1986); *Hersh v. Allen Prods. Co.,* 789 F.2d 230, 232 (3d Cir.1986). A genuine dispute of material fact is that which might change the outcome of the proceeding and is determined by the substantive law defining the claims. *See* *Anderson,* 477 U.S. at 248. In making this determination, the court must view the evidence in light most favorable to the non-movant. *See* *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1133066 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

Cir.1983), *cert. dismissed,* 465 U.S. 1091 (1984).

The district judge's role is not to weigh the evidence as a fact-finder but to determine whether a genuine issue of fact exists for trial. *See Anderson,* 477 U.S. at 249. If no reasonable juror could find for the non-moving party, summary judgment should be granted. *See id.*

When the non-moving party bears the burden of proof at trial, the moving party can satisfy its burden of production by "pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 325. Once the moving party has met its burden of showing there is an absence of a genuine issue of fact, the burden shifts to the non-moving party to "make a sufficient showing on an essential element of her case" to establish a factual dispute. *See id.* at 323. The non-movant may not rest on mere allegations, but rather must provide specific facts evidencing the material dispute. *See id.* at 322 n. 3; Fed. R. Civ. Proced. 56(e); *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990) (holding unsupported claims are insufficient to defeat summary judgment, rather must show specific factual dispute).

When a non-movant bearing the burden of proof at trial fails to show an issue of fact as to an essential element of the claim, summary judgment should be granted. *See Celotex Corp.,* 477 U .S. at 322-23. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. Evidence of a disputed material fact will preclude summary judgment.

II. The Rehabilitation Act of 1973

***4** The Rehabilitation Act of 1973, 29 U.S.C. § 701, prohibits federal employers from discriminating on the basis of physical or mental disability and thereby applies to the USPS as a federal employer. When analyzing disability claims under the Rehabilitation Act, courts often interchange the standards, definitions and employment provisions set forth in Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, and Title VII of the Civil Rights Act of 1964. *See* 29 U.S.C. § 794(a); 29 U.S.C.A. § 791(g); *Mengine v. Runyon,* 114 F.3d 415, 420 n. 4 (3d Cir.1997); *Hiller v. Runyon,* 95 F.Supp.2d 1016, 1020 (S.D.Iowa 2000).

To establish a prima facie case of disability discrimination under § § 501(b) and 504 of the Act, plaintiff must show (1) that he is disabled under the Act, (2) that he is otherwise qualified for the position, (3) that he was excluded from employment solely for the reason of his handicap, and (4) that the program receives federal funding. *See Menkowitz v. Pottstown Memorial Medical Center,* 154 F.3d 113, 123 (3d Cir.1998); *Shiring v. Runyon,* 90 F.3d 827, 831 (3d Cir.1996); *Strathie v. Department of Transp.,* 716 F.2d 227, 230 (3d Cir.1983); *Boldini v. Postmaster General U.S. Postal Service,* 928 F.Supp. 125, 130 (D.N.H.1995). In disability discrimination claims, plaintiff bears the burden of proving each element of the claim. *See Boldini,* 928 F.Supp. at 130.

A. Violations of the Rehabilitation Act

This Court determined in defendant's first motion for summary judgment that sufficient evidence exists for a jury to find that plaintiff was substantially limited in the major activity of lifting. *See Simonetti,* 1999 WL 47144, at *11.

Having determined that plaintiff's disability status is a question of fact, the Court must next consider the effect of plaintiff's physical impairment on his ability to function as a Modified Carrier. The Act defines the term "an otherwise qualified individual" as "a handicapped person who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others." 29 C.F.R. § 1613.702(f); *see Boldini,* 928 F.Supp. at 131. The record does not evidence that plaintiff was unqualified for the position of Modified Carrier. Plaintiff's supervisors did not complain about his work product or ability to function on the job, nor did plaintiff claim to be physically unable to perform the requirements of the position.

In establishing the third element of a disability discrimination claim, plaintiff must present evidence from which a juror could draw a reasonable inference of a discriminatory motive on behalf of the employer. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981); *Villanueva v. Wellesley College,* 930 F .2d 124, 128 (1 st Cir.1991); *Boldini,* 928 F.Supp. at 133. If an employer can demonstrate that its reason for termination was not causally linked to the employee's disability, the Act has not been violated. *See Golson v. Runyon,* 812 F.Supp. 558, 560 (E.D.Pa.1993).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1133066 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

***5** Additionally, under the well-established principles set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and subsequently refined in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248 (1981), once a plaintiff has established a prima facie case of discrimination the burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason for termination. *See Griffiths v. Cigna Corporation,* 988 F.2d 457, 469 (3d Cir.1993), *overruled by Miller v. Cigna Corp .,* 47 F.3d 586, 596 n. 8 (3d Cir.1995) (the court improperly charged the jury both on the burden of proof on the retaliatory discharge claims and on the elements of the malicious prosecution claim); *Boldini,* 928 F.Supp. at 132. Once the defendant has provided a legitimate reason for termination, plaintiff is then required to articulate specific facts which would "enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real motive: ... discrimination." *Boldini,* 928 F.Supp. at 133 (quoting *Medina-Munoz,* 896 F.2d 5, 9 (P.R.1990). In other words, plaintiff must show that the employer's explanation for termination is not credible, *Burdine,* 450 U.S. at 256, and that it is merely a pre-text for discrimination. *See Spells v. Cuyahoga Community College,* 889 F.Supp. 1023, 1028 (N.D.Ohio 1994).

Defendant has satisfied its burden of production by providing specific facts substantiating the grounds for discharge, namely the altercation with Binski. The timing of defendant's action further supports its legitimacy. Immediately following the altercation with Binski, the USPS placed plaintiff on emergency off-duty status. The USPS promptly sent plaintiff a letter stating in clear terms that he was being suspended for violating the USPS Code of Conduct which prohibits violence on the work-room floor. (Def. Exhibit F). The Postal Inspection Service engaged in a thorough investigation of the incident, and DeRosa conducted a pre-disciplinary interview with plaintiff. Following the investigation, plaintiff was terminated from the USPS effective April 22, 1996, for violating USPS and Labor Relations standards. The record indicates the matter was appropriately explored and that defendant provided a legitimate non-discriminatory justification for discharging plaintiff.

The burden then shifts to plaintiff to show defendant's behavior was merely a pretext for discrimination. Plaintiff makes a conclusory statement that defendant's explanation was pretextual because it "defies logic, and denies that that incident was itself an act of discrimination, caused by the discrimination of Binski...." (Pl. Br. at 17). However, plaintiff has failed to provide any reasonable evidence demonstrating discriminatory animus on behalf of the defendant. In fact, plaintiff does not deny or rebut the incident with Binski which led to his immediate discharge. It is insufficient to merely offer a conclusory statement that defendant's explanation is pretextual without providing the Court with some evidence of which a fact-finder could reasonably either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Walton v. Mental Health Ass'n,* 168 F.3d 661, 668 (3d Cir.1999) (quoting *Lawrence v. National Westminster Bank N.J.,* 98 F.3d 61, 66 (3d Cir.1996)). Plaintiff has failed to provide sufficient evidence to raise a genuine issue of material fact as to whether defendant's proffered explanation for termination was not its true reason for discharge. *See id.*

***6** Plaintiff suggests that his reassignment to the Hawthorne branch, following the arbitrator's decision, is evidence of defendant's disability discrimination. However, a federal employer is not required to create a job for a disabled employee, nor is it obligated to reassign the employee if it would cause undue hardship to the employer. *See Mengine,* 114 F.3d at 418; *Shiring v. Runyon,* 90 F.3d at 831. Furthermore, plaintiff bears the burden of pointing to an equivalent, available position at the USPS, of which he is capable of performing the essential functions of the job. *See Mengine,* 114 F.3d at 418.

Plaintiff took no action to satisfy this burden. Rather, he simply resigned under alleged duress. In fact, the union shop steward testified that he informed plaintiff the union could work with USPS management to locate him a position at a different branch, but that plaintiff refused the offer and stated he did not want to return to the USPS in any capacity. (Robert Calia Dep. at 10-11, 22-25, 31). Plaintiff thus chose not to participate in finding alternative placement, and as such, the USPS was not required to locate him a position for reassignment. *See Shiring v. Runyon,* 90 F.3d at 831.

Plaintiff points to alleged racial and religious discrimination against co-workers Barbee and Schultz as evidence of the "res gestate" of discrimination that existed at the Hawthorne branch. However, pursuant to Federal Rules of Evidence 401 and 403, plaintiff may not use evidence of one type

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Page 5
Not Reported in F.Supp.2d, 2000 WL 1133066 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

of discrimination to prove discrimination of another type. *See* *Kelly v. Boeing Petroleum Svcs.,* Inc., 61 F.3d 350, 357-360 (5 th Cir.1995) (holding comments pertaining to race, sex and origin have no tendency to prove disability discrimination and were therefore rightly excluded pursuant to Federal Rules of Evidence 401 and 403); *Rauh v. Coyne,* 744 F.Supp. 1181, 1183 (D.D.C.1990) (finding that plaintiff alleging gender discrimination may not introduce evidence of racial discrimination because it is not relevant under Federal Rules of Evidence 401 and would result in unfair prejudice outweighing any probative value pursuant to Federal Rules of Evidence); *see also Rivera v. Baccarat,* No. 95CIV-9478, 1997 WL 777887, at *2 (S.D.N.Y. Dec. 15, 1997) (holding allegations of race and gender discrimination are irrelevant to claims of national origin discrimination and are thereby inadmissible).

Plaintiff has failed to provide the Court with evidence that his termination was a result of discriminatory animus towards the disabled. To the contrary, he stated he was not the only disabled employee at the Hawthorne branch but that he was the only such individual discriminated against. (Pl.Dep. Tr. 106-107). In light of the legitimacy of defendant's actions and plaintiff's failure to rebut the inference that his termination was not pretextual or based upon his disability, summary judgment is appropriate.

B. Hostile Work Environment

***7** Hostile work environment claims are normally brought with claims of sexual harassment rather than with disability claims. *See* *Silk v. City of Chicago,* 194 F.3d 788, 803 (7 th Cir.1999). As such, neither the Supreme Court nor the Third Circuit have conclusively determined whether the Rehabilitation Act or ADA create such a cause of action. *See* *Vendetta v.* Bell Atlantic Corp., No. CIV.A.97-4838, 1998 WL 575111, at *9 (E.D.Pa. Sept. 8, 1998). However, since Title VII acknowledges a hostile work environment claim, and the ADA and Rehabilitation Act are guided by similar principles of prohibiting employment discrimination, courts have generally permitted such a claim. [FN2] *See* *Walton,* 168 F.3d at 666; *Newman,* 60 F.3d at 157-58 (stating that because the ADA was modeled after the Rehabilitation Act and simply expands it into the private sector, "Congress has directed that the two acts' judicial and agency standards should be harmonized"); *Vendetta v. Bell Atlantic Corp.,* 1998 WL 575111, at *9; *Presta v. S.E.P.T.A.,* No. CIV.A.97-2338, 1998 WL 310735, at *13 (E.D. Pa. June 11, 1998).

> FN2. Many circuits have proceeded on the assumption that a hostile environment cause of action is created under the ADA or Rehabilitation Act without confirming the claim exists. *See e.g.,* *Walton,* 168 F.3d at 666-67 ("We will assume this cause of action without confirming it ..."); *Newman,* 60 F.3d at 156-57 ("The parties on appeal assume that this case law informs the standards of causation under the ADA and we now so hold."); *Spells,* 889 F.Supp. 1023, 1027 (N.D.Ohio 1994) ("This type of claim, well established under Title VII ... has been recognized under the Rehabilitation Act."); *Pendleton v. Jefferson Local School District Board of Education,* No. CIV.A.91-3126, 1992 WL 57421, at *5 (6 th Cir. March 25, 1992) ("[T]his circuit and several others have applied Title VII theories in deciding § 794 cases."). Indeed, this Court has not discovered any case deciding that a plaintiff cannot assert such a claim under the Rehabilitation Act.

Furthermore, courts routinely interchange employment discrimination case law under the ADA, Rehabilitation Act and Title VII, when there is no material difference at issue. *See* *Walton,* 168 F.3d at 666; *Newman,* 60 F.3d at 157. In the few cases within the Third Circuit in which the issue has arisen, courts have proceeded assuming that such a cause of action exists. *See* *Walton,* 168 F.3d at 667; *Vendetta,* 1998 WL 575111, at *9; *Miller v. Cohen,* 52 F.Supp.2d 389, 400 (M.D.Pa.1998). For this reason, the Court will recognize hostile work environment claims under the Act.

A hostile work environment claim on the basis of disability, similar to that under Title VII, requires a showing that: "(1) [plaintiff] is a qualified individual with a disability under the [Rehabilitation Act]; (2)[he] was subject to unwelcome harassment; (3) the harassment was based on [his] disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and to create an abusive working environment; and (5) that [the USPS] knew or should have known of the harassment and failed to take prompt effective remedial action." *Walton,* 168 F.3d at 667; *see also* *Vendetta,* 1998 WL 575111, at *9.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Page 6
Not Reported in F.Supp.2d, 2000 WL 1133066 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

This Court previously found a question of fact as to whether Simonetti satisfied the first element-whether he is a qualified individual with a disability under the Act. *See* Simonetti, 1999 WL 47144, at *11. The record also compels the Court to find a genuine issue of material fact as to the remaining elements.

Upon examining the second element-unwelcome harassment, several disputed issues of fact lead to this Court's finding. First, Simonetti states both in his affidavit and deposition that he experienced continuous harassment for being disabled, including remarks that he was a "faker" and "unable to lift a pound." (Pl. Affid. at 4). Supervisors Ott and DeRosa dispute such a claim of ongoing harassment. *See* *Vendetta,* 1998 WL 575111, at *9 (finding unwelcome harassment and lack of appropriate remedial action present question of fact). Plaintiff states that the situation was exacerbated when co-workers placed heavy tubs on the floor, knowing plaintiff would have to lift them and that his disability prevented him from doing so. (Pl. Br. at 23-24). Marion Adams, an employee also working in the "box" section, disputes plaintiff's allegation and instead claims that the parcels she and plaintiff handled were "fairly light". (Adams Dep. at 9). *See* *Miller,* 52 F.Supp.2d at 402 (finding ongoing comments that plaintiff was faking her disability, in conjunction with supervisors making plaintiff lift boxes beyond her capability, present question of fact as to whether plaintiff suffered unwelcome harassment on the basis of disability).

***8** Plaintiff also claims the harassment caused him to feel physically threatened, particularly when co-worker Binski stated that he was going to "kick his ass," indicating the possible severity of the harassment. (Pl. Affid. at 5). *See* *Hiller,* 95 F.Supp.2d at 1024 (holding harassment occurring on a continuous basis and at times physically intimidating, presents a genuine issue of material fact).

The Court finds that plaintiff presents a genuine issue of fact as to the third element-that the alleged harassment was based on Simonetti's disability. Several factors lead to this determination. First, Simonetti states that the harassment did not begin until he was assigned to the Hawthorne branch as a light-duty employee. *See* *Hiller,* 95 F.Supp.2d at 1024 (finding that harassment beginning after plaintiff returned from testicular surgery was a factor in determining that third element presented a question of fact). The names co-workers called him such as "disability chaser" and "faker", and the comments directed towards him such as "they cleared a special slot on the beach for [him] for being a disabled person with [his] wheelchair ...," (Pl. Affid. at 5-6), suggest the harassment was directed at and a result of plaintiff's disability. *See* *Miller,* 52 F.Supp.2d at 401-02 (holding that co-workers comments that plaintiff was "faking it" raise an issue of material fact as to whether she suffered from intentional discrimination on behalf of her disability); *Vendetta,* 1998 WL 575111, at *9 (holding comments made directly to plaintiff about his disability supports claim that the discrimination was based on his disability). Plaintiff attributes such comments and behavior to the fact that he performed light-duty work at the USPS and was limited in the amount of weight he could lift.

Second, plaintiff indicates there was a climate of hostility at the Hawthorne branch in which it was common to make fun of people for their differences. *See* *Hiller,* 95 F.Supp.2d at 1024 (holding that experiences of other co-workers suggesting there was a climate of hostility towards disabled employees presents question of fact as to whether harassment was based on plaintiff's disability).

The USPS argues that plaintiff may not rely merely on his own testimony to show that his supervisors' behavior was incited by discriminatory animosity towards the disabled. The Third Circuit has stated however, that "[t]here is simply no rule of law that provides that a discrimination plaintiff may not testify in his or her own behalf, or that such testimony, standing alone, can never make out a case of discrimination that will survive summary judgment ." *Miller,* 52 F.Supp.2d at 402 (quoting *Jackson v. University of Pittsburgh,* 826 F.2d 230, 236 (3d Cir.1987)). Disability discrimination is often difficult to prove because the victims come to the legal process with no witnesses and very little direct evidence of the harassment they have suffered. *See id.* The legal system therefore permits plaintiffs to prove disability discrimination claims by direct or circumstantial evidence. *See id.* As such, the record contains evidence from which a jury could infer that plaintiff was subjected to harassment on the basis of his disability.

***9** In establishing the fourth element, the existence of an "abusive working environment," plaintiff must show the workplace was objectively hostile or abusive, *see* *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22 (1993), and was permeated with "discriminatory intimidation, ridicule, and insult," *Meritor Savings Bank,* 477 U.S. 65, 65 (1986), that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1133066 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 7

abusive working environment." *Id.* at 67; *see also* Harris, 510 U.S. at 21; Walton, 168 F.3d at 667; *Bouton v. BMW of North America, Inc.,* 29 F.3d 103, 106 (3d Cir.1994); *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir.1990). The Supreme Court describes the *Meritor* standard as "a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Harris,* 510 U.S. at 21. The Court further clarifies that "mere utterance of an ... epithet which engenders offensive feelings in a[n] employee," *Meritor Savings Bank,* 477 U.S. at 67, does not sufficiently affect the conditions of employment necessary to establish a hostile work environment. *See Harris,* 510 U.S. at 21. In making such a determination, the Court must look to factors such as: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23.

As to this fourth element, plaintiff has also demonstrated a genuine issue of material fact. Simonetti claims the repeated taunting by co-workers and supervisors regarding his disability created an abusive work environment. A reasonable juror could find that continuous, humiliating and sometimes threatening comments directed at plaintiff's physical capabilities reach the level of severity required to satisfy a hostile work environment claim. *See Easley v. West,* NO. 93-6751, 1994 WL 702904, at *7 (E.D.Pa. Dec. 13, 1994) (holding that an employee's actions present question of fact as to whether comments were pervasive and imposed detrimental effect on plaintiff). The Court recognizes that "discrimination cases often depend on inferences rather than direct evidence, and therefore summary judgment should not be granted unless the evidence could not support any reasonable inference for the non movant." *Hiller,* 95 F.Supp.2d at 1026. That Simonetti's allegations may be disproved at trial is irrelevant to the summary judgment motion before the Court. *See Easley,* 1994 WL 702904, at *8. Plaintiff's allegations of a hostile work environment create a factual dispute that should ultimately be resolved at trial where the fact-finders can determine the credibility of the litigants. *See id.*

Questions of fact also permeate the fifth element-whether plaintiff's supervisors were aware of the ongoing harassment. Simonetti allegedly informed supervisors Ott and DeRosa of the insulting comments but claims they took no action to prevent such behavior, and in fact, participated in the taunting remarks. (Pl. Br. at 5-6). Plaintiff alleges Binski told DeRosa of his dislike for plaintiff by stating that plaintiff "could do all aspects of the job and that [he] was a faker...." (Pl. Br. at 8). Quite differently, Ott and DeRosa claim they were unaware of any discriminatory remarks directed towards plaintiff, and that plaintiff failed to bring this matter to their attention. As such, a genuine issue of material fact exists as to whether the supervisors were aware of or participated in the discriminatory acts and whether they failed to take remedial action. Therefore, summary judgment is not appropriate.

C. Retaliation

***10** Several recent Third Circuit decisions have held that a plaintiff may go forward on a discriminatory retaliation claim even if plaintiff's underlying disability claim fails. *See Mondzelewski v. Pathmark Stores, Inc.,* 162 F.3d 778, 786 (3d Cir.1998); *Krouse v. American Sterilizer, Co.,* 126 F.3d 494, 498 (3d Cir.1997). To establish a prima facie case of retaliation under § 704(a) of Title VII, plaintiff must demonstrate that: (1) he engaged in an activity protected under Title VII, (2) the employer partook in an adverse employment action after or in conjunction with plaintiff's protected activity, and (3) that there is a causal connection between plaintiff's participation in the protected activity and the employer's adverse action. *See Nelson v. Upsala College,* 51 F.3d 383, 386 (3d Cir.1995); *Griffiths,* 988 F.2d at 468; *Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir.1989), *cert. denied,* 493 U.S. 1023. Similar to disability discrimination claims, retaliation claims also follow the *McDonnell Douglas Corp.* burden shifting analysis discussed above. *See Griffiths,* 988 F.2d at 468.

Plaintiff alleges he was terminated in retaliation for complaining about Rehabilitation Act violations and harassment suffered by him and others at the Hawthorne branch. Plaintiff alleges the animosity between he and his supervisors began when he refused to testify against a co-worker in a time card fraud investigation occurring three years prior to plaintiff's termination.

This Court finds plaintiff does not satisfy the third element of a retaliation claim nor the burden of production under the *McDonnell Douglas Corp.* burden shifting analysis. Plaintiff has failed to establish a causal connection between his alleged complaints of harassment and refusal to testify in an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1133066 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 8

investigation that occurred three years prior to his termination, with his immediate removal following the altercation with Binski. As discussed above, the USPS has established a legitimate, non-discriminatory reason for discharge. Plaintiff has failed to provide any reasonable evidence supporting the claim that defendant's reason for discharge was a pretext for retaliation on the basis of plaintiff's disability. As such, summary judgment is appropriate.

*CONCLUSION*

For the above reasons, the Court will deny defendant's motion for summary judgment with respect to plaintiff's hostile work environment claim under the Rehabilitation Act, and grant the motion with respect to all other claims.

An appropriate Order is attached.

*ORDER*

In accordance with the Court's Opinion filed herewith,

It is on this 7 th day of August, 2000

ORDERED that defendants' motion with respect to plaintiff's hostile work environment claim for summary judgment is denied; and it is further

ORDERED that defendant's motion for summary judgment with respect to all other claims is granted; and it is further

ORDERED that the parties are directed to contact Magistrate Susan Davis for a final pre-trial conference prior to the scheduled trial date of October 18, 2000.

D.N.J.,2000.
Simonetti v. Runyon
Not Reported in F.Supp.2d, 2000 WL 1133066 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 2:98CV02128 (Docket) (May. 07, 1998)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.