# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| **CAPTAIN BARBARA L. CONLEY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COLONEL L. AARON CHAFFINCH,** | : | **C.A.No.04-1394-GMS** |
| **individually and in his official capacity as the** | : | |
| **Superintendent, Delaware State Police;** | : | |
| **LIEUTENANT COLONEL THOMAS F.** | : | |
| **MACLEISH, individually and in his official** | : | |
| **capacity as the Deputy Superintendent, Delaware** | : | |
| **State Police; DAVID B. MITCHELL, individually** | : | |
| **and in his official capacity as Secretary of the** | : | |
| **Department of Safety and Homeland Security,** | : | |
| **State of Delaware; and DIVISION OF STATE** | : | |
| **POLICE, DEPARTMENT OF SAFETY AND** | : | |
| **HOMELAND SECURITY, STATE OF** | : | |
| **DELAWARE,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## PLAINTIFF'S FIRST MOTION IN LIMINE TO EXCLUDE DEFENDANTS' UNTIMELY IDENTIFIED WITNESSES

**THE NEUBERGER FIRM, P.A.**
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: March 29, 2006                    Attorneys for Plaintiff

**A. Introduction.** Three months prior to the discovery cut-off date on December 31, 2005, the defendants identified approximately 24 new witnesses. (D.I. 82). Originally, the defendants identified only four witnesses in their Rule 26 disclosures. (D.I. 56). Due to the impending discovery cut-off date, on September 22, 2005 plaintiff served interrogatories seeking to identify the facts known to each of these witnesses. (See D.I. 83). Defendants filed their responses on October 24, 2005 which were plainly insufficient under the Federal Rules of Civil Procedure. (See D.I. 99). Additionally, defendants further complicated matters by adding 13 new witnesses into the mix within their responses. Thus, two months prior to the conclusion of the discovery period, defendants had identified a total of 37 new fact witnesses.

Subsequently, defendants were ordered by the court to submit supplementation to their previous interrogatory responses and the names of witness they intended to drop by December 15, 2005. Defendants served their first supplementation on December 15th, but identified nine more fact witnesses. Defendants later indicated their intent to drop six witnesses, one of which has since been added back.[1] Supplements addressing the anticipated testimony of these witnesses have continued to be served on plaintiff since discovery has ended, with the latest one on March 6, 2006. (See D.I. 119, 125, 128, 163). Thus, since their initial disclosures of April 4, 2005, defendants have identified a total of **41 new witnesses**.

**B. Defendants' Untimely Identification of 41 New Witnesses.** Fed.R.Civ.P. 26(a)(1)(A) requires that without awaiting a discovery request, parties must disclose the names

---

[1] In a December 27th email, defense counsel indicated their intent to abandon use of six witnesses. (Tab A). However, in defendants' Fifth Supplementation served on March 6, 2006, one of these witnesses was added back. (Tab B).

of individuals likely to have discoverable information that the party may use to support its claim or defense. According to the Court's scheduling order, these initial disclosures were to be filed by April 4, 2005. When defendants identified a mere four witnesses, plaintiff mapped out her discovery schedule accordingly. Yet, from September 21, 2005 through the discovery cut-off date, defendants identified 41 new fact witnesses. The witnesses identified in defendants' supplements and answers to interrogatories were clearly within their purview during the discovery period. Consequently, plaintiff has been denied a fair and full opportunity to depose these fact witnesses due to defendants' refusal to comply with the Court's Scheduling Order.

At the November 2005 chambers conference with the Court, defendants claimed the late disclosures were due to their continued investigation and interviewing of police officers and employees. (Tab C at 44). Defendants told the Court that plaintiff would have the remaining discovery and the required disclosure information identifying the subjects about which the witness would testify by December 15th, so plaintiff could determine if depositions would be necessary.

> Mr. Durstein:    I expect that as to those 25 witnesses,[2] the new ones that were identified the plaintiff will have within ten days, two weeks, detailed information about what their testimony could be, which ought to be sufficient to determine if their depositions need to be taken.

> \* \* \*

> Court:    When can you get that, Mr. Durstein?

> Mr. Durstein:    Our last interviews are the first week of December. December 15?

> \* \* \*

---

[2] At the time, the newly identified witnesses were believed to total 25.

2

> Mr. Durstein:    December 15 as a deadline will work for us because we will have
> spoken to all these folks.

(Tab C at 44-45). Defendants served the supplementation on December 15th, but amazingly proceeded to add an additional nine more witnesses. Moreover, defendants have since filed three more supplements on December 21st and 27th, with the latest one on March 6, 2006.

Defendants had a duty under the rules to identify witnesses in a timely fashion within the confines of the Court's Scheduling Order. Although defendants admittedly had not completed their investigation and interviews (Tab C at 44), it is clear that "[a] party must make its initial disclosures based on the information then reasonably available to it and *is not excused from making its disclosures because it has not fully completed its investigation of the case...*" Fed.R.Civ.P. 26(a)(1). The complaint was served on defendants in October of 2004. Defendants had more than enough notice of the issues of the case to identify witnesses by April of 2005.

If defendants had identified their witnesses in accord with the requirements of the Scheduling Order, plaintiff would have had an appropriate amount of time to determine which witnesses needed to be deposed. However, in September of 2005, because of defendants' untimely improper supplement to their initial disclosures, plaintiff was faced with the decision of who to depose without any indication as to what the 24 witness would say. Accordingly, plaintiff filed interrogatories in order to make an informed decision regarding who to depose. Yet, defendants further impeded plaintiff's discovery by vaguely responding and adding 13 more witnesses, which ultimately required intervention of the Court. Then in the midst of this and in disregard of the Court's orders, defendants identified nine more witnesses, 16 days

before discovery concluded. Defendants also failed to give plaintiff descriptions of the witnesses' testimony by the promised date. The defense intent to sandbag plaintiff with this plethora of new witnesses at such a late date is clear. As a result, defense use of these 41 belatedly identified witnesses should be precluded as untimely under the Rules of Civil Procedure.

**C. Defendants Refused to Attend December Depositions.** On the heels of defendants' December 15th identifications, plaintiff diligently attempted to mitigate the harm being suffered by promptly noticing the depositions of three of the witnesses, Lt. Curt Brown, Peter Schwartzkopf, and Pete Fraley, in an attempt to depose as many of these witnesses as possible before the December 31st discovery cut-off. (D.I. 123-124). However, defendants refused to attend these depositions or produce the witnesses. (Tab D - 12/20/05 email from Mr. Durstein to Mr. Neuberger). The defense claim that they were unable to attend the depositions given the holiday season is of no accord given their untimely identification of 41 new witnesses two weeks prior to the discovery cut-off date. In an attempt to complete discovery before the cut-off date as the Court strictly requires, plaintiff noticed the depositions of a mere three of these witnesses, yet defendants still refused to attend. Defendants had a duty under the civil rules to identify these witnesses in April 2005 and their failure to abide by the Scheduling Order has severely prejudiced plaintiff in her trial preparations and prosecution of this case because the discovery cut-off bars plaintiff from deposing any of these 41 hostile witnesses defendants intend to use against her.

Consequently, plaintiff should not have to suffer prejudice to her case because of defendants' failure to identify these witnesses and provide the information required by the civil

rules until the eleventh hour.  Moreover, the defense effort to extend the discovery period and permit plaintiff to take depositions in January, February, March and April 2006 was patently unreasonable given summary judgment briefing, the pretrial submissions schedule and the Court's own strict Scheduling Order deadlines.   Plaintiff's counsel planned their busy schedules and calendars for the next year around the dates and deadlines set by the Court all the way back in the March 2005 Scheduling Order.  The defense failure to abide by these dates and deadlines should not come at plaintiff's expense and prejudice.  The untimely defense identification and refusal to attend a mere three depositions as plaintiff struggled to comply with the discovery cut-off, reveals an illicit defense intent to sandbag plaintiff and frustrate her ability to complete discovery.

**D. Conclusion.**  Consequently, plaintiff Moves that defendants be prohibited from calling any of these 41 witnesses due to the defense failure to identify these witnesses in a timely fashion and the defense refusal to attend any of the duly noticed depositions prior to the discovery cut-off.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**


/s/ Thomas S. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: March 29, 2006          Attorneys for Plaintiff

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CAPTAIN BARBARA L. CONLEY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COLONEL L. AARON CHAFFINCH,** | : | **C.A.No.04-1394-GMS** |
| **individually and in his official capacity as the** | : | |
| **Superintendent, Delaware State Police;** | : | |
| **LIEUTENANT COLONEL THOMAS F.** | : | |
| **MACLEISH, individually and in his official** | : | |
| **capacity as the Deputy Superintendent, Delaware** | : | |
| **State Police; DAVID B. MITCHELL, individually** | : | |
| **and in his official capacity as Secretary of the** | : | |
| **Department of Safety and Homeland Security,** | : | |
| **State of Delaware; and DIVISION OF STATE** | : | |
| **POLICE, DEPARTMENT OF SAFETY AND** | : | |
| **HOMELAND SECURITY, STATE OF** | : | |
| **DELAWARE,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**ORDER**

This _____ day of _____, 2006, it is hereby

ORDERED that the defendants be prohibited from calling any of the 41 witnesses due to the

defense failure to identify these witnesses in a timely fashion and the defense refusal to attend

any of the duly noticed depositions prior to the discovery cut-off.

_____

**THE HONORABLE GREGORY M. SLEET, U.S.D.J.**

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that

on March 29, 2006, I electronically filed this **Motion** with the Clerk of the Court using

CM/ECF which will send notification of such filing to the following:


Ralph K. Durstein III, Esquire
Department of Justice
Carvel State Office Building
820 N. French Street
Wilmington, DE 19801

James E. Liguori, Esquire
Liguori, Morris & Yiengst
46 The Green
Dover, DE 19901


/s/ Stephen J. Neuberger
**STEPHEN J. NEUBERGER, ESQ.**

Conley / Pretrial / Motion in Limine - Ds Witnesses. FINAL

Tab

A

## Thomas S. Neuberger, Esquire

**From:**     "Ballard Stephani (DOJ)" <Stephani.Ballard@state.de.us>
**To:**       "Thomas Stephen Neuberger, Esquire" <TSN@NeubergerLaw.com>; "Durstein III Ralph (DOJ)"
              <Ralph.Durstein@state.de.us>; "Stephen J. Neuberger" <SJN@NeubergerLaw.com>
**Cc:**       "james liguori" <jel_lmy@msn.com>; "Ballard Stephani (DOJ)" <Stephani.Ballard@state.de.us>
**Sent:**     Tuesday, December 27, 2005 11:08 AM
**Subject:**  RE: Conley v. Chaffinch

Counsel,
I write to address several of the issues raised in Steve's 12/23 email, and to correct one representation in our
12/24 response:

1) The correction first: Defendants do retain **Louis O'Day** as a potential witness. Counsel for Col. Chaffinch has
indicated that he could call O'Day as a witness also. The substance of his testimony is of the same nature as that
of William Dudley, which was described in our 2nd Supplementation of Initial Disclosures (12/15/05). Louis
O'Day's name should have appeared therein. This was an oversight on my part. Mr. O'Day is well known to your
client as her former supervisor at Troop 5, and he is referenced in numerous Conley troop file documents.
Additional information about the nature of his testimony was supplied in Defendants' 10/24/05 responses to
Plaintiff's Interrogatories. I will file a formal supplementation before the end of the discovery period to make the
record complete. ~~You are correct that we do not plan to pursue Boyce, Chandler, McKnatt, Shockley, Vickers~~ or
~~Workman~~ as witnesses, unless necessary for impeachment or rebuttal.

2) As noted in the emails about the vacating the 12/28 depositions, due to unavailability of counsel and witnesses
on short notice, I want to emphasize that Defendants <u>do</u> plan to use **Brown, Fraley and Schwartzkopf** as
witnesses and you should feel free to notice their depositions. It is your choice. Defendants will make them and
ourselves available upon reasonable notice. Steve's statement that Rep. Schwartzkopf's legislative duties would
preclude any deposition until after June is not correct. As you know, the legislature has several breaks and is not
in session on Mondays or Fridays. Rep. Schwartzkopf is aware of this litigation, and will certainly appear if his
deposition is noticed. I also note for the record that it was Plaintiff who initially identified Rep. Schwartzkopf as
one of her own potential witnesses in her 4/4/05 initial disclosures (item "A", p.2).

3) To address the statement "The remaining 5 are not my witnesses. If you would speak with Ballard you would know
this. At her request that happened. If they are your witnesses, tell me now and give the information which was due on Dec.
15th by the next work day."

I do not know what "request" I purportedly made. The "remaining 5" I understand to refer to **"Waggamon,
(Joseph) Swiski, Downes, Ellingsworth and McQueen."** The record should be clear on this:

- Plaintiff identified these 5 witnesses, as part of a list of more than 58 witnesses in her 4/4/05 Initial
  Disclosures (item "A", p.2-3)
- Tom Neuberger next sent the email below on 4/6/05, not only reiterating these persons as witnesses,
  but stating his intent to depose them. (As it turns out, Plaintiff chose to depose only Downes from among
  these 5).

> -----Original Message-----
> **From:** Thomas S. Neuberger, Esquire [mailto:TSN@NeubergerLaw.com]
> **Sent:** Wednesday, April 06, 2005 1:36 PM
> **To:** James E. Liguori, Esq.; Durstein III Ralph (DOJ)
> **Cc:** Joseph Robert; Stephen J. Neuberger (work)
> **Subject:** Conley v. Chaffinch, rule 26 amendment and notices of further depositions
>
> Ralph and Jim,
>
> Please accept this as a supplement to my rule 26 disclosures. I am adding retired Capt. Greg
> Warren and retired Personnel Director John Dillman to my list of fact witnesses.
>
> I also identify below the second round of witnesses I will depose in this case.

Ret. Col. Alan Ellingsworth
Ret. Lt. Col. William Waggamon
Ret. Col. Jerry Pepper
Ret. Major Joseph Swiski
Ret. Major David Baylor
Capt. Glen Dixon
Capt. Harry Downes
Capt. Nathaniel McQueen
Capt. Mary-Ann Papili
Lt. Alice Bailey
Ret. Lt. Frank Chandler

I believe they will take about four days to depose.  Please advise by next Monday which of the following days you are available to conduct these depositions:  June 6-10, 13-17, 20-21, 28-30.

Thank you.

Tom Neuberger

I think this makes clear that these witnesses were initially identified as relevant to this case by Plaintiff, not Defendants.  Defendants have every right to speak to and potentially call at trial witnesses identified by the Plaintiff.   While I do not believe that Defendants are obliged to tell Plaintiff the substance of testimony that could be given by witnesses she, herself, has identified, we will supplement as to these 5 (Downes by reference to his deposition) as requested.

Contrary to a statement made by Plaintiff's counsel in one of these emails, neither party agreed at the office conference with Judge Sleet to identify which witnesses will actually be used at trial by the end of this year.  Our promise to the court was to provide information to Plaintiff as to substance of testimony for <u>potential</u> witnesses for the defense, so that Plaintiff could decide who, if any, to depose.  That has been done.  Actual trial witnesses will be identified at a later date set by the Court.

4) **Timing of Depositions.**  Finally, Dirk is absolutely correct that no one (I believe I can say the Judge included) expected Plaintiff to take depositions of the defense witnesses by the December 31, 2005.  If you will review the transcript of the office conference (pp. 27-28) you will see that we specifically indicated our willingness to hold depositions in January or February, at Plaintiff's option.  See also pp. 44-45.  We are still approximately 6 months from trial, giving Plaintiff ample time to decide if and how to use information provided by these witnesses.

We again note for the record that we will stipulate to depositions in the new year, which Plaintiff feels are necessary from among Defendants' witnesses.  A call or email ahead to check potential dates would be much appreciated.

Stephani

-----Original Message-----
**From:** Thomas Stephen Neuberger, Esquire [mailto:TSN@NeubergerLaw.com]
**Sent:** Saturday, December 24, 2005 10:24 PM
**To:** Durstein III Ralph (DOJ); Stephen J. Neuberger
**Cc:** Ballard Stephani (DOJ)
**Subject:** Re: Conley v. Chaffinch

Ralph,

I see that Steve was able to send out my drafted response to your earlier email under his signiture.

We stand on the record. Your dispute is with me, not Steve. Your misstating the record and your intentions does not change the facts or your sandbagging tactics. The pretrial conference will resolve any outstanding issues which arise from your abuse of the discovery process. For now we will proceed to summary judgment briefing as the scheduling order provides.

Concerning Waggamon, Swiski, Downes, Ellingsworth, and McQueen, I see you now indicate that they are fact witnesses who you choose to use, contrary to the reasonable inferences from your prior communications. At least you have now taken a position on them and indicated the tenor of any possible testimony from them. The record in this respect is now clear.

At least by not giving me any contrary indication or purported testimony, you have now indicated that Boyce, Chandler, McKnatt, O'Day, Shockley, Vickers and Workman are not your witnesses. I will rely on this fact and act accordingly.

Tom

cc: client

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Thomas S. Neuberger, Esquire
The Neuberger Firm
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582; Fax: (302) 655-9329
EMail:  TSN@NeubergerLaw.com
www.NeubergerLaw.com

----- Original Message -----
**From:** Durstein III Ralph (DOJ)
**To:** Stephen J. Neuberger
**Cc:** Thomas S. Neuberger ; Ballard Stephani (DOJ) ; Ballard Stephani (DOJ)
**Sent:** Saturday, December 24, 2005 4:41 PM
**Subject:** RE: Conley v. Chaffinch

Steve,

Do you think for once, if only in the spirit of the season, you could simply respond in a professional way, instead of your usual diatribe laced with insults, condescension, and wild allegations? The very last thing I want to do on Christmas Eve is respond to yet another unprovoked attack on my character. Surely a Judge who has admonished counsel to cooperate in scheduling does not need to see someone turn every petty disagreement into hostility and threats, albeit hollow ones. Surely by now you must realize that you accomplish nothing by this conduct? You are not going to intimidate me or Stephani or our clients or the Judge, no matter what lengths you are willing to pursue. I thought we had seen the worst of it with your pathetic attempt - rejected by Judge Sleet - to suggest that counsel should be arrested for "obstruction of justice" and "witness intimidation". I can imagine that you may feel overwhelmed, as you have said, by the sheer number of witnesses who are prepared to contradict the claims made by your client in her interrogatory answers and her deposition, and to testify concerning new matters found in the "Troop File" she recently provided. Unfortunately for you and your client, the mere presence of adverse fact witnesses does not violate the discovery rules, as Judge Sleet observed. There has been no "sandbagging". We have provided you with witness information beyond what the Rules require, within days of interviewing these witnesses for the first time. Your client has not been prejudiced unfairly, in that we have responded as directed by Judge Sleet. [If you want to raise an issue with the Judge about the three witnesses we were unable to interview until this week, causing discovery as to them to be delayed by six days, be my guest.]

My experience in federal court over the past twenty-five years has obviously been very different from yours. I have found that the Judges regard scheduling deadlines as flexible, and subject to modification where common

sense and the interests of justice require. I have seen none of the slavish devotion to deadlines that you describe. You will find that discovery deadlines are commonly extended, and depositions are regularly taken up until trial. We are all too busy, that is true; but we have to adapt to the Court's directives. From the Court's perspective, the emphasis is normally one of getting necessary discovery done in order to afford sufficient time for consideration of motions, and getting the balance of discovery done so that trial does not need to be continued. That is why I suggested at the office conference, and the Court agreed, that we could proceed on "two tracks", with the depositions of fact witnesses you want to take, and with briefing on our motion for partial summary judgment. If you do not feel able to take depositions during the two weeks allotted for an answering brief, than we are willing to schedule your depositions into February. It is ludicrous for you now to suggest that you seriously intended to take twenty-five or more depositions between December 15 and December 31. And if you did, why didn't you bother to try and reserve blocks of time while we were at the conference with Judge Sleet, or immediately thereafter, instead of waiting until this week, and never bothering to contact defense counsel in advance? I don't think anyone contemplated that the depostions would or could be taken before the end of the year.

You take the positon that discovery as to Count I is closed, and [in a complete reversal of field] now contend that discovery as to Counts II and III is open? With the exception of the Tupman deposition, I don't know of any other outstanding discovery on those claims. We plan to file the motion for partial summary judgment, as indicated to Judge Sleet. I anticipate that we will attach affidavits, as permitted by Rule 56. Your position on discovery runs contrary to Judge Sleet's rulings at the last conference. As you will recall, he denied your attempts to prevent the defense from identifying additional witnesses in response to your client's claims, and deferred any decision on the admissibility of their testimony to motions in limine to be filed by the parties. Having failed in that attempt, you now seek again to prevent this adverse but admissible testimony, by simply refusing to take depositions within the ample time available to you. If you want to run the risk of a judicial ruling on such motions without taking depositions, you will be bound by your decision. Our position has always been that we will agree to extend the discovery deadline for the purpose of your taking depositions of defense witnesses. That is the direction the Court encouraged. We will sign a stipulation to that effect, and produce the witnesses, if you have the courtesy to provide sufficient notice. No one is preventing you from taking these depositions. And I am confident that, if asked, the Court would encourage you to go forward, rather than regurgitate failed arguments that only obstruct the process.

You have no basis to demand the affidavit of Vernon Thomas. If you have concerns about his testimony, you can notice his deposition. You have had the essential facts known to him for over a month. He has recently been arrested, is represented by the Public Defender, and thus is not readily available to attorneys from the State for purposes of an interview. He will be residing in State custody at SCI for the foreseeable future, so that there should be no problem finding him or planning for a deposition at the institution. The choice is yours.

Waggamon, Swiski, Downes, Ellingsworth, and McQueen would testify as to the process and necessary qualifications for promotion to the rank of Major, across several administrations. They are prepared to speak to the particular qualifications of Major Eckrich and Major Hughes, who your client has attacked. They would testify as to the importance of command experience, service in special units, criminal investigation, and rank and file support, all of which your client lacked. They can also testify as to indviduals among the twenty-one Captains in 2003, having superior qualifications for promotion to the rank of Major.

I believe that you are ignoring the understanding we had at the conclusion of the office conference with Judge Sleet. Your position is inconsistent with the course that Judge Sleet advised us to take. I urge you to reconsider the generous stipulation we have proposed to accomplish the remaining discovery you wish to take, while allowing sufficient time for Judge Sleet to consider the motions in limine. We appreciate your vacating the depositions noticed for next week. I am confident that we can reschedule those depositions, and any others you wish to take, in the near future.

Ralph K. Durstein III
Deputy Attorney General


-----Original Message-----
From: Stephen J. Neuberger [mailto:SJN@NeubergerLaw.com]
Sent: Fri 12/23/2005 2:17 PM
To: Durstein III Ralph (DOJ)
Cc: Thomas S. Neuberger
Subject: Re: Conley v. Chaffinch

Ralph,

Following up on your e-mail from earlier this week.

1. We do not agree to extend the discovery deadline, ever, at the chambers conference or otherwise. Nor do we agree to do so now. The discovery period was nearly one year long - which is more than enough time to conduct discovery. Had defendants been acting in good faith in identifying their witnesses, plaintiff would have had abundant time to take the depositions of all the witnesses who were identified in a timely fashion. Additionally, due to the various internal affairs investigations which you and your office participated in, you presumably already knew or reasonably should have known much of the information that you have belatedly identified.

Now is the time for complex briefing as well as complex trial preparation for 2 weeks of trial in the near future, as well as three consecutive weeks of trial in related DSP cases against the same defendants.

The court also has a complex pretrial process which we have to fulfill - which also takes time.

You seem to think this is Superior Court and scheduling orders are meaningless. This is the federal system. Deadlines are meaningful. We work within the schedules set by the rules - which allows the parties to secure the speed, just and inexpensive determination of every action. Our federal court does not operate under a system of trial by ambush.

We also have our other case obligations and deadlines - all of which have been set in reliance on the scheduling order that was imposed earlier this year.

You obviously waited until the end of the discovery period to sandbag us so this would affect our trial preparation time and time in other cases. The rules do not permit this. Scheduling orders allow attorneys to manage their work flow.

2. As Tom noted in his earlier e-mail to Stephani, I will vacate the three depositions scheduled for next week in light of your refusal both (1) to attend, and (2) to produce your own witnesses. It is now plaintiff's position that these witnesses cannot be used by you since you refused to attend their depositions or cooperate in scheduling them. Obviously Rep. Schwartzkopf will be unavailable for any later deposition due to his legislative duties through June.

3. Certainly discovery on Counts II and III is not closed. For example, we just took Tupman's deposition Wednesday. You misrepresent the record given the changed discovery landscape in light of your voluminous witness amendments and other written submissions to the Court and counsel.

4. Your claim that we do not need this info to brief summary judgment is wrong. On count I if we had the depositions we would be able to state that none of your purported witnesses will say under oath what you claim and use this as a substantive contradiction under Fuentes. But your lack of cooperation has materially prevented this.

5. You are even evasive on the question of the 15 persons I asked you to state unequivocally are no longer in the case. Instead, you say you have no further information. Are each of these 15 in or out? It appears you are saying Boyce, Chandler, McKnatt, O'Day, Shockley, Vickers and Workman are not your witnesses. Is that so?

You are getting close to approximately 45 newly identified witnesses, beyond the four you originally identified back in April. This is getting ridiculous.

You also say Moses is not a fact witness but only can authenticate exhibits.

It is not enough to say you will call prisoner Thomas, provide his affidavit so I can cross examine him on it. It does not appear that you have even spoken to him to determine that he stands by your false claim. This appears to

be a rule 11 violation. Anything else is hearsay.

I stand corrected on Walls.

The remaining 5 are not my witnesses. If you would speak with Ballard you would know this. At her request that happened. If they are your witnesses, tell me now and give the information which was due on Dec. 15th by the next work day.

6. I do not recede from all objections to the 9 new witnesses you wish to add to the mix.

7. Your claim that Liguori would have to attend all of this depositions is frivolous and just an obstructive excuse. You know that he has stated on the record the opposite and that he has attended none but Capt. Conley and Chaffinch.

-Steve

*********************************
Stephen J. Neuberger, Esq.
The Neuberger Firm
Attorneys and Counsellors at Law
Two East Seventh Street, Suite 302
Wilmington, DE 19801-3707
Phone: 302-655-0582
Fax: 302-655-9329
E-Mail: SJN@NeubergerLaw.com
----- Original Message -----
From: Durstein III Ralph (DOJ)
To: Thomas S. Neuberger, Esquire
Cc: Ballard Stephani (DOJ)
Sent: Tuesday, December 20, 2005 7:37 PM
Subject: RE: Conley v. Chaffinch

Tom:

I don't think anyone at the conference with Judge Sleet contemplated trying to schedule 25 depositions before the end of the year in this case. I certainly did not. Neither Stephani nor myself is available for the depositions you have noticed for next Wednesday. I would expect that everybody concerned has holiday plans. These and other depositions will simply need to be scheduled for dates after the first of the year, as we anticipated at the office conference. It's just not realistic to notice depositions at this time of year, with no advance warning. I wish you had taken the time to check on our availability, or called or sent an e-mail to discuss this, before burdening the record with deposition notices. I'm confident that we could have worked it out amicably, as Judge Sleet counseled us to do, given the flexibility built into the discovery deadline.

The aim at the recent office conference was to get you detailed information on the potential witnesses we had identified and interviewed by the December 15 deadline. We accomplished that. You have that information. You can make an informed decision as to who you want to depose. We have over five months until trial. As I stressed at the office conference, none of these witnesses have any testimony to offer with respect to the motion for summary judgment we will be filing. You have already acknowledged that discovery as to Counts II and III is closed. Judge Sleet's review of the motion can proceed, without regard for any of this testimony. That is why we discussed extending the discovery deadline, to accomodate any depositions you need to take. We have no objection to that. You'll recall that Judge Sleet had no problem with extending the deadline for purposes of these depositions, and urged the parties to work together to achieve that. There is plenty of time to depose whoever you want, well before trial. Surely we can work together to find dates that are mutually convenient for ourselves and the witnesses. Why don't you have your folks call to work on potential dates?

I'm not at the office now, so I have to rely on memory, but I would agree that we have not been able to provide

further information as to Boyce, Chandler, McKnatt, O'Day, Shockley, Vickers, and Workman. We have not been able to interview them. Of course, we reserve the right to call them as rebuttal witnesses, in the event your client [or another plaintiff witness] would implicate them in a way that cannot be foreseen now. Lt. Moses is our computer resource person, and could be needed as a witness to establish a foundation for exhibits. He has no knowledge of the facts at issue. Vernon Thomas is once again in State custody, and we have been unable to interview him. However, we have previously provided in graphic detail what we anticipate his testimony would be. We reserve the right to call him to testify. We previously provided discoverable information on Walls. I believe that you had previously identified Waggamon, Swiski, Downes, Ellingsworth, and McQueen as witnesses.

You have detailed information as to the discoverable facts known to Shamany, Schwartzkopf, Bailey, Zebley, Jones, and Willey. We interviewed Huttie yesterday and Warrington and Jester today in Georgetown. I will get you summaries of their anticipated testimony. You should assume that any one of them could testify on behalf of the defendants. Feel free to depose whoever you wish.

So you see, no one is trying to "sneak in" any witnesses. Consistent with our promise and Judge Sleet's Order, we have provided full disclosure as to the potential testimony of the witnesses we have been able to interview. I note that many of these names appear in the troop file materials, recently provided by your client. Others are in direct rebuttal to your client's claim that Colonel Chaffinch did not promote qualfied women. Each and every one of these persons is known to your client, who is in an excellent position to provide insight into their backgrounds and knowledge of facts pertinent to her claims. You have your discovery, as promised. You now have ample time, and our pledge of cooperation, to take as many depositions as you wish.

As a practical matter, you have, by belatedly raising an issue as to Mr. Ligouri's representation of Colonel Chaffinch, made it impossible to go forward with deposition scheduling. Surely a party should not be compelled to go forward with discovery, when his lawyer's continued participation may be in doubt. I am hopeful that this issue can quickly be resolved. If Colonel Chaffinch is forced to retain new counsel, our trial date would be jeopardized, in that the bulk of discovery would have to be repeated, to the prejudice of my clients. We will continue to oppose any efforts to postpone trial from the scheduled date.

Ralph K. Durstein III

-----------------------------------------------------------------------------

From: Thomas S. Neuberger, Esquire [mailto:TSN@NeubergerLaw.com]
Sent: Tue 12/20/2005 1:15 PM
To: Durstein III Ralph (DOJ)
Cc: Stephen J. Neuberger (work)
Subject: Conley v. Chaffinch


Re: Your belated witness identifications

Ralph,

I received your Second supplementation of your Rule 26 disclosures on December 15th, shortly before the December 31st discovery cut-off.

By way of background, there is a transcript of our recent conference with the court on your belated efforts to overwhelm me with witnesses who I could not depose before the discovery deadline, despite the fact that you had a year to previously identify them.

Instead of relying on the four witness you initially identified long ago, on Sept. 21st, just three months before discovery was to end, you identified 25 new witnesses. I followed up with immediate interrogatories to determine the substance of the facts known by those witnesses.

Your responses to the interrogatories on October 24th were plainly insufficient under the interrogatories and the Rules, as I pointed out in our conference with the court. You also at that time added another eight more fact witnesses to the earlier 25, bringing the grand total facing me on October 24th to 33.

As a result of the chambers conference, you were to let us know which of the 33 you were actually going to use as witnesses, who you were dropping, and provide fair notice of the substance of the facts you assert the witness knows. I then was to decide who to depose before the discovery cut-off on the 31st of December. Any extension of time of the discovery cut-off is unreasonable since our summary judgment briefs are due on January 17th, with trial preparation to follow.

Since you have not clearly identified which witness you are dropping, I have had to compare the Sept 21, Oct. 24 and Dec. 15th documents. So it appears to me that you have dropped the following witnesses.

Please immediately confirm this so I can decide not to depose them.

Cpl. Thad Boyce

Frank Chandler

Cpl. Rebecca McKnatt Gulledge

Lt. Bob Moses

Louis O'Day

Cpl. Tim Shockley

Vernon Thomas

Charlie Vickers

Robert Walls

Cpl. Rodney Workman

William Waggamon

Paul Swiski

Allan Ellingsworth

Capt. Harry Downes

Capt. Nate McQueen

The total here is 15 of your 33 previously identified witnesses. So that leaves me 18 who I have to decide whether to depose by December 31st, seven work days from now.

But as you know, I have depositions already scheduled on December 21st (two in this case) and on December 22nd (two in the Foraker and Warren cases) and Jim Liguori is deposing Capt. Glen Dixon on Dec. 29th, in this case. So that only leaves me four work days to do these 18 witnesses, which is a practical impossibility for 18 witnesses.

We also know that with the two holidays, vacation and other schedules prevent witness availability and court reporter availability. My own availability is also limited with end of the year business and tax planning for my law firm. But I can try to take the deposition of three of these 18 witnesses.

Let me know immediately whether you will produce the following for a deposition in my office on Wednesday December 28th -

Lt. Curt Brown - 10 am

Peter Schwartzkopf - 1 pm

Pete Fraley - 4:30 pm

I am today noticing their depositions on the record.

Then amazingly, I also note that you on December 15th attempted to throw another nine entirely new witnesses into the case. I must object to this as untimely under the discovery scheduling order and your obligations under Rule 26. All these witnesses were in your purview during the last year. Instead, you decided to withhold them while I was facing another 33 to depose.

So at this late date with only five work days available and two holidays facing us at the end of the year, you present me with 18 and another 9 witnesses to depose.

Obviously I cannot depose 27 witnesses by December 31st. The rules do not permit such abuse of the Rule 26 process. Accordingly I will object to any attempted use of the following nine new witnesses you are attempting to sneak in at this late date.

Capt. Betsy Shamany

Rep. Peter Schwartzkopf

Lt. Alice Bailey

Sgt. Melissa Zebley

Sgt. Susan Jones

Sgt. Roger Willey

William Dudley

Mike Warrington

Joe Huttie

Additionally, I object to Debbie Jester who was previously identified but for whom you have not provided a timely statement of facts known to her, as you were obligated to do by December 15th.

Tom N.

cc: client

*************************************
Thomas S. Neuberger, Esquire
The Neuberger Firm
Attorneys And Counsellors At Law
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801-3707
Phone 302.655.0582
Fax 302.655.9329
Email: TSN@NeubergerLaw.com

# Tab

# B

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **BARBARA CONLEY** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **C. A. No. 04-1394-GMS** |
| | ) |
| **STATE OF DELAWARE,** | ) |
| **DIVISION OF STATE POLICE,** | ) |
| **et al.,** | ) |
| | ) |
| **Defendants,** | ) |

## DEFENDANTS' FIFTH SUPPLEMENTATION OF INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(e) AND SUPPLEMENTATION TO PLAINTIFF'S 1st SET OF INTERROGATORIES TO DEFENDANTS

Pursuant to Fed. R. Civ. P. 26(e), the Defendants State of Delaware, Division of State Police, Col. Thomas F. MacLeish, and Secretary David B. Mitchell make the following supplementary disclosures:

1. The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.

**RESPONSE**:

The following individuals have been interviewed by counsel for Defendants, and would testify as follows:

**Tammy Hyland** is a civilian employee who has worked in the Planning Unit at Headquarters since 1990. Planning interacts quite a bit with the Traffic Division. She has always worked in the vicinity of Barbara Conley's office. Conley would make inappropriate comments on a daily basis. It seemed that every conversation would turn to sex. Hyland was and is uncomfortable with this behavior and has tried to limit her contact with Conley to e-mail. Ms. Hyland stated that Conley regularly reports to work late and misses deadlines. She does the minimum work required or passes the work off to someone else to complete.

Ms. Hyland was initially concerned about retaliation due to her testimony at the IA hearing. She stated that she has not experienced retaliation, however, Conley rarely speaks to her. Conley has done little things to undermine Hyland such as not telling her about a meeting she was supposed to attend.

Ms. Hyland worked with former Colonel Chaffinch at Headquarters for many years and does not recall hearing any derogatory comments about women or any other derogatory comments at all from him.

She has also worked with Paul Eckrich and R.L. Hughes. Hyland believes that Paul Eckrich is an excellent choice for Major, and a much better choice than Captain Conley. He is professional and is well respected while Conley is neither. Major Hughes is also very well respected both personally and professionally, and is better qualified to be a Major than Conley.

**Lt. John Campanella** has been employed with DSP for about 20 years. He has worked at Troop 6, in the undercover/drug units and the vice unit, as well as in the Traffic section with Captain Conley. During the IA investigation of Captain Conley he was transferred to Intelligence/Homeland Security. He currently works in Inspections.

Campanella arrived at Headquarters shortly after Captains Hughes and Eckrich were promoted to Major. Conley was very angry about the promotions and often publicly referred to them, as well as the rest of the executive staff, as "fucking assholes", "fucking dickheads," and "fucking jerk offs". When given an assignment by one of the executive staff, she would comment to her staff that "if they wanted me to do this they should have promoted me instead of those fucking assholes." He also heard he say, after Major Hughes' promotion, "if I don't get promoted to the next Major slot, they better watch out." She would make negative and/or profane comments about the executive staff almost daily. He heard Conley say that she "had dirt" on people, meaning that people shouldn't mess with her.

When Campanella worked with her, Conley created a hostile work environment. She would grope her breasts frequently and would "accidentally" brush her breasts against him in his office and the hallway. She would also suggest that they had just had sex when exiting his office by adjusting her clothes and make inappropriate comments.

Janet Vetter is a recently deceased civilian employee who worked in the Traffic Division for many years. Campanella visited Janet several times when she was in the hospital dying of cancer, as did Elisa Vassas. Janet told Campanella that she wanted him to know the truth about Barbara Conley and that "she could not die" with this on her mind. Janet told Campanella that Barbara Conley had it in for him from the beginning because she knew he wouldn't sleep with her. Janet Vetter also said that Barbara Conley would come into the office and talk about her sexual relations with various men in explicit detail. Conley would also say things to Janet such as that an outfit "makes your tits look really nice." This made Janet very upset and uncomfortable and she was actually afraid for her job. Janet said that Conley had managed to get Glenn Dixon and another trooper in the department to sleep with her and Janet could tell when it happened because of a sharp change in demeanor with both of them.

When Campanella worked with Conley, she would spend hours on the phone on personal phone calls, mostly with Glenn Dixon. The nature of her job did not require long hours on the phone. You could rarely get in to talk to her because her door would be shut for hours. Conley would routinely report to work late at 10:00 or 11:00 a.m.

**William Dudley** retired after 21 years with Delaware State Police and is currently serving as the Chief of the Dagsboro Police Department. He worked at Troop 5 with Barbara Conley and Aaron Chaffinch as both a Sergeant and a Lieutenant.

He stated that you had to keep an eye on Conley to make sure she got her work done. He remembers a meeting with her in 1988 during which she specifically told him that she would be

filing a law suit saying that she was being "discriminated against." She then told him not to worry about this, it had nothing to do with him, she stated that she just said this aloud because she knew he would document it and that people would see it. She actually never complained about any particular individual(s) "discriminating against" her. Dudley set up a meeting for her with John Dillman because of what she said.

Various troopers reported to Dudley that Conley would pull them into her breasts all the time, however Dudley never personally witnessed it.

Dudley remembers Aaron Chaffinch telling jokes, as did all the troopers, in the back room or the parking lot, but nobody was offended by anything he said. He recalls that the vast majority of Aaron's jokes were not sexual or racial in nature. Chaffinch and Conley were friends and got along great at the troop. Chaffinch was the Troop's "pick me up guy," because of his humor. He remembers nothing vulgar or derogatory from Chaffinch and nothing negative pertaining to women. In his entire tenure at DSP, he does not recall Chaffinch (or any other trooper) saying anything negative about women as troopers.

Dudley described being promoted to Major as "a whole new ballgame" from lower level promotions. It is strictly discretionary on the part of the Colonel. You serve at the will of the Colonel. Dudley strongly believes that being a Troop Commander is an asset to becoming a Major. It is imperative that you learn the whole system and have experience in a wide variety of units. For an Operations Major, such as Major Hughes' position, the candidate should have been a producer when he or she was a young officer. Because you are commanding others to get more done, your own reputation in that regard is very important. Your reputation stays with you. Women, during his tenure, have had the same opportunities as men and, in fact, State Police wanted the visible presence of women on the force.

Dudley worked with Paul Eckrich at Troops 7 and 4 and thinks he is a great person and trooper. Eckrich is a people person and "a human math machine." His qualifications speak for themselves. He is very fair and willing to help everyone.

R.L. Hughes is a "working fool." He is incredibly productive, very dedicated and, while he can rub some people the wrong way with his work attitude, he tries to treat everyone fairly. In the early years, whenever the troop productivity would be down in any particular area, they would just move R.L. to that area and get their numbers up. R.L. is more qualified to be Major "hands down" than Conley.

**Sgt. Rodney Workman** is currently working out of Troop 7. He has also worked at Troop 5, was on the FAIR team, special investigations, and on the Governor's Task Force out of Troop 4. He worked with Barbara Conley, including on her shift in the early 1990s. Conley was lazy and did the bare minimum to get by. Workman recalls that Conley would talk about sex all of the time. He recalls one incident when Conley was working the desk at Troop 5 in the early 90s. Workman walked in and she spun around in her chair and said "I've been told I give the best blow jobs in Sussex County." He just said "is that so" and left as quickly as he could. She was his superior officer at the time and this made him extremely uncomfortable.

Workman thinks having a wide variety of experience is important to being a Major. Having a troop command is a definite asset to being Major.

Workman has heard some limericks, but never anything offensive from Aaron Chaffinch. He has never heard Chaffinch say anything derogatory about women. He recalls Conley and Chaffinch as being friends at Troop 5.

Workman is friends with R.L. Hughes. Hughes is a "go getter" and Workman is not surprised that he has made Major. He believes Hughes got the job because of his work ethic. He is a very good trooper, very loyal, a big producer, however he can also be abrasive. Workman is familiar with Paul Eckrich's accounting background, which is a perfect fit for his position.

In recent years, Workman has been on the desk many times at Troop 5, and Barbara Conley calls Glenn Dixon's private line almost everyday. Conley would always work with Glenn Dixon at the State Fair, and would ride around in her golf cart with him all night, after hours.

**Lt. Roger Willey** has been a trooper with DSP since 1984. He has worked at Troop 5, as well as at Headquarters in the Traffic Division with Captain Conley. When he worked with Conley at Headquarters, Lieutenant Dixon was the Traffic Lieutenant, and Willey's supervisor. Conley and Dixon would be in her office every afternoon for hours behind closed doors. Conley is still very close to Dixon. They are always together at events.

Lt. Willey remembers Conley being upset about the promotions of Hughes and Eckrich. She felt she should have been picked instead. She said nothing about gender but he did hear her say she would sue if she didn't get the next promotion. She would say all of this out in the open. She acted like she felt entitled to the promotions.

Willey did not really have any negative interactions with Barbara Conley at Headquarters. As Director of Traffic she did some things well and some things poorly. Willey does remember that she would always come in late at 10:00 or 10:30 a.m. in the morning, which he thought was a bad example to the civilians who were always there by 7:30 or 8 a.m.

In the early years, Conley acted and was viewed as "one of the guys" in terms of her language and conduct while at Troop 5. She didn't carry her weight in terms of workload, was a marginal trooper and would not take any initiative. Conley was very vocal about sex. Willey wasn't offended but he was surprised at some of her rough language and conduct.

Lt. Willey worked for a period of time as an assistant to Aaron Chaffinch at Headquarters. He never saw any bad behavior by Chaffinch. He does remember Aaron telling jokes and some limericks from the early days at Troop 5, when guys would be sitting around the table. He never heard Aaron say anything detrimental about women troopers. Aaron treated everyone well.

Willey was with the group that stopped at the bar coming back from the FBI crabfeast, which included Conley and Chaffinch. Lt. Willey never heard Aaron use the term "hooded merganser" that day or ever. Aaron said nothing to the waitress at the bar and did not engage in any off color conduct.

Paul Eckrich has a great reputation; he is quiet, competent and well liked. He is well respected. By contrast, Conley is not respected at all because of her behavior and because of how she would openly bad mouth the executive staff at Headquarters.

**Retired Major Joseph Forrester** retired from DSP in 2000. He served at Troop 5 and Troop 7 (both as Commander). Forrester also served as the Kent/Sussex Operations Major.

Forrester worked with Barbara Conley for many years at Troops 5 and 7 in the late 1980's and early 1990's, but was many ranks above her. Barbara Conley didn't stand out as a Trooper. He describes Conley as an "administrator's challenge" but she was quite capable and smart. He did hear Conley, as well as other troopers, use profanity. He would stop any sexual jokes or innuendo if he heard them. Conley always attended parties or held parties for the Troop. He "could never imagine Barbara Conley being offended" at off-color jokes.

Forrester spent a lot of time in DSP with Aaron Chaffinch and "mentored" him in earlier years. Forrester is not happy with everything Chaffinch did at DSP, but never observed negative behavior or remarks towards women on the part of Chaffinch.

Forrester worked with and likes both Paul Eckrich and R.L. Hughes. Paul's background was perfect for the budget Major position. Paul did an excellent job in the interim position. Forrester predicted early on that Paul would be a Major one day. For an Operations Major position Hughes was the better candidate. Forrester believes Hughes is one of the hardest working road trooper <u>ever</u> in the Delaware State Police. R.L. realizes his weaknesses. He is driven, but he is a supervisor's dream. R.L. worked in Special Projects at Headquarters when Forrester was a Major. Eckrich had been a Troop Commander and this is very helpful in that he understands the finances and the troops' needs. He says that now both of them (Hughes and Eckrich) are "where they should be." In terms of work ethic and talent they are both so far ahead of Barbara Conley it's not even close.

Forrester believes that holding a troop command helps greatly in terms of becoming a Major. It is <u>very important</u> to be well rounded and to serve in multiple divisions. He feels very strongly that the Superintendent has the right to surround himself with the executive staff of his choice.

DEPARTMENT OF JUSTICE
STATE OF DELAWARE

/s/ Stephani J. Ballard_____
Stephani J. Ballard, ID #3481
Ralph K. Durstein III, ID #912
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302)577-8400

Dated: March 6, 2006

Tab

C

*Conley Pleadings* 1
*"Nov. 17 Teleconference Transcript"*

1          IN THE UNITED STATES DISTRICT COURT

2          IN AND FOR THE DISTRICT OF DELAWARE

3                         - - -

4    CAPTAIN BARBARA L. CONLEY,        :      Civil Action
                                       :
5              Plaintiff,              :
                                       :
6         v.                           :
                                       :
7    COLONEL L. AARON CHAFFINCH,       :
     individually and in his official :
8    capacity as the Superintendent, :
     Delaware State Police,            :
9    LIEUTENANT COLONEL THOMAS F.      :
     MACLEISH, individually and in     :
10   his official capacity as the      :
     Deputy Superintendent, Delaware :
11   State Police; DAVID B. MITCHELL,:
     individually and in his official:
12   capacity as Secretary of the      :
     Department of Safety and          :
13   Homeland Security, State of       :
     Delaware; and DIVISION OF         :
14   STATE POLICE, DEPARTMENT OF       :
     SAFETY AND HOMELAND SECURITY,     :
15   STATE OF DELAWARE,                :
                                       :
16             Defendants.             :      No. 04-1394-GMS

17                        - - -

18                 Wilmington, Delaware
             Thursday, November 17, 2005
19                    9:00 a.m.
                  In Chambers

20                        - - -

21
     BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.
22
                              **RECEIVED**
23
                              NOV 3 0 2005.
24

25   TRANSCRIPT ORDERED          SEALED

1    APPEARANCES:

2            THOMAS S. NEUBERGER, ESQ., and
             STEPHEN J. NEUBERGER, ESQ.
3            The Neuberger Firm, P.A.

4                            Counsel for Plaintiff

5            STEPHANI J. BALLARD, ESQ., and
             RALPH K. DURSTEIN, III, ESQ.
6            Department of Justice - State of Delaware

7                            Counsel for Defendants
                             Delaware State Police,
8                            MacLeish and Mitchell

9            JAMES LIGUORI, ESQ.
             Liguori, Morris & Yiengst
10
                             Counsel for Defendant
11                           Chaffinch

12                    -   -   -

13

14

15

16

17

18

19

20

21

22

23

24

25

1              THE COURT:  Mr. Liguori, I understand you may

2    have to leave.

3              MR. LIGUORI:  Not necessarily.  If a phone call

4    comes, Your Honor.

5              THE COURT:  I am sure you have already told

6    everyone.  Mr. Liguori has a jury out.

7              Let's go around the room to identify ourselves.

8              MR. T. NEUBERGER:  Yes, I am Tom Neuberger

9    representing the plaintiff, Barbara Conley.

10             MR. S. NEUBERGER:  I am Steve Neuberger,

11   representing the plaintiff, Barbara Conley.

12             MR. DURSTEIN:  Ralph Durstein, representing

13   Defendants Delaware State Police, MacLeish and Mitchell.

14             MR. LIGUORI:  Jim Liguori, representing

15   Defendant Aaron Chaffinch.

16             MS. BALLARD:  Stephani Ballard for the State

17   Police, MacLeish and Mitchell.

18             THE COURT:  Good morning, all.

19             It seems things have gotten a bit testy.  I

20   thought this was appropriate, in light of the

21   letter-writing, even though one of the defendants or all of

22   the defendants maybe made a procedural point of the failure

23   to file a motion.  Nonetheless, the Court feels obliged to

24   manage its docket in the way it sees best to manage it.

25   This is the way I felt in this situation it was best to

1    because we provided very detailed responses and timely

2    responses to those interrogatories.  I stand by them.  If

3    counsel has a problem, he should file a motion to compel

4    with authorities, and the Court can determine it.

5            THE COURT:  I would prefer, rather than that,

6    that counsel further meet on this particular subject.  I

7    don't need additional motions.  You don't need to have to

8    spend the time filing them.

9            MR. DURSTEIN:  I do have a suggestion, Your

10   Honor.  I wanted to give the Court a progress report.  One

11   point Mr. Neuberger made is a valid one, which is he hasn't

12   heard about all these witnesses yet.  We have been

13   interviewing -- the ones that he referred to and the ones we

14   first responded as to were mostly retired police officers.

15   We started with them.  For whatever reason, they tended to

16   be further back in time, so there were a lot of things they

17   were talking about that were remote in time.  As we said,

18   the admissibility of that is something the Court may have to

19   determine at some point.  We have now gone through active

20   duty police officers and civilian police employees.  We are

21   just about finished interviewing those folks.  We can get

22   that remaining discovery out within a matter of weeks.

23           I expect that as to those 25 witnesses, the new

24   ones that were identified the plaintiff will have within ten

25   days, two weeks, detailed information about what their

1    testimony could be, which ought to be sufficient to

2    determine if their depositions need to be taken.

3            MR. T. NEUBERGER:  That is all I am asking, Your

4    Honor, is with the detail in 4, that for the 33 names in

5    play, that we get a paragraph of what they are expected to

6    say.  That way I don't have to worry about something else

7    getting read in and everything else is in play.  If that is

8    what they are going to do, that works, then I will have to

9    decide in December whenever they get to them.

10            MR. DURSTEIN:  We agree.

11            MR. T. NEUBERGER:  By December 31.

12            THE COURT:  When can you get that, Mr. Durstein?

13            MR. DURSTEIN:  Our last interviews are the first

14    week of December.

15            December 15?

16            MS. BALLARD:  We can get some of it already.

17            MR. DURSTEIN:  We have some drafted.  We will

18    probably get it out not in one lump but as we have it ready.

19    December 15 as a deadline will work for us because we will

20    have spoken to all these folks.

21            MR. T. NEUBERGER:  Yes.  Like I say, Shockley

22    was missing.  Maybe you dropped Shockley.  I need to know

23    who the 33 are.  I just take that as an agreement among us

24    here.

25            MR. DURSTEIN:  There are a few that may have

Tab

D

## Thomas S. Neuberger, Esquire

| | |
|---|---|
| **From:** | "Durstein III Ralph (DOJ)" <Ralph.Durstein@state.de.us> |
| **To:** | "Thomas S. Neuberger, Esquire" <TSN@NeubergerLaw.com> |
| **Cc:** | "Ballard Stephani (DOJ)" <Stephani.Ballard@state.de.us> |
| **Sent:** | Tuesday, December 20, 2005 7:37 PM |
| **Subject:** | RE: Conley v. Chaffinch |

Tom:

I don't think anyone at the conference with Judge Sleet contemplated trying to schedule 25 depositions before the end of the year in this case. I certainly did not. Neither Stephani nor myself is available for the depositions you have noticed for next Wednesday. I would expect that everybody concerned has holiday plans. These and other depositions will simply need to be scheduled for dates after the first of the year, as we anticipated at the office conference. It's just not realistic to notice depositions at this time of year, with no advance warning. I wish you had taken the time to check on our availability, or called or sent an e-mail to discuss this, before burdening the record with deposition notices. I'm confident that we could have worked it out amicably, as Judge Sleet counseled us to do, given the flexibility built into the discovery deadline.

The aim at the recent office conference was to get you detailed information on the potential witnesses we had identified and interviewed by the December 15 deadline. We accomplished that. You have that information. You can make an informed decision as to who you want to depose. We have over five months until trial. As I stressed at the office conference, none of these witnesses have any testimony to offer with respect to the motion for summary judgment we will be filing. You have already acknowledged that discovery as to Counts II and III is closed. Judge Sleet's review of the motion can proceed, without regard for any of this testimony. That is why we discussed extending the discovery deadline, to accomodate any depositions you need to take. We have no objection to that. You'll recall that Judge Sleet had no problem with extending the deadline for purposes of these depositions, and urged the parties to work together to achieve that. There is plenty of time to depose whoever you want, well before trial. Surely we can work together to find dates that are mutually convenient for ourselves and the witnesses. Why don't you have your folks call to work on potential dates?

I'm not at the office now, so I have to rely on memory, but I would agree that we have not been able to provide further information as to Boyce, Chandler, McKnatt, O'Day, Shockley, Vickers, and Workman. We have not been able to interview them. Of course, we reserve the right to call them as rebuttal witnesses, in the event your client [or another plaintiff witness] would implicate them in a way that cannot be foreseen now. Lt. Moses is our computer resource person, and could be needed as a witness to establish a foundation for exhibits. He has no knowledge of the facts at issue. Vernon Thomas is once again in State custody, and we have been unable to interview him. However, we have previously provided in graphic detail what we anticipate his testimony would be. We reserve the right to call him to testify. We previously provided discoverable information on Walls. I believe that you had previously identified Waggamon, Swiski, Downes, Ellingsworth, and McQueen as witnesses.

You have detailed information as to the discoverable facts known to Shamany, Schwartzkopf, Bailey, Zebley, Jones, and Willey. We interviewed Huttie yesterday and Warrington and Jester today in Georgetown. I will get you summaries of their anticipated testimony. You should assume that any one of them could testify on behalf of the defendants. Feel free to depose whoever you wish.

So you see, no one is trying to "sneak in" any witnesses. Consistent with our promise and Judge Sleet's Order, we have provided full disclosure as to the potential testimony of the witnesses we have been able to interview. I note that many of these names appear in the troop file materials, recently provided by your client. Others are in direct rebuttal to your client's claim that Colonel Chaffinch did not promote qualfied women. Each and every one of these persons is known to your client, who is in an excellent position to provide insight into their backgrounds and knowledge of facts pertinent to her claims. You have your discovery, as promised. You now have ample time, and our pledge of cooperation, to take as many depositions as you wish.

As a practical matter, you have, by belatedly raising an issue as to Mr. Ligouri's representation of Colonel Chaffinch, made it impossible to go forward with deposition scheduling. Surely a party should not be compelled to go forward with discovery, when his lawyer's continued participation may be in doubt. I am hopeful that this issue can quickly be resolved. If Colonel Chaffinch is forced to retain new counsel, our trial date would be jeopardized,

in that the bulk of discovery would have to be repeated, to the prejudice of my clients.  We will continue to oppose any efforts to postpone trial from the scheduled date.

Ralph K. Durstein III

---

**From:** Thomas S. Neuberger, Esquire [mailto:TSN@NeubergerLaw.com]
**Sent:** Tue 12/20/2005 1:15 PM
**To:** Durstein III Ralph (DOJ)
**Cc:** Stephen J. Neuberger (work)
**Subject:** Conley v. Chaffinch

Re: Your belated witness identifications

Ralph,

I received your Second supplementation of your Rule 26 disclosures on December 15th, shortly before the December 31st discovery cut-off.

By way of background, there is a transcript of our recent conference with the court on your belated efforts to overwhelm me with witnesses who I could not depose before the discovery deadline, despite the fact that you had a year to previously identify them.

Instead of relying on the four witness you initially identified long ago, on Sept. 21st, just three months before discovery was to end, you identified 25 new witnesses. I followed up with immediate interrogatories to determine the substance of the facts known by those witnesses.

Your responses to the interrogatories on October 24th were plainly insufficient under the interrogatories and the Rules, as I pointed out in our conference with the court. You also at that time added another eight more fact witnesses to the earlier 25, bringing the grand total facing me on October 24th to 33.

As a result of the chambers conference, you were to let us know which of the 33 you were actually going to use as witnesses, who you were dropping, and provide fair notice of the substance of the facts you assert the witness knows. I then was to decide who to depose before the discovery cut-off on the 31st of December. Any extension of time of the discovery cut-off is unreasonable since our summary judgment briefs are due on January 17th, with trial preparation to follow.

Since you have not clearly identified which witness you are dropping, I have had to compare the Sept 21, Oct. 24 and Dec. 15th documents. So it appears to me that you have dropped the following witnesses.

Please immediately confirm this so I can decide not to depose them.

Cpl. Thad Boyce

Frank Chandler

Cpl. Rebecca McKnatt Gulledge

Lt. Bob Moses

Louis O'Day

Cpl. Tim Shockley

Vernon Thomas

Charlie Vickers

Robert Walls

Cpl. Rodney Workman

William Waggamon

Paul Swiski

Allan Ellingsworth

Capt. Harry Downes

Capt. Nate McQueen

The total here is 15 of your 33 previously identified witnesses. So that leaves me 18 who I have to decide whether to depose by December 31st, seven work days from now.

But as you know, I have depositions already scheduled on December 21st (two in this case) and on December 22nd (two in the Foraker and Warren cases) and Jim Liguori is deposing Capt. Glen Dixon on Dec. 29th, in this case. So that only leaves me four work days to do these 18 witnesses, which is a practical impossibility for 18 witnesses.

We also know that with the two holidays, vacation and other schedules prevent witness availability and court reporter availability. My own availability is also limited with end of the year business and tax planning for my law firm. But I can try to take the deposition of three of these 18 witnesses.

Let me know immediately whether you will produce the following for a deposition in my office on Wednesday December 28th -

Lt. Curt Brown - 10 am

Peter Schwartzkopf - 1 pm

Pete Fraley - 4:30 pm

I am today noticing their depositions on the record.

Then amazingly, I also note that you on December 15th attempted to throw another nine entirely new witnesses into the case. I must object to this as untimely under the discovery scheduling order and your obligations under Rule 26. All these witnesses were in your purview during the last year. Instead, you decided to withhold them while I was facing another 33 to depose.

So at this late date with only five work days available and two holidays facing us at the end of the year, you present me with 18 and another 9 witnesses to depose.

Obviously I cannot depose 27 witnesses by December 31st. The rules do not permit such abuse of the Rule 26 process. Accordingly I will object to any attempted use of the following nine new witnesses you are attempting to sneak in at this late date.

Capt. Betsy Shamany

Rep. Peter Schwartzkopf

Lt. Alice Bailey

Sgt. Melissa Zebley

Sgt. Susan Jones

Sgt. Roger Willey

William Dudley

Mike Warrington

Joe Huttie

Additionally, I object to Debbie Jester who was previously identified but for whom you have not provided a timely statement of facts known to her, as you were obligated to do by December 15th.

Tom N.

cc: client


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Thomas S. Neuberger, Esquire
The Neuberger Firm
Attorneys And Counsellors At Law
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801-3707
Phone 302.655.0582
Fax 302.655.9329
Email: TSN@NeubergerLaw.com