IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **CAPTAIN BARBARA L. CONLEY,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | |
| : | |
| **COLONEL L. AARON CHAFFINCH,** : | C.A.No.04-1394-GMS |
| individually and in his official capacity as the : | |
| Superintendent, Delaware State Police; : | |
| **LIEUTENANT COLONEL THOMAS F.** : | |
| **MACLEISH,** individually and in his official : | |
| capacity as the Deputy Superintendent, : | |
| Delaware State Police; **DAVID B. MITCHELL,** : | |
| individually and in his official capacity as : | |
| Secretary of the Department of Safety and : | |
| Homeland Security, State of Delaware; and : | |
| **DIVISION OF STATE POLICE,** : | |
| **DEPARTMENT OF SAFETY AND** : | |
| **HOMELAND SECURITY, STATE OF** : | |
| **DELAWARE,** : | |
| : | |
| **Defendants.** : | |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF COLONEL CHAFFINCH'S STATUS AS A FREEMASON AND RELATED ISSUES AS TO FREEMASONRY**

THE NEUBERGER FIRM, P.A.
THOMAS S. NEUBERGER, ESQ. (#243)
STEPHEN J. NEUBERGER, ESQ. (#4440)
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: April 11, 2006                         Attorneys for Plaintiff

**A. Introduction.** Defendant Chaffinch admits that while serving as the highest ranking officer of the Delaware State Police, he belonged to the Masons - an organization that discriminates against women and bars females from membership. (Tab A - Chaffinch 13). Not only has Chaffinch been a Mason for over 20 years, he currently holds one of the highest ranks in the organization. (Chaffinch 13-14). Contrary to the defense contentions, Chaffinch's admitted membership in an organization that discriminates against women tends to prove his discriminatory motive and intent against women in our present case.

**B. This Evidence is Relevant to Chaffinch's Intent and Motive.** "'Relevant evidence ' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The definition of relevant evidence under Rule 401 is extremely broad. "Rule 401 does not raise a high standard." Hurley v. Atlantic City Police Dept., 174 F.3d 95, 109-110 (3d Cir. 1999). "[E]vidence is irrelevant only when it has no tendency to prove [a consequential fact]." Spain v. Gallegos, 26 F.3d 439, 452 (3d Cir. 1994). Thus, the rule, "while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant." Id.

Membership in the Masons tends to prove that Chaffinch holds discriminatory beliefs about women. This in turn is probative of his intent and motives in making the challenged promotion decisions at issue in this case. Chaffinch's membership in the Masons and refusal to surrender his membership despite being the highest ranking officer of the DSP is analogous to the Director of the FBI belonging to the Ku Klux Klan. In the same way that membership in the KKK tends to prove the racist beliefs of its members, so also membership in the Masons tends to prove the sexists beliefs of its members. Chaffinch's membership in such a discriminatory

1

organization is highly probative of his sexist beliefs and biased attitudes towards women. Such sexist beliefs and biased attitudes is thus probative of his discriminatory motives and intent that are at issue in our present case.

Evidence of Chaffinch's membership is highly relevant to his discriminatory animus toward women. There is a distinct correlation between the Mason's discriminatory membership requirement and those who choose to join such a discriminatory organization. A person who does not believe in discriminating against women would not join such an organization. At the very least, membership in such a discriminatory organization tends to prove that a member holds discriminatory beliefs.

**C. This Evidence is Offered for the Non-Propensity Purposes of Demonstrating Intent and Motives.** Rule 404(b) also does not bar the admission of this relevant evidence. This rule was designed to exclude evidence of prior bad acts when being offered for a propensity purpose. Fed.R.Evid. 404(b). Plaintiff is offering Chaffinch's membership in this discriminatory organization for the non-propensity purposes of showing his motive and intent to discriminate against women - two purposes that are explicitly permitted by the plain text of the rule. Id.

This evidence is admissible "because of the discriminatory nature of the prior conduct, which in turn tend[s] to show the employer's state of mind or attitude towards members of the protected class.... [T]he inference of the employer's discriminatory attitude [comes] from the nature of the prior acts themselves." Becker v. ARCO Chemical Co., 207 F.3d 176, 194 n.8 (3d Cir. 2000). Thus, "[b]y its very nature," Chaffinch's membership in an organization that discriminates against women tends to demonstrates his "discriminatory attitude" towards female employees such as plaintiff. Id. Such evidence "leads not only to a ready logical inference of

2

bias, but also to a rational presumption that [Chaffinch] acted on it when he made the challenged employment decision." Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002). Thus, Rule 404(b) clearly permits this evidence to be admitted for these proper purposes.

**D. Rule 403 Does Not Bar This Evidence.** As explained above, Chaffinch's membership to the Masons is highly probative of his motives and intent and whether he discriminated against plaintiff on the basis of her gender. The evidence's strong probative value strongly outweighs any Fed.R.Evid. 403 considerations. Chaffinch chose to belong to an organization that discriminates against women. He holds one of the highest positions available in this discriminatory organization and as he testified at his deposition, he is very proud of his membership. In a case about gender discrimination where the jury is searching for evidence of discriminatory intent, it is hardly unfair to point to evidence that the decisionmaker belongs to an organization that discriminates against members of the very protected class at issue. Plaintiff is offering the evidence to show that Chaffinch harbors animosity toward women which is highly probative of the issues in the case.

**E. Rule 610 Does Not Bar the Use of This Evidence.** Rule 610 states that "Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness' credibility is impaired or enhanced." Fed.R.Evid. 610.[1] Simply put, plaintiff is not offering Chaffinch's membership in the Masons to attack his credibility. Instead, plaintiff offers Chaffinch's membership as evidence of his motives and intent to discriminate against women.

**F. Conclusion.** The defense motion should be denied.

---

[1] Plaintiff strongly objects to defense characterization of the Masons as a religion rather than a private membership organization and notes that defendants have failed to create a record in this regard.

3

        Respectfully Submitted,

        **THE NEUBERGER FIRM, P.A.**

        /s/ Stephen J. Neuberger
        **THOMAS S. NEUBERGER, ESQ. (#243)**
        **STEPHEN J. NEUBERGER, ESQ. (#4440)**
        Two East Seventh Street, Suite 302
        Wilmington, Delaware 19801
        (302) 655-0582
        TSN@NeubergerLaw.com
        SJN@NeubergerLaw.com

Dated: April 11, 2006        Attorneys for Plaintiff

# Tab

# A



**WILCOX & FETZER LTD.**

In the Matter Of:

# Conley
# v.
# Chaffinch, et al.

C.A. # 04-1394-GMS

---

Transcript of:

# Colonel L. Aaron Chaffinch

June 6, 2005

---

Wilcox & Fetzer, Ltd.
Phone: 302-655-0477
Fax: 302-655-0497
Email: lhertzog@wilfet.com
Internet: www.wilfet.com

Case 1:04-cv-01394-GMS   Document 188   Filed 04/11/2006   Page 8 of 12

Conley                                    v.                              Chaffinch, et al.
Colonel L. Aaron Chaffinch          C.A. # 04-1394-GMS                    June 6, 2005

Page 1

```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF DELAWARE

CAPTAIN BARBARA L. CONLEY,              )
                                        )
               Plaintiff,               )
                                        )   Civil Action
v.                                      )   No. 04-1394-GMS
                                        )
COLONEL L. AARON CHAFFINCH,             )
individually and in his official        )
capacity as the Superintendent,         )
Delaware State Police; LIEUTENANT       )
COLONEL THOMAS F. MACLEISH,             )
individually and in his official        )
capacity as the Deputy Superintendent,  )
Delaware State Police; DAVID B.         )
MICHELL, individually and in his        )
official capacity as Secretary of the   )
Department of Safety and Homeland       )
Security, State of Delaware; and        )
DIVISION OF STATE POLICE, DEPARTMENT    )
OF SAFETY AND HOMELAND SECURITY,        )
State of Delaware,                      )
                                        )
               Defendants.              )
```

        Deposition of COLONEL L. AARON CHAFFINCH
taken pursuant to notice at the law offices of The
Neuberger Firm, P.A., 2 East 7th Street, Suite 302,
Wilmington, Delaware, beginning at 9:35 a.m. on Monday,
June 6, 2005, before Kathleen White Palmer, Registered
Merit Reporter and Notary Public.
APPEARANCES:
        THOMAS S. NEUBERGER, ESQUIRE
        THE NEUBERGER FIRM, P.A.
          2 East 7th Street - Suite 302
          Wilmington, Delaware  19801
          for the Plaintiff
--------------------------------------------------------
                    WILCOX & FETZER
     1330 King Street - Wilmington, Delaware 19801
                    (302) 655-0477

Conley v. Chaffinch, et al.
Colonel L. Aaron Chaffinch    C.A. # 04-1394-GMS    June 6, 2005

Page 2
1  APPEARANCES (Continued):
2
       JAMES E. LIGUORI, ESQUIRE
3      LIGUORI, MORRIS & YIENGST
       46 The Green
4      Dover, Delaware  19901
       for Defendant Colonel L. Aaron Chaffinch
5
       RALPH K. DURSTEIN, ESQUIRE
6      STEPHANI J. BALLARD, ESQUIRE
       DEPARTMENT OF JUSTICE
7      820 North French Street
       Carvel State Office Building
8      Wilmington, Delaware  19801
       for Defendants Lieutenant Colonel Thomas F.
9      MacLeish, David B. Mitchell, and Division
       of State Police
10
11 ALSO PRESENT:
12     CAPTAIN BARBARA L. CONLEY
13         - - - - -
14     COLONEL L. AARON CHAFFINCH,
15     the witness herein, having first been
16     duly sworn on oath, was examined and
17     testified as follows:
18 BY MR. NEUBERGER:
19   Q.  Could you state your full name for the record?
20   A.  Aaron Chaffinch.
21   Q.  Colonel Chaffinch, my staff or myself, we've
22 taken your deposition on other occasions; isn't that
23 correct?
24   A.  Yes, sir.

Page 3
1    Q.  You've even testified in two federal court cases
2  that I was involved in; is that right?
3    A.  Yes, sir.
4    Q.  I called you as a witness in those cases; right?
5    A.  Yes, sir.
6    Q.  Now, you understand, based on that experience,
7  that if there's any question I ask you today and any
8  answer you give, and I call you at trial and you say
9  something different, I can point that out to the judge
10 and jury?
11   A.  Yes, sir.
12   Q.  You know that.  Okay.
13       Are you taking any medications or anything
14 that would interfere with your ability to remember
15 things?
16   A.  I don't believe so.
17   Q.  You don't take blood pressure, heart medicine,
18 things like that?
19   A.  I don't think it would affect my memory, I don't
20 believe.
21   Q.  But you are not on anything odd or something
22 that affects your memory that you know of?
23   A.  Not that I'm aware of.
24   Q.  If I ever ask you a question that you don't

Page 4
1  understand, just ask me and I'll be glad to rephrase it.
2  Is that okay?
3    A.  Yes, sir.
4        MR. NEUBERGER:  Let's do this.  Let's mark
5  this as Plaintiff's Exhibit Number 1 and then we'll be
6  referring back and forth to this.  Let me give a copy to
7  counsel.  It's a copy of the First Amended Complaint in
8  the action.
9        (Plaintiff's Exhibit 1 was marked for
10 identification.)
11 BY MR. NEUBERGER:
12   Q.  Colonel, I'm going to ask you some questions
13 about how long you were with the force and how your
14 career, your assignments might have tracked assignments
15 that Captain Barbara Conley had.  Okay?
16       If you turn to paragraph 10 of that
17 document that's in front of you on page 4, you can see
18 there in that paragraph a listing that Barbara Conley
19 prepared at an earlier time of her assignments starting
20 as a patrol trooper at Troop 5 in Bridgeville in 1982 at
21 the bottom.  Do you see that?
22   A.  Yes, I do.
23   Q.  Then she works all the way up to captain,
24 director of traffic control section in 2001.  Do you see

Page 5
1  that?
2    A.  Yes, sir.
3    Q.  Let me just ask you a few questions about her
4  history.
5        Now, she indicated that she joined the
6  force as a patrol trooper in Bridgeville in 1982 and
7  she'll testify to that fact.  Were you assigned to
8  Bridgeville at that time?
9    A.  Yes, sir.
10   Q.  I think she's indicated that she believes that
11 when she started in Bridgeville, she was a patrol trooper
12 and you would have been a trooper first class assigned in
13 Bridgeville.  Does that sound about right?
14   A.  That's correct.
15   Q.  Then she indicates she was in Bridgeville from
16 1982 to 1983?
17       MR. LIGUORI:  I think it's '93, Tom.
18       MR. NEUBERGER:  Yes.  Thank you, Jim.  All
19 right.
20 BY MR. NEUBERGER:
21   Q.  She has indicated during that period of time
22 there was a time when you were assigned at Bridgeville,
23 also?
24   A.  Part of that time, yes, sir.

Case 1:04-cv-01394-GMS    Document 188    Filed 04/11/2006    Page 10 of 12

| Conley | v. | Chaffinch, et al. |
| --- | --- | --- |
| Colonel L. Aaron Chaffinch | C.A. # 04-1394-GMS | June 6, 2005 |

Page 10

1  Q. Do you see she was a traffic lieutenant at
2  Troop 5 from 1999 to 2000?
3  A. Yes, sir.
4  Q. So, for example, when she was a traffic
5  lieutenant, some of that time she would have been serving
6  under you as the commander of Troop 5; is that correct?
7  A. Yes, sir.
8  Q. So Barbara Conley has indicated that there were
9  times when, aside from working on the same shift, you and
10 she were assigned to the same troop, that is Troop 5. Is
11 that a true statement?
12 A. Yes, sir.
13 Q. Is it true that when you were a lieutenant at
14 Troop 5 she was a sergeant assigned to Troop 5?
15 A. I think part of the time, yes.
16 Q. Then I think I just asked you that.
17    When she was a lieutenant, you were the
18 troop commander for some of the time; right?
19 A. Yes.
20 Q. Then in the year 2000, paragraph 10 indicates
21 that she went to headquarters as the assistant director
22 of the traffic control section. Do you see that?
23 A. Yes, sir.
24 Q. Now, does that accord with your memory, that she

Page 11

1  eventually came as the assistant director of traffic at
2  headquarters?
3  A. Yes, sir.
4  Q. You are aware that from 2001 she began serving
5  as the director of the traffic control section; right?
6  A. Yes, sir.
7  Q. Now, for those years she's been at headquarters
8  from 2000 through the present, let me just ask you, has
9  she been in headquarters from 2000 to the present?
10 A. Yes, sir.
11 Q. You've been serving at headquarters during those
12 years?
13 A. Yes, sir.
14 Q. Captain Conley has indicated that with the
15 exception of her time at Troop 3 in Camden from 1997 to
16 1999, she has been in regular contact with you during her
17 professional career. Do you agree with that statement?
18 A. Mostly. You know, but as you know, the dates
19 when I was in the drug unit are -- was when she was at
20 Troop 5. So although I did stop in there some and I had
21 a little office in the back where I did some of my
22 paperwork, I mean, I don't know that I was in constant
23 contact with her.
24 Q. You wouldn't call it constant?

Page 12

1  A. No, sir.
2  Q. I appreciate that.
3  A. Okay.
4  Q. Now, if we jump ahead on this document,
5  Plaintiff's Exhibit Number 1, let's try to find
6  paragraphs 31 to 35. I'm just going to ask you to read
7  31 to 35 quietly to yourself and then I'm going to ask
8  you some questions about it.
9  A. (The witness reviews the document.)
10 Q. Have you looked at 31 to 35?
11 A. Yes, sir.
12 Q. Just looking at 32, for example, 32, is there
13 something called the Delaware Shield and Square Lodge of
14 Freemasonry that's located here in Delaware?
15 A. It's called the Lower Delaware Shield and Square
16 Club.
17 Q. Does it mention freemasonry in its name?
18 A. No, it does not.
19 Q. Is it a Masonic organization?
20 A. It's an independent body of Masonic order, yes.
21 Q. It's Lower Delaware Club --
22 A. Shield and Square Club.
23 Q. Where is that located?
24 A. Kent and Sussex counties.

Page 13

1  Q. It covers Kent and Sussex counties?
2  A. Yes. There's one in New Castle County, as well.
3  Q. Does it have a meeting lodge somewhere?
4  A. No, does not have a meeting lodge. We have
5  meetings at different places to eat, just like the Lions
6  Club goes to -- I mean, I use the Lions Club as an
7  example. But we go to different places and have our
8  meeting at, like, a restaurant.
9  Q. How long have you belonged to that organization?
10 A. I can't give you an exact date, but probably
11 started sometime in 1985 in that organization.
12 Q. Do you currently hold one of the highest three
13 ranks in freemasonry?
14 A. I'm third-degree Mason.
15 Q. Is it a third or 33rd-degree Mason?
16 A. Well, both.
17 Q. So there is a third-degree Mason title and you
18 hold that?
19 A. Mm-hmm.
20 Q. There's a 33rd-degree Mason title and you hold
21 that?
22 A. Yes.
23 Q. Are you something that's called a master Mason?
24 A. All third-degree masons are master masons.

4 (Pages 10 to 13)

Case 1:04-cv-01394-GMS    Document 188    Filed 04/11/2006    Page 11 of 12

Conley                                               v.                                   Chaffinch, et al.
Colonel L. Aaron Chaffinch              C.A. # 04-1394-GMS                      June 6, 2005

Page 14

1    Q.  Is the highest degree in freemasonry this
2  33rd-degree Mason?
3    A.  Yes, sir.
4    Q.  You received that honor sometime in the past
5  several years.  Is that true?
6    A.  33rd degree?
7    Q.  Yes.
8    A.  I received it on the 21st of September of 2004.
9  I just received it last year.
10   Q.  Was there some ceremony you went to out in the
11 Midwest to receive the title, or was that awarded to you
12 here?
13   A.  I went to Milwaukee, Wisconsin.
14   Q.  The Delaware organization that you've described,
15 I forget the title, is it true that it's never had an
16 African-American member?
17   A.  I don't believe that it has, no.
18   Q.  Is it true that it has never had a female
19 member?
20   A.  That's correct.
21   Q.  Is it true that only white males may join the
22 Delaware organization to which you belong?
23   A.  Are you talking about the Lower Delaware Shield
24 and Square Club?

Page 15

1    Q.  Yes, the Lower Delaware --
2    A.  I'm not sure that we've ever had a black Mason
3  petition it, petition this independent body.  I'm not
4  sure of that.
5    Q.  So what you are saying is you don't know whether
6  an African-American has ever applied for membership?
7    A.  That's correct.
8    Q.  If that's correct, that would mean that no
9  African-American has ever been denied membership?
10   A.  Not to my knowledge.
11   Q.  Are you indicating that you are unaware that any
12 woman has ever applied for membership?
13   A.  Yes.
14   Q.  Okay.
15   A.  I would indicate that, as well.  I hadn't, but I
16 will, yes.
17   Q.  Now, do you know whether the organization has
18 any written documents that describe the requirements for
19 membership?
20   A.  I'm sure that it does.
21   Q.  Have you ever seen those documents?
22   A.  I probably have, but it's probably been years
23 ago.  I'm not sure if I have or not.  I know you have to
24 be 21 years of age.  But other than that, I'm not -- I'm

Page 16

1  not sure.
2    Q.  Well, is it true that it indicates you have to
3  be a male to join?
4    A.  Yes.
5    Q.  Do you know whether it indicates or not that
6  African-Americans can't join?
7    A.  I'm sure that it does not indicate that.  Blacks
8  have their own Masonic order and women have their own --
9  like a sister organization.  The Order of the Eastern
10 Star is the sister organization of Masonic order.
11   Q.  The masons historically is an organization that
12 goes back into the 1800s, at least.  Would you agree with
13 that?
14   A.  I would say it goes farther back than that,
15 probably.
16   Q.  Does it go back --
17   A.  George Washington was a Mason, so he is the
18 first president of the United States.
19   Q.  So when you go down to Alexandria, Virginia,
20 there's that big Masonic Temple?
21   A.  Yes, sir.
22   Q.  Have you ever been there?
23   A.  No.  I've been by it, but I haven't been there.
24   Q.  So it goes at least back to colonial times?

Page 17

1    A.  That's correct.
2    Q.  That's your understanding of it.
3        Would you agree that before the Civil War
4  in this country that there weren't Masonic organizations
5  that African-Americans belonged to?
6    A.  I would imagine that's true, but I don't know
7  that for sure.
8    Q.  Now, let me ask you some more questions.
9        So you are saying, I think, you joined the
10 masons sometime in the mid 1980s.  Is that what you are
11 saying?
12   A.  Joined my blue lodge in 1984.
13   Q.  1984.  Okay.
14        Now, give me the name of the Delaware
15 organization again.  You called it the --
16   A.  Lower Delaware Shield and Square Club.
17   Q.  Okay.  Lower Delaware.
18        Now, is that a law enforcement component of
19 the masons?
20   A.  You either have to be involved in law
21 enforcement or firefighting.
22   Q.  Okay.
23   A.  But you have to be a Mason first.
24   Q.  So it encompasses public safety, meaning

## **CERTIFICATE OF SERVICE**

      I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on April 11, 2006, I electronically filed this **Brief** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> Ralph K. Durstein III, Esquire
> Department of Justice
> Carvel State Office Building
> 820 N. French Street
> Wilmington, DE 19801
>
> James E. Liguori, Esquire
> Liguori, Morris & Yiengst
> 46 The Green
> Dover, DE 19901

      /s/ Stephen J. Neuberger
      **STEPHEN J. NEUBERGER, ESQ.**

Conley/ Pleadings / Conley - AB to Ds MinL - Freemasons.final