# EXHIBIT A

```
             IN THE UNITED STATES DISTRICT COURT

             IN AND FOR THE DISTRICT OF DELAWARE

                          - - -

CAPTAIN BARBARA L. CONLEY,         :    Civil Action
                                   :
         Plaintiff,                :
                                   :
    v.                             :
                                   :
COLONEL L. AARON CHAFFINCH,        :
individually and in his official   :
capacity as the Superintendent,    :
Delaware State Police,             :
LIEUTENANT COLONEL THOMAS F.       :
MACLEISH, individually and in      :
his official capacity as the      :
Deputy Superintendent, Delaware    :
State Police; DAVID B. MITCHELL,   :
individually and in his official   :
capacity as Secretary of the       :
Department of Safety and           :
Homeland Security, State of        :
Delaware; and DIVISION OF          :
STATE POLICE, DEPARTMENT OF        :
SAFETY AND HOMELAND SECURITY,      :
STATE OF DELAWARE,                 :
                                   :
         Defendants.               :    No. 04-1394-GMS

                          - - -

                   Wilmington, Delaware
                Thursday, November 17, 2005
                        9:00 a.m.
                      In Chambers

                          - - -

BEFORE: HONORABLE GREGORY M. SLEET, U.S.D.C.J.
```

*TRANSCRIPT ORDERED SEALED*

1   sexual history. We need to carve out from these
2   interrogatory answers and these 33 people the ones who go to
3   sexual history, incidents that might have happened 20 years
4   ago, 30 years ago, college, and incidents in the workplace,
5   because they have no relevance, no admissibility under Rule
6   412. We need to cut this off. Otherwise, we will go to my
7   client's deposition in two weeks and, all right, Barbara,
8   when you were in college, did you sleep with so-and-so?
9           THE COURT: Let me ask you this: Beyond Captain
10  Dixon, are there other examples of this type of questioning
11  which you would assert is unfounded?
12          MR. T. NEUBERGER: We look at their witnesses.
13  This was Tab G, Your Honor, in our submission of October 16.
14          THE COURT: I have it.
15          MR. T. NEUBERGER: The very last thing. We look
16  at their witnesses. Let's just flip to the third page in,
17  No. U, do you see the name by U there? U is a convicted
18  drug dealer and felon who wants to say that in 1986 when he
19  was arrested my client slept with a police officer while he
20  was hiding under the rug in their bedroom. Nothing
21  reflected in my client's disciplinary history, et cetera, et
22  cetera.
23          No. F, J and N are other officers involved in
24  that arrest at that time. No. W, I think, would be somebody
25  they want to get into romantically involved. No. V., they

1    would want to get into someone who might have been
2    romantically involved.
3        No. H would be someone who might have been
4    romantically involved. No. J would be someone who might
5    have been romantically involved decades ago. Once again,
6    these are decades ago romantically involved things.
7        So let's say your witness here, we will call him
8    XYZ, hypothetically, here, you have something in your past,
9    when you were in college you dated Barbara Conley -- you get
10   it? That's the road they are going down.
11       MR. LIGUORI: Let me make one point, sir. I
12   don't necessarily have a bone in that kind of fight. Number
13   one, I think you are absolutely right, we want to distill
14   this down. The engine that drives this is discovery. We
15   have got two months left of discovery. I think we have
16   issues in good faith that may go towards biases.
17       Let me also suggest to you that the plaintiff in
18   her amended complaint has complained that as a result of my
19   client's conduct she has suffered emotional pain, suffering,
20   mental anguish, loss of employment, enjoyment of employment,
21   mental and physical pain, anguish, humiliation,
22   embarrassment, and injury to reputation. I submit to you
23   that there may be evidence presented that she conducted
24   herself in a similar fashion that she is accusing my client
25   of conducting himself in, and not only did sexual behavior

1   and remarks not offend her, but she embraced and perpetuated
2   that kind of conduct.
3           But I would prefer, in good faith, to have it
4   explored, and then file the appropriate motions.  We don't
5   want to -- you know, maybe we should look at this at some
6   point in time, what is good for the goose is good the
7   gander, later on, after we get to discovery.  I submit, as I
8   mentioned in my note, I didn't think there was any
9   misconduct or anything on the part of anyone representing
10  the defendants.  I think the assumptions and supposition by
11  the plaintiffs are wrong.  As simple as that.
12          MR. T. NEUBERGER:  Your Honor, if I might
13  respond.
14          They have two arguments.  It's relevant on
15  liability, and then it's admissible on damages.  So I would
16  just like to -- he has raised the it's admissible on damages
17  argument.  I would like to just briefly respond to that.
18          THE COURT:  Is this related to your bifurcation
19  motion?
20          MR. T. NEUBERGER:  No.  He is saying they should
21  be able to take this discovery.
22          THE COURT:  I understand what you are saying.
23          MR. T. NEUBERGER:  What I am saying is, there
24  are two claims that they are arguing.  They are saying
25  because we are seeking injury to reputation and we are

1  but attacks me, and attacks Ms. Ballard.  Before we get too
2  much further into this, Your Honor, I would like to see the
3  Court reprimand counsel for sending a letter having that
4  kind of tone.
5          I now have a better understanding of what their
6  problem is.  That letter came under seal, without any
7  advance notice to any of the defense counsel.  It was a
8  direct and unprovoked attack on the attorneys, not the
9  client.
10         Let me try to explain how this came about,
11 because the Court raised the issue of all these additional
12 witnesses and why are they in the case at this stage.
13         The search and the interviews of those witnesses
14 was prompted in large part by the plaintiff's response to
15 our interrogatories.  The form that took -- and I know the
16 Court hasn't seen it -- is, I gather, that the plaintiff was
17 probably given a tape recorder, and they are very detailed,
18 very large, voluminous accounts of fleshing out her
19 allegations as to Colonel Chaffinch, as to a lot of
20 incidents over a long period of time.  I think it's fair to
21 say that the way that narrative was done caused us as
22 counsel to have to go back and look at who else would have
23 been there, who else would have seen that, who else would
24 have known about that, what other facts are there that we
25 could bring out, and because it covered so many incidents

and such a long period of time.

It is the old chain where we talked to one person, they said I heard about that but these two people were there. And you talk to them, and they say that's right, and that other incident, so-and-so was there, he will know something about this.

The plaintiff, by alleging that she was better qualified than the two individuals who were promoted to the two vacant Major positions, has opened the door to the issue of her performance, her suitability, and her conduct during her career. That would bear on her competence. And it's one of the factors, her record, her performance, that Colonel Chaffinch said he considered. We can all understand that.

It happens that Colonel Chaffinch, his career had paralleled the plaintiff's in large part for many years. So he had a great degree of familiarity. And the people we have talked to and the people we listed, as is our obligation, when we learn the names, are also folks who served with the plaintiff during her career.

What they know are a lot of things.

Counsel chose to focus on the sexual history. That was done without any disclosure in our initial supplemental discovery response of the content of what these witnesses would say. That is just a supposition on their

1  part.

2           Now, they sent us interrogatories. We began to
3  respond as we interview these folks with detail as to what
4  it is they know about the plaintiff, but also about Major
5  Hughes, and Major Eckrich, the two individuals who received
6  the promotions, because their qualifications are directly
7  placed in issue by the plaintiff's allegations, and also
8  what they know about Colonel Chaffinch, Sergeant Chaffinch,
9  Lieutenant Chaffinch, as we go back in time.

10          So it's all those facts that these witnesses
11 would testify to.

12          When the plaintiff comes forward and says, in
13 effect, to Your Honor, we want to suspend discovery, we want
14 to prevent the defendants from going forward, we don't even
15 want to see what these people have to say, we are not going
16 to even wait for their depositions or disclosure about what
17 they have to say, we want to cut this off and prevent it
18 from taking place, that's not appropriate.

19          I agree with what Mr. Liguori said. The Court
20 at some point after the evidence is in the record is going
21 to have to determine how much of this evidence on both sides
22 is going to be allowed in this trial. I tend to agree with
23 Mr. Liguori. My fear is that if the plaintiff is allowed to
24 go back in time to all of these incidents, conduct on the
25 part of Chaffinch, many of these incidents don't directly

involve a comment on gender, or on women, or women and men. Some of the crude humor they choose to make use of seems to be racial in nature, seems to be merely sexual humor that does not distinguish between men and women.

And there is a lot of other behavior and conduct that appears in the interrogatory answer that it's hard for me to understand how anyone could say that would bear on a decision years later to make a promotion. But we have an obligation to explore it. That's what we have tried to do. As Mr. Liguori intimated, the plaintiff, by making these kinds of allegations, has opened the door, also, to that kind of conduct on her part. And we have already heard time and again about her behavior on the job, her language, her sexually offensive conduct toward fellow employees, male and female, her "potty mouth." Those factors all bear on her suitability to be a high-ranking officer in the Delaware State Police.

I understand that the Court may at some point nevertheless rule that under Rule 403 the probative value of such evidence may be outweighed by the prejudice. There is obvious prejudice. I think there is also obvious probative value. I have trouble seeing the probative value in the conduct of Colonel Chaffinch telling jokes and that kind of conduct. There is obvious prejudice there. I think it is again a matter the Court is going to have to explore.

1              It seems to me, Your Honor, that it is merely a
2    reaction by the plaintiff to unfavorable, unflattering
3    testimony that's coming from witnesses.  She doesn't like
4    what these folks are going to say about her competence,
5    about her job performance, about her suitability to be an
6    officer.  They are attempting to, in their own way, cut off
7    that testimony, prevent us from accessing that testimony,
8    prevent us from making that evidence available for
9    deposition and presenting it to Your Honor.
10             It seems to me that at its heart, this letter,
11   which should have been a motion, attempts to disrupt the
12   discovery process.  That is not right.
13             My final thought, Your Honor, is that the Court
14   is naturally going to have a concern, to the extent that the
15   plaintiff attorneys may want to take depositions, we are
16   likely to go beyond the discovery cutoff, which is the end
17   of the year.
18             We intend to file a motion for partial summary
19   judgment directed only to the retaliation claims, Counts Two
20   and Three, and the amended complaint.  None of the testimony
21   that we are talking about here with these 25 witnesses has
22   anything to do with that.
23             So it seems to me that that motion could be
24   timely filed before that deadline, which I think is the end
25   of January, and the Court could review it and decide upon

1  writing send a message that this kind of conduct would not
2  be tolerated.
3          THE COURT:  You request two forms of relief,
4  essentially, that the Court impose some limits on the extent
5  of the questioning, the nature of the questioning, the areas
6  of questioning, specifically, the sexual conduct in the
7  workplace.
8          MR. T. NEUBERGER:  Yes.  Sexual history and
9  sexual conduct in the workplace.  Your order, I take that
10 from your order, that is basically how the Court, I think
11 you analyzed this in the order.
12         THE COURT:  I asked the question in the order.
13         MS. BALLARD:  That is the point I wanted to
14 make.  To the extent any witnesses we have named talk about
15 sexual matters, they will be sexual issues in the workplace.
16 We are not going to go back to college or boyfriends.  We
17 are going to on-the-job behavior in regards to sexual
18 harassment of employees, sexual jokes and crude remarks,
19 propositions, that sort of thing.  That is the only area
20 which would be gone into.
21         I would suggest the Court take a look at Colonel
22 Chaffinch's deposition.  He was asked, isn't it true you
23 said you have a hole in the mattress at home because your
24 wife said you don't have sex often enough?  Very crude
25 testimony that we allowed to proceed at discovery, not to

```
 1  come in at trial.  But it's discovery.  Why should we be
 2  limited in plaintiff's deposition if you take a look at the
 3  kind of questions that were asked of the defendant?
 4          THE COURT:  I can see both sides' interest, just
 5  in terms of cost and time and limiting, time limiting how
 6  far back this inquiry goes.  But I really, frankly, don't
 7  hear the parties to disagree as to the relevance as to one
 8  subject or another of the workplace activities of both
 9  parties, Mr. Neuberger.  I am struggling a little with your
10  requested relief that the Court limit questions with regard
11  to sexual conduct in the workplace of your client.
12          MR. T. NEUBERGER:  That was not an item
13  identified by Colonel Chaffinch as a factor he considered in
14  making the promotion decision.  This is the third paragraph
15  of my letter.  I gave you the record.  He says education,
16  background, experience, tenure, compatibility, and personal
17  loyalty to him.  Second paragraph from the bottom.  You can
18  look at those pages of his deposition.
19          The relevance is going to be measured by what
20  Colonel Chaffinch considered in making his promotion
21  decision.  Certainly, if he had said I didn't promote
22  Barbara Conley because she had a potty mouth or a reputation
23  for a potty mouth, I didn't promote Barbara Conley because
24  of some incident that happened, it would be fair game.
25  Colonel Chaffinch had his opportunity to identify all the
```

```
 1   reasons why he promoted the two guys over this female.  And
 2   their argument was never, ever, identified by him.  So I am
 3   saying, therefore, it is out of the case.
 4              That's our position, Your Honor.
 5              MS. BALLARD:  Your Honor, we still intend to
 6   take Colonel Chaffinch's deposition.  He is a separate party
 7   to the Delaware State Police.  I don't think the factors he
 8   identified exclude the kind of things we are talking about
 9   here.  Somebody's background and experience in the State
10   Police, that includes your potty mouth, whatever, your
11   conduct with other officers.
12              So it's not out of the case.  As I recall the
13   deposition, he was asked why he promoted Paul Eckrich and
14   Hughes, but not why he didn't promote Barbara Conley.  To
15   the extent it is relevant, we can get into that with him.
16              MR. T. NEUBERGER:  They had their chance to
17   depose him.  They were there when I deposed him.  I would
18   point to the blocked-in copies, where I boxed him in on the
19   reasons.  The Court, of course, in chambers can look at the
20   deposition and see if I did my job thoroughly and boxed him
21   in.  I think he is boxed in and he can't now add a new
22   reason and put it into this case.
23              THE COURT:  The Court is reluctant -- one, the
24   Court hasn't read the entire deposition.
25              In your answer -- I was going to let them see.
```

1       MR. T. NEUBERGER:  Let me give it to them.

2       THE COURT:  I was going to let you see what I

3  saw, the two bracketed passages.

4       MR. T. NEUBERGER:  You are saying in the answer.

5       THE COURT:  Yes, your answer.  Go ahead.  I

6  don't recall, I don't have it with me.  I guess where I am

7  going here is, I am not sure that further inquiry by way of

8  discovery should be bounded by the responses given by

9  Colonel Chaffinch in his deposition, Mr. Neuberger.  That is

10 my scratching-head query right now.

11      MR. T. NEUBERGER:  I would respond, Colonel

12 Chaffinch explained at the deposition that there were no

13 written criteria, guidelines, rules or anything that he

14 applied in making the promotions.  So it's not like they can

15 say, it's supposed to be considered by the State Police

16 because they have written procedures or whatever.

17      We then move from that, the fact that he says he

18 had unfettered discretion to make the promotions to, well,

19 please identify your subjective factors in making the

20 promotion.  And then he says, these are the six subjective

21 factors.  We explored it.  We went through how my client

22 measured against him on each and every one of those

23 subjective factors, measured against him, measured against

24 the two males.  Then we asked him, were there any other

25 factors?  That is where we picked up the sixth factor.  When

1  I came back later, about whether there were any other
2  factors, he added the sixth factor in.
3           THE COURT: Let me cut you off for a minute.
4  You have cited me to the second paragraph of your letter of
5  October 19. I see two factors. It strikes me that given
6  the liberal nature of the Federal Rules of Civil Procedure
7  insofar as discovery is concerned, and understanding and
8  wanting to protect any party on either side from any
9  scandalous and scurrilous attacks, and there is actually
10 Rule 12(f), which exists for that very purpose in part, to
11 protect parties from untoward allegations, there are two
12 criteria: one, compatibility, the other, background, that
13 jump out at me that suggest that it may be inappropriate for
14 the Court to limit the queries through discovery, or exclude
15 from those inquiries sexual conduct in the workplace.
16          MR. S. NEUBERGER: Your Honor, Colonel Chaffinch
17 defined what he meant by those terms at his deposition based
18 on followup questions by Mr. Neuberger.
19          THE COURT: Is he locked into that?
20          MR. T. NEUBERGER: Our position is he is locked
21 in because it is totally objective. He was the
22 decision-maker. He made the promotions.
23          MR. DURSTEIN: He is not our client. The
24 conflict was another issue. I think that is important here
25 because if plaintiff is arguing that we are somehow bound by