# EXHIBIT C



**WILCOX & FETZER LTD.**

In the Matter Of:

# Conley
# v.
# Chaffinch, et al.

C.A. # 04-1394-GMS

---

Transcript of:

# Colonel L. Aaron Chaffinch

June 6, 2005

---

Wilcox & Fetzer, Ltd.
Phone: 302-655-0477
Fax: 302-655-0497
Email: lhertzog@wilfet.com
Internet: www.wilfet.com

Case 1:04-cv-01394-GMS   Document 193-4   Filed 04/12/2006   Page 3 of 4

Conley                         v.              Chaffinch, et al.
Colonel L. Aaron Chaffinch   C.A. # 04-1394-GMS           June 6, 2005

Page 178

1  promotion from the Secretary of Safety and Homeland
2  Security James Ford, no.
3     Q. So if I asked you for the record what were the
4  reasons for selecting Hughes, what would you explain as
5  the reasons why you selected Hughes?
6     A. I don't know if I can tell you exactly the five
7  that are there. Tenure, background, education --
8     Q. The five are: First was education, second is
9  background, third is experience within the Delaware State
10 Police, fourth is tenure, and fifth is compatibility with
11 other members of the executive staff. Okay?
12        With that as a help, what were the reasons
13 why you selected Major Hughes?
14    A. Okay. Well, his tenure within the agency was
15 very well rounded. He -- like I explained earlier, he
16 had been to the academy as the assistant director of the
17 academy, so he had been involved in training. He'd been
18 in special investigations as a drug officer, so he had
19 experience in criminal investigations. He had been a
20 patrol sergeant and run a shift at Troop 7. He had been
21 a traffic lieutenant at Troop 5. He had been a troop
22 commander at Troop 5. He was a graduate of the FBI
23 National Academy. He attained a master's degree in
24 public administration. And he had worked his entire

Page 179

1  career in Kent and Sussex counties and he was familiar
2  with the area and the other troopers and the other
3  administrators of those troops.
4     Q. Are there any other reasons?
5     A. I thought he would be compatible with the other
6  staff members. I think I've hit -- I hit on experience.
7  I hit on his background. I hit on his tenure and his
8  education. So I guess that there's not any others.
9     Q. I'm just trying to be thorough.
10    A. Loyal to the superintendent.
11    Q. Excuse me?
12    A. Loyal to the superintendent.
13    Q. Is it fair to say that that's an additional
14 factor, or is that just within the other ones?
15    A. That's within the others.
16    Q. So loyal to the superintendent. What do you
17 mean by that?
18    A. Well, I had worked close with him and I knew
19 that he would support me in my position as
20 superintendent. He would also do a good job. He's
21 always been a go-getter. He was one of the biggest
22 workers on the road when he was on the road. He wrote
23 his share of traffic citations. And he -- you know, he
24 did a lot of criminal work. And I'll put his record up

Page 180

1  against anybody in the agency as far as work and
2  experience on the Delaware State Police.
3     Q. It's just that today is the time for you to give
4  all the reasons.
5     A. I suppose it is.
6     Q. So are there any other reasons why you selected
7  him over the other people?
8     A. Not that jump right out at me. I think I've hit
9  on them all.
10    Q. Now, if we go to Major Eckrich, how about giving
11 me the reasons why he was selected for the position?
12    A. Okay. From education standpoint, he's got a
13 master's -- a bachelor's and a master's degree. He's a
14 graduate of Southern Police Institute in Louisville,
15 Kentucky, which is a command school for law enforcement
16 administrators. He's -- he had worked patrol. He had
17 worked as a patrol supervisor, a shift commander. He had
18 worked at both as a criminal lieutenant and a traffic
19 lieutenant. And he'd been a troop commander. And I had
20 worked closely with him and I knew that he would be loyal
21 and -- loyal to me and we would be a good team to be a
22 part of the executive staff.
23    Q. You mentioned loyal two times, so I do want to
24 ask you about that.

Page 181

1        You worked with Barbara Conley over your
2  career, too?
3     A. Yes, I have.
4     Q. Is there any reason for you to think she
5  wouldn't be loyal to you if she was selected?
6     A. No, there's not.
7     Q. So are they all the reasons for Major Eckrich?
8     A. The other reason that we talked about earlier is
9  the fact that he had been in that position as a
10 lieutenant and that is a -- that is a large factor in my
11 decision.
12    Q. So just so you understand I'm being fair with
13 you, if there's anything else you said earlier, we'll
14 include that in reasons why he was selected. Okay?
15    A. Yes, sir.
16    Q. Is there anything else that you remember was a
17 reason why he was selected?
18    A. No, sir.
19    Q. Did you look into his disciplinary record?
20 Let's say Eckrich right now. Did you check and see
21 whether he had any violations, suspensions, or things
22 like that in his record?
23    A. I'm pretty sure he doesn't have any, but I
24 couldn't tell you exactly for sure, but if he has

Case 1:04-cv-01394-GMS   Document 193-4   Filed 04/12/2006   Page 4 of 4

Conley v. Chaffinch, et al.
Colonel L. Aaron Chaffinch    C.A. # 04-1394-GMS    June 6, 2005

Page 146

1  A. You mean that I may have inherited from the
2  previous superintendent?
3  Q. Yes.
4  A. Not to my knowledge.
5  Q. I know, for example, that with reference to
6  lieutenants and sergeants, there's testing and there's
7  bands and things like that. At that time the Delaware
8  State Police was using that process for those ranks;
9  right?
10 A. For sergeant, lieutenant, captain, yes.
11 Q. And for captain, too?
12 A. Yes.
13 Q. I remember seeing information about boards of
14 people who might interview captain candidates.
15 A. Okay.
16 Q. That's true, isn't it?
17 A. Yes, sir.
18 Q. Now, for majors there wasn't that kind of a
19 process?
20 A. No, sir.
21 Q. I think you're telling me that for majors there
22 was no process that you inherited from any of your
23 predecessors as far as filling those two major vacancies?
24 A. That's correct.

Page 147

1  Q. Are you telling me that there's no process in
2  the union contract between the State Police and the union
3  that applies to filling the vacancies?
4  A. I'm not telling you that, no.
5  Q. Is there anything in the union contract?
6  A. Not to my knowledge.
7  Q. I know there's that handbook, the Delaware State
8  Police rules and regulations, it's like a two-volume blue
9  thing I've seen with rules and regulations about the
10 State Police. You are aware of that book; right?
11 A. The administrative manual and the divisional
12 manual.
13 Q. In those two manuals, was there any process that
14 guided your selection of the two majors for the positions
15 we are talking about?
16 A. I think probably there may be something in there
17 about at the discretion of the superintendent, but
18 there's not any specific process, no.
19 Q. So, for example, there was no preexisting rule
20 in writing that required that anybody selected for major
21 have a certain educational background?
22 A. No, sir.
23 Q. There wasn't anything in writing that required
24 that a person who was selected for major have any

Page 148

1  specific operational background?
2  A. Well, I think it goes without saying you'd have
3  to be a captain.
4  Q. Sure.
5  A. You know what I mean. So that is one parameter,
6  you know. So you look at the captains in the agency to
7  make your selection and for the superintendent. And
8  certainly education and background and experience and
9  tenure all came into play with any selections that I made
10 for executive staff people.
11 Q. So you're saying that when you had to select
12 anybody to be part of the executive staff, you considered
13 education, background, experience, and tenure?
14 A. That's correct. Experience within the agency.
15 Q. While that wasn't found in any preexisting
16 written document, those are factors you used?
17 A. That's correct.
18 Q. I guess I'm trying to find out: Were there
19 other factors you used besides those four?
20 A. Well, by background I would mean where they have
21 been within their tenure as a trooper based on what
22 position I'm filling. I think you understand that. That
23 somebody that had been in an administrative position but
24 not necessarily in an operational position probably

Page 149

1  wouldn't get an operational job. You see what I'm
2  saying? Those kind of things come into play with any
3  selections that I would make for staff level positions.
4     And compatibility with other members of the
5  executive staff certainly would come into play, as well.
6  Q. I'll put down as another factor compatibility
7  with the other members of the executive staff.
8  A. Yes.
9  Q. So that gives me five categories. Were there
10 any others that you considered?
11 A. Not that I can recall.
12 Q. I remember seeing in some of the other cases
13 affidavits or testimony talking about as people rise to
14 higher management levels in the State Police, it's
15 important that they have operational experience, meaning
16 like in patrol and actual on-the-road type experience.
17 That's a fair statement, isn't it?
18 A. That's one very important facet, yes.
19 Q. So that's important. Okay.
20    For example, with respect to Captain
21 Barbara Conley, we know from paragraph 10 on page 4 of
22 the complaint that's in front of you that she was a
23 patrol trooper for eleven years at Troop 5. Do you
24 remember that?