**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CAPTAIN BARBARA L. CONLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 04-1394-GMS |
| | ) |
| COLONEL L. AARON CHAFFINCH, | ) |
| Individually and in his official capacity as the | ) |
| Superintendent, Delaware State Police; et al. | ) |
| | ) |
| Defendants, | ) |

**ANSWERING BRIEF IN OPPOSITION TO**
**PLAINTIFF'S THIRD MOTION IN LIMINE TO PRECLUDE**
**TESTIMONY OF AN ALLEGED SEXUAL RELATIONSHIP [CONLEY AND DIXON]**

DEPARTMENT OF JUSTICE
STATE OF DELAWARE

RALPH K. DURSTEIN, III, I.D. #912
STEPHANI J. BALLARD, I.D. #3481
Deputy Attorneys General
Carvel State Office Building
820 North French Street
Wilmington, DE 19801
(302) 577-8400
Attorneys for Defendants MacLeish, Mitchell
and Division of State Police

DATED: April 12, 2006

## **TABLE OF CONTENTS**

Page

TABLE OF CITATIONS ................................................................................................ ii

ARGUMENT ....................................................................................................................1

    I.      PLAINTIFF'S MOTION ENTIRELY DISREGARDS THE FACT THAT EVIDENCE OF AN INTIMATE RELATIONSHIP BETWEEN BARBARA CONLEY AND HER KEY WITNESS, GLENN DIXON, GOES TO THE FUNDAMENTAL ISSUE OF BIAS ON DIXON'S PART—AN ISSUE WHICH IS OF PARAMOUNT RELEVANCE TO THE CASE ............................................................................1

        A. Evidence of bias is always relevant, and this evidence is particularly relevant as the testimony of Glenn Dixon is virtually the sole evidence supporting Plaintiff's circumstantial case ................................................................................................1

        B. The evidence of a relationship between Conley and Dixon is admissible, as it will be grounded in the first hand, in-court testimony of many witnesses, and is being offered for the always proper purpose of evaluating Dixon's credibility and motivation for testifying based upon his bias or interest in the case. In addition, it is fully admissible as impeachment evidence against Conley and Dixon, who deny the affair .................2

        C. The fact that the evidence is unfavorable or embarrassing to Plaintiff and her witness, is not grounds for excluding it from evidence. The jury is entitled to know that there is substantial evidence that Plaintiff's key witness is biased or interested in the outcome of this case ........................................................................................................4

# TABLE OF CITATIONS

**Case Name**                                                                             **Page**

Commonwealth v. Cooley, 348 A.2d 103 (Pa. 1975) .................................................................. 3

Shepard v. United States, 290 U.S. 96 (1933) ........................................................................... 3

United States v. Abel, 469 U.S. 45 (1984) ......................................................................... 2, 4, 5

United States v. Console, 13 F.3d 641 (3d Cir. 1993) ................................................................. 4

United States v. Peppers, 302 F.3d 120 (3d Cir. 2002) ............................................................. 3

**Statutes, Rules and Other Authorities**

Federal Rule of Evidence 403 ..................................................................................................... 2

Federal Rule of Evidence 801 ..................................................................................................... 2

Federal Rule of Evidence 803 ..................................................................................................... 2

Federal Rule of Evidence 804(b)(2) ........................................................................................... 3

Federal Rule of Evidence 807 ..................................................................................................... 3

**ARGUMENT**

I.  **PLAINTIFF'S MOTION ENTIRELY DISREGARDS THE FACT THAT EVIDENCE OF AN INTIMATE RELATIONSHIP BETWEEN BARBARA CONLEY AND HER KEY WITNESS, GLENN DIXON, GOES TO THE FUNDAMENTAL ISSUE OF BIAS ON DIXON'S PART—AN ISSUE WHICH IS OF PARAMOUNT RELEVANCE TO THE CASE.**

During the course of discovery, Defendants learned from multiple Delaware State Police troopers and civilian employees that there is a wealth of evidence that Plaintiff Conley and Captain Glenn Dixon, are very close personally, and have been engaged in an affair and/or romantic relationship for many years. Admittedly, as is often the case in clandestine matters (both Conley and Dixon are married), much of the evidence is circumstantial, but involves conduct observed first hand by DSP witnesses. In addition, Defendants have evidence in the form of certain witnesses who can attest to Conley herself making sexual remarks about Dixon and actual physical contact between the two. (*See* Defendants Motion *in limine* on this issue). This evidence is highly significant to this case, as Dixon is virtually the only witness (besides Plaintiff) who has testified to allegedly sexist remarks and conduct on the part of the primary defendant, former Colonel Chaffinch. Accordingly, any evidence that Dixon may be biased to testify in Conley's favor is highly relevant.

**A. Evidence of bias is always relevant, and this evidence is particularly relevant as the testimony of Glenn Dixon is virtually the sole evidence supporting Plaintiff's circumstantial case.**

Plaintiff, in attempting to avoid the admission of this damaging evidence, argues that this is merely an attempt to "smear" Dixon and Conley, and that the evidence of the affair or relationship is "irrelevant to the case." Plaintiff claims that the issue of whether she is or was having an affair with Dixon is of no consequence to whether she was unfairly passed up for promotions. However, Plantiff cannot seriously contend that, if she is romantically involved with her key witness, that fact is not relevant to Dixon's potential bias or motivation to assist his friend by providing her with favorable testimony—notably, testimony that stands in sharp contrast to the rest of the evidence unearthed in discovery.[1] As discussed in detail in Defendants' Motion *in limine* for admission of evidence of this relationship (D.I. 168-69), this evidence is of paramount relevance to the case, as

1

it speaks squarely to the issue of bias or interest on the part of witness, Glenn Dixon.[2] The U.S. Supreme Court has held that bias is any "relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party...Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." United States v. Abel, 469 U.S. 45, 52 (1984). Plaintiff's argument of "irrelevance" falls flat.[3]

> **B. The evidence of a relationship between Conley and Dixon is admissible, as it will be grounded in the first hand, in-court testimony of many witnesses, and is being offered for the always proper purpose of evaluating Dixon's credibility and motivation for testifying based upon his bias or interest in the case. In addition, it is fully admissible as impeachment evidence against Conley and Dixon, who deny the affair.**

Plaintiff attempts to argue that the evidence will be inadmissible because it is "hearsay" or not based on personal knowledge of a witness. Plaintiff either overlooks the nature of the evidence or misapprehends the hearsay rules. With perhaps minor exceptions, which will not implicate the hearsay rules for other reasons, Defendants' witnesses will not be testifying as to "prior out of court statements" offered for the truth of the matter. F.R.E. 801. They will be testifying, in court, about their own first hand observations of conduct by and between Conley and Dixon, and the witnesses are subject to cross-examination. To the extent Plaintiff's own prior statements are offered, these are party admissions and not hearsay. F.R.E. 801(d)(1). *See also* F.R.E. 803(21).

Plaintiff focuses on one particular piece of evidence pertaining to the affair—statements made by Janet Vetter shortly before her death. Ms. Vetter was a civilian employee and Conley's co-worker for several years, When she was in the hospital, in the very terminal stage of her cancer, Vetter told Lt. John Campanella that she "could not die" before telling him the truth about Barbara Conley. Vetter told Campanella Conley had been

---

1 *See* Defendants' Witness disclosures, attached as Exhibit.
2 There are also other independent reasons why this evidence is relevant—such as providing evidence of inappropriate and unprofessional workplace conduct, bearing on Plaintiff's qualifications to hold the rank of Major.
3 Plaintiff's Rule 403 argument is extensively addressed in Defendants' prior motion in limine on this issue (D.I. 168-69). Briefly, whatever prejudice may result from the evidence is not "unfair" prejudice, and the well-settled recognition of the paramount importance of bias evidence tips the scales in the F.R.E. 403 balance in favor of admitting the evidence.

"out to get" him when he was her lieutenant; related a significant amount of information about many incidents of Conley's on the job misconduct and her glaring lack of professionalism; and also discussed Conley's affair with Dixon. Plaintiff claims that Vetter's statements are not admissible as a dying declaration under F.R.E. 804(b)(2) because Vetter did not believe her death was imminent. This is not correct, but this question is a factual matter that will have to be determined by the Court prior to the testimony.

Plaintiff correctly notes that a dying declaration is one made when the declarant was conscious of impending death and had given up hope of recovery. U.S. v. Peppers, 302 F.3d 120, 137 (3d Cir. 2002). It has been held that "the best evidence [of the declarent's consciousness of condition] would be a direct statement by the victim." Commonwealth v. Cooley, 348 A.2d 103, 107 (Pa. 1975)(cited with approval in Peppers). In this case, we have such a statement. Ms. Vetter prefacing her remarks with the statement that she "could not die" before disclosing the truth about Conley is itself evidence of her consciousness of impending death. The nature of Vetter's substantive statements about Conley—prefaced with the declaration that she had to let Campanella "know the truth" about the Plaintiff before she died--echoes the holding of the Supreme Court in Shepard v. United States, cited by Plaintiff, that a dying declaration is a statement "spoken as one dying, announcing to the survivors *a definitive conviction, a legacy of knowledge* on which the world might act when she had gone." 290 U.S. 96, 100 (1933)(emphasis added). Defendants can produce Campanella, and other witnesses, if necessary, who saw Vetter immediately prior to her conversation with Campanella, who can provide testimony that Vetter was in imminent expectation of death at the time she made her statements. Finally, even if Vetter's statements do not qualify as dying declarations, they would fall within the residual exception of F.R.E. 807, as having the necessary circumstantial guarantees of trustworthiness.

In addition to Vetter's statements, Defendants have a host of other evidence that speaks to the issue of the relationship between Conley and Dixon, and will be provided by first hand witness testimony. Plaintiff argues at length that the subject matter of this testimony—evidence such as Plaintiff rubbing Dixon's thigh; Plaintiff and Dixon spending hours locked in her office, or hours on the phone every day even after Dixon left the Traffic Division--is not relevant to Colonel Chaffinch's decision of who to promote. As a preliminary

3

matter, Plaintiff cannot make this statement with any assurance—Plaintiff's inappropriate workplace conduct with Dixon, her subordinate in the Traffic Division at the time the affair started, is part of her job history, and was well known to civilian and uniformed staff in the Headquarters building, including Colonel Chaffinch— who considered Plaintiff's (and the comparators') entire work history and experience at DSP in making his discretionary promotion decisions.[4] But more importantly, this evidence has a basis for admissibility entirely outside of its relationship to any substantive issue in the case. The evidence is offered for the always relevant purpose of showing bias, in favor of Plaintiff, on the part of the witness, Glenn Dixon.

Evidence of the Conley/Dixon relationship shows that Dixon is not simply a fellow employee of Chaffinch and Conley with information to offer; he is not just another witness with no interest in the case. Evidence that he and the Plaintiff have an intimate personal history and relationship is absolutely relevant and necessary evidence of Dixon's bias or interest in the case, which the jury must be aware of in assessing Dixon's credibility. The Third Circuit has held that "*extrinsic evidence may be introduced* as evidence of a witness's bias or interest in the case." U.S. v. Console, 13 F.3d 641, 661-62 (3d Cir. 1993)(emphasis added); *see also* U.S. v. Abel, *supra*, 469 U.S. at 51. Finally, the evidence would be admissible as impeachment evidence, as both Conley and Dixon have denied the affair.

**C. The fact that the evidence is unfavorable or embarrassing to Plaintiff and her witness, is not grounds for excluding it from evidence. The jury is entitled to know that there is substantial evidence that Plaintiff's key witness is biased or interested in the outcome of this case.**

Much of Plaintiff's argument appears to be grounded in the position that because the evidence is unfavorable and embarrassing, it should therefore be excluded. This is not a tenable legal position. Obviously evidence of a relationship is highly personal and unfavorable to Conley and her witness. Plaintiff's claim that this is simply a "smear" or "intimidation" campaign necessarily rests on a premise that Defense counsel, and presumably all of the various witnesses--including Lt. Curt Brown, Lt. Mark Rust, Sgt. Pete Fraley, Carole Warnock, Tammy Hyland, Lt. John Campanella/Janet Vetter, Sgt. Rodney Workman, Lt. Roger Willey, former

---

[4] Plaintiff incorrectly states that "Chaffinch admitted he did not take into account sexual history" in the promotion decisions. First of all, Conley's behavior with Dixon on the job is not offered as "sexual history", but for bias and as work related conduct. Secondly, Colonel Chaffinch was never asked--one way or the other--whether he considered

4

Colonel Chaffinch and others-- have simply "made it up" and would knowingly violate their oaths as officers of the court, witnesses and/or Delaware State Police Officers, and risk prosecution for perjury to provide this false information at trial. Certainly, if the Court believes the parties involved have "made this up," the evidence should be excluded. Defendants welcome any *in camera* review of the witnesses the Court may seek. However, exclusion of the evidence *in limine* is clearly not proper, given the always pertinent issue of bias that must be addressed.

There is no question that the disclosure of an extramarital affair in court and to the world at large is never a happy or pretty event. However, this is not something that Defendants put in motion. The evidence of the relationship was learned in discovery, comes from witnesses, and is what it is. Captain Conley has chosen to present Glenn Dixon as her primary factual witness, and seeks to have him testify about everything from details of Colonel Chaffinch's conduct (alleged off-color jokes and remarks from up to 20 years ago; alleged improper remarks about women in the workplace) to his opinions of Majors Paul Eckrich and R.L. Hughes' alleged shortcomings as commanders, to Captain Conley's allegedly distinguished work record and high qualifications to join the Executive Staff. Given this, if Defendants have reliable evidence of a longstanding affair and intimate relationship between Dixon and the Plaintiff, Defendants are fully within their rights---even their obligations—to present such evidence to the jury.

The Court must consider not only the interests of the parties, but also the integrity of the trial process. The jury is absolutely entitled to this information, so that they can determine whether Dixon's testimony is credible or is clouded by improper bias or interest. The U.S. Supreme Court has defined bias as any "relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party... the jury, as finder of fact and weigher of credibility has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." Abel, *supra*, 469 U.S. at 52. Clearly, evidence of Conley's and Dixon's relationship meets this legal test, and the jurors are entitled to consider it.

---

conduct of this nature as part of "background" or "experience" or otherwise in making his promotion decisions.

                    **DEPARTMENT OF JUSTICE**
                    **STATE OF DELAWARE**


By: /s/ Stephani J. Ballard
    RALPH K. DURSTEIN, III (I.D. No. 912)
    STEPHANI J. BALLARD (I.D. No. 3481)
    Deputy Attorneys General
    Carvel State Office Building
    820 North French Street
    Wilmington, DE 19801
    (302) 577-8400
    Attorneys for Defendants, MacLeish
    Mitchell and Division of State Police


                  **LIGOURI, MORRIS & YIENGST**


By: /s/ James E. Ligouri
    JAMES E. LIGOURI
    46 The Green
    Dover, DE 19901
    (302) 678-9900
    Attorney for Defendant, L. Aaron Chaffinch


DATED: April 12, 2006

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CAPTAIN BARBARA L. CONLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1394-GMS |
| | ) | |
| COLONEL L. AARON CHAFFINCH, | ) | |
| Individually and in his official capacity as the | ) | |
| Superintendent, Delaware State Police; et al. | ) | |
| | ) | |
| Defendants, | ) | |

**CERTIFICATE OF MAILING AND/OR DELIVERY**

The undersigned certifies that on April 12, 2006, she caused the attached, *Answering Brief in Opposition to Plaintiff's Motion in Limine to Preclude Testimony of an Alleged Sexual Relationship [Conley and Dixon]*, to be electronically filed with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Thomas S. Neuberger, Esq.
Stephen J. Neuberger, Esq.
Two East Seventh Street, Suite 302
Wilmington, DE 19801

                                            /s/ Stephani J. Ballard
                                            Stephani J. Ballard, I.D. #3481
                                            Deputy Attorney General
                                            Carvel State Office Building
                                            820 N. French Street, 6th Floor
                                            Wilmington, DE 19801
                                            (302)577-8400
                                            Attorney for Defendants MacLeish,
                                            Mitchell, and Division of State Police