IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CAPTAIN BARBARA L. CONLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1394-GMS |
| | ) | |
| COLONEL L. AARON CHAFFINCH, | ) | |
| Individually and in his official capacity as the | ) | |
| Superintendent, Delaware State Police; et al. | ) | |
| | ) | |
| Defendants, | ) | |

**ANSWERING BRIEF IN OPPOSITION TO
PLAINTIFF'S SIXTH MOTION IN LIMINE TO ALLOW
LEADING QUESTIONS DURING THE DIRECT EXAMINATION
OF CAPTAIN GLENN DIXON**

DEPARTMENT OF JUSTICE
STATE OF DELAWARE

RALPH K. DURSTEIN, III, I.D. #912
STEPHANI J. BALLARD, I.D. #3481
Deputy Attorneys General
Carvel State Office Building
820 North French Street
Wilmington, DE 19801
(302) 577-8400
Attorneys for Defendants MacLeish, Mitchell
and Division of State Police

DATED: April 12, 2006

**TABLE OF CONTENTS**

Page

TABLE OF CITATIONS ................................................................................................. ii

ARGUMENT .....................................................................................................................1

    I.    PLAINTIFF'S SUGGESTION THAT CAPTAIN GLENN DIXON IS AN ADVERSE WITNESS OR "IDENTIFIED" WITH DSP'S INTERESTS IN THIS CASE IS COMPLETELY FALSE.  GLENN DIXON IS AN INTIMATE FRIEND OF THE PLAINTIFF AND HAS WILLINGLY PROVIDED HER WITH EXTREMELY FAVORABLE TESTIMONY FOR HER CASE ...................................................1

        A.  The use of leading questions on direct examination is generally disfavored and may, but need not, be granted within the sound discretion of the trial judge, who must consider the actual facts of witness affiliation in each case ....................................................3

        B.  Plaintiff's reasoning is illogical, in that it is dependent upon unsupportable presumptions that (1) Dixon will change his testimony from that given at deposition and (2) his employer, Delaware State Police, will retaliate against him for testifying under oath..................................................................................................................4

        C.  Plaintiff's argument entirely disregards the fact that, if witness Dixon does change his testimony, she has the traditional remedy of impeachment, a legal technique far more powerful and less susceptible to abuse or collusion than leading questions on direct examination........................................................................................................5

# TABLE OF CITATIONS

**Case Name**                                                                                                                                              **Page**

Commonwealth of Pennsylvania v. Lambert, 1998 WL 558749 (Pa. Comm. Pl. 1998) ......... 5

Ellis v. City of Chicago, 667 F.2d 606 (7th Cir. 1981) .......................................................... 2, 3

Haney v. Mizell, 744 F.2d 1467 (11th Cir. 1984) ............................................................. 2, 3, 4

Lis v. Robert Packer Hospital, 579 F.2d 819 (3d Cir. 1978) ..................................................... 3

Stahl v. Sun Microsystems, Inc., 775 F.Supp. 1397 (D.Colo. 1991) ........................................ 2

State v. Johnson, 784 P.2d 1135 (Utah 1989) ............................................................................ 3

U.S. v. Hicks, 748 F.2d 854 (4th Cir. 1984) ............................................................................ 2

U.S. v. McLaughlin, 1998 WL 966014 (E.D.Pa. 1998) ..................................................... 2, 4, 5

**Statutes, Rules and Other Authorities**

Federal Rule of Evidence 607 .................................................................................................... 5

Federal Rule of Evidence 611(c) ........................................................................................... 3, 4

Wright and Miller, Federal Practice & Procedure, Ch. 7, §6168 .............................................. 3

**ARGUMENT**

**I. PLAINTIFF'S SUGGESTION THAT CAPTAIN GLENN DIXON IS AN ADVERSE WITNESS OR "IDENTIFIED" WITH DSP'S INTERESTS IN THIS CASE IS COMPLETELY FALSE. GLENN DIXON IS AN INTIMATE FRIEND OF THE PLAINTIFF AND HAS WILLINGLY PROVIDED HER WITH EXTREMELY FAVORABLE TESTIMONY FOR HER CASE**

Plaintiff seeks leave of this Court to ask "leading questions" on direct examination of her own witness, Captain Glenn Dixon. Plaintiff does not contend that Dixon is a "hostile" witness. Quite to the contrary, she argues that the "powerful testimony" Dixon would present is favorable to her case and relevant to "Chaffinch's animosity towards women." (Plt. Mot. at p.1). Dixon's deposition was taken early in discovery, and was very favorable to Plaintiff, vouching for many of the allegations she made in her complaint, including a number of alleged crude and/or gender based jokes and remarks by Chaffinch. Other depositions were taken, and counsel for Defendants interviewed more than 30 other Delaware State Police employees and potential witnesses, and found Dixon's testimony to be an anomaly. To date he remains virtually the only witness (besides Plaintiff) who has or would testified to allegedly discriminatory behavior on the part of former Colonel Chaffinch.

Plaintiff's counsel maintains that he must be permitted *leading questions* of this already highly favorable witness because Dixon is "fearful of retaliation" from Defendants for his testimony in favor of Conley. Despite Plaintiff's bare assertion that these purported fears exist and are "valid and legitimate," Plaintiff offers no evidence of any actual or threatened retaliation.[1] Plaintiff's counsel, offering his own "expert opinion," claims that Dixon's assumed fear provides a "probability that [he] will retreat from [his] prior testimony." (Plt. Mot. at p. 1). A glance at any page of Glenn Dixon's 118 page deposition will make quite clear to the Court that Dixon was in no way inhibited in his scathing assertions against Colonel Chaffinch. (*See* select pages at Ex.A). Dixon even went beyond testifying about Chaffinch, to offering his personal opinions extolling the qualifications of his friend, Barbara Conley, over the comparators for promotion.[2]

---

[1] Plaintiff's counsel, apparently offering himself as a witness in this matter, makes an unfounded assertion that a prior DSP attorney told him that the current Lt. Colonel feared demotion if he did not testify in a certain manner in a prior case. (Op. Brf. p.1, 5). If necessary, this witness could be produced to refute this improper and baseless allegation against the integrity of DSP and its attorneys. Needless to say, Mr. Neuberger's double hearsay evidentiary assertion in a motion *in limine* may not be considered by the Court. As to Dixon's claims that Colonel Chaffinch can be "vindictive," Defendants can produce a host of witnesses who would testify that Conley is highly vindictive to those who displease her.

[2] Dixon testified: "She was more proactive at Troop 5 as traffic lieutenant than Paul Eckrich ever thought to be.... He

1

Appropos to the issue of Dixon's allegiances, Defendants have learned in discovery from many witnesses that it has been observed and widely reputed, for many years, that Plaintiff Conley and Captain Glenn Dixon, have been engaged in an intimate relationship. Plaintiff herself has made admissions of a sexual nature about Dixon. In addition, Defendants have interviewed witnesses who can attest to evidence of Conley and Dixon's daily visits and/or extended phone calls, even after they ceased working together, and even about actual physical contact between the two. (*See* Defendants' Motion *in limine* on this issue, D.I. 168-69). This evidence is highly suggestive that if Dixon has a personal stake or interest in this case, it is not in favor of (or in fear of) DSP but in favor of the Plaintiff, with whom he is intimately involved. Witnesses have also suggested that Conley is blackmailing Dixon by threatening to tell his wife about the affair. Thus, if Dixon is "identified" with anyone, it is with Conley. U.S. v. Hicks, 748 F.2d 854 (4th Cir 1984)(Government could pose leading questions to defendant's girlfriend who was "clearly...identified with an adverse party [her boyfriend]"); Stahl v. Sun Microsystems, Inc., 775 F.Supp. 1397 (D.Colo. 1991)(former employee in ongoing relationship with defendants' key witness was "identified" with defendants). The idea that Conley's counsel should be able to ask leading questions to perfect the already favorable testimony of her boyfriend and "star witness" is preposterous.

Plaintiff's suggestion that she is entitled to use leading questions in directly examining Dixon simply because he is a DSP employee is without merit. The cases she cites as authority for leading questions to "witnesses identified with an adverse party" are inapposite to this case. (*See e.g.* Ellis v. City of Chicago, 667 F.2d 606 (7th Cir. 1981)(leading questions of partner of policeman present at shooting); U.S. v. McLaughlin, 1998 WL 966014 (E.D.Pa. 1998)(IRS could ask leading questions of Defendants' accountant of decades who prepared returns in question and was being paid for his factual testimony); Haney v. Mizell, 744 F.2d 1467 (11th Cir. 1984)(leading questions of emergency room nurse identified with hospital defendant)). This is an employment case about Chaffinch's executive decision-making and the qualifications of Conley and

---

seemed always kind of just lay back and get by with the bare minimum, where she would, you know, be, proactive and come up with some new ideas....I mean, overall good, great leadership skills, I feel." (Dixon at 94). As with the issue of Chaffinch's conduct, this testimony stands in sharp contrast—to say the least—of the opinion of virtually every other witness regarding the relative qualifications of Plaintiff and the comparators.

comparators dating back more than 20 years. In such a case, virtually every witness of consequence is going to be an employee (or retiree) of the employer, DSP. By Plaintiff's reasoning, she would be entitled to ask leading questions on direct of each and every DSP employee. By Plaintiff's reasoning, her lawyer, rather than the witnesses, could present the entire case. It is clearly not so simple.

> **A. The use of leading questions on direct examination is generally disfavored and may, but need not, be granted within the sound discretion of the trial judge, who must consider the actual facts of witness affiliation in each case.**

F.R.E. 611(c) begins with the presumption that "leading questions should not be used on the direct examination of a witness." *See also* Ellis, *supra*, 667 F.2d at 613 (leading questions generally undesirable on direct); Wright and Miller, *Federal Practice & Procedure*, Ch. 7, §6168 (leading questions bear risk of suggestion). The exception carved out in the Rule provides that the Court "may" (not must or shall) permit leading questions of a "witness identified with an adverse party." While, sometimes, employees directly involved with the underlying claim are considered "identified" with the adverse party defendant, this is not always the case. Furthermore, even in cases where a court of appeals has found that a district court erred in not considering a given witness adverse or "identified", the district court's refusal to allow leading questions was not found to constitute reversible error. Ellis, *supra*; Haney, *supra*; State v. Johnson, 784 P.2d 1135 (Utah 1989). "Rule 611(c) is still framed in words of suggestion rather than command, and whether it will be applied is a matter ultimately left to the discretion of the trial judge." Johnson at 1143. "A decision [to deny leading questions on direct] will not be reversed absent a clear showing of prejudice to the complaining party." Ellis, 667 F.2d at 613.

Clearly, the caselaw does not envision the application of formulaic rules by the trial judge (*i.e.* all employees are "identified" with adverse parties), but requires the court to look at the actual facts of the case at bar. In an analogous case, the Third Circuit roundly criticized a district court's routine application of the exception provision of Rule 611(b) [scope of cross] without a discretionary analysis. Lis v. Robert Packer Hospital, 579 F.2d 819, 822-23 (3d Cir. 1978). Application of the exception, the court held, "clearly contemplates special circumstances." Id. Under Rule 611(c), for a witness to be "identified" with an adverse party, it must be determined that he shares the same interests and concerns as the defendant in the lawsuit---for

3

example, the emergency room nurse for defendant hospital in a medical malpractice case, or the accountant of a defendant targeted by the IRS. See Haney, McLaughlin, *supra*. Here, it is plain to anyone familiar with this case that Glenn Dixon is in no way "identified" with the interests of the Delaware State Police or Colonel Chaffinch in this case. Defendants deny gender discrimination and maintain that the most qualified individuals were promoted. Defendants have obtained evidence from more than 30 Delaware State Police personnel, who worked with Chaffinch (and Plaintiff) throughout his 25 year DSP career, who would testify that they never heard Chaffinch make anti-female or sexist comments on the job or about women in the workplace. Dixon testifies to just the opposite and seeks a favorable outcome for his close friend, Barbara Conley. Notably, in the pendent Price/Foraker v. DSP cases, Conley and Dixon also form a two person team to provide adverse (and otherwise unsupported) testimony against Colonel Chaffinch. Glenn Dixon is an adverse witness *to DSP*—not to plaintiff—in two separate cases, and is well known as a Conley ally. For the Court to allow Plaintiff to ask leading questions *of her own witness and friend* as though he were "adverse" to her, would require the Court to close its eyes to Captain Dixon's deposition and entirety of the evidence of record.

**B. Plaintiff's reasoning is illogical, in that it is dependent upon unsupportable presumptions that (1) Dixon will change his testimony from that given at deposition and (2) his employer, Delaware State Police, will retaliate against him for testifying under oath.**

Plaintiff's argument in support of her purported need to ask leading questions of her own witness is not legally or logically supported. First she claims that because of Dixon's supposed fear of retaliation, he will change his testimony from the favorable (to Conley) testimony he has already given at deposition. This is nothing more than speculation on Plaintiff's part. There is no indication that Dixon has suddenly become an unfavorable or unwilling witness. There is no suggestion that he has suddenly allied himself with Defendants. In fact, Dixon is a witness so closely identified with Conley that defense counsel have treated him as a virtual party to the case (on the Plaintiff's side) and not even attempted to interview or speak with him about his testimony. If Plaintiff has some new information about a change in Dixon's testimony, she has not been forthcoming with it. It is unreasonable to ask the Court for an advance ruling allowing her to ask leading questions on the pure speculation that it is *possible* that Dixon could change his testimony at trial.

The second logical fallacy of Plaintiff's argument is that it presumes that Defendants-Delaware State

4

Police and its commanding officers-will retaliate against Dixon for giving what Plaintiff characterizes as "truthful testimony." Obstructing testimony or retaliating against an employee for testifying in court is a criminal offense-not to mention a violation of DSP Rules and Regulations. To prevail on her motion, Plaintiff must ask this Court to presuppose that Defendants will break the law. While this is, unfortunately, not the first time Plaintiff's counsel has leveled baseless accusations of witness tampering or intimidation against Defendants and their attorneys, this latest articulation of the argument is--like those which preceded it--baseless and unworthy of a member of the Bar of this Court. If Plaintiff's motion is dependant on assumption of an anticipated crime by Defendants, it goes without saying it must be denied.

> **C. Plaintiff's argument entirely disregards the fact that, if witness Dixon does change his testimony, she has the traditional remedy of impeachment, a legal technique far more powerful and less susceptible to abuse or collusion than leading questions on direct examination.**

Finally, in Plaintiff's eagerness to script the testimony of Glenn Dixon, she overlooks the critical fact that, should Dixon testify differently at trial than he did at deposition, she can fully avail herself of the remedy of impeachment. It is well-settled that a witness may be impeached, if necessary, by the party who called the witness. F.R.E. 607. Impeachment is the traditional means by which inconsistent statements are flagged for the jury, and may indeed be a more powerful litigation tool than leading questions. Impeachment also avoids the well-known dangers of leading questions on direct, such as collusion between a party and witness and the fact that leading questions elicit less reliable testimony, as they are essentially the lawyer testifying in lieu of the witness. In this way, "the leading question becomes not a tool of truth but of advocacy and intimidation." Commonwealth of Pennsylvania v. Lambert, 1998 WL 558749 (Pa. Comm. Pl. 1998). As another Court succinctly held:

> It better serves the quest for truth to let the witness testify unswayed by counsel's leading, whether that leading be of the patent put-words-in-mouth variety, or just mere, gentle nudging. Direct examination is an art, and an oft-unsung one at that. When done right, it looks deceptively easy. To that end, lawyers in this land have the right to prepare their own witnesses so that testimony comes forth smoothly, clearly, and logically. Once the witness is on the stand, however, lawyers no longer have that right, including the right to lead. The search for truth is better served when the witness actually goes it on his own, without friendly counsel serving as some sort of testimonial TelePrompTer.™

McLaughlin, 1998 WL 966014 at p.2.

                **DEPARTMENT OF JUSTICE**
                **STATE OF DELAWARE**


By: /s/ Stephani J. Ballard
    RALPH K. DURSTEIN, III (I.D. No. 912)
    STEPHANI J. BALLARD  (I.D. No. 3481)
    Deputy Attorneys General
    Carvel State Office Building
    820 North French Street
    Wilmington, DE 19801
    (302) 577-8400
    Attorneys for Defendants, MacLeish
    Mitchell and Division of State Police

    **LIGOURI, MORRIS & YIENGST**


By: /s/ James E. Ligouri
    JAMES E. LIGOURI
    46 The Green
    Dover, DE  19901
    (302) 678-9900
    Attorney for Defendant, L. Aaron Chaffinch

DATED: April 12, 2006

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CAPTAIN BARBARA L. CONLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1394-GMS |
| | ) | |
| COLONEL L. AARON CHAFFINCH, | ) | |
| Individually and in his official capacity as the | ) | |
| Superintendent, Delaware State Police; et al. | ) | |
| | ) | |
| Defendants, | ) | |

## CERTIFICATE OF MAILING AND/OR DELIVERY

The undersigned certifies that on April 12, 2006, she caused the attached, *Answering Brief in Opposition to Plaintiff's Sixth Motion In Limine to Allow Leading Questions During the Direct Examination of Captain Glenn Dixon*, to be electronically filed with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Thomas S. Neuberger, Esq.
Stephen J. Neuberger, Esq.
Two East Seventh Street, Suite 302
Wilmington, DE 19801

/s/ Stephani J. Ballard
Stephani J. Ballard, I.D. #3481
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302)577-8400
Attorney for Defendants MacLeish,
Mitchell, and Division of State Police

7