IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BARBARA CONLEY )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STATE OF DELAWARE, )<br>DIVISION OF STATE POLICE, )<br>et al., )<br>)<br>Defendants. ) | C. A. No. 04-1394-GMS |

**ANSWER OF DEFENDANTS DELAWARE STATE POLICE, MITCHELL, AND MACLEISH TO PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF FEMALE POLICE OFFICERS**

I.   Background

The plaintiff, a State Police Captain, has claimed in her interrogatory answers, and also in a media campaign orchestrated by her lawyers, that her lawsuit is an effort to attack widespread prejudice against women within the Delaware State Police.[1] For example, she claims that "for a woman to complain within DSP is a career ending [sic] act."[2] She seeks to generalize her purported experience to all female police officers.[3] For example, she claims that "as a female officer here you're not allowed to associate with anybody".[4] She claims that the organization allowed troopers to disrespect her and other women through "offensive comments, rumors, and wolf whistling".[5]

---

[1] "When I came on this job I had great expectations although I knew it would be rough and difficult for a female police officer in a male dominated [sic] police environment." (Plaintiff's Answers and Objections to Defendants' First Set of Interrogatories, hereinafter "PAI" at 68)
[2] PAI at 63.
[3] "{A}s a female trooper on this job in the early 80's and even today on some level, you are not encouraged to complain. If you don't comply and laugh at their jokes and go along with the program so to speak, they don't have any use for you and you can't get along in this environment without any support." PAI at 63.
[4] PAI at 34.
[5] PAI at 32.

Plaintiff claims to represent the interests of other female State Police officers.[6] She sought to be a "role model to other women"[7]. She claims to have been a mentor for others.[8] She accuses DSP of ignoring issues unique to women in law enforcement, of a lack of support in sending women to conferences, and even the lack of a bathroom.[9]

In her lawsuit, she relies on anecdotal accounts of purported remarks to support a claim that she should have been promoted to the rank of Major ahead of twenty other officers holding the rank of Captain, including female and minority officers. "[W]hen openings arose I was rumored to be the female most likely to get it."[10] She specifically mentions remarks supposedly made about Captain Mary Ann Papili.[11] As an element of damages, she claims injury to her reputation among other police officers.[12]

In fact, the plaintiff's lawsuit is a self-serving attempt to coerce a promotion she never deserved, based on views which are not shared by her fellow female officers. Her allegations serve only her narrow self-interest. While she fashions herself as carrying the banner for female troopers, the reality is to the contrary. She is held in low regard by her female colleagues. They do not support her claims. They would directly contradict her allegations about the promotional process. They do not see her as the victim of discrimination. They do not regard her as qualified for promotion to Major. Rather, they see her as having used her gender to obtain advantages she did not deserve. Her conduct is widely regarded as embarrassing, and contrary to the image that female troopers should project. Even those witnesses with reservations about the performance of Colonel Chaffinch do not see the plaintiff as having a valid grievance as a result of the promotional process. The allegations set forth in plaintiff's interrogatory answers, which form the essence of her case, will be directly refuted by the testimony of these female officers.

---

[6] PAI at 69
[7] PAI at 69.
[8] PAI at 68.
[9] PAI at 45.
[10] PAI at 68-69.
[11] Complaint ¶100.
[12] PAI at 78.

2

II.    <u>The Witnesses</u>

**Captain Mary Ann Papili** is mentioned by the plaintiff in paragraph 100 of her Complaint. It seems counter-intuitive that the plaintiff lawyers would object to testimony from a witness actually named in their pleading. Be that as it may, as set forth in Exhibit A to plaintiff's motion, Captain Papili would testify as to the plaintiff's behavior, language, communication skills, leadership, treatment of fellow officers, and willingness to take on work assignments, each in terms of actual incidents and examples. She is also familiar with the plaintiff's long-term relationship with Colonel Chaffinch. Finally, she is familiar with the command and operations experience of Major Hughes and Major Eckrich, and could compare that to the experience (or lack thereof) of the plaintiff.

**Tammy Hyland** has worked closely with the plaintiff as a civilian employee at Headquarters. She has been in an ideal position to observe the plaintiff on a day-to-day basis in a leadership position in the Traffic Section. She can testify in detail as to the plaintiff's behavior toward male and female subordinates. Contrary to plaintiff's suggestion, Ms. Hyland's role as a civilian employee would not weaken her testimony regarding the plaintiff.

**Debbie Jester** can testify as to the plaintiff's behavior as a Traffic Lieutenant at Troop 5, in particular her language, use of profanity, and ribald humor. In a case where the plaintiff relies on such conduct on the part of others as evidence of discrimination, "what is good for the goose is good for the gander". If such conduct is at all probative, it would be equally probative as to the plaintiff and defendant Chaffinch. If jokes told on informal social occasions can be used to suggest prejudice many years later, then certainly such conduct on the job reflects on suitability for promotion.

**Captain Betsy Shamany** is personally familiar with the plaintiff's behavior at Headquarters, including her treatment of staff. While assigned to the Internal Affairs Unit, she investigated a complaint of improper use by the plaintiff of a DSP credit card (which resulted in discipline), and a complaint by the plaintiff against her brother (which was not substantiated). She is familiar with the plaintiff's lack of qualifications for the administrative/budget position now filled by Major Eckrich. She is in an ideal position to deal with plaintiff's claim that she is a "role model" or standard-bearer for female police officers.

**Alice Bailey** and **Melissa Zebley** are female officers who were promoted by Colonel Chaffinch. Each worked closely with Chaffinch, and could describe his treatment of female police officers on an everyday basis. Both could comment on the reputation that Conley had earned, and whether she would be an appropriate "role model" for female officers aspiring to advance through the ranks.

III.    Argument

Plaintiff misunderstands, perhaps intentionally, the defendants' purpose in calling these witnesses. They were not, as plaintiff well knows, part of the promotional decision-making process. Their testimony is relevant to another fact in issue, the plaintiff's suitability for promotion, based on her past record and behavior. The plaintiff has opened the door wide to such testimony, by claiming that she was better qualified for promotion to Major than some twenty other Delaware State Police Captains, including female and minority officers. If she cannot show that her qualifications exceeded those of the other twenty candidates, then her claims must fail. Thus, evidence probative of her ability is relevant to her claim that she, above all twenty others, deserved promotion.

The point is not that any of the witnesses *informed* Colonel Chaffinch's decision, but that their own observations and experience *confirm* his wisdom in passing over the plaintiff for promotion. They are able through personal knowledge to rebut the plaintiff's claims concerning her record and her reputation. For example, the jury in this case should consider whether an officer who purchased a three-thousand dollar watch on a DSP credit card, without authority to do so, and then belatedly issued a bad check in reimbursement, is suitable for promotion. As women, they are in an excellent position to contradict her claims of gender discrimination by reference to specific incidents, including, for example, their own promotions by Colonel Chaffinch. Their experiences are relevant to plaintiff's claim that she was one among many victims of widespread and systematic discrimination directed at all female officers.

Rule 403 bars only testimony that is *unfairly* prejudicial. There is nothing unfair about defense witnesses whose observations and experiences fail to support plaintiff's attacks on the Delaware State Police. The plaintiff seeks to suppress this testimony, merely because it is unflattering and damaging. Her argument ignores the fact that the

4

testimony goes to the very heart of her claim, and comes from witnesses who served with her and have personal knowledge of the facts. To be sure, the testimony is prejudicial to the plaintiff's case. The cumulative impact may well doom her claims. But there is nothing inherently unfair about the testimony of adverse witnesses with knowledge, duly disclosed, subject to questioning at deposition and cross-examination at trial. Rather, basic notions of fairness would dictate that the defense be allowed to present competent witnesses to dispute the plaintiff's testimony.

Plaintiff cannot use Rule 701 to bar this testimony. The bulk of it consists of observations of plaintiff's conduct on the job, for example her "potty mouth", vindictive comments about colleagues and superiors, her mediocre performance of routine tasks, her failure to respond to calls, her casual hours. This recounting of plaintiff's behavior would involve facts, not opinions. Pursuant to Rule 701, such testimony would constitute a foundation for testimony in the form of inferences and lay opinion, in that it [a] would be based on the perception of the witness, through actual contact with the plaintiff, and [b] would be helpful to the jury in understanding the witness' testimony and in determining whether the plaintiff's claims were valid. Such a determination as to admissibility of any such lay opinions cannot be made prior to trial. For that reason, a motion in limine is premature, and unwarranted. The defense expects to be able to lay a thorough foundation through each of the challenged witnesses, such as to justify an inference or opinion as to the plaintiff's suitability for promotion. The Court will be ideally situated to make such a determination in the context of the trial testimony.

/s/ Ralph K. Durstein, III
Ralph K. Durstein, III (ID# 912)
Stephani J. Ballard (ID#3481)
Deputy Attorneys General
Department of Justice
State of Delaware
820 N. French Street
Wilmington, DE 19801
(302)577-8510

5

        /s/ James E. Ligouri
        JAMES E. LIGOURI
        46 The Green
        Dover, DE  19901
        (302) 678-9900
        Attorney for L. Aaron Chaffinch

DATED: April 12, 2006

# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BARBARA CONLEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 04-1394-GMS |
| | ) | |
| STATE OF DELAWARE, | ) | |
| DIVISION OF STATE POLICE, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF MAILING AND/OR DELIVERY

The undersigned certifies that on April 12, 2006, he caused the attached, Answer of Defendants Delaware State Police, Mitchell and MacLeish to Plaintiff's Motion to Exclude Testimony of Female Police Officers, to be electronically filed with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Thomas S. Neuberger, Esq.
Stephen J. Neuberger, Esq.
Two East Seventh Street, Suite 302
Wilmington, DE 19801

/s/ Ralph K. Durstein III
Ralph K. Durstein III, I.D. #912
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302)577-8400
Attorney for Defendants MacLeish, Mitchell, and Division of State Police

7