IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BARBARA CONLEY )  | |
| ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | C. A. No. 04-1394-GMS |
| ) | |
| STATE OF DELAWARE, ) | |
| DIVISION OF STATE POLICE, ) | |
| et al., ) | |
| ) | |
|     Defendants. ) | |

**ANSWER OF DEFENDANTS DELAWARE STATE POLICE, MITCHELL, AND MACLEISH TO PLAINTIFF'S MOTION TO EXCLUDE WITNESSES**

I.   Background

    This is the plaintiff's third attempt to exclude the testimony of defense witnesses who would contradict her claims of gender discrimination, dispute her attacks on the Delaware State Police, and who would characterize her career as mediocre at best, marked by disturbing instances of misconduct. Initially, the plaintiff sought through sealed letters (rather than the required discovery motion) to object to the disclosure of these witnesses. When that effort failed, and the Court allowed discovery to proceed, the plaintiff failed to pursue depositions in a timely manner, and subsequently sought to exclude the witness testimony from consideration, in the context of dispositive motions. Here, in the guise of a motion in limine, the plaintiff renews yet again her effort to bar the testimony of competent witnesses, her present and former colleagues, with knowledge of her career and the issues raised in her lawsuit.

    Plaintiff does not set forth any grounds for exclusion of the witness testimony on evidentiary grounds. There is no argument made as to the competence of the witnesses or the relevance or materiality of their anticipated testimony. Rather, she seeks, now in desperation, to prevent this testimony solely because it is unfavorable.

II.    <u>Chronology</u>

On **August 2, 2005**, the plaintiff served her answers to interrogatories[1] in the form of a rambling narrative covering some 82 pages and encompassing her entire career with the State Police. In support of her allegations regarding the promotional process in 2004, she cited incidents, remarks, jokes, anecdotes, and other behavior covering a period of twenty-five years or more.[2] Plaintiff's attack on the Delaware State Police ("DSP") in fact dates to her preconceptions of the job.[3] Her contacts with Colonel Chaffinch began in 1983 or late 1982.[4] With the filing of this discovery, it became apparent to the defense that it would be necessary to locate and interview numerous police officers and civilian DSP employees, many long since retired, who worked with and supervised the plaintiff during the time frame covered in her interrogatory answers. Defense counsel thus embarked on an investigative effort that involved locating and interviewing active and retired officers with knowledge of the allegations set forth in plaintiff's voluminous account.

On **September 21, 2005**, the defendants filed an amendment to their initial disclosures[5] containing the names of the witnesses who had been located and contacted, and a comprehensive summary of the facts known to them. In large part, the recollections of these individuals contradicted the claims set forth in the plaintiff's narrative. In addition, these witnesses recalled the plaintiff's substandard performance and improper conduct as a trooper. The individuals interviewed were in turn able to suggest the names of other persons with knowledge of the plaintiff's allegations.

Rather than pursue depositions of these witnesses, the plaintiff embarked on a course of conduct intended to prevent the numerous adverse witnesses from testifying in the case. Beginning on **October 19, 2005**,[6] her lawyers began filing sealed letters with the Court,[7] seeking

---

[1] [Docket #72]

[2] "We are talking about 20 plus years of conversations and so forth back and forth so it is hard to pinpoint any specifics." Plaintiff's Answers and Objections to Defendants' First Set of Interrogatories (hereinafter "PAI") at 10. "One incident is – goes back quite a few years." PAI at 47. "[A]s a female trooper on this job in the early 80's and even today…" PAI at 63. "I did have an issue with a Troop Commander in approximately 1987 to 88…" PAI at 63. "As a female officer on this job, even more so back in that time frame, you were trying to assimilate and get along in an environment that is largely male and I learned early on…" PAI at 63.

[3] "When I came on this job I had great expectations although I knew it would be rough and difficult for a female police officer in a male dominate [sic] police environment." PAI at 68.

[4] PAI at 5. "Starting with my first assignment in Bridgeville at Troop 5 my and Chaffinch's careers [sic] have mirrored each other because of the amount of frequency and contact [sic] that I've had with him…" PAI at 6.

[5] Docket #82.

[6] Docket ##92,93

[7] See also Docket ##96, 97 on October 20; Docket ##101, 102 on November 1, 2005; and Docket # 105 on November 2, 2005.

2

to disrupt discovery, and accusing defense counsel of "obstruction of justice" [sic].  At one point, the plaintiff lawyers suggested that the defense lawyers should be arrested and prosecuted criminally.  Faced with these bizarre tactics, the Court held a discovery conference on **November 17, 2005** in chambers.  The Court rejected the allegations of "party/witness intimidation" and found no basis to "unduly restrict the discovery inquiries that need to be made in order to properly focus the issues, the relevancy, the hearsay, all the evidentiary issues we are going to have to deal with in this case."[8]  The Court accepted the defense suggestion that discovery proceed with regard to the newly-discovered witnesses with information to contradict the plaintiff's claims.[9]

In the meantime, plaintiff had served her first set of interrogatories on the defendants on **September 22, 2005**[10].  The defendants served timely, full, and complete answers on **October 24, 2005**[11].  Thereafter, the defendants updated their responses on **December 15, 2005**[12] and again on **December 21, 2005**[13] and **December 27, 2005**[14].  Aside from attempting to schedule several depositions on very short notice, during the holiday season[15], the plaintiff took no action in response to exercise her right to discovery, despite the urging of defense counsel to proceed, and a pledge of full cooperation in scheduling.[16]

---

[8] [T-41,42]
[9] [T-42]
[10] [Docket #83]
[11] [Docket #99]
[12] [Docket #119]
[13] [Docket #125]
[14] [#128]
[15] In an e-mail sent at 7:37 p.m. on December 20, 2005, defense counsel pointed out the folly of plaintiff's attempt to schedule 25 depositions before the end of the year.  "It's just not realistic to notice depositions at this time of year, with no advance warning.  I wish you had taken the time to check on our availability, or called or sent an e-mail to discuss this, before burdening the record with deposition notices.  I'm confident we could have worked it out amicably, *as Judge Sleet counseled us to do*, given the flexibility built into the discovery deadline…..The aim at the recent [November 17, 2005] office conference was to get detailed information on the potential witnesses we had identified and interviewed by the December 15 deadline.  *We accomplished that.  You have that information.  You can make an informed decision as to who you want to depose*…..These and other depositions will simply need to be scheduled for dates after the first of the year, *as we anticipated at the office conference…*There is plenty of time to depose whoever you want, well before trial.  Surely we can work together to find dates that are mutually convenient for ourselves and the witnesses….[emphasis added]"  (Exhibit "D" to Plaintiff's Motion)
[16] "So you see, no one is trying to 'sneak in' any witnesses.  Consistent with our promise and Judge Sleet's Order, we have provided full disclosure as to the potential testimony of the witnesses we have been able to interview.  I note that many of these names appear in the troop file materials, recently provided by your client.  Others are in direct rebuttal to your client's claim that Colonel Chaffinch did not promote qualified women.  Each and every one of these persons is known to your client, who is in an excellent position to provide insight into their backgrounds and knowledge of facts pertinent to her claims.  *You have your discovery as promised.  You now have ample time, and our pledge of cooperation, to take as many depositions as you wish.* [emphasis added]" [12-20-05 @ 7:37 p.m.]

    III.    <u>Argument</u>

The plaintiff cannot claim surprise at any of the witnesses identified by the defendants, all of whom are active or retired DSP officers or employees who served with the plaintiff during the time frame covered by her narrative interrogatory responses. None of these individuals would be strangers to her. All of them were DSP colleagues, at one time or another. Some were subordinates. Some held equal rank. Others were superiors. Nothing prevented the plaintiff lawyers from seeking interviews or noticing depositions of these witnesses. Their failure to do so cannot be blamed on the defendants.

Plaintiff's argument is simply inappropriate for a motion in limine. It is nothing more than a rehash of a discovery dispute in which the Court denied the relief sought by the plaintiff (exclusion of the witnesses' testimony). It does not raise any valid evidentiary basis for excluding the testimony of these witnesses. As set forth in detail in the defendants' several discovery disclosures, the testimony of these witnesses is of great relevance to the plaintiff's claims of discrimination against her and against female officers in general, to her allegations of past conduct on the part of Colonel Chaffinch, and to her own job performance and behavior on the job as a trooper. The bulk of their testimony would contradict the plaintiff's claims, and would portray her as a mediocre officer and a vindictive person, whose conduct toward fellow officers was often reprehensible. She was the instigator of sexually-charged humor and teasing, not the victim of it. Witness after witness will undermine the plaintiff's claims, in testimony directly pertinent to the issues she raises in her attack on the Delaware State Police.

The defendants first disclosed the names of numerous additional witnesses just fifty days after plaintiff's interrogatory answers were served, prior to service of plaintiff's interrogatories, and more than three months before the discovery deadline in this case. Rather than depose these and other witnesses subsequently disclosed, the plaintiff sought, prematurely and without cause, to exclude them as witnesses. When that effort failed, at the November 17, 2005 office conference, the plaintiff lawyers still waited a month before unilaterally noticing a handful of depositions during the holiday season. The lack of depositions is attributable to the plaintiff's tactics, and cannot be blamed on the defendants, who have repeatedly pledged to cooperate and urged the plaintiff to proceed. A party should not be allowed to complain of a lack of discovery, after having refrained from any reasonable attempt to notice depositions.

In a failure to promote case such as this one, the plaintiff's job performance, conduct, and disciplinary record with the employer will always be relevant factors to be considered. *Duffy v. Paper Magic Group, Inc.,* 265 F.3d 163 (3rd Cir. 2001) (missed promotion could not serve as basis for ADEA claim, where record indicated weaknesses in skills necessary to perform the

4

desired job); *Spangle v. Valley Forge Sewer Auth.,* 839 F.2d 171, 174 (3rd Cir. 1988). The plaintiff's qualifications for promotion cannot be established by her own opinion of her suitability for the position. *Wragg v. Comcast Metrophone,* 18 F.Supp.2d 524, 529 (3rd Cir. 1998) (plaintiff failed to show that he was equally qualified to fill the position, as compared to others who received promotions).

IV.     Conclusion

In her 82-page discovery response, the plaintiff made clear her intention at trial to reach back more than twenty-five years in her testimony, and to rely on purported incidents involving numerous police officers and civilian DSP employees, some deceased, some retired, others still active. In a case where plaintiff seeks to rely on such anecdotal evidence, she cannot fairly expect to prevent rebuttal testimony from defense witnesses. In relying on such incidents, she cannot consistently object to contemporaneous evidence of her inappropriate behavior and discipline from early in her career. Nor can she exclude evidence of mediocre job performance from multiple sources, both colleagues and supervisors, corroborated by statistical records, disciplinary files, and evaluations. This evidence is inherently more reliable and probative than plaintiff's uncorroborated allegations concerning jokes and limericks at informal social gatherings. It goes to the heart of her qualifications for promotion to a senior executive staff position, a critical fact in issue as to which she will bear the burden of proof. If she cannot show that she was more qualified than Major Hughes or Major Eckrich, who were promoted, she cannot hope to prevail on her claims. She also must show that she deserved promotion over the other twenty Captains, including female and minority officers, who were considered and not promoted. In order to properly evaluate her allegations, and to determine her record for promotion, the jury must hear both sides of the story.

/s/ Ralph K. Durstein, III
Ralph K. Durstein, III (ID# 912)
Stephani J. Ballard (ID#3481)
Deputy Attorneys General
Department of Justice
State of Delaware
820 N. French Street
Wilmington, DE 19801
(302)577-8510

5

                                    /s/ James E. Ligouri
                                    JAMES E. LIGOURI
                                    46 The Green
                                    Dover, DE  19901
                                    (302) 678-9900
                                    Attorney for L. Aaron Chaffinch

DATED: April 12, 2006

# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **BARBARA CONLEY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | C. A. No. 04-1394-GMS |
| | ) | |
| **STATE OF DELAWARE,** | ) | |
| **DIVISION OF STATE POLICE,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CERTIFICATE OF MAILING AND/OR DELIVERY

The undersigned certifies that on April 12, 2006, he caused the attached, Answer of Defendants Delaware State Police, Mitchell and MacLeish to Plaintiff's Motion to Exclude Witnesses to be electronically filed with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Thomas S. Neuberger, Esq.
Stephen J. Neuberger, Esq.
Two East Seventh Street, Suite 302
Wilmington, DE 19801

/s/ Ralph K. Durstein III
Ralph K. Durstein III, I.D. #912
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302)577-8400
Attorney for Defendants MacLeish,
Mitchell, and Division of State Police