IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CAPTAIN BARBARA L. CONLEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COLONEL L. AARON CHAFFINCH, | : | C.A.No.04-1394-GMS |
| individually and in his official capacity as the | : | |
| Superintendent, Delaware State Police; | : | |
| LIEUTENANT COLONEL THOMAS F. | : | |
| MACLEISH, individually and in his official | : | |
| capacity as the Deputy Superintendent, Delaware | : | |
| State Police; DAVID B. MITCHELL, individually | : | |
| and in his official capacity as Secretary of the | : | |
| Department of Safety and Homeland Security, | : | |
| State of Delaware; and DIVISION OF STATE | : | |
| POLICE, DEPARTMENT OF SAFETY AND | : | |
| HOMELAND SECURITY, STATE OF | : | |
| DELAWARE, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFF'S REPLY IN SUPPORT OF HER SECOND MOTION IN LIMINE TO EXCLUDE WITNESS TESTIMONY CONCERNING PLAINTIFF'S ALLEGED SEXUAL HISTORY**

THE NEUBERGER FIRM, P.A.
THOMAS S. NEUBERGER, ESQ. (#243)
STEPHEN J. NEUBERGER, ESQ. (#4440)
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: April 19, 2006            Attorneys for Plaintiff

**A. Introduction.** Defendants admit that evidence pertaining to Chaffinch's animus toward women is admissible and damaging to defendants' case. (Answer at 2). And in order to shift the jury's focus away from plaintiff's evidence of Chaffinch's gender animus, they seek to smear plaintiff with testimony of her alleged and irrelevant sexual history.

**B. Defendants' Identify Several Witnesses who will Testify to Alleged Sex Acts.**

Defendants have identified at least seven witnesses who will testify to plaintiff's alleged sex acts. For example defendants have represented that Mark Givens will testify that "[plaintiff] also had sexual relations with a number of different officers" and she will boast of her sexual conquests. (*See* Exhibit B to D.I. 193). Capt. Hawkins will testify to a 1986 incident where plaintiff allegedly engaged in a sex act during an arrest. (Id.). Rep. Schwartzkopf will testify that he told plaintiff he knew about her alleged affairs with other officers. (Id.). Lt. Campanella purports to testify that a deceased civilian employee told him plaintiff had sexual relations with Dixon and another officer.[1] (Id.)[2]. In light of these disclosures, defendants cannot seriously represent to the Court that none of their witnesses will testify to sex acts. Defense claims to the contrary are false.

**C. Chaffinch is Bound by His Sworn Deposition Testimony Making Plaintiff's Prior Sexual History Irrelevant.** Defendant Chaffinch has unequivocally admitted he only uses six factors when making a promotion decision, sexual history was not included. (*See* Tab A to D.I. 179 - Chaffinch 148-49, 178). Furthermore, plaintiff provided Chaffinch with two different

---

[1] *See* D.I. 181, 168 and 169. *See also* D.I. 181 for an evidentiary discussion of this purported dying declaration.

[2] Additionally, Campanella as well as Lt. Wiley will testify that plaintiff and Capt. Dixon spent hours behind closed doors admittedly insinuating they were engaged in sexual activity. (Id.). Further examples include Capt. Shamany who will allegedly testify that plaintiff was notorious for her "sexual advances" while Carole Warnock will alleges that plaintiff would "boast about...her sexual abilities, and her sexual conquests." (Id.). Campanella will also testify that plaintiff would suggest they had just engaged in sexual acts when leaving his office. (Id.).

1

occasions to supplement his identified factors or categories in making the promotions in issue. Chaffinch simply could have responded that he considered more factors such as work performance, sexual history, etc., but he chose not to. Now, after discovery had concluded, defendants claim Chaffinch can elaborate in Court to his detailed promotional considerations. The purpose of depositions is to gain insight during the discovery process as to what each witness or party will testify to. Defendants seek to circumvent this norm by claiming Chaffinch is not "boxed in" and thus can elaborate on the stand. This is quite convenient given that Chaffinch's process was admittedly a subjective decision within his sole discretion. (Answer at 5). Regardless, under the rules of this Court, Chaffinch is bound by his testimony that sexual history was not considered when he made his promotion to Major.

Furthermore, plaintiff's sexual history does not fall squarely within Chaffinch's background, experience and compatibility factors. (Answer at 3). First, plaintiff's sexual history or conduct of a sexual nature was never disclosed in any performance evaluation as one would expect if the incidents had actually occurred. Second, plaintiff obviously had the experience to move up the ranks to Captain and, as deposition testimony showed, plaintiff had equal if not more experience than the comparators. Last, Chaffinch admitted there was nothing to disqualify plaintiff for promotion based on compatibility. (Tab A - Chaffinch 167). Defendants' claim that her sexual history pertains to factors used by Chaffinch is nothing but a red herring. Plaintiff's sexual history is irrelevant and of no consequence to this case. Fed.R.Evid. 401-402.

**D. Plaintiff's Sexual History is Barred by Rule 403 and Alternatively, Rule 412.**

Even assuming *arguendo* that the evidence has some relevance, the probative value is substantially outweighed by Fed.R.Evid. 403 considerations. Chaffinch testified at length to his decision-making process and sexual history was not a consideration. Therefore, evidence of such

2

alleged misconduct is irrelevant and would only serve to mislead the jury and confuse the issues.[3]

Contrary to defense claims, Fed.R.Evid. 412 bars admissibility of this evidence. A victim of sex discrimination is certainly the victim of sex-based misconduct and may be afforded protection if the evidence being offered tends to prove an alleged victim's sexual behavior. The spirit of the rule is to protect victims of sexually motivated wrongdoing from the admission of irrelevant evidence pertaining to sexual history. Advisory Committee Notes, 1994. Plaintiff was the victim of Chaffinch's sex based animus and should be afforded protection under Rule 412. (*See* D.I. 190 at 3).

**E. Plaintiff's Alleged Prior Sexual History is Wiped Clean under Third Circuit Case Law.** Defendants misconstrue plaintiff's reliance on Hugh v. Butler County Family YMCA, 418 F.3d 265 (3d Cir. 2005). Plaintiff does not contend that she is being demoted from her current rank. Plaintiff instead contends that under at least seventeen years of Third Circuit case law, plaintiff's stale disciplinary history has long since been washed clean by numerous merit based promotions.[4] Any current disciplinary, if any, is fair game, but the jury cannot consider irrelevant evidence, such as plaintiff's past sexual history in judging the merits of this case.

**F. Conclusion.** For the reasons stated in plaintiff's Motion on this issue (D.I. 180) and for the reasons stated above, plaintiff's Motion in Limine to exclude witness testimony concerning plaintiff's alleged sexual history should be granted.

Plaintiff waives a reply brief in support of this Motion.

---

[3] Relatedly, because the defense claims of wrongdoing have no foundation in her contemporaneously created performance evaluations from the relevant time period - a place where such misconduct would be reflected - this invites further jury confusion as a mini-trial on the authenticity and circumstances surrounding each of these newly created allegations will be required.

[4] Plaintiff notes that her promotions up through the ranks and qualification to be promoted to Major is not "apples to oranges" reasoning. (Answer at 5). While it is true that promotions up through captain employ a testing and banding process, candidates must also receive recommendations for promotion by their commanding officer. Plaintiff was recommended for each of these merit promotions.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**


<u>/s/ Stephen J. Neuberger</u>
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: April 19, 2006                Attorneys for Plaintiff

# Tab

# A



In the Matter Of:

# Conley
# v.
# Chaffinch, et al.

C.A. # 04-1394-GMS

---

Transcript of:

# Colonel L. Aaron Chaffinch

June 6, 2005

---

Wilcox & Fetzer, Ltd.
Phone: 302-655-0477
Fax: 302-655-0497
Email: lhertzog@wilfet.com
Internet: www.wilfet.com

Page 1

```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF DELAWARE

   CAPTAIN BARBARA L. CONLEY,            )
                                         )
               Plaintiff,                )
                                         )   Civil Action
   v.                                    )   No. 04-1394-GMS
                                         )
   COLONEL L. AARON CHAFFINCH,           )
   individually and in his official      )
   capacity as the Superintendent,       )
   Delaware State Police; LIEUTENANT     )
   COLONEL THOMAS F. MACLEISH,           )
   individually and in his official      )
   capacity as the Deputy Superintendent,)
   Delaware State Police; DAVID B.       )
   MICHELL, individually and in his      )
   official capacity as Secretary of the )
   Department of Safety and Homeland     )
   Security, State of Delaware; and      )
   DIVISION OF STATE POLICE, DEPARTMENT  )
   OF SAFETY AND HOMELAND SECURITY,      )
   State of Delaware,                    )
                                         )
               Defendants.               )
```

         Deposition of COLONEL L. AARON CHAFFINCH taken pursuant to notice at the law offices of The Neuberger Firm, P.A., 2 East 7th Street, Suite 302, Wilmington, Delaware, beginning at 9:35 a.m. on Monday, June 6, 2005, before Kathleen White Palmer, Registered Merit Reporter and Notary Public.
APPEARANCES:
         THOMAS S. NEUBERGER, ESQUIRE
         THE NEUBERGER FIRM, P.A.
           2 East 7th Street - Suite 302
           Wilmington, Delaware  19801
           for the Plaintiff
------------------------------------------------------
                   WILCOX & FETZER
     1330 King Street - Wilmington, Delaware 19801
                   (302) 655-0477

Case 1:04-cv-01394-GMS    Document 203    Filed 04/19/2006    Page 9 of 11

Conley                                              v.                                        Chaffinch, et al.
Colonel L. Aaron Chaffinch                C.A. # 04-1394-GMS                       June 6, 2005

Page 2

1  APPEARANCES (Continued):
2
         JAMES E. LIGUORI, ESQUIRE
3        LIGUORI, MORRIS & YIENGST
         46 The Green
4        Dover, Delaware  19901
           for Defendant Colonel L. Aaron Chaffinch
5
         RALPH K. DURSTEIN, ESQUIRE
6        STEPHANI J. BALLARD, ESQUIRE
         DEPARTMENT OF JUSTICE
7        820 North French Street
         Carvel State Office Building
8        Wilmington, Delaware  19801
           for Defendants Lieutenant Colonel Thomas F.
9          MacLeish, David B. Mitchell, and Division
           of State Police
10
11 ALSO PRESENT:
12       CAPTAIN BARBARA L. CONLEY
13             - - - - -
14         COLONEL L. AARON CHAFFINCH,
15       the witness herein, having first been
16       duly sworn on oath, was examined and
17       testified as follows:
18 BY MR. NEUBERGER:
19   Q.  Could you state your full name for the record?
20   A.  Aaron Chaffinch.
21   Q.  Colonel Chaffinch, my staff or myself, we've
22 taken your deposition on other occasions; isn't that
23 correct?
24   A.  Yes, sir.

Page 3

1    Q.  You've even testified in two federal court cases
2  that I was involved in; is that right?
3    A.  Yes, sir.
4    Q.  I called you as a witness in those cases; right?
5    A.  Yes, sir.
6    Q.  Now, you understand, based on that experience,
7  that if there's any question I ask you today and any
8  answer you give, and I call you at trial and you say
9  something different, I can point that out to the judge
10 and jury?
11   A.  Yes, sir.
12   Q.  You know that.  Okay.
13       Are you taking any medications or anything
14 that would interfere with your ability to remember
15 things?
16   A.  I don't believe so.
17   Q.  You don't take blood pressure, heart medicine,
18 things like that?
19   A.  I don't think it would affect my memory, I don't
20 believe.
21   Q.  But you are not on anything odd or something
22 that affects your memory that you know of?
23   A.  Not that I'm aware of.
24   Q.  If I ever ask you a question that you don't

Page 4

1  understand, just ask me and I'll be glad to rephrase it.
2  Is that okay?
3    A.  Yes, sir.
4          MR. NEUBERGER:  Let's do this.  Let's mark
5  this as Plaintiff's Exhibit Number 1 and then we'll be
6  referring back and forth to this.  Let me give a copy to
7  counsel.  It's a copy of the First Amended Complaint in
8  the action.
9          (Plaintiff's Exhibit 1 was marked for
10 identification.)
11 BY MR. NEUBERGER:
12   Q.  Colonel, I'm going to ask you some questions
13 about how long you were with the force and how your
14 career, your assignments might have tracked assignments
15 that Captain Barbara Conley had.  Okay?
16       If you turn to paragraph 10 of that
17 document that's in front of you on page 4, you can see
18 there in that paragraph a listing that Barbara Conley
19 prepared at an earlier time of her assignments starting
20 as a patrol trooper at Troop 5 in Bridgeville in 1982 at
21 the bottom.  Do you see that?
22   A.  Yes, I do.
23   Q.  Then she works all the way up to captain,
24 director of traffic control section in 2001.  Do you see

Page 5

1  that?
2    A.  Yes, sir.
3    Q.  Let me just ask you a few questions about her
4  history.
5        Now, she indicated that she joined the
6  force as a patrol trooper in Bridgeville in 1982 and
7  she'll testify to that fact.  Were you assigned to
8  Bridgeville at that time?
9    A.  Yes, sir.
10   Q.  I think she's indicated that she believes that
11 when she started in Bridgeville, she was a patrol trooper
12 and you would have been a trooper first class assigned in
13 Bridgeville.  Does that sound about right?
14   A.  That's correct.
15   Q.  Then she indicates she was in Bridgeville from
16 1982 to 1983?
17          MR. LIGUORI:  I think it's '93, Tom.
18          MR. NEUBERGER:  Yes.  Thank you, Jim.  All
19 right.
20 BY MR. NEUBERGER:
21   Q.  She has indicated during that period of time
22 there was a time when you were assigned at Bridgeville,
23 also?
24   A.  Part of that time, yes, sir.

Page 166

1  traffic complaints, fatal accidents, all kinds of things.
2  But if you have background in criminal, you can help them
3  to write a search warrant. I mean, there's a lot of
4  different areas. The more you get, the more well rounded
5  you are, the better you are as an administrator. That's
6  what I'm indicating. Not to take anything away from the
7  patrol function as you heard me say earlier. It is the
8  backbone of the agency. Everyone starts there.
9      Q. Once again, we'll check the record on what
10 Captain Yeomans said about patrol and I believe you
11 testified on it at an earlier time. That's helpful.
12 I'll look at that.
13     How about this factor of compatibility with
14 other members of the executive staff? Let's focus on
15 Major Hughes here for a second. Okay?
16     Did you believe he would be more compatible
17 with other members of the executive staff than Barbara
18 Conley?
19     A. Not necessarily.
20     Q. So you --
21     A. But if I was looking at someone that wasn't
22 compatible with somebody on the agency, on the executive
23 staff, I wasn't. But if I was, that would have played
24 into it.

Page 167

1      Q. Okay.
2      A. In this particular case, it did not.
3      Q. So I think you're saying that there was nothing
4  to disqualify Barbara Conley for the promotion in the
5  area of compatibility?
6      A. I wouldn't think so.
7      Q. Then for the position that went to Captain
8  Eckrich, was there anything on this question of
9  compatibility with the other members of the executive
10 staff that would have disqualified Barbara Conley for
11 that position?
12     A. Not that I know of.
13     Q. Did you rank anybody when you were making your
14 decision on who you were going to promote?
15     A. No.
16     Q. Was Eckrich your first choice for that position?
17     A. Sure.
18     Q. I just want to make sure nobody turned you down
19 or anything.
20     A. Nobody turned me down.
21     Q. So Hughes was your first choice, too?
22     A. Yes, sir.
23     Q. Was there a second choice in case they did turn
24 you down?

Page 168

1      A. I would have went back to the drawing board if
2  they had turned me down, but I didn't have to.
3      Q. You didn't have a second place finisher in your
4  mind?
5      A. No, sir. If somebody turned me down, then I
6  would have had to regroup and checked out personnel files
7  and made a second decision. But I didn't have to.
8      Q. Well, as you know, in some of the lesser
9  position there's A bands, B bands, C bands, there's
10 people that get the highest score, that kind of a thing.
11     You are just telling me you did not rank
12 the eligible people in any fashion?
13     A. Sure didn't.
14     Q. Did you assign points to people as you were
15 evaluating these five factors that you identified?
16     A. No, sir.
17     Q. So, for example, five factors, is 20 percent of
18 it education, 20 percent background, 20 percent each of
19 the other factors?
20     A. No.
21     Q. So you didn't have any objective measure like
22 that that you were using?
23     A. There's no process in place, as we've already
24 talked about.

Page 169

1      Q. Was it left up to your best judgment and
2  discretion in evaluating the people to determine who was
3  best qualified?
4      A. I would say that's a fair statement.
5      Q. Now, you didn't have to report to anybody and
6  justify that decision, did you?
7      A. I had to get an okay from the cabinet secretary.
8      Q. So that would have been Secretary Ford at the
9  time?
10     A. Yes, it would have.
11     Q. So once you decided to promote them, did you
12 discuss it with Secretary Ford first?
13     A. Yes, I did. I wouldn't go telling anybody that
14 I'm going to promote them until I have the okay to
15 promote them. That's just -- you don't do that. I went
16 and talked to Colonel Ford or Secretary Ford at the time
17 and got his blessing.
18     Q. So it's your testimony you had to have his
19 approval to make the promotions?
20     A. Well, these are promotions to the executive
21 staff.
22     Q. Yes.
23     A. You don't make any promotions to executive staff
24 without consulting the cabinet secretary. I mean, there


## **CERTIFICATE OF SERVICE**

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on April 19, 2006, I electronically filed this **Reply** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

>Ralph K. Durstein III, Esquire
>Department of Justice
>Carvel State Office Building
>820 N. French Street
>Wilmington, DE 19801
>
>James E. Liguori, Esquire
>Liguori, Morris & Yiengst
>46 The Green
>Dover, DE 19901

>/s/ Stephen J. Neuberger
>**STEPHEN J. NEUBERGER, ESQ.**

Conley / Pretrial / RB - P's Second MinL.FINAL