**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| CAPTAIN BARBARA CONLEY, | ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | |
| COLONEL L. AARON CHAFFINCH, | ) ) | C.A. No. 04-1394-GMS |
| Defendant. | ) ) | |

Thomas S. Neuberger, Esquire, and Stephen J. Neuberger, Esquire, of THE NEUBERGER FIRM, P.A., Wilmington, Delaware. Attorneys for Plaintiff.

Ralph K. Durstein, III, Esquire, and Stephani J. Ballard, Esquire of THE DEPARTMENT OF JUSTICE, Wilmington, Delaware, James E. Liguori, Esquire, of LIGUORI, MORRIS, AND YIENGST, Dover, Delaware. Attorneys for Defendants.

**OPINION**

May 17, 2006
Wilmington, Delaware

**SLEET, District Judge**

**I.      INTRODUCTION**

On October 27, 2004, Captain Barbara Conley ("Conley") filed this lawsuit, alleging Gender Discrimination in Promotions (Count I) by Colonel L. Aaron Chaffinch ("Chaffinch"), David B. Mitchell ("Mitchell"), Secretary of the Department of Safety and Homeland Security, and Division of State Police, Department of Safety and Homeland Security, State of Delaware (the "DSP"), in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On December 6, 2004, Conley filed a first amended complaint, adding Lieutenant Colonel Thomas F. Macleish ("Macleish") as a defendant to the case, and adding two claims for retaliation, Free Speech Clause Retaliation (Count II) and Petition Clause Retaliation (Count III).[1]  Presently before the court is the plaintiff's motion to disqualify counsel for Chaffinch for violation of Model Rule of Professional Conduct 1.9.  For the following reasons, the court will deny the motion.

**II.     DISCUSSION**

   **A.     Disqualification**

The court has inherent power to supervise the professional conduct of attorneys appearing before it.  *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980).  This power includes the authority to disqualify an attorney.  *Id.*  At the outset, however, the court wants to emphasize that motions to disqualify are generally disfavored.  *See Cohen v. Oasin*, 844 F. Supp. 1065, 1067 (E.D.

---

[1] On May 10, 2006, the court held a pretrial conference in this matter, during which the plaintiff moved to dismiss the official capacity claims and the claims against the DSP set forth in Count I, as well as Counts II and III of the amended complaint.  In a letter (D.I. 220), dated May 11, 2006, the DSP, Chaffinch, MacLeish, and Mitchell consented to the dismissal of the claims. Accordingly, the sole claim remaining in this matter is the gender discrimination in promotions claim against Chaffinch in his individual capacity.

Pa. 1994). The party seeking disqualification must "clearly show[] that continued representation would be impermissible." *Id.* As such, "[v]ague and unsupported allegations are not sufficient to meet this standard." *Id.*

In the present case, Conley contends that counsel for Chaffinch, James Liguori, Esq. ("Liguori") has violated Rule 1.9 of the Model Rules of Professional Conduct and, therefore, should be disqualified from further representing Chaffinch. In response, Chaffinch asserts that Conley waived any right to object to Liguori's representation because she failed to raise the conflict issue in a timely manner. Chaffinch further asserts that he will be "severely prejudiced" if the court determines that Liguori should be disqualified from representing him. (D.I. 132, at 2-3.) The court, therefore, must determine whether Liguori's representation of Chaffinch in this matter violates Rule 1.9 and, if so, whether disqualification is an appropriate sanction for such a violation, in light of Chaffinch's arguments regarding waiver and prejudice. The court will address each of these issues in turn.

### B. Application of Rule 1.9

Pursuant to Local Rule 83.6(d)(2), the District of Delaware has adopted the Model Rules of Professional Conduct. Rule 1.9(a) provides, in pertinent part, that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Model Rules of Prof'l Conduct R. 1.9 (2002). Thus, the appropriate standard for ruling on the plaintiff's motion based on Rule 1.9 is the "substantial relationship" test. *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 652 F. Supp. 1281, 1282-83 (D. Del. 1987). In determining whether a

"substantial relationship" exists, "the court need not, nor should it, inquire into whether an attorney actually acquired confidential information during the prior representation related to the current representation. Rather, the court's primary concern is whether 'confidential information that might have been gained in the first representation [may be] used to the detriment of the former client in the subsequent action.'" *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1204 (E.D. Pa. 1992) (citing *Realco Servs., Inc. v. Holt*, 479 F. Supp. 867, 871 (E.D. Pa. 1979)).

In order to determine whether Liguori has violated Rule 1.9(a), the court must "undertake a 'painstaking analysis of the facts'" and answer the following three questions: (1) "What is the nature and scope of the prior representation at issue"; (2) "[w]hat is the nature of the present lawsuit [filed by] the former client"; and (3) "[i]n the course of the prior representation, might the client have disclosed to [her] attorney confidences which could be relevant to the present action" and, "[i]n particular, could any such confidences be detrimental to the former client in the current litigation?" *Satellite Fin. Planning*, 652 F. Supp. at 1283 (citing *INA Underwriters v. Nalibotsky*, 594 F. Supp. 1199, 1206 (E.D. Pa. 1984)). As the moving party, the plaintiff has the burden of proving that there is a substantial relationship. *See id.* The court considers each of the above-mentioned questions below.

*1. The Nature and Scope of the Prior Litigation*

When considering the nature and scope of the prior litigation, courts "should focus upon the reasons for the retention of counsel and the tasks which the attorney was employed to perform." *Commonwealth Ins. Co.*, 808 F. Supp. at 1204. In the present case, Conley contends that she retained Liguori in early 1988 to represent her in the defense of several departmental charges that were lodged against her. (See D.I. 120, Tab F, ¶¶ 4-12.) Conley has submitted an unsworn

declaration (the "declaration"), pursuant to 28 U.S.C. § 1746, and an official DSP document to support her contention. The declaration states that Liguori represented Conley in at least three disciplinary matters occurring in 1987 and 1988. (Id. ¶ 5.) Conley consulted with Liguori to prepare for her defense of the matters and disclosed to him feelings, beliefs, and other information relating to the disciplinary charges, as well as her history within the DSP. (Id. ¶ 8.)[2]

After having considered the parties submissions, with a focus on the reasons for retention of counsel and the tasks which Liguori was employed to perform, the court concludes that Liguori's work for Conley was for the purpose of general legal advice and representation in the DSP disciplinary proceedings. The court's conclusion is confirmed by the official DSP document that Conley submitted, which states that Liguori represented her and sets forth the positions he advocated on her behalf during the disciplinary appeal. (See D.I. 120, Tab E, at P102-P105.)

    *2. The Nature of the Present Lawsuit*

In considering the nature of the present litigation, a court "should evaluate the issues raised . . . and the underlying facts." *Commonwealth Ins. Co.*, 808 F. Supp. at 1204. Here, Conley filed an action arising under 42 U.S.C. § 1983, alleging gender discrimination by the DSP in its failure to promote her to the rank of Major. (Am. Compl. ¶ 1.) Specifically, the amended complaint alleges that Chaffinch failed to promote Conley to the rank of Major despite her qualifications and more than twenty-two years of experience in the DSP. (Id. ¶¶ 1, 7-10.) According to Conley, "Chaffinch does not believe that women should be in the modern workplace or that they should be Majors in the [DSP]." (Id. ¶ 30.) Conley further alleges that since Chaffinch assumed operational command

---

[2] Chaffinch does not dispute the fact that Liguori represented Conley. Indeed, in his response to the motion, Chaffinch states that Liguori was reminded of his prior representation of Conley on June 6, 2005. (See D.I. 132, at 1.)

of the DSP on October 1, 2001, he "has not placed a female in a command position as the head of a Troop and he has precipitously removed from Troop 6 the only woman who previously held a command position." (Id. ¶ 50.) Finally, Conley alleges that Chaffinch promoted two less qualified males to the rank of Major. Specifically, Chaffinch promoted Captain Paul Eckrich ("Eckrich") and Captain Randall Hughes ("Hughes") to two available Major positions. (Id. ¶¶ 58, 61.) Conley alleges that Eckrich and Hughes were less qualified than her, during the relevant time period, and that she was denied the available promotions because of her gender and Chaffinch's bias against women. (Id. ¶¶ 58-62.) Chaffinch, as part of his defense, asserts that Eckrich and Hughes were more qualified than Conley for the Major positions. To support this defense, Chaffinch points to, among other things, Conley's past disciplinary record with the DSP. In the present litigation, therefore, the factfinder must determine whether Chaffinch discriminated against Conley when he promoted two allegedly less qualified males for the position of Major. Accordingly, the issues raised and underlying facts of the present case relate to Conley's qualifications for Major, as compared to Eckrich and Hughes, as well as Chaffinch's attitude toward women.

> 3. *Whether Confidences Might Have Been Disclosed in the Course of the Prior Representation Which Could be Relevant to the Present Action*

With respect to this final question, the court should not look to what information the attorney or law firm actually acquired from the former client but whether the attorney "*might* have acquired information related to the subject matter of his subsequent representation." *Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385 (3d Cir. 1972) (emphasis added). That is, the court should consider whether Conley and Liguori "ought to have discussed the relevant facts or whether it would not have been unusual for the lawyer and client to have discussed the relevant facts." *Satellite Fin. Planning*, 652 F. Supp. at 1284 (citation omitted). However, the court should not "allow its imagination to run

free with a view to hypothesizing conceivable but unlikely situations in which confidential information 'might' have been disclosed which would be relevant to the present suit." *Id*.

Conley asserts that the information she disclosed to Liguori when he represented her in the disciplinary matters is clearly relevant to the present action, "where [the] defendants have made [her] prior disciplinary history a direct issue in the case." (D.I. 120, at 7.) Specifically, Conley asserts that Liguori "was privy to innumerable confidential communications with her relating to the specific disciplinary charges at issue as well as her prior disciplinary history with the [DSP]." (Id.) In defending herself against the disciplinary charges, Conley consulted with Liguori and disclosed to him feelings, beliefs, and other information relating to the disciplinary charges, and her history within the DSP. (Id. at Tab F ¶ 8.) Given these facts, which Chaffinch does not contest, the court concludes that the answer to the final question is yes. That is, Liguori might have acquired information from Conley in the earlier representation that is related to the subject matter of this lawsuit. As such, the court concludes that Liguori's representation of Chaffinch in the present case violates Rule 1.9. Having determined that a Rule 1.9 violation exists, the court must now determine whether Conley has waived her right to object to Liguori's representation of Chaffinch, and whether disqualification is an appropriate sanction for the Rule 1.9 violation.

### C.     Waiver

Chaffinch contends that Conley is precluded from raising the question of disqualification with respect to Liguori's representation because she waived her opportunity to object. Waiver is a valid basis for denial of a motion to disqualify. *Zimmerman v. Duggan*, 81 B.R. 296, 300 (E.D. Pa. 1987) (citing *Nalibotsky*, 594 f. Supp. 1199, 1204 (E.D. Pa. 1984)). "Such a finding is justified . . . when a former client was concededly aware of the former attorney's representation of an adversary

but failed to raise an objection promptly when he had the opportunity. In th[is] . . . circumstance, the person whose confidences and secrets are at risk of disclosure or misuse is held to have waived his right to protection from that risk." *Id.* "In determining whether the moving party has waived its right to object to the opposing party's counsel the court should consider the length of the delay in bringing a motion to disqualify, when the movant learned of the conflict, whether the movant was represented by counsel during the delay, why the delay occurred, and whether disqualification would result in prejudice to the nonmoving party." *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1208 (E.D. Pa. 1992).

When considering the above-mentioned factors under the totality of circumstances present in this case, the court concludes that Conley has waived her objection to Liguori's continued representation of Chaffinch. First, the court observes that Conley did not raise the disqualification issue until December 15, 2005, although the potential conflict of interest should have been, and was, apparent to Conley and her counsel, at the latest, on March 23, 2005, when Liguori entered his appearance on behalf of Chaffinch.[3] Indeed, Conley's counsel represented to the court during its May 10, 2006 pretrial conference that she informed them of the conflict at the inception of Liguori's appearance. (See Transcript of Pretrial Conference ("Tr."), dated May 10, 2006, at 56:9-18). Conley's delay in filing the motion, therefore, was almost nine months. Notably, during the nine

---

[3] Chaffinch contends that Conley's attorneys were aware of the conflict in December 2004, because defense counsel for the DSP told her attorneys that Liguori was representing Chaffinch in this matter. Chaffinch did not formally retain Liguori, however, until March 23, 2005. Therefore, the court will set March 23, 2005 as the date that Conley learned of the potential conflict.

month delay, Conley was represented by experienced and sophisticated counsel.[4]

Conley asserts that she did not learn of the conflict of interest until her deposition, on December 7, 2005, when the defendants made her past disciplinary history an issue in the litigation. More specifically, Conley asserts that she was not on notice of the conflict because she believed that, under Third Circuit law, Chaffinch was barred from discussing her eighteen-year-old disciplinary history. According to Conley, because she believed that her disciplinary record was stale and was "not going to come into the case," there was no actual conflict until the defendants questioned her about it during her deposition. (See Tr. at 12:15-13:5.) The court disagrees.[5] As previously discussed, the facts of this case demonstrate that Conley was aware of Liguori's representation of Chaffinch on March 23, 2005, regardless of whether her disciplinary record would become an issue in the litigation. Conley's arguments focus on the facts that Liguori may have obtained in representing her in the disciplinary actions, and how he could possibly use those to her disadvantage at trial. Indeed, Conley asserts that she filed her motion only after discovering that Chaffinch was going to question her regarding the disciplinary matters because she didn't want Liguori to reveal any confidential information she had provided to him with respect to the charges or the DSP.

The court is not persuaded by Conley's assertions, however, because it concludes that Rule 1.9 exists not only to prohibit an attorney from using facts obtained from a former client against that client in a subsequent representation of an adverse party, but also to prohibit the attorney from using

---

[4] In fact, Conley's counsel have represented to the court, in another public employment matter presently pending before it, that "their expertise in this area [public employee law], both factually and legally, is unmatched by attorneys in the State of Delaware." (*Price v. Chaffinch*, C.A. No. 04-956 (GMS), D.I. 53, at 38.)

[5] The court expresses no opinion regarding the "staleness" issue raised by the plaintiff, as it is not necessary to the resolution of this motion.

impressions about the former client against that client in a subsequent adverse representation. In other words, an attorney can obtain more than confidential information from a client. For example, while representing a client, an attorney gains a wealth of knowledge regarding, among other things, how the client will react to certain questions, the client's demeanor and attitude, and the client's impressions regarding the case. These intangible qualities in a former client can inform the attorney's strategies in a subsequent case against that client. Therefore, for these reasons, the court concludes that Conley and her counsel were aware of the conflict on March 23, 2005.

Further support for the court's conclusion is the fact that Conley's counsel informed Liguori, at a June 6, 2005 meeting, that Conley told them he represented her in the past, and "she is okay with you."[6] (See Tr. at 21:21-25.) Thus, Conley was "okay" with Liguori's representation of Chaffinch prior to her disciplinary history being an issue in the case. That is, Conley was not concerned about the impressions of her that Liguori gleaned from the earlier representation. Accordingly, Conley's actions indicate that she did not object to Liguori's representation. The court, therefore, cannot conclude that Liguori's representation of Chaffinch creates an appearance of impropriety in the mind of the reasonable observer. *See IBM v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978) ("[A] court may disqualify an attorney for failing to avoid even the appearance of impropriety.")

Lastly, the court believes that strong countervailing policies weigh against disqualification, namely the prejudice that Chaffinch would suffer if the court granted Conley's motion. The present case is more than one and a half years old, and Liguori has invested much time and effort in

---

[6] Conley's counsel represented to the court at the pretrial conference that they told Liguori that Conley was "okay" with his representation of Chaffinch only because they did not think that her stale work history would be an issue in the case. However, as discussed above, Rule 1.9 protects a former client against more than the potential for adverse use of confidential information.

preparing Chaffinch's defense. Furthermore, the trial date is imminent. At this point, disqualifying Liguori may further delay this case because new counsel will be obligated to review the case, conduct any discovery he or she feels is necessary, submit case dispositive motions on Chaffinch's behalf, and prepare for trial, which is currently scheduled to begin on June 6, 2006. These obligations implicate the interests of both fairness and judicial economy. On balance, therefore, even though Liguori's representation of Chaffinch violates Rule 1.9, Conley's delay in filing her motion to disqualify, coupled with her actions after learning that Liguori would represent Chaffinch and the countervailing policy arguments weigh against disqualification. Therefore, the court concludes that disqualification is not an appropriate means of enforcing Rule 1.9 of the Model Rules of Professional Conduct under the totality of circumstances present in this action. *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980) (noting that a district court has "wide discretion in framing its sanctions to be just and fair to all parties involved.") Accordingly, the court will exercise its discretion and deny Conley's motion to disqualify Liguori from representing Chaffinch in this matter.

### III.   CONCLUSION

For the aforementioned reasons, the plaintiff's motion will be denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| CAPTAIN BARBARA CONLEY, | ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | |
| COLONEL L. AARON CHAFFINCH, | ) ) | C.A. No. 04-1394-GMS |
| Defendants. | ) | |

## **ORDER**

For the reasons stated in the court's Memorandum Opinion of this same date, IT IS HEREBY ORDERED that:

1. The plaintiff's Motion to Disqualify Counsel for Defendant Chaffinch for Violation of Model Rule of Professional Conduct 1.9 (D.I. 120) is DENIED.

Dated: May 17, 2006     /s/ Gregory M. Sleet
                        UNITED STATES DISTRICT JUDGE