# THE NEUBERGER FIRM
### ATTORNEYS AND COUNSELLORS AT LAW

TWO EAST SEVENTH STREET
SUITE 302
WILMINGTON, DELAWARE 19801-3707

WWW.NEUBERGERLAW.COM
EMAIL: INFO@NEUBERGERLAW.COM

THOMAS S. NEUBERGER, ESQUIRE                                          PHONE: (302) 655-0582
STEPHEN J. NEUBERGER, ESQUIRE                                           FAX: (302) 655-9329

May 22, 2006                                                          **Via CM/ECF Filing**

The Honorable Gregory M. Sleet
United States District Court
District of Delaware
844 King Street
Wilmington, DE 19801

RE:   **Conley v. Chaffinch, et al.**, Civil Action No. 04-1394-GMS
      **Defense Witness Identifications**

Dear Judge Sleet:

      At the Pretrial Conference held on May 10, 2006, the Court made several rulings with regard to the issue of an alleged relationship between Captain Conley and Captain Dixon. The Court permitted "a limited inquiry into the issue of bias" by defendants. (Pretrial Transcript, D.I. 228 at 81, 102). However, the defendants were limited to one witness per category of evidence as set forth by defendants. The Court also permitted defendants to submit to plaintiff which witness they wanted to testify per category by Monday, May 15, 2006. Plaintiff received defendants identified witnesses but the identification does not comply with the letter or spirit of the Court's ruling.

      Defendants named four categories of testimony regarding this alleged relationship: 1) alleged physical conduct between plaintiff and Captain Dixon, 2) statements by Barbara Conley, 3) plaintiff and Captain Dixon being behind closed doors, and 4) daily phone calls between them. (Pretrial; 84, 95-96, 99). The Court gave defendants "one witness" per category. (Pretrial Transcript at 102). Yet in defendants' May 15th submission, they identified multiple witnesses with regard to three of the four categories. Specifically, defendants identified five witnesses to testify about phone calls - Carole Warnock, Lt. John Campanella, Lt. Curtis Brown, Lt. Mark Rust and Sgt. Rodney Workman. (Tab A). Defendants identified two witnesses to testify about being behind closed doors - Tammy Hyland and Capt. Shamany. (Id.). Defendants identified four witnesses to testify to statements - Carole Warnock, Tammy Hyland, Lt. Campanella, and Lt. Mark Rust.

The Honorable Gregory M. Sleet
May 22, 2006
Page 2

      Additionally, with regard to these alleged statements, all but one of these statements has not been previously disclosed by defendants.[1] For example, Tammy Hyland will testify that Conley made the statement "look at that sweet ass." Lt. Campanella will testify that Conley used the term "high pockets" when referring to Capt. Dixon because "his ass" pushed his pants pockets up high. Now Lt. Rust will testify that at a lunch outing in 2003 Conley stated Dixon's wife was jealous of her. Defendants never identified this testimony in any of their five supplementations of their initial disclosures.

      Further, defendants also have added into the mix new testimony that plaintiff has a picture of herself and Captain Dixon in a social setting framed in her office. Also, defendants want Pete Fraley to testify about an October 2004 event where he stopped at the Shore Stop near Milford, Delaware around 10:00am and observed plaintiff and Captain Dixon in one of their cars talking. None of these events have been disclosed or discussed by defendants.

      The Court was clear in its instruction to defendants at the Pretrial Conference. They were permitted one witness to testify to each of the categories of evidence. The Court stated it would not "permit cumulative witnesses on this point." (Pretrial Transcript at 81). Defendants have clearly not complied with the letter or spirt of the Court's ruling.

      All the witnesses should be stricken and the defendants given until 9:00am Wednesday, May 24, 2006 to specifically designate one witness in each specific category who is limited to testimony previously identified prior to the pretrial, not at this last date.

      This letter was previously filed as D.I. 229 without the proper attachment and is being re-filed to include the proper attachment.

Respectfully submitted,

/s/ Thomas S. Neuberger

Attorney for Plaintiff

cc:    Stephen J. Neuberger, Esq. (via CM/ECF)
       Ralph K. Durstein, Esq. (via CM/ECF)
       Stephani Ballard, Esq. (via CM/ECF)
       James E. Liguori, Esq. (via CM/ECF)
       Capt. Barbara Conley (via US Mail)

Conley \ Letters \ Sleet.14

---

[1] Carole Warnock's statement regarding a statement made in 2003 at a scrapbooking party was previously disclosed in one of defendants' supplementations to their initial disclosures.

# Tab

# A

## CONLEY V. CHAFFINCH, C.A. 04-1394

### DEFENDANT'S WITNESSES RE: EVIDENCE OF BIAS OF PLAINTIFF'S WITNESS, CAPTAIN GLENN DIXON

**Witnesses marked with an asterisk (\*) are witnesses Defendant seeks to call as to particular instances of conduct or admissions, as well as general behavior such as long phone calls and closed door sessions. Other witnesses as to general behavior are also listed.** [1]

**Sgt. James P. Fraley\***

- In November 2003, a homicide conference involving officers from other states was held, which included some evening activities. One evening, Fraley stopped in the Headquarters building and found Barbara Conley and Glenn Dixon in Conley's office. (Dixon no longer worked with Conley at the time.) Fraley stopped in the office and conversed briefly with Barbara Conley. The discussion turned to using eBay to buy and sell items. Fraley sat down at Conley's computer to show her how to use eBay and could see Conley and Dixon standing behind him, reflected in the computer screen. Dixon and Conley standing pressed against each other hip to hip and Fraley saw Conley's hand rubbing Dixon's upper thigh.

- In mid-October 2004 [within weeks of plaintiff filing suit], Fraley was driving home from Home Depot with his wife and stopped at the Shore Stop near Milford. This was approximately 10:00 a.m. on a weekday morning. Fraley saw two unmarked police cars parked facing the wall side of the building (not the entrance and not facing traffic) at the Shore Stop. He saw Glen Dixon and Barbara Conley sitting in the same car (Conley's) talking.

**Carole Warnock** (civilian employee/troop secretary at Troop 5) **\***

- In 2003, Warnock was invited to Conley's house for a scrap booking party with some other women. Conley crawled under the table and ran her hand up Carol Warnock's leg, then said "that's what I'm going to do to Glenn."
- At Troop 5 (as Troop Commander), Glenn Dixon would shut his office door and talks on his cell phone (not office phone) for hours. More recently, he goes outside to his truck and sits in it and talks on the cell phone for long periods of time. Sometimes he will go into an empty office in the back of the building and talk on his cell phone with the doors shut.

---

[1] NOTE: This document pertains only to the limited testimony these witnesses will provide regarding the Conley/Dixon relationship. All listed witnesses are DSP employees who will also testify as to issues other than the Conley/Dixon relationship, such as Colonel Chaffinch's conduct, and Plaintiff's and the comparators' qualifications and workplace conduct.

**Tammy Hyland** (civilian employee in HQ building) *

- On one occasion after Dixon had left Headquarters and was working at Troop 5, Tammy was in Conley's office along with Kim Cuffee, discussing fatal accidents. Conley was looking out the window watching Glenn Dixon walk toward the Academy building. Conley said "look at that sweet ass."
- Can also testify about Conley and Dixon spending hours at a time behind her closed and locked office door when they worked together.

**Lt. John Campanella***

- Campanella worked with Conley as the Traffic Lieutenant after Dixon was transferred to Troop 5. Conley used the term "high pockets." When Campanella expressed confusion as to what this meant, she said "that's my nickname for Glenn" and explained that "his ass" pushed his pants pockets up high.
- Conley kept a framed picture of herself and Glenn Dixon (in a social setting) behind her desk at work, after Dixon no longer worked there.
- Can also testify as to Conley's long phone calls with Glenn Dixon behind closed doors after Dixon no longer worked with her.

**Lt. Curtis Brown***

- Is a Lieutenant at Troop 5 where Dixon is Troop Commander. From the time he arrived at Troop 3 in 2003, Glenn has spent hours on his cell phone every day with Barbara Conley. Around the time this lawsuit was filed, he began leaving the office to talk on his cell phone outside. As Traffic Lieutenant, Brown would be Conley's first point of contact for work-related matters--not Dixon, the Troop Commander.

**Captain Elizabeth Shamany**
- Captain Shamany worked in the Headquarters building near Barbara Conley and the traffic division when Dixon worked in traffic. Conley and Dixon would be behind closed doors in Conley's office for hours on a routine basis. Shamany had to pass the office to use the copier and would often hear the two of them talking and laughing in the office when she went by.

**Lt. Mark Rust**
- Can also testify that Dixon and Conley are on the phone for hours on an almost daily basis.
- Rust remembers a lunch with Barbara Conley, in 2003, when she said Amy Dixon (Glenn's wife) was jealous of her.

**Sgt. Rodney Workman**
- Can also testify about Conley and Dixon's frequent phone calls at Troop 5 (2003-present).