IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BARBARA CONLEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 04-1394-GMS |
| | ) | |
| L. AARON CHAFFINCH, | ) | |
| | ) | |
| Defendant. | ) | |

### RENEWED MOTION FOR AN ORDER LIMITING PREJUDICIAL PRETRIAL PUBLICITY AND FOR SANCTIONS FOR VIOLATIONS

The defendants, by and through undersigned counsel, move this Court pursuant to Local Rule 83.6(d) for an Order directing the plaintiff and her lawyers to refrain and desist from continued extrajudicial public statements that have materially prejudiced the right of the defendant to a fair trial. In support of this application, the defendants allege as follows:

1. The plaintiff's lawyers recently concluded a trial in the matter of *Price, et al. v. Chaffinch* in this Court. They represent the police officers who were plaintiffs in that case. Former Colonel Chaffinch is a defendant in both cases. The jury in the *Price* case reached a verdict on Wednesday, May 31, 2006. The verdict was extensively reported in the media on May 31 and June 1, 2006. The *Conley* case is set for trial beginning June 6, 2006.

2. In his comments to the media following the verdict in the *Price* case, Thomas Neuberger stated: "The entire defense in this case was a coverup and *a pack of lies* by men without honor which did not fool the thoughtful jury."[1]

---

[1] As reported in the Wilmington News-Journal, Thursday, June 1, 2006, at pages 1, 13.

3.  On June 1, 2006, Neuberger appeared on "Delaware's Morning News", a radio program on WDEL-AM, and called for Colonel Thomas F. MacLeish to resign. Neuberger called MacLeish "a coward who would not protect his men".[2] Colonel MacLeish was formerly a defendant in the *Conley* case, but all claims against him were dismissed voluntarily by the plaintiff at the pre-trial conference, in the face of the defense Motion for Summary Judgment. Colonel MacLeish will testify on behalf of the defense in the *Conley* case as the Superintendent of the Delaware State Police. Later in the same day, Neuberger appeared on the Rick Jensen show, on the same radio station, and said that the State Police leadership was willing to "throw its officers under a bus".[3]

4.  The defense in this case previously filed a motion objecting to prejudicial and improper pretrial publicity about the case, generated by the plaintiff lawyers.[4] That motion was denied, without prejudice, by the Court.[5] The Court did take pains to admonish counsel on the constraints of the Rules and the risk of tainting a jury. Plaintiff counsel have flagrantly violated these standards previously set by the Court with their latest series of attacks.

5.  The extrajudicial comments of counsel lacked civility, and reflected verbal intemperance, scorn, and superiority. Such abusive, rude, and disrespectful conduct is contrary to the fair administration of justice, and unfairly undermines the judicial system and the public's confidence in it as a truth-seeking process for resolving disputes in a rational, amicable, and efficient way. *Compare* Rule 1(A)(4) and (B) of the "Principles of Professionalism for Delaware Lawyers".

6.  Local Rule 83.6(d)(2) incorporates by reference the Model Rules of Professional Conduct of the American Bar Association, which have been adopted in substantially unchanged form by the Delaware Supreme Court as The Delaware Lawyers'

---

[2] It is hard to imagine a more cowardly act under the circumstances than an attorney speaking out against a key witness in a pending case who is subject to the constraints of the Rules of this Court regarding pretrial publicity and thus unable to respond.
[3] A transcript of the hour-long show has been requested from the radio station.
[4] Docket #9, filed on December 7, 2004.
[5] Docket #42, entered March 4, 2005. The court also issued a written Order and Opinion, dated March 2, 2005.

Rules of Professional Conduct. Collectively, these Rules set a standard of professionalism and civility for Delaware attorneys that makes it clear that insults such as "liar" and "coward" will not be tolerated under any circumstances.

7. Rule 3.6 of the Rules of Professional Conduct governs trial publicity, and provides that a lawyer participating in the investigation or litigation of a matter shall not make an extrajudicial public statement that the lawyer *knows or reasonably should know* will "have a substantial likelihood of *materially prejudicing* an adjudicative proceeding in the matter"[6]. This standard is constitutionally permissible to balance the lawyer's interest in free speech against the state's interest in fair judicial determinations. *U.S. v. Scarfo,* 263 F.3d 80, 93 (3d Cir. 2001). Permissible statements are limited to the identity of persons and claims asserted, information in a public record, the fact that an investigation is in progress, scheduling or the result of any step in the litigation, and a request for assistance in obtaining evidence. Rule 3.6(b). Personal opinions, insults and taunting, needless to say, are not permitted.

8. The Comment to Rule 3.6, at paragraph [5], lists "…certain subjects which are more likely than not to have a material prejudicial effect on a proceeding, particularly when they refer to a civil matter triable to a jury…" Included among such subjects bearing an unacceptable risk of prejudice are: "the character, credibility, reputation…of a party…or witness, or the identity of a witness, or the expected testimony of a party or witness". Further, "information that the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and that would, if disclosed, create a substantial risk of prejudicing an impartial trial" should not be disseminated by means of public communication. Counsel for the plaintiffs have repeatedly violated this Rule.

9. The United States Supreme Court has long recognized that adverse publicity can endanger the ability of a defendant to receive a fair trial. *Sheppard v. Maxwell,* 384 U.S. 333, 350 (1966); *Irwin v. Dowd,* 366 U.S. 717, 725 (1961); *Marshall v. U.S.,* 360

---

[6] The "matter" in this instance would refer to the pending trial in this case, and not to the recently-concluded trial in the *Price* case, as the Rule clearly governs *pre-trial* publicity.

U.S. 310, 312 (1959). "Legal trials are not elections, to be won through the use of the meeting-hall, the radio, and the newspaper." *Bridges v. California,* 314 U.S. 252, 271 (1941). "Trail by newspaper" poses significant and well-known dangers to a fair trial. *Pennekamp v. Florida,* 328 U.S. 331,353 (1946) (Frankfurter, J. concurring). "[Jurors] should not be torn from the moorings of impartiality by the undertow of extraneous influence." *Id.* "The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print". *Patterson v. Colorado,* 205 U.S. 454, 462 (1907)(Holmes, J.).

10.     A trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. *Gannett Co. v. DePasquale,* 443 U.S. 368, 378 (1978). And because of the Constitution's pervasive concern for the due process rights of the litigants, a trial judge may surely take protective measures, even when they are not strictly and inescapably necessary. *Id.* A judicial order barring contact with the media is constitutionally permissible where based on "a reasonably found substantial likelihood that comments from the lawyers and parties might well taint the jury pool…," and where the order is "the least restrictive corrective measure available to ensure a fair trial, and is sufficiently narrowly drawn." *U.S. v. Brown,* 218 F.3d 415,423 (5th Cir. 2000).

11.     Freedom of speech is critically important, but its exercise must be compatible with the preservation of other freedoms essential to a democracy and guaranteed by our Constitution. *Pennekamp v. Florida, supra.* "Preserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to trial, particularly where trial by jury is involved. If there were no such limits, the result would be the practical nullification of the protective effect of the rules of forensic decorum and the exclusionary rules of evidence." Comment to Rule 3.6, at [1]. Just as yelling fire in a crowded theatre is not protected speech, as Justice Holmes famously observed, a lawyer who characterizes a party and a key witness to litigation as liars and a cowards during the week prior to trial cannot hope to hide behind the First Amendment.

12.     Lawyers should not be surprised when they learn that their chosen profession restricts their conduct and speech at times. *U.S. v. Scarfo,* 263 F.3d 80, 93 (3d Cir. 2001). The speech of lawyers representing clients in pending cases may be regulated under a less-demanding standard than that established for regulation of the press. *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1074 (1991). A lawyer's right to free speech in a pending case may be circumscribed in the courtroom and is limited outside the courtroom as well. *Id.* at 1073. Extrajudicial statements by lawyers pose a threat to the fairness of a pending proceeding because lawyers have access to information through discovery and client communication, and because their statements are likely to be received as especially authoritative. *Scarfo, supra.* In the contest between the lawyer's claim of free speech and the judge's duty to preserve the integrity of the trial process, it is the purported rights of the lawyer that must yield.

13.     Preventing a "carnival atmosphere" in a high profile case is a legitimate reason to restrain an attorney. *U.S. v. Brown,* 218 F.3d 415, 429 (5th Cir. 2000). In *Brown,* a District Court order prohibiting attorneys, parties, and witnesses from discussing an ongoing case with any public communications media was upheld by the Court of Appeals, based on the substantial likelihood of prejudice to the unsequestered jury. The evils against which a restraining order may appropriately apply are those generally associated with risk of prejudice to the jury pool. *Scarfo, supra,* at 94. The conduct of the plaintiff lawyers over the past forty-eight hours has effectively poisoned the pool of citizens from which a jury is to be drawn in this case on Tuesday of next week. Those lawyers have systematically and deliberately tainted the public record with insults and misrepresentations calculated to influence the jurors, in gross violation of the Rules and basic concepts of decency and fair play.

14.     Rule 3.6 (c) provides that a lawyer may protect a client from the substantial undue prejudicial effect of recent publicity by making a statement limited to such information as is reasonably necessary to protect the client and to mitigate the recent adverse publicity. As the Comment suggests, when prejudicial statements have been made publicly by others, responsive statements may have the salutary effect of lessening

any adverse impact on the adjudicative proceeding.  *Comment* at [8].  However, this provision also creates the risk of an ongoing series of statements to the media and responses thereto, to the detriment of the trial rights of all the litigants.  It is the intention and preference of the defendants to have a trial in the courtroom, before an untainted jury, rather than outside the courtroom, constantly defending against allegations in the media.  However, it is difficult to imagine how the prejudice inherent in mean-spirited pretrial publicity can possibly be avoided in this case.[7]

WHEREFORE, the defendant prays that the Court dismiss the remaining claim of the plaintiff, with prejudice, and order appropriate sanctions against the plaintiff lawyers.  In the alternative, defendant would ask that the Court prohibit the plaintiff or her lawyers or witnesses in the case from making further extrajudicial statements about this case which those persons know or should know, would be disseminated by means of public communications media.  Further, the defense would request specific and extensive voir dire of the jury pool on this issue, as well as a supplementary preliminary instruction to the jury.  A form of Order is attached.

/s/ Ralph K. Durstein III
Ralph K. Durstein III (ID #912)
Stephani J. Ballard (ID #3481)
Deputy Attorneys General
Department of Justice
State of Delaware
820 N. French Street
Wilmington, DE 19801
(302)577-8510

/s/ James E. Ligouri
JAMES E. LIGOURI
46 The Green
Dover, DE  19901
(302) 678-9900

Dated:  June 2, 2006

---

[7] Contemporaneously with this Motion, defendant will be seeking both extensive voir dire of the jury pool on these unfortunate comments, as well as a thorough curative preliminary instruction to the jury at trial.

**Local Rule 7.1.1 Statement**

  Undersigned counsel hereby certifies that a reasonable effort has been made to reach agreement with the opposing attorneys on the set matters set forth in this Motion, to wit: the matter has been pursued verbally with counsel and the Court, in the course of a teleconference convened, *sua sponte,* by the Court on June 2, 2006 at 1100 hours.

                 _____
                  Ralph K. Durstein III (ID #912)
                  Deputy Attorneys General
                  Department of Justice
                  State of Delaware
                  820 N. French Street
                  Wilmington, DE 19801
                  (302)577-8510

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BARBARA CONLEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 04-1394-GMS |
| | ) | |
| L. AARON CHAFFINCH, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

The Court having considering the defendants' Motion for an Order Limiting Prejudicial Pretrial Publicity and the arguments of counsel in the course of a teleconference convened by the Court, *sua sponte*, on June 2, 2006, IT IS HEREBY ORDERED THAT:

1. The Court will defer its decision on sanctions to be imposed, pending further consideration of the matter and the issuance of a formal opinion.

2. Defense counsel shall submit proposed additional voir dire questions to the jury pool regarding prejudicial pretrial publicity for consideration by the Court.

3. Defense counsel shall submit proposed language regarding extrajudicial statements by counsel for consideration by the Court for inclusion in the preliminary instructions to the jury at the commencement of trial.

_____
Hon. Gregory M. Sleet
U.S. District Judge

Dated: _____