IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CAPTAIN BARBARA L. CONLEY,     :
                                        :
          Plaintiff,           :
                                          :
    v.                      :     C.A.No.04-1394-GMS
                                          :
COLONEL L. AARON CHAFFINCH,    :
individually,                   :
                                          :
          Defendant.       :

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS ALL CLAIMS FOR EQUITABLE RELIEF, INCLUDING
BACK PAY AND FRONT PAY

I.    **BECAUSE INSTATEMENT HAS NEVER BEEN A FEASIBLE REMEDY IN THIS CASE, PLAINTIFF CAN BE AWARDED FUTURE DAMAGES.**

    **A.  The Law of Instatement.**  "The equitable remedy of ordering promotion to a position illegally denied is referred to as 'instatement.'" Bullen v. Chaffinch, 336 F.Supp.2d 357, 358 (D.Del. 2004).  "The law of instatement tracks the law of reinstatement." Id. at 359. Instatement is the "preferred remedy," but

> may not be feasible in all cases, particularly in those cases in which a position is no longer available at the time of judgment or the relationship between the parties has been so damaged by animosity that instatement is impracticable.

Id.  The Third Circuit also has repeatedly explained that "[r]einstatement may not be feasible when there is no position left or the relationship between the two parties is too hostile." Wilhelm v. Pennsylvania, 118 Fed.Appx. 611, 614 (3d Cir. 2004); accord Maxfield v. Sinclair International, 766 F.2d 788, 796 (3d Cir. 1985).[1]  "In such circumstances, the remedial purposes of the [civil rights] statute would be thwarted and plaintiff would suffer irreparable harm if front

_____

[1]  "This is a question for the District Court." Wilhelm, 118 Fed.Appx. at 614.

pay were not available as an alternate remedy to reinstatement." Maxfield, 766 F.2d at 796.

**B. Instatement to the Rank of Major Is Neither Feasible Nor Possible in This Case.**

**1. There is No Position Available.** "Courts are particularly reluctant to order a remedy that will have the effect of 'bumping' an innocent, incumbent employee." Bullen, 336 F.Supp.2d at 360. Simply put, there are no vacancies on the Executive Staff. In order to promote plaintiff, a current member of the Executive Staff would have to be 'bumped,' an action which the case law reveals courts prefer not to take. Id.

**2. There is Irreparable Animosity Between the Parties.**

**a. Some Relevant Precedent.** In Riseman v. Advanta Corp., 2001 WL 1175126 (E.D.Pa. Sept. 12, 2001) (affirmed in part and vacated in part on other grounds by Riseman v. Advanta Corp., 39 Fed.Appx. 761 (3d Cir. 2002)), the Eastern District discussed a situation where "[u]nderstandably, ... [a plaintiff] requested front pay rather than reinstatement." Id. at *10. The court noted that, as in our present case, "[i]t was abundantly evident during this litigation (and in repeated settlement attempts) that there was irreparable animosity between the parties." Id. at n. 16.

Similarly, in Feldman v. Phila. Hous. Auth., 43 F.3d 823, 832 (3d Cir. 1995), a plaintiff sought prior to trial to have reinstatement excluded as a potential remedy. Given the unclear state of the record at the time, the district court deferred its decision until post-trial, but ultimately held that reinstatement was not feasible because "irreparable distrust and animosity developed between the [parties] as a result of the" adverse action that was taken and "the litigation that followed in its wake." Id. In refusing to find that the district court had abused its discretion, the Third Circuit noted that the "record contains ample evidence of the hostility

2

caused by this litigation." Id.  Specifically, the Third Circuit noted the state entity's "continuing ... attack on [plaintiff's] professional competence and personal integrity" as well as the defendants' own "litigation strategy" clearly demonstrated the irreparable animosity that made reinstatement an entirely inappropriate remedy.  Id. (emphasis added).

As discussed below, the only material difference between our present case and Feldman is that our record on animosity was clear long before trial.  And given the public safety context in which plaintiff works, the existence of such animosity has been found to be sufficient to order front pay rather than reinstatement to prevent and avoid risks to the public.  For example, in Bianchi v. City of Phila., 80 Fed.Appx. 232, 237 (3d Cir. 2003), the Third Circuit refused to find an abuse of discretion in the district court's determination that front pay was the appropriate damages remedy because -

> the relationship between the parties had been irreparably damaged due to a lack of mutual
> trust and respect, and that reinstatement of [the plaintiff] as a firefighter would put lives
> in danger because of this damage.

**b.  The Animosity That Exists.**  The animosity that exists in our case stems from several sources.  First, from the overall defense litigation strategy in this case. Second, from  the serious animosity that exists between plaintiff and current Colonel MacLeish on whose Executive Staff she would serve.

**(1).  The Defense Litigation Strategy.**  The defense litigation strategy in this case has consisted of character assassination and relentless attacks upon plaintiff's professional competence and personal integrity.  Plaintiff has been accused of serious misconduct covering the entire range of her professional career.  For example, the defense continues to drag up 20 year old alleged incidents from when she was a Trooper First Class and claim that these

matters from the early 1980's are the reasons she was not promoted from Captain to Major 20 years later.   Similarly, plaintiff's personal life has been attacked and despite the fact that she has been a happily married woman for 18+ years, she has been repeatedly accused of adultery, a host of sexual improprieties and a complete lack of sexual mores.   Counsel respectfully submits that the resultant animosity has been apparent throughout the course of this litigation.

                               **(2). MacLeish's Anger With Plaintiff.**  Even though defendant Chaffinch is no longer Colonel, his successor Colonel MacLeish is heavily involved in this case. It is Colonel MacLeish's Executive Staff that onto which the Court would have to order plaintiff instated.  However, Colonel MacLeish also is unhappy with plaintiff.

       Until very recently, Colonel MacLeish himself was a defendant in this litigation.  Plaintiff had earlier amended her lawsuit to include a claim against MacLeish for releasing her internal affairs file to the Delaware media in retaliation for her filing the present lawsuit against his good friend defendant Chaffinch.  MacLeish vehemently denied the claims against him and testified at his deposition in this and in the Price and Foraker cases regarding his negative feelings towards those who file lawsuits against he and the Division.

       That Colonel MacLeish bears hard feelings towards plaintiff for her lawsuit should come as no surprise.  Noticeably absent from the defense submission on this issue is any mention of the fact that current Colonel MacLeish wants plaintiff Capt. Conley gone so badly that he is willing to pay her several hundred thousand dollars if she retires immediately (a non-negotiable term of the unsuccessful settlement negotiations).  As defense counsel have repeatedly represented during settlement discussions, the relationship between current Col. MacLeish and plaintiff Captain Conley is very strained and is causing serious problems in the workplace.

4

Given the defense settlement position that the working relationship is so badly damaged that plaintiff must retire from the Division 10 years prematurely, it is disingenuous for the defense to now assert that plaintiff must seek to be instated to a position as Major on the Colonel's own Executive Staff where she would work on a daily basis <u>in even greater proximity</u> to the very Colonel who so very adamantly wants her gone because he claims he cannot work with her. If Colonel MacLeish cannot work with plaintiff in her position as a Captain because of the hostility between them, *a fortiori*, he cannot work with her as a Major.

As the defense in this case has previously represented in court filings, a position as Major on the Colonel's Executive Staff is the equivalent to a position on the President's Cabinet. The Majors are the Colonel's close advisors who work with him on a day to day basis and who are expected to carry out the wishes and dictates of the Colonel himself. The <u>Bullen</u> case involving defendant Chaffinch is instructive on this issue. There, Judge Farnan found instatement to be the appropriate remedy because there was, *inter alia*,

> no evidence of any animosity between Plaintiffs and Defendants that would militate against promoting them ... [and because the plaintiffs] advanced evidence, which is unrebutted by Defendants, that none of the duties of a sergeant, a position five ranks below Colonel, would involve regular daily contact with Defendant Chaffinch.

<u>Bullen</u>, 336 F.Supp.2d at 360. Given their immediate proximity in the DSP hierarchy where they work together on a daily basis and in light of MacLeish's admittedly hostile feelings towards Captain Conley, instatement is not a feasible remedy.

**3. Plaintiff Waived Reinstatement As a Remedy Because She Would Lose On the Issue Under the Case Law.** Plaintiff did not waive the remedy of instatement because she does not want to be Major. Indeed, it has long been one of plaintiff's career goals to be the

5

first female Major in the DSP. Instead, as discussed above, plaintiff waived such a remedy because there is no chance under the case law that she would ever be ordered promoted to the rank of Major because of the animosity between the parties and because the positions at issue are no longer available. As a result, it would be a waste of time and judicial resources to present evidence in support of such a futile effort.

   **4. Summary.** Accordingly, because instatement is not a feasible remedy, an award of future damages is required to make plaintiff whole.

## II. BECAUSE PLAINTIFF INCLUDED HER CLAIM FOR FUTURE DAMAGES IN HER COMPLAINT, MAXFIELD GOVERNS OUR PRESENT CASE, NOT WEHR.

   Defense reliance upon Wehr v. Burroughs Corp., 619 F.2d 276 (3d Cir. 1980), in support of their claims is misplaced. In Maxfield, the Third Circuit distinguished and explicitly limited the holding of Wehr. As the Maxfield court explained, the Wehr plaintiff "had not requested any future relief in his complaint and had specifically disclaimed any desire for reinstatement" to his prior position. Maxfield, 766 F.2d at 796. The Third Circuit found the lack of a specific request for future damages in the complaint to be the key distinguishing factor which removed the Maxfield plaintiff from the scope of Wehr. Id. at 796-97. "In contrast, here, the complaint contained a specific request for future damages, thereby preserving the issue. Id.

   Similarly, in our present case, the Complaint contained a specific request for future damages, thereby preserving the front pay issue. (See D.I. 1 at Wherefore Clause at III - requesting, *inter alia*, "judgement against the individual defendant for ... future or front pay.").[2]

   The defense efforts to distinguish Maxfield are without merit. Maxfield has been applied

---

   [2] The First Amended Complaint (D.I. 7), contained the same provision.

to situations involving a pretrial waiver of reinstatement due to the irreparable hostility between the parties. For example, in Riseman, 2001 WL 1175126, *10, the Eastern District of Pennsylvania found that the right to seek front pay was preserved by the plaintiff's request for future damages in his complaint, despite a pretrial waiver of reinstatement as a remedy. Id. Accordingly, plaintiff's inclusion in her complaint of a request for future damages places her case well within the scope of Maxfield.

III.    **BOTH FRONT AND BACK PAY CAN BE RECOVERED AGAINST DEFENDANT CHAFFINCH TO ELIMINATE THE EFFECTS OF HIS DISCRIMINATORY MISCONDUCT WHICH VIOLATES THE FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE.**

   **A. The Law of Federal Remedies.** "The touchstone of [civil rights] remedies is to make persons whole for injuries suffered on account of unlawful employment discrimination." Kunda v. Muhlenberg College, 621 F.2d 532, 549 (3d Cir. 1980) (internal punctuation omitted). "[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975) (quoting Bell v. Hood, 327 U.S. 678, 684 (1946)). "Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15 (1971) (Fourteenth Amendment race discrimination). Indeed "the court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." Louisiana v. U.S., 380 U.S. 145, 154 (1965); accord Albemarle Paper Co., 422 U.S. at 418 (same - Title VII); U.S. v. Virginia, 518 U.S. 515, 547

7

(1996) (same - Fourteenth Amendment Equal Protection).

     **B. Discussion.** Without citation of legal authority, defendant claims that

> Having dismissed all claims except those against Chaffinch in his individual capacity, Plaintiff is not entitled to an award of back pay or front pay as items of damages, as such damages constitute equitable relief for which Chaffinch is not legally liable.

(OB at 2) (citing no authority). Similarly, "former Colonel Chaffinch in his individual capacity - the sole remaining defendant - cannot legally be liable for the type of relief Plaintiff seeks." (OB at 4) (citing no authority). The defense argument in this regard is grounded in a fundamental misunderstanding of the law of federal remedies. The defense submission makes clear their confusion regarding the word "injunctive" and the word "equitable." Unfortunately for defendants, these terms are not identical. Although an injunction is an equitable remedy, not all equitable remedies are injunctions.

     Although plaintiff waived her claim of instatement - an injunctive remedy - nowhere at the pretrial or elsewhere did plaintiff ever waive her right to seek other forms of equitable relief such as money damages.[3] Try as the defense might, plaintiff never waived any request for money damages. All that was waived was the request for injunctive relief of instatement due to the futility of trying to seek such a remedy given our record.

     The defense claim that Chaffinch is not liable for a damages award in his individual capacity for injuries caused by his illegal actions is similarly without merit and simply clouds the

---

    [3] See, e.g. Pretrial Transcript at 33 - Mr. T. Neuberger noting that the request for the injunctive relief of instatement to bump the comparators from their positions is being dropped and explicitly stating that this "is [now] solely a case for money damages." (attached at Tab A of defendants' OB).

8

issues.  (OB at 4).[4]  Defendant appears to claim that the dismissal of the official capacity

defendants now bars plaintiff from seeking a back pay or front pay award.  The flaw in this

argument is it wrongly presupposes that such an award would be recoverable against the official

capacity defendant.  (See OB at 4 - noting the defense position that "front pay" as an equitable

remedy "can only be assessed against the employer under § 1983.").[5]  But it is hornbook law

that the Eleventh Amendment prevents plaintiffs from suing or recovering from the State of

Delaware, its agencies or official capacity defendants damages of any kind.  See, e.g. Edelman v.

Jordan, 415 U.S. 651, 662-63 (1974); U.S. Const. Amend. XI.  A damages award simply cannot

run against the State of Delaware or any of its officials in their official capacities.

The defendant in this case is the individual capacity defendant Chaffinch.  He has always

been the only defendant against whom plaintiff could collect a damages award because of the

Eleventh Amendment, and plaintiff has always sought to impose personal liability upon him for

his illegal actions.  See, e.g. Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Personal-capacity

suits seek to impose personal liability upon a government official for actions he takes under color

---

[4]  Plaintiff is unclear why the defense cites Lewis v. State of Del., 986 F.Supp. 848, 851 (D.Del. 1997).  (OB at 4).  The quoted passage supports plaintiff's argument - that an individual defendant is only liable for monetary damages.  The quoted passage also stands for the unremarkable proposition that reinstatement is not a remedy that can be affected against an individual defendant - only an official capacity one.  This is not surprising and it is because plaintiff had dropped her request for instatement that she dropped the official capacity defendants from this case.  They were no longer needed given that plaintiff only seeks money damages against the individual capacity defendant.

[5]  Of course, defendants cite no authority to support the proposition that an equitable remedy cannot be assessed against an individual.  Indeed, such an attempt would violate basic principles of equity.  See, e.g. Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery, 330 F.3d 548, 568 (3d Cir. 2003) ("Equity eschews mechanical rules; it depends on flexibility") (internal punctuation omitted); Young v. Higbee Co., 324 U.S. 204, 209 (1945) ("Equity looks to the substance and not merely to the form.").

of state law.").  This includes front pay, back pay and the other elements of a damages award that

are necessary to right the wrong that has been done and restore plaintiff to her rightful position.

       Plaintiff waives an answering brief in this matter.


                    Respectfully Submitted,

                    **THE NEUBERGER FIRM, P.A.**


                    /s/ Stephen J. Neuberger         
                    **THOMAS S. NEUBERGER, ESQ. (#243)**
                    **STEPHEN J. NEUBERGER, ESQ. (#4440)**
                    Two East Seventh Street, Suite 302
                    Wilmington, Delaware 19801
                    (302) 655-0582
                    TSN@NeubergerLaw.com
                    SJN@NeubergerLaw.com


Dated: June 7, 2006               Attorneys for Plaintiff

# Unreported Opinions



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1175126 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1


Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Milton RISEMAN
v.
ADVANTA CORP., et al.
No. 98-CV-6671.

Sept. 12, 2001.

John M. Elliott, Mark J. Schwemler, Adam B. Krafczek, Jr., Raymond J. Santarelli, Elliott, Reihner, Siedzikowsky, and Egan, P.C. , Blue Bell, PA, Patricia C. Collins, Elliott, Reihner, Siedzikowski and Egan, P.C., Blue Bell, PA, for Milton Riseman, Plaintiff.
Robert M. Goldich, Wolf, Block, Schorr and Soliscohen LLP, for Advanta Corp., Defendant.

*EXPLANATION AND ORDER*
BRODY, J.
**\*1** On December 5, 2000, a jury awarded plaintiff Milton Riseman $3,939,126 in damages against his former employer, Advanta Corporation and Advanta Mortgage Corporation, USA ("Advanta"). The jury determined that Advanta was not liable for age discrimination against Riseman, a 62 year-old executive, but that it had retaliated against him in violation of the Age Discrimination in Employment Act. The jury also found Advanta liable for breach of contract, detrimental reliance, and violation of the Pennsylvania Wage Payment and Collection Law.

Advanta now moves for judgment as a matter of law and for a partial new trial. Riseman moves for a partial new trial on other grounds. The motions will be denied.

*I. Factual Background*

In 1992, Advanta hired Riseman from Citibank. (11/14/00 at 57-60, 68-69). In 1994, Riseman was

promoted to President and CEO of Advanta Mortgage Corporation, USA ("Advanta Mortgage"). (11/14/00 at 60).FN1 From 1992 to 1997, Riseman's performance was well received, and he was credited with having saved, turned around, and built the mortgage unit. (P-51-54; P-116; 11/14/00 at 105-125; 11/17/00 at 64-65; 11/20/00 at 61-63, 87-88; 11/21/00 at 47-65; 11/29/00 at 80).

FN1. At the time of trial, Advanta Mortgage was a wholly-owned subsidiary of Advanta Corporation. (11/14/00 at 68; 12/1/00 at 164-67).

In April 1997, Advanta was examining strategic alternatives, including a potential sale of all or a part of its business. (11/17/00 at 66). To further the strategic initiative, Advanta offered bonus opportunities to more than 50 key management employees. (P-132; 11/17/00 at 123-24). In a letter dated April 28, 1997, Chairman Dennis Alter offered Riseman a bonus equal to 200% of his base salary. This "1997 bonus" would be paid in the event of a "change of control affecting your group." According to the letter, Alter had "sole discretion" to determine whether Riseman satisfied the bonus conditions. Below his signature, Alter wrote: "Milt, Thanks for Being A Total Mench During This Process. D." (P-46; 11/17/00 at 64-66, 118-19).FN2

FN2. According to Webster's Ninth New Collegiate Dictionary, "mensch" means a "person of integrity and honor." (P-278). During the strategic process, Riseman had helped BT Wolfensohn to evaluate various possible transactions. (11/14/00 at 128-29).

In October 1997, Advanta announced an agreement with Fleet Financial Group, pursuant to which Fleet would acquire Advanta's consumer credit card business. (P-212). When the deal closed in February 1998, Advanta Mortgage emerged as Advanta's most critical business unit, accounting for 85% of the entire

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 2
Not Reported in F.Supp.2d, 2001 WL 1175126 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

corporation's revenues, assets and profits. (P-8; P-251; 11/20/00 at 6, 87-88; 11/21/00 at 47-65). Given the sudden spotlight on the mortgage unit, the "Office of the Chair" exercised closer scrutiny over Riseman and Advanta Mortgage. (11/14/00 at 126, 145-47; 11/17/00 at 138, 142; 11/27/00 at 103; 11/29/00 at 129).[FN3]

> [FN3.] The "Office of the Chair" consisted of Advanta Chairman Dennis Alter, Vice-Chairman William Rosoff, and President Olaf Olafsson. Riseman reported to the Office of the Chair. (11/14/00 at 140, 144).

Advanta did not award Riseman the 1997 bonus. (11/17/00 at 65-66). However, Advanta did award the bonus to 54 employees who were transferred to Fleet, and at least 13 employees whose business units did not experience a change of control. (11/14/00 at 132; 11/17/00 at 120, 138-66). Dennis Alter and William Rosoff remained at Advanta and each received $5 million bonuses. (11/17/00 at 141-42; 12/1/00 at 61-65). Elizabeth Mai, who also remained at Advanta, received a $1.5 million bonus. (11/17/00 at 139; 11/28/00 at 9; 11/29/00 at 226-27).

**\*2** In March 1998, Alter orally extended Riseman another bonus opportunity, the "1998 bonus." (11/14/00 at 145-51). On May 12, 1998, the verbal promise was memorialized. According to the terms of the memorandum, Riseman would receive $400,000 on March 31, 1999, subject to three conditions: (1) exercising "flexibility and cooperation," (2) keeping the arrangement "confidential," and (3) "being here at the time." The Office of the Chair would determine whether Riseman fulfilled these criteria. (P-48).

On a yearly basis, Advanta also awarded Advanta Management Incentive Program ("AMIP") bonuses to key executives, including Riseman. (11/14/00 at 149). These bonuses were for an unliquidated amount, based upon the executive's individual performance and the performance of his business unit. The AMIP bonus could be earned by, and was paid to, executives who did not remain employed for the entire year. (11/17/00 at 14-15).

On August 3, 1998, Advanta informed Riseman that he was being replaced with a 42 year-old as President and CEO, but that he could stay on as "Chairman" of Advanta Mortgage. (11/14/00 at 64-66, 159-61). Advanta promised Riseman the same salary and bonus opportunities he enjoyed as President and CEO. (11/14/00 at 161). Riseman accepted the Chairman position and was relocated to the executive suite of Advanta's corporate headquarters. (11/14/00 at 163-65; 11/16/00 at 10-15).

After three days under the new arrangement, Riseman concluded that the Chairman position was not a "real" job. (11/14/00 at 166-67; 11/16/00 at 15-16). On August 16, 1998, Riseman met with Vice-Chairman William Rosoff to voice his grievances. (11/16/00 at 19-20). On August 17, 1998, Riseman consulted Fred Blume, an attorney with Blank, Rome, Comisky & McCauley LLP. (11/15/00 at 3-6). In a letter of August 17, 1998, Riseman's attorney threatened Advanta with age-discrimination charges. (P-55; 11/15/00 at 7-8). In a letter response dated August 18, 1998, Advanta's counsel denied the charges, but promised that "Mr. Riseman remains employed by the company." (P-56; P-57; 11/15/00 at 9-12). On that same day, Rosoff told Riseman to "go home," and not to report to work. (11/14/00 at 66-67; 11/15/00 at 11-13).

After August 18, 1998, Riseman performed essentially no further services for Advanta. (11/16/00 at 31-32). On August 28, 1998, Advanta published an internal newsletter advising its employees that Riseman had resigned his position as Chairman. (P-58). On September 2, 1998, Riseman filed formal charges of age discrimination with the Equal Employment Opportunity Commission. (11/14/00 at 67). On October 23, 1998, Advanta sent Riseman a letter informing him that he was being separated from the payroll. (P-60).

There was no evidence that Riseman received any alternative offer of employment during or immediately following his separation from Advanta. After approximately eight months without full-time employment, Riseman accepted a new job with lower salary and inferior bonus opportunities. (11/14/00 at 63; 11/15/00 at 90). Riseman never received the 1997 bonus, the 1998 bonus, the 1998 AMIP bonus, or any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 3
Not Reported in F.Supp.2d, 2001 WL 1175126 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

severance pay from Advanta.

**\*3** On December 23, 1998, Riseman filed a complaint in federal district court. Among other things, the Complaint and Amended Complaint alleged age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.,* breach of contract, detrimental reliance, fraud, negligent misrepresentation, and violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1 *et seq.* After two years of acrimonious litigation, the case went to trial. From November 14, 2000 to December 4, 2000, an attentive jury evaluated the evidence supporting Riseman's claims.

At the close of plaintiff's evidence, the defendants moved for judgment as a matter of law. The motion was granted in favor of all defendants on Riseman's fraud and negligent misrepresentation claims. With respect to detrimental reliance, judgment was granted to the individual defendants, Dennis Alter, William Rosoff, and Olaf Olafsson. The motion was denied as to all other claims.

On December 5, 2000, the jury returned its verdict. The jury found Advanta liable for retaliation under the ADEA, breach of contract, detrimental reliance and violation of the WPCL, but not liable for age discrimination. In response to special interrogatories, the jury determined that the ADEA violation was "willful," and that Advanta had no "good faith" basis to withhold Riseman's wages. The jury awarded total damages of $3,939,126, including $1,377,125 in ADEA "back pay" and $2,562,001 under the WPCL. Judgment was entered accordingly on December 7, 2000.

*II. Discussion*

Advanta moves for judgment as a matter of law and for a new trial with respect to all claims on which the jury found against it at trial. Riseman requests a new trial for all claims on which he did not prevail. The motions will be denied.

As a preliminary matter, there is a strong argument that

Advanta waived the right to renew its motion for judgment as a matter of law, or to challenge the sufficiency of the evidence in any way. Failure to move for a directed verdict at the close of *all* evidence forecloses the defendant from renewing a Rule 50 motion after the verdict has been rendered. *See Greenleaf v. Garlock, Inc., 174 F.3d 352, 364-65 (3d Cir.1999); Beebe v. Highland Tank & Mfg. Co., 373 F.2d 886, 888 (3d Cir.1967).* In addition, failure to move for a directed verdict at the close of all evidence "wholly waives the right to mount any post-trial attack on the sufficiency of the evidence." *Yohannon v. Keene Corp., 924 F.2d 1255, 1262 (3d Cir.1991); see also Gebhardt v. Wilson Freight Forwarding Co., 348 F.2d 129, 132 (3d Cir.1965).*

Advanta moved for judgment as a matter of law after Riseman rested his case, but did not specifically renew that motion at the close of all evidence. However, there is some indication in the record that Riseman's counsel and the Court may have implicitly understood Advanta's counsel to have renewed the motion. (12/4/00 at 129-32). Therefore, I will not find that Advanta has waived its right to mount a post-trial attack. *Cf. Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 183-84 (3d Cir.1992); Keith v.. Truck Stops Corp., 909 F.2d 743, 744 (3d Cir.1990); Acosta v. Honda Motor Co., Ltd., 717 F.2d 828, 831-32 & n. 3 (3d Cir.1983).*

*A. Advanta's Motion for Judgment as a Matter of Law*

**\*4** Pursuant to Federal Rule of Civil Procedure 50, Advanta renews it motion for judgment as a matter of law. Judgment as a matter of law is appropriate only where the record is "critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." *Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1095 (3d Cir.1995); Dunn v. Hovic, 1 F.3d 1362, 1364 (3d Cir.1993); Limbach Co. v. Sheet Metal Workers Int'l Ass'n, AFL-CIO, 949 F.2d 1241, 1261 (3d Cir.1991)* (en banc ). A court must review the record in the light most favorable to the verdict winner, resolving all conflicts in the evidence in his favor. *See Williamson v. Consolidated Rail Corp.,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 4
Not Reported in F.Supp.2d, 2001 WL 1175126 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

926 F.2d 1344, 1348 (3d Cir.1991). After giving the prevailing party the benefit of every fair and reasonable inference, the motion must be denied unless the evidence is insufficient to support the verdict. *See Blum v. Witco Chemical Corp.,* 829 F.2d 367, 372 (3d Cir.1987); *Laskaris v. Thornburgh,* 733 F.2d 260, 264 (3d Cir.1984).

### (1) *ADEA Retaliation*

The jury found Advanta liable for retaliation under the ADEA. *See* 29 U.S.C. § 623(d). In its motion for judgment as a matter of law, Advanta claims that the jury could not have concluded that Advanta took *any* adverse employment action against Riseman after he had engaged in protected activity. Advanta insists that all adverse employment decisions were made and communicated to Riseman before he asserted an age-discrimination complaint. *See Delaware State College v. Ricks,* 449 U.S. 250, 258 (1980) (statute of limitations for employment discrimination accrues when decision is "made and communicated" to employee). This is incorrect. There was ample evidence for the jury to conclude that Advanta retaliated against Riseman after he asserted an age-discrimination complaint.

Advanta states that its decision to move Riseman from the position of "President and CEO" to "Chairman" was made and communicated on August 3, 1998, before Riseman engaged in protected activity. However, consistent with its finding on age discrimination, the jury could have concluded that Riseman's shift of positions within Advanta Mortgage was not the relevant retaliation. Instead, the jury could have found retaliation in Advanta's decision to terminate Riseman altogether, as well as to deny him bonuses and severance. These were not inevitable consequences of Riseman's move to the Chairman position, but independent sources of retaliation. *See Ricks,* 449 U.S. at 257-58 & n. 9 (distinguishing between inevitable consequences of earlier action and independent forms of discrimination).

Riseman complained about age discrimination on August 17, 1998, and remained employed with Advanta as of August 18, 1998. (P-55; 11/15/00 at 6-12). At the very least, Advanta "communicated" to Riseman that he was employed as of August 18, 1998. (P-56; P-57). On December 5, 2000, Advanta's counsel confirmed to the Court that Riseman remained employed as of August 18, 1998. (12/5/00 at 74-76, 80).

**\*5** Thus, the jury had sufficient evidence to conclude that Advanta terminated Riseman, and/or denied him bonuses and severance, after he had engaged in protected activity on August 17, 1998. Viewing the inferences in the light most favorable to the verdict winner, the jury was well within its right to find retaliation under the ADEA. *See Woodson v. Scott Paper Co.,* 109 F.3d 913, 920-21 (3d Cir.1997) (evidence at trial supported causal link between complaints of discrimination and termination); *Delli Santi v. CNA Ins. Co.,* 88 F.3d 192 (3d Cir.1996) (evidence at trial allowed jury to find retaliation).

### (2) *Breach of Contract: 1998 Bonus*

Advanta also contends that the jury should not have been allowed to consider the 1998 bonus under a breach of contract theory because: (1) Advanta's retention of discretion to determine whether Riseman fulfilled the bonus conditions precluded formation of a contract; (2) Advanta's retention of discretion to decide whether or not Riseman fulfilled the bonus conditions was "absolute," and (3) Riseman did not fulfill the contractual condition requiring him to be employed with Advanta on March 31, 1999. These arguments fail.

Advanta claims that the 1998 bonus could not give rise to a contract since, by retaining discretion to evaluate fulfillment of the bonus criteria, Advanta committed itself to nothing. However, Advanta did not strike an "illusory bargain" because Riseman enjoyed a reasonable expectation that Advanta would exercise its discretion in "good faith." *See U.S. v. Isaac,* 141 F.3d 477, 482-84 (3d Cir.1998) (contract could be formed even where one party reserves "sole discretion" to perform its part); *Gautney v.. Amerigas Propane, Inc.,* 107 F.Supp.2d 634, 640, 646-47 (E.D.Pa.2000) (contract could be formed even where corporate officer has "final discretion" to determine plaintiff's eligibility for bonus under Management Incentive Plan); *Kofsky v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 5
Not Reported in F.Supp.2d, 2001 WL 1175126 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

*Chemical Residential Mortg. Corp.,* 1999 WL 1016976
*3 (E.D.Pa.1999) (contract for commissions could arise,
even where defendant retains discretion over
commission program). Thus, a contract could have been
formed with respect to the 1998 bonus.[FN4]

> **FN4.** The jury was not instructed to assume
> that a contract existed. Rather, the jury was
> provided criteria with which to evaluate
> whether or not one or more contracts had been
> formed. (12/5/00 at 60-65).

Second, Advanta's discretion to award the 1998 bonus
to Riseman was not "absolute." *See Goldstein v.
Johnson & Johnson,* 251 F.3d 433, 444-46 & n. 7 (3d
Cir.2001) (even where party has "sole authority" or
"final and conclusive" authority to interpret agreement,
discretion must be exercised in good faith); *Sterling
Nat. Mortg. Co., Inc. v. Mortgage Corner, Inc.,* 97 F.3d
39, 44 (3d Cir.1996) (even where party has "total
discretion" or "unbounded discretion" under contract,
discretion must be exercised in good faith"). Under the
covenant of good faith and fair dealing, "[e]very
contract imposes upon each party a duty of good faith
and fair dealing in its performance and its
enforcement." Restatement (Second) of Contracts § 205
& Cmt. a. This implied duty may be breached where
there is "interference with or failure to cooperate in the
other party's performance." *Somers v. Somers,* 418
Pa.Super. 131, 136-39, 613 A.2d 1211, 1213-15
(1992).

*6 Consistent with its finding that there was no "good
faith" basis to withhold Riseman's wages under the
WPCL, and that Advanta's violation of the ADEA was
"willful," the jury was entitled to conclude that Advanta
denied Riseman the 1998 bonus in violation of the
covenant of good faith and fair dealing. Accordingly,
Advanta is not entitled to judgment as a matter of law
on this ground.

Finally, Advanta asserts that under the terms of the May
12, 1998 memorandum, Riseman was required to be
employed with Advanta on March 31, 1999. Riseman
did not fulfill this condition, argues Advanta, because
he was terminated before March 31, 1999. In spite of

Advanta's paraphrase, the March 31, 1999 condition
requires "being here at the time." (P-48). "It is
hornbook law that if the relevant terms in a contract are
ambiguous, the issue must go to a jury." *Emerson
Radio Corp. v. Orion Sales, Inc.,* 253 F.3d 159, 163 (3d
Cir.2001). With respect to the ambiguous phrase,
"being here at the time," Riseman testified that he had
to agree to stay with Advanta through March 31, 1999.
(11/14/00 at 145-51; 11/15/00 at 133-34).[FN5] The jury
could conclude that Riseman's agreement to stay with
Advanta during a crucial transition period satisfied this
contractual condition. *See Chuy v. Philadelphia Eagles
Football Club,* 595 F.2d 1265, 1271-73 (3d Cir.1979)
(*en banc* ).[FN6]

> **FN5.** "Being here at the time" is ambiguous
> because it is "capable of more than one
> reasonable interpretation." *Pacitti v. Macy's,*
> 193 F.3d 766, 773-75 (3d Cir.1999) (despite
> language reserving "sole discretion" to
> offeror, contract could have conveyed a
> definite promise). Considering the words of
> the contract, the alternative meaning suggested
> by counsel, and the objective evidence,
> Riseman offered a "reasonable alternative
> interpretation" of the phrase.
> *Bohler-Uddeholm America, Inc. v. Ellwood
> Group, Inc.,* 247 F.3d 79, 93-96, 100 (3d
> Cir.2001) (latent ambiguity requires
> "contractual hook"). For example, "being here
> at the time" could incorporate an implicit
> promise that Advanta would not prevent
> Riseman from "being here" in violation of
> federal law (ADEA).

> **FN6.** Advanta's memorandum of May 12,
> 1998 purported to reduce to writing an oral
> agreement reached two months earlier. If
> Advanta wanted to reserve the right not to pay
> the 1998 bonus through the simple expedient
> of terminating Riseman, it should have been
> more specific in the memorandum. Written
> contracts must be construed against the
> drafter, especially where the drafter is a
> sophisticated commercial entity. *See Pacitti,*
> 193 F.3d at 775 n. 5 (citing Pennsylvania law).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 6
Not Reported in F.Supp.2d, 2001 WL 1175126 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Alternatively, the jury could determine that the condition was excused. For example, the jury could decide that Advanta fired Riseman in violation of the ADEA, thereby preventing him from "being here at the time." *See* Restatement (Second) of Contracts § 225, Cmt. b; *McDermott v. Party City Corp.,* 11 F.Supp.2d 612, 621 (E.D.Pa.1998) ("If a party acts to hinder the satisfaction of a condition, the condition is excused."); *cf. Apalucci v. Agora Syndicate, Inc.,* 145 F.3d 630, 634 (3d Cir.1998) ("[W]hen one party to a contract unilaterally prevents the performance of a condition upon which his own liability depends, the culpable party may not then capitalize on that failure."); *Anthuis v. Colt Indus. Operating Corp.,* 971 F.2d 999, 1008 n. 8 (3d Cir.1992) (quoting 5 Williston on Contracts § 677, at 224 (3d ed. 1961)) ("It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance ... of a condition upon which his own liability depends, he cannot take advantage of the failure.").

Accordingly, judgment as a matter of law is not appropriate with respect to the 1998 bonus.

### (3) *Breach of Contract: 1997 Bonus*

Advanta contends that Riseman could not recover the 1997 bonus because Advanta Mortgage did not experience a "change of control," and the mere fact that Advanta awarded the bonus to employees whose business units did not experience a change of control does not entitle Riseman to a bonus as well. Judgment as a matter of law is not warranted.

The April 28, 1997 letter provided for a bonus of 200% of Riseman's salary if there were a "change of control affecting your group." (P-46). It is undisputed that the sale of Advanta's consumer credit card division to Fleet constituted a "change of control." In addition, there was ample evidence for the jury to conclude that this change of control affected Riseman's group, Advanta Mortgage.

**\*7** In 1998, after Advanta sold its consumer credit card division to Fleet, Advanta Mortgage became the most

important and profitable business unit at Advanta, representing 85% of the revenues, assets and profits of the entire corporation. (P-8; P-251; 11/20/00 at 87-88; 11/21/00 at 47-65). As the mortgage group assumed greater prominence within the company. Riseman's business and personal performance came under closer scrutiny from the Office of the Chair. (11/14/00 at 126, 145-47; 11/27/00 at 103; 11/29/00 at 129). The jury could conclude that such enhanced expectations from Advanta Mortgage and Riseman, precipitated by the sale of Advanta's consumer credit card division, was a change of control "affecting" Riseman's group. (11/14/00 at 132; 11/17/00 at 120, 138-66).[FN7] Judgment as a matter of law will not be granted.

> [FN7]. The fact that Advanta reserved "sole discretion" to determine whether the change of control affected Riseman's group is not dispositive. As with the 1998 bonus, the jury could have found that Advanta failed to exercise its discretion in good faith. *See, e.g., Germantown Mfg. Co. v. Rawlinson,* 341 Pa.Super. 42, 60-61, 491 A.2d 138, 148 (1985).

### (4) *Detrimental Reliance*

Finally, Advanta argues that a detrimental reliance claim should not have been submitted to the jury because Riseman did not refrain from seeking other employment. This contention fails because there was evidence to support detrimental reliance on other grounds. For instance, the jury could have found that Riseman worked harder, increased his flexibility and cooperation with management, or otherwise was induced into action or forbearance of a definite and substantial character in reliance on a bonus promise. *See JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc.,* 1998 WL 175888 \*3 (E. D.Pa.1998), *aff'd,* 178 F.3d 1279 (3d Cir.1999) (table); *Robert Mallery Lumber Corp. v. B & F Assocs., Inc.,* 294 Pa.Super. 503, 511-12, 440 A.2d 579, 582-83 (1982).[FN8] Accordingly, judgment as a matter of law is inappropriate.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 7
Not Reported in F.Supp.2d, 2001 WL 1175126 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

FN8. Advanta's fallback position that Riseman could not have "reasonably relied" on a discretionary promise also misses the mark. Riseman could have reasonably relied on Advanta's implicit promise to exercise its discretion in good faith.

Advanta has not demonstrated that the record is "critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1095 (3d Cir.1995); *Williamson v. Consolidated Rail Corp.,* 926 F.2d 1344, 1348 (3d Cir.1991). Therefore, I will deny the renewed motion for judgment as a matter of law.

*B. Advanta's Motion for New Trial*

Pursuant to Federal Rule of Civil Procedure 59, Advanta moves for a new trial on Riseman's claims of retaliation under the ADEA, breach of contract, detrimental reliance, and violation of the WPCL. Advanta argues that the damages verdict is against the weight of the evidence, and thus a new trial on damages and liability is warranted. This motion will be denied.

A motion for new trial based upon the weight of the evidence is entitled to great scrutiny because it invites the court to substitute its judgment for that of the jury. *See Wilburn v. Maritrans Gp. Inc.,* 139 F.3d 350, 363-64 (3d Cir.1998); *Delli Santi v. CNA Ins. Co.,* 88 F.3d 192, 201 (3d Cir.1996). Such a motion may be granted only if the court, in its discretion, finds that the jury's verdict represents a "miscarriage of justice," or cries out to be overturned because it "shocks the conscience." *Williamson v. Consolidated Rail Corp.,* 926 F.2d 1344, 1352-53 (3d Cir.1991); *Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 211 (3d Cir.1992).

**\*8** A motion for new trial is imbued with constitutional dimensions. *See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355 (1962) (Seventh Amendment requires jury to resolve disputed fact questions). If the verdict winner sets forth even a "minimally plausible" or "conceivable" way of

reconciling the jury's answers, the court is *"constitutionally bound"* to deny the motion. *McAdam v. Dean Witter Reynolds, Inc.,* 896 F.2d 750, 764-66 (3d Cir.1990) (emphasis in original). Because new trials "effect[ ] a denigration of the jury system" and "usurp[ ] the prime function of the jury as the trier of the facts," *Lind v. Schenley Indus., Inc.,* 278 F.2d 79, 88-91 (3d Cir.1960) (*en banc* ), the constitutional guarantees of the Seventh Amendment have "particular force" when a losing party attacks the weight of the evidence. *See Williamson,* 926 F.2d at 1348.

Advanta's motion for a new trial does not satisfy these procedural and constitutional standards.

*(1) Damages*

First, Advanta attacks the jury's damage award as "impossible." A damages verdict will be affirmed if " 'there is *any view* of the case which reconciles the [jury's] various answers.' " *McAdam v. Dean Witter Reynolds, Inc.,* 896 F.2d 750, 763 (3d Cir.1990) (emphasis in original) (quoting *Bradford-White Corp. v. Ernst & Whinney,* 872 F.2d 1153, 1159 (3d Cir.1989)). In reviewing the jury's verdict. I may not speculate as to what the jurors were "really" trying to do, or weigh the reasonableness of Riseman's view of the evidence against Advanta's view. *See id.* at 763-65. If Riseman's view is conceivable, the jury's verdict may not be disturbed.FN9

FN9. *Cf. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 364 (1962) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way."); *McAdam v. Dean Witter Reynolds, Inc.,* 896 F.2d 750, 764 (3d Cir.1990) (court is "under a constitutional mandate to search for a view of the case that makes the jury's answers consistent"); *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.,* 626 F.2d 280, 293 (3d Cir.1980) ("[if] there is at least one way to explain the jury's answers to the interrogatories, [court is] bound

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                            Page 8
Not Reported in F.Supp.2d, 2001 WL 1175126 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

to affirm them").

The jury awarded $3,939,126 in total damages, including $1.377,125 in back pay and $2.562,001 under the WPCL. The jury's award is consistent with the evidence and certainly does not "shock the conscience." First, the total award of $3,939,126 is reasonably close to what the damages expert suggested was appropriate under conservative assumptions. (12/1/00 at 89-95). Advanta presented no contrary damages expert.

Second, the $1,377,125 "back pay" award could have been computed under several scenarios. One possible method, suggested by Riseman, is the difference between the salary and AMIP bonus amounts Riseman could have earned at Advanta between October 1998 and December 2000, and the amounts he actually earned during this time. In 1998, Riseman received a 20% merit raise, from $325,000 to $385,000 in salary. (P-61G; 11/14/00 at 140). Considering the trend in Riseman's salary since 1992, as well as the mortgage unit's pivotal status after 1998, the jury could have projected similar increases for 1999 and 2000. With such raises, Riseman could earn a 1999 AMIP bonus of $462,000, a 2000 AMIP bonus of $554,400, and $360,725 more in Advanta base salary than he actually earned between October 1998 and December 2000. Alternatively, the jury could have awarded lower AMIP bonuses in 1999 and 2000, and found a higher salary differential between October 1998 and December 2000. In either case, $1,377,125 in "back pay" is justifiable.[FN10]

> **FN10.** This "back pay" hypothetical does not even include the 1997 bonus, the 1998 bonus, or the 1998 AMIP bonus. For instance, a bonus may have been denied before Riseman engaged in protected activity or, perhaps, denied in bad faith but not in retaliation for an age-discrimination complaint.

**\*9** Finally, the WPCL award of $2,562,001 could include $650,000 from the 1997 bonus, $400,000 from the 1998 bonus, plus an unliquidated amount from the 1998 AMIP bonus.[FN11] Advanta's post-trial position is that Advanta's AMIP bonus for 1998 was capped at

double his "target" bonus. However, Advanta points to no evidence establishing a conclusive cap on Riseman's AMIP bonus for that year. Also, while insisting that the jury should receive instructions on the parameters of the 1997 and 1998 bonuses, Advanta did not seek an instruction regarding any damages ceiling on the AMIP bonus. In fact, on December 5, 2000, when the jury asked where it could find Riseman's 1998 AMIP bonus in the evidence, Advanta agreed there was no document defining Riseman's 1998 AMIP bonus, and the jury was so instructed. (12/5/00 at 78-80). Thus, the jury conscientiously considered how much to award for Riseman's 1998 AMIP bonus, and reasonably could have believed there was no *per se* limit on the amount.[FN12]

> **FN11.** Because the verdict is most reasonably read without any overlapping "back pay" or WPCL components, an award of liquidated damages under ADEA and WPCL would not constitute "double recovery."

> **FN12.** Advanta did not even mention the AMIP bonus in its closing argument to the jury. (12/4/00 at 192-225).

The jury could award a 1998 AMIP bonus of $1,512,001, based upon Riseman's role at Advanta Mortgage and the company's overall performance. There was extensive evidence of how Riseman personally saved, turned around, and built the mortgage unit. (P-51-54; P-116; 11/14/00 at 105-125; 11/17/00 at 64-65; 11/20/00 at 61-63; 11/21/00 at 47-65). The jury learned that, under Riseman's leadership, Advanta Mortgage became the most important and profitable business unit at Advanta. By 1998, Advanta Mortgage alone constituted 85% of the revenues, assets and profits of the entire Advanta Corporation. (P-8; P-251; 11/20/00 at 87-88; 11/21/00 at 47-65). Based upon Advanta's financial performance in 1998, including the undeniable contribution of Riseman and Advanta Mortgage, the jury could have decided that a $1.5 million bonus was appropriate. Under the circumstances of this case, the jury's bonus award certainly does not "shock the conscience." *See Paolella v. Browning-Ferris, Inc.,* 158 F.3d 183, 189, 194-95 (3d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 9
Not Reported in F.Supp.2d, 2001 WL 1175126 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Cir.1998) (upholding front pay award that was "more than 17 times" the amount defendant claimed was supported by the evidence).[FN13]

> FN13. With respect to Advanta's key corporate executives, the jury was told of numerous instances in which Riseman's colleagues received sizable bonuses. For example, in 1998, executives Dennis Alter and William Rosoff each received $5 million bonuses, in addition to other bonuses plus base compensation. (11/17/00 at 141-42; 12/1/00 at 61-65; P-281 at 8-9). Apart from other compensation, Elizabeth Mai received a $1.5 million bonus. (11/17/00 at 139; 11/28/00 at 9; 11/29/00 at 226-27).

The law does not command mathematical precision in ascertaining damages from the evidence. *See Scully v. U.S. Wats, Inc.,* 238 F.3d 497, 515 (3d Cir.2001). When a jury restores a victim to the economic position he would otherwise have occupied, any imprecision in damages must be borne by the wrongdoer. *See Goss v. Exxon Office Systems Co.,* 747 F.2d 885, 889 (3d Cir.1984) ("The risk of lack of certainty with respect to projections of lost income must be borne by the wrongdoer, not the victim."); *Young v. Lukens Steel Co.,* 881 F.Supp. 962, 976 (E.D.Pa.1994) (" 'any ambiguity in what the claimant would have received but for the [retaliation] should be resolved against the [retaliating] employer' ") (citations omitted).

Moreover, "it is well accepted that a court will not inquire into the calculation methods employed by the jury during its deliberations." *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1279 n. 19 (3d Cir.1979) (*en banc* ). Instead, a court "must assume" that the jury acted rationally, " 'followed the court's instructions and arrived at a verdict based on those instructions." ' *Loughman v. Consol-Pennsylvania Coal Co.,* 6 F.3d 88, 102, 105 (3d Cir.1993) (citations omitted).

**\*10** Because the verdict does not represent an "impossible" application of the evidence to the instructions, a new trial will not be granted on this

basis.

### (2) *Severance*

Advanta also seeks a new trial because it believes that the jury may have awarded severance damages. This speculation does not warrant a new trial.

At summary judgment, the Court reserved the issue of severance damages for an ERISA bench trial, but did not state that severance was irrelevant to ADEA liability. Riseman subsequently introduced evidence of disparate severance pay as part of his ADEA case, without asking for severance in his damage calculations or closing argument. (12/4/00 at 191-92). Thus, the jury charge referred to severance as part of Riseman's liability claims, but not as an element of damages. (12/5/00 at 9-11, 54-60). For apparent strategic reasons, Advanta even declined the Court's invitation to instruct the jury not to award severance. (12/5/00 at 13-14). Accordingly, Advanta may not seek a new trial on this ground.

Advanta also argues that none of its former employees who received severance were "similarly situated" to Riseman. At trial, Riseman presented evidence that an executive discharged for theft, dishonesty and breach of trust (after only five months of work) had received substantial severance pay, whereas Riseman (who had been with Advanta for over five years) received no severance pay. (11/17/00 at 169-177). Whether such former Advanta employees were "similarly situated" to Riseman was a jury question. The admission of this evidence does not compel a new trial.

### (3) *ADEA "Back Pay"*

Advanta next contends that the 1997 bonus and 1998 bonus cannot be included in "back pay." I need not address this argument because the jury did not necessarily include either bonus in its "back pay" award. *See, e.g.,* Part II(B)(1), *supra.*

### (4) *ADEA "Front Pay"*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 10
Not Reported in F.Supp.2d, 2001 WL 1175126 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Advanta moves for a new trial with regard to ADEA "front pay," claiming: (1) Riseman waived his right to seek front pay through a comment at the pre-trial conference, (2) front pay is an equitable remedy that cannot be awarded by a jury, and (3) Riseman was not eligible for front pay because he had reestablished himself in the workforce. These arguments do not entitle Advanta to a new trial.[FN14]

> FN14. Because there is a possibility that the jury awarded "front pay," I will address Advanta's arguments.

*(i)* Waiver

First, Advanta contends that Riseman waived his right to seek front pay when one of his attorneys stated at the final pretrial conference that Riseman was not seeking reinstatement. In *Wehr v. Burroughs Corp.,* 619 F.2d 276, 283-84 & n. 18 (3d Cir.1980), the plaintiff waived front pay where his attorney specifically disclaimed reinstatement in a letter to the court.[FN15] However, in *Maxfield v. Sinclair Int'l,* 766 F.2d 788, 795-97 (3d Cir.1985), the Third Circuit distinguished *Wehr,* holding that the issue of front pay was preserved when plaintiff requested future damages in his complaint. Understandably, in this case, Riseman requested front pay rather than reinstatement.[FN16] Absent an unequivocal disclaimer such as the letter sent to the court in *Wehr,* Riseman did not waive his right to seek front pay.

> FN15. In *Wehr,* the Third Circuit did not hold that it would have been error for the district court to consider front pay, but only that the district court did not abuse its discretion in finding waiver. *See id.* at 284 n. 19.

> FN16. Reinstatement may not be feasible if there is "continuing hostility" and "animosity" between the parties or, alternatively, no position is available at the time of judgment. *See Pollard v. E.I. du Pont de Nemours & Co.,* 121 S.Ct. 1946, 1948 (2001); *Starceski,*

54 F.3d at 1103; *Maxfield,* 766 F.2d at 796. It was abundantly evident during this litigation (and in repeated settlement attempts) that there was irreparable animosity between the parties. Moreover, Advanta argued at trial that there would likely not be a position for Riseman because Advanta was contemplating the sale of its mortgage company. Reinstatement was not feasible in this case, and no party has ever argued otherwise.

*(ii)* Awarded by the Jury

**\*11** Advanta goes on to assert that front pay is an equitable remedy which cannot be awarded by the jury. This argument is foreclosed by controlling Third Circuit precedent.

It is for the court to decide whether reinstatement is feasible and, if not, whether front pay should be awarded in lieu of reinstatement. *See Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1103 (3d Cir.1995); *Blum v. Witco Chemical Corp.,* 829 F.2d 367, 374 (3d Cir.1987). However, once the court decides that reinstatement is not feasible, the amount of damages to be awarded as front pay becomes a jury question. *See Blum,* 829 F.2d at 374 n. 4; *Maxfield,* 766 F.2d at 796.

*(iii)* Eligibility for Front Pay

Finally, Advanta claims that Riseman was not eligible for front pay as a matter of law. A monetary substitute for the equitable remedy of reinstatement, front pay is designed to restore the victim of an employer's unlawful conduct to the position he would have otherwise occupied. *See Pollard v. E.I. du Pont de Nemours & Co.,* 121 S.Ct. 1946, 1950 (2001); *Maxfield,* 766 F.2d at 795-96. Advanta argues that Riseman was not eligible for this "make-whole" remedy because he reestablished his rightful place in the workforce. *See Goss v. Exxon Office Systems Co.,* 747 F.2d 885, 889-90 (3d Cir.1984) (in business sales context where plaintiff reestablished herself, district court did not abuse discretion in limiting front pay award to four months). But whether Riseman had reestablished his

Not Reported in F.Supp.2d                                                                                  Page 11
Not Reported in F.Supp.2d, 2001 WL 1175126 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

rightful place in the workforce (and, if so, when) was a jury question. To the extent the jury awarded front pay, it resolved this issue against Advanta.

Advanta also challenges Riseman's request that he be awarded front pay to age 70 or 75. *See Anastasio v. Schering Corp.,* 838 F.2d 701, 709-10 (3d Cir.1988) (where jury findings were consistent with decision that plaintiff would have retired before age 70, ADEA did not "guarantee ... an annuity to age 70"). Given that Riseman was 64 years of age at the time of trial, a front pay award up to age 70 or 75 would not be inappropriate as a matter of law. *See Feldman v. Philadelphia Housing Auth.,* 43 F.3d 823, 832-33, 841 (3d Cir.1995) (upholding 38 year-old's front pay award to retirement age of 65); *Blum,* 829 F.2d at 375-76 (failure to award front pay to 63 year-old until normal retirement age could constitute abuse of discretion)[FN17]

> FN17. Whether or not Riseman testified about a specific intention to retire on a particular date, there was sufficient evidence for the jury to calculate a reasonable front pay award. *See Gorniak v. National R.R. Passenger Corp.,* 889 F.2d 481, 486-87 (3d Cir.1989).

For these reasons, the submission of Riseman's front pay claim to the jury does not merit a new trial.

### (5) *Breach of Contract*

Advanta seeks a new trial on Riseman's breach of contract claims for substantially the reasons argued in its motion for judgment as a matter of law. To the extent Advanta relies upon its discretion to deny the 1997 and 1998 bonuses, the retention of discretion did not give Advanta license to act in bad faith. In view of the substantial evidence that Advanta had been satisfied with Riseman's performance from 1992 to 1997, the jury could have concluded that Advanta's purported dissatisfaction with Riseman in 1998 was not genuine. There was also sufficient evidence for the jury to decide that all contractual conditions were satisfied or excused.

*12 Advanta's only other basis for seeking a new trial

on breach of contract is that the jury charge did not enumerate the specific conditions applicable to each of the contracts. Where an objection to a jury charge has been preserved, the court must ask whether the charge, " 'taken as a whole, properly apprises the jury of the issues and the applicable law.' ' *Watson v. Southeastern Pennsylvania Transp. Auth.,* 207 F.3d 207, 212 (3d Cir.2000), *cert. denied,* 121 S.Ct. 1086 (2001); *Smith v. Borough of Wilkinsburg,* 147 F.3d 272, 275 (3d Cir.1998); *Limbach Co. v. Sheet Metal Workers Int'l Ass'n, AFL-CIO,* 949 F.2d 1241, 1259 n. 15 (3d Cir.1991) (*en banc* ).

The Court's charge met that standard. The jury instructions avoided reciting either parties' characterizations of the facts, but informed the jury of the issues and applicable law. Advanta had every opportunity to explain the contractual conditions, as it viewed them, to the jury. A new trial on breach of contract is not required.

### (6) *WPCL*

With respect to the WPCL, Advanta moves for a new trial on three grounds: (1) Riseman's bonuses were not "earned" within the meaning of the WPCL, (2) the jury was not given a specific instruction on the definition of "good faith," and (3) the jury was not instructed that Riseman had the burden to prove lack of good faith by "clear and convincing" evidence. None of these assertions compel a new trial.

### (i) Riseman's Bonuses Were "Earned"

Advanta argues that Riseman's 1998 bonus and 1998 AMIP bonus were not "earned" within the meaning of the WPCL. Under the WPCL, "[w]henever an employer separates an employe from the payroll, or whenever an employe quits or resigns his employment, the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable." 43 P.S. § 260.5(a). The WPCL does not create a substantive right to compensation, but rather a statutory remedy for an employer's breach of

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1175126 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

contractual obligation to pay wages. *See Weldon v. Kraft, Inc.,* 896 F.2d 793, 801 (3d Cir.1990); *Kafando v. Erie Ceramic Arts Co.,* 764 A.2d 59, 61 (Pa.Super.2000).

The term "wages" includes "fringe benefits or wage supplements" which, in turn, includes any amount to be paid pursuant to an agreement between the employer and the employee. *See* 43 P.S. § 260.2a. To the extent Riseman's bonuses were to be paid pursuant to an agreement with Advanta, they were statutory "wages" (as well as "fringe benefits or wage supplements") under the WPCL. Although several courts have determined that "wages" must be "earned" to be recoverable under section 260.5(a), at least one district court in this Circuit has held that "fringe benefits or wage supplements" need not be "earned." *See Bowers v. NETI Technologies, Inc.,* 690 F.Supp. 349, 353 n. 5 (E.D.Pa.1988) ("earned" requirement significantly absent from 43 P.S. § 260.3(b)).[FN18] Under this WPCL interpretation, Riseman need not have "earned" any bonuses that fit the definition of "fringe benefits or wage supplements."

> FN18. In two of its most recent cases interpreting the WPCL, the Pennsylvania Superior Court recognized *Bowers* specifically. *See Kafando v. Erie Ceramic Arts Co.,* 764 A.2d 59, 63 (Pa.Super.2000); *Hartman v. Baker,* 766 A.2d 347, 353 (Pa.Super.2000), *appeal denied,* 764 A.2d 1070 (2000).

*13 However, assuming that Riseman's bonuses had to be "earned," the jury could have decided that Riseman earned his bonuses. "The contract between the parties governs in determining whether specific wages are earned." *Weldon,* 896 F.2d at 801; *Gautney v. Amerigas Propane, Inc.,* 107 F.Supp.2d 634, 646 (E.D.Pa.2000). The jury could conclude that when Advanta unlawfully terminated Riseman under the ADEA and breached its bonus agreements, Riseman had a vested contractual entitlement to bonuses for work already performed-not merely a contractual expectation to earn wages in the future. *See Regier v. Rhone-Poulenc Rorer, Inc.,* 1995 WL 395948 *8 (E.D.Pa.1995), *aff'd,* 92 F.3d 1172 (3d

Cir.1996) (table) (assuming that "fringe benefits or wage supplements" must be earned, they are "earned" when plaintiff renders sufficient services for contractual rights to vest); *see also Kofsky v. Chemical Residential Mortg. Corp.,* 1999 WL 1016976 *4-5 (E.D.Pa.1999) (viability of contract claim for commissions precluded summary judgment on WPCL claim).[FN19]

> FN19. In this case, Riseman did not seek to recover salary and commissions that would have been earned after his separation from Advanta, but rather to recover bonuses for work that was already substantially performed when Advanta breached its part of the bargain. *Compare Sendi v. NCR Comten, Inc.,* 619 F.Supp. 1577 (E.D.Pa.1985), *aff'd,* 800 F.2d 1138 (3d Cir.1986) (table) (since WPCL does not govern wages agreed to be paid in the future for services to be rendered in the future, plaintiff could not recover commissions on sales that would have been consummated after his termination date).

This conclusion is reinforced by several factors. First, the civil provisions of the WPCL must be liberally construed to effectuate their remedial purpose and "promote justice." *See* 1 Pa.C.S.A. § 1928(c); *Regier,* 1995 WL 395948 *6; *Bowers,* 690 F.Supp. at 354. The underlying purpose of the WPCL is to remove some of the obstacles employees face in litigation, by providing them with a statutory remedy to recover contractual wages from an employer. *See Barnhart v. Compugraphic Corp.,* 936 F.2d 131, 133-34 (3d Cir.1991); *Oberneder v. Link Computer Corp.,* 548 Pa. 201, 206, 696 A.2d 148, 151 (1997); *Hartman v. Baker,* 766 A.2d 347, 352-53 (Pa.Super.2000), *appeal denied,* 764 A.2d 1070 (2000). At the same time, the mere fact that Riseman was no longer employed by Advanta after October 1998 is not controlling. *See Scully v. U.S. Wats, Inc.,* 238 F.3d 497, 517-18 (3d Cir.2001) (where defendant discharged plaintiff and prevented him from exercising stock options while on the payroll, ex-employee had "earned" stock options within the meaning of the WPCL).

Under the constellation of facts and findings in this

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1175126 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 13

case, the jury could have concluded that Riseman "earned" the 1997 bonus, the 1998 bonus and the 1998 AMIP bonus within the meaning of the WPCL.

*(ii)* Definition of "Good Faith"

Advanta alternatively challenges the Court's award of liquidated damages pursuant to the jury's finding that Advanta did not withhold wages in "good faith." Where wages remain unpaid for thirty days beyond the regularly scheduled payday, an employee can recover liquidated damages equal to 25% of the wages due, unless there is a "good faith contest or dispute" about the wage claim. *See* 43 P .S. § 260.10. The jury found that Advanta had no "good faith" basis to withhold Riseman's wages under the WPCL. Advanta now argues that the jury was without proper guidance on the meaning of "good faith."

**\*14** In the first place, Advanta did not submit a proposed jury instruction concerning the "good faith" issue. Advanta did not address the "good faith" issue at all until shortly before the jury was to receive its instructions, after the charging conferences and review of the charge itself had been completed. (12/4/00 at 136-45; 12/5/00 at 37). Moreover, Advanta's argument lacks merit. The WPCL does not provide a statutory definition of "good faith." *See* 43 P.S. § 260.2a.[FN20] Because juries are sufficiently equipped to understand and apply this term, the verdict does not represent a "miscarriage of justice."

FN20. As neither the WPCL nor decisional law have defined "good faith," the Pennsylvania Superior Court recently consulted Black's Law Dictionary. *See Hartman v. Baker,* 766 A.2d 347, 354 n. 3 (Pa.Super.2000), *appeal denied,* 764 A.2d 1070 (2000). Black's definition of "good faith" does not deviate from an ordinary understanding of the term. *See, e.g.,* Webster's Ninth New Collegiate Dictionary 527 (9 th ed.1984). In addition, Black's definition references the covenant of good faith and fair dealing, about which the jury was instructed.

*See* Black's Law DictionaryNARY 701 (7th ed.1999).

*(iii)* "Clear and Convincing" Evidence

Finally, Advanta claims that the Court should have instructed the jury that Riseman was required to prove lack of good faith by "clear and convincing" evidence. For this proposition, Advanta cites *Hartman v. Baker,* 766 A.2d 347 (Pa.Super.2000), *appeal denied,* 764 A.2d 1070 (2000). However, *Hartman* did not place the burden of proof on the employee to prove bad faith. Instead, *Hartman* assumed that the employer bore the burden to prove good faith by clear and convincing evidence. *See id.* at 353-54. Advanta could not have been prejudiced by the absence of an instruction requiring *it* to prove good faith by clear and convincing evidence.

Accordingly, none of Advanta's claims concerning the WPCL earn it a new trial.

*(7) Admissions*

Advanta argues next that the Court should have prevented Riseman from impeaching its witnesses with "admissions" contained in Advanta's pleadings and in a reply brief. Advanta says its lawyers' statements that Riseman had been "terminated" and "fired" were not judicial admissions. A new trial is not mandated on this basis because no legal error occurred, and it is "highly probable" that the ruling did not "affect the outcome of the case." *McQueeney v.. Wilmington Trust Co.,* 779 F.2d 916, 917 (3d Cir.1985).

" 'A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." ' *Schott Motorcycle Supply, Inc. v. American Honda Motor Co., Inc.,* 976 F.2d 58, 61 (1 st Cir.1992) (citing Second, Fifth, Sixth, and Eighth Circuits). While emphasizing that Advanta did not sign its attorneys' Answer to the Complaint and Amended Complaint, Advanta concedes that its Answer is a pleading. The pleading that Riseman was "terminated" can reasonably be construed as an assertion of fact. *See id.* at 61 (statement that "contract"

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 14
Not Reported in F.Supp.2d, 2001 WL 1175126 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

existed between the parties construed as "factual" assertion).[FN21]

> FN21. In the context of this case, a statement that Riseman was "terminated," or even "fired," is not a legal conclusion. The jury received instructions about Advanta's right to fire Riseman, and no wrongful discharge claim was presented at trial. (12/5/00 at 56). The ultimate legal issue was whether Riseman experienced "discrimination" or "retaliation." *Compare Giannone v. U.S. Steel Corp.,* 238 F.2d 544, 548 (3d Cir.1956) (affirming exclusion of select language from third-party complaint that charged third-party defendant with "negligence," where third-party plaintiff/defendant did not itself admit any "negligence").

Furthermore, it does not appear that Advanta was pleading a defense "alternately or hypothetically" under Federal Rule of Civil Procedure 8(e)(2). *See* Charles Alan Wright & Arthur R. Miller, 5 Federal Practice and Procedure § 1282 at 525 (West.2d ed.1990)(alternative pleading drafted in terms of "either-or," and hypothetical pleading formulated as "if-then"). Thus, the admission of Advanta's statements is not in tension with Rule 8(e)(2). *See Giannone v. U.S. Steel Corp.,* 238 F.2d 544, 547-48 (3d Cir.1956) (noting possible tension between admission of pleadings and Rule 8(e)(2), but declining to resolve the issue).[FN22]

> FN22. The parallel statement in Advanta's reply brief was cumulative and otherwise independently admissible. *See, e.g.,* Fed.R.Evid. 801(d)(2); *American Title Ins. Co. v. Lacelaw Corp.,* 861 F .2d 224, 226-27 (9 th Cir.1988); *U.S. v. Kattar,* 840 F.2d 118, 130-31 (1 st Cir.1988). It would be anomalous to admit statements of corporate employees as substantive evidence, but not to admit statements by the company's attorney, during the instant litigation, for impeachment. *See Zipf v. American Tel. & Tel. Co.,* 799 F.2d 889, 894-95 & n. 8 (3d Cir.1986); *U.S. v.*

*Johnson,* 752 F.2d 206, 210-11 (6 th Cir.1985). Moreover, through further examination and argument, Advanta had every opportunity to place the alleged "admissions" in context. *Cf. Derby & Co., Inc. v. Seaview Petroleum Co.,* 756 F.Supp. 868, 877 (E.D.Pa.1991) (inconsistent statement made in other litigation should be weighed along with all other evidence).

**\*15** Accordingly, the factual statements contained in Advanta's pleadings and reply brief were admissible for impeachment purposes. *See Giannone,* 238 F.2d at 547 (even withdrawn or superseded pleadings are admissible); *Johnson v. Goldstein,* 864 F.Supp. 490, 492-93 (E.D.Pa.1994), aff'd, 66 F.3d 311 (3d Cir.1995) (table); *Gerlach v. Volvo Cars of North America,* 1997 WL 129004 *4 n. 2 (E.D.Pa.1997) (citing Second and Third Circuits); *U. S. v. Owens Contracting Services, Inc.,* 884 F.Supp. 1095, 1108 (E.D.Mich.1994) (citing Sixth and Ninth Circuits).

In any event, it is highly probable that the outcome of the case did not depend upon this evidence. While the jurors asked for an exhibit number because they were "unable to find letter from Mr. Goldich stating Mr. Riseman was 'fired,' " the Court informed the jury that no such letter existed. (Docket Entry # 161, Question 2). With this response, the jury returned to its deliberations and did not inquire about the matter further. (12/5/00 at 74-80). Moreover, Advanta was not judicially estopped from arguing that Riseman had "resigned," and any statement that Riseman had been "terminated" or "fired" was not deemed conclusive. *Compare Travelers Indem. Co. v. Engel,* 1994 WL 398788 * 3-4 (E.D.Pa.1994) (admission in defendant's Answer deemed conclusive, even though post-pleading affidavit contradicted admission).

Because the challenged evidentiary rulings were correct, and it is highly probable that they did not affect the outcome in any event, a new trial is not warranted.

(8) *Deposition Transcripts*

Finally, Advanta complains that it was not allowed to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 15
Not Reported in F.Supp.2d, 2001 WL 1175126 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

read excerpts from certain deposition transcripts showing that Riseman had explored potential employment with Providian Financial Corporation. Advanta claims that if the jury had heard these excerpts, it might have found against Riseman on detrimental reliance. However, besides foregoing employment, Riseman could have worked harder at Advanta, increased his flexibility and cooperation with management, or otherwise incurred substantial detriment in reliance on a bonus promise. Given the slight probative value of the deposition excerpts and the late hour at which Advanta proposed to read them to the jury, it was a permissible exercise of discretion to exclude this evidence.

None of Advanta's grounds for a new trial meet the procedural and constitutional standards governing this motion. Because I do not find that the jury's verdict represents a "miscarriage of justice," or "shocks the conscience," the motion for a new trial will be denied. *Delli Santi v. CNA Ins. Co.,* 88 F.3d 192, 201-02 (3d Cir.1996); *Olefins Trading, Inc. v. Han Yang Chem Corp.,* 9 F.3d 282, 289-90 (3d Cir.1993); *Williamson v. Consolidated Rail Corp.,* 926 F.2d 1344, 1352-54 (3d Cir.1991); *McAdam v. Dean Witter Reynolds, Inc.,* 896 F.2d 750, 763-66 (3d Cir.1990); *Lind v. Schenley Indus., Inc.,* 278 F.2d 79, 88-91 (3d Cir.1960).[FN23]

> **FN23.** Advanta's catch-all argument that the verdict is the product of jury passion and prejudice against a large corporation is without merit. The Court specifically instructed the jury: "All persons, including individuals and corporations, stand equal before the law. Sympathy for any party or prejudice against any party should play no part in your deliberations or in your decision." (12/5/00 at 44). Thus, the jury charge stated, and subsequently reiterated, the need for fair and dispassionate consideration of all evidence. (12/5/00 at 59, 72). Moreover, the jury's finding on age discrimination undercuts Advanta's claim of widespread bias and confusion.

*C. Riseman's Motion for New Trial*

**\*16** Riseman moves for a new trial on his age-discrimination claim against Advanta, his detrimental reliance claim against the individual defendants, and his fraud and negligent misrepresentation claims against all defendants. This motion will be denied.

The sole basis for Riseman's motion with respect to age discrimination is that he was unable to obtain certain information during discovery. However, Riseman can point to no error in the Court's discovery rulings that would warrant a new trial on age discrimination. *See Hewlett v. Davis,* 844 F.2d 109, 113-14 (3d Cir.1988); *In re Fine Paper Antitrust Litig.,* 685 F.2d 810, 817-18 (3d Cir.1982).[FN24]

> **FN24.** "In the event of a new trial," Riseman suggests that the jury should be instructed according to the burdens applicable in a "mixed motives" case, as opposed to a "pretext" case. *Compare Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989), *with McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). However, Riseman has not moved for a new trial on this basis (nor would such a motion succeed, *see, e.g.,* 12/1/00 at 170-75), and I need not decide whether a "mixed motives" instruction would be appropriate in the context of a new trial. *See generally Walden v. Georgia-Pacific Corp.,* 126 F.3d 506, 512-16 (3d Cir.1997).

Riseman also moves for a new trial on his detrimental reliance claim against the individual defendants. A detrimental reliance claim was submitted to the jury against the corporate defendants, but not the individual defendants, because Riseman's claim sounded in contract. *See* Restatement (Second) of Contracts § 90(1) & Cmt. d. (12/4/00 at 3, 8-9). As determined at summary judgment, the individual defendants could not be held liable for Advanta's contractual damages. *See, e.g., American Guarantee and Liability Ins. Co. v. Fojanini,* 90 F.Supp.2d 615, 623 n. 14 (E.D.Pa.2000) (corporate officers liable for corporate contracts if they are signatories in an individual capacity, or can be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1175126 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

reached under veil-piercing or participation theories); *Harris v. Madison,* 1998 WL 518181 * 2 (E.D.Pa.1998); *B & L Asphalt Indus., Inc. v. Fusco,* 753 A.2d 264, 270 (Pa.Super.2000). Riseman's argument that detrimental reliance is an "equitable remedy" does not suffice to make the individual defendants liable for contractual damages of the corporation.

Finally, Riseman moves for a new trial on his fraud and negligent misrepresentation claims. To recover for fraud or negligent misrepresentation, Riseman was required to demonstrate that he justifiably relied upon a false statement or promise, and that he suffered damages as a proximate result of this reliance. *See Gibbs v. Ernst,* 538 Pa. 193, 207-10, 647 A.2d 882, 889-90 (1994); *Delahanty v. First Penn. Bank, N.A.,* 318 Pa.Super. 90, 108, 464 A.2d 1243, 1252 (1983). Riseman argues that he refrained from looking for another job because of Advanta's bonus promises, and thus suitable alternative employment was not available for eight months after he was terminated.

However, Riseman failed to produce any evidence of a job that would have been offered to him, and which he would have accepted, in or around October 1998. Indeed, after resting his case, Riseman could point to no evidence of alternative employment that he could and would have obtained. (12/4/00 at 4-7). Nor was there evidence that Advanta's bonus promises proximately caused an eight month period of unemployment. The jury should not have been invited to guess whether some unidentified position existed that Riseman could have accepted in October 1998, and to surmise that Advanta's bonus offers caused Riseman's subsequent unemployment. *See Yerger v. Landis Mfg. Systems, Inc.,* 1989 WL 66443 * 6 (E.D.Pa.1989), *aff'd,* 924 F.2d 1050 (3d Cir.1990) (table) ("jury cannot be allowed to speculate on whether there were available to plaintiff other suitable employment opportunities, whether he would have obtained some unidentified position, and if so, how much he would have been paid").

**\*17** Wholly apart from the issues of justifiable reliance and proximate causation, Riseman did not introduce evidence of the difference between the amounts he earned at Advanta and what he would have earned at a

position commencing in or around October 1998. Since Riseman earned more at Advanta than he has earned elsewhere, the mere fact that Riseman remained with Advanta for an additional period of time cannot constitute financial injury. *See Surovcik v. D & K Optical, Inc.,* 702 F.Supp. 1171, 1177-78 (M.D.Pa.1988) (delay of employment search lacked sufficient nexus to alleged misrepresentation and did not establish actual pecuniary loss); *Engstrom v. John Nuveen & Co., Inc.,* 668 F.Supp. 953, 963 (E.D.Pa.1987) (remaining with employer who promised excellent salaries, bonuses and promotions, without evidence that plaintiff refused offers of comparable work, cannot constitute financial detriment).

Given the wealth of evidence presented to the jury, there can be no basis for a new trial on Riseman's age-discrimination claim. Moreover, judgment as a matter of law was properly granted with respect to Riseman's detrimental reliance claim against the individual defendants. and fraud and negligent misrepresentation claims. Riseman was fully heard on the issues, and there was no legally sufficient evidentiary basis for a reasonable jury to have found in his favor. *See* Fed.R.Civ.P. 50(a)(1); *Northview Motors, Inc. v. Chrysler Motors Corp.,* 227 F.3d 78, 88 (3d Cir.2000); *Marinelli v. City of Erie,* 216 F.3d 354, 359 (3d Cir.2000). Accordingly, Riseman's motion for a new trial will be denied.

An appropriate Order follows.

### ORDER

AND NOW, this 7 <sup>th</sup> day of September 2001, it is ORDERED that:
(1) Defendants' Motion for Judgment as a Matter of Law (Docket Entry # 171) is DENIED.
(2) Defendants' Motion for New Trial (Docket Entry # 172) is DENIED.
(3) Plaintiff's Motion for New Trial (Docket Entry # 174) is DENIED.

E.D.Pa.,2001.
Riseman v. Advanta Corp.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 17
Not Reported in F.Supp.2d, 2001 WL 1175126 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**


Not Reported in F.Supp.2d, 2001 WL 1175126
(E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2001 WL 34905567 (Trial Motion, Memorandum and
Affidavit) Defendants' Supplemental Memorandum of
Law in Support of Motion for Summary Judgment on
Plaintiff's Erisa Claims (Jan. 16, 2001) Original Image
of this Document (PDF)

• 2000 WL 34627836 (Trial Motion, Memorandum and
Affidavit) Memorandum of Law in Support of
Defendants' Renewed Motion for Judgment as a Matter
of Law (Dec. 20, 2000) Original Image of this
Document (PDF)

• 2000 WL 34627837 (Trial Motion, Memorandum and
Affidavit) Defendants' Memorandum of Law in Support
of Motion for A New Trial (Dec. 20, 2000) Original
Image of this Document (PDF)

• 2000 WL 34627835 (Trial Motion, Memorandum and
Affidavit) Defendants' Response and Objection to
Riseman's Motion in Limine to Preclude Defendants
from Reading or Referring to the Deposition Testimony
of John Clark, John Rogers and Dana Burns at the Trial
of This Matter (Nov. 17, 2000) Original Image of this
Document (PDF)

• 2000 WL 34627839 (Trial Motion, Memorandum and
Affidavit) Defendants' Reply in Support of Defendants'
Motion for Summary Judgment (Sep. 1, 2000) Original
Image of this Document (PDF)

• 2000 WL 34617487 () (Report or Affidavit) (Aug. 21,
2000) Original Image of this Document (PDF)

• 2000 WL 34627838 (Trial Motion, Memorandum and
Affidavit) Memorandum in Law in Support of
Defendants' Motion for Summary Judgment (Jul. 10,
2000) Original Image of this Document (PDF)

• 1999 WL 34010258 (Trial Motion, Memorandum and
Affidavit) Defendants' Motion to Dismiss Counts III
Through VIII of Plaintiff's Complaint (Feb. 22, 1999)
Original Image of this Document (PDF)

• 1998 WL 34376873 () (Transcript) (1998) Original
Image of this Document (PDF)

• 1998 WL 34376874 () (Transcript) (1998) Original
Image of this Document (PDF)


END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on

June 7, 2006, I electronically filed this **Pleading** with the Clerk of the Court using CM/ECF

which will send notification of such filing to the following:


Ralph K. Durstein III, Esquire
Department of Justice
Carvel State Office Building
820 N. French Street
Wilmington, DE 19801

James E. Liguori, Esquire
Liguori, Morris & Yiengst
46 The Green
Dover, DE 19901


/s/ Stephen J. Neuberger
**STEPHEN J. NEUBERGER, ESQ.**


Conley/ Pleadings / Conley - MtoD AB.final


11