IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CAPTAIN BARBARA L. CONLEY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | C.A.No.04-1394-GMS |
| | : | |
| **COLONEL L. AARON CHAFFINCH,** individually, | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**PLAINTIFF'S BENCH MEMO ON THE ISSUE OF WHY THERE IS MORE THAN SUFFICIENT EVIDENCE TO SUPPORT AN AWARD OF PUNITIVE DAMAGES**

   **A. Introduction.** The record is more than sufficient for the issue of punitive damages to be submitted to the jury. During trial, plaintiff has offered evidence of reckless, callous, intentional and malicious behavior by defendant Chaffinch, entitling plaintiff to have the punitive damages issue submitted to the jury. This evidence includes the following:

- Chaffinch admits he his aware of the laws which forbid gender discrimination in employment. But there is more than sufficient evidence to support a jury finding that defendant discriminated against plaintiff anyway, despite his knowledge of the law. This is <u>reckless</u> and <u>intentional</u> behavior.

- Major Baylor testified that Chaffinch called plaintiff a "bitch" in the same time frame during which he refused to promote her to the rank of Major. This is direct evidence of <u>malice</u> and <u>ill will</u>.

- The record contains abundant evidence of Chaffinch's hostile statements about women, as well as his degrading limericks which he tells both on and off duty. This is evidence of <u>intentional</u> discrimination.

- Chaffinch claims plaintiff is the worst Trooper in the history of the DSP. However, none of his criticisms are anywhere to be found in plaintiff's performance evaluations from throughout her career. Prevarications such as this are proof of <u>malice</u>.

- Chaffinch also claims that plaintiff was not promoted to Major because she has

had serious performance issues for 24 years. However, if plaintiff had such serious performance issues, she never would have been promoted to Trooper First Class, then to Corporal, then to Lieutenant, and finally to Captain. Resort to such a pretextual explanation is like flight from the scene of the crime, which itself indicates <u>intent</u> and consciousness of guilt.

**B. The Law of Punitive Damages.**

**1. The Leading <u>Smith</u> Decision.** The leading case on the issue of punitive damages is <u>Smith v. Wade</u>, 461 U.S. 30 (1983). <u>Smith</u> was a § 1983 action arising from a brutal assault against a youthful first offender while in a juvenile reformatory. A jury awarded $25,000 in compensatory damages to the youth as well as $5,000 in punitives. The defendant appealed the punitive damages award on two grounds. First, he argued that the proper test for punitive damages is one of "actual malicious intent - ill will, spite, or intent to injure." <u>Id.</u> at 37-38. (internal punctuation omitted). Second, that the requisite standard for punitive damages had to be higher than the liability standard. <u>Id.</u> at 38. The Supreme Court explicitly rejected both of these arguments. <u>Id.</u> at 56.

**a. Recklessness is all that is Needed.** As to the first argument, the Supreme Court extensively surveyed the common law both at the time and since the enactment of § 1983 in 1871, <u>id.</u> at 39-51, and found that

> we are content to adopt the policy judgment of the common law - that reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages.

<u>Id.</u> at 51. The Court rejected the defendants' contentions that the higher standard of "actual malicious intent - ill will, spite, or intent to injure," <u>id.</u> at 37-38 (internal punctuation omitted), were prerequisites for punitive damages and instead held that although these would warrant consideration of punitive damages, "reckless or callous indifference to the federally protected rights of others" is all that is needed as an alternative basis for punitive damages. <u>Id.</u> at 56.

2

**b. The Punitive Damages Standard Need Not Be Higher Than the Liability Standard.** The Court also rejected the defendant's second argument that "the threshold for punitive damages" had to be higher "than the underlying standard for liability in the first instance." Id. at 51. The Court observed that "[t]here has never been any general common-law rule that the threshold for punitive damages must always be higher than that for compensatory liability." Id. at 53. Continuing, the Court found "society has an interest in deterring all intentional or reckless invasions of the rights of others, even though it sometimes chooses not to impose any liability for lesser degrees of fault." Id. at 54-55.

**2. None of the Four Kolstad Exceptions to the General Rule Apply.** In Kolstad v. American Dental Assoc., 527 U.S. 526 (1999), the Supreme Court carved out four narrow exceptions to the Smith general rule. They are:

> (1) When the employer is simply unaware of the relevant federal prohibition,
>
> (2) When the employer discriminates with the distinct belief that its discrimination is lawful,
>
> (3) When the underlying theory of discrimination is novel or is otherwise poorly recognized, or
>
> (4) When the employer reasonably believes that its discrimination satisfies a bona fide occupational qualification defense or other statutory exception to liability.

Id. at 536.

None of these exceptions apply to our present case. The first exception does not apply because Chaffinch admits he knows he cannot discriminate against women in promotions. The second exception does not apply because as discussed at section **A** above, plaintiff has offered abundant evidence sufficient to demonstrate Chaffinch's discriminatory animus towards women, which in turn demonstrates he was not acting in good faith. The third exception does not apply

either because our theory of gender discrimination in promotions is neither new nor novel. Lastly, the fourth exception does not apply because there are no statutory exemptions to the Fourteenth Amendment's prohibition on gender discrimination by public officials such as defendant.

      **3. <u>Smith</u> is Still Good Law.** Importantly, none of the Supreme Court cases dealing with punitive damages since <u>Smith v. Wade</u> have overruled its holding. Rather, these cases either discuss the <u>Smith</u> standard, as in <u>Kolstad</u>, 527 U.S. 526, or deal with the entirely separate issue of Constitutional limitations on the size of the award of punitive damages, <u>not</u> the jury's ability to award punitive damages themselves. See <u>Browning-Ferris Indus. v. Kelco Disposal</u>, 492 U.S. 257 (1989) (Eighth Amendment Excessive Fines Clause); <u>Pacific Mutual Life Insur. Co. v. Haslip</u>, 499 U.S. 1 (1991) (Fourteenth Amendment Due Process); <u>TXO Produc. Corp. v. Alliance Resources Corp.</u>, 509 U.S. 443 (1993) (same); <u>Honda Motor Co. v. Oberg</u>, 512 U.S. 415 (1994) (same); <u>BMW of North America v. Gore</u>, 517 U.S. 559 (1996) (same).

      Accordingly, "intentional violations of federal law" are sufficient to trigger a jury's consideration of the appropriateness of punitive damages. <u>Smith</u>, 461 U.S. at 51. In the same way, "a jury may assess punitive damages in a civil rights action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." <u>Alexander v. Riga</u>, 208 F.3d 419, 430-31 (3d Cir. 2000) (quoting <u>Smith</u>, 461 U.S. at 56) (internal punctuation omitted). Thus, "the defendant's conduct must be, at a minimum, reckless or callous." <u>Savarese v. Agriss</u>, 883 F.2d 1194, 1204 (3d Cir. 1989); <u>accord</u> <u>Kolstad</u>, 527 U.S. at 536 (noting that at a minimum, <u>Smith</u> requires "recklessness in its subjective form"). Obviously then, punitives also are permitted "if the conduct is intentional or motivated by evil motive, but the defendant's actions need not meet

4

this higher standard." <u>Savarese</u>, 883 F.2d at 1204.

To the extent defendant will somehow claim that none of this is good law, helpfully, as the Third Circuit explained in a recent decision a few short months ago, the "jury may award punitive damages when it finds reckless, callous, intentional or malicious conduct." <u>Springer v. Henry</u>, 435 F.3d 268, 281 (3d Cir. 2006).

> This standard is disjunctive. The defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard.

<u>Id.</u> Thus, all of the above is still good law, despite any misguided defense representations to the contrary.

In summary, at a minimum, a defendant may be liable for punitive damages if his conduct is reckless or callous. Intentional conduct, being an even higher standard, thus also warrants punitives. Lastly, actual malicious intent or evil motive, being an even higher standard than intentional, also is sufficient. And as discussed in section **A** above, plaintiff has presented more than sufficient evidence of defendant's reckless, callous, intentional and malicious discriminatory behavior.

**4. The Existence of Record Evidence Sufficient to Support a Finding of Intentional Discrimination Requires that the Jury Be Given the Opportunity to Assess Punitive Damages.** Because of the <u>Kolstad</u> exceptions, the "mere existence of a civil rights violation is not a guarantee of eligibility for punitive damages," <u>Alexander</u>, 208 F.3d at 432 (citing <u>Kolstad</u>, 527 U.S. at 536). These are the four limited circumstances "where intentional discrimination does not give rise to punitive damages liability." <u>Kolstad</u>, 527 U.S. 536-37. Importantly again, these four circumstances are the "exceptions." <u>Alexander</u>, 280 F.3d at 432.

However, when the four narrow exceptions do not apply, the <u>Smith</u> general rule requires the jury be given the opportunity to assess punitive damages whenever intentional discrimination is found. See <u>Smith</u>, 461 U.S. at 51 (noting that "intentional violations of federal law [are] sufficient to trigger a jury's consideration" of punitives); <u>Alexander</u>, 208 F.3d at 431 (holding that because a jury's finding of a violation of the civil rights laws "necessarily encompasses a finding of intentional discrimination, the plaintiff need not also demonstrate that the conduct was particularly egregious or malicious in order to obtain punitive damages"); <u>Wiers v. Barnes</u>, 925 F.Supp. 1079, 1094 (D.Del. 1996) (noting that punitive damages are available in cases when "intentional violations of federal law" are found).

Accordingly, because <u>Washington v. Davis</u>, 426 U.S. 229 (1976), requires a showing of discriminatory intent in order to prevail on a claim of discrimination in the federal civil rights context, <u>Bronze Shields, Inc. v. N.J. Dept. of Civil Service</u>, 667 F.2d 1074, 1078 n.6 (3d Cir. 1981), except when one of the limited <u>Kolstad</u> exceptions applies, whenever a jury finds for a plaintiff in a discrimination action, because that finding necessarily encompasses a finding of intentional discrimination, a plaintiff is entitled to a punitive damages instruction.

An instructive case on this point is <u>Alexander v. Riga</u>, 208 F.3d 419, 432 (3d Cir. 2000), a civil rights action dealing with race discrimination in housing. There, the Third Circuit observed (1) there was not any suggestion that the defendant did not know that it was illegal to discriminate on the basis of race, and (2) that the jury concluded that the motivating factor in the defendant's discriminatory conduct was race. <u>Id.</u> Accordingly, the Third Circuit found that the "plaintiffs have adduced sufficient evidence to demonstrate 'reckless or callous indifference' to federally protected rights and to permit the jury to award punitive damages." <u>Id.</u> Given that none of the <u>Kolstad</u> exceptions applied, <u>id.</u>,

the jury's finding of a violation of the [civil rights laws] necessarily encompasses a finding of intentional discrimination, [so] the plaintiffs need not also demonstrate that the conduct was particularly egregious or malicious in order to obtain punitive damages.

Id. at 431.

**C. Conclusion.** For the aforementioned reasons, a punitive damages instruction is appropriate. However, if the Court disagrees with plaintiff on the issue of punitive damages, plaintiff respectfully submits that the Court should refer the issue to the jury for consideration anyway because the Court can always remove punitive damages post-trial, but plaintiff will never get another chance to argue the case to this jury which will have heard the evidence and argument in its proper context and in its entirety. Such an approach would adequately preserve the issue for appeal.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: June 8, 2006                Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on June 8, 2006, I electronically filed this **Pleading** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

>Ralph K. Durstein III, Esquire
>Department of Justice
>Carvel State Office Building
>820 N. French Street
>Wilmington, DE 19801
>
>James E. Liguori, Esquire
>Liguori, Morris & Yiengst
>46 The Green
>Dover, DE 19901

>/s/ Stephen J. Neuberger
>**STEPHEN J. NEUBERGER, ESQ.**

Conley/ Pleadings / Conley - Bench Memo - Punitive Damages.TSN final