IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CAPTAIN BARBARA L. CONLEY,          :
                                    :
        Plaintiff,                  :
                                    :
    v.                              :        C.A.No.04-1394-GMS
                                    :
COLONEL L. AARON CHAFFINCH,         :
                                    :
        Defendants.                 :


PLAINTIFF'S APPENDIX TO HER ANSWERING BRIEF IN OPPOSITION TO
DEFENDANTS' RENEWED MOTION FOR AN ORDER LIMITING PREJUDICIAL
PRETRIAL PUBLICITY AND FOR SANCTIONS


THE NEUBERGER FIRM, P.A.
THOMAS S. NEUBERGER, ESQ. (#243)
STEPHEN J. NEUBERGER, ESQ. (#4440)
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: June 16, 2006                Attorneys for Plaintiffs

## **TABLE OF CONTENTS**

Media Coverage of <u>Price v. Chaffinch</u> ....................................................................... A001

Deposition Excerpts of David Baylor in <u>Price v. Chaffinch</u>, Nov. 18, 2005 ................................. A046

Verdict Forms in <u>Price v. Chaffinch</u> ............................................................................ A050

Media Coverage of <u>Conley v. Chaffinch</u> .................................................................... A065

Declaration of Thomas S. Neuberger, Esq. ................................................................. A074

**1 - SJN@NeubergerLaw.com**

| | |
|---|---|
| **From:** | "Stephen J. Neuberger" <SJN@NeubergerLaw.com> |
| **To:** | <sjn@NeubergerLaw.com> |
| **Sent:** | Tuesday, May 16, 2006 6:32 AM |
| **Subject:** | 2005-05-16 - TNJ |



  

Email  Print  Discuss  e-news  Subscribe  Newscast

# Attorney: Police leader wanted revenge

## In suit, troopers say speaking out earned them 'light duty'

**By ESTEBAN PARRA**
**The News Journal**

05/16/2006

WILMINGTON -- Soon after state police shut their indoor firing range because of environmental contamination, then-state police Col. L. Aaron Chaffinch openly began a vendetta against the three troopers who reported the problems, a federal jury was told Monday.

Chaffinch allegedly began telling other troopers it was "time to get them back." Against the advice of another state trooper, the jury was told, Chaffinch blamed some of the firing range problems on the men who exposed it during a tour of the range with the media in April 2004.

Following that interview, Chaffinch, the agency's superintendent at the time, allegedly bragged about his statements: "I got them back. I got my shots in."

Advertisement

Chaffinch's attorney, Edward T. Ellis, told jurors his client's remarks to reporters "were absolutely correct," because a trooper, Sgt. Christopher D. Foraker, ordered his men to stop cleaning and maintaining the range's bullet trap in December 2003. Foraker had recently returned to the Smyrna-area range after a jury found he had been improperly transferred from his supervisor's job following a reprimand he gave to a friend of Chaffinch.

Chaffinch's comments, which were picked up by an internationally circulated police trade magazine, cost Foraker any chance at a post-trooper career in the firearms industry, his attorney, Thomas S. Neuberger, told jurors.

6/15/2006

Furthermore, Chaffinch's refusal to let Foraker take reporters' questions about the range prevented Foraker from defending himself, he said.

"This case is about payback and revenge," Neuberger said in his opening statement in U.S. District Court. Neuberger told jurors they would hear from troopers -- some retired -- who heard Chaffinch swear to get revenge.

In addition to Foraker, Neuberger represents Cpl. Wayne Warren and recently retired Cpl. B. Kurt Price in the free speech and retaliation lawsuit against Chaffinch and the department. Price retired last month after he ran out of sick leave, but Neuberger told jurors he was forced out.

According to the lawsuit, Chaffinch and then-Lt. Col. Thomas F. MacLeish retaliated against the men after they complained about the unsafe levels of lead, copper and zinc at the firing range -- which was closed in March 2004 after the lead levels in the blood of two employees -- Warren and Price -- rose significantly.

State officials, however, said the amount of lead in their blood remained within acceptable boundaries.

State police have found ways to keep other officers with disabilities on the force, but that favor was not extended to Warren and Price.

Shortly after the troopers gave their statements to the state Auditor's Office in May 2004, Chaffinch and MacLeish, now the agency's superintendent, took an interest in the troopers' health, Neuberger said.

Warren and Price were put on desk jobs, Neuberger told jurors, after a fitness-for-duty exam claimed they had suffered hearing loss. The officers' police powers were suspended the following month, barring them from working as troopers and leaving them unable to wear their uniforms.

That, Neuberger said, was retaliation for the troopers speaking out about the range. He also said jurors would hear testimony from former troopers who were allowed to remain on duty despite having hearing problems and other disabilities.

Ellis, who also represents MacLeish and the state, said two doctors concluded both men's hearing was so damaged that they were unfit to be on the state police force because they could put themselves in danger as well as other officers or the public.

Ellis told jurors Chaffinch did not have anything to do with the men being placed on "light duty" because that responsibility fell on MacLeish, who supervised the agency's training operations.

Although it might be true that previous state police superintendents allowed other troopers with injuries to remain on the force, Ellis said "it doesn't mean that Col. MacLeish is bound by that."

**No training received**

Warren testified first Monday. He told jurors the department's policy manual states that troopers have a "right to know" about hazardous materials they might be exposed to and that they are to receive proper training and protective equipment.

Warren, a 23-year veteran of the force, said he never received training on how to maintain and repair the bullet trap or in handling toxic bullet residue. He also said that it was not unusual for state police

6/15/2006

A002

practices to deviate from rules and procedures spelled out in policy manuals.

The first day of trial started with a jury of eight, but, when one of the jurors was excused after complaining of an illness, ended with a jury of seven. The woman coughed continually during Neuberger's opening statement, forcing U.S. District Court Judge Gregory M. Sleet to call for a short break.

*The Associated Press contributed to this article.*
*Contact Esteban Parra at 324-2299 or eparra@delawareonline.com.*



Col. L. Aaron Chaffinch allegedly bragged, "I got my shots in."

6/15/2006

## 1 - SJN@NeubergerLaw.com

**From:** "Stephen J. Neuberger" <SJN@NeubergerLaw.com>
**To:** <sjn@NeubergerLaw.com>
**Sent:** Monday, May 15, 2006 10:25 PM
**Subject:** 2006-05-15 - AP

**Document Links:**
Start of Document
**SECTION:**
**LENGTH:**
**HEADLINE:**
**BYLINE:**
**DATELINE:**
**BODY:**
**LOAD-DATE:**

Copyright 2006 Associated Press
All Rights Reserved
The Associated Press State & Local Wire

May 16, 2006 Tuesday 12:57 AM GMT

**SECTION:** STATE AND REGIONAL

**LENGTH:** 806 words

**HEADLINE:** Trial begins in lawsuit over police firing range problems

**BYLINE:** By RANDALL CHASE, Associated Press Writer

**DATELINE:** WILMINGTON Del.

**BODY:**

Delaware State Police officials never provided training or protective equipment for troopers handling lead and other hazardous bullet residue at the agency's firing range, a trooper testified Monday in a federal lawsuit.

Sgt. Christopher Foraker and Cpls. Kurt Price and Wayne Warren allege in the lawsuit that the current and former police superintendents violated their free speech rights by retaliating against them for speaking out about problems at the firing range, which was closed because of safety issues in 2004.

The troopers claim that former superintendent Col. Aaron **Chaffinch** and then-Lt. Col. Thomas MacLeish initially ignored their concerns about high lead levels and other problems at the range, then began harassing them and blaming them for the problems after they met with state auditors.

6/15/2006

Taking the stand on the first day of the trial, Warren, 47, testified that the DSP policy manual states that troopers have a "right to know" about hazardous materials they might be exposed to, and that they are to receive proper training and protective equipment.

Warren, a 23-year veteran of the police force, said he never received any training on how to maintain and repair the bullet trap as the firing range, or in handling toxic bullet residue.

"None," Warren said under questioning by his attorney, Stephen Neuberger, adding that it was not unusual for state police practices to deviate from rules and procedures spelled out in policy manuals.

Warren, who began working at the firing range in August 2001, said that when he inquired about hazardous material training, he was told by a captain that the DSP never designated a new "right to know" officer following the 1999 retirement of a lieutenant who had filled that role.

The firing range, which opened in 1998, was plagued with air contamination problems almost immediately because of an inadequate ventilation system.

In an effort to reduce lead contamination, police switched in 2001 to non-lead "frangible" ammunition, which contained zinc, copper, arsenic and other toxic substances, and which, unlike the lead bullets, disintegrated upon impact with the bullet trap.

"The trap was not designed for the frangible ammunition at all, because it just turned to dust," Warren said.

Warren has been on paid sick leave since June 2005, when he and Price were told they were unfit for duty because of hearing loss. Price, who has exhausted his sick leave, left the force last month.

In his opening statement, attorney Thomas Neuberger said Price, Warren and Foraker were targeted by **Chaffinch** and MacLeish after Foraker was reassigned to the firing range in December 2003 after winning a federal lawsuit in which he claimed **Chaffinch** improperly replaced him as range supervisor in retaliation for reprimanding a trooper who was a friend of the superintendent.

"This case is about payback and revenge by the most powerful police officials in the state of Delaware," said Neuberger, adding that Foraker ran afoul of the "good ol' boy network in the state police."

"The payback and revenge began with a vengeance" after the firing range was shut down because of safety and environmental problems in March 2004, Neuberger said. **Chaffinch** gave a media tour during which he tried to blame Foraker for the problems, then denied the plaintiffs a chance to present their side of the story by prohibiting them from talking to the media, he said.

**Chaffinch** even rejected a plea from one of his executive officers to retract the statements he made to reporters, said Neuberger, adding that Price and Warren were forced to give up their guns and uniforms, even though other troopers who have suffered hearing loss have been allowed to stay on the job.

In his opening statement, defense attorney Edward T. Ellis went directly to the issue of hearing loss, telling the jury that after repeated testing, two doctors found Price and Warren unfit for duty.

"There are no prior troopers that have medical reports of this nature," Ellis said, adding that the trial was being held because MacLeish refused to bend the rules to allow Price and Warren to remain on duty while suffering from hearing loss that could endanger both them and the public.

6/15/2006

Ellis also noted that the three plaintiffs refused to continue to clean and maintain the bullet trap at the firing range after December 2003, when Foraker returned fresh from his legal victory over **Chaffinch** with an apparent "bulletproof" attitude.

"Who's going to mess with a guy who just won a verdict against the colonel?" asked Ellis, who said the statements **Chaffinch** made to reporters in April 2004 were true and "absolutely correct."

The trial began with a jury of five women and three men, but one of the women, who coughed continually during Neuberger's opening statement, was excused after complaining of illness. Testimony was to resume Tuesday morning.

**LOAD-DATE:** May 15, 2006

Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.
Your use of this service is governed by Terms & Conditions . Please review them.

## 1 - SJN@NeubergerLaw.com

**From:** "Stephen J. Neuberger" <SJN@NeubergerLaw.com>
**To:** <sjn@NeubergerLaw.com>
**Sent:** Thursday, May 18, 2006 6:36 AM
**Subject:** 2006-05-18 - TNJ(1)





Email Print Discuss e-news Subscribe Newscast

# Witness: Chaffinch vowed retaliation

## Superintendent targeted three for complaining, retired major testifies in free-speech lawsuit

**By ESTEBAN PARRA**
**The News Journal**

05/18/2006

WILMINGTON -- Upset at three troopers who spoke to state officials about hazardous conditions at the closed state police indoor firing range, then-Col. L. Aaron Chaffinch told a member of his executive staff that it was his "time to get them back," according to testimony Wednesday in U.S. District Court.

Retired state police Maj. David L. Baylor told jurors that he and Chaffinch spoke April 6, 2004, after Chaffinch gave interviews to news media outlets suggesting that some of the environmental problems at the Smyrna-area range were because of the three troopers. The range was closed the previous month because lead levels in the blood of two employees had risen significantly.

Chaffinch, in referring to the troopers, told a reporter "people in glass houses should not throw stones." Baylor said he understood Chaffinch was talking about the three troopers because he pointed to the police academy where they had their offices.

"Can I give you a little bit of advice?" Baylor told Chaffinch afterward, according to his testimony. "Call back the media and explain that your emotions got to you. ... "

Baylor said he offered Chaffinch a script, but the superintendent refused it. "I've taken jab after jab from these guys," Baylor testified Chaffinch said. "This is my time to get them back."

Baylor was the second witness called by Thomas S. Neuberger, who represents the three troopers -- Sgt. Christopher D. Foraker, Cpl. Wayne Warren and recently retired Cpl. B. Kurt Price -- in their free-speech and retaliation lawsuit against Chaffinch and the department.

6/15/2006

Price retired last month after he ran out of sick leave, but Neuberger told jurors he was forced out.

Chaffinch and then-Lt. Col. Thomas F. MacLeish -- now the agency's leader -- retaliated against the three, Neuberger alleges, after they complained about unsafe levels of lead, copper and zinc at the firing range. Warren and Price were put on desk jobs after they experienced hearing loss, even though they said they were fit for active duty.

On Wednesday, Neuberger questioned Baylor about other troopers with disabilities, who continued serving until retirement. This included Maj. Joseph N. Forester, who was allowed to retire after 28 years of service despite wearing hearing aids in both ears.

Baylor, who said he was under the impression that no one could be a trooper if they wore hearing aids, said he was surprised when he saw Forester wear them. He also testified that he needed to speak up around the major. "There were times when I had to repeat myself and I do think it was because of his hearing," Baylor said.

Baylor, in response to Ellis' question, said he had not seen the medical records of most of the disabled troopers nor was he aware of what doctors were telling state police about the troopers' ability to return to work.

The jury was told that Chaffinch left early into Baylor's testimony to attend a funeral. But he was there long enough to hear Baylor explain that Chaffinch was not fond of Foraker and that he did not want to reinstate him at the range.

Through a court order, Foraker was returned to the range in late 2003. This happened after a jury found he had been improperly transferred from his supervisor's job after reprimanding one of Chaffinch's friends. "He was unhappy with the outcome of the decision of the court case," Baylor said.

### 'I can't blame the trooper'

After returning to the range, Foraker ordered his men on Dec. 1, 2003, to stop maintenance and custodial work at the firing range out of concern for their health and feeling they were not trained for this type of hazardous cleanup.

Neuberger asked Baylor if he agreed with previous testimony by MacLeish that 50 percent of the problems at the range were caused by the three men. Baylor said he could not blame the men because the building historically had problems, including a poor ventilation system.

"I can't blame the trooper for that," he said.

*Contact Esteban Parra at 324-2299 or eparra@delawareonline.com.*

L. Aaron Chaffinch sought revenge, according to testimony.

6/15/2006





David L. Baylor, now retired, said Chaffinch refused to heed his advice.

6/15/2006

## 1 - SJN@NeubergerLaw.com

**From:**     "Stephen J. Neuberger" <SJN@NeubergerLaw.com>
**To:**        <sjn@NeubergerLaw.com>
**Sent:**      Friday, May 19, 2006 7:59 PM
**Subject:**  2006-05-19 - AP

**Document Links:**
Start of Document
**SECTION:**
**LENGTH:**
**HEADLINE:**
**BYLINE:**
**DATELINE:**
**BODY:**
**LOAD-DATE:**

Copyright 2006 Associated Press
All Rights Reserved
The Associated Press State & Local Wire

May 19, 2006 Friday 9:06 PM GMT

**SECTION:** STATE AND REGIONAL

**LENGTH:** 925 words

**HEADLINE:** Testimony: Former Del. police head vowed to get subordinate

**BYLINE:** By RANDALL CHASE, Associated Press Writer

**DATELINE:** WILMINGTON Del.

**BODY:**

The former head of the Delaware State Police vowed to exact revenge on a trooper who successfully sued him for unfair treatment and who is now suing him for retaliation, a state police captain testified Friday.

Capt. Glenn Dixon said retired Col. Aaron **Chaffinch** became "extremely angry" with Sgt. Christopher Foraker after a jury ordered **Chaffinch** in June 2003 to pay more than $100,000 in damages for improperly transferring Foraker in retaliation for Foraker's reprimand of a trooper who was a friend of **Chaffinch.**

**Chaffinch** often would use expletives in referring to Foraker in the presence of other troopers, and would ridicule him for his sexual dysfunction, one of the emotional and physical problems that Foraker

6/15/2006

A010

alleged in the first trial resulted from his mistreatment, Dixon testified.

In the spring of 2004, after Foraker and two troopers under his command spoke to state auditors about health and safety problems that led to the closing of the police firing range in Smyrna, **Chaffinch** boasted before giving a media tour of the range that he was going to put the blame on Foraker.

"He was cocky," Dixon said of **Chaffinch.** "He said he was going to put it on (expletive) Foraker. I took it he was going to lay any blame for malfunctions on the range on Foraker."

**Chaffinch** also boasted that he had powerful friends in political circles, and would refer to Senate President Pro Tem Thurman Adams as "daddy," said Dixon, who was testifying under a subpoena issued by attorney Thomas Neuberger.

Neuberger is representing Foraker, Cpl. Wayne Warren and former Cpl. Kurt Price. The three allege that **Chaffinch** and current police superintendent Col. Thomas MacLeish violated their free speech rights by retaliating against them for speaking out about problems at the firing range.

The range, which opened in 1998, was plagued with air contamination problems almost immediately because of an inadequate ventilation system. It was finally closed in March 2004.

The troopers claim that **Chaffinch** and then-Lt. Col. MacLeish initially ignored their concerns about high levels of toxic metals and other problems at the range, then began harassing them and blaming them for the problems after they met with state auditors in the spring of 2004.

Neuberger has said his clients were targeted by **Chaffinch** and MacLeish after Foraker was reassigned to the firing range in December 2003 after winning his lawsuit against **Chaffinch.**

In addition to making derogatory comments about Foraker, **Chaffinch** also mocked Warren and Price for the hearing loss they have suffered, and which resulted in both of them being declared unfit for duty. Warren has been on sick leave since last year. Price has exhausted all of his unused leave and left the force last month.

Dixon said that when the names of Price and Warren surfaced during discussions about the firing range, **Chaffinch** would cup his hand to his ear and say, "What did you say? I can't hear you."

Under cross-examination by defense attorney Edward Ellis, Dixon said he could not recall MacLeish making any derogatory comments about Foraker such as those allegedly made by **Chaffinch.** Dixon also acknowledged that he is a friend of Capt. Barbara Conley, with whom he has worked in the traffic section, and who has filed a sexual harassment lawsuit against **Chaffinch** that is expected to go to trial next month.

Earlier Friday, Price testified under cross-examination that he received no training about how to maintain the bullet trap at the firing range, echoing testimony given by Warren earlier this week. Price said the firing range presented constant problems for the troopers who worked there.

"It's like Forest Gump said," he said. "It was like a box of chocolates. You never knew what you were going to walk into."

Price also testified that he was wary about talking to MacLeish about the firing range without an attorney.

6/15/2006

"I was afraid of these people. I was scared," he said.

Ellis presented medical records showing that levels of toxic metals in Price's blood were within normal ranges, and that problems with the firing range were "compounded dramatically," in the words of state auditors, after the three plaintiffs decided in December 2003 to stop cleaning the bullet trap.

Price said the decision to stop cleaning the trap was made for health and safety reasons, and contributed to his normal blood measurements. He also testified that in a second meeting with state auditors in the summer of 2004, the questioning was hostile and accusative.

"At that time, I knew we were being blamed for conditions on the range," he said.

In afternoon testimony, retired Capt. Gregory Warren testified that after **Chaffinch** transferred Foraker from the firing range and replaced him with Sgt. Richard Ashley in 2001, then-Lt. Col. Thomas Marcin told Warren not to try to supervise Ashley.

"Tom Marcin told me, 'Don't touch Rich Ashley.... He's the colonel's boy,'" Warren said.

After Foraker won his lawsuit against **Chaffinch** and was reinstated to the firing range by court order, Foraker was no longer allowed to report directly to an administrative major, as he and other firing range supervisors had done in the past, Warren said. Instead, Foraker was required to follow the chain of command and report to a lieutenant, who in turn reported to Warren.

Warren said that under **Chaffinch's** leadership, the state police often did not follow the chain of command.

"Not even close," he said. "Things were just kind of very haphazard. Everybody used the rumor mill and spoke amongst themselves."

Testimony was scheduled to resume Monday morning.

**LOAD-DATE:** May 19, 2006

## 1 - SJN@NeubergerLaw.com

**From:** "Stephen J. Neuberger" <SJN@NeubergerLaw.com>
**To:** <sjn@NeubergerLaw.com>
**Sent:** Saturday, May 20, 2006 7:49 AM
**Subject:** 2006-05-20 - DSN(1)

## newszap.com CENTRAL DELAWARE News & Information

Published: May 19, 2006 - 10:47:37 pm EDT

Trooper: Ex-boss eyed revenge; Captain testifies in trial of retired state
police head
**By Randall Chase, Associated Press**

WILMINGTON - The former head of the Delaware State Police
vowed to exact revenge on a trooper who successfully sued him for
unfair treatment and who is now suing him for retaliation, a state police
captain testified Friday.

Capt. Glenn Dixon said retired Superintendent Col. L. Aaron Chaffinch
became "extremely angry" with Sgt. Christopher Foraker after a jury
ordered him in June 2003 to pay more than $100,000 in damages for
improperly transferring the sergeant in retaliation for his reprimand of a
trooper who was a friend of the agency head.

Mr. Chaffinch often would use expletives in referring to Sgt. Foraker in
the presence of other troopers, and would ridicule him for his sexual
dysfunction, one of the emotional and physical problems that the
sergeant alleged in the first trial resulted from his mistreatment, Capt.
Dixon testified.

In the spring of 2004, after Sgt. Foraker and two troopers under his
command spoke to state auditors about health and safety problems that
led to the closing of the police firing range in Smyrna, Mr. Chaffinch
boasted before giving a media tour of the range that he was going to put
the blame on Sgt. Foraker.

"He was cocky," Capt. Dixon said of Mr. Chaffinch. "He said he was
going to put it on (expletive) Foraker. I took it he was going to lay any
blame for malfunctions on the range on Foraker."

Mr. Chaffinch also boasted that he had powerful friends in political
circles, and would refer to Senate President Pro Tempore Sen. Thurman
Adams as "daddy," said Capt. Dixon, who was testifying under a
subpoena issued by attorney Thomas Neuberger.

6/15/2006

Mr. Neuberger is representing Sgt. Foraker, Cpl. Wayne Warren and former Cpl. Kurt Price. The three allege that Mr. Chaffinch and current police superintendent Col. Thomas MacLeish violated their free speech rights by retaliating against them for speaking out about problems at the firing range.

The range, which opened in 1998, was plagued with air contamination problems almost immediately because of an inadequate ventilation system. It was finally closed in March 2004.

The troopers claim that Mr. Chaffinch and then-Lt. Col. MacLeish initially ignored their concerns about high levels of toxic metals and other problems at the range, then began harassing them and blaming them for the problems after they met with state auditors in spring 2004.

Mr. Neuberger has said his clients were targeted by Mr. Chaffinch and Col. MacLeish after Sgt. Foraker was reassigned to the firing range in December 2003 after winning his lawsuit against Mr. Chaffinch.

In addition to making derogatory comments about Sgt. Foraker, Mr. Chaffinch also mocked Cpl. Warren and Mr. Price for the hearing loss they suffered, which resulted in both being declared unfit for duty.

Cpl. Warren has been on sick leave since last year. Mr. Price has exhausted all of his unused leave and left the force last month.

Capt. Dixon said that when the names of Mr. Price and Cpl. Warren surfaced during discussions about the firing range, Mr. Chaffinch would cup his hand to his ear and say, "What did you say? I can't hear you."

Under cross-examination by defense attorney Edward Ellis, Capt. Dixon said he could not recall Col. MacLeish making any derogatory comments about Sgt. Foraker such as those allegedly made by Mr. Chaffinch. Capt. Dixon also acknowledged that he is a friend of Capt. Barbara Conley, with whom he has worked in the traffic section, and who has filed a sexual harassment lawsuit against Mr. Chaffinch that is expected to go to trial next month.

Earlier Friday, Mr. Price testified under cross-examination that he received no training about how to maintain the bullet trap at the firing range, echoing testimony given by Cpl. Warren earlier this week. Mr. Price said the firing range presented constant problems for the troopers who worked there.

"It's like Forest Gump said," he said. "It was like a box of chocolates. You never knew what you were going to walk into."

Mr. Price also testified that he was wary about talking to Col. MacLeish about the firing range without an attorney.

"I was afraid of these people. I was scared," he said.

Mr. Ellis presented medical records showing that levels of toxic metals in Mr. Price's blood were within normal ranges, and that problems with the firing range were "compounded dramatically," in the words of state auditors, after the three plaintiffs decided in December 2003 to stop cleaning the bullet trap.

Mr. Price said the decision to stop cleaning the trap was made for health and safety reasons, and contributed to his normal blood measurements. He also testified that in a second meeting with state auditors in the summer of 2004, the questioning was hostile and accusative.

"At that time, I knew we were being blamed for conditions on the range," he said.

In afternoon testimony, retired Capt. Gregory Warren testified that after Mr. Chaffinch transferred Sgt. Foraker from the firing range and replaced him with Sgt. Richard Ashley in 2001, then-Lt. Col. Thomas Marcin told Mr. Warren not to try to supervise Sgt. Ashley.

"Tom Marcin told me, 'Don't touch Rich Ashley.... He's the colonel's boy,' " Mr. Warren said.

After Sgt. Foraker won his lawsuit against Mr. Chaffinch and was reinstated to the firing range by court order, the sergeant was no longer allowed to report directly to an administrative major, as he and other firing range supervisors had done in the past, Mr. Warren said. Instead, Sgt. Foraker was required to follow the chain of command and report to a lieutenant, who in turn reported to Mr. Warren.

Mr. Warren said that under Mr. Chaffinch's leadership, the state police often did not follow the chain of command.

"Not even close," he said. "Things were just kind of very haphazard. Everybody used the rumor mill and spoke amongst themselves."

Testimony was scheduled to resume Monday morning.

E-mail this story        Back to Index        Printer Friendly Version

6/15/2006

A015

## 1 - SJN@NeubergerLaw.com

**From:** "Stephen J. Neuberger" <SJN@NeubergerLaw.com>
**To:** <sjn@NeubergerLaw.com>
**Sent:** Saturday, May 20, 2006 7:49 AM
**Subject:** 2006-05-20 - TNJ(1)

# Chaffinch mocked troopers, captain says

**By ESTEBAN PARRA**
**The News Journal**

05/20/2006

WILMINGTON -- A Delaware State Police captain testified Friday that former Col. L. Aaron Chaffinch used profanity and mocking references when referring to three troopers who complained about environmental contamination at the department's firing range.

Capt. Glenn Dixon told jurors in U.S. District Court that Chaffinch also joked about the three troopers' medical conditions -- including their hearing damage -- in front of other state troopers. Any time the topic of the range or the three men were brought up, Dixon said, Chaffinch would cup his hand to his ear and say: "What did you say? I can't hear you."

Dixon, who was subpoenaed by attorney Thomas S. Neuberger to testify, also said Chaffinch mocked Sgt. Christopher D. Foraker's sexual dysfunction by saying: "It couldn't have happened to a nicer guy."

The dysfunction, Foraker claimed in his first lawsuit against Chaffinch, was a result of the treatment he received after he reprimanded one of the former state police superintendent's friends.

A federal jury found Foraker had been improperly transferred from his supervisor's job and through a court order, he was returned to the range in late 2003.

Dixon also testified that Chaffinch would brag about having powerful friends, including Senate President Pro Tem Thurman Adams Jr., D-Bridgeville, whom he referred to as "daddy."

Chaffinch's attorney, Edward T. Ellis, asked Dixon if he was a friend of another trooper who is suing Chaffinch for sex discrimination. Dixon said he is a friend of Capt. Barbara L. Conley and that he expects to be subpoenaed for that case, too, which is scheduled to start in the coming weeks.

Neuberger represents Foraker, Cpl. Wayne Warren and recently retired Cpl. B. Kurt Price in the free-speech and retaliation lawsuit against Chaffinch. Price, Neuberger said, was forced into retirement.

According to Neuberger, Chaffinch and the police department retaliated against the three after they complained about unsafe levels of lead, copper and zinc at the firing range, which was closed in March 2004.

Shortly after the troopers gave their statements to the state Auditor's Office in May 2004, Chaffinch and then-Lt. Col. Thomas F. MacLeish took an interest in the troopers' health, Neuberger said. MacLeish is the current state police superintendent.

Warren and Price were put on desk jobs after they experienced hearing loss, even though they said they were fit for active duty. Witnesses testified during the first week that the department found ways to keep other troopers on the force despite disabilities.

On Friday, Neuberger also called retired state police Capt. Gregory A. Warren to the stand and asked him about other troopers with disabilities who continued on the force.

Gregory Warren said he knew retired Maj. Joseph N. Forester had hearing aids, as did other troopers who referred to him as "miracle ear." Gregory Warren also said there were times when he would have to call Forester late at home to notify him of a major incident. When Forester's wife would answer, she would tell him to "hang tight," because Forester was putting in his hearing aids.

Despite that, Forester put in his 20 years before retiring.

Gregory Warren testified about other troopers, including retired Capt. David Citro, who injured his back so badly that he did not have full range of movement yet was on the force more than 20 years before retiring. "I didn't know if it was his neck or back, but I knew he had to turn his body when he had to talk to you," he said.

He also was asked about another trooper, Steve Swain, who has a speech impediment. "It almost sounded like he was stuttering," Gregory Warren said, adding the impediment would worsen if he was under pressure. Gregory Warren said as far as he knew, Swain was still an evidence technician with the department -- well past 20 years on the force.

He also testified about Sgt. Jahn Hitchens, who suffered a back injury in 1989 yet was allowed to stay on the force despite not being able to sit straight for a long periods of time or carry a gun.

Gregory Warren is scheduled to continue testifying Monday when the trial resumes.

*Contact Esteban Parra at 324-2299 or eparra@delawareonline.com.*

6/15/2006

## 1 - SJN@NeubergerLaw.com

**From:** "Stephen J. Neuberger" <SJN@NeubergerLaw.com>
**To:** <sjn@NeubergerLaw.com>
**Sent:** Tuesday, May 23, 2006 6:36 AM
**Subject:** 2006-05-23 - TNJ



  
Email Print Discuss e-news Subscribe Newscast

# Concerns not heeded, trooper says

## Superior told of health problems, ex-supervisor of firing range testifies

**By ESTEBAN PARRA**
**The News Journal**

05/23/2006

WILMINGTON -- Headaches. The taste of copper. A reddish discharge from the nose.

Troopers who worked at or used the state police firing range complained about such symptoms and others, state police Sgt. Christopher D. Foraker testified Monday in U.S. District Court.

"My men were really concerned about their health ... and all the problems they were having," Foraker told the seven jurors. "They just felt something was not right."

Because of the problem, Foraker said he decided Dec. 1, 2003, to stop maintaining portions of the shooting range. Foraker and his men stopped cleaning the floors and area behind the bullet trap, he testified.

Foraker said he called around to have people come in and clean behind the bullet trap, but when they learned lead was involved, Foraker said, "They wanted no part of that."

Foraker is one of three people suing state police Col. Thomas F. MacLeish and retired Col. L. Aaron Chaffinch in a free speech and retaliation action. The two others, Cpl. Wayne Warren and recently retired Cpl. B. Kurt Price, testified last week.

Foraker, who returned to the range in late 2003 after a jury found he had been improperly transferred from his supervisor's job there, told jurors Monday that upon his return, he was treated differently. He said was not able to do some of the things he had been able to do previously at the range. He also said he passed by then-Lt. Col. MacLeish after a graduation ceremony at which time MacLeish "just grinded his

6/15/2006

teeth and growled at me like a dog."

Foraker also testified that when MacLeish stopped by the range in January 2004, Foraker tried to speak to him about the facility, but MacLeish "blew me off and said 'I'm not here for that.' "

Foraker met with MacLeish and others in February 2004, at which time Foraker said he discussed problems at the range. , Foraker said that MacLeish told him, "You are expected to have hearing loss and high levels of lead in your body."

The range was closed in March 2004 because lead levels in the blood of two employees had risen significantly. But problems with the agency's top brass seemed to increase for Foraker and the two corporals, he said.

In April 2004, then-Col. Chaffinch met with reporters at the closed firing range and blamed the problems on the troopers who had stopped maintenance, Foraker said. He added that he was then "ordered" not talk to reporters seeking a response to Chaffinch's allegations.

After the three troopers spoke to state auditors concerning the range's condition in May 2004, the department sent them in for a health check. Warren and Price were put on desk jobs after a fitness-for-duty exam found they had suffered hearing loss. Foraker was also sent to a fitness-for-duty exam three times, which he said he passed.

But Foraker testified that he has "been declared not fit for duty because of my mental status."

Foraker will continue testifying today.

*Contact Esteban Parra at 324-2299 or eparra@delawareonline.com.*

## 1 - SJN@NeubergerLaw.com

**From:** "Stephen J. Neuberger" <SJN@NeubergerLaw.com>
**To:** <sjn@NeubergerLaw.com>
**Sent:** Tuesday, May 23, 2006 11:28 PM
**Subject:** 2006-05-24 - DSN

**newszap.com** *CENTRAL DELAWARE* **News & Information**

Published: May 23, 2006 - 11:11:27 pm EDT

Chaffinch denies boast; Testifies he didn't try to pin blame on range problems
**By Randall Chase, Associated Press**

WILMINGTON - The former head of the Delaware State Police testified Tuesday that he did not boast about trying to pin problems at the police firing range on a trooper who successfully sued him after he was relieved as range supervisor.

Retired Col. L. Aaron Chaffinch disputed previous testimony from former Maj. David Baylor, who said Chaffinch boasted about getting in his "shots" or "digs" against Sgt. Christopher Foraker during a media tour of the range after it was closed because of environmental problems in March 2004.

"I feel that he didn't recall the conversation the way I recall the conversation," Chaffinch said of Baylor.

Chaffinch also contradicted testimony from Capt. Glenn Dixon in which Dixon said Chaffinch routinely added an alliterative expletive when using Foraker's name, and that he vowed he was "going to get" him.

"No, I do not agree with those (statements)," Chaffinch said under questioning from attorney Thomas Neuberger.

Chaffinch admitted that he was not happy when Foraker filed a lawsuit in 2002 alleging that Chaffinch improperly transferred him from the firing range after Foraker reprimanded one of Chaffinch's friends.

"I don't think anybody likes to be sued," said Chaffinch, who admitted that he was "not happy" when a federal jury said he had to pay punitive damages to Foraker for violating his free speech rights and a judge subsequently ordered Foraker reinstated as the officer in charge of the firing range in December 2003.

6/15/2006

"I was displeased, yes," Chaffinch said. "However, I knew we needed to get a resolution to it so we could move on."

Chaffinch's testimony came in a lawsuit filed by Foraker and Cpls. Kurt Price and Wayne Warren, who allege that Chaffinch and current police superintendent Col. Thomas MacLeish violated their free speech rights by retaliating against them for speaking to state auditors about problems at the firing range.

Specifically, they allege that Chaffinch implied in media interviews in 2004 that Foraker was responsible for many of the problems. The plaintiffs also contend that Warren and Price, who retired last month after exhausting his leave time, were forced to go on light duty and surrender their law enforcement powers after being diagnosed with hearing loss, even though the agency has allowed other troopers to remain on duty despite various disabilities.

    The plaintiffs claim that Chaffinch and then-Lt. Col. MacLeish initially ignored their concerns about high levels of toxic metals and other problems at the range, then began harassing them after they met with state auditors in the spring of 2004.

Chaffinch testified that after Foraker was reinstated as firing range supervisor, MacLeish had exclusive responsibility for handling issues dealing with the range and Foraker, but that MacLeish kept him informed about what was going on.

Chaffinch said he and MacLeish "may have" discussed a May 2004 newspaper article written about the plaintiffs' meeting with auditors, "but not in a negative way."

"I wasn't upset that your clients were talking to the auditors," Chaffinch told Neuberger. "... I was upset that it was bringing a negative light to the division of state police in the media."

Under cross-examination by defense attorney Edward Ellis, Chaffinch said he was surprised at the condition of the range when he participated in a media tour of the facility in April 2004, after it was shut down.

"I couldn't believe how much it was in disarray, how nasty it was," he said. "... It was filthy. It was just a mess."

Chaffinch said that when he told a reporter after the media tour that "people who live in glass houses shouldn't throw stones," he was referring to former Capt. Greg Warren, who at the time was responsible for the police training academy, including the firing range, and who had a lawsuit pending against Chaffinch.

Chaffinch said Warren without authorization had "leaked volumes of information" about the range to two state lawmakers, and that the information eventually found its way to state auditors, then to the

media.

Warren testified earlier this week that under Chaffinch's leadership, the state police often did not follow the chain of command, and that "things were just kind of very haphazard."

Earlier Tuesday, police Capt. Ralph Davis III testified that the firing range appeared to be "disorganized," when he visited it just before Foraker reassumed command in December 2003, and that he found "a powdery substance that covered everything."

Shortly after being reinstated at the range, Foraker decided to discontinue maintenance because of concerns that cleaning up toxic metals in the bullet trap and elsewhere posed a threat to his health and that of his colleagues.

Davis, who was Foraker's immediate supervisor, testified under cross-examination by Ellis that Foraker never told him that he had stopped cleaning the bullet trap at the range and performing other maintenance. Davis did say that Foraker told him on Dec. 12, 2003, that he thought it was unhealthy for him and his staff to clean the range and asked for permission to hire a contractor to do the work.

Davis also testified that MacLeish told him after a July 2004 meeting, which Foraker was asked to leave, that MacLeish was "sensitive to the issues going on with Sergeant Foraker," an apparent reference to Foraker's successful lawsuit against Chaffinch and complaints about the firing range. Davis said MacLeish told him the meeting from which Foraker was booted was only for commanders and section chiefs, but that Foraker, as range supervisor, had attended previous such meetings, even though he was not formally considered a section chief in the department's organizational chart.

"In practice, he was viewed as a section chief," Davis said. "For all intents and purposes, he was the section chief."

Under questioning by Thomas Neuberger, Chaffinch said sergeants did not normally attend such meetings. Chaffinch also could not recall giving Foraker a look that "could kill" before Foraker left the July meeting, as police Capt. Nathaniel McQueen had testified earlier this week, supporting Foraker's recollection.

Wrapping up his testimony earlier Tuesday, Foraker said he was subject to "micromanaging" by supervisors after reassuming his duties at the range, and that MacLeish had no interest in discussing problems at the range when he visited in January 2004.

"He blew me off," Foraker said. "He said, "I'm not here for that.'"

The defense was scheduled to begin presenting its case today after testimony from MacLeish and retired Maj. Joseph Swiski, who served

with Chaffinch on the DSP executive staff and testified in a previous
lawsuit that Chaffinch has a reputation "for not being very truthful."

E-mail this story          Back to Index          Printer Friendly Version

## 1 - SJN@NeubergerLaw.com

**From:**     "Stephen J. Neuberger" <SJN@NeubergerLaw.com>
**To:**       <sjn@NeubergerLaw.com>
**Sent:**     Wednesday, May 24, 2006 6:43 AM
**Subject:**  2006-05-24 - TNJ

# Chaffinch disputes witnesses' testimony

## Retired state police superintendent accused of using profanity and mocking troopers' health

**By ESTEBAN PARRA**
**The News Journal**

05/24/2006

WILMINGTON -- Retired state police Col. L. Aaron Chaffinch told a federal jury Tuesday that the testimony of previous witnesses was inaccurate when they said they heard him use profanity and make mocking gestures when referring to three troopers who complained about environmental contamination at the department's firing range.

Chaffinch disputed the testimony of at least three witnesses, including retired Maj. David Baylor. Baylor testified last week in U.S. District Court that after an April 6, 2004, media tour of the closed firing range, Chaffinch told him he had gotten back at the three troopers by either getting in his "shots" or "digs" during the press conference.

Chaffinch said he didn't argue about having a conversation with Baylor, but "I feel that he didn't recall the conversation the way I recall the conversation."

Chaffinch agreed he told Baylor that he mentioned to a Delaware State News reporter that "people in glass houses should not throw stones." But he testified Tuesday that he was referring to retired Capt. Gregory A. Warren, who at the time was in charge of the firing range.

Baylor testified he understood Chaffinch was referring to the three troopers because he pointed to the police academy where they had their offices. Warren's office was also at the academy.

Baylor asked Chaffinch to retract his statements, but Chaffinch said he told Baylor that he had not seen the "filthy" condition the range was in. Chaffinch testified that when he saw the range's condition all he could think was: "What is going on here? Have I been set up? If I have been set up, who was I set up by?"

Chaffinch said he believed Warren was responsible because in addition to filing a lawsuit against the department he also "leaked" problems at the facility to lawmakers.

Chaffinch also denied mocking Sgt. Christopher D. Foraker's sexual dysfunction by saying that "it couldn't have happened to a nicer guy."

He also denied mocking the troopers' loss of hearing. Capt. Glenn Dixon testified Chaffinch had done both these things.

"No, I do not agree," Chaffinch said when questioned by attorney Thomas S. Neuberger, who represents Foraker, as well as Cpl. Wayne Warren and recently retired Cpl. B. Kurt Price, in a free-speech and retaliation lawsuit against Chaffinch and current state police superintendent Thomas F. MacLeish.

The three troopers say Chaffinch and MacLeish retaliated against them for speaking to state auditors about problems at the Smyrna-area firing range.

"I wasn't upset that your clients were talking to the auditors. No," Chaffinch said. "I was upset that it was bringing negative light to the state police in the media."

The former state police superintendent said he was not happy about Foraker's previous lawsuit or by a federal court order reinstating Foraker at the range.

Chaffinch, who testified for about two hours Tuesday afternoon, was the first of the two defendants to take the witness stand. MacLeish is scheduled to testify today.

*Contact Esteban Parra at 324-2299 or eparra@delawareonline.com.*



"I feel that he didn't recall the conversation the way I recall the conversation," retired state police Col. L. Aaron Chaffinch said.

**1 - SJN@NeubergerLaw.com**

| | |
|---|---|
| **From:** | "Stephen J. Neuberger" <SJN@NeubergerLaw.com> |
| **To:** | <sjn@NeubergerLaw.com> |
| **Sent:** | Wednesday, May 24, 2006 8:39 PM |
| **Subject:** | 2006-05-24 - TNJ - Breaking News |



# State police colonel testifies in lawsuit

✉ 🖨 🖉 📰 📋 📺
Email Print Discuss e-news Subscribe Newscast

Update 3:46 pm

**By ESTEBAN PARRA**
**The News Journal**

**05/24/2006**

WILMINGTON – State police Col. Thomas F. MacLeish testified this morning he violated a federal court order when he told a trooper to leave a July 2004 section and commander's meeting.

MacLeish was being questioned by attorney Thomas S. Neuberger, who represents state police Sgt. Christopher D. Foraker, Cpl. Wayne Warren and recently retired Cpl. B. Kurt Price.

The three men allege MacLeish and former state police Col. L. Aaron Chaffinch retaliated against them for speaking to state auditors about problems at the agency's Smyrna-area firing range.

The range was shut down in March 2004 after environmental concerns were raised.

Foraker previously sued Chaffinch and won. A federal court order reinstated Foraker at the range with the same responsibilities as before.

Part of those responsibilities included Foraker attending some of the section and commander meetings. As a section chief, Foraker would update the state police executive staff of what was going on at the range.

Foraker was invited via e-mail to the July 2004 section and commander meeting. But once there, MacLeish approached him and ordered him to leave.

Neuberger asked MacLeish if this did not violate the federal court order.

"I guess it would," MacLeish said.

6/15/2006

MacLeish also testified he asked Foraker to leave because he had nothing to report on at the meeting.

*See complete coverage in Thursday's News Journal and at www.delawareonline.com. Contact Esteban Parra at 324-2299 or eparra@delawareonline.com.*

**1 - SJN@NeubergerLaw.com**

| | |
|---|---|
| **From:** | "Stephen J. Neuberger" <SJN@NeubergerLaw.com> |
| **To:** | <sjn@NeubergerLaw.com> |
| **Sent:** | Thursday, May 25, 2006 6:48 AM |
| **Subject:** | 2006-05-25 - TNJ |



☒ Email    ▣ Print    💬 Discuss    📱 e-news    📋 Subscribe    📷 Newscast

# Colonel testifies to violating court order

## MacLeish questioning to continue today

**By ESTEBAN PARRA**
**The News Journal**

05/25/2006

WILMINGTON -- Delaware State Police Col. Thomas F. MacLeish testified Wednesday he violated a federal court order when he told a trooper to leave a July 2004 section-and-commander meeting.

MacLeish was being questioned by attorney Thomas S. Neuberger, who represents state police Sgt. Christopher D. Foraker, Cpl. Wayne Warren and recently retired Cpl. B. Kurt Price.

The three men allege MacLeish and former state police superintendent Col. L. Aaron Chaffinch retaliated against them for speaking to state auditors about problems at the agency's Smyrna-area firing range. The range was shut down in March 2004 after environmental concerns were raised.

Foraker previously sued Chaffinch, and a federal court order reinstated Foraker at the range with the same responsibilities as before.

Part of those responsibilities included attending some of the section-and-commander meetings. As a section chief, Foraker would update the state police executive staff of what was going on at the range.

Foraker was invited via e-mail to the July 2004 section-and-commander meeting. But once Foraker arrived, MacLeish, who was the department's lieutenant colonel at the time, approached Foraker and ordered him to leave.

Neuberger asked MacLeish if this did not violate the federal court order that required that Foraker be allowed to perform his functions as a section chief.

"I guess it would," MacLeish said.

6/15/2006

MacLeish also testified he asked Foraker to leave because Foraker had nothing to report on at the meeting. MacLeish, as well as others, testified that Foraker was not always present at the meetings.

MacLeish is scheduled to resume testifying this morning in U.S. District Court.

*Contact Esteban Parra at 324-2299 or eparra@delawareonline.com.*

6/15/2006

## 1 - SJN@NeubergerLaw.com

| | |
|---|---|
| **From:** | "Stephen J. Neuberger" <SJN@NeubergerLaw.com> |
| **To:** | <sjn@NeubergerLaw.com> |
| **Sent:** | Friday, May 26, 2006 6:45 AM |
| **Subject:** | 2006-05-26 - TNJ |



  
Email  Print  Discuss  e-news  Subscribe  Newscast

# Troopers: Plaintiffs were treated equally

## 3 say they were punished for complaints

**The News Journal**

**05/26/2006**

WILMINGTON -- Medical experts and officials testified Thursday that two troopers who were declared unfit for duty had significant hearing problems that made it unsafe for them to continue as police officers.

The two troopers, Cpl. Wayne Warren and recently retired Cpl B. Kurt Price, are suing the state police in federal court alleging they were punished for speaking out about problems at the police firing range.

Other testimony Thursday about the two, and a third plaintiff, Sgt. Christopher Foraker, came from other state police officers who said the three were not treated differently for speaking out.

The three are charging the state police retaliated against them in violation of their constitutional rights.

The day started with State Police Col. Thomas MacLeish finishing up his testimony to deny he gritted his teeth and "growled" at Foraker at a graduation ceremony. MacLeish said such behavior was not in his character.

The day ended with the testimony of a former officer who ran the firing range and claimed that it was not well maintained by the three plaintiffs.

Testimony is expected to continue today with closing arguments coming early next week.

6/15/2006

## 1 - SJN@NeubergerLaw.com

**From:**     "Stephen J. Neuberger" <SJN@NeubergerLaw.com>
**To:**         <sjn@NeubergerLaw.com>
**Sent:**      Wednesday, May 31, 2006 7:36 AM
**Subject:**  2006-05-31 - DSN

**newszap.com** *CENTRAL DELAWARE* **News & Information**

Published: May 30, 2006 - 11:09:19 pm EDT

Police trial goes to jury
**By Randall Chase, Associated Press**

WILMINGTON - Problems at the now-closed state police firing
range in Smyrna cannot be pinned on three troopers who worked there,
their attorney told a federal court jury Tuesday.

While Delaware State Police commanders may not have liked having
environmental and safety problems at firing range aired in public, their
response should not have been to attack the messengers, said attorney
Thomas Neuberger, who is representing the three troopers.

"Blaming them for conditions of this sick building appears to be a
cover-up for something else," Neuberger said during closing arguments
of a two-week trial in which his clients claimed they were targeted for
retaliation by police commanders for speaking out about the range
problems.

Defense attorney Edward Ellis said Cpls. Kurt Price and Wayne Warren
and Sgt. Christopher Foraker share at least some of the blame for
environmental problems at the firing range because they stopped doing
maintenance on the bullet trap in December 2003, shortly after Foraker
was transferred back to the range under court order to resume his duties
as range supervisor.

"They went from having a troubled but functional range ... to having a
range that could not be habitable in about two months. I'd say the ball
was dropped," Ellis said.

That was the same sentiment offered by now-retired Col. L. Aaron
Chaffinch after an April 2004 media tour of the range, where problems
stemming from poor design and construction surfaced shortly after it
opened in 1998.

The plaintiffs allege that Chaffinch and current police superintendent

6/15/2006

Col. Thomas F. MacLeish violated their free speech rights by retaliating against them for speaking to state auditors about problems at the firing range. Specifically, they allege that Chaffinch implied in media interviews in 2004 that Foraker was responsible for many of the problems. The plaintiffs contend that Chaffinch was out for revenge after Foraker successfully sued him in federal court in 2002 after being transferred from the firing range in retaliation for reprimanding a friend of Chaffinch.

"Kurt and Wayne are what you call collateral damage," Neuberger told the seven-person jury, which was to begin its deliberations Wednesday morning.

The plaintiffs claim that Chaffinch and then-Lt. Col. MacLeish initially ignored their concerns about high levels of toxic metals and other problems at the range, then began harassing them after they met with state auditors in the spring of 2004.

Warren and Price, who retired last month after exhausting his leave time, were forced to go on light duty and surrender their law enforcement powers after being diagnosed with hearing loss, even though the plaintiffs contend that the police agency has accommodated other troopers with disabilities to allow them to remain on duty.

Ellis said MacLeish had no choice but to relieve Price and Warren of their police powers after doctors concluded they were unfit for duty and that their hearing loss represented a potential danger to themselves, other troopers and the public. Ellis suggested that upon becoming police superintendent last year, MacLeish decided he was not going to be governed by past practices involving other troopers with disabilities.

"I suggest to you that Colonel MacLeish had no choice," he said.

Ellis also argued that Foraker's defamation claim should fail because statements made by Chaffinch during the media tour of the firing range were true, even if they might reflect negatively on Foraker.

Ellis dismissed the alleged retaliatory actions taken against Foraker, such as getting a "dirty look" from Chaffinch, being told by MacLeish to leave a meeting, and being deprived of the opportunity to speak at police academy graduations, as "minutiae."

"They're normal things that happen in the workplace," said Ellis, who also implied that the plaintiffs may have exaggerated the psychological suffering they contend stems from their treatment by the defendants.

Neuberger urged jurors not to let their attention be diverted by the defense's efforts to confuse the issues in the case, and to uphold his clients' free speech rights.

"If the law is not enforced against the powerful, then no one will have

the protection of the law," he said.

<u>E-mail this story</u>         <u>Back to Index</u>         <u>Printer Friendly Version</u>

6/15/2006

**1 - SJN@NeubergerLaw.com**

| | |
|---|---|
| **From:** | "Stephen J. Neuberger" <SJN@NeubergerLaw.com> |
| **To:** | <sjn@NeubergerLaw.com> |
| **Sent:** | Wednesday, May 31, 2006 7:34 AM |
| **Subject:** | 2006-05-31 - TNJ |




Email Print Discuss e-news Subscribe Newscast

# Troopers' suit now in hands of jury

## Deliberations start today in case of three officers claiming discrimination by force's top leaders

**By SEAN O'SULLIVAN**
**The News Journal**

05/31/2006

WILMINGTON -- Starting this morning, a federal jury is considering whether three Delaware State Police troopers who sued their commanders are victims of vindictive superiors or simply victims of themselves.

In closing arguments Tuesday, attorney Thomas S. Neuberger charged that former Col. L. Aaron Chaffinch and his "joined-at-the-hip" second-in-command and successor, Col. Thomas F. MacLeish, were "out to get" Sgt. Christopher D. Foraker, who had successfully sued the department for violating his right to free speech in 2003.

The two other plaintiffs, Cpl. Wayne Warren and recently retired Cpl. B. Kurt Price, who worked at the state police firing range with Foraker, were "collateral damage" in the mission to exact revenge, Neuberger said.

All three were "the best of the best" in state police but were railroaded, with all being found "unfit for duty," because they spoke out about problems at the range, a violation of their right to free speech, he said.

Neuberger reminded the jury that officers testified they saw Chaffinch mocking the three, and one heard him say, "I'm going to get that [expletive]" about Foraker.

In the lawsuit, Foraker also charges Chaffinch with defamation for blaming him in the press for problems at the firing range, which was closed in early 2004 due to health concerns.

Attorney Edward T. Ellis, representing Chaffinch and MacLeish, said the three plaintiffs had only themselves to blame for their situation.

Ellis said the three stopped performing necessary maintenance at the firing range, creating unsafe conditions that caused it to close, then sought the health evaluations that eventually resulted in their being found unfit for duty.

Ellis also told the jury that the defamation charge is baseless because the statements made by Chaffinch and MacLeish were truthful and were supported in court testimony.

Once doctors determined Price and Warren had hearing difficulties -- before the three spoke with state auditors about problems at the range -- MacLeish had no choice but to suspend them from duty, Ellis said. To do otherwise would risk their lives, the lives of other troopers and the lives of the public, he said.

Ellis said the suspensions cannot be considered revenge because state police leaders sought a second opinion about the hearing loss and got legal advice before acting.

Foraker passed hearing tests but was later deemed unfit for duty because a psychologist found he suffered from job-related stress. Neuberger, however, said Foraker suffered from depression because his concerns about the range were ignored and Chaffinch and MacLeish were treating him poorly.

The three were singled out for special treatment, held to a different health standard than other troopers and ultimately treated more harshly than similarly injured troopers, Neuberger said.

**Firing range a focus**

Ellis said the three were treated like other troopers and no trooper with a permanent disability was allowed to remain on the force.

Much of the closing arguments Tuesday revolved around conditions at the state police firing range.

Neuberger said the troubled facility was "built by Happy the Clown" and was an "unmitigated disaster" from the time of its opening.

Ellis conceded that the range was "a challenge to say the best, and a mess to say the worst" and much of that was not the fault of the plaintiffs.

But, he said, before the three stopped performing regular maintenance, it was a troubled but operational facility. After they stopped -- apparently concerned about lead contamination -- it was not operational.

Neuberger called on the jury to award "punishing" damages to send a message that loyal police officers should not be treated the way these three were.

Ellis told the jury that the plaintiffs' demands would interfere with MacLeish's ability "to protect the citizens of Delaware from crime."

The jury did not deliberate Tuesday following closing arguments. Instead, District Judge Gregory M. Sleet sent them home and ordered the seven jurors to return this morning to begin deliberations.

6/15/2006

Testimony in the case lasted more than two weeks.

*Contact Sean O'Sullivan at 324-2777 or sosullivan@delawareonline.com.*



L. Aaron Chaffinch was state police superintendent before retiring.



Col. Thomas F. MacLeish, formerly second in command, is now superintendent.

6/15/2006

A036

## 1 - SJN@NeubergerLaw.com

**From:**  "Stephen J. Neuberger" <SJN@NeubergerLaw.com>
**To:**  <sjn@NeubergerLaw.com>
**Sent:**  Wednesday, May 31, 2006 8:39 PM
**Subject:**  2006-05-31 - AP

**Document Links:**
  Start of Document
  **SECTION:**
  **LENGTH:**
  **HEADLINE:**
  **BYLINE:**
  **DATELINE:**
  **BODY:**
  **LOAD-DATE:**

Copyright 2006 Associated Press
All Rights Reserved
The Associated Press State & Local Wire

May 31, 2006 Wednesday 10:56 PM GMT

**SECTION:** STATE AND REGIONAL

**LENGTH:** 721 words

**HEADLINE:** Jury says firing range troopers were victims of retaliation

**BYLINE:** By RANDALL CHASE, Associated Press Writer

**DATELINE:** DOVER Del.

**BODY:**


A federal court jury awarded almost $2 million Wednesday to three troopers who claimed they were subjected to retaliation for speaking out about problems at the now-closed state police firing range in Smyrna.

The U.S. District Court jury in Wilmington deliberated about six hours before finding that the current and former superintendents of the Delaware State Police violated the constitutional rights of Cpls. Kurt Price and Wayne Warren and Sgt. Christopher Foraker.

The seven-member jury found that former police superintendent Aaron Chaffinch and his successor, Col. Thomas MacLeish, acted "recklessly, maliciously, or intentionally" in retaliating against the

6/15/2006

troopers for exercising their free speech rights.

The jury also found that Chaffinch defamed Foraker in suggesting to the media that Foraker was to blame for problems at the firing range, where problems stemming from poor design and construction surfaced almost immediately upon its opening in 1998. The jury rejected Foraker's contention that MacLeish also defamed him in a television interview.

The jury awarded compensatory damages of $862,395 to Price, $543,276 to Warren, and $74,676 to Foraker. Each of those amounts includes $2,200 for emotional distress, injury to reputation and humiliation.

Chaffinch was ordered to pay punitive damages of $15,682 to Foraker, $113,625 to Warren, and $181,103 to Price. MacLeish was ordered to pay punitive damages of $6,720 to Foraker, $48,697 to Warren, and $77,615 to Price.

"Their honor has been restored," said the troopers' attorney, Thomas **Neuberger.**

Defense attorney Edward Ellis said he was disappointed by the verdict, and that his clients maintain that they did nothing wrong.

The jury handed down its verdict one day after the U.S. Supreme Court ruled in a 5-4 decision that government workers do not have absolute free-speech protections for what they say in the course of their official duties.

"I think that decision is likely to have some effect on the current case, and we'll be dealing with it in post-trial motions," Ellis said. "And of course we'll be dealing with the possibility of appeal."

**Neuberger** said the Supreme Court ruling does not apply in the firing range case because his clients were punished for speech that was not part of their official duties as staffers at the firing range, which was closed in March 2004.

The three troopers claimed that Chaffinch and then-Lt. Col. MacLeish initially ignored their concerns about high levels of toxic metals and other problems at the range, then began harassing them after they met with state auditors in the spring of 2004.

Ellis argued that the plaintiffs were at least partly to blame for environmental problems at the firing range because they stopped doing maintenance on the bullet trap in December 2003, shortly after Foraker was transferred back to the range under court order after winning a previous lawsuit against Chaffinch.

**Neuberger** argued that Chaffinch was out for revenge against Foraker who sued him in 2002 after being transferred from the firing range in retaliation for reprimanding a friend of Chaffinch and that Price and Warren were "collateral damage."

Price was forced to resign in April after using up his accumulated leave time, and Warren is nearing the end of his accumulated leave as well, **Neuberger** said. Both men were declared unfit for duty after being diagnosed with hearing loss, but they argued that other troopers with physical disabilities, including hearing loss, have been allowed to remain on the force.

Ellis argued that, regardless of previous agency practices, MacLeish was left with no choice but to order Price and Warren to separate from the police force after doctors determined that their hearing loss

presented a danger to themselves, their fellow troopers and the public.

"The jury saw through the whole pack of lies," said **Neuberger,** who has won a host of lawsuits against the police agency in recent years for its treatment of troopers.

As he did repeatedly with Chaffinch, whom he has described as a "serial violator" of the constitutional rights of troopers, **Neuberger** reiterated his call for MacLeish to resign.

"I don't think anything will change as long as Ruth Ann Minner is the governor," **Neuberger** said.

Through a spokeswoman, Minner declined to comment on the jury verdict and referred calls to Ellis.

**LOAD-DATE:** May 31, 2006

Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.
Your use of this service is governed by Terms & Conditions . Please review them.

6/15/2006