IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

| | | |
|---|---|---|
| CAPTAIN BARBARA L. CONLEY, | : | Civil Action |
| Plaintiff, | : | |
| v. | : | |
| COLONEL L. AARON CHAFFINCH, individually, | : | |
| Defendant. | : | No. 04-1394-GMS |

- - -

Wilmington, Delaware
Friday, June 2, 2006
11:00 a.m.
Telephone Conference

- - -

BEFORE: HONORABLE GREGORY M. SLEET, U.S.D.C.J

APPEARANCES:

    THOMAS S. NEUBERGER, ESQ., and
    STEPHEN J. NEUBERGER, ESQ.
    The Neuberger Firm, P.A.

                Counsel for Plaintiff

    STEPHANI J. BALLARD, ESQ., and
    RALPH K. DURSTEIN, III, ESQ.
    Department of Justice - State of Delaware
              -and-
    JAMES LIGUORI, ESQ.
    Liguori, Morris & Yiengst

                Counsel for Defendant

```
1                THE COURT:  Good morning, counsel.
2                THE COURT:  All right.  We have both Stephen and
3    Tom Neuberger?
4                MR. T. NEUBERGER:  Yes, Your Honor.
5                THE COURT:  Stephanie Ballard, Mr. Durstein, and
6    Mr. Liguori?
7                (Counsel respond affirmatively.)
8                THE COURT:  So what is the status of the case?
9                MR. DURSTEIN:  Your Honor, we are ready for
10   trial --
11               MR. T. NEUBERGER:  Are you talking about
12   settlement or trial?  On settlement, I am waiting for a
13   response from Mr. Durstein to proposals that were made
14   yesterday.  We haven't gotten anything this morning.  He
15   told me his people are pondering it, I believe.
16               Is that a fair statement, Ralph.
17               MR. DURSTEIN:  Yes.  In fact, we had to kind of
18   drop things to prepare for this conference.  But I expect to
19   have a response today.
20               THE COURT:  That's not good enough, Mr.
21   Durstein.  While Nero fiddles, we work.  So "ponder," what
22   does that mean?  Let's give me some specifics.
23               MR. T. NEUBERGER:  If I could tell you where we
24   are at, Your Honor, would that be okay?
25               THE COURT:  The question was directed to Mr.
```

```
 1    Durstein.
 2                 Thank you, Mr. Neuberger, very much.
 3                 MR. DURSTEIN:  Your Honor, we received a -- we
 4    made a settlement offer, we received a counterproposal
 5    yesterday afternoon.  Mr. Neuberger was trying to reach me.
 6    Ms. Ballard and I were meeting with Mr. Liguori.  But last
 7    evening I received it at home on the computer, and responded
 8    to Mr. Neuberger that I would transmit it.  I did do that,
 9    to my client, and I expect to be talking to Colonel MacLeish
10    this morning.
11                 What I was saying was, we have been dealing
12    with, I suppose, the same thing that prompted the Court to
13    convene this conference, which is the publicity by the
14    Neubergers on the radio and in the newspapers in the past 48
15    hours.
16                 THE COURT:  Yes.
17                 MR. DURSTEIN:  I don't mean to suggest we won't
18    proceed with good-faith settlement negotiations.  We will.
19    But we have also had to deal on a different track with the
20    risk that this publicity poses to this trial.  In fact, we
21    prepared a motion to file in that regard that we are working
22    on this morning as well.
23                 THE COURT:  Well, with due respect, I think you
24    can leave that issue in the able hands of the Court.  The
25    Court is well-aware of what's going on, and the Court is
```

1  well-equipped to deal with that. You can file whatever
2  motion you want. But obviously, the Court is concerned
3  about the issue. The Court called this conference sua
4  sponte. This conference has not been called pursuant to the
5  request of the defense.
6        I think that the better use of counsel's time,
7  if there is a prospect for settlement, a realistic prospect
8  for settlement -- you practice law the way you want, Mr.
9  Durstein -- but I will be concerned about my shop over here
10 and the expenditure of my judicial resources.
11       There will be a substantial amount of work that
12 will need to be done to prepare additional voir dire and to
13 prepare to conduct that voir dire should this matter go
14 forward. I want to know whether I should invest that time.
15       MR. LIGUORI: Your Honor, I can only tell you
16 that the amount of time that the Court puts in is probably
17 as much as if not more than the amount of time that all the
18 attorneys are going to put in.
19       We are trying to resolve this matter. We have
20 been distracted by the comments that are causing some
21 concern to the client.
22       THE COURT: You have three lawyers on one side
23 representing one defendant. You have one Judge, and one law
24 clerk. So I am really not real sensitive to that argument,
25 Mr. Liguori. I am really not hearing you, as the kids say.

```
 1                MR. LIGUORI:  I understand, Your Honor.  We are
 2    trying to move forward as quickly as possible to get to the
 3    resolution so that we don't create any academic gymnastics
 4    for anybody.
 5                THE COURT:  The nature of the motion is, how are
 6    you captioning that, Mr. Durstein?
 7                MR. DURSTEIN:  Your Honor, it is basically a
 8    renewal of the motion we filed previously in the case,
 9    directed to the issue of prejudicial pretrial publicity.
10                THE COURT:  If this matter is going to go
11    forward to trial, I am prepared today to issue an order
12    constraining comments that I think may -- well, let's
13    articulate the correct standard -- have a substantial
14    likelihood of materially prejudicing these proceedings.
15    When I say these proceedings, I am talking about the matter
16    that is scheduled to begin on Tuesday, namely, Conley versus
17    Chaffinch, which occurs at 04-1394.  And I will give the
18    Neubergers a chance to discuss the merits of their position.
19                I want to start this conference out because Mr.
20    Neuberger, yesterday in a conference that you did not --
21    counsel for the defense did not participate in, alluded to a
22    very substantial likelihood of a resolution, an amicable
23    resolution of that case.  If that is not going to happen,
24    that is fine.  But I don't want to spin my wheels.
25                MR. LIGUORI:  Neither do we, Your Honor.  But I
```

```
 1    would say by 2:30, 3:00 today we should know where we are,
 2    respectfully.
 3               THE COURT:  Okay.  Well, let's get to the
 4    originally intended purpose of the call, because I was not
 5    aware of any settlement discussions that were ongoing when I
 6    calendared this matter.
 7               So I am going to permit, Mr. Durstein, you to
 8    file this motion orally, right now.
 9               MR. DURSTEIN:  Okay, Your Honor.
10               THE COURT:  Go ahead.
11               MR. DURSTEIN:  I am sure I don't have the
12    totality of the comments that have been made by the
13    Neubergers, both on the radio and in the newspapers.  But
14    what I included in the motion I will mention briefly here.
15    It is pretty despicable.
16               They described the defense in this case,
17    actually, they are referring to the Price and Foraker case
18    Your Honor just heard, but talked about "a coverup" and
19    "pack of lies."  Of course, the problem is the people they
20    are talking about include the defendant, our client, Colonel
21    Chaffinch.
22               They were on, Mr. Neuberger, Mr. Tom Neuberger
23    was on a radio program yesterday on WDEL, and through
24    internal resources we were able to get at least some of the
25    comments he made.  He referred to the present Colonel, Tom
```

1   MacLeish, as a "coward who would not protect his men."
2           As the Court knows, Colonel MacLeish is no longer a
3   party in this lawsuit. But he will be a witness for the
4   defense. He is, of course, the Colonel. Later on, on WDEL,
5   Mr. Neuberger made the comment that the State Police
6   leadership were willing to "throw their officers under a
7   bus."
8           It's comments of that nature that caused us to
9   want to bring that to the Court's attention. We certainly
10  appreciate the fact the Court has sua sponte raised this
11  issue. The ultimate remedy, Your Honor, where our client is
12  at risk of not being able to have a fair trial, the ultimate
13  remedy is dismissal. There is only one remaining claim.
14          THE COURT: This case is not going to be
15  dismissed, Mr. Durstein. I am telling you that right now.
16          MR. DURSTEIN: Failing that, Your Honor, we
17  would ask for sanctions against plaintiff's counsel.
18          THE COURT: That would be something the Court
19  would consider. But what I want to discuss is a more
20  focused remedy at this point. I think it is probably the
21  most powerful tool that the Court has in its bag of tools.
22  That is a voir dire process that will be designed to root
23  out any putative juror who might not be able to overcome
24  these statements and the impact that these statements may
25  have had on their view of the merits of the case, as those

1   merits pertain to either side's position.

2              MR. DURSTEIN:  Yes, Your Honor.  That is one of

3   the two alternative areas that we are exploring.  We are

4   working on drafting fairly extensive additional voir dire

5   questions that we would propose the Court ask the jury.

6              I don't want to appear to concede that any

7   degree of voir dire questions can cure the harm that's been

8   done by these statements.

9              THE COURT:  I don't take this as a concession.

10             MR. DURSTEIN:  Obviously, we won't know that

11  fully until, if the Court deems the questions proper, they

12  are asked and the jurors come forward and we hear what they

13  have to say, what they recall and so forth.  We will submit

14  these suggested voir dire questions.

15             The second prong would be to request the Court

16  to add language in its preliminary instructions to the jury,

17  if we get a jury selected, that deals with this risk of

18  pretrial publicity.

19             THE COURT:  I think that is entirely

20  appropriate.

21             MR. DURSTEIN:  That, Your Honor, we can submit a

22  form of that.  However, I think the Court may agree that if

23  that is necessary, it may depend in part on what we learn

24  during the jury selection process.  I would think with

25  proper voir dire questions we would know how many of the

1   jurors ultimately selected were aware of some of these
2   comments and pretrial publicity and the degree to which the
3   Court had to confront that issue in preliminary jury
4   instructions.  But we can certainly submit tentative or
5   suggested language for the Court's consideration on that
6   point as well.
7               THE COURT:  That should be done as soon as
8   possible.
9               Any other recommendations as to remedy, other
10  than the ones you have already discussed?
11              MR. DURSTEIN:  Your Honor, the one we don't
12  want, and I think Mr. Liguori and Ms. Ballard and I are
13  united in this, we don't want to see the case continued.
14  The Court didn't mention that.
15              THE COURT:  The only thing I might try to do, I
16  don't know if we can do it at this late date, is to bring in
17  a larger panel.
18              MR. DURSTEIN:  Your Honor, the continuance is
19  not in our client's interest.  We don't want that.  We want
20  the case to go forward.  A larger panel that might provide
21  us with more alternatives in terms of jurors would be much
22  appreciated.  We certainly support that thought as well.
23              THE COURT:  Okay.  Mr. Neuberger.
24              MR. S. NEUBERGER:  Your Honor, I think all of
25  Mr. Tom Neuberger's comments are within Rule 3.6's absolute

1    safe haven.
2              THE COURT: I could not disagree more. You and
3    your dad have effectively polluted the jury pool. This is a
4    small jurisdiction. And I fully support and would be the
5    first to comment, were I permitted, publicly and endorse
6    your First Amendment rights as citizens to speak out on
7    these matters.
8              I am not going to parse each and every one of
9    the comments that has been discussed today. I don't have
10   access and have not had access to the full range of
11   comments. But the kind of comments that concern me are like
12   the ones that appeared in the News Journal article, quote,
13   "The entire defense," at least this is them purporting to
14   quote Tom Neuberger, "The entire defense in this case was a
15   coverup and a pack of lies by men without honor which did
16   not fool the thoughtful jury."
17             Well, if both Neubergers don't understand how
18   this might have a substantial and material effect on the
19   adjudicative process -- it is the words adjudicative process
20   that are used in Rule 3.6, the words substantial likelihood
21   of material prejudice come of course directly from Third
22   Circuit case law -- if you don't perceive the impact that
23   comments like that might have on the jury pool, then I am at
24   a loss.
25             MR. T. NEUBERGER: Your Honor, I would like to

1  cut through it. First of all, if the Court wants to put a
2  prior restraint on comments immediately and no more
3  comments, we agree with that.
4           We have a different position on Rule 3.6 and the
5  safe haven and where the comments were made. That can be
6  deferred for later. If the Court is trying to protect the
7  selection of this process, we agree right now that there
8  will be no more comments. Our position was quite simply
9  that we were commenting on not the Conley case. We were
10 commenting on the Price case.
11          THE COURT: And I anticipated that argument, Mr.
12 Neuberger. And, quite frankly, I won't prejudge it at this
13 point. But I think it's weak, to say the least.
14          MR. T. NEUBERGER: Thank you. That is our
15 argument.
16          THE COURT: I am giving you a preview of my view
17 of that argument. It's weak, and disturbing, under the
18 circumstances, that you would attempt to parse the rule in
19 that fashion.
20          But I will leave it there, because we will meet
21 this another day, at the end of the Conley-Chaffinch case,
22 however it ends.
23          MR. T. NEUBERGER: That is fine, Your Honor.
24          THE COURT: I know it's fine.
25          MR. T. NEUBERGER: We are saying for right now,

1   no more comments.
2           THE COURT:  Mr. Durstein, I will direct you to
3   draft an order articulating, if you would, an order that is
4   appropriately narrow in scope and consistent with the
5   Court's view expressed in its order dated March 2, '05.
6           MR. DURSTEIN:  Yes, Your Honor.  Your Honor, the
7   Court I know deferred any thought of further sanctions and
8   remedies.  There is one other thing that was included in the
9   motion we are prepared to file.  I want to mention it for
10  the Court's consideration.  It's more of a remedy than a
11  sanction, although I guess it could be both.  That is, under
12  the circumstances, we would ask the Court to consider
13  ordering the Neubergers to make a formal public apology to
14  our client, to the Delaware State Police, and to Colonel
15  MacLeish for the comments they made.  I think that is within
16  the Court's power.
17          It isn't going to help with respect to the jury,
18  admittedly, although something in the order of an apology
19  might well be appropriate in terms of that preliminary jury
20  instruction.
21          THE COURT:  The Court is not prepared to do that
22  at this juncture, Mr. Durstein.  It is something that I
23  might consider at a later date.  Quite frankly, I am not
24  sure that -- perhaps you have researched this -- I am not
25  sure that that would not exceed my authority as a United

1  States District Judge.

2           I again want to reiterate, for all concerned,
3  that I greatly value the rights that the Neubergers and all
4  of us enjoy under the First Amendment to participate in the
5  government process as citizens.

6           But these comments were made by the Neubergers
7  not only in their capacity as citizens but as officers of
8  this Court, as members of a regulated profession.  And as
9  such, you don't get to yell fire in the theater.

10          MS. WALKER:  John ordered 15 more jurors.

11          THE COURT:  We will have 44 members of the
12 panel.  That will be 15 in excess of the normal number that
13 we have.  And that may not be enough.  I don't know.

14          The other potential remedy that I am
15 considering -- I want the input of both sides on this -- is
16 handling this voir dire in other than the normal fashion and
17 doing it on an individual sequestered basis, and permitting
18 the lawyers to have a more active role in the questioning of
19 the panel members.

20          MR. S. NEUBERGER:  Your Honor, we have no
21 problem with that.

22          MS. BALLARD:  I think that would be a good idea,
23 Your Honor.

24          THE COURT:  Then what the Court would appreciate
25 is hearing from both sides as to, as soon as possible, as to

```
 1    any proposals you have for questions that either will be put
 2    to the panel by the Court or by the lawyers or both.
 3              MR. S. NEUBERGER:  Yes, Your Honor.
 4              MR. DURSTEIN:  Very well, Your Honor.
 5              THE COURT:  Also, Mr. Durstein, I will be
 6    looking for, as soon as possible again, the preliminary
 7    instruction language that you want to propose.
 8              MR. DURSTEIN:  Yes, Your Honor.
 9              I haven't forgotten what the Court said about
10    settlement.  My next telephone call will be to Colonel
11    MacLeish.  If there is any progress in that regard, one of
12    us will certainly make the Court aware as soon as possible.
13              THE COURT:  Appreciate it, counsel.
14              MR. T. NEUBERGER:  Your Honor, if I could on the
15    settlement thing.  There have been occasions in the past
16    where, since the Court is not the fact-finder, the Court has
17    been helpful in finishing off and consummating settlement.
18    If that would be okay, would the Court be available to speak
19    to each side privately in the hope of bridging any gap?
20              THE COURT:  I am available today to attempt to
21    engage that process, if both sides think that it would be
22    useful.  I would only do it in person, though.  I won't do
23    it over the phone.
24              MR. T. NEUBERGER:  That is fine. We would
25    agree, first agree that we could do that.
```

```
 1                THE COURT:  I would require the attendance of
 2   principals, persons who have sufficient settlement
 3   authority, in addition to the parties.
 4                MR. LIGUORI:  I understand completely, Your
 5   Honor.
 6                MR. T. NEUBERGER:  Thank you, Your Honor.
 7                THE COURT:  If that is something that -- I would
 8   appreciate knowing that as soon as possible so that we can
 9   order ourselves over here.  Take care.
10                (Conference concluded at 11:25 a.m.)
11
12                              -  -  -
13   Reporter:   Kevin Maurer
14
15
16
17
18
19
20
21
22
23
24
25
```